UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

M.H. and J.H., on behalf of
their minor child C.H.,

       Plaintiffs,

v.                                    Case No.: 8:21-cv-814-VMC-TGW

OMEGLE.COM, LLC,

       Defendant.
_____/

**ORDER**

This matter is before the Court on consideration of Defendant Omegle.com, LLC's Motion to Dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), filed on October 13, 2021. (Doc. # 78). Plaintiffs M.H. and J.H., on behalf of their minor child C.H., responded on November 3, 2021, (Doc. # 81), and Defendant replied on November 15, 2021 (Doc. # 85). For the reasons that follow, the Motion is granted.

**I.   Background**

The Second Amended Complaint asserts eight causes of action against Omegle for damages arising from 11-year-old C.H.'s distressing experience on the Omegle website. (Doc. # 75 at 15-29).

Omegle allows users to communicate with other users randomly and anonymously in real time by text, audio, and video. (Id. at ¶¶ 33-34). Interested users are placed in a chatroom hosted by Omegle and can begin communicating immediately. (Id.). No personal identifying information is required to begin a chatroom session, although Omegle also allows users to narrow their possible matches based on "similarities in conversations and subjects." (Id. at ¶¶ 34-37). Users are anonymously paired with other users from across the globe and can be paired with a new user in a new chatroom at will. (Id. at ¶¶ 33, 57).

The Omegle website is visited millions of times per day. (Id. at ¶ 14). As Omegle and similar websites have grown in popularity, so too have reports of child sex trafficking and victimization through those websites. (Id. at ¶¶ 13, 41 n. 8-9). Plaintiffs cite to articles reporting that numerous individuals have been charged with sex crimes against children for their use of Omegle and similar websites. (Id. at 41 n. 8-9). Omegle does not have a screening or verification process to ensure that minor children only use the site with parental guidance or consent — anonymity appears to be a primary appeal of the Omegle platform. (Id. at ¶¶ 33, 50-51). Omegle, like many websites, is susceptible to

hacking. (Id. at ¶ 38). According to Plaintiffs, sexual predators have taken advantage of the anonymity that Omegle offers to prey on other users, including children. (Id. at ¶¶ 39-41). Among these predators are "cappers," who trick children into committing sexual acts over live web feeds while simultaneously recording the encounters. (Id. at ¶ 4 n. 1).

On March 31, 2020, C.H. was randomly placed in a chatroom with a capper during her first time on Omegle. (Id. at ¶¶ 57-62). C.H. — an eleven-year-old girl at the time — accessed the Omegle platform from her laptop. (Id. at ¶ 57). She was initially placed in a chatroom with other minors for some time. (Id.). C.H. later ended the chat with the minors and was placed in another chatroom. (Id.). She was met in the next chatroom with a black screen that began displaying text from the other anonymous user, "John Doe." (Id. at ¶ 58). John Doe informed C.H. that he knew where she lived, and he provided specific details of her whereabouts to prove it. (Id. at ¶ 59). He threatened to hack C.H. and her family's electronic devices if she did not disrobe and comply with his demands. (Id. at ¶ 61). After pleading with John Doe without success, C.H. complied. (Id.). John Doe captured screenshots and recorded the encounter. (Id. at ¶¶ 61-62). Immediately

after this incident, C.H. informed her parents, who then contacted law enforcement. (Id. at ¶ 65).

C.H.'s parents then brought the instant suit against Omegle on their daughter's behalf. (Doc. # 1). This action began in the United States District Court for the District of New Jersey. (Id.). The case was then transferred to this Court, and Plaintiffs were ultimately permitted to file their Second Amended Complaint. (Id.; Doc. ## 74-75). Plaintiffs bring eight claims against Omegle: (1) possession of child pornography in violation of 18 U.S.C. § 2252A;[1] (2) violation of the Federal Trafficking Victims Protection Act, 18 U.S.C. §§ 1591 and 1595; (3) violation of the Video Privacy Protection Act, 18 U.S.C. § 2710; (4) intrusion upon seclusion; (5) negligence; (6) intentional infliction of emotional distress; (7) ratification/vicarious liability; and (8) public nuisance. (Id. at 15-29).

Omegle now moves to dismiss all claims for failure to state a claim. (Doc. # 78). Plaintiffs have responded, and

---

[1] The Second Amended Complaint lists this claim as a violation of 18 U.S.C. § 2255, which is a civil remedy statute that allows victims of enumerated crimes to sue for liquidated damages. (Doc. # 75 at 15). Plaintiffs assert entitlement to such damages for Omegle's violation of 18 U.S.C. § 2252A, an enumerated statute, for Omegle's alleged knowing possession of child pornography. (Id. at 15-16).

Omegle replied in turn. (Doc. # 81; Doc. # 84). The Motion is ripe for review.

## II.   **Legal Standard**

On a motion to dismiss pursuant to Rule 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Hum. Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The Court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters

judicially noticed. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

### III. **Analysis**

#### A. **Immunity Under the Communications Decency Act**

Omegle claims that it is immune from each of Plaintiffs' claims pursuant to 47 U.S.C. § 230, the Communications Decency Act ("CDA"). (Doc. # 78 at 3). The CDA grants immunity to interactive computer services ("ICS") providers for damages caused by the providers' users. 47 U.S.C. § 230(c)(1). ICS providers are those who "provide[] or enable [] computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet . . . ." 47 U.S.C. § 230(f)(2).

By statute, ICS providers are distinguished from those who use their services — "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). ICS providers are further distinguished from information content providers ("ICPs"), who are responsible for the creation or development of information through the Internet or an ICS provider. 47 U.S.C. § 230(f)(3).

The CDA also preempts state or local law that would otherwise hold ICS providers liable for the independent actions of their users. 47 U.S.C. § 230(e)(3). "The majority of 'federal circuits have interpreted the CDA to establish broad federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service.'" Almeida v. Amazon.com, Inc., 456 F.3d 1316, 1321 (11th Cir. 2006) (quoting Zeran v. Am. Online, Inc., 129 F.3d 327, 330 (4th Cir. 1997)). The Florida Supreme Court has also recognized the CDA's broad preemptive effect. See Doe v. Am. Online, Inc., 783 So. 2d 1010, 1018 (Fla. 2001) ("We specifically concur that section 230 expressly bars 'any actions,' and we are compelled to give the language of this preemptive law its plain meaning.").

A defendant seeking to enjoy the immunity provided by Section 230 must establish that: (1) the defendant is a service provider or user of an interactive computer service; (2) the causes of action the treat defendant as a publisher or speaker of information; and (3) a different information content provider provided the information. Doe v. Reddit, Inc., No. SACV 21-00768 JVS (KESx), 2021 WL 5860904, at *3 (C.D. Cal. Oct. 7, 2021); Roca Labs, Inc. v. Consumer Op. Corp., 140 F. Supp. 3d 1311, 1319 (M.D. Fla. 2015). As such,

immunity applies unless an ICS provider creates, authors, or otherwise materially contributes to a publication such that the content "is properly attributable to them." <u>Gilmore v. Jones</u>, 370 F. Supp. 3d 630, 662 (W.D. Va. 2019) (internal citations omitted).

**B. Exceptions to Immunity Under the CDA**

Immunity under the CDA is not absolute. ICS providers are not insulated from civil liability for child sex trafficking offenses under 18 U.S.C. §§ 1591 and 1595 if the underlying conduct constitutes a violation of those statutes. 47 U.S.C. § 230(e)(5)(A-B). 18 U.S.C. § 1591, titled "Sex trafficking of children or by force, fraud, or coercion" instructs that

(a) Whoever knowingly—

(1) in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or

(2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1) . . .

18 U.S.C. § 1591(a)(1-2). The statute's civil remedy corollary, 18 U.S.C. § 1595(a-b), allows victims to pursue civil recovery against their perpetrators. However, courts

interpret 18 U.S.C. § 1591 to require actual knowledge and overt participation in a sex trafficking venture by the ICS provider — generalized knowledge without active participation is insufficient. See, e.g., Doe v. Kik Interactive, Inc., 482 F. Supp. 3d 1242, 1249-51 (S.D. Fla. 2020) (granting immunity to ICS provider where plaintiff failed to allege sufficient facts establishing actual knowledge or overt participation in under 18 U.S.C. § 1591); United States v. Afyare, 632 F. App'x 272, 286 (6th Cir. 2016) (interpreting 18 U.S.C. § 1591 to require actual participation in a sex trafficking venture). For the reasons discussed below, the Court finds that Omegle is entitled to immunity from each of Plaintiffs' claims.

### C. **Omegle is Entitled to Section 230 Immunity**

First, Omegle is an ICS provider under Section 230. That is, Omegle is a system that allows multiple users to connect to a computer server via the Internet. 47 U.S.C. § 230(f)(3). ICS providers are afforded immunity under the CDA unless they materially augment or develop the unlawful content at issue. See Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC, 521 F.3d 1157, 1167-68 (9th Cir. 2008) ("a website helps to develop unlawful content, and thus falls within the exception to section 230, if it contributes materially to the alleged illegality of the conduct.").

Indeed, Plaintiffs appear to acknowledge that Omegle is an ICS provider by arguing that "the rapidly evolving legal landscape . . . increasingly holds Internet Service Providers . . . liable for the harms they facilitate and oftentimes create." (Doc. # 81 at 1).

Nonetheless, a review of the factual allegations confirms that Omegle functions by randomly pairing users in a chatroom and enabling them to communicate in real time. (Doc. # 75 at ¶¶ 33-34). There are no factual allegations suggesting that Omegle authors, publishes, or generates its own information to warrant classifying it as an ICP rather than an ICS provider. Compare Doe v. Mindgeek USA Inc., No. SACV 21-00338-CJC(ADSx), 2021 WL 4167504, at *9 (C.D. Cal. Sept. 9, 2021) (finding that website was an ICP where it actively created programs, curated playlists, and developed private messaging systems to facilitate trafficking of child pornography) with Mezey v. Twitter, Inc., No. 1:18-cv-21069-KMM, 2018 WL 5306769, at *1 (S.D. Fla. July 17, 2018) (granting Twitter CDA immunity where it merely displayed, organized, and hosted user content). Nor are there any factual allegations that Omegle materially contributes to the unlawfulness of the content at issue by developing or augmenting it. See Roommates.com, 521 F.3d at 1167-68. Omegle

10

users are not required to provide or verify user information before being placed in a chatroom with another user. (Doc. # 75 at ¶¶ 37, 50-51). Further, some users, such as hackers and cappers, can circumvent Omegle's anonymity *using the data they themselves collect from other users* during their encounters. (Id. at ¶ 38). The Court is persuaded that Omegle's hosting capabilities for its users, coupled with its lack of material content generation, place it squarely within the definition of an ICS provider under 47 U.S.C. § 230(f)(2).

Regarding the second element of CDA immunity, Plaintiffs' claims seek to treat Omegle as a speaker or publisher of information. For CDA immunity to apply, Plaintiffs' claims must treat Omegle as the publisher or speaker of the complained of information that was provided by others. See Barnes v. Yahoo!, Inc., 570 F.3d 1096, 1102-03 (9th Cir. 2009) (explaining that Section 230 shields websites from liability against "any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online") (internal citations omitted); Whitney Info. Network, Inc. v. Verio, Inc., No. 2:04-cv-462-JES-SPC, 2006 WL 66724, at *3 (M.D. Fla. Jan. 11, 2006) (finding that tortious interference with a business relationship and defamation claims treated the website as the publisher of

11

offensive statements). Courts will find this element to be satisfied where a plaintiff's claim alleges that an ICS provider should have screened or filtered information provided by their users. See Green v. Am. Online, 318 F.3d 465, 471 (3d Cir. 2003) (finding the second element satisfied where plaintiff "attempt[ed] to hold [a defendant] liable for decisions relating to the monitoring, screening, and deletion of content," which are "quintessentially related to a publisher's role."); Ben Ezra, Weinstein, and Co. v. Am. Online, Inc., 206 F.3d 980, 986 (10th Cir. 2000) (upholding immunity for ICS provider where plaintiff sought damages caused by their reliance on third party's inaccurate stock postings).

Here, Counts I, II, III, IV, and VI seek to hold Omegle responsible for the conduct of cappers like John Doe who criminally misappropriate the site. Plaintiffs' child pornography claim asserts that Omegle knowingly possessed child pornography that was generated on its platform. (Doc. # 75 at ¶¶ 31-37, 41-42, 75). Their child sex trafficking claim alleges that Omegle created a forum that harbored, enticed, and solicited child sex trafficking. (Id. at ¶¶ 83-87). (Id. at ¶¶). The intrusion upon seclusion and intentional infliction of emotional distress claims in turn posit that

(1) Omegle designed a website that allows users' personal identifying information to become compromised, and that (2) Omegle knowingly paired C.H. with a capper, causing her extreme emotional distress. (Id. at 20-22, 25-56). Lastly, the Video Privacy Protection Act claim seeks to hold Omegle liable for John Doe's commandeering of C.H.'s personal identifying information. (Id. at 19-20). Each of these claims seek redress for damages caused by John Doe's conduct. (Id. at 15, 17, 20, 25). No well-pleaded facts suggest that Omegle had actual knowledge of the sex trafficking venture involving C.H. or that Omegle had an active participation in the venture. Cf. Mindgeek, 2021 WL 4167504, at **9-10 (finding plausible 18 U.S.C. §§ 1591 and 2252A claims where plaintiff alleged that website reviewed, approved, posted, and featured certain child pornography videos on its platform while also sharing profits with sex traffickers). Instead, Plaintiffs acknowledge that Omegle is not impervious to attack — hackers can screenshot their activity with other users and use those screenshots to obtain others' personal identifying information. (Doc. # 75 at ¶ 38). These factual allegations, compounded with the details of C.H.'s encounter with John Doe, ultimately serve to support Plaintiffs' position that Omegle should be held responsible for John Doe's conduct.

Herrick v. Grindr LLC, 765 F. App'x 586, 591 (2d Cir. 2019)
(dismissing failure to warn and emotional distress claims
against ICS provider for damages caused by another user);
Caraccioli v. Facebook, Inc., 700 F. App'x 588, 590 (9th Cir.
2017) (dismissing intrusion upon seclusion claims); Klayman
v. Zuckerberg, 753 F.3d 1354, 1357-59 (D.C. Cir. 2014)
(dismissing negligence and assault claims).

The other claims, Counts V, VII, and VII, confirm that
Plaintiffs' theories of liability against Omegle are rooted
in the creation and maintenance of the platform. These claims
recognize the distinction between Omegle as an ICS provider
and the users, but nonetheless treat Omegle as the publisher
responsible for the conduct at issue. Yahoo!, 570 F.3d at
1101-02. This is corroborated in no small part by Count VII,
the "ratification/indemnification" claim, where Plaintiffs
maintain that child sex trafficking was so pervasive on and
known to Omegle that it should be vicariously liable for the
damages caused by the cappers and similar criminals.[2] (Doc.

---

[2] As Omegle highlights in their Motion, ratification/vicarious
liability is not an independent cause of action. See Barabe
v. Apax Partners Europe Managers, Ltd., 359 F. App'x 82, 84
(11th Cir. 2009) (explaining that "[t]heories of vicarious
liability, however, are not independent causes of action;
instead, they are theories of liability for other claims.").
Count VII fails as a matter of law on this ground alone, and

# 75 at ¶¶ 142-143). Through the negligence and public nuisance claims, Plaintiffs allege that Omegle knew or should have known about the dangers that the platform posed to minor children, and that Omegle failed to ensure that minor children did not fall prey to child predators that may use the website. (Id. at ¶¶ 112, 148).

The CDA bars such claims as they seek to redirect liability onto Omegle for the ultimate actions of their users. See, e.g., Bauer v. Armslist, LLC, No. 20-cv-215-pp, 2021 WL 5416017, at **25-26 (E.D. Wis. Nov. 19, 2021) (dismissing, among others, negligence, public nuisance, aiding and abetting tortious conduct, and civil conspiracy claims, against ICS provider website that was used to facilitate unlawful firearm sales); Kik, 482 F. Supp. 3d at 1249-50 (website where users solicited plaintiff for sexual photographs was immune from sex trafficking, negligence, and strict lability claims where website only enabled user communication); Poole v. Tumblr, Inc., 404 F. Supp. 3d 637, 642-43 (D. Conn. 2019) (content hosting website entitled to immunity from invasion of privacy and negligent infliction of emotional distress claims); Saponaro v. Grindr, LLC, 93 F.

---

Plaintiffs have not offered a response in support of Count VII's viability.

Supp. 3d 319, 325 (D. N.J. 2015) (dismissing "failure to police" claim against ICS provider under Section 230). Regardless of form, each of Plaintiffs' claims ultimately seek to treat Omegle as a publisher or speaker, which are encompassed within Section 230 immunity.

As for the third element for immunity under the CDA, the Court readily gleans that the information and content at issue here was in fact generated by a separate content provider, John Doe. The Second Amended Complaint recounts that C.H.'s injuries were caused by John Doe during their chatroom encounter. (Doc. # 75 at ¶¶ 54-62). John Doe's video feed, his brandishing of C.H.'s personal identifying information, and the threats he subjected her to were not provided by Omegle in any sense. (Id.). See Kik, 482 F. Supp. 3d at 1248-49. Merely providing the forum where harmful conduct took place cannot otherwise serve to impose liability onto Omegle. Klayman, 753 F.3d at 1358.

In short, the Court finds that Omegle is entitled to immunity under CDA Section 230 because (1) it is an ICS provider under the CDA, (2) Plaintiffs' claims seek to treat Omegle as a publisher or speaker, and (3) the information at issue originated from another information provider, John Doe. Counts I through VIII are barred under the CDA and are hereby

dismissed. The Court writes separately to address whether Count II has been sufficiently pled to escape immunity under the CDA.

### D. **The Sex Trafficking Claim**

Count II asserts a claim for civil liability for Omegle's alleged involvement in a child sex trafficking venture under 18 U.S.C. §§ 1591 and 1595. (Doc. # 75 at 15-16). Notwithstanding Section 230 immunity, the CDA does permit suits against ICS providers for violations of 18 U.S.C. §§ 1591 and 1595 under narrow circumstances. Congress enacted the CDA to "encourage service providers to self-regulate the dissemination of offensive material over their service," and allow "computer service providers to establish standards of decency without risking liability for doing so." NetChoice, LLC v. Moody, No. 4:21cv220-RH-MAF, 2021 WL 2690876, at *6 (N.D. Fla. June 30, 2021) (internal citations omitted). Congress did not, however, alter a sex trafficking victim's ability to bring suit against an ICS provider for harm suffered *from the ICS provider's involvement* in the underlying venture. See J.B. G6 Hosp., LLC, No. 19-cv-07848-HSG, 2021 WL 4079207, at *12 (N.D. Cal. Sept. 8, 2021) (holding that 18 U.S.C. § 1591 could not surmount CDA immunity

unless plaintiff alleged an ICS provider's actual knowledge or participation in a sex trafficking venture).

As analyzed in the recent decision of Doe v. Kik Interactive, Inc., the legislative history of the CDA confirms that generalized knowledge that sex trafficking occurs on a website is insufficient to maintain a plausible 18 U.S.C. § 1591 claim that survives CDA immunity. 482 F. Supp. 3d 1242, 1250 n. 6 (S.D. Fla. 2020). The plaintiff in Kik alleged that multiple users on the Kik website solicited her for sexually explicit photographs. Id. at 1244. She then brought claims against Kik for violations of 18 U.S.C. §§ 1591, 1595, negligence, and strict liability. Id. at 1245-46, 1251. The Kik court found that Kik would not be immune from suit only if it were alleged that Kik had actual knowledge of the underlying incident and had some degree of active participation in the alleged sex trafficking venture. Id. at 1250-51. The Kik plaintiff did not assert actual knowledge or overt participation on behalf of Kik, and instead asserted that Kik had general knowledge of other sex trafficking incidents on the website. Id. at 1251. Thus, the Kik court found that Kik was entitled to Section 230 immunity because plaintiff had not plausibly alleged a claim that would surmount Section 230 immunity. Id.; see also Reddit, 2021 WL

5860904, at *8 (dismissing 18 U.S.C. § 1591 claim for failure to plead that ICS provider knowingly participated in a sex trafficking venture).

Just as in Kik, Plaintiffs here assert that Omegle had knowledge of prior instances of sex trafficking and knew that the platform had been used as a sex trafficking tool in the past. (Doc. # 75 at ¶¶ 39-43). They submit that this generalized knowledge is sufficient to place their 18 U.S.C. §§ 1591 and 1595 claims outside the bounds of CDA immunity. (Doc. # 81 at 5-6). Yet, just as in Kik, the asserted claims against Omegle are premised upon general, constructive knowledge of past sex trafficking incidents. (Doc. # 75 at ¶ 83) ("[Omegle] knowingly benefited from participation in what it knew or should have known was a sex trafficking venture . . . ."). The Second Amended Complaint fails to sufficiently allege Omegle's actual knowledge or overt participation in the underlying incident with John Doe. The generalized knowledge of past instances of sex trafficking are not enough to satisfy an exception to immunity. Reddit, 2021 WL 5860904 at *8; Kik, 482 F. Supp. 3d at 1251; see also Afyare, 632 F. App'x at 288 (interpreting 18 U.S.C. § 1591 to require actual participation in a sex trafficking venture rather than only requiring generalized knowledge of a venture).

Without allegations that Omegle had actual knowledge of, or overtly participated in the sex trafficking venture by John Doe, Plaintiffs fail to state a plausible sex trafficking claim that would escape CDA 230 immunity.

**E. <u>Leave to Amend</u>**

For the reasons explained above, each of Plaintiffs' claims must be dismissed. As posed in Plaintiffs' response, Plaintiffs ultimately seek to hold Omegle liable for the actions of John Doe. <u>See</u> (Doc. # 81 at 1) ("the rapidly evolving legal landscape . . . increasingly holds Internet Service Providers . . . liable for the harms they facilitate and oftentimes create."). Neither in their response to Omegle's Motion, nor at any time after have Plaintiffs moved for leave to amend the Second Amended Complaint. Despite Omegle's prior two motions to dismiss under the CDA, Plaintiffs do not provide any additional arguments or authority suggesting that their claims would otherwise survive CDA immunity. While leave to amend is typically granted, amendment in this case would be futile. <u>See</u> <u>Cockrell</u> <u>v. Sparks</u>, 510 F.3d 1307, 1310 (11th Cir. 2007) ("Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant."). Plaintiffs have had

multiple opportunities to assert claims that avoid the CDA's grant of immunity but have been unable to do so.

## IV.   **Conclusion**

Congress has instructed that claims for harm suffered at the hands of other users, without more, cannot justify redirecting liability to the forum where the harm took place. While the Court sympathizes with Plaintiffs over the harm C.H. suffered while using Omegle, the Court finds that they have nonetheless failed to plead claims that withstand Omegle's Section 230 Immunity.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   Defendant Omegle.com, LLC's Motion to Dismiss the Second Amended Complaint (Doc. # 75) is **GRANTED.** All Counts are **DISMISSED** without leave to amend.

(2)   The Clerk is directed to terminate any deadlines, deny any outstanding motions as moot, and thereafter, close the case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 10th day of January, 2022.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE