# RECORD NO. 22-10338

In The

# United States Court Of Appeals
# For The Eleventh Circuit

**M.H.; J.H.,**
**On behalf of their minor child, C.H.,**

*Plaintiffs - Appellants,*

v.

## OMEGLE.COM LLC,

*Defendant - Appellee.*

ON APPEAL FROM THE MIDDLE DISTRICT OF FLORIDA

————————

**BRIEF OF APPELLANTS**

————————

**James R. Marsh ***
**Jennifer Freeman**
**Margaret E. Mabie**
MARSH LAW FIRM, PLLC
**31 Hudson Yards Fl 11**
**New York, NY 10001**
**212-372-3030**

*Counsel for Appellants*

**Hillary Nappi**
**Frank R. Schirripa**
HACH ROSE SCHIRRIPA &
   CHEVERIE, LLP
**112 Madison Ave Fl 10**
**New York, NY 10016**
**212-213-8311**

*Counsel for Appellants*

*Gibson*Moore Appellate Services, LLC
206 East Cary Street ♦ P.O. Box 1406 (23218) ♦ Richmond, VA 23219
(804) 249-7770 ♦ www.gibsonmoore.net

## CERTIFICATE OF INTERESTED PERSONS AND APPELLATE RULE 26.1 CERTIFICATION

Appellants M.H. and J.H. on behalf of their minor child C.H., pursuant to Federal Rule of Appellate Procedure 26.1 and Circuit Rules 26.1–1, 26.1–2, and 26.1–3, hereby submit their Certificate of Interested Persons and Corporate Disclosure Statement.

In alphabetical order, following are all trial judges, attorneys, persons, association of persons, firms, partnerships, or corporations that have an interest in the outcome of this case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations and other identifiable legal entities related to a party:

- Abratt, Daniela – Attorney for Appellee
- Balasubramani, Venkat – Attorney for Appellee
- C.H. – Appellant (minor child)
- Covington, Virginia M. Hernandez – U.S. District Court Judge
- Focal PLLC – Attorneys for Appellee
- Freeman, Jennifer – Attorney for Appellants
- Gunning, Kimberlee – Attorney for Appellee
- Hach Rose Schirripa & Cheverie, LLP – Attorneys for Appellants

i

- Mabie, Margaret E. – Attorney for Appellants

- Marsh, James R. – Attorney for Appellants

- Marsh Law Firm PLLC – Attorneys for Appellants

- McGuire, James J. – Attorney for Appellee

- McNulty, Kevin – U.S. District Court Judge

- M.H. – Appellant (parent of minor child C.H.)

- Nappi, Hillary – Attorney for Appellants

- Omegle.com, LLC – Appellee

- Prusinowski, James T. – Attorney for Appellee (former)

- Schirripa, Frank R. – Attorney for Appellants

- Thomas & LoCicero, PL – Attorneys for Appellee

- Trimboli & Prusinowski – Attorneys for Appellee (former)

Appellants M.H. and J.H. on behalf of their minor child C.H.,
certify that no publicly traded company or corporation has an interest
in the outcome of this case or appeal.

_____/s/_____

James R. Marsh
*Counsel for Appellants*

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Federal Rule of Appellate Procedure 34(a)(2) and Eleventh Circuit Rule 28–1(c), Appellant believes that oral argument will assist the Court in deciding this appeal.

This appeal presents important questions concerning whether Section 230 of the Communications Decency Act applies to 18 U.S.C. § 2255 and whether an actual knowledge standard or constructive knowledge standard must be applied to find civil liability under 18 U.S.C. § 1595 in civil cases involving child pornography crimes. These are novel questions of first impression with unsettled law in this circuit. A robust discussion of these complex issues at oral argument will substantially assist the Court in its consideration of this appeal. Furthermore, oral argument will enhance the Court's understanding of the technology company Omegle.com, LLC which is at the core of this appeal. It will also allow the Court to explore the Appellant's arguments in greater detail.

# <u>TABLE OF CONTENTS</u>

CERTIFICATE OF INTERESTED PERSONS AND APPELLATE RULE 26.1 CERTIFICATION ....................................................i

STATEMENT REGARDING ORAL ARGUMENT ................................iii

TABLE OF CONTENTS ............................................................iv

TABLE OF CITATIONS ..........................................................vi

STATEMENT OF JURISDICTION.........................................1

STATEMENT OF THE ISSUES.............................................1

INTRODUCTION ....................................................................1

STATEMENT OF THE CASE ...............................................2

      BACKGROUND ...............................................................2

      PROCEDURAL HISTORY..............................................4

      STANDARD OF REVIEW ...............................................9

SUMMARY OF ARGUMENT ................................................13

ARGUMENT.........................................................................15

I.    SECTION 230 IMMUNITY DOES NOT APPLY TO CLAIMS UNDER 18 U.S.C. § 2255............................................15

    A.   CONGRESS NEVER INTENDED SECTION 230 TO LIMIT LIABILITY FOR ACTIVITIES RELATED TO CHILD PORNOGRAPHY....................................................16

II.   THE CONSTRUCTIVE KNOWLEDGE STANDARD APPLIES TO 18 U.S.C. § 1595....................................................20

CONCLUSION ........................................................................... 26

CERTIFICATE OF COMPLIANCE ....................................... 27

CERTIFICATE OF SERVICE................................................. 28

# <u>TABLE OF CITATIONS</u>

## <u>Cases</u>

*Amy v. Curtis,*
    2021 WL 858399 (N.D. Cal. Mar. 8, 2021) .................................... 15

*Almeida v. Amazon.com, Inc.,*
    456 F.3d 1316 (11th Cir. 2006) ...................................................... 17

*Ashcroft v. Free Speech Coal.,*
    535 U.S. 234 (2002) ........................................................................ 16

*Ashcroft v. Iqbol,*
    556 U.S. 662 (2009) .......................................................................... 9

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) .......................................................................... 9

*Brooks v. Blue Cross & Blue Shield of Fla. Inc.,*
    116 F.3d 1364 (11th Cir. 1997) ...................................................... 10

*Brown v. Budget Rent–A–Car Sys., Inc.,*
    119 F.3d 922 (11th Cir. 1997) .......................................................... 9

*Doe v. Bates,*
    2006 WL 3813758 (E.D. Tex. Dec. 27, 2006) ........................... 18, 19

*Doe v. Boland,*
    698 F.3d 877 (6th Cir. 2012) ..................................................... 15, 16

*Doe v. Kik Interactive, Inc.,*
    482 F. Supp. 3d 1242 (S.D. Fla. 2020) ..................................... 22, 23

*Doe v. Rickey Patel,* LLC,
    2020 WL 6121939 (S.D. Fla. Sept. 30, 2020) ................................. 21

*Doe v. Twitter, Inc.,*
    2021 WL 3675207 (N.D. Cal. Aug. 19, 2021) ........................... 18, 23

*Doe #1 v. MG Freesites, LTD*,
    2022 WL 407147 (N.D. Ala. Feb. 9, 2022) ........................... 18, 22, 25

*Harris v. Garner*,
    216 F.3d 970 (11th Cir. 2000) ........................................................ 17

*Harry v. Marchant*,
    291 F.3d 767 (11th Cir. 2002) .......................................................... 9

*Jane Doe No. 8 v. Royal Caribbean Cruises, Ltd.*,
    860 F. Supp. 2d 1337 (S.D. Fla. 2012) ........................................... 15

*Lemmon v. Snap, Inc.*,
    995 F.3d 1085 (9th Cir. 2021) ........................................................ 12

*M.A. v. Wyndham Hotels & Resorts, Inc.*,
    425 F. Supp. 3d 959 (S.D. Ohio 2019) ............................................ 25

*New York v. Ferber*,
    458 U.S. 747 (1982) ............................................................. 16, 19, 20

*Paroline v. United States*,
    572 U.S. 434 (2014) ....................................................................... 20

*Perfect 10, Inc. v. CCBill LLC*,
    488 F.3d 1102 (9th Cir. 2007) ........................................................ 17

*Smith v. Husband*,
    376 F. Supp 2d 603 (E.D. Va. 2005) ............................................... 21

*S.Y. v. Naples Hotel Co.*,
    2020 WL 4504976 (M.D. Fla. Aug. 5, 2020) .................................... 25

*Tilton v. Playboy Entm't Group, Inc.*,
    554 F.3d 1371 (11th Cir. 2009) ...................................................... 26

*United States v. Daniels*,
    685 F.3d 1237 (11th Cir. 2012) ...................................................... 24

*United States v. Hristov*,
    466 F.3d 949 (11th Cir. 2006) ........................................................ 26

*United States v. LaBonte*,
    520 U.S. 751 (1997) ........................................................................ 17

*United States v. Pruitt*,
    638 F.3d 763 (11th Cir. 2011) ........................................................ 24

*United States v. Williams*,
    564 F. App'x 568 (11th Cir. 2014) .................................................. 24

*Vanlandingham v. City of Abbeville, Alabama*,
    483 F. Supp. 3d 1174 (M.D. Ala. 2020) ........................................... 9

## Statutes

18 U.S.C. §§ 1589, 1590 ........................................................................ 16

18 U.S.C. § 1591 .......................................................................... *passim*

18 U.S.C. § 1595 .......................................................................... *passim*

18 U.S.C. §§ 2241(c), 2242, 2243, 2251 .................................................. 16

18 U.S.C. § 2252 .................................................................... 16, 18, 24

18 U.S.C. § 2255 .......................................................................... *passim*

18 U.S.C. § 2259 .................................................................... 19, 20

18 U.S.C. §§ 2260, 2421, 2422, 2423 ...................................................... 16

18 U.S.C. § 2710 .................................................................... 5, 7, 8

28 U.S.C. § 1291 .................................................................... 1, 9

28 U.S.C. § 1331 .................................................................... 1, 7, 8

28 U.S.C. § 1332 .................................................................. 4

47 U.S.C. § 230 .............................................................. *passim*

## Constitutional Provisions

U.S. Cons. amend. V ........................................................ 24

## Rules

Fed. R. App. 4(a)(1) ........................................................... 1

Fed. R. Civ. P. 8(a)(2) ....................................................... 9

Fed. R. Civ. P. 12(b)(6) ................................................. 7, 9

11th Cir. R. 31–1 ............................................................. 1

## Other Authorities

Cong. Rec. S14195 (12–20–05) .................................. 16

## STATEMENT OF JURISDICTION

The United States Court for the Middle District of Florida had jurisdiction under 28 U.S.C. § 1331 because federal questions under 18 U.S.C. § 2255 were presented in the Appellant's Second Amended Complaint. Doc. 75.

The district court entered the order appealed from on January 10, 2022. Doc. 90. Appellants filed a notice of appeal on February 11, 2022 which is timely pursuant to Local R. 31–1; Fed. R. App. 4(a)(1). Doc. 91. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291 because this appeal is from a final decision disposing of all claims against all parties.

## STATEMENT OF THE ISSUES

I.   Whether Section 230 of the Communications Decency Act (47 U.S.C. § 230) applies to 18 U.S.C. § 2255.

II.  Whether the actual knowledge or the constructive knowledge standard applies to civil liability claims under 18 U.S.C. § 1595.

## INTRODUCTION

M.H. and J.H. on behalf of their minor daughter C.H., appeal the January 10, 2022 order issued by the District Court for the Middle District of Florida dismissing their Second Amended Complaint.

The district court held that Section 230 of the Communications Decency Act[1] operates as a complete bar to the Appellant's case prior to discovery despite well–pleaded facts that Appellee had constructive knowledge of child pornography and child sex trafficking activities occurring on its website for years.

### STATEMENT OF THE CASE

**BACKGROUND**

During the COVID–19 pandemic, C.H., a then 11–year–old girl residing in New Jersey, attended school remotely using her school–provided Chromebook. Doc. 75 ¶54.

Omegle.com, LLC ("Omegle"), which is based in Florida, promotes, markets, and advertises itself as a place to "Talk to strangers!" Doc. 75 ¶43. Omegle positions itself as a "matchmaking" service to connect people with strangers via livestreaming video facilitated by its website. Doc. 75 ¶44. Omegle pairs users randomly and in some cases matches users according to similarities in conversations and subjects. Doc. 75 ¶¶33–34. Omegle does not require any age verification or authentication. Doc. 75 ¶37. Omegle fails to prevent minors under the

---

[1] 47 U.S.C. § 230 ("Section 230").

age of thirteen from accessing its website. Doc. 75 ¶¶38, 42. Since at
least 2016, the use of Omegle's website by child predators was known to
the public and to Omegle. Doc. 75 ¶41.

On or about March 31, 2020, C.H. accessed Omegle's website
Omegle.com. Doc. 75 ¶57. Omegle initially paired her with a group of
minors who appeared older. *Id*. Upon being paired in a second chat,
C.H. encountered a black screen. Shortly thereafter, C.H. saw text
being typed on the black screen. Doc. 75 ¶58. An unknown user
("John") provided C.H. with her own geolocation. John also
threatened to hack the cell phones and computers in C.H.'s house.
Doc. 75 ¶59. C.H. pleaded with John to leave her alone. Doc. 75 ¶60.
John then instructed C.H. to remove all her clothing, including her
underwear, and to touch, fondle, and masturbate her naked genitals
in front of the camera. Doc. 75 ¶61. C.H. pleaded with John and
offered gift cards to him in lieu of complying with his demands. Doc.
75 ¶61. John demanded that she remove her clothing and display her
genitals. Doc. 75 ¶61. Eventually C.H. complied with John's
demands, removed all her clothing, and touched herself in a sexually
explicit manner on camera. Doc. 75 ¶61. John recorded C.H.'s

actions, forever memorializing her child sex abuse performance. Doc. 75 ¶62.

Omegle is fully aware of the extent to which its website is used to sexually target, groom, exploit, and abuse children like C.H. Doc. 75 ¶43. Omegle manufactured a product which caters to child predators and receives value for the intended use of its website and related services. Doc. 75 ¶¶45–46. Omegle holds itself out to be a platform that "monitors" user content. Doc. 75 ¶¶50–52. Omegle actively matches underage children with adult strangers. Doc. 75 ¶¶50–52. Omegle also knew that its profits, in the form of increased web traffic and advertising revenue, were enhanced in part because child predators like John—who are known to Omegle as "cappers"—produce explicit recordings of children like C.H. and share them online. Doc. 75 ¶63.

**PROCEDURAL HISTORY**

Appellants reside in New Jersey and commenced this lawsuit on August 25, 2020 in the United States District Court for the District of New Jersey. Doc. 1. In their initial complaint, they argued that jurisdiction was proper pursuant to 28 U.S.C. § 1332 since there was diversity of citizenship between the parties. Doc. 1. Additionally, the

original complaint alleged violations of 18 U.S.C. § 2710 (the Video Privacy Protection Act) in addition to several state law claims. Doc. 1.

On November 20, 2020, Appellee–Defendant Omegle moved to dismiss the complaint arguing that the New Jersey district court lacked personal and subject matter jurisdiction and that the complaint failed to state a claim. Doc. 10. On March 19, 2021, the Honorable Kevin McNulty granted Omegle's motion to dismiss for lack of personal jurisdiction. Doc. 17. Judge McNulty also determined that since the district court lacked "the power to consider the motion to dismiss the case for failure to state a claim, it [was] denied as moot." Doc. 17. Judge McNulty stayed the "dismissal for 14 days to permit the parties to address the issue of a transfer of venue" to Oregon or Florida where Omegle was located based on admissions in the documents filed by Omegle and annexed to its motion to dismiss. Doc 17.

On April 2, 2021, the parties stipulated to a change of venue and asked the New Jersey district court to change the venue of the case to Florida. Doc. 20. On April 9, 2021, this case was transferred from the United States District Court for the District of New Jersey to the United States District Court for the Middle District of Florida Tampa

Division and assigned to Judge Virginia M. Hernandez Covington. Doc. 22.

Judge Hernandez Covington questioned venue and instructed the parties to "provide the Court with more information by April 16, 2021, as to whether this case is most directly connected to the Tampa Division, as opposed to the four other divisions within the Middle District of Florida." Doc. 25. In response, on April 16, 2021, Omegle filed papers explaining that "based on Omegle's location within Pinellas County, the Tampa Division would appear to be most directly connected to this action and/or is the division 'in which the action is most conveniently advanced.'" The attached declaration of Leif K-Brooks, founder and sole manager of Omegle, maintained that "Omegle is a limited liability company formed under the laws of the State of Oregon…. Omegle's principal place of business, mailing address, and registered agent address in Florida are all located in St. Petersburg, Pinellas County, Florida." Doc. 26–1. In response, Judge Hernandez Covington ordered the Plaintiffs–Appellants to file an amended complaint. Doc. 27.

6

On May 17, 2021, the Plaintiffs–Appellants filed their Amended Complaint which not only claimed diversity jurisdiction but also established that "[f]ederal subject matter jurisdiction is also proper pursuant to 28 U.S.C. § 1331 because this is a civil action arising under 18 U.S.C. § 2255." Doc. 48 ¶17. The Amended Complaint alleged violations of 18 U.S.C. § 2255(a) (alleging Omegle is liable pursuant to the federal civil remedy for personal injuries for activities related to child pornography); 18 U.S.C. §§ 1591 and 1595 (alleging Omegle knowingly benefitted from sex trafficking operation); 18 U.S.C. § 2710 (the Video Privacy Protection Act), and various state law claims. Doc. 17.

On June 8, 2021, Omegle filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) relying on the argument that it is entitled to immunity pursuant to Section 230 of the Communications Decency Act. Doc. 61. On September 15, 2021, Judge Hernandez Covington *sua sponte* dismissed Plaintiffs–Appellants' Amended Complaint as a so–called "shotgun pleading," but granted leave to file an amended complaint. Doc. 74.

On September 29, 2021, Plaintiffs–Appellants filed a Second Amended Complaint which also relied not solely on diversity jurisdiction but that "Federal subject matter jurisdiction is also proper pursuant to 28 U.S.C. § 1331 because this is a civil action arising under 18 U.S.C. § 2255." Doc. 75. The Second Amended Complaint again alleged violations of 18 U.S.C. § 2255(a) (Civil Remedy for Personal Injuries); 18 U.S.C. §§ 1591 and 1595 (alleging Omegle knowingly benefitted from sex trafficking operation); 18 U.S.C. § 2710 (the Video Privacy Protection Act), and various state law claims. Doc. 75.

On October 13, 2021, Omegle renewed its arguments in a motion to dismiss the Second Amended Complaint. Doc. 78. On January 10, 2022, the Court dismissed Plaintiffs–Appellants' Second Amended Complaint because Omegle was entitled to immunity under Section 230 of the Communications Decency Act. Doc. 90. Specifically, the Court found that "Omegle is entitled to immunity under CDA Section 230 because (1) it is an ICS provider under the CDA, (2) Plaintiffs' claims seek to treat Omegle as a publisher or speaker, and (3) the information at issue originated from another information provider, John Doe. Counts I through VIII are barred under the CDA." Doc. 90.

By order entered on January 10, 2022, the district court dismissed Plaintiffs–Appellants' Second Amended Complaint with prejudice. This order was immediately appealable as a final decision pursuant to 28 U.S.C. § 1291. Plaintiffs–Appellants timely filed their notice of appeal on January 28, 2022.

**STANDARD OF REVIEW**

This Court reviews *de novo* district court decisions on a motion to dismiss. Under this standard, the Court accepts the facts as true and construes all favorable inferences in the light most favorable to the plaintiff. *Harry v. Marchant*, 291 F.3d 767, 769 (11th Cir. 2002); *Brown v. Budget Rent–A–Car Sys., Inc.,* 119 F.3d 922, 923 (11th Cir. 1997).[2] Since the district court summarily granted Section 230 immunity to the Appellee's, the Appellants' claims under 18 U.S.C. §§ 1595 and 2255

---

[2] A Rule 12(b)(6) motion to dismiss tests whether the complaint provides: "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2). *See Vanlandingham v. City of Abbeville, Alabama*, 483 F. Supp. 3d 1174, 1179–80 (M.D. Ala. 2020). This "does not require 'detailed factual allegations.'" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). The reviewing court is "to draw on its judicial experience and common sense." *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A complaint should not be dismissed for failure to state claim unless no set of facts would entitle the plaintiff to relief. *See Twombly*, 550 U.S. at 570.

were dismissed without proper consideration "as true" with "all favorable inferences in the light most favorable to the plaintiff." The district court, in effect, improperly precluded consideration of the Appellant's claims by applying Section 230 as a sword and not as a shield.

In this case, the Appellants amply pleaded their claims and are entitled to the presumption that their facts are true with all reasonable inferences in their favor. *Brooks v. Blue Cross & Blue Shield of Fla. Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

In reviewing this case *de novo*, the Court should restore the proper balance between the motion to dismiss standard and the application of Section 230 immunity. Only after construing all favorable inferences in the light most favorable to the plaintiff should the Court evaluate the Appellee's Section 230 preclusion arguments and even then, the Appellant's facts and favorable inferences should override the Appellee's unsupported conclusions. This is especially true when there has been zero discovery and absolutely no opportunity to pierce the technology veil to uncover the inner workings of Omegle's algorithms, profit model, actual or constructive knowledge, product design, and content moderation and monetization.

10

The following is one example of the district court's erroneous parsing of the Appellants' pleading:

> Plaintiffs acknowledge that Omegle is not impervious to attack — hackers can screenshot their activity with other users and use those screenshots to obtain others' personal identifying information. (Doc. # 75 at ¶ 38).

Doc. 90, p. 13. Appellants' Second Amended Complaint, however, states as follows:

> Omegle.com is vulnerable to hacking. As a result, a user can grab screenshots of previous conversations and then utilize that data to obtain another user's geographic location.

Doc. 75 ¶ 38. Appellants are not pleading that John Doe used only the screenshot itself to obtain others' personal identifying information, but that, as a result of Omegle's data collection and vulnerability to hacking, John Doe was able to "grab screenshots" of user "conversations and then utilize **that data** to obtain another user's geographic location." (emphasis added). Although this is a seemingly subtle difference, Appellants clearly pleaded that it is the data leaked by Omegle's vulnerability to hacking that is a factual basis for liability in this case and not, as the district court incorrectly assumes "Plaintiffs' position that Omegle should be held responsible for John Doe's conduct."

11

In other words, the Appellants are not arguing that Omegle should be held responsible for John Doe's conduct, the Appellants are arguing that Omegle should be held responsible for Omegle's conduct, including the improper or intentional leaking of minor users' personal identifying information such as their "geographic location."[3]

Imprudent dismissal is one of the risks of deciding complex technology–based cases at the motion to dismiss stage without the benefit of fact discovery. Internet service providers ("ISPs") should not be allowed to hide behind the fog of technology and web operations

---

[3] As such, Omegle has an inherent design defect as aptly stated in Appellant's pleadings: "Since at least 2016, the use of Omegle's website by predators was known to the public and to Omegle. (Dkt. 75 ¶41). Activists have recorded videos of themselves on Omegle attempting to catch predators. (Dkt. 75 ¶40–41). Omegle has full knowledge of the extent to which its website is used to sexually target, groom, exploit, and abuse children like the Plaintiff C.H. (Dkt. 75 ¶43). Omegle manufactured a product which caters to child predators and receives value for the intended use of its website and related services. (Dkt. 75 ¶¶45–46)"

Appellants advanced this very argument in their response to Omegle's motion to dismiss: "The Plaintiff's claims are premised on Omegle's status as the designer, creator, developer, producer, and maintainer of a tool that Omegle knew or should have known posed a danger to children like C.H. Omegle's duty to design a safe product is fully independent and separate from Omegle's role in monitoring or publishing third–party content. *See Lemmon v. Snap, Inc.*, 995 F.3d 1085 (9th Cir. 2021)." Doc. 81, p. 7.

that only they fully understand. Section 230 was meant to be a shield and not a sword. The Court should remain committed to the principles that require it to accept the Appellants' facts as true and construe all favorable inferences in the light most favorable to M.H., J.H., and C.H.

## SUMMARY OF ARGUMENT

Section 230 immunity does not apply to causes of action under 18 U.S.C. §§ 2255 and 1595.

Section 230 immunity does not apply to Masha's Law (18 U.S.C. § 2255) which is a broad remedial statute designed to provide a robust civil remedy to victims of child pornography. Governments have a compelling interest in protecting children from abuse, the value of using children in pornography is non–existent, and the market for child pornography is intrinsically related to the underlying abuse.

Congress never intended Section 230 to limit liability for activities related to the evils of child pornography. Both the statutory history and the plain language of Masha's Law supports the conclusion that Section 230 immunity does not apply. Child pornography is illegal

contraband, stemming from the sexual abuse of a child, beyond First Amendment protection, and outside any other protection or immunity under the law, including Section 230 which has no effect on criminal law.

The constructive knowledge standard applies to 18 U.S.C. § 1595. While sections 1591 and 1595 both include provisions for beneficiary liability, the criminal statute (18 U.S.C. § 1591) requires that the defendant have actual knowledge of sex trafficking at issue while the civil statute (18 U.S.C. § 1595) allows a plaintiff to plead that the defendant merely had constructive knowledge. In this civil case, the Appellants are not even required to prove that Omegle had actual knowledge because beneficiary liability is available under Section 1595.

The Court should not impose a criminal mens rea requirement on civil child pornography remedies and instead should hold that the scienter required for civil liability is less than the scienter required for criminal culpability.

## ARGUMENT

## I.    SECTION 230 IMMUNITY DOES NOT APPLY TO CLAIMS UNDER 18 U.S.C. § 2255

The district court erred by failing to distinguish Appellant's child pornography claims under Masha's Law (18 U.S.C. § 2255) from Appellant's child pornography trafficking claims under 18 U.S.C. § 1595. Doc 90, p. 12–13.

Section 230 immunity does not apply to Masha's Law because Masha's Law, which addresses the evils of child pornography, is not only different than an "ordinary tort" statute, it deals with speech which is not Constitutionally protected. *Doe v. Boland*, 698 F.3d 877, 883 (6th Cir. 2012) ("the 'evil' of child pornography 'so overwhelmingly outweighs the expressive interests, if any, at stake' in this form of communication that it lies categorically beyond constitutional protection…. The rationale is straightforward: Governments have a compelling interest in protecting children from abuse, the value of using children in pornography is non–existent, and the market for child pornography is "intrinsically related" to the underlying abuse) *See also Amy v. Curtis*, 2021 WL 858399, at *4 (N.D. Cal. Mar. 8, 2021) (quoting *Doe v. Boland*, 698 F.3d 877, 882 (6th Cir. 2012); *Jane Doe No. 8 v.*

15

*Royal Caribbean Cruises, Ltd.*, 860 F. Supp. 2d 1337, 1340 (S.D. Fla. 2012) ("the broad remedial purpose of § 2255—prescribing a minimum amount of statutory damages—would appear to counsel against limiting the scope of civil liability").[4]

## A.  CONGRESS NEVER INTENDED SECTION 230 TO LIMIT LIABILITY FOR ACTIVITIES RELATED TO CHILD PORNOGRAPHY

Masha's Law, which was enacted in 2005—nine years after Section 230—was intended "to provide meaningful civil remedies for victims of the sexual exploitation of children…." Cong. Rec. S14195 (12–20–05). The Appellants pleaded that Omegle knowingly facilitated the production of C.H.'s child pornography in violation of Masha's Law.[5] Doc. 75, pp. 15–16.

---

[4] "Like a defamatory statement," child pornography injures a child's "reputation and emotional well–being," *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 249 (2002) and violates "the individual interest in avoiding disclosure of personal matters," *New York v. Ferber,* 458 U.S. 747, 759 n. 10 (1982) *See also Doe v. Boland*, 698 F.3d 877, 880 (6th Cir. 2012).

[5] Any person who, while a minor, was a victim of a violation of section 1589, 1590, 1591, 2241(c), 2242, 2243, 2251, 2251A, 2252, 2252A, 2260, 2421, 2422, or 2423 of this title and who suffers personal injury as a result of such violation, regardless of whether the injury occurred while such person was a minor, may sue in any appropriate United States District Court and shall recover the actual damages such person

A plain reading of Section 2255's non–limiting language indicates that it allows child pornography victims to "sue [anyone] in any appropriate United States District Court." Congress did not limit actionable defendants to convicted criminals, individuals, or entities. As long as a victim like C.H. can gain jurisdiction over a party "in any appropriate United States District Court," she can sue anyone who has violated any of the criminal predicates.[6]

Section 230 immunity is limited. For instance, pursuant to 47 U.S.C. § 230(e)(2), ISPs are not immune from suit for violations of federal intellectual property claims. *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1322 (11th Cir. 2006); *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118 (9th Cir. 2007). Similarly, Section 230 includes a crucial exemption that "[n]othing in this section shall be construed to

_____

sustains or liquidated damages in the amount of $150,000, and the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred. The court may also award punitive damages and such other preliminary and equitable relief as the court determines to be appropriate.

[6]*Harris v. Garner,* 216 F.3d 970, 972 (11th Cir. 2000) ("where courts should always begin the process of legislative interpretation, and where they often should end it as well, which is with the words of the statutory provision"); *United States v. LaBonte,* 520 U.S. 751, 757 (1997). ("[W]e assume that in drafting legislation, Congress said what it meant.")

17

impair… chapter…110 (relating to sexual exploitation of children) of Title 18….” 47 U.S.C. § 230(e)(1). Although this provision was historically deemed inapplicable to child pornography civil cases, recent decisions have held otherwise. Compare *Doe v. Bates*, 2006 WL 3813758, at \*3 (E.D. Tex. Dec. 27, 2006) (“immunity from all private civil liability comports with the clear Congressional policies to avoid disincentives to innovation and to encourage self–regulation”) and *Doe v. Twitter, Inc.*, 2021 WL 3675207, at \*31 (N.D. Cal. Aug. 19, 2021) (under Ninth Circuit authority “immunity under Section 230 is not defeated by the fact that the third–party content at issue is illegal child pornography”), with *Doe #1 v. MG Freesites, LTD*, 2022 WL 407147, at \*22 (N.D. Ala. Feb. 9, 2022) (“child pornography is not lawful ‘information provided by another information content provider’ as contemplated by Section 230…. Rather, it is illegal contraband, stemming from the sexual abuse of a child, beyond the covering of First Amendment protection, and outside any other protection or immunity under the law, including Section 230”…which “has ‘no effect on criminal law,’ including chapter 110 of Title 18, which contains sections 2252 and 2252A.”)

Masha's Law was enacted to provide broad federal civil remedies for victims of the evils of child pornography, material which is beyond constitutional free speech protections. If child pornography is beyond constitutional scrutiny, then it is similarly beyond Section 230 immunity. No company and no forum—let alone the Internet which has hugely exasperated the lifelong negative impact of child pornography on its victims—should be immune from the government's "compelling interest in protecting children from abuse." Appellee is one among many companies which are facilitating and profiting from abuse with impunity, despite the fact that child pornography is completely unprotected speech. *New York v. Ferber*, 458 U.S. 747, 759 (1982). Congress never intended to exempt an entire virtual child sex abuse industry from liability under Masha's Law and no such exemption is explicit or implicit in the statute.[7]

Addressing Section 2255's companion criminal restitution statute, 18 U.S.C. § 2259, the Supreme Court recently held that:

> With respect to the statute's remedial purpose, there can be
> no question that it would produce anomalous results to say
> that no restitution is appropriate in these circumstances. It

---

[7] The "self–regulation" relied upon 16 years ago in *Doe v. Bates* has utterly and completely failed.

19

is common ground that the victim suffers continuing and
grievous harm as a result of her knowledge that a large,
indeterminate number of individuals have viewed and will in
the future view images of the sexual abuse she endured.…
Harms of this sort are a major reason why child pornography
is outlawed. *See Ferber*, 458 U.S., at 759, 102 S. Ct. 3348.
The unlawful conduct of everyone who reproduces,
distributes, or possesses the images of the victim's abuse—
including Paroline—plays a part in sustaining and
aggravating this tragedy. And there can be no doubt
Congress wanted victims to receive restitution for harms like
this. The law makes restitution "mandatory," § 2259(b)(4),
for child–pornography offenses under Chapter 110, language
that indicates Congress' clear intent that victims of child
pornography be compensated by the perpetrators who
contributed to their anguish. It would undermine this intent
to apply the statute in a way that would render it a dead
letter in child–pornography prosecutions of this type.

*Paroline v. United States*, 572 U.S. 434, 457 (2014).

This Court should similarly refuse to render Section 2255 "a dead

letter" producing "anomalous results" concerning Section 230's

application to the broad remedial civil remedies guaranteed by Masha's

Law.

## II. THE CONSTRUCTIVE KNOWLEDGE STANDARD APPLIES TO 18 U.S.C. § 1595

Appellants also assert liability under 18 U.S.C. § 1595, the Fight

Online Sex Trafficking Act ("FOSTA). To establish a cause of action

under Section 1595, a plaintiff must simply plead that the defendant

"(1) knowingly benefit[ted] financially or by receiving anything of value;

(2) from participation in a venture; (3) it knew or should have known

has engaged in sex trafficking under section 1591." *Doe v. Rickey Patel*,

LLC, 2020 WL 6121939, at *3 (S.D. Fla. Sept. 30, 2020) (internal

quotation marks omitted).

     In asserting a cause of action, a plaintiff need only allege a

predicate sex trafficking violation under Section 1591 which is a

criminal statute. Similar to Masha's Law, however, a plaintiff does not

need to show that a defendant was criminally liable, charged, or

prosecuted.[8] This distinction is crucial because civil and criminal

liability do not bear the same burdens of proof. While Sections 1591 and

1595 both allow for beneficiary liability, the latter civil statute allows a

plaintiff to plead that the defendant had constructive knowledge. As a

criminal statute, Section 1591 uses the actual knowledge standard in

the context of criminal liability which also bears a higher burden of

proof.

---

[8] *See Smith v. Husband*, 376 F. Supp 2d 603 (E.D. Va. 2005) (finding that private cause of action under 18 U.S.C. § 2255 based on violation of predicate criminal offense does not require a prior criminal conviction).

21

It is useful to compare 18 U.S.C. § 1591(a)(2) (making it unlawful to "benefit[ ], financially or by receiving anything of value, from participation in a venture which has engaged in" sex trafficking) and 1591(e)(4) (defining "participation in a venture" as "knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)) with 18 U.S.C. § 1595(a) (allowing sex trafficking victims to bring civil claims against "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter"). *Doe #1 v. MG Freesites, LTD*, 2022 WL 407147, at *11 (N.D. Ala. Feb. 9, 2022). ("This distinction is crucial because, while sections 1591 and 1595 both include provisions for beneficiary liability, the criminal statute requires that the defendant have actual knowledge of sex trafficking at issue while the civil statute allows a plaintiff to plead that the defendant merely had constructive knowledge.")

The district court dismissed the Appellant's case in part based on another district court's holding in *Doe v. Kik Interactive, Inc.*, 482 F. Supp. 3d 1242, 1251 (S.D. Fla. 2020) which found that "FOSTA permits civil liability for websites only 'if the conduct underlying the

22

claim constitutes a violation of section 1591.' And section 1591 requires knowing and active participation in sex trafficking by the defendants."

In *Doe v. Twitter, Inc.*, 2021 WL 3675207, at *24 (N.D. Cal. Aug. 19, 2021), the district court disagreed with much of the reasoning in *Doe v. Kik*, finding:

> There is no question that FOSTA is a remedial statute in that it carves out exceptions to CDA § 230 immunity, thereby affording remedies to victims of sex trafficking that otherwise would not have been available. Moreover, the broader statutory framework suggests that the *Kik* court's reading of FOSTA improperly adopted the most restrictive reading of that provision when there is an equally (or more) plausible reading of the plain language of FOSTA.

The *Twitter* court instead ruled that "Plaintiffs' Section 1595 claim against Twitter based on alleged violation of Section 1591(a)(2) is not subject to the more stringent requirements that apply to criminal violations of that provision.' *Id*. at *25. The court concluded that:

> as a general matter, where a plaintiff seeks to impose civil liability under Section 1595 based on a violation of Section 1591(a)(2), not only does the "known or should have known" language of Section 1595 apply (rather than the actual knowledge standard of Section 1591(a)) but such a claim also does not require that a plaintiff demonstrate an overt act

23

that furthered the sex trafficking aspect of the venture in order to satisfy the "participation in a venture" requirement.

*Id.* at *23.

Appellants have alleged that Omegle has long known that "cappers" use its website to sexually abuse children and memorialize that abuse online for eternity. Doc. 75 ¶¶ 55, 63. Appellants have also properly alleged that Omegle "knowingly" violated 18 U.S.C. § 2252A. According to this circuit's well–established precedence, "courts will address "knowing[ ] recei[pt]" mainly as issues of fact, not of law" *United States v. Pruitt*, 638 F.3d 763, 766–67 (11th Cir. 2011). In addition, "[a]lthough there is a general presumption that a knowing mens rea applies to every element in a statute, cases concerned with the protection of minors are within a special context, where that presumption is rebutted." *United States v. Daniels*, 685 F.3d 1237, 1248–49 (11th Cir. 2012). *See also United States v. Williams*, 564 F. App'x 568, 571 (11th Cir. 2014) ("nothing in the Fifth Amendment requires the government to prove that Williams actually knew the girls were underage. In fact, Congress likely could have eliminated the relevant mens rea altogether without triggering constitutional concerns."). Deciding these "issues of fact, not of law" on a motion to dismiss is improper.

24

Furthermore, in this civil case the Appellants are not even required to prove that Omegle had actual knowledge because beneficiary liability is available under Section 1595. *See Doe #1 v. MG Freesites, LTD,* 2022 WL 407147, at *7 (N.D. Ala. Feb. 9, 2022) ("trafficking victims may use section 1595 to pursue civil claims against perpetrators of trafficking (direct liability) or those who knowingly benefit financially from trafficking (beneficiary liability").

Courts have determined that plaintiffs need not satisfy the definitions that apply to criminal prosecutions under Section 1591(a) to establish civil liability under Section 1595(a). *See S.Y. v. Naples Hotel Co.,* 2020 WL 4504976, at *2 (M.D. Fla. Aug. 5, 2020) (conducting thorough review of beneficiary liability for Section 1595 claims); *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 969 (S.D. Ohio 2019) (The "language of § 1591 differs from the language of § 1595" in that "the former does not have a constructive knowledge element manifested by 'should have known' language.").

The Court should not impose a criminal mens rea requirement on civil child pornography remedies. For all the above reasons, the Court should hold that the scienter required for civil liability is less than the

scienter required for criminal culpability. The Appellants have sufficiently pleaded facts that Omegle received a thing of value, declared that they monitor the activity on their website, and were aware of "cappers" and child sex abuse predators on their platform. Doc 75, ¶55. Such knowledge makes them liable. Furthermore, Appellants have alleged that Omegle "knowingly" matched a minor like C.H. with a predator like "Doe." Doc. 75, ¶41–43. "Knowledge through deliberate indifference occurs where a party acts with an awareness of the high probability of the existence of the fact in question[.]" *Tilton v. Playboy Entm't Group, Inc.*, 554 F.3d 1371, 1378 (11th Cir. 2009) (*quoting United States v. Hristov*, 466 F.3d 949, 952 (11th Cir. 2006)).

## CONCLUSION

For all the foregoing reasons, the Court should vacate the district court's order dismissing this case and remand this matter for a determination on the merits.

Dated:     March 14, 2022
           New York, New York

Respectfully submitted,

James R. Marsh
MARSH LAW FIRM PLLC
31 Hudson Yards, 11th Floor
New York, New York 10001
Email: jamesmarsh@marsh.law
Phone: 212–372–3030

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because this brief contains 5,165 words, excluding those parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office 2016 in Century Schoolbook 14 point.

James R. Marsh

## **CERTIFICATE OF SERVICE**

The undersigned certifies that he filed this pleading through the court's electronic filing system and that all parties requesting electronic notice of pleadings have been served with the pleading.

_____
James R. Marsh