# RECORD NO. 22-10338

*In The*

# United States Court Of Appeals
## For The Eleventh Circuit

### M.H.; J.H.,
### On behalf of their minor child, C.H.,

*Plaintiffs - Appellants,*

v.

### OMEGLE.COM LLC,

*Defendant - Appellee.*

## ON APPEAL FROM THE MIDDLE DISTRICT OF FLORIDA

_____

### APPELLANTS' APPENDIX
### VOLUME I OF II

_____

James R. Marsh *
Jennifer Freeman
Margaret E. Mabie
MARSH LAW FIRM, PLLC
31 Hudson Yards Fl 11
New York, NY 10001
212-372-3030

*Counsel for Appellants*

Hillary Nappi
Frank R. Schirripa
HACH ROSE SCHIRRIPA &
  CHEVERIE, LLP
112 Madison Ave Fl 10
New York, NY 10016
212-213-8311

*Counsel for Appellants*

# TABLE OF CONTENTS
## Volume I of II

TAB:

Docket Entries. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . DE

M.H. and J.H., on Behalf of Their Minor Child, C.H.'s
Complaint
       filed August 25, 2020 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Defendant Omegle.com, LLC's
Motion to Dismiss Complaint
       filed November 20, 2020.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Plaintiffs' Memorandum in Opposition to
Motion to Dismiss Complaint,
With Attachments
       filed January 5, 2020. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

       Attachments:

      1.    Declaration of Hillary Nappi
             sworn January 5, 2020 [DE15-1]

      2.    Ex. A: Stipulation Order
             dated March 27, 2019 [DE15-21]

Defendant Reply in Support of
Motion to Dismiss Complaint Pursuant to
Fed. R. Civ. P. 12(b) & 12(b)(6)
       filed January 12, 2020. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Judge Kevin McNulty's Opinion
       filed March 19, 2021. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Order
Granting Motion to Dismiss will be Stayed for 14 Days
      filed March 19, 2020. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Plaintiffs' Stipulation for Transfer of Venue to the
U.S. District Court for the Middle District of Florida
      filed April 1, 2021. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Plaintiffs' Stipulation for Transfer of Venue to the
United States District Court for the Middle District of Florida
      filed April 5, 2021. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Case Transfer in from the District of New Jersey
      filed April 9, 2021. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Endorsed Order
Transferring Case from District of New Jersey to the
Tampa Division of Florida
      filed April 9, 2021. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Defendant's Response to Court Order
      filed April 16, 2021. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

      Attachment:

      1.    Declaration of Leif K-Brooks in Support of
            Defendant's Response to Court's Order [DE26-1]

Endorsed Order
Case Transferred Plaintiff's Directed to file an
Amended Complaint
      filed April 16, 2021. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

**Amended Complaint**

  **filed May 17, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **48**

**Defendant's Motion to Dismiss the**

**Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)**

  **filed June 8, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **61**

# TABLE OF CONTENTS
## Volume II of II

TAB:

**Order**
**That Plaintiffs may file a Second Amended Complaint**
     **filed September 15, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **74**

**Second Amended Complaint**
     **filed September 29, 2021** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **75**

**Defendant's Motion to Dismiss Second Amended Complaint**
**for Failure to State a Claim**
     **filed October 13, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **78**

**Plaintiff's Memorandum in Opposition to Motion to Dismiss**
     **filed November 3, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **81**

**Defendant's Reply Memorandum in Support of Motion to**
**Dismiss the Second Amended Complaint**
**Pursuant to Fed. R. Civ. P. 12(b)(6),**
**With Appendix A,**
     **filed November 15, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **84**

     **Appendix A: Order dated October 26, 2021 [DE84-1]**

**Endorsed Order**
**Granting Defendant's Motion to**
**Dismiss Second Amended Complaint**
     **filed January 10, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **90**

**Plaintiffs' Notice of Appeal**
     **filed January 28, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **91**

**CERTIFICATE OF FILING AND SERVICE**

# TAB DE

APPEAL, CLOSED, MEDIATION, TRLSET

# U.S. District Court
## Middle District of Florida (Tampa)
## CIVIL DOCKET FOR CASE #: 8:21-cv-00814-VMC-TGW

M.H. et al. v. Omegle.com LLC

Assigned to: Judge Virginia M. Hernandez Covington

Referred to: Magistrate Judge Thomas G. Wilson

Case in other court:  11th Circuit, 22-10338-A

                New Jersey, 2:20-cv-11294

Cause: 28:1332 Diversity-Personal Injury

Date Filed: 04/09/2021

Date Terminated: 01/10/2022

Jury Demand: Plaintiff

Nature of Suit: 360 P.I.: Other

Jurisdiction: Diversity

### Plaintiff

**M. H.**
*on behalf of their minor child, C.H.*

represented by **Frank Rocco Schirripa**
Hach Rose Schirripa & Cheverie
545 Hall of Justice
Suite 10th Floor
Rochester, NY 10016
212-213-8311
Email: fschirripa@hrsclaw.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Hillary Mara Nappi**
Hach Rose Schirripa & Cheverie LLP
112 Madison Ave
New York, NY 10016
646-992-8138
Email: hnappi@hrsclaw.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jennifer Freeman**
Marsh Law Firm
31 Hudson Yards, 11th Flr
New York, NY 10001
212-372-3030
Email: jenniferfreeman@marsh.law
*ATTORNEY TO BE NOTICED*

**Margaret Elizabeth Mabie**
Marsh Law Firm PLLC
31 Hudson Yards, 11th Floor
New York, NY 10001
315-296-9046
Email: margaretmabie@marsh.law

*ATTORNEY TO BE NOTICED*

**Plaintiff**

**J. H.**
*on behalf of their minor child, C.H.*

represented by **Frank Rocco Schirripa**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Hillary Mara Nappi**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jennifer Freeman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Margaret Elizabeth Mabie**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Omegle.com LLC**

represented by **James J. McGuire**
Thomas & LoCicero, PL
601 South Blvd
Tampa, FL 33606-2629
813/984-3060
Fax: 813/984-3070
Email: jmcguire@tlolawfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Thomas Prusinowski**
Trimboli & Prusinowski
268 South St.
Morristown, NJ 07960
973-660-1095
Fax: 973-349-1307
Email: jprusinowski@trimprulaw.com
*TERMINATED: 09/09/2021*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stacia N. Lay**
Focal PLLC
900 Ist Ave. South , Suite 201
Seattle, WA 98134

206-529-4827
Email: stacia@focallaw.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Venkat Balasubramani**
Focal PLLC
900 1st Ave. South, Suite 201
Seattle, WA 98134
206-529-4827
Email: venkat@focallaw.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniela Abratt**
Thomas & LoCicero, PL
915 Middle River Dr Ste 309
Ft Lauderdale, FL 33304-3560
954-703-3416
Email: dabratt@tlolawfirm.com
*ATTORNEY TO BE NOTICED*

**Kimberlee Gunning**
Focal PLLC
900 1st Avenue S.
Suite 201
Seattle, WA 98134
206-529-4827
Email: kim@focallaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Mediator**

**Gregory Holder**                     represented by  **Gregory P. Holder**
Zinober Diana and Monteverde PA
607 West Horatio Street
Tampa, FL 33606
813-773-5106
Fax: 727-498-8902
Email: greg@zinoberdiana.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/25/2020 | 1 | COMPLAINT against OMEGLE.COM LLC ( Filing and Admin fee $ 400 receipt number ANJDC-11255722) with JURY DEMAND, filed by M.H. AND J.H., ON BEHALF OF THEIR MINOR CHILD, C.H.. (Attachments: # 1 Civil Cover Sheet)(NAPPI, HILLARY) [Transferred from njd on 4/9/2021.] (Entered: 08/25/2020) |
| 08/25/2020 | | Case assigned to Judge Kevin McNulty and Magistrate Judge James B. Clark. (jr) |

| 08/25/2020 | 2 | SUMMONS ISSUED as to OMEGLE.COM LLC. Attached is the official court Summons, please fill out Defendant and Plaintiffs attorney information and serve. (wh) [Transferred from njd on 4/9/2021.] (Entered: 08/25/2020) |
| 10/20/2020 | 3 | NOTICE of Appearance by JAMES THOMAS PRUSINOWSKI on behalf of All Defendants (PRUSINOWSKI, JAMES) [Transferred from njd on 4/9/2021.] (Entered: 10/20/2020) |
| 10/20/2020 | 4 | STIPULATION re 1 Complaint *Extending time to Answer/Plead* by All Defendants. (PRUSINOWSKI, JAMES) [Transferred from njd on 4/9/2021.] (Entered: 10/20/2020) |
| 10/21/2020 | 5 | STIPULATION AND ORDER extending Defendant Omegle.com's time to move, answer, or otherwise respond to the Complaint up to and including November 20, 2020. Signed by Magistrate Judge James B. Clark on 10/21/20. (jc, ) [Transferred from njd on 4/9/2021.] (Entered: 10/21/2020) |
| 10/21/2020 |  | Answer Due Deadline Update - The 4 Stipulation filed by the parties has been GRANTED. The answer due date for OMEGLE.COM LLC has been set for 11/20/2020. (jc, ) [Transferred from njd on 4/9/2021.] (Entered: 10/21/2020) |
| 11/13/2020 | 6 | MOTION for Leave to Appear Pro Hac Vice by All Defendants. (Attachments: # 1 Certification of James T. Prusinowski, # 2 Certification of Venkat Balasubramani, # 3 Certification of Stacia Lay, # 4 Text of Proposed Order)(PRUSINOWSKI, JAMES) [Transferred from njd on 4/9/2021.] (Entered: 11/13/2020) |
| 11/13/2020 |  | Set Deadlines as to 6 MOTION for Leave to Appear Pro Hac Vice . Motion set for 12/7/2020 before Judge Kevin McNulty. Unless otherwise directed by the Court, this motion will be decided on the papers and no appearances are required. Note that this is an automatically generated message from the Clerk`s Office and does not supersede any previous or subsequent orders from the Court. (lag, ) [Transferred from njd on 4/9/2021.] (Entered: 11/13/2020) |
| 11/16/2020 | 7 | ORDER granting 6 Motion for Leave to Appear Pro Hac Vice as to Venkat Balasubramani, Esq. and Stacia N. Lay, Esq. etc. Signed by Magistrate Judge James B. Clark on 11/16/2020. (ams, ) Modified on 11/18/2020 (ams, ). [Transferred from njd on 4/9/2021.] (Entered: 11/16/2020) |
| 11/18/2020 |  | Pro Hac Vice fee: $ 300, receipt number NEW043773 as to Venkat Balasubrani and Stacia Lay (ams, ) [Transferred from njd on 4/9/2021.] (Entered: 11/18/2020) |
| 11/18/2020 | 8 | Notice of Request by Pro Hac Vice Stacia N. Lay to receive Notices of Electronic Filings. (PRUSINOWSKI, JAMES) [Transferred from njd on 4/9/2021.] (Entered: 11/18/2020) |
| 11/18/2020 | 9 | Notice of Request by Pro Hac Vice Venkat Balasubramani to receive Notices of Electronic Filings. (PRUSINOWSKI, JAMES) [Transferred from njd on 4/9/2021.] (Entered: 11/18/2020) |
| 11/18/2020 |  | Pro Hac Vice counsel, VENKAT BALASUBRAMANI and STACIA N. LAY, has been added to receive Notices of Electronic Filing. Pursuant to L.Civ.R. 101.1, only local counsel are entitled to sign and file papers, enter appearances and receive payments on judgments, decrees or orders. (lag, ) [Transferred from njd on 4/9/2021.] (Entered: 11/18/2020) |
| 11/20/2020 | 10 | MOTION to Dismiss *Complaint* by All Defendants. Responses due by 12/7/2020 (Attachments: # 1 Brief MOL in supp of Motion, # 2 Declaration Declaration in supp of Motion, # 3 Text of Proposed Order Proposed Order)(PRUSINOWSKI, JAMES) [Transferred from njd on 4/9/2021.] (Entered: 11/20/2020) |

| | | |
|---|---|---|
| 11/20/2020 | | Set Deadlines as to 10 MOTION to Dismiss *Complaint*. Motion set for 12/21/2020 before Judge Kevin McNulty. Unless otherwise directed by the Court, this motion will be decided on the papers and no appearances are required. Note that this is an automatically generated message from the Clerk`s Office and does not supersede any previous or subsequent orders from the Court. (lag, ) [Transferred from njd on 4/9/2021.] (Entered: 11/20/2020) |
| 11/20/2020 | 11 | NOTICE of Appearance by FRANK ROCCO SCHIRRIPA on behalf of J. H., M. H. (SCHIRRIPA, FRANK) [Transferred from njd on 4/9/2021.] (Entered: 11/20/2020) |
| 11/30/2020 | 12 | Rule 7.1(d)(5) Letter for an automatic extension of the return date of a dispositive motion re 10 MOTION to Dismiss *Complaint* . (NAPPI, HILLARY) [Transferred from njd on 4/9/2021.] (Entered: 11/30/2020) |
| 12/01/2020 | | Reset Deadlines as to 10 MOTION to Dismiss *Complaint*. Motion reset for 1/4/2021 before Judge Kevin McNulty. Unless otherwise directed by the Court, this motion will be decided on the papers and no appearances are required. Note that this is an automatically generated message from the Clerk`s Office and does not supersede any previous or subsequent orders from the Court. (nic) Modified on 12/9/2020 (dam) [Transferred from njd on 4/9/2021.] (Entered: 12/01/2020) |
| 12/10/2020 | 13 | STIPULATION re Set/Reset Motion and R&R Deadlines/Hearings, *to January 19, 2021* by OMEGLE.COM LLC. (PRUSINOWSKI, JAMES) [Transferred from njd on 4/9/2021.] (Entered: 12/10/2020) |
| 12/11/2020 | 14 | STIPULATION AND ORDER Extending Time to Respond to Motion to Dismiss. Signed by Judge Kevin McNulty on 12/11/2020. (ams, ) [Transferred from njd on 4/9/2021.] (Entered: 12/11/2020) |
| 12/11/2020 | | Reset Deadlines as to 10 MOTION to Dismiss Complaint. Motion reset for 1/19/2021 before Judge Kevin McNulty. Unless otherwise directed by the Court, this motion will be decided on the papers and no appearances are required. Note that this is an automatically generated message from the Clerk's Office and does not supersede any previous or subsequent orders from the Court. (ams) Modified on 12/15/2020 (dam) [Transferred from njd on 4/9/2021.] (Entered: 12/11/2020) |
| 01/05/2021 | 15 | MEMORANDUM in Opposition filed by J. H., M. H. re 10 MOTION to Dismiss *Complaint* (Attachments: # 1 Declaration, # 2 Exhibit)(NAPPI, HILLARY) [Transferred from njd on 4/9/2021.] (Entered: 01/05/2021) |
| 01/12/2021 | 16 | REPLY to Response to Motion filed by All Defendants re 10 MOTION to Dismiss *Complaint* (PRUSINOWSKI, JAMES) [Transferred from njd on 4/9/2021.] (Entered: 01/12/2021) |
| 03/19/2021 | 17 | OPINION. Signed by Judge Kevin McNulty on 3/19/2021. (ams, ) [Transferred from njd on 4/9/2021.] (Entered: 03/19/2021) |
| 03/19/2021 | 18 | ORDER that the 10 Motion to Dismiss is GRANTED; This Order will be STAYED for 14 days; Within that period, the parties shall by letter state their proposals regarding whether and where to transfer this case to a district where personal jurisdiction can be asserted. Signed by Judge Kevin McNulty on 3/19/2021. (ams, ) [Transferred from njd on 4/9/2021.] (Entered: 03/19/2021) |
| 04/01/2021 | 19 | STIPULATION re 18 Order on Motion to Dismiss, by J. H., M. H.. (NAPPI, HILLARY) [Transferred from njd on 4/9/2021.] (Entered: 04/01/2021) |
| 04/05/2021 | 20 | STIPULATION AND ORDER for Transfer of Venue to the United States District Court for the Middle District of Florida. Signed by Judge Kevin McNulty on 4/5/2021. (ams, ) [Transferred from njd on 4/9/2021.] (Entered: 04/05/2021) |

| | | |
|---|---|---|
| 04/05/2021 | | Civil Case Terminated pursuant to Stipulation and Order. (ams) [Transferred from njd on 4/9/2021.] (Entered: 04/05/2021) |
| 04/09/2021 | 21 | Case transferred in from District of New Jersey; Case Number 2:20-cv-11294. File received electronically (Entered: 04/09/2021) |
| 04/09/2021 | 22 | TRANSFER IN from the District of New Jersey. Case assigned to District Judge Virginia M. Hernandez Covington and Magistrate Judge Thomas G. Wilson. New Case Number: 8:21-cv-814-VMC-TGW. (JNB) (Entered: 04/09/2021) |
| 04/09/2021 | 23 | NOTICE to counsel Frank Rocco Schirripa, Hillary Mara Nappi, and James Thomas Prusinowski Local Rule 2.01(c), Special Admission of Non-Resident Lawyer - File a Motion to Appear Pro Hac Vice. Co-counsel with filing rights may electronically file the motion on behalf of the non-resident lawyer or the motion may be filed on paper; Pay the Special Admission Fee; Submit a Pro Hac Vice E-File Registration through PACER. Visit www.flmd.uscourts.gov/for-lawyers for details (Signed by Deputy Clerk). (JNB) (Entered: 04/09/2021) |
| 04/09/2021 | 24 | **STANDING ORDER regarding discovery motions. Signed by Magistrate Judge Thomas G. Wilson on 2/1/2021. (DMS)** (Entered: 04/09/2021) |
| 04/09/2021 | 25 | **ENDORSED ORDER: On April 9, 2021, this case was transferred from the District of New Jersey to the Tampa Division of the Middle District of Florida, and assigned to the undersigned. (Doc. # 22). Although following the previous court's order granting Defendant Omegle.com LLC's motion to dismiss for lack of personal jurisdiction, the parties stipulated to transfer to the Middle District of Florida, it is unclear whether the Tampa Division is the proper venue for this case. (Doc. ## 18; 19). Local Rule 1.04(b) states: "A party must begin an action in the division to which the action is most directly connected or in which the action is most conveniently advanced." Accordingly, Omegle.com is directed to provide the Court with more information by April 16, 2021, as to whether this case is most directly connected to the Tampa Division, as opposed to the four other divisions within the Middle District of Florida. Signed by Judge Virginia M. Hernandez Covington on 4/9/2021. (AR)** (Entered: 04/09/2021) |
| 04/16/2021 | 26 | RESPONSE re 25 Order; *To Court's Order On Assignment To The Tampa Division* filed by Omegle.com LLC. (Attachments: # 1 Appendix Declaration of Leif K-Brooks)(McGuire, James) (Entered: 04/16/2021) |
| 04/16/2021 | 27 | **ENDORSED ORDER: On April 9, 2021, this case was transferred from the District of New Jersey to this District, and assigned to the undersigned. (Doc. # 22). Because the court granted the motion to dismiss for lack of personal jurisdiction, Plaintiffs are directed to file an amended complaint by April 30, 2021. In accordance with the Federal Rules of Civil Procedure, Defendant's response is due fourteen days after the amended complaint has been filed. Fed. R. Civ. P. 15(a)(3). Additionally, counsel are directed to meet and confer, in person or by telephone, and by May 20, 2021, file a completed Case Management Report. The Court believes that six to eight months is a sufficient period of time to conduct discovery in the vast majority of cases. If the parties believe that more than eight months will be needed to complete discovery, the parties should provide the Court with a detailed explanation as to why additional time is needed and a timeline for the discovery that is planned. After the Case Management Report is filed, the Court will determine whether a Case Management Hearing is necessary before entry of a Case Management and Scheduling Order. Signed by Judge Virginia M. Hernandez Covington on 4/16/2021. (AR)** (Entered: 04/16/2021) |
| 04/20/2021 | 28 | Unopposed MOTION for Venkat Balasubramani to appear pro hac vice by Omegle.com |

| | | |
|---|---|---|
| | | LLC. (McGuire, James) Motions referred to Magistrate Judge Thomas G. Wilson. (Entered: 04/20/2021) |
| 04/20/2021 | 29 | Unopposed MOTION for Stacia N. Lay to appear pro hac vice by Omegle.com LLC. (McGuire, James) Motions referred to Magistrate Judge Thomas G. Wilson. (Entered: 04/20/2021) |
| 04/22/2021 | 30 | **ORDER granting 28 Defendant's Unopposed Motion for Venkat Balasubramani to Appear Pro Hac Vice; granting 29 Defendant' Unopposed Motion for Stacia N. Lay to Appear Pro Hac Vice. Signed by Magistrate Judge Thomas G. Wilson on 4/21/2021. (DMS)** (Entered: 04/22/2021) |
| 04/22/2021 | 31 | CERTIFICATE of interested persons and corporate disclosure statement by Omegle.com LLC. (McGuire, James) (Entered: 04/22/2021) |
| 04/23/2021 | | PRO HAC VICE FEES paid by attorney Stacia N. Lay, appearing on behalf of Omegle.com LLC (Filing fee $150 receipt number TPA063727.) Related document: 29 Unopposed MOTION for Stacia N. Lay to appear pro hac vice. (JLD) (Entered: 04/23/2021) |
| 04/23/2021 | | PRO HAC VICE FEES paid by attorney Ventak Balasubramani, appearing on behalf of Omegle.com LLC (Filing fee $150 receipt number TPA063728.) Related document: 28 Unopposed MOTION for Venkat Balasubramani to appear pro hac vice. (JLD) (Entered: 04/23/2021) |
| 04/28/2021 | 32 | MOTION for Extension of Time to File Amended Complaint by J. H., M. H. (AG) (Entered: 04/28/2021) |
| 04/28/2021 | 33 | UNOPPOSED MOTION for Frank R. Schirripa to appear pro hac vice by J. H., M. H. (Attachments: # 1 Text of Proposed Order)(AG) Motions referred to Magistrate Judge Thomas G. Wilson. (Entered: 04/28/2021) |
| 04/28/2021 | 34 | UNOPPOSED MOTION for Hillary M. Nappi to appear pro hac vice by J. H., M. H. (Attachments: # 1 Text of Proposed Order)(AG) Motions referred to Magistrate Judge Thomas G. Wilson. (Entered: 04/28/2021) |
| 04/28/2021 | 35 | UNOPPOSED MOTION for Margaret E. Mabie to appear pro hac vice by J. H., M. H. (Attachments: # 1 Text of Proposed Order)(AG) Motions referred to Magistrate Judge Thomas G. Wilson. (Entered: 04/28/2021) |
| 04/29/2021 | 36 | **ENDORSED ORDER: Plaintiffs' unopposed Motion for Extension of Time (Doc. # 32) is granted. Plaintiffs' amended complaint is now due May 17, 2021. As noted in the Court's previous order, Defendant Omegle.com LLC's response is due fourteen days after the amended complaint is filed. Fed. R. Civ. P. 15(a)(3). Signed by Judge Virginia M. Hernandez Covington on 4/29/2021. (AR)** (Entered: 04/29/2021) |
| 04/30/2021 | 37 | **ORDER denying without prejudice 33 plaintiffs' Motion for Frank Rocco Shirripa to Appear Pro Hac Vice; denying without prejudice 34 plaintiffs' Motion for Hillary M. Nappi to Appear Pro Hac Vice; denying without prejudice 35 plaintiffs' Motion for Margaret E. Mabie to Appear Pro Hac Vice. Signed by Magistrate Judge Thomas G. Wilson on 4/30/2021. (DMS)** (Entered: 04/30/2021) |
| 04/30/2021 | | PRO HAC VICE FEES paid by attorney Frank R. Schirripa (Filing fee $150 receipt number TPA063819.) Related document: 33 MOTION for Frank R. Schirripa to appear pro hac vice. (ARC) (Entered: 04/30/2021) |
| 04/30/2021 | | PRO HAC VICE FEES paid by attorney Hillary M. Nappi (Filing fee $150 receipt number TPA063819.) Related document: 34 MOTION for Hillary M. Nappi to appear pro hac vice. (ARC) (Entered: 04/30/2021) |

| | | |
|---|---|---|
| 04/30/2021 | | PRO HAC VICE FEES paid by attorney Margaret E. Mabie (filing fee $150 receipt number TPA063819.) Related document: 35 MOTION for Margaret E. Mabie to appear pro hac vice. (ARC) (Entered: 04/30/2021) |
| 05/03/2021 | 38 | MOTION for Frank Rocco Schirripa to appear pro hac vice by J. H., M. H. (Attachments: # 1 Text of Proposed Order)(AG) Motions referred to Magistrate Judge Thomas G. Wilson. (Entered: 05/03/2021) |
| 05/03/2021 | 39 | MOTION for Hillary M. Nappi to appear pro hac vice by J. H., M. H. (Attachments: # 1 Text of Proposed Order)(AG) Motions referred to Magistrate Judge Thomas G. Wilson. (Entered: 05/03/2021) |
| 05/03/2021 | 40 | MOTION for Margaret E. Mabie to appear pro hac vice by J. H., M. H. (Attachments: # 1 Text of Proposed Order)(AG) Motions referred to Magistrate Judge Thomas G. Wilson. (Entered: 05/03/2021) |
| 05/10/2021 | 41 | **ORDER denying without prejudice 38 plaintiffs' amended Unopposed Motion for Frank Rocco Shirripa to Appear Pro Hac Vice; denying without prejudice 39 plaintiffs' amended Unopposed Motion for Hillary M. Nappi to Appear Pro Hac Vice; denying without prejudice 40 plaintiff's amended Unopposed Motion for Margaret E. Mabie to Appear Pro Hac Vice. Signed by Magistrate Judge Thomas G. Wilson on 5/10/2021. (DMS)** (Entered: 05/10/2021) |
| 05/13/2021 | 42 | UNOPPOSED MOTION for Margaret E. Mabie to appear pro hac vice by J. H., M. H. (AG) Motions referred to Magistrate Judge Thomas G. Wilson. (Entered: 05/14/2021) |
| 05/13/2021 | 43 | UNOPPOSED MOTION for Frank Rocco Schirripa to appear pro hac vice by J. H., M. H. (AG) Motions referred to Magistrate Judge Thomas G. Wilson. (Entered: 05/14/2021) |
| 05/13/2021 | 44 | UNOPPOSED MOTION for Hillary M. Nappi to appear pro hac vice by J. H., M. H. (AG) Motions referred to Magistrate Judge Thomas G. Wilson. (Entered: 05/14/2021) |
| 05/17/2021 | 45 | **ORDER granting 42 plaintiffs' Motion for Margaret E. Mabie to Appear Pro Hac Vice; granting 44 plaintiffs' Motion for Hillary M. Nappi to Appear Pro Hac Vice. Signed by Magistrate Judge Thomas G. Wilson on 5/14/2021. (DMS)** (Entered: 05/17/2021) |
| 05/17/2021 | 46 | **ORDER denying 43 plaintiffs' Motion for Frank Rocco Shirripa to Appear Pro Hac Vice. Signed by Magistrate Judge Thomas G. Wilson on 5/17/2021. (DMS)** (Entered: 05/17/2021) |
| 05/17/2021 | 47 | UNOPPOSED THIRD MOTION for Frank Rocco Schirripa to appear pro hac vice by J. H., M. H. (AG) Motions referred to Magistrate Judge Thomas G. Wilson. (Entered: 05/18/2021) |
| 05/17/2021 | 48 | AMENDED COMPLAINT against Omegle.com LLC with Jury Demand. filed by M. H., J. H. Related document: 1 Complaint filed by M. H..(AG) (Entered: 05/18/2021) |
| 05/18/2021 | 50 | CORPORATE disclosure statement by J. H., M. H. (AG) (Entered: 05/19/2021) |
| 05/19/2021 | 49 | Joint MOTION for Extension of Time to File Case Management Report by Omegle.com LLC. (McGuire, James) (Entered: 05/19/2021) |
| 05/19/2021 | 51 | **ENDORSED ORDER: The parties' joint "Motion for Agreed Order Extending Time to File Case Management Report" (Doc. # 49) is denied. The Court has an independent obligation to move its cases along and extending the deadline to file the case management report in this fashion does not serve this goal. However, the Court finds a short extension of the deadline appropriate. Accordingly, the parties' case** |

| | | |
|---|---|---|
| | | management report is due by May 24, 2021. Signed by Judge Virginia M. Hernandez Covington on 5/19/2021. (AR) (Entered: 05/19/2021) |
| 05/20/2021 | 52 | Unopposed MOTION for Extension of Time to File Response/Reply *to Plaintiffs' First Amended Complaint* by Omegle.com LLC. (Lay, Stacia) (Entered: 05/20/2021) |
| 05/20/2021 | 53 | **ENDORSED ORDER: Defendant Omegle.com, LLC's unopposed Motion for Enlargement of Time to Respond (Doc. # 52) is granted. Omegle's response to the amended complaint is now due June 8, 2021. Signed by Judge Virginia M. Hernandez Covington on 5/20/2021. (AR)** (Entered: 05/20/2021) |
| 05/20/2021 | 54 | **ORDER granting 47 plaintiffs' Unopposed Third Motion for Frank Rocco Schirripa to Appear Pro Hac Vice. Signed by Magistrate Judge Thomas G. Wilson on 5/19/2021. (DMS)** (Entered: 05/20/2021) |
| 05/24/2021 | 55 | UNIFORM CASE MANAGEMENT REPORT. (AG) (Entered: 05/24/2021) |
| 05/27/2021 | 56 | **CASE MANAGEMENT AND SCHEDULING ORDER: Final Pretrial Conference set for 6/16/2022 at 09:00 AM in Tampa Courtroom 14 B before Judge Virginia M. Hernandez Covington Jury Trial set for the July 2022 trial term in Tampa Courtroom 14 B before Judge Virginia M. Hernandez Covington. Conduct mediation hearing by 1/31/2022. Lead counsel to coordinate dates. Signed by Judge Virginia M. Hernandez Covington on 5/27/2021. (TWL)** (Entered: 05/27/2021) |
| 05/27/2021 | 57 | **ENDORSED ORDER: In light of the Court's Case Management and Scheduling Order (Doc. # 56), no case management hearing will be held. Additionally, in order to keep cases moving on track, the Court has found it necessary to impose some restrictions on the types and number of extensions to case management deadlines that it grants. Thus, the parties are advised that, while short extensions, especially if unopposed, will be favorably considered, the Court will not substantially move the dispositive motions deadline or the trial date. Signed by Judge Virginia M. Hernandez Covington on 5/27/2021. (TWL)** (Entered: 05/27/2021) |
| 05/27/2021 | 58 | **ORDER regarding motions for summary judgment. See Order for details. Signed by Judge Virginia M. Hernandez Covington on 5/27/2021. (TWL)** (Entered: 05/27/2021) |
| 06/03/2021 | 59 | Unopposed MOTION to File Excess Pages *for Defendant's Motion to Dismiss due June 8, 2021* by Omegle.com LLC. (Lay, Stacia) (Entered: 06/03/2021) |
| 06/04/2021 | 60 | **ENDORSED ORDER: Defendant Omegle.com, LLC's unopposed "Motion Requesting Leave to File a Motion to Dismiss in Excess of 25 Pages" (Doc. # 59) is granted. Omegle.com may file a motion to dismiss, not to exceed 30 pages, by June 8, 2021. Signed by Judge Virginia M. Hernandez Covington on 6/4/2021. (AR)** (Entered: 06/04/2021) |
| 06/08/2021 | 61 | MOTION to Dismiss for Failure to State a Claim *Plaintiffs' Amended Complaint 48 and Memorandum of Law in Support* by Omegle.com LLC. (Lay, Stacia) (Entered: 06/08/2021) |
| 06/09/2021 | 62 | **ORDER TO SHOW CAUSE: This matter comes before the Court sua sponte. James Thomas Prusinowski is not permitted to practice in the Middle District of Florida. Accordingly, the Court directs counsel to show cause, in writing, why his appearance should not be stricken for failure to comply with Local Rule 2.01(a). Counsel has until June 23, 2021, to comply with this Order. Failure to do so will result in counsel's appearance being stricken from the record without further notice from the Court. Further, upon review of the file, the Court finds that the named counsel has not registered for CM/ECF access. Accordingly, the Court directs counsel to register for** |

| | | |
|---|---|---|
| | | **CM/ECF access by June 23, 2021. Signed by Judge Virginia M. Hernandez Covington on 6/9/2021. (TWL)** (Entered: 06/09/2021) |
| 06/11/2021 | 63 | RESPONSE TO ORDER TO SHOW CAUSE re 62 Order filed by Omegle.com LLC. (Abratt, Daniela) (Entered: 06/11/2021) |
| 06/21/2021 | 64 | **ENDORSED ORDER: On May 27, 2021, the Court entered its case management and scheduling order, directing the parties to file their notice of mediation before Gregory Holder, Esq., within 21 days. (Doc. # 56 at 2). Therefore, the deadline was June 17, 2021. However, a review of the record reveals that no notice has been filed. Accordingly, the parties are directed to file their notice of mediation, indicating the date and time of the mediation conference, by June 23, 2021. Signed by Judge Virginia M. Hernandez Covington on 6/21/2021. (AR)** (Entered: 06/21/2021) |
| 06/22/2021 | 65 | NOTICE OF SELECTION of Gregory Holder as mediator by J. H. (Freeman, Jennifer) (Entered: 06/22/2021) |
| 06/23/2021 | 66 | **ORDER appointing Gregory P. Holder, Esq. as mediator in this action. The mediation conference is scheduled for January 28, 2022, at 10:00 AM. The Court directs that all counsel, parties, corporate representatives, and any other required claims professionals shall be present at the mediation conference with full authority to negotiate a settlement. The Court does not allow mediation by telephone or video conference. Personal attendance is required. Signed by Judge Virginia M. Hernandez Covington on 6/23/2021. (AR)** Modified on 6/23/2021 (AR). (LNR). (Entered: 06/23/2021) |
| 06/29/2021 | 67 | RESPONSE in Opposition re 61 MOTION to Dismiss for Failure to State a Claim *Plaintiffs' Amended Complaint 48 and Memorandum of Law in Support; Plaintiffs' Response to Defendant Omegle's MTD* filed by J. H., M. H. (Freeman, Jennifer) (Entered: 06/29/2021) |
| 07/02/2021 | 68 | MOTION for Leave to File Other Document :Reply memorandum in response to Plaintiffs' Opposition to Defendant's Motion to Dismiss by Omegle.com LLC. (Lay, Stacia) (Entered: 07/02/2021) |
| 07/02/2021 | 69 | **ENDORSED ORDER: Defendant Omegle.com's Motion for Leave to File a Reply (Doc. # 68) is granted. Omegle.com may file a reply in support of its motion to dismiss not to exceed a total of ten pages by July 9, 2021. Signed by Judge Virginia M. Hernandez Covington on 7/2/2021. (AR)** (Entered: 07/02/2021) |
| 07/09/2021 | 70 | REPLY to Response to Motion re 61 MOTION to Dismiss for Failure to State a Claim *Plaintiffs' Amended Complaint 48 and Memorandum of Law in Support* filed by Omegle.com LLC. (Attachments: # 1 Appendix)(Lay, Stacia) (Entered: 07/09/2021) |
| 09/09/2021 | 71 | **ENDORSED ORDER directing Margaret E. Mabie to comply with the administrative procedures regarding electronic filing. It appears that counsel has not registered for CM/ECF access. Accordingly, the Court directs counsel to register for CM/ECF access by September 23, 2021. Signed by Judge Virginia M. Hernandez Covington on 9/9/2021. (TWL)** (Entered: 09/09/2021) |
| 09/09/2021 | 72 | **ENDORSED ORDER directing Hillary Mara Nappi to comply with the administrative procedures regarding electronic filing. It appears that counsel has not registered for CM/ECF access. Accordingly, the Court directs counsel to register for CM/ECF access by September 23, 2021. Signed by Judge Virginia M. Hernandez Covington on 9/9/2021. (TWL)** (Entered: 09/09/2021) |
| 09/09/2021 | 73 | **ENDORSED ORDER Striking Appearance: The Clerk is ordered to strike the appearance of James Thomas Prusinowski for failure to respond to the Doc. # 62** |

| | | |
|---|---|---|
| | | **Order to Show Cause. Signed by Judge Virginia M. Hernandez Covington on 9/9/2021. (TWL)** (Entered: 09/09/2021) |
| 09/15/2021 | [74](#) | **ORDER: Plaintiffs' amended complaint (Doc. # [48](#)) is sua sponte dismissed as a shotgun pleading. Plaintiffs may file a second amended complaint that is not a shotgun pleading by September 29, 2021. As the Court has dismissed the amended complaint as a shotgun pleading, Defendant Omegle.com LLC's Motion to Dismiss the Amended Complaint (Doc. # [61](#)) is denied as moot. Signed by Judge Virginia M. Hernandez Covington on 9/15/2021. (KMH)** (Entered: 09/15/2021) |
| 09/29/2021 | [75](#) | SECOND AMENDED COMPLAINT against Omegle.com LLC with Jury Demand. filed by M. H., J. H.(Nappi, Hillary) (Entered: 09/29/2021) |
| 10/05/2021 | [76](#) | Unopposed MOTION to File Excess Pages *for Defendant's Motion to Dismiss the Second Amended Complaint* by Omegle.com LLC. (Lay, Stacia) (Entered: 10/05/2021) |
| 10/05/2021 | 77 | **ENDORSED ORDER granting [76](#) Unopposed Motion to File Excess Pages. Defendant's Motion to Dismiss the Second Amended Complaint shall not exceed 32 pages, inclusive of all parts. Signed by Judge Virginia M. Hernandez Covington on 10/5/2021. (SGM)** (Entered: 10/05/2021) |
| 10/13/2021 | [78](#) | MOTION to Dismiss for Failure to State a Claim *Plaintiffs' Second Amended Complaint (Dkt. 75)* by Omegle.com LLC. (Attachments: # [1](#) Appendix A - Doe v. Reddit Order Granting MTD)(Lay, Stacia) (Entered: 10/13/2021) |
| 10/26/2021 | [79](#) | Joint MOTION for Miscellaneous Relief, specifically Joint Motion for Order Extending Pending Case Schedule Deadlines by 60 Days by Omegle.com LLC. (Lay, Stacia) (Entered: 10/26/2021) |
| 10/26/2021 | 80 | **ENDORSED ORDER denying [79](#) Motion. The Court has an independent obligation to move cases forward to conclusion and this request does not serve that goal. Furthermore, it is not necessary to extend the already generous deadlines to obtain reports. The request is denied. Signed by Judge Virginia M. Hernandez Covington on 10/26/2021. (Covington, Virginia)** (Entered: 10/26/2021) |
| 11/03/2021 | [81](#) | MEMORANDUM in opposition re [78](#) Motion to Dismiss for Failure to State a Claim filed by J. H., M. H. (Mabie, Margaret) (Entered: 11/03/2021) |
| 11/08/2021 | [82](#) | MOTION for Leave to File Other Document :Reply Memorandum in Response to Plaintiffs' Opposition to Defendant's Motion to Dismiss by Omegle.com LLC. (Lay, Stacia) (Entered: 11/08/2021) |
| 11/08/2021 | 83 | **ENDORSED ORDER granting the motion for leave to file a reply. (Doc. # [82](#)). Reply, not to exceed 11 pages, due November 15, 2021. Signed by Judge Virginia M. Hernandez Covington on 11/8/2021. (DMD)** (Entered: 11/08/2021) |
| 11/15/2021 | [84](#) | REPLY to Response to Motion re [78](#) MOTION to Dismiss for Failure to State a Claim *Plaintiffs' Second Amended Complaint (Dkt. 75)* filed by Omegle.com LLC. (Attachments: # [1](#) Appendix A)(Lay, Stacia) (Entered: 11/15/2021) |
| 12/16/2021 | [85](#) | MOTION to Stay Discovery *Pending Decision on Motion to Dismiss* by Omegle.com LLC. (Attachments: # [1](#) Appendix Declaration of Stacia N. Lay)(Lay, Stacia) (Entered: 12/16/2021) |
| 12/20/2021 | 86 | **ENDORSED ORDER denying [85](#) Motion to Stay Discovery. The Court has an obligation to move cases forward to resolution and staying a case while a motion to dismiss is pending does not serve that goal. Signed by Judge Virginia M. Hernandez Covington on 12/20/2021. (Covington, Virginia)** (Entered: 12/20/2021) |

USCA11 Case: 22-10338   Document: 35-1   Date Filed: 03/21/2022   Page: 18 of 221

| 12/28/2021 | 87 | Unopposed MOTION for Kimberlee Gunning to appear pro hac vice. Special Admission fee paid, Receipt No. AFLMDC-19066725 for $150. *Defendant's Unopposed Motion for Admission Pro Hac Vice of Kimberlee Gunning* by Omegle.com LLC. (McGuire, James) Motions referred to Magistrate Judge Thomas G. Wilson. (Entered: 12/28/2021) |
|---|---|---|
| 12/29/2021 | 88 | **ORDER granting 87 Defendant's Unopposed Motion for Admission Pro Hac Vice of Kimberlee Gunning. Signed by Magistrate Judge Thomas G. Wilson on 12/28/2021. (DMS)** (Entered: 12/29/2021) |
| 01/06/2022 | 89 | Joint MOTION for Miscellaneous Relief, specifically Joint Motion to Conduct Mediation By Remote Means by Omegle.com LLC. (Lay, Stacia) (Entered: 01/06/2022) |
| 01/10/2022 | 90 | **ENDORSED ORDER: Defendant Omegle.com, LLC's Motion to Dismiss the Second Amended Complaint (Doc. # 75) is GRANTED. All Counts are DISMISSED without leave to amend. The Clerk is directed to terminate any deadlines, deny any outstanding motions as moot, and thereafter, close the case. Signed by Judge Virginia M. Hernandez Covington on 1/10/2022. (CTL)** (Entered: 01/10/2022) |
| 01/28/2022 | 91 | NOTICE OF APPEAL as to 90 Order on Motion to Dismiss for Failure to State a Claim by J. H., M. H. Filing fee not paid. (Mabie, Margaret) (Entered: 01/28/2022) |
| 01/31/2022 | 92 | TRANSMITTAL of initial appeal package to USCA consisting of copies of notice of appeal, docket sheet, order/judgment being appealed, and motion, if applicable to USCA re 91 Notice of Appeal. (LNR) (Entered: 01/31/2022) |
| 02/09/2022 | | FEE PAID. Appeal fee, Receipt No. AFLMDC-19219274 for $505 paid Notice for appeal to the Eleventh Circuit Court of Appeals. (Freeman, Jennifer) (Entered: 02/09/2022) |
| 02/11/2022 | 93 | TRANSCRIPT information form filed by J. H., M. H. re 91 Notice of Appeal. USCA number: 22-10338. (Freeman, Jennifer) (Entered: 02/11/2022) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 03/10/2022 12:40:45 | | |
| **PACER Login:** | tmstuckey | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 8:21-cv-00814-VMC-TGW |
| **Billable Pages:** | 11 | **Cost:** | 1.10 |

# TAB 1

**HACH ROSE SCHIRRIPA & CHEVERIE LLP**
112 Madison Avenue, 10th Floor
New York, New York 10016
212.213.8311
212.779.0028 (fax)
*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| M.H. and J.H., on behalf of their minor child, C.H. | Civil Action No. |
| **Plaintiffs,** | |
| **v.** | **COMPLAINT** |
| OMEGLE.COM LLC, | **JURY TRIAL DEMANDED** |
| **Defendant.** | |

Plaintiffs M.H. and J.H., on behalf of their minor child, C.H., by and through their attorneys, Hach Rose Schirripa & Cheverie LLP, bring this action for damages and other legal and equitable relief against Omegle.com LLC ("Omegle" or the "Company"). Upon information and belief, Plaintiffs allege as follows:

### INTRODUCTION

1.     This is a diversity action brought by the parents of a minor child who used Defendant Omegle's website and was subsequently victimized and sexually exploited. The sexual exploitation of minor C.H. was completely avoidable and only occurred because of Defendant Omegle's operation of its website.

2.     As set forth more fully herein, Omegle's unfair and deceptive business practices have had serious ramifications for children across the country, including, but not limited to, being

stalked, sexually assaulted, abused, and exploited by adults and predators.  As a result, Plaintiffs bring claims under federal and state law to obtain redress.

## PARTIES

3.     Plaintiffs M.H. and J.H. reside within the State of New Jersey, in Morris County, New Jersey.  Plaintiffs M.H. and J.H. are the natural parents of minor C.H.  C.H. was born in 2009 and all times relevant was eleven (11) years old.

4.     While using Omegle, neither C.H. nor her parents were asked for verifiable parental consent to collect, disclose, or use C.H.'s personally identifiable information, including C.H.'s geolocation.  Moreover, neither M.H. nor J.H. were ever provided direct notice with regard to the collection, use and disclosure of C.H.'s data.

5.     Defendant Omegle.com LLC is a limited liability corporation registered in the State of Washington, with its principal place of business located at 4557 11th Ave NE, Apt 131, Seattle, Washington, 98105-0200 and operates throughout the United States, including in New Jersey and internationally.

6.     Founded by Leif Brooks, Omegle grew in popularity since 2009. The Omegle website gets millions of page views per day with an uptick of user activity during the COVID-19 pandemic.

## JURISDICTION AND VENUE

7.     This is an action seeking damages in excess of $75,000.00, exclusive of interest, costs and attorney's fees.

8.     Federal subject matter jurisdiction arises out of diversity of citizenship pursuant to 28 U.S.C. § 1332, as this is a civil action where the matter in controversy exceeds the sum or value

of $75,000.00, exclusive of interest and costs, and is between citizens of different states. In addition, 28 U.S.C. § 1367 provides supplemental jurisdiction for Plaintiffs' state law claims.

9.      Declaratory relief is proper under 28 U.S.C. §§ 2201 and 2202.

10.     Further, this Court has personal jurisdiction over the Defendant because Defendant regularly conducts business in this District and/or under the stream of commerce doctrine by causing its products and services to be disseminated in this District, including its website used by C.H.

11.     Venue in this District is proper under 28 U.S.C. § 1391(b) because the events giving rise to the action occurred in Morris County, located entirely within the geographic boundaries for the District of New Jersey.

## SUBSTANTIVE ALLEGATIONS

***COPPA Prohibits the Collection of Children's Personally Identifiable Information Without Verifiable Parental Content***

12.     Recognizing the vulnerability of children in the Internet age, in 1999 Congress enacted the Children's Online Privacy Act ("COPPA"). *See* 16 U.S.C. §§ 6501-6505. COPPA's express goal is to protect children's privacy while they are connected to the internet.  Under COPPA, developers of child-focused apps and websites cannot lawfully obtain the personally identifiable information of children under 13 years of age without first obtaining verifiable consent from their parents.

13.     COPPA applies to any operator of a commercial website or online service that is directed to children and that: (a) collects, uses, and/or discloses personally identifiable information of children, or (b) on whose behalf such information is collected or maintained. Under COPPA, personally identifiable information is "collected or maintained on behalf of an operator …[t]he operator benefits by allowing another person to collect personally identifiable information directly

from users of" an online service. 16 C.F.R. § 312.2.  Further, COPPA applies to any operator of a commercial website or online service that has actual knowledge that it collects, uses, and/or discloses personally identifiable information from children.

14.     Under COPPA, "personally identifiable information" includes information such as names, email addresses, and social security numbers. COPPA's broad definition of "personally identifiable information" is as follows:

> "individually identifiable information about an individual collected online," which includes (1) a first and last name; (2) a physical address including street name and name of a city or town; (3) online contact information (separately defined as "an email address or any other substantially similar identifier that permits direct contact with a person online"); (4) a screen name or user name; (5) telephone number; (6) social security number; (7) a media file containing a child's image or voice; (8) geolocation information sufficient to identify street name and name of a city or town; (9) a "persistent identifier that can be used to recognize a user over time and across different Web sites or online services" (including but not limited to a customer number held in a cookie, an Internet Protocol (IP) address, a processor or device serial number, or unique device identifier´); and (10) any information concerning the child or the child's parents that the operator collects then combines with an identifier.

15.     In order to lawfully collect, use, or disclose personally identifiable information, COPPA requires that an operator meet specific requirements, including each of the following:

   a. Posting a privacy policy on its website or online service providing clear, understandable, and complete notice of its information practices, including what information the website operator collets from children online, how it uses such information, its disclosure practices for such information, and other specific disclosures as set forth in the Rule;

   b. Providing clear, understandable, and complete notice of its information practices, including specific disclosures, directly to parents; and

   c. Obtaining verifiable parental consent prior to collecting, using, and/or disclosing personally identifiable information from children.

16.    Under COPPA, "[o]btaining verifiable consent means making any reasonable effort (taking into consideration available technology) to ensure that before personally identifiable information is collected from a child, a parent of the child . . . [r]eceives notice of the operator's personally identifiable information collection, use and disclosure practices; and [a]uthorizes any collection, use, and/or disclosure of the personally identifiable information." 16 C.F.R. § 312.2.

17.    The FTC recently clarified acceptable methods for obtaining verifiable parent consent, include:

    a.    Providing a form for parents to sign and return;

    b.    Requiring the use of a credit/card online payment that provides notification of each transaction;

    c.    Connecting to trained personnel via video conference;

    d.    Calling a staffed toll-free number;

    e.    Asking knowledge based questions; or

    f.    Verifying a photo-ID from the parent compared to a second photo using facial recognition technology.

***Defendant is An Operator Under COPPA***

18.    Omegle is an "operator" pursuant to COPPA. Specifically, COPPA defines an "operator," in pertinent part, as:

> any person who operates a Web site located on the Internet or an online service and who collects or maintains personally identifiable information from or about the users of or visitors to such Web site or online service, or on whose behalf such information is collected or maintained, or offers products or services for sale through that Web site or online service, where such Web site or online service is operated for commercial purposes involving commerce among the several States or with 1 or more foreign nations; in any territory of the United States or in the District of Columbia, or between any such territory and another such territory or any State or foreign nation; or between the District of Columbia and any State, territory, or foreign nation. 16 C.F.R. § 312.2.

19.     Defendant operated its website entirely online. Indeed, without a connection to the internet, Plaintiff could never have accessed Omegle's service.

***The Company's Operations***

20.     Omegle is a website that enables an individual user to communicate with random individuals across the world anonymously via text and video.

21.     Specifically, users log in using a webcam and microphone and are matched with another random user. Although users are paired randomly, there are some cases where conversations are matched according to similarity in subjects. The website designates users as "You" or "Stranger 1" or "Stranger 2."

22.     When a user loads the Omegle webpage, the user is met with the following language: "To help you stay safe, chats are anonymous unless you tell someone who you are (not suggested!), and you can stop a chat at any time. **Predators have been known to use Omegle, so please be careful**." (Emphasis added.)

23.     Omegle's website declares, "Video is monitored. Keep it clean."

24.     To use the Omegle website, a user simply clicks on "text" or "video" under the words "start chatting." The user is then immediately placed in a chat with a stranger.

25.     Omegle's website does not require any age verification or authentication. There is nothing preventing a minor under the age of thirteen (13) from accessing the website.

26.     Omegle's website is vulnerable to hacking.  As a result, a user of Omegle is able to grab screenshots of previous conversations and then use this data to obtain another user's geographic location.

***The Company's Infamy and Synonymy With Sexual Expression***

27.    Since 2016, the use of Omegle's website by pedophiles became known to the public and to the Company itself.

28.    Vigilante activists became aware of Omegle's repeated use by pedophiles and even filmed videos of themselves attempting to catch pedophiles in the act.[1]

29.    Further, the Company has been mentioned in numerous criminal cases across the country as individuals have been arrested for possessing and promoting child pornography. For example, in April 2016, Ammar Butaleb was arrested in Pittsburgh, Pennsylvania after he received, viewed and downloaded child pornography through Omegle. In December 2018, in Scranton, Pennsylvania Robert Alexander Kusma was charged with the sexual assault of a minor under sixteen (16) years of age after first meeting and grooming the girl on Omegle. In April 2019, in the state of New Jersey, twenty-four sexual predators were arrested in what was dubbed "Operation Home Alone" for using social media platforms – including Omegle – to lure children for sex. In February 2020, Dalton Matthew Bates was arrested in Kentucky for thousands of counts of possession of child pornography across multiple social media platforms and applications, including Omegle. Most recently, in July 2020, in Morris County, New Jersey Robert Murphy pled guilty to endangering the welfare of a child after he tried to set up an in person meeting for sex with an eleven year old girl he met on Omegle. Historically, there have been numerous arrests in other countries – for example in Norway, Canada, and the United Kingdom – for using internet services, like the Company, to prey upon, sexually exploit, and eventually sexually abuse and assault children.

---

[1] Some of these videos have been the subject of lawsuits in courtrooms across the country.

30.     Upon information and belief, the Company has been contacted by individuals either representing these exploited children or the authorities investigating the crimes committed against these children.

31.     As a result the countless allegations of the use of the Company's website by those who target children for sexual abuse, assault and exploitation resulting in the both media coverage, along with the arrests and convictions of these predators, the Company had full knowledge of the extent to which its website was used as vehicle to sexually target, groom, exploit and abuse children, like C.H.

32.     The Company is aware that minor children use its website. In fact, the Company has the following language printed in small print on the bottom of its website:

> By using the Omegle Web site, and/or related products and/or services ("Omegle:, provided by Omegle.com LLC), you agree to the following terms: Do not use Omegle if you are under 13. If you are under 18, use it only with a parent/guardian's permission. Do not transmit nudity, sexually harass anyone, publicize other peoples' private information, make statements that defame or libel anyone, violate intellectual property rights, use automated programs to start chats, or behave in any other inappropriate or illegal way on Omegle. Understand that human behavior is fundamentally uncontrollable, that the people you encounter on Omegle may not behave appropriately, and that they are solely responsible for their own behavior. Use Omegle at your own peril. Disconnect if anyone makes you feel uncomfortable. You may be denied access to Omegle for inappropriate behavior, or for any other reason.[2]

33.     The use of the disclaimers on the Company's website alone indicates that Omegle had knowledge of the improper, illegal and immoral use of its website.

---

[2] *See* https://www.omegle.com/ (last accessed August 17, 2020).

34.     Defendant Omegle does not provide any guidance to parents looking to monitor their children's use of the website.  The Company's printed warning on its homepage is nothing but window dressing.

35.     Despite the Company's knowledge of the use of its website for these nefarious purposes, the Company took no precaution to monitor or log the content of the chats of its users.

36.     Further, the Company took no precaution to actually monitor the age of its users or prevent the use of its website by minors under the age of consent.

37.     As a result of the Company's failures, hundreds of thousands of minors who use Omegle's website are currently subject to sexual exploitation and abuse.

***C.H. Uses Omegle and is Predictably Victimized and Damaged***

38.     During the COVID-19 pandemic, C.H. was forced to attend school remotely and as such was provided with a Chromebook from her school.

39.     On or about March 31, 2020, C.H. used her Chromebook to access the Omegle website. Notably, C.H. had never used Omegle's website before.  C.H. was first paired to chat with a group of minors who appeared to be older than C.H.  C.H. ended the chat with the group of minors and was placed in another chat.

40.     Upon entering the second chat, C.H. encountered a black screen.  Shortly thereafter C.H. began to see text being typed on the black screen.

41.     This unknown user ("Doe") informed C.H. that he knew where C.H. lived and provided C.H. with her geolocation. Further, Doe also told C.H. that he knew that that there were other cell phones and computers in C.H.'s house, which he threatened to hack.

42.     Scared and confused, C.H. pleaded with Doe to leave her alone.

43.     C.H. was instructed to remove all of her clothing – including her underwear – and touch herself in front of the camera.  C.H. pleaded with Doe and offered gift cards to Doe instead of complying with his demand.  Doe became more forceful with C.H. and demanded that she remove her clothing. Eventually, C.H. complied with Doe's demands and disrobed and touched herself according to the instructions she received.

44.     Doe captured screen grabs or videos of C.H.'s actions forever memorializing her forced pornographic performance.

45.     Immediately after this incident, C.H. notified her parents of what occurred and M.H. and J.H. reported the incident to the local police authorities.

46.     The criminal investigation into C.H.'s sexual exploitation has reached a dead end due to the multiple issues law enforcement regularly face with sexual predators who utilize Omegle and websites like it to prey upon children.

### *Omegle Engaged in the Foregoing Acts Without Obtaining Verifiable Parental Consent*

47.     Omegle allowed for the collection, use, and disclosure of C.H.'s personally identifiable information and/or viewing C.H.'s data without notifying her parents and/or guardians.

48.     Omegle never obtained verifiable parental consent to collect, use, or disclose children's personally identifiable information and/or viewing data.

49.     C.H. never knew that her personally identifiable information and/or viewing data could be collected, disclosed, or used because at all times Defendant failed to provide C.H's parents/guardians any of the required disclosures, never sought verifiable parental consent, and never provided any mechanism by which the C.H's parents or guardians could provide verifiable consent.

50.     Defendant's unlawful collection of C.H.'s personally identifiable information and/or viewing information for commercial gain exposed C.H., and others like her, to pedophiles and other predators online.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### VIOLATION OF THE VIDEO PRIVACY PROTECTION ACT, 18 U.S.C. § 2710

51.     Plaintiffs reallege and reassert each of the preceding paragraphs as if fully set forth herein.

52.     Defendant is a video tape service provider subject to 18 U.S.C. § 2710(a)(4) of the Video Privacy Protection Act ("VPPA"). Defendant is "engaged in the business, in or affecting interstate or foreign commerce, of rental, sale or delivery of prerecorded video cassette tapes or similar audio-visual materials" by delivering videos recorded on its website.

53.     As users of the website, C.H. is a consumer within the definition of 18 U.S.C. § 2710(a)(1) of the VPPA.

54.     Defendant collected consumers' personally identifiable information ("PII") within 18 U.S.C. § 2710 (a)(3).

55.     Defendant has disclosed PII to third-parties, including data brokers and advertisers, to generate revenue and profit.

56.     Defendant failed to solicit and/or obtain consent from C.H. to collect and disclose her PII, nor did Defendant provide clear and conspicuous notice of the disclosure of PII, as defined in 18 U.S.C. § 2710 (b)(2)(B).

57.     The knowing disclosures and transmission of PII violates the VPPA within the meaning of 18 U.S.C. § 2710 (b)(1).

58.     Accordingly, C.H. is entitled under 18 U.S.C. § 2710(c)(2) to an award of damages (actual, liquidated, or punitive), reasonable attorneys' fees, other litigation costs reasonably incurred, and such relief as the Court deems appropriate.

**SECOND CLAIM FOR RELIEF**
**INTRUSION UPON SECLUSION**

59.     Plaintiffs reallege and reassert each of the preceding paragraphs as if fully set forth herein.

60.     C.H. has a reasonable expectation of privacy in her online behavior, generally. C.H.'s private affairs include her behavior on any device that may be monitored by the surreptitious collection and tracking of C.H.'s personally identifiable information and/or viewing data employed or otherwise enabled by the website.

61.     The reasonableness of such expectation of privacy is supported by Defendant's unique position to monitor C.H.'s behavior through access to C.H.'s private devices. It is further supported by Defendant's surreptitious, highly-technical tracking of users through video.

62.     Defendant intentionally intruded onto and into C.H.'s solitude, seclusion, or private affairs by intentionally designing the website to allow for the surreptitious and improper gaining of knowledge of, review, and or retention of C.H.'s activities through the technologies and activities described herein.

63.     These intrusions are highly offensive to a reasonable person. This is evidenced by, inter alia, the legislation enacted by Congress, rules promulgated and enforcement actions undertaken by the FTC, and countless studies, op-eds, and articles decrying the online tracking of children. Further, the extent of the intrusion cannot be fully known, as the nature of privacy invasion involves sharing C.H's personally identifiable information and/or viewing data with

potentially countless third-parties, known and unknown, for undisclosed and potentially unknowable purposes, in perpetuity.

64.     C.H. was harmed by the intrusion into her private affairs as detailed throughout this Complaint.

65.     Defendant's actions and conduct complained of herein were a substantial factor Defendant's actions and conduct complained of herein were a substantial factor in causing the harm suffered by C.H.

66.     As a result of Defendant's actions, Plaintiffs seek nominal and punitive damages in an amount to be determined at trial. Plaintiffs seek punitive damages because Defendant's actions which were malicious, oppressive, and willful were calculated to injure C.H. and made in conscious disregard of her rights.  Punitive damages are warranted to deter Defendant from engaging in future misconduct.

## THIRD CLAIM FOR RELIEF
## NEGLIGENCE

67.     Plaintiffs reallege and reassert each of the preceding paragraphs as if fully set forth herein.

68.     Omegle owed C.H. and the general public the highest duty of care to provide safe means and methods for using its website.

69.     Omegle breached the duty of care by failing to implement adequate safety and security measures – including monitoring its users' age and ongoing monitoring of its users' conduct while using its service and application. Defendant had an ongoing, non-delegable duty to continue to monitor, supervise, inspect, and assess the use of service and application to prevent the mistreatment of its users.

70.     Defendant failed to prevent minors from using its website despite its knowledge that its website was used by minors; was inherently dangerous; and had been misused by sexual predators to groom and sexually abuse and exploit children. Defendant further failed to interview, assess, inspect or otherwise check on the welfare of its users to ensure that they were not being harmed, sexually abused, or otherwise mistreated and Defendant's aforesaid failures enabled the tortious conduct to occur and continue.

71.     As a direct and proximate result of Omegle's breaches of duty of care owed, C.H. – a minor  – was subjected to being sexually exploited on the internet by an unknown adult male.

72.     The acts and omissions of Omegle detailed above were committed wantonly, willfully, with reckless and/or callous disregard for the safety of its users, including C.H.

73.     As a result of the above negligence on the part of the Omegle, C.H. was caused to suffer severe and painful personal injuries, emotional distress, sexual misconduct, pain, suffering, and mental anguish all of a permanent nature.

74.     By reason of the foregoing, Omegle is liable for compensatory damages and punitive damages, together with interests and costs.

**FOURTH CLAIM FOR RELIEF**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

75.     Plaintiffs reallege and reassert each of the preceding paragraphs as if fully set forth herein.

76.     Omegle engaged in reckless, extreme, and outrageous conduct by failing to take any real precautions preventing children from using its website, failing to monitor its website and use of its website to ensure that its users were not being sexually abused, mistreated, or exploited despite knowing that children were using its service and application and that its service and

application were providing sexual predators with access to children for those predators to use Omegle's website for the purposes of what would likely be causing them harm.

77.     By its actions and omissions, Omegle intended to and did intentionally and recklessly cause C.H. to suffer severe emotional distress.

78.     Omegle's misconduct was so shocking and outrageous that it exceeds the reasonable bounds of decency as measured by what the average member of its business community, and society as whole, would tolerate and demonstrates an utter disregard by Omegle of the consequences that would follow.

79.     The conduct was also engaged in with oppression and/or malice, and was in conscious disregard for the rights and safety of others, including, but not limited to C.H. herein, so as to warrant the imposition of punitive damages.

80.     As a direct and proximate result of the Omegle's conduct, the Doe gained access to C.H., and engaged in an act of sexual exploitation. C.H. has suffered, and continues to suffer, severe emotional distress, for which she is entitled to an award of damages.

81.     Omegle knew that this reckless, extreme, and outrageous conduct would inflict severe emotional and psychological distress, including personal physical injury as a result, including severe mental anguish, humiliation and emotional and physical distress.

82.     By reason of the foregoing, Omegle is liable for compensatory and punitive damages, together with interests and costs.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court grant the following relief: compensatory damages, punitive damages, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues of fact and damages stated herein.

Dated: New York, New York
       August 25, 2020

                                   Respectfully submitted,

                                   **HACH ROSE SCHIRRIPA & CHEVERIE LLP**

                                   By: */s/ Hillary Nappi*
                                   Frank R. Schirripa
                                   Hillary M. Nappi
                                   112 Madison Avenue, 10th Floor
                                   New York, New York 10016
                                   Telephone: (212) 213-8311
                                   Facsimile: (212) 779-0028
                                   fschirripa@hrsclaw.com
                                   hnappi@hrsclaw.com

                                   *Attorneys for Plaintiffs*

# TAB 10

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| M.H. and J.H., on behalf of their minor child C.H.,<br><br>Plaintiffs,<br><br>v.<br><br>OMEGLE.COM, LLC,<br><br>Defendant. | Civil Action No. 2:20-cv-11294-KM-JBC<br><br>**DEFENDANT OMEGLE.COM, LLC'S NOTICE OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(2) and 12(b)(6)**<br><br>**Motion Return Date: December 21, 2020** |

**PLEASE TAKE NOTICE** that on December 21, 2020, or as soon

thereafter as counsel may be heard, Defendant Omegle.com, LLC ("Omegle") shall

move before the Honorable Kevin McNulty, United States District Judge, at the

United States District Court, District of New Jersey, the Martin Luther King

Building & U.S. Courthouse, 50 Walnut Street, Room PO 04, Newark, New

Jersey, for an Order pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules

of Civil Procedure dismissing all claims against Omegle in the Complaint (Dkt. 1)

filed in the above-captioned action.

**PLEASE TAKE FURTHER NOTICE** that, in support of its Motion,

Omegle shall rely on its Memorandum in Support of its Motion to Dismiss

Plaintiffs' Complaint Pursuant to FED. R. CIV. P. 12(b)(2) and 12(b)(6), and the

accompanying Declaration of Leif K-Brooks and exhibits in support. A proposed

form of order granting the relief sought in the Motion to Dismiss is also submitted

herewith.

Respectfully submitted this 20th day of November, 2020, by:

**Trimboli & Prusinowski, LLC**　　　**Focal PLLC**

　s/ *James T. Prusinowski*　　　　s/*Stacia N. Lay*
James T. Prusinowski (JP0729)　　Stacia N. Lay (admitted *pro hac vice*)
268 South Street　　　　　　　　Venkat Balasubramani (admitted *pro hac vice*)
Morristown, NJ 07960　　　　　　900 1st Avenue S., Suite 201
jprusinowski@trimprulaw.com　　Seattle, WA 98134
　　　　　　　　　　　　　　　stacia@focallaw.com
　　　　　　　　　　　　　　　venkat@focallaw.com

*Attorneys for Defendant OMEGLE.COM, LLC*

# TAB 15

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

M.H. and J.H., on behalf of their minor child
C.H.,

                              Plaintiffs,                Civil Action No. 2:20-cv-11294-KM-JBC

            v.

OMEGLE.COM, LLC.,

                              Defendant.

**PLAINTIFFS' OPPOSITION TO DEFENDANT OMEGLE.COM, LLC'S MOTION TO
DISMISS PLAINTIFF'S COMPLAINT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. 3

PRELIMINARY STATEMENT ......................................................................... 7

STATEMENT OF FACTS ................................................................................. 8

ARGUMENT ................................................................................................... 10

   I.   PLAINTIFFS HAVE SUFFICENTLY PLEAD PERSONAL JURISDICTION OVER OMEGLE .......................................................................................... 10

      A.   This Court Has Personal Jurisdiction Over Interactive Websites that Solicit Users Within the Jurisdiction .............................................................. 11

      B.   The "Effects Test" Conveys Personal Jurisdiction to this Court ................. 13

   II.   PLAINTIFF HAS PROPERLY PLEADED COGNIZABLE CLAIMS AGAINST THE DEFENDANT ................................................................. 15

      A.   C.H. Has Pleaded a Valid Cause of Action under the VPPA ..................... 15

         1.   C.H. Has Alleged that Omegle Is a "Video Service Provider" under the VPPA ....... 16

         2.   C.H. Has Pleaded Facts Showing that She Was a "Subscriber" of Omegle ............. 17

         3.   C.H. Has Pleaded that Omegle Collected and Disclosed Her PII without Parental Consent .......................................................................... 18

      B.   Omegle Is Not Immune From Suit Under Section 230 Of The Communications Decency Act ................................................................................... 20

   III.   PLAINTIFF HAS ALLEGED SUFFICIENT STATE LAW CLAIMS AGAINST THE DEFENDANT ......................................................... 23

      A.   C.H. Has Properly Pleaded an Intrusion upon Seclusion Cause of Action ................ 23

         1.   C.H. Has Pleaded a Cause of Action for Negligence .................................. 27

         2.   C.H. Has Pleaded a Cause of Action for Intention Infliction of Emotional Distress . 28

CONCLUSION ................................................................................................ 30

# TABLE OF AUTHORITIES

*Cases*

*Ajax Enterprises, Inc. v. Szymoniak Law Firm, P.A.,*
 CIV.A. 05-5903 NLH, 2008 WL 1733095, (D.N.J. Apr. 10, 2008) .......................................... 11

*Asahi Metal Indus. Co. v. Superior Court,*
 480 U.S. 102 (1987) ............................................................................ 15, 23

*Beckman v. Match.com, LLC,*
 743 Fed. App'x. 142 (9th Cir. 2018) ................................................................ 28

*Bell Atl. Corp. v. Twombly,*
 550 U.S. 544 (2007) ...................................................................................... 15

*Bisbee v. John C. Conover Agency,*
 186 N.J. Super. 335 (App. Div. 1982) .......................................................... 23

*Buckley v. Trenton Sav. Fund Soc'y,*
 111 N.J. 355 (1988) ............................................................................... 29, 30

*Calder v. Jones,*
 465 U.S. 783 (1984) .................................................................................... 13

*Cammer v. Bloom,*
 711 F. Supp. 1264 (D. N.J. 1989) ............................................................... 31

*Christie v. National Institute for Newman Studies,*
 258 F. Supp. 3d 494 (D.N.J., 2017) ....................................................... 13, 14

*Cisco Sys. Inc. v. ST Microelectronics Inc.,*
 2015 WL 5138556 (N.D. Cal., 2015) ........................................................ 13

*CompuServe, Inc. v. Patterson,*
 89 F.3d 1257 (6th Cir.1996) ....................................................................... 11

*D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.,*
 566 F.3d 94 (3rd Cir., 2009) .................................................................. 14, 15

*Doe v. MySpace Inc.,*
 528 F.3d 413 (5th Cir., 2008) .................................................................... 22

*Dole Food Co., Inc. v. Watts,*
 303 F.3d 1104 (9th Cir., 2002) .................................................................. 13

*Dyroff v. Ultimate Software Group, Inc.,*
 934 F.3d 1093 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 2761 (2020) ................................. 27, 28

*Ellis v. Cartoon Network, Inc.*,
803 F.3d 1251 (11th Cir., 2015) ........................................... 17

*Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*,
521 F.3d 1157 (9th Cir., 2008) ........................................... 22

*Federal Trade Commission v. Accusearch Inc.*,
570 F.3d 1187 (10th Cir. 2009) ........................................... 22

*Friedman v. Martinez*,
242 N.J. 449 (2020) ........................................... 24

*Frugis v. Bracigliano*,
177 N.J. 250 (2003) ........................................... 20, 28

*GTE New Media Services Inc. v. Ameritech Corp.*,
21 F. Supp. 2d 27 (D.D.C., 1998) ........................................... 12

*Harkwicke v. American Boychoir School*,
188 N.J. 69 (2006) ........................................... 29, 30

*In re Civil Commitment of J.M.B.*,
395 N.J. Super. 69 (N.J. App. Div. 2007) ........................................... 24

*In re Facebook Inc. Internet Tracking Litigation*,
956 F.3d 589 (9th Cir. 2020) ........................................... 26

*In re Google Inc. Cookie Placement Consumer Privacy Litigation*,
806 F.3d 125 (3rd Cir. 2015) ........................................... 24

*In re Nickelodeon Consumer Privacy Litigation*,
827 F.3d 262 (3d Cir. 2016) ........................................... 18

*Jane Doe No. 14 v. Internet Brands, Inc.*,
824 F.3d 846 (9th Cir. 2016) ........................................... 22

*Kost v. Kozakiewicz*,
1 F3d 176 (3d Cir. 1993) ........................................... 15

*Manigault-Johnson v. Google, LLC*,
2019 U.S. Dist. LEXIS 59892 (D.S.C. Mar. 31, 2019) ........................................... 24, 25

*Maritz, Inc. v. Cybergold, Inc.*,
947 F.Supp. 1328 (E.D.Mo.1996) ........................................... 12

*McDonald v. Kiloo APS*,
385 F. Supp. 3d 1022 (N.D. Cal. 2019) ........................................... 25, 26

*McTernan v. City of York, Pennsylvania*,
   577 F.3d 521 (3rd Cir. 2009) ........................................................ 26

*Minatee v. New Jersey*,
   710 F. Supp. 2d 487 (D.N.J., 2010) ............................................. 20

*NOC, Inc. v. Schaefer*,
   197 N.J. Super. 249 (Law Div., Burlington Co., 1984) ................ 23

*Perry v. Cable News Network, Inc.*,
   854 F.3d 1336 (11th Cir., 2017) .................................................. 17

*R.B. v. Westmoreland County*,
   526 Fed. App'x. 181 (3rd Cir. 2013) ........................................... 29

*Ryder v. McCabe*,
   475 F. App'x 411 (3d Cir. 2012) .................................................. 15

*Saponaro v. Grindr, LLC*,
   93 F. Supp. 3d 319 (D.N.J., 2015) ............................................... 20

*Settineri v. PNC Bank Corp.*,
   371 N.J. Super. 537 (App. Div. 2004) ......................................... 29

*Shuker v. Smith & Nephew, PLC*,
   885 F.3d 760 (3rd Cir., 2018) ...................................................... 14

*Stanford v. Stiles*,
   456 F.3d 298 (3rd Cir. 2006) ....................................................... 29

*Taylor v. Metzger*,
   152 N.J. 490 (1998) ..................................................................... 29

*Toys "R" Us, Inc. v. Step Two, S.A.*,
   318 F.3d 446 (3rd Cir. 2003) ................................................. 12, 13

*United States v. Jones*,
   565 U.S. 400 (2012) ..................................................................... 18

*Weber v. Jolly Hotels*,
   977 F.Supp. 327 (D.N.J.1997) ..................................................... 11

*World-Wide Volkswagen Corp. v. Woodson*,
   444 U.S. 286 (1980) ..................................................................... 14

*Wytupeck v.City of Camden*,
   25 N.J. 450 (1957) ....................................................................... 27

*Yershov v. Gannett Satellite Information Network, Inc.*,
820 F.3d 482 (1st Cir., 2016) ................................................................ 17, 18, 19

*Zenith Radio Corp. v. Hazeltine Research, Inc*.,
401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 *reh'g denied*, 401 U.S. 1015, 91 S.Ct. 1247, 28
L.Ed.2d 552 (1971) ....................................................................................... 31

*Zippo Manufacturing Co. v. Zippo Dot Com., Inc*.,
952 F.Supp. 1119 (W.D.Pa.1997) .................................................... 11, 12, 13

**Statutes**

18 U.S.C. § 1595 .................................................................................. 23

47 U.S.C. § 230(f)(3) ........................................................................... 22

**Other Authorities**

Meaghan E. Mixon, "Barely Legal: Bringing Decency Back to the Communications Decency
Act of 1996 To Protect the Victims of Child Sex Trafficking," UCLA Women's Law Journal
25(1) 46, 57-58 (2018) ........................................................................ 23

**Rules**

16 C.F.R. § 312.2 ................................................................................. 21

Fed. R. Civ. P. 12(b) ........................................................................... 26

Fed. R. Civ. P. 32.1(b) ........................................................................ 28

**Treatsies**

Restatement (Second) of Torts § 652B ............................................... 24

## PRELIMINARY STATEMENT

Defendant Omegle.com, LLC ("Omegle" or the "Company") urges this Court to dismiss Plaintiffs' Complaint ("Compl.") by misrepresenting that "Plaintiffs seek to hold [Omegle] responsible for the criminal actions of a third-party user of Omegle's online real-time chat service." Defendant's Brief in Support of its Motion to Dismiss ("Def. Br.") at 9. Defendant is wrong.

As the Complaint emphasizes, Plaintiff C.H. – an eleven-year-old victim of sexual exploitation – brings this action against Omegle because of its "***unfair and deceptive business practices***," which include failing to: (1) failing to post a "complete notice of its information practices" with respect to young children; (2) failing to take precautions to "prevent the use of its website by minors under the age of consent"; (3) failing to "provide any guidance to parents looking to monitor their [minor] children's use of the website"; and (4) the collection and disclosure of her "personally identifiable information,"[1] ("PII") in violation of applicable law, "without verifiable parental consent," resulting in her victimization by a predator who made predictable use of Omegle's high-risk "service." Compl. ¶¶ 2, 4, 15, 34, 36, 47-49.  Because of Omegle's manifold misconduct, C.H. was sexually exploited – giving rise to a cause of action under the federal Video Privacy Protection Act ("VPPA") as well as state law claims for intrusion upon seclusion, negligence and intentional infliction of emotional distress.

Omegle calls young C.H.'s exploitation "reprehensible." Def. Br. at 1. In view of Omegle's illegal use of its site to mine PII from vulnerable young children, and to expose them to abuse by strangers – a pattern demonstrably well known to Omegle from the victimization of other children

---

[1] This somewhat awkward phrase is a legal term of art that will be discussed in more detail below. It refers essentially to an individual's personal information.

by means of its "service" – what is "reprehensible" is Omegle's insistence that it bears no responsibility for the misconduct resulted in C.H.'s injuries.

Fortunately, this Court has an opportunity to right a wrong to C.H. that, if uncorrected, will allow Omegle to continue to expose countless other children to similar exploitation. As shown below, Omegle's efforts to thrust aside C.H.'s complaint without even answering it should be rejected and Omegle's motion denied.

## **STATEMENT OF FACTS**

The Children's Online Privacy Act ("COPPA") prevents developers of child-focused apps and websites from lawfully obtaining the PII of children under 13 years of age without first obtaining verifiable consent from their parents. Compl. ¶12-17. COPPA applies to any operator of a commercial website or online service that is directed to children and that "collects, uses, and/or discloses PII of children," or "on whose behalf such information is collected or maintained." *Id*. at ¶13. Among other things, COPPA defines PII as the user's "geolocation or information sufficient to identify street name and name of a city or town." *Id*. at ¶14.  Obtaining "verifiable parental consent" has been defined through a series of acceptable actions. *Id*. at ¶17.  None of these actions were taken by Omegle. *Id*. at ¶¶ 35-36.

Omegle is an operator pursuant to COPPA. *Id*. at ¶¶18-19. Omegle is a website that enables an individual user to communicate with random individuals across the world anonymously via text and video. *Id*. at ¶20.  Users of Omegle log-in using a webcam and microphone and are matched with another random user and are generally paired randomly. *Id*. at ¶21. The website designates users as "You" or "Stranger 1" or "Stranger 2." *Id*. When a user loads the Omegle webpage, the user is met with the following language: "[t]o help you stay safe, chats are anonymous unless you tell someone who you are (not suggested!), and you can stop a chat at any time. **Predators have**

**been known to use Omegle, so please be careful**." *Id*. at ¶22 (emphasis in original). To use the Omegle website, a user simply clicks on "text" or "video" under the words "start chatting" and the user is then immediately placed in a chat with a stranger. *Id*. at ¶24.

Notably, Omegle's website does not require any age verification or authentication. There is nothing preventing a minor under the age of thirteen (13) from accessing the website. *Id*. at ¶25. Omegle's website is vulnerable to hacking and a user of Omegle is able to grab screenshots of previous conversations and then use this data to obtain another user's geographic location. *Id*. at ¶26. Since 2016, the use of Omegle's website by pedophiles became known to the public and to the Company itself. *Id*. at ¶27. The Company has been mentioned in numerous criminal cases across the country – including in the State of New Jersey– as individuals have been arrested for possessing and promoting child pornography obtained through Omegle's website. *Id*. at ¶¶ 28-29. The Company is aware that both child predators and children use its website. *Id*. at ¶¶ 30-33. Despite the Company's knowledge of the use of its website for these nefarious purposes, the Company took no precaution to monitor or log the content of the chats of its users. *Id*. at ¶35. Further, the Company took no precaution to actually monitor the age of its users or prevent the use of its website by minors under the age of consent. *Id*. at ¶36.

Plaintiffs M.H. and J.H. are parents of minor C.H, who was born in 2009 and at all relevant times was eleven (11) years old and resides in the State of New Jersey. *Id*. at ¶4. During the COVID-19 pandemic, C.H. was forced to attend school remotely and as such was provided with a Chromebook from her school. *Id*. at ¶38. On March 31, 2020, C.H. used her Chromebook to access the Omegle website for the first time, and she was first paired with a group of minors who appeared to be older than C.H. *Id*. at ¶39. After C.H. ended the chat with the minors, she entered a second chat, where she met a black screen and an unknown user ("Doe") began to type text which appeared

on her screen. *Id*. at ¶¶40-41. Doe informed C.H. that he knew where she lived, her geolocation and threatened to hack other cell phones and computers identified in her home. *Id*. at ¶41.

Despite C.H.'s repeated pleas, Doe continued to threaten C.H. and demanded she remove all of her clothing – including her underwear – and touch herself in front of the camera. *Id*. at ¶43. C.H. pleaded with Doe and offered gift cards to Doe instead of complying with his demand, but Doe became more forceful with C.H. and demanded that she remove her clothing. *Id*. Eventually, C.H. complied with Doe's demands and disrobed and touched herself according to the instructions she received. *Id*. Doe captured screen grabs or videos of C.H.'s actions forever memorializing her forced pornographic performance. *Id*. at ¶44. Immediately after this incident, C.H. notified her parents of what occurred and M.H. and J.H. reported the incident to the local police authorities. *Id*. at ¶45.

While using Omegle, neither C.H. nor her parents were asked for verifiable parental consent to collect, disclose, or use C.H.'s PII, including C.H.'s geolocation. *Id*. at ¶5. Moreover, neither M.H. nor J.H. were ever provided direct notice with regard to the collection, use and disclosure of C.H.'s PII. *Id.* C.H. brings suit and alleges that Omegle used "deceptive business practices" (*Id*. at ¶ 2) which attracted children under the age of 13 to the site. She alleges, further, that Omegle failed to take even the smallest of the required precautions to prevent a minor from using Omegle's "service," from having her PII collected without parental consent, or from being exposed to the danger of exploitation by a "predator" through the operation of that website, including its wrongful collection of her PII. *Id*. at ¶¶ 55-56.

## **ARGUMENT**

## I.   **PLAINTIFFS HAVE SUFFICENTLY PLEAD PERSONAL JURISDICTION OVER OMEGLE**

Omegle's maneuvers to deny C.H. her day in court begin with its refusal to recognize the personal jurisdiction of any tribunal located in New Jersey.

A.    **This Court Has Personal Jurisdiction Over Interactive Websites that Solicit Users Within the Jurisdiction**

Federal courts have repeatedly held that a company – like Omegle – which maintains a website deliberately aimed at users throughout the world that has, in fact, attracted considerable use within the forum state (*see* Compl. ¶ 29)[2] – is subject to personal jurisdiction in the federal court sharing that forum.

In analyzing a defendant's contacts through the use of the Internet, the probability that personal jurisdiction may be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the internet. *Ajax Enterprises, Inc. v. Szymoniak Law Firm, P.A.*, CIV.A. 05-5903 NLH, 2008 WL 1733095, at *5 (D.N.J. Apr. 10, 2008); *see also Zippo Manufacturing Co. v. Zippo Dot Com., Inc*., 952 F.Supp. 1119, 1124 (W.D.Pa.1997). Three types of contacts have been identified in order to determine the existence of personal jurisdiction. *Weber v. Jolly Hotels*, 977 F.Supp. 327, 333 (D.N.J.1997). The first type of contact is when the defendant clearly does business over the internet. *Id*. "If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the internet, personal jurisdiction is proper." *Zippo*, 952 F.Supp. at 1124 (citing *CompuServe, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir.1996)). The second type of contact occurs when "a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and

---

[2] Indeed, Omegle's site has already attracted the interest of actual and would-be child abusers within New Jersey. "In April 2019, in the state of New Jersey, twenty-four sexual predators were arrested…for using social media platforms – including Omegle – to lure children for sex." *Id.*

commercial nature of the exchange of information that occurs on the website." *Zippo*, at 1124

(citing *Maritz, Inc. v. Cybergold, Inc*., 947 F.Supp. 1328 (E.D.Mo.1996).  *See also GTE New*

*Media Services Inc. v. Ameritech Corp.*, 21 F. Supp. 2d 27 (D.D.C., 1998) (upholding personal

jurisdiction over defendant who, through "internet-related contacts," caused tortious injury within

forum state).

     In an exceptional case, the Third Circuit held that a website would *not* support personal

jurisdiction where the site is specifically *not* intended for users in the forum state – a situation

altogether remote from this case:

> [Defendant] Step Two's web sites, while commercial and interactive, do not appear
> to have been designed or intended to reach customers in New Jersey. Step Two's
> web sites are entirely in Spanish; prices for its merchandise are in pesetas or Euros,
> and merchandise can be shipped only to addresses within Spain. Most important,
> none of the portions of Step Two's web sites are designed to accommodate
> addresses within the United States.

*Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454 (3rd Cir. 2003).

     Here, both the first and second types of contacts are relevant and present within the

jurisdiction of this Court and have been alleged in the Complaint. In fact, Omegle actually

concedes that C.H. may establish this Court's personal jurisdiction with a showing of "specific

contacts" between Omegle's website and New Jersey. But instead, ignores the specific allegations

in the complaint and argues that C.H. has not even alleged such contacts. Def. Br. at 7-8.

     Plaintiffs allege that Omegle clearly intends to reach all internet users, regardless of

geographical location. Compl. ¶¶ 5, 6, 10, 11. The Complaint alleges that Omegle automatically

and indiscriminately responds to each and every internet user who accesses its website. *Id*. at ¶¶20-

26.  Indeed, Omegle's advertised service, which boasts of connecting the widest possible range of

users for real-time "chats," could not operate in any other way. *Id*. at ¶¶20-23. Omegle's website

is interactive – the user selects the kind of "chat" she wants, either "text" or  "video," and Omegle

changes the parties she has been "paired"– all by "clicking" appropriate on-screen buttons. *Id*. at ¶¶ 20-24.

Further, C.H. was injured through her use of Omegle's "interactive website"; Omegle obtained her PII through that contact; Omegle's goal in facilitating that contact (as with all the contacts arranged through its "service") was clearly commercial, a fact alleged in the Complaint and not denied by Omegle. Compl. ¶ 52. To the contrary, Plaintiffs specifically allege that Omegle "caus[es] its products and services to be disseminated in this District, including its website used by C.H." Compl. ¶ 10. Under *Zippo* and *Toys "R" Us*, these allegations establish the required "specific contacts" with New Jersey and thus establish this Court's jurisdiction.

B.   **The "Effects Test" Conveys Personal Jurisdiction to this Court**

Personal jurisdiction in New Jersey is further confirmed through the application of the "effects" test set forth in *Calder v. Jones*, 465 U.S. 783, 788 (1984). Indeed, this Court has already held that "in tort cases that involve harmful communications…the 'express aiming' requirement of the 'effects test' remains satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Christie v. National Institute for Newman Studies*, 258 F. Supp. 3d 494, 504 (D.N.J., 2017), *citing Cisco Sys. Inc. v. ST Microelectronics Inc.*, 2015 WL 5138556 at *3 (N.D. Cal., 2015) and *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir., 2002). Specifically, the Court stressed that "if an Internet tortfeasor claims ignorance of where his tortious conduct will be felt, but knows his conduct will result in an injury, his claim of ignorance cannot defeat personal jurisdiction." *Christie,* 258 F. Supp. 3d at 505.

This reasoning applies perfectly here. Omegle's illegal collection of C.H.'s PII was a tortious act, which Omegle certainly knew; moreover, given the history of Omegle's role in

13

facilitating sexual exploitation of children by way of that wrongful collection (as amply alleged in the Complaint), Omegle was also aware of the likelihood of the C.H.'s resultant additional injury. Under this Court's holding in *Christie, supra*, Omegle's professed ignorance that these injuries would occur in New Jersey "cannot defeat personal jurisdiction."

Ignoring all this authority, Omegle insists that it can only be subject to personal jurisdiction in the state in which it maintains "its principal place of business." *See* Def. Br. at 6. Evidently Omegle would require anyone injured through the use of its website, no matter where, to file suit in the state in which Omegle happens to be headquartered – even if that state is thousands of miles in distance from the victim.

In fact, the Third Circuit in *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94 (3rd Cir., 2009) went on to reject the very argument Omegle advances, ruling that where a plaintiff's claim arises out of the defendant's "efforts to serve, even indirectly, the [forum state] market" – exactly the situation in this case, where Omegle's projection of its website into New Jersey resulted in C.H.'s injury – "it is not unreasonable to subject it [defendant] to suit" in that state. 566 F.3d at 106, *citing World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

C.H. has alleged just this set of facts. Omegle does not deny – nor can it – that it seeks "to serve" the New Jersey "market," whether directly or indirectly. Nor can it deny that C.H.'s injury arose from Omegle's efforts. It follows that personal jurisdiction is proper in this Court.

Omegle argues that *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 780 (3rd Cir., 2018) rejects "the...stream-of-commerce theory of personal jurisdiction." Def. Br. at 7. Omegle's argument is misplaced. The *Shuker* Court reasoned that plaintiffs failed to allege "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the

forum state, thus invoking the benefits and protections of its laws."  885 F.3d at 780, *citing Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 109 (1987).

As shown above, *D'Jamoos* does not – as Omegle asserts – reject the "stream-of-commerce theory of personal jurisdiction" under facts like these, in which Omegle has "avail[ed] itself of the privilege of conducting activities within" New Jersey through its "efforts to serve" this forum, whether those injected efforts are deemed to be "direct" or "indirect." 566 F.3d at 104. Specifically, where Plaintiffs have sufficiently alleged that Omegle has made purposeful efforts to serve consumers of its interactive website within the fourm. Thus, under the very precedents Omegle cites, the personal jurisdiction of this Court is not in doubt. Omegle's attempt to force children like C.H. to traverse thousands of miles in search of justice for the devastating effects of its worldwide "service" is nothing more than a smokescreen. It should not mislead the Court.

## II.     PLAINTIFF HAS PROPERLY PLEADED COGNIZABLE CLAIMS AGAINST THE DEFENDANT

A plaintiff must "state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ryder v. McCabe*, 475 F. App'x 411, 412 (3d Cir. 2012).  A compliant states a claim upon which relief may be granted when it alleges "sufficient information to outline the elements" of a claim or permits "inferences to be drawn that these elements exist." *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). Therefore, a complaint should not be dismissed for failure to state claim unless it appears beyond doubt that *plaintiff can prove no set of facts* in support of her claim which would entitle her to relief. *See Twombly*, 550 U.S. at 570 (emphasis added). Accordingly, Omegle's motion to dismiss must fail as a matter of law.

### A.     C.H. Has Pleaded a Valid Cause of Action under the VPPA

As Omegle concedes the VPPA establishes a civil cause of action if three factual elements are alleged: that Omegle is a "video service provider"; that C.H. was a "subscriber" to Omegle's website service; and that Omegle collected and disclosed her "personally identifiable information." *See* Def. Br. at 16. C.H. has alleged these elements. It follows then, as a matter of law, this cause of action is not subject to dismissal.

### 1.  C.H. Has Alleged that Omegle Is a "Video Service Provider" under the VPPA

Omegle denies that it is a "video tape service provider" solely because, it says, "the Complaint is devoid of any *facts* showing that Omegle is a 'video tape service provider' as defined by the VPPA." Def. Br. at 16 [emphasis in original].

Omegle's argument is incorrect. C.H. specifically alleges that Omegle "is a video tape service provider" and that it is "engaged in the business" of "delivering videos recorded on its website." Compl. ¶¶ 18, 52. It is Omegle – by denying that such facts have been sufficiently pleaded – that advances a mere "naked assertion," meaningless in law, while falsely accusing C.H. of having done so. Def. Br. at 17. C.H. plainly alleges what the law requires.

Furthermore, although Omegle has gone to the trouble of submitting a "declaration" from its "founder and sole manager" allegedly providing a description of the nature of its business; not a single word in that "declaration" – and nothing in the exhibits attached to it – contradicts C.H.'s explicit allegation that Omegle is a video service provider, nor that it delivers videos that have been recorded on its website. *See* Dkt. 10-2 at 2-8. Given C.H.'s direct allegations on both of these points, and in the absence of any denial from Omegle – an absence only underscored by Omegle's submission of *other* statements regarding its business – the Court must, at this stage of the litigation, accept the competent pleading that Omegle is a "video service provider" within the meaning of the VPPA.

### 2.     C.H. Has Pleaded Facts Showing that She Was a "Subscriber" of Omegle

Omegle argues that C.H. could not have been a "subscriber" of Omegle, as that term is used in the VPPA, because she had never used the site before the day on which she was abused. Def. Br. at 20. Even if this novel restriction on the meaning of the word "subscriber" were adopted by the Court – and there is no reason it should be – Omegle overlooks the fact that C.H. had already finished one chat before she found herself in contact with "Doe," meaning that even by Omegle's reasoning she was not a first-time user when her injury occurred. Compl. ¶¶ 39-40.

In any event, upon signing in, C.H. had to move through Omegle's long list of disclaimers before she could proceed to any actual contacts. *Id*. at ¶ 32. In other words, she had to do much more than simply download an application, like the plaintiff in *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1257 (11th Cir., 2015), relied upon by Omegle (Def. Br. at 18), and of no relevance whatsoever to this matter. Similarly*, Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1343 (11th Cir., 2017), also relied on by Omegle, is readily distinguishable as there the Eleventh Circuit ruled that the plaintiff was not a "subscriber" because he "did not…provide his personal information" when using the website in question. Clearly, *Perry* does not apply to C.H., whose PII, including her geolocation, was indeed collected by Omegle.

Tellingly, Omegle admits the applicability of *Yershov v. Gannett Satellite Information Network, Inc.*, 820 F.3d 482 (1st Cir., 2016) to this case. Def. Br. at 19-20.  Omegle concedes that the Third Circuit has never issued a decision at odds with the holding in *Yershov, supra* regarding the meaning of "subscriber." Def. Br. at 18. That concession is fatal to Omegle's position, for the definition of "subscriber" embraced in *Yershov* is simply "[a]n agreement to receive or be given access to electronic texts or services." 820 F.3d at 487. Even if the Court were to accept Omegle's unsubstantiated insistence that the law requires "something more" than accessing the site to

become a subscriber (Def. Br. at 20), C.H. has clearly alleged doing "something more" in that she provided her geolocation to Omegele much like the plaintiff in *Yershov* who provided his mobile location, thus rendering Omegle's objection moot. 820 F.3d at 489.  Since the holding in *Yershov* mandates a finding that C.H. was a "subscriber" to Omegle's site, it follows from Omegle's own admission that there is no legal basis for dismissing the Complaint on this ground.

### 3.   C.H. Has Pleaded that Omegle Collected and Disclosed Her PII without Parental Consent

As specifically alleged in the Complaint, the "broad definition" for PII as codified by COPPA includes, *inter alia*, "geolocation information sufficient to identify street name and name of a city or town." Compl. ¶ 14.[3] Moreover, C.H. alleges that her "geolocation" was obtained by her abuser from Omegle and as a result identified her address. *Id*. at ¶ 41. These allegations thus satisfy the pleading requirement of a cause of action under the VPPA.

Although, "[a]s a practical matter, norms about what ought to be treated as private information on the Internet are both constantly in flux and often depend on the novelty of the technology at issue" – *In re Nickelodeon Consumer Privacy Litigation*, 827 F.3d 262, 284 (3d Cir. 2016) – the particularly sensitive nature of anyone's geolocation has been specifically recognized by the U.S. Supreme Court. *United States v. Jones*, 565 U.S. 400, 412 (2012) (tracking an individual's "movements from one place to another…through electronic means" might constitute "an unconstitutional invasion of privacy"). What is more, in *Yershov, supra*, 820 F.3d at 486, the Court specifically held that anything that tends to identify a party's "home and work addresses"

---

[3] Omegle's claim that the Complaint "does not explain what is meant by 'geolocation'" (Def. Br. at 3) is false. C.H. not only cites the explicit definition of "geolocation" established by COPPA, but specifically alleges that "Doe" was able to tell her "he knew where [she] lived" when he "provided C.H. with her geolocation." Compl. ¶ 14, 41. Her geolocation thus established where C.H. lived, giving Doe information from which he could readily deduce even more about her identity.

constitutes "[PII] within the meaning of the VPPA." Since C.H. alleges that the geolocation collected from her by Omegle furnished "Doe" with the information needed to identify where she lived – and as a consequence to threaten, blackmail and sexually exploit her – she has certainly alleged a collection of her PII under the *Yershov* standard. Omegle fails to cite a single Third Circuit case that rejects this approach because there is none.

What is more, Omegle's collection of PII from C.H. was *illegal*. COPPA specifically prohibits services like Omegle from collecting, let alone disclosing, any PII from a child under the age of 13 without first obtaining her parents' "verifiable consent." Compl. ¶ 16; *see* 16 C.F.R. § 312.2. The Complaint alleges the methods of obtaining "verifiable consent" that have been enumerated by the Federal Trade Commission ("FTC"). Compl. ¶ 17.  In fact, the Complaint alleges that Omegle failed to prevent C.H., an 11 year old, from using and being fully entangled in its "service"; Omegle did not even "require any age verification or authentication" from any user.  *Id*. at ¶ 25. Nor did Omegle "provide any guidance to parents looking to monitor their children's use of the website" when C.H. accessed the website. *Id*. at ¶ 34. All of this was in stark violation of applicable law.

Omegle argues that no collection of C.H.'s PII ever took place or, if it did, that it was not disclosed to "Doe." Def. Br. at 21.  However, the Complaint alleges that "Doe" did obtain C.H.'s PII from Omegle, including her geolocation (sufficient to indicate where she lived), based on C.H.'s initial log-in to the site and her prior conversation with other children. *See* Compl. ¶ 26.

Omegle argues that, even if it did collect and disclose C.H.'s personal information, thus intruding on her privacy and facilitating her victimization, its misconduct is irrelevant because its website contains language that "prohibits users under 13 years of age from using Omegle's real-time chat service." Def. Br. at 2. Defendant's argument is contrary to law. All applicable authority

19

recognizes that children are members of "a vulnerable class by virtue of their age and immaturity." *Frugis v. Bracigliano*, 177 N.J. 250, 282 (2003); *see also Minatee v. New Jersey*, 710 F. Supp. 2d 487, 493 (D.N.J., 2010). A few words on a website cannot substitute for the positive legal obligations unequivocally imposes on Omegle, particularly where the protection of a children under 13, who could not be expected to fully anticipate the dangers on Omegle's site, was in question. Accordingly, the Defendant's motion must be denied.

B.   **Omegle Is Not Immune From Suit Under Section 230 Of The Communications Decency Act**

Omegle argues that it is immune from all possible claims arising from C.H.'s "reprehensible" injury through the use of its website through blanket immunity provided by Section 230 of the Communications Decency Act ("CDA"). Def. Br. at 10. However, the CDA provides no legal basis for Omegle to escape liability. First, C.H. asserts, *inter alia*, a cause of action under VPPA, and thus, Omegle's claim to immunity must fail because – as Omegle itself concedes – not a single reported case supports the application of Section 230 immunity to a claim under the VPPA. *Id.* at, n. 2. Nor does Section 230 support the novel theory concocted by Omegle granting it limitless immunity for any misconduct carried out by means of its website.

It is true that, under Section 230, "interactive computer service providers cannot be held liable for *publishing* harmful information that is generated by a third party." *Saponaro v. Grindr, LLC*, 93 F. Supp. 3d 319, 323 (D.N.J., 2015)(emphasis added). But, C.H. does not assert claims against Omegle for "publishing harmful information." Rather, C.H. alleges that Omegle, despite ample notice that its site is dangerous for minors – indeed, notwithstanding Omegle's own admission that its "service" has been used by "predators" – not only "took no precaution to monitor or log the content of the chats of its users," but also "took no precaution to actually monitor the age of its users or prevent the use of its website by minors under the age of consent." Compl. ¶¶

22, 35-36. Omegle's liability arises out of its illegal operation of its website not from "publishing harmful information that is generated by a third party."

Further, C.H. alleges that Omegle was directly responsible for illegal "collection, use and disclosure of [her PII] and/or viewing [her] data" without obtaining "verifiable parental consent," or even "notifying her parents and/or guardians" – and without C.H.'s knowledge. Compl. ¶¶ 47-49, 54. Additionally, C.H. alleges that PII – her geolocation – reached "Doe" and thus contributed directly to her victimization. These wrongful business practices of Omegle are the basis of C.H.'s action and are unquestionably illegal. As set forth in the Complaint, relevant law establishes that:

> [o]btaining verifiable consent means making any reasonable effort (taking into consideration available technology) to ensure that before personally identifiable information is collected from a child…[r]eceives notice of the operator's personally identifiable information collection, use and disclosure practices; and [a]uthorizes any collection, use, and/or disclosure of the personally identifiable information.

*Id*. at ¶ 16; *see also* 16 C.F.R. § 312.2. Omegle does not – and cannot – argue that it obtained the "verifiable consent" of C.H.'s parents before collecting her PII – including, at a minimum, her geolocation – or even that it made the legally-required "reasonable effort" to do so.

Defendant's argument that C.H. "seek[s] to treat Omegle as the publisher or speaker of third-party content, specifically video and/or text communications" (Def. Br. at 11) is therefore not only incorrect, but confounding.  C.H. alleges that Omegle used "deceptive business practices" (Compl. ¶ 2) which, in violation of statutory law, attracted children under the age of 13 to the site. She alleges, further, that Omegle failed to take even the smallest of the required precautions to prevent a minor from using Omegle's "service," from having her PII collected without parental consent, or from being exposed to the danger of exploitation by a "predator" through the operation of that website, including its wrongful collection of her PII. *Id*. at ¶¶ 55-56.

Defendant's reliance on *Doe v. MySpace Inc.*, 528 F.3d 413 (5th Cir., 2008), is equally misplaced. Even from Omegle's description of that case, it is clear that *MySpace* did not involve the improper collection of the victim's PII by the website operator, let alone the transmission of that private information to the victim's abuser, as alleged here. Def. Br. at 13.

This case is analogous with *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157 (9th Cir., 2008), in which the defendant's website collected PII from its users. There, the Ninth Circuit held that Section 230 ***did not*** immunize the defendant, where it deliberately obtained PII from users, finding that the defendant's website was "much more than a passive transmitter of information…[the website became] the developer…of that information. And section 230 provides immunity only if the interactive computer does not "create" or "develop" the information "in whole or in part." *Id.* at 1165-66, *citing* 47 U.S.C. § 230(f)(3). Notably, *Roommates.com* does stand alone. The Tenth Circuit reached the same conclusion, holding that the CDA's Section 230 did not bar a civil suit against a website operator that obtained "confidential material" and did so illegally. *Federal Trade Commission v. Accusearch Inc*., 570 F.3d 1187, 1199-1200 (10th Cir. 2009). Similarly, in *Jane Doe No. 14 v. Internet Brands, Inc*., 824 F.3d 846 (9th Cir. 2016)[4], the Ninth Circuit once again refused to confer immunity under Section 230 to a website operator who was sued, not for what it published, but "for failing to warn [plaintiff] about information it obtained…about how third parties targeted and lured victims," thus facilitating the sexual victimization of the plaintiff in that case. *Id*., 824 F.3d at 851.

As these precedents show, the scope of Section 230 immunity urged by Omegle is unjustified by any reasonable reading of the law. Blanket protection from suit for website operators

---

[4] Omegle actually cites this case, though it tucks it away in the discussion of another subject. Def. Br. at 38, n. 6.

whose illegal conduct results in disastrous sexual harm to children would subvert the very purpose

of the CDA.[5] Omegle's arguments require precisely such an "untenable" twisting of the law,

manipulating a limited immunity to provide legal cover for the sexual exploitation of children.

Nothing in the CDA justifies such a perverse result. Here, Omegle used its website to obtain C.H.'s

PII, and developed her PII when it deliberately and illegally collected her data in direct violation

of statutory law requiring it to obtain "verifiable parental consent" by means of specific procedures

the Company deliberately avoided. Therefore, Omegle is not entitled to immunity under Section

230.

## III.    PLAINTIFF HAS ALLEGED SUFFICIENT STATE LAW CLAIMS AGAINST THE DEFENDANT

### A.    C.H. Has Properly Pleaded an Intrusion upon Seclusion Cause of Action

Under applicable New Jersey law, "[o]ne who intentionally intrudes, physically or

otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to

liability to the other for invasion of privacy, if the intrusion would be highly offensive to a

reasonable person." *NOC, Inc. v. Schaefer*, 197 N.J. Super. 249, 254 (Law Div., Burlington Co.,

1984), *citing Bisbee v. John C. Conover Agency*, 186 N.J. Super. 335 (App. Div. 1982). Learning

that one has been viewed in a private moment, because of the intentional efforts of another, under

---

[5] *See* Meaghan E. Mixon, "Barely Legal: Bringing Decency Back to the Communications Decency Act of 1996 To Protect the Victims of Child Sex Trafficking," UCLA Women's Law Journal 25(1) 46, 57-58 (2018)("The plain meaning of Section 230(e)(1) [of the CDA] sets out a clear and unambiguous exception to immunity in that it specifically instructs that '[n]othing in this section shall be construed to impair [enforcement relating to sexual exploitation of children]. Moreover, 18 U.S.C. § 1595 states …that [child sexual exploitation] victims…'may bring a civil action against the perpetrator (*or whoever knowingly benefits, financially or by receiving anything of value* from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter)." Importantly, the relevant sections are…intended to enforce or enhance federal criminal statutes, and…comba[t] the sexual exploitation of children.")(emphasis in original).

circumstances that would be highly offensive to a reasonable person and satisfies the tort's elements and purpose. *See* Restatement (Second) of Torts § 652B; *see also Friedman v. Martinez*, 242 N.J. 449, 470–71 (2020).

Moreover, applicable authority confirms that C.H.'s allegations of unwanted and improper PII collection are sufficient to establish an actionable violation of privacy. Specifically, "unwanted access to data by electronic or other covert means, in violation of the law or social norms," constitutes an actionable intrusion upon privacy. *In re Google Inc. Cookie Placement Consumer Privacy Litigation*, 806 F.3d 125, 151 (3rd Cir. 2015).

Omegle argues that C.H. somehow "consented" to the deceptive business practices that led to her violation – including the collection of her PII without her knowledge or parental consent – because she "gave permission" when she "chose to use the video chat option." Def. Br. at 26. The notion that an 11-year-old can give legally binding "permission" for an otherwise illegal practice is preposterous; Omegle cites no case law holding that minors can grant such permission, and cannot, because New Jersey courts have consistently rejected this argument. *See In re Civil Commitment of J.M.B.*, 395 N.J. Super. 69, 91 (N.J. App. Div. 2007).

Finally, the Company argues that its surreptitious pilfering of C.H.'s PII is not sufficiently "offensive" to constitute a tort. Def. Br. at 26-29.  Omegle misinterprets the law it cites to reach such a conclusion. According to Omegle, in *Manigault-Johnson v. Google, LLC*, 2019 U.S. Dist. LEXIS 59892 (D.S.C. Mar. 31, 2019), plaintiffs' allegations about a website that "collected the personal information from children under 13 without giving notice and obtaining consent in alleged violation of COPPA…did not allege 'sufficiently offensive conduct' to state a claim for intrusion." *Id.* However, there plaintiffs failed to allege any harm resulted from the collection of

those children's personal information – a fact fatal to Omegle's position since C.H. alleges the exact opposite. *See* Def. Br. at 30.

Here, C.H. alleges Omegle obtained her personally identifiable information, without her knowledge and in violation of applicable law that required her parents' "verifiable consent." Compl. ¶¶ 55-56. C.H. alleges that Omegle "intentionally intruded" into her "seclusion" and "private affairs" by "intentionally designing the website to allow for the surreptitious and improper gaining of knowledge of, review, and or retention of C.H.'s activities." *Id*. at ¶ 62. She further alleges that this is "highly offensive to a reasonable person," and she emphasizes that the offensiveness is clear from "legislation enacted by Congress, rules promulgated and enforcement actions undertaken by the FTC, and countless studies, op-eds, and articles decrying the online tracking of children." *Id*. at ¶ 63. Further, C.H. does not simply allege harm from Omegle's abstract intrusion on her privacy. She alleges that Omegle's illegal collection of her PII enabled "Doe" to use his knowledge of where she lived to blackmail her into submitting to sexual exploitation. This allegation alone removes the instant case as far as possible from the facts of *Manigault-Johnson*, in which the plaintiffs alleged *no harm whatever*. Omegle thus commandeers an irrelevant holding in an attempt to foist on this Court a standard for "offensive conduct" in privacy cases that no court has ever adopted. *See McDonald v. Kiloo APS*, 385 F. Supp. 3d 1022, 1033 (N.D. Cal. 2019) (warning that "[d]efendants' insistence on a sky-high standard of egregiousness is…questionable…. [N]either the law nor common sense demand that 'egregious' be cabined to such extraordinary circumstances and nothing more").

The "sky-high standard" for privacy violations Omegle urges here is not only unsupported by law; it is flatly incompatible with a resolution "so-ordered" last year by the District Court for

the Central District of California between FTC and Musical.ly[6] in a case remarkably similar to this one. Musical.ly, like Omegle, is a website operator that allegedly failed to "post a privacy policy on its online service providing clear, understandable, and complete notice of its information practices; fail[ed] to provide direct notice of its information practices to parents; [and] fail[ed] to obtain verifiable parental consent prior to collecting, using, and/or disclosing personal information from children," all in violation of COPPA. *See* Declaration of Hillary Nappi ("Nappi Decl.") Exhibit "A" at 2. In its stipulated order, the district court "permanently restrained and enjoined" the defendants from violating COPPA. *See id*. at 8. The violations of COPPA alleged against Musical.ly are a perfect replica C.H's allegations against Omegle.

Moreover, other federal courts have held that dismissal of a cause of action for intrusion upon seclusion at this preliminary stage of the litigation is improper. The key issues to be resolved – the nature of the information appropriated, the expectation of privacy in that information, and whether the conduct was "highly offensive" or "egregious" – are all highly fact-specific; they cannot be challenged without a detailed presentation of evidence, which is not possible in a motion to dismiss under Fed. R. Civ. P. 12(b). *See In re Facebook Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020) (reversing the lower court's dismissal of the plaintiffs' claims, reasoning that dismissal was precluded by law before a more complete factual picture could be presented to the court); *McDonald*, 385 F. Supp. 3d at 1034 (stressing "the importance of having an adequate factual record before dismissing a privacy case."). Under this standard, C.H.'s claims regarding Omegle's intrusion into her privacy are not subject to dismissal.

---

[6] The full text of the order is attached hereto to Nappi Decl. at Exhibit "A." Since it is contained in the official record of a federal district court case, the court's order is a matter of public record and this Court may take judicial notice of it and its contents. *See McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 526 (3rd Cir. 2009).

### 1.    C.H. Has Pleaded a Cause of Action for Negligence

Omegle argues that C.H. has not explained what "duty of care" Omegle owed her under the facts set out in the Complaint. *See* Def. Br. at 36-37. Omegle is incorrect as C.H. clearly sets out Omegle's duty by alleging Omegle's negligence in "failing to implement adequate safety and security measures – including monitoring its users' age." Compl. ¶ 69. C.H. is even more explicit in pleading Omegle's breach of this duty and alleges specific failures of the Company. These failures include, *inter alia*, that Omegle "failed to prevent minors from using its website despite its knowledge" minors used the website and that its website was "inherently dangerous" and that "sexual predators" used its website to groom and sexually abuse and exploit children"; further, Plaintiffs allege that Omegle "failed to interview, assess, inspect or otherwise check on the welfare of its users to ensure that they were not being harmed, sexually abused, or otherwise mistreated." *Id*. at. ¶ 70. Furthermore, to underline Omegle's awareness danger its website posed, the Complaint emphasizes that the website carries the admission: "Predators have been known to use Omegle, so please be careful." *Id*. at ¶ 22. In light of its own implicit admission, Omegle's argument that C.H.'s injury was not "foreseeable" – and therefore not actionable in a suit for negligence – is confounding.[7] *See* Def. Br. at 37.

Relying on *Dyroff v. Ultimate Software Group, Inc.*, 934 F.3d 1093 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 2761 (2020), Omegle argues that it owed no duty to C.H. despite its unlawful failure to give parental notice *of*, and to obtain verifiable parental consent *for*, its collection of C.H.'s PII. Def. Br. at 38. Omegle's reliance is misplaced as *Dyroff* is readily distinguishable from

---

[7] To argue that an 11-year-old child was properly put on notice of the danger, and therefore adequately protected from it, by Omegle's casual placement of the words "please be careful" in small print on the website ignores longstanding precedent. *See Wytupeck v.City of Camden*, 25 N.J. 450, 464 (1957) (holding that written notice on eight-foot-high fence was not sufficient to warn young child of serious and hidden danger of electrocution).

the instant case. There, the defendant had taken no action, through its website, that made the position of the plaintiff "worse" than before the plaintiff accessed the website; accordingly, the defendant had no "duty to warn" of a danger that arose solely through a third party's communications through the site. *Id.*, 934 F.3d at 1100-01.

Here, C.H. alleges that Omegle's illegal collection of her PII enabled "Doe" to know where she lived and thus to blackmail her and sexually exploit her. Clearly, C.H. was worse off for having accessed Omegle. Further, C.H. asserts much more than an abstract "duty to warn," as her claims are grounded in explicit requirements of federal statutory law violated by Omegle.[8]

Lastly, Omegle argues that holding it liable for its wrongs against C.H. would offend "broader considerations of fairness and public policy." Def. Br. at 37.  The relevant public policy applicable to C.H.'s negligence claim is simply that "[t]he overarching mission of the State government is to protect children from harm." *Frugis v. Bracigliano, supra*, 177 N.J. at 268.

Omegle's definition of "considerations of fairness and public policy" suggests that it should escape liability because its connection with C.H. was "at best fleeting" (Def. Br. at 37). Omegle would place the full burden of the relevant "duty of care" on an 11-year-old child who suffered an act of sexual exploitation because of Omegle's illegal operation of its website. The law dictates a different standard. Omegle's negligence is amply pleaded in the Complaint, and dismissal is precluded as a matter of law.

### 2.   C.H. Has Pleaded a Cause of Action for Intention Infliction of Emotional Distress

---

[8] Omegle also cites *Beckman v. Match.com, LLC*, 743 Fed. App'x. 142 (9th Cir. 2018) to support this curious line of argument, but that case is more inapposite than *Dyroff*.  Not only does the holding concern merely an abstract "duty to warn" (rendering it irrelevant), it applies Nevada state law (not New Jersey law, which governs here) and it is an unpublished case – yet Omegle has not "file[d] and serve[d] a copy of [the] opinion" as required by Fed. R. Civ. P. 32.1(b) for such unpublished cases.  *Id.*, 743 F. App'x. at 142.

To successfully prosecute a claim for intentional infliction of emotional distress[9], a plaintiff must establish intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe. *Settineri v. PNC Bank Corp.*, 371 N.J. Super. 537, 546 (App. Div. 2004) quoting *Buckley v. Trenton Sav. Fund Soc'y*, 111 N.J. 355, 366 (1988). Initially, the plaintiff must allege that the defendant acted intentionally or recklessly. *Buckley*, 111 N.J. at 366. For an intentional act to result in liability, the defendant must intend both to do the act and to produce emotional distress. *Id.*  Liability will also attach when the defendant acts recklessly in deliberate disregard of a high degree of probability that emotional distress will follow. *Id.* A defendant's conduct must be so outrageous and extreme that it is beyond the bounds of decency, and a civilized community would consider it atrocious and intolerable.  *See Taylor v. Metzger,* 152 N.J. 490, 508–21 (1998). "Deliberate indifference has been sufficient" to "shock the conscience," thus making such indifference legally equivalent to deliberate misconduct. *See R.B. v. Westmoreland County*, 526 Fed. App'x. 181, 186 (3rd Cir. 2013), *citing Stanford v. Stiles*, 456 F.3d 298, 306-07 (3rd Cir. 2006).

Omegle claims that it cannot be liable unless it actually *intended* "to produce emotional distress" when it illegally collected C.H.'s PII and facilitated her sexual violation by "Doe." Def. Br. at 32.  Further, Omegle argues that it "is no different in kind than any other social networking website or app that offers users the means to interact with one another in real time" and as such, the conduct alleged by C.H. is not out of the norm, and cannot, therefore be considered so "outrageous" or "extreme" as to permit liability for intentional infliction of emotional distress. Def. Br. at 32.

---

[9] Under New Jersey law, intentional infliction of emotional distress has long been recognized as an appropriate claim in cases of child sexual abuse. *See, e.g., Harkwicke v. American Boychoir School*, 188 N.J. 69, 85 (2006).

This is simply not the relevant standard. As *Buckley*, the case upon which Omegle heavily relies, makes clear, a "reckless" and "deliberate" disregard of the "high degree of probability" that emotional distress will follow its actions is enough to establish liability. 111 N.J. at 366. As pleaded in the Complaint, Omegle well knew that it was exposing an children to situations in which, they could encounter exactly the sort of "predator" who violated C.H. through the improper conduct of Omegle's website (Compl. ¶ 22) is the "reckless" and "deliberate" type of conduct that can establish liability.

Further, C.H.'s injury does not stand alone. As the result of the persistent deceptive business practices for which C.H. brings the present action, "children across the country" have been "stalked, sexually assaulted, abused, and exploited by adults and predators." *Id*. at. ¶¶ 2, 22, 23, 29. Yet, Plaintiffs allege Omegle has continued these practices, resulting in C.H.'s victimization. To argue that facilitating an 11-year-old child's sexual abuse by luring her to a "service" that illegally collected PII from her – without even attempting to obtain the parental consent required by law – is "no different in kind than any other social networking website" disregards that Plaintiffs have met the pleading requirements of showing that Omegle knew that there was a possibility of emotional harm to users who would be victimized and disregarded it. Accordingly, this Court should deny Defendant's motion.[10]

## **CONCLUSION**

Accordingly, and for all the reasons stated above, Omegle's motion to dismiss should be denied in its entirety.[11]

---

[10] Under New Jersey law, intentional infliction of emotional distress has long been recognized as an appropriate claim in cases of child sexual abuse. *See, e.g., Harkwicke v. American Boychoir School*, 188 N.J. 69, 85 (2006).

[11] In the event the Court is inclined to grant any portion of Omegle's motion to dismiss, the Court should, in the exercise of its discretion, allow Plaintiff to replead. It is settled that leave to file

DATED:        New York, New York          **HACH ROSE SCHIRRIPA &**
              January 5, 2020               **CHEVERIE, LLP**

                                          /s/ *Hillary M. Nappi*
                                          _____
                                          Frank R. Schirripa, Esq.
                                          Hillary M. Nappi, Esq.
                                          112 Madison Avenue, 10th Floor
                                          New York, New York 10016
                                          (212) 213-8311
                                          *Attorneys for Plaintiffs*

---

amendments of the pleadings under Rule 15(a) is in the discretion of the Court and should be granted freely. *Zenith Radio Corp. v. Hazeltine Research, Inc*., 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 *reh'g denied*, 401 U.S. 1015, 91 S.Ct. 1247, 28 L.Ed.2d 552 (1971). "The most important factor in deciding whether to grant leave to amend is whether the non-moving party will suffer prejudice as a result of the amendment. The non-moving party must do more than simply claim prejudice; it must show that it will be unfairly disadvantaged or deprived of the opportunity to present facts or evidence." It is settled that leave to file amendments of the pleadings under Rule 15(a) is in the discretion of the Court and should be granted freely. *Id.*  The most important factor in deciding whether to grant leave to amend is whether the non-moving party will suffer prejudice as a result of the amendment. *Cammer v. Bloom*, 711 F. Supp. 1264, 1278 (D. N.J. 1989) (internal citations and quotations omitted). At this early stage in litigation, Defendant cannot assert they would be prejudiced.

## <u>CERTIFICATE OF SERVICE</u>

I, Hillary M. Nappi, do hereby certify that on the January 5, 2021, a true and correct copy of the above and foregoing – Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss – was served via ECF and email to the counsel of record.

*/s/ Hillary M. Nappi*
Hillary M. Nappi

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| M.H. and J.H., on behalf of their minor child, C.H.,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>OMEGLE.COM, LLC,<br><br>　　　　　Defendant | **Civil No. 2:20-cv-11294** |

**DECLARATION OF HILLARY NAPPI IN SUPPORT OF PLAINTIFFS'**
**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

I, Hillary Nappi, hereby declare and state under penalty of perjury:

1.　　　I am member of the Bar of this Court and an associate with the law firm of Hach Rose Schirripa & Cheverie, LLP, attorneys for the Plaintiffs. I am familiar with all of the facts and circumstances of this action.  I submit this Declaration in Support of Plaintiffs' Opposition to Defendant's Motions to Dismiss

2.　　　Attached hereto as **Exhibit A** is a true and correct copy of the STIPULATED ORDER FOR CIVIL PENALTIES, PERMANENT INJUNCTION, AND OTHER RELIEF entered into in United States v. MUSICAL.LY, Case No. 2:19-cv-01439-ODW (RAO), dated March 27, 2019.

Dated:  New York, New York
　　　　January 5, 2020

　　　　　　　　　　HACH ROSE SCHIRRIPA & CHEVERIE, LLP

　　　　　　　　　　By: _/s/ Hillary Nappi_____

　　　　　　　　　　　　Hillary Nappi
　　　　　　　　　　　　112 Madison Avenue, 10th Floor
　　　　　　　　　　　　New York, NY 10016
　　　　　　　　　　　　Telephone: (212) 213-8311

Facsimile: (212) 779-0028

*Counsel for Plaintiff*

# EXHIBIT A

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>MUSICAL.LY, a corporation; and<br>MUSICAL.LY, INC., a corporation,<br><br>    Defendants. | Case No. 2:19-cv-01439-ODW (RAO)<br><br>**STIPULATED ORDER FOR CIVIL PENALTIES, PERMANENT INJUNCTION,  AND OTHER RELIEF** |

Plaintiff, the United States of America, acting upon notification and on behalf of the Federal Trade Commission ("Commission"), filed its Complaint for Civil Penalties, Permanent Injunction, and Other Equitable Relief, ("Complaint"), pursuant to Sections 13(b), and 16(a)(1) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b), and 56(a)(1), the Children's Online Privacy Protection Act, 15 U.S.C. §§ 6502(c) and 6505(d), and the Commission's Children's Online Privacy Protection Rule ("COPPA Rule"), 16 C.F.R. Part 312.  Defendants have waived service of the summons and the Complaint.  Plaintiff and Defendants stipulate to the entry of this Stipulated Order for Permanent Injunction and Civil Penalty Judgment ("Order") to resolve all matters in dispute in this action between them.

**THEREFORE, IT IS ORDERED** as follows:

### FINDINGS

1.      This Court has jurisdiction over this matter.

2.      The Complaint charges that Defendants violated the COPPA Rule and the FTC Act by failing to post a privacy policy on its online service providing clear, understandable, and complete notice of its information practices; failing to provide direct notice of its information practices to parents; failing to obtain verifiable parental consent prior to collecting, using, and/or disclosing personal information from children; failing to delete personal information at the request of parents; and retaining personal information longer than reasonably necessary to fulfill the purpose for which the information was collected.

3.      Defendants neither admit nor deny any of the allegations in this Complaint, except as specifically stated in this Order.  Only for purposes of this action, Defendants admit the facts necessary to establish jurisdiction.

4.      Defendants waive any claim they may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agree to bear their own costs and attorney fees.

5.      Defendants and Plaintiff waive all rights to appeal or otherwise challenge or contest the validity of this Order.

### ORDER

### DEFINITIONS

For the purpose of this Order, the following definitions apply:

A.      "Child" means an individual under the age of 13 residing in the U.S.

B.      "Collects" or "collection" means, for the purposes of Parts I, II, V, VI and VII of this Order only, the gathering of any personal information from a child by any means, including but not limited to:

1.  Requesting, prompting, or encouraging a child to submit personal information online;

2

     2.  Enabling a child to make personal information publicly available in identifiable form; or

     3.  Passive tracking of a child online.

C.  "Defendants" means Musical.ly and Musical.ly, Inc., and their successors and assigns.

D.  "Delete" means to remove personal information such that it is not maintained in retrievable form and cannot be retrieved in the normal course of business.

E.  "Disclose" or disclosure" means, with respect to personal information:

     1.  The release of personal information collected by an operator from a child in identifiable form for any purpose, except where an operator provides such information to a person who provides support for the internal operations of the Web site or online service; and

     2.  Making personal information collected by an operator from a child publicly available in identifiable form by any means, including but not limited to a public posting through the Internet, or through a personal home page or screen posted on a Web site or online service; a pen pal service; an electronic mail service; a message board; or a chat room.

F.  "Internet" means collectively the myriad of computer and telecommunication facilities, including equipment and operating software, which comprises the interconnected world-wide network of networks that employ the Transmission Control Protocol/Internet Protocol, or any predecessor or successor  protocols to such protocol, to communicate information of all kinds by wire, radio, or other methods of transmission.

G.  "Obtaining verifiable consent" means making any reasonable effort (taking into consideration available technology) to ensure that before personal information is collected from a child, a parent of the child:

     1.  Receives notice of the operator's personal information collection, use,

and disclosure practices; and

2. Authorizes any collection, use, and/or disclosure of the personal information.

H.    "Online contact information" means an email address or any other substantially similar identifier that permits direct contact with a person online, including but not limited to, an instant messaging user identifier, a voice over internet protocol (VOIP) identifier, or a video chat identifier.

I.    "Operator" means any person who operates a Web site located on the Internet or an online service and who collects or maintains personal information from or about the users of or visitors to such Web site or online service, or on whose behalf such information is collected or maintained, or offers products or services for sale through the Web site or online service, where such Web site or online service is operated for commercial purposes involving commerce among the several States, or with one or more foreign nations; in any territory of the United States or in the District of Columbia, or between any such territory and another such territory or any State or nation; or between the District of Columbia and any State, territory, or foreign nation.

J.    "Parent" includes a legal guardian.

K.    "Person" means any individual, partnership, corporation, trust, estate, cooperative, association, or other entity.

L.    "Personal information" means individually identifiable information about an individual collected online, including:

1. A first and last name;

2. A home or other physical address including street name and name of a city or town;

3. Online contact information as defined in this section;

4. A screen or user name where it functions in the same manner as online

4

contact information, as defined in this section;

5. A telephone number;

6. A Social Security number;

7. A persistent identifier that can be used to recognize a user over time and across different Web sites or online services. Such persistent identifier includes, but is not limited to, a customer number held in a cookie, an Internet Protocol (IP) address, a processor or device serial number, or unique device identifier;

8. A photograph, video, or audio file where such file contains a child's image or voice;

9. Geolocation information sufficient to identify street name and name of a city or town; or

10. Information concerning the child or the parents of that child that the operator collects online from the child and combines with an identifier described in this section.

M.   "Registration information" means the following types of information collected for purposes of registering an account:

1. A user name;

2. A password;

3. An email address; or

4. An account authentication identifier associated with any third party Web site or online service through which a user of Defendants' Web site or online service registered an account.

N.   "Release of personal information" means the sharing, selling, renting, or transfer of personal information to any third party.

O.   "Support for the internal operations of the Web site or online service" means:

1. Those activities necessary to:

     a.  Maintain or analyze the functioning of the Web site or online service;

     b.  Perform network communications;

     c.  Authenticate users of, or personalize the content on, the Web site or online service;

     d.  Serve contextual advertising on the Web site or online service or cap the frequency of advertising;

     e.  Protect the security or integrity of the user, Web site, or online service;

     f.  Ensure legal or regulatory compliance; or

     g.  Fulfill a request of a child as permitted by 16 C.F.R. §§ 312.5(c)(3) and (4);

2. So long as the information collected for the activities listed in paragraphs (1)(a)-(g) of this definition is not used or disclosed to contact a specific individual, including through behavioral advertising, to amass a profile on a specific individual, or for any other purpose.

P.   "Third party" means any person who is not:

1. An operator with respect to the collection or maintenance of personal information on the Web site or online service; or

2. A person who provides support for the internal operations of the Web site or online service and who does not use or disclose information protected under this part for any other purpose.

Q.   "Web site or online service directed to children" means a commercial Web site or online service, or portion thereof, that is targeted to children.

1. In determining whether a Web site or online service, or a portion thereof, is directed to children, the Commission will consider its subject matter, visual content, use of animated characters or child-oriented activities and incentives, music or other audio content, age of models, presence of child celebrities or celebrities who appeal to children, language or other

characteristics of the Web site or online service, as well as whether advertising promoting or appearing on the Web site or online service is directed to children. The Commission will also consider competent and reliable empirical evidence regarding audience composition, and evidence regarding the intended audience.

2. A Web site or online service shall be deemed directed to children when it has actual knowledge that it is collecting personal information directly from users of another Web site or online service directed to children.

3. A Web site or online service that is directed to children under this criteria set forth in paragraph (1) of this definition, but that does not target children as its primary audience, shall not be deemed directed to children if it:

    a. Does not collect personal information from any visitor prior to collecting age information; and

    b. Prevents the collection, use, or disclosure of personal information from visitors who identify themselves as under age 13 without first complying with the notice and parental consent provisions of this part.

4. A Web site or online service shall not be deemed directed to children solely because it refers or links to a commercial Web site or online service directed to children by using information location tools, including a directory, index, reference, pointer, or hypertext link.

## I. INJUNCTION CONCERNING THE COLLECTION OF PERSONAL INFORMATION FROM CHILDREN

**IT IS ORDERED** that Defendants and Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with being an operator of any Web site or online service directed to children or of any Web site or online service with actual knowledge that it is collecting or

maintaining personal information from a child, are hereby permanently restrained and enjoined from violating the Children's Online Privacy Protection Rule, 16 C.F.R. Part 312, including, but not limited to:

    A. Failing to make reasonable efforts, taking into account available technology, to ensure that a parent of a child receives direct notice of Defendants' practices with regard to the collection, use, or disclosure of personal information from children, including notice of any material change in the collection, use, or disclosure practices to which the parent has previously consented;

    B. Failing to post a prominent and clearly labeled link to an online notice of its information practices with regard to children, if any, on the home or landing page or screen of its Web site or online service, *and* at each area of the Web site or online service where personal information is collected from children;

    C. Failing to obtain verifiable parental consent before any collection, use, or disclosure of personal information from children, including consent to any material change in the collection, use, or disclosure practices to which the parent has previously consented;

    D. Failing to delete a child's personal information at the request of a parent; and

    E. Retaining personal information for longer than is reasonably necessary to fulfill the purpose for which the information was collected.

A copy of the Children's Online Privacy Protection Rule, 16 C.F.R. Part 312, is attached hereto as Appendix A.

## II.    DELETION OF CHILDREN'S PERSONAL INFORMATION AND TREATMENT OF ACCOUNTS EXISTING AT TIME OF ENTRY OF THIS ORDER

**IT IS FURTHER ORDERED** that Defendants and Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, shall:

    A. Destroy all personal information, in all forms in their possession, custody, or control, that is associated with user accounts existing at the time of entry of this

Order; or

B. If, at the time of entry of this Order, Defendants operate any Web site or online service that is directed to children but that does not target children as the primary audience,

    1. For users of accounts existing at the time of entry of this Order who identify as under age 13, Defendants shall destroy such users' personal information, except that Defendants may, with the affirmative consent of the user, transfer the user's videos to the user's device and allow such user to retain their username, so long as that username does not function in the same manner as online contact information.

    2. For users of accounts existing at the time of entry of this Order who identify as age 13 or over who were under age 13 at the time Defendants collected personal information, Defendants shall destroy such personal information, except that Defendants may, with the affirmative consent of the user, transfer the user's videos to the user's device and retain the user's registration information.

    3. If the age of a particular user of an existing account is not identified within forty-five 45 days after entry of the Order, Defendants shall, within forty-five (45) days of entry of the Order: (a) remove such user's personal information from Defendants' Web sites and online services; (b) refrain from disclosing or using personal information that has been removed from their Web sites and online services; and (c) destroy such personal information within 12 months after entry of the Order.  If the age of a particular user whose information has been removed is identified within 12 months after entry of the Order, Defendants shall comply with Section B(1) and B(2).

    4. Personal information need not be destroyed, and may be collected, used, and disclosed, to the extent Defendants obtain verifiable parental consent

for its collection, use, and disclosure.

     5. Personal information need not be destroyed, and may be disclosed, to the extent requested by a government agency or as required by a law, regulation, or court order.

C. To the extent not covered in its compliance report, Defendants must submit a supplemental report, sworn under penalty of perjury, discussing whether and how Defendants are in compliance with this provision, within 15 months of entry of this Order.

Provided further, that personal information need not be destroyed, and may be collected, used, and disclosed, to the extent Defendants obtain verifiable parental consent for its collection, use, and disclosure, and may be disclosed as requested by a government agency or as required by a law, regulation or court order.

## III.   MONETARY JUDGEMENT FOR CIVIL PENALTY

**IT IS FURTHER ORDERED that:**

A. Judgement in the amount of $5,700,000.00 is entered in favor of Plaintiff against Defendants, jointly and severally, as a civil penalty.

B. Defendants are ordered to pay to Plaintiff, by making payment to the Treasurer of the United States, $5,700,000.00, which, as Defendants stipulate, their undersigned counsel holds in escrow for no purpose other than payment to Plaintiff.  Such payment must be made within 7 days of entry of this Order by electronic fund transfer in accordance with instructions previously provided by a representative of Plaintiff.

## IV.   ADDITIONAL MONETARY PROVISIONS

**IT IS FURTHER ORDERED that:**

A. Defendants relinquish dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order and may not seek the return of any assets.

B. The facts alleged in the Complaint will be taken as true, without further proof,

in any subsequent civil litigation by or on behalf of the Commission, including in a proceeding to enforce its rights to any payment or monetary judgement pursuant to this Order.

C. The facts alleged in the Complaint establish all elements necessary to sustain an action by the Commission pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes.

D. Defendants acknowledge that their Taxpayer Identification Numbers, which Defendants must submit to the Commission, may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. §7701.

## V.    INFORMATIONAL RELIEF

A. Defendants must report on their deletion obligations under penalty of perjury:

1. Defendants must submit a report within ninety (90) days of the entry of this Order summarizing their compliance with Section II of this Order; and

2. If Defendants elect to operate any Web site or online service that is directed to children but that does not target children as the primary audience, Defendants must submit a report within fifteen (15) months of the entry of this Order summarizing their compliance with Section II.B. of this Order.

## VI.    ORDER ACKNOWLEDGMENTS

**IT IS FURTHER ORDERED** that Defendants obtain acknowledgments of receipt of this Order:

A. Each Defendant, within 7 days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B. For five (5) years after entry of this Order, Defendants must deliver a copy of this Order to: (1) all principals, officers, directors, and LLC managers and members; (2) all employees, agents, and representatives having managerial

responsibilities for the collection, use, maintenance, or disclosure of personal information  or the operation of any of Defendants' Web sites or online services; and (3) any business entity resulting from any change in structure as set forth in the Part titled Compliance Reporting.  Delivery must occur within seven (7) days of entry of this Order for current personnel.  For all others, delivery must occur before they assume their responsibilities.

C.  From each individual or entity to which a Defendant delivered a copy of this Order, that Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

## VII.    COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that Defendants make timely submissions to the Commission:

A.    One year after entry of this Order, each Defendant must submit a compliance report, sworn under penalty of perjury.  Each Defendant must:

1.  Identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the Commission and Plaintiff may use to communicate with Defendant;

2.  Identify all of that Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses;

3.  Describe the activities of each business, including the goods and services offered, the means of advertising, marketing, and sales, and involvement of any other Defendant;

4.  Describe in detail whether and how that Defendant is in compliance with each section of this Order;

5.  Provide a copy of each different version of any privacy notice posted on each Web site or online service operated by that Defendant or otherwise communicated to parents of children from whom that Defendant collects personal information;

12

6.   Provide a statement setting forth in detail any methods used to obtain verifiable parental consent prior to any collection, use, and/or disclosure of personal information from children or the methods used to avoid collecting, using, and/or disclosing personal information from children;

7.   Provide a statement setting forth in detail the means provided for parents to review any personal information collected from their children and to refuse to permit its further use or maintenance;

8.   Provide a statement setting forth in detail why each type of information collected from a child is reasonably necessary for the provision of the particular related activity;

9.   Provide a statement setting forth in detail the procedures used to protect the confidentiality, security, and integrity of personal information collected from children; and

10.  Provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

B.   For ten (10) years after entry of this Order, each Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in: (a) any designated point of contact; or (b) the structure of any Defendant or any entity that Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

C.   Each Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against such Defendant within 14 days of its filing.

D.   Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. §

13

1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on: _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.   Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to Debrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580. The subject line must begin: United States v. Musical.ly, *et al.*

## VIII.   RECORDKEEPING

**IT IS FURTHER ORDERED** that Defendants must create certain records for 10 years after entry of this Order, and retain each such record for 5 years. Specifically, Defendants must create and retain the following records:

A.  All records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission;

B.  Copies of all consumer complaints relating to Defendants' information practices, including its collection, use, maintenance, or disclosure of personal information, and any response; and

C.  A copy of each materially different form, page, or screen created, maintained, or otherwise provided by Defendants through which personal information is collected from a child, and a copy of each materially different document containing any representation regarding collection, use, maintenance or disclosure practices pertaining to personal information from children. Each webpage copy shall be accompanied by the URL of the webpage where the material was posted online. Electronic copies shall include all text and graphics files, audio scripts, and other computer files used in presenting information on the Internet.

14

# IX.    COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring Defendants' compliance with this Order:

A. Within 14 days of receipt of a written request from a representative of the Commission or Plaintiff, each Defendant must: submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying.  The Commission and Plaintiff are also authorized to obtain discovery, without further leave of court, using any procedure prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B. For matters concerning this Order, the Commission and Plaintiff are authorized to communicate directly with each Defendant.  Defendants must permit representatives of the Commission and Plaintiff to interview any employee or other person affiliated with Defendants who has agreed to such an interview. The person interviewed may have counsel present.

C. The Commission and Plaintiff may use all other lawful means, including posing, through its representatives as consumers, suppliers, or other individuals or entities, to Defendants or any individual or entity affiliated with Defendants, without the necessity of identification or prior notice.  Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## X.    RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

The Clerk of the Court shall close the case.

**IT IS SO ORDERED.**


Dated: March 27, 2019        _____

                    UNITED STATES DISTRICT JUDGE

**SO STIPULATED AND AGREED:**

**FOR DEFENDANTS:**



_____

LYDIA PARNES
Wilson Sonsini Goodrich & Rosati
1700 K Street, NW, Fifth Floor
Washington, D.C.
Tel: (202) 973-8800
Fax: (202) 973-8899
lparnes@wsgr.com

*Counsel for Musical.ly and Musical.ly, Inc.*

**DEFENDANTS:**



_____

ALEX ZHU
Director, CEO, and President
Musical.ly, Inc.



_____

YIMING ZHANG
Director
Musical.ly

**FOR PLAINTIFF UNITED STATES OF AMERICA:**

JOSEPH H. HUNT
Assistant Attorney General
NICOLA T. HANNA
United States Attorney

JAMES M. BURNHAM
Deputy Assistant Attorney General
GUSTAV W. EYLER
Acting Director
Consumer Protection Branch
U.S. Department of Justice, Civil Division

DAVID M. HARRIS, AUSA
Chief, Civil Division
DAVID K. BARRETT, AUSA
Chief, Civil Fraud Section
ABRAHAM C. MELTZER, AUSA
Deputy Chief, Civil Fraud Section
ROSS M. CUFF, AUSA

_____ /S/ _____
KENDRACK D. LEWIS
Trial Attorney
Consumer Protection Branch
U.S. Department of Justice, Civil Division
P.O. Box 386
Washington, D.C. 20044
Tel: (202) 353-3881
kendrack.lewis@usdoj.gov

**FOR THE FEDERAL TRADE COMMISSION:**

MANEESHA MITHAL
Associate Director
MARK EICHORN
Assistant Director

_____ /S/ _____
KRISTIN K. COHEN
PEDER MAGEE
ALLISON M. LEFRAK
Attorneys, Division of Privacy and Identity Protection
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
Tel: (202) 326-2804

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Appendix A

# TAB 16

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

M.H. and J.H., on behalf of their
minor child C.H.,

Plaintiffs,

v.

OMEGLE.COM, LLC,

Defendant.

Civil Action No. 2:20-cv-11294-KM-JBC

**Motion Return Date: January 19, 2021**

---

**REPLY IN SUPPORT OF DEFENDANT OMEGLE.COM, LLC'S MOTION
TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO
FED. R. CIV. P. 12(b)(2) AND 12(b)(6)**

---

**Trimboli & Prusinowski, LLC**

James T. Prusinowski (JP0729)
jprusinowski@trimprulaw.com
268 South Street
Morristown, NJ 07960
(973) 660-1095

*Attorneys for Defendant OMEGLE.COM, LLC*

*On the Brief:*
Stacia N. Lay (admitted *pro hac vice*)
Venkat Balasubramani (admitted *pro hac vice*)

# TABLE OF CONTENTS

I.    Plaintiffs Fail to Meet Their Burden of Establishing Jurisdiction ..................1

    A.    An Accessible Website is Alone Insufficient to Confer Jurisdiction........................................................................................1

    B.    Plaintiffs Cannot Rely on the "Effects Test" to Prove Jurisdiction........................................................................................3

II.    CDA 230 Bars Plaintiffs' Challenge to the "Operation" of the Website........4

III.    Plaintiffs' VPPA Claim Fails on All Three Required Elements....................7

    A.    No Facts Show That Omegle is a Video Tape Service Provider..........7

    B.    As a One-Time User of the Website, C.H. is Not a "Subscriber" ........8

    C.    Plaintiffs Ignore the Narrow Definition of PII in the VPPA ...............9

IV.    Plaintiffs' Intrusion Upon Seclusion Claim Fails As a Matter of Law .........10

V.    Plaintiffs Do Not State a Plausible Claim for IIED ......................................13

VI.    There is No Duty to Guarantee the Safety of Website Users........................13

VII.    Plaintiffs Suggest No Amendments That Would Cure the Deficiencies ......15

CONCLUSION ....................................................................................................15

i

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................. 12

*Christie v. Nat'l Inst. for Newman Studies*, 258 F. Supp. 3d 494 (D.N.J. 2017) ....... 3

*CoachSource, LLC v. Coachforce*,
    2019 U.S. Dist. LEXIS 51561 (D.N.J. Mar. 27, 2019) .................................... 2

*D'Jamoos v. Pilatus Aircraft Ltd.*, 566 F.3d 94 (3d Cir. 2009) ............................ 3, 4

*Doe v. Internet Brands, Inc.*, 824 F.3d 846 (9th Cir. 2016) ....................................6

*Doe v. MySpace Inc.*, 528 F.3d 413 (5th Cir. 2008) ............................................ 4, 5

*Eash v. Cty. of York*, 450 F. Supp. 3d 568 (M.D. Pa. 2020) ................................. 14

*Estate of Desir ex rel. Estiverne v. Vertus*, 214 N.J. 303 (N.J. 2013) .................... 15

*Fair Housing Council v. Roommates.com, LLC*,
    521 F.3d 1157 (9th Cir. 2008) ..........................................................................5

*Frederico v. Home Depot*, 507 F.3d 188 (3d Cir. 2007) ....................................... 13

*FTC v. Accusearch Inc.*, 570 F.3d 1187 (10th Cir. 2009) .................................... 5, 6

*Herrick v. Grindr, LLC*, 306 F. Supp. 3d 579 (S.D.N.Y. 2018) .......................... 4, 6

*Hershey Co. v. Pagosa Candy Co.*,
    2008 U.S. Dist. LEXIS 29410 (M.D. Pa. Apr. 10, 2008) ............................... 2

*Hubbard v. Google LLC*,
    2020 U.S. Dist. LEXIS 239936 (N.D. Cal. Dec. 21, 2020) ......................... 12

*In re Asbestos Prod. Liab. Litig.*, 822 F.3d 125 (3d Cir. 2016) ...............................7

*In re Google, Inc.*, 806 F.3d 125 (3d Cir. 2015) ................................................... 11

*In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262 (3d Cir. 2016).... 8, 10, 11

*Kanter v. Barella*, 489 F.3d 170 (3d Cir. 2007) ....................................................... 15

*Manigault-Johnson v. Google, LLC*,
    2019 U.S. Dist. LEXIS 59892 (D.S.C. Mar. 31, 2019) ................................. 11

*Marfione v. Kai U.S.A., Ltd.*,
    2018 U.S. Dist. LEXIS 51066 (W.D. Pa. Mar. 27, 2018)................................. 6

*McClung v. 3M Co.*,
    2019 U.S. Dist. LEXIS 164198 (D.N.J. Sept. 25, 2019) ................................. 3

*McDonald v. Kiloo Aps*, 385 F. Supp. 3d 1022 (N.D. Cal. 2019)........................... 13

*McTaggart v. Comm'r of Soc. Sec.*,
    2020 U.S. Dist. LEXIS 75908 (D.N.J. Apr. 30, 2020) .................................... 1

*Rodriguez v. Wells Fargo Bank, N.A.*,
    2019 U.S. Dist. LEXIS 60526 (D.N.J. Apr. 9, 2019) ..................................... 9

*Saponaro v. Grindr, LLC*, 93 F. Supp. 3d 319 (D.N.J. 2015) ................................... 4

*Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446 (3d Cir. 2003) ....................... 1, 2

*Yershov v. Gannett Satellite Info. Network, Inc.*,
    820 F.3d 482 (1st Cir. 2016) ......................................................................... 8

## Statutes and Rules

18 U.S.C. § 2710(a)(1) .............................................................................................. 8

18 U.S.C. § 2710(a)(3) .............................................................................................. 9

18 U.S.C. § 2710(a)(4) .............................................................................................. 7

47 U.S.C. § 230 ...............................................................................................passim

FED. R. CIV. P. 12(b)(6) ..................................................................................... 12, 13

Plaintiffs' Opposition—which was filed late without explanation—distorts Omegle's arguments. But the Opposition makes it clear that Plaintiffs attempt to mask a Children's Online Privacy Protection Act ("COPPA") claim as various federal and state law claims that do not apply. Yet, once the rhetoric and gratuitous attacks are stripped from the Opposition, it is evident that Plaintiffs' claims cannot withstand scrutiny and should be dismissed.

## I.   Plaintiffs Fail to Meet Their Burden of Establishing Jurisdiction

Plaintiffs concede by omission Omegle's argument that because Omegle is not headquartered in New Jersey, it is not subject to general jurisdiction here. *McTaggart v. Comm'r of Soc. Sec.*, 2020 U.S. Dist. LEXIS 75908, *11 (D.N.J. Apr. 30, 2020) (party's failure to address an argument was a concession that it was correct). Thus, the question is whether they allege sufficient facts to confer specific jurisdiction over Omegle in New Jersey. They do not.

### A.   An Accessible Website is Alone Insufficient to Confer Jurisdiction

Plaintiffs argue that a non-resident defendant's amenability to personal jurisdiction is "proportionate to the nature and quality of commercial activity . . . conduct[ed] over the internet." (Dkt. 15, p. 11.) But that is not the applicable standard. In a case Plaintiffs cite, the Third Circuit held that "the mere operation of a commercially interactive web site should *not* subject the operator to jurisdiction anywhere in the world." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454

(3d Cir. 2003) (emphasis added). Rather, there must be "something more." *Id.*
Defendant's conduct of business "over the internet" is not the critical measure of
its amenability to personal jurisdiction; rather, the key is whether plaintiff
demonstrates defendant's "purposeful availment" (i.e., targeting of the forum).
*CoachSource, LLC v. Coachforce*, 2019 U.S. Dist. LEXIS 51561, *10 (D.N.J. Mar.
27, 2019) (to establish jurisdiction, plaintiff "must show more than mere
interactivity," it must demonstrate "purposeful availment"); *Hershey Co. v. Pagosa
Candy Co.*, 2008 U.S. Dist. LEXIS 29410, *12-16 (M.D. Pa. Apr. 10, 2008).

      Plaintiffs do not point to allegations showing that Omegle targeted New
Jersey or its residents in any way. They allege only that Omegle (1) seeks to reach
"all internet users, regardless of geographical location" and (2) "indiscriminately
responds to each and every internet user who accesses its website." (Dkt. 15,
p. 12.) This is nearly identical to the allegation the Court found insufficient in
*CoachSource*. 2019 U.S. Dist. LEXIS 51561 at *11 (rejecting claim that defendant
was subject to personal jurisdiction because its "website is 'available to potential
customers nationwide'"). Plaintiffs further argue in a footnote that in 2019, various
individuals were arrested for using social media platforms to target children.
(Dkt. 15, p. 11 n.2.) This is not an "alleged fact . . . that the Court could reasonably
construe as evidence that Defendant targeted its website to residents in New Jersey
or engaged in business with residents of New Jersey." *CoachSource*, 2019 U.S.

Dist. LEXIS 51561 at *11. Omegle has offered evidence that it does not target New Jersey. (Dkt. 10-2, ¶¶ 10-11.) In the face of this, Plaintiffs' bare allegation is insufficient to allege purposeful availment and satisfy their "sole burden" of showing jurisdiction is proper by "sworn affidavits or other competent evidence." *McClung v. 3M Co.*, 2019 U.S. Dist. LEXIS 164198, *14 (D.N.J. Sept. 25, 2019).

### B.  Plaintiffs Cannot Rely on the "Effects Test" to Prove Jurisdiction

Plaintiffs alternatively rely on the "effects test" as a basis for personal jurisdiction, citing this Court's decision in *Christie v. Nat'l Inst. for Newman Studies*, 258 F. Supp. 3d 494 (D.N.J. 2017). *Christie* is not helpful to them. That case included an ex-employee's claims under the Computer Fraud and Abuse Act where personal jurisdiction was proper because the defendant engaged in a tortious act toward plaintiff "who they knew was located in New Jersey." *Id.* at 505. The Court affirmed that in order to confer jurisdiction, "tortious conduct—even over the Internet—must be intentionally directed or 'expressly aimed' at the forum State." *Id.* at 502. Plaintiffs fail to point to any allegation in the Complaint that Omegle knew Plaintiffs are located in New Jersey or that Omegle engaged in tortious acts knowing the effects would be felt there. Nor is there any evidence that Omegle "expressly aimed its tortious conduct at the forum." *Id.*

Nor is *D'Jamoos v. Pilatus Aircraft Ltd.*, 566 F.3d 94 (3d Cir. 2009) helpful to Plaintiffs. There, the Third Circuit confirmed that a non-resident defendant's

contacts "must amount to 'a deliberate targeting of the forum.'" *Id.* at 103. The court held that personal jurisdiction was not proper over a non-resident plane manufacturer, despite the fact that its plane crashed in the jurisdiction. The court also declined jurisdiction under the "stream of commerce" theory. *Id.* at 105-06.

## II.   CDA 230 Bars Plaintiffs' Challenge to the "Operation" of the Website

Plaintiffs do not dispute that Omegle is an "interactive computer service" provider. However, they take a narrow view of the scope of CDA 230 immunity. Contrary to their assertion (Dkt. 15, p. 20), the protection CDA 230 provides is not limited to a platform's mere "publication" of information provided by a third party. Rather, it extends to claims based on failure to prevent harm from occurring on a platform based on interactions with third parties. *See*, *e.g.*, *Doe v. MySpace Inc.*, 528 F.3d 413, 419-20 (5th Cir. 2008) (finding claims against social networking site barred as premised on a duty to monitor); *Herrick v. Grindr, LLC*, 306 F. Supp. 3d 579, 590 (S.D.N.Y. 2018) (rejecting claims against dating app based on "fail[ure] to police and remove impersonating content"). The crux of Plaintiffs' claims is that Omegle failed to prevent either Plaintiffs or the other user from using the site and thereby causing harm to Plaintiffs (i.e., that Omegle failed to "monitor" the site). But courts have repeatedly rejected these arguments. *See, e.g.*, *Saponaro v. Grindr, LLC*, 93 F. Supp. 3d 319, 323 (D.N.J. 2015) ("The Third Circuit has recognized the CDA's immunity provision to protect internet service providers from allegations of

negligently failing to monitor their websites."); *MySpace*, 528 F.3d at 420 (finding CDA 230 barred claims notwithstanding assertion that plaintiffs "only seek to hold [defendant] liable for its failure to implement measures that would have prevented [the victim] from communicating with [the wrongdoer]").

In an attempt to sidestep CDA 230's robust immunity, Plaintiffs argue this case is analogous to *Fair Housing Council v. Roommates.com, LLC*, 521 F.3d 1157 (9th Cir. 2008). That analogy does not hold up to the slightest scrutiny. *Roommates* involved fair housing claims brought against a roommate-finder website. The court held that the website could be held to "develop" offensive content by requiring subscribers to include discriminatory criteria in their profiles. *Id.* at 1166-67. But here, Plaintiffs do not make any such allegations about Omegle's website. Rather, they allege that the website "enables an individual user to communicate with random individuals across the world anonymously via text and video." (Dkt. 1, ¶¶ 20-21.) The Complaint does not allege that Omegle required users to provide any demographic information or that it used such information to screen users in a manner inconsistent with anti-discrimination laws. Plaintiffs' reliance on the Tenth Circuit's *FTC v. Accusearch Inc.*, 570 F.3d 1187 (10th Cir. 2009) decision is also misplaced. That case involved an FTC enforcement action against an entity that "solicited requests" for confidential phone records and "then paid researchers to obtain it." *Id.* at 1199. The court rejected the defendant's argument for CDA 230

immunity but held that "a service provider is 'responsible' for the development of offensive content only if it in some way specifically encourages development of what is offensive about the content." *Id.* In contrast, Plaintiffs do not allege facts showing that Omegle played any role in the development of offensive content.

Plaintiffs cite *Doe v. Internet Brands, Inc.*, 824 F.3d 846 (9th Cir. 2016) to argue that Omegle should be liable for an alleged failure to police its site, but this case too is readily distinguishable. There, the website obtained information about specific profiles and individuals independent of the site, and the claims did not arise from any interaction that occurred on the site. *See Herrick*, 306 F. Supp. 3d at 592 (noting that in *Internet Brands*, the "bad actors . . . did not post any content to the website, and they contacted Doe offline"). As the *Herrick* court noted, *Internet Brands* does not stand for the proposition that a duty to warn claim overcomes CDA 230 immunity based on general knowledge that a platform may be used to effect unlawful or harmful activity. *Id.* (rejecting argument that knowledge of improper activity on website translates into "heightened accountability").

Finally, Plaintiffs repeat their vague allegations regarding Omegle's alleged collection of "PII". As argued in Omegle's Motion (Dkt. 10-1, pp. 29-30), Plaintiffs never actually allege what information Omegle is supposed to have improperly collected. *Cf. Marfione v. Kai U.S.A., Ltd.*, 2018 U.S. Dist. LEXIS 51066, *17-20 (W.D. Pa. Mar. 27, 2018) (finding plaintiffs' allegation that

defendant "created or developed" content at issue failed to comport with *Iqbal* and *Twombly*). Indeed, elsewhere in the Complaint, Plaintiffs take issue with Omegle's supposed failure to monitor the content of video chats. (Dkt. 1, ¶ 35.) Omegle merely provided a platform where users can interact with other users. (Id., ¶¶ 20-21, 24.) As such, CDA 230 bars Plaintiffs' state law claims.

## III.  Plaintiffs' VPPA Claim Fails on All Three Required Elements

### A.    No Facts Show That Omegle is a Video Tape Service Provider

A "video tape service provider" is a "person, engaged in the business . . . of rental, sale, or delivery of **prerecorded** video cassette tapes or similar audio visual materials[.]" 18 U.S.C. § 2710(a)(4) (emphasis added). Plaintiffs assert they plead *facts* alleging that Omegle meets this definition by stating that it is "'engaged in the business' of 'delivering videos recorded on its website.'" (Dkt. 15, p. 16.) But this "fact" simply quotes the statutory language and is thus deficient. *In re Asbestos Prod. Liab. Litig.*, 822 F.3d 125, 133 (3d Cir. 2016) (courts need not accept "conclusory factual allegations or legal assertions"). Nor could Plaintiffs plausibly allege facts showing that Omegle meets the definition. Omegle offers a ***real-time*** chat function on its website. (Dkt. 1, ¶¶ 20-21, 24.) Plaintiffs do not point to a single *fact* showing that Omegle is engaged in the business of providing prerecorded videos. The definition must also be viewed in the context of the VPPA's narrow purpose to permit "plaintiffs to sue persons who disclose

7

information about their video-watching habits." *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 278 (3d Cir. 2016). Because Omegle does not provide prerecorded videos, there is no information about its users' "video-watching habits" to disclose. Thus, because Plaintiffs cannot establish the threshold element of their VPPA claim, the Court need go no further and should dismiss the claim.

### B.      As a One-Time User of the Website, C.H. is Not a "Subscriber"

The VPPA claim also fails because Plaintiffs do not, and cannot, allege that C.H. is a "subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). They do not refute Omegle's showing that to be a "subscriber," they must demonstrate "something more" than using the Omegle website on a single occasion. All of the cases Omegle cites, including *Yershov v. Gannett Satellite Info. Network, Inc.*, recognize that such a fleeting connection— use of a website on only one occasion, where no registration, log-in or download is required—does not make one a "subscriber." (Dkt. 10-1, pp. 26-28.)

Plaintiffs' assertion that C.H. is a "subscriber" because she had to "sign[] in" and "move through Omegle's long list of disclaimers before she could proceed" (Dkt. 15, p. 17), is false and irrelevant. As the Complaint shows, she was not required to "sign in" to the website or "move through" disclaimers to use the real-time chat. (Dkt. 1, ¶ 24 ("To use the Omegle website, a user simply clicks on 'text' or 'video' under the words 'start chatting.' The user is then immediately placed in

a chat with a stranger."); *see also* Dkt. 10-2, p. 5.) They also fail to explain the relevance of the inaccurate assertion regarding the disclaimers to the question whether they allege the "something more" required to be a "subscriber." Their claim that C.H. is a "subscriber" because Omegle allegedly collected her PII is also faulty. The cases do not support the assertion that collecting PII alone is sufficient to make one a subscriber, particularly as Plaintiffs do not allege collection of PII as defined by the VPPA. (*See* Dkt. 10-1, pp. 26-28.) The only PII they allege is C.H.'s "geolocation," which, as discussed below, is not PII under the VPPA.[1]

Thus, Plaintiffs' VPPA claim fails as a matter of law on this separate basis.

### C.  Plaintiffs Ignore the Narrow Definition of PII in the VPPA

The VPPA defines PII narrowly as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). Yet, Plaintiffs ignore this definition and instead rely on the "broad definition" of PII in COPPA. (Dkt. 15, p. 18.) But not

---

[1] As previously shown (Dkt. 10-1, pp. 29-30, 32), Plaintiffs do not explain what precisely is meant by the allegation that the other user (not Omegle) provided C.H. with her "geolocation," a term that encompasses a wide range of information from the very broad (e.g., country, region, state or city) to, more rarely, the more specific (e.g., street). In their Opposition, they now assert that the other user provided C.H.'s "geolocation" and "as a result identified her address," citing paragraph 41 of the Complaint. (Dkt. 15, p. 18.) But paragraph 41 does not allege that the user identified her "address" (Dkt. 1, ¶ 41) and Plaintiffs cannot amend their Complaint via an opposition brief. *See Rodriguez v. Wells Fargo Bank, N.A.*, 2019 U.S. Dist. LEXIS 60526, *16 n.9 (D.N.J. Apr. 9, 2019).

only do basic statutory interpretation principles preclude simply ignoring applicable statutory language, the Third Circuit has specifically rejected the argument that COPPA's PII definition can be used in lieu of the VPPA's definition. *See In re Nickelodeon*, 827 F.3d at 286-88 ("Congress's decision to retain the 1988 definition of [PII] indicates that the [VPPA] serves different purposes, and protects different constituencies, than other, broader privacy laws," including COPPA). The Third Circuit described the type of information encompassed by the VPPA as that which "[1] identifies a specific person and [2] ties that person to particular videos that the person watched." *Id.* at 285. Plaintiffs only assert that C.H.'s "geolocation" was provided by the other user (not Omegle). They do not allege that the "geolocation" was sufficient to identify C.H., much less tie her to "particular videos" that she obtained from Omegle. (*See supra*, p. 9 n.1.) Therefore, because Plaintiffs allege no facts showing that Omegle disclosed PII as defined by the VPPA, this claim is properly dismissed.

## IV.   Plaintiffs' Intrusion Upon Seclusion Claim Fails as a Matter of Law

Plaintiffs first falsely suggest that Omegle argued that C.H. consented to the "deceptive business practices that led to her violation" by using the real-time video chat option. (Dkt. 15, p. 24.) To the contrary, Omegle made a straightforward point: this is <u>not</u> a situation where a plaintiff was surreptitiously video recorded in a private location by another party and therefore the use of the video chat option

alone cannot support the intrusion claim. Plaintiffs also fail to point to any facts in the Complaint showing (1) that Omegle—as opposed to the other user—collected any of the alleged PII (i.e., C.H.'s "geolocation" and "viewing data"), or (2) that the alleged collection of such information was sufficiently offensive to support an intrusion claim. None of Plaintiffs' assertions alter that conclusion.

Plaintiffs accuse Omegle of "misinterpret[ing] the law" in showing that the collection of PII alone does not give rise to an intrusion claim. (Dkt. 15, p. 24.) But they ignore the Third Circuit's *In re Nickelodeon* decision (Dkt. 10-1, pp. 35-36), which found that collection of information similar to that alleged here was not "sufficiently offensive, standing alone" to state an intrusion claim. 827 F.3d at 294-95. The Third Circuit's *In re Google, Inc.*, 806 F.3d 125 (3d Cir. 2015) decision, which Plaintiffs cite, is of no help to them. There, it was Google's collection of information from cookie trackers ***and*** its contravention of browser cookie blockers while also representing that it respected those blockers that the court found sufficient to state a claim. *Id.* at 150-51. Plaintiffs also incorrectly assert that the intrusion claim in *Manigault-Johnson* only failed because of a failure to allege harm from the collection of children's personal information without parental authorization. (Dkt. 15, pp. 24-25.) But the court found that the claim could not survive a motion to dismiss on the independent basis that the collection of such information was not "sufficiently offensive conduct." *Manigault-Johnson v.*

*Google, LLC*, 2019 U.S. Dist. LEXIS 59892, *17-18 (D.S.C. Mar. 31, 2019).

Plaintiffs' causation allegation is also fatally flawed. They assert that Omegle's collection of C.H.'s PII "enabled" the other user "to use his knowledge of where she lived to blackmail her into submitting to sexual exploitation." (Dkt. 15, p. 25.) But they do not allege *facts* showing (1) that Omegle collected PII, (2) what specific PII it collected, or (3) how Omegle's collection of PII "enabled" the other user to engage in his criminal actions. Absent such facts, no reasonable person could conclude that Plaintiffs can establish the necessary causal link between Omegle and the harm suffered from the user's criminal actions.

Plaintiffs' reliance on the Musical.ly order is perplexing. (Dkt. 15, pp. 25-26.) That case was an enforcement action by the FTC under the FTC Act and COPPA. It in no way demonstrates that Plaintiffs state a plausible claim for relief for intrusion, or any other claim. *See Hubbard v. Google LLC*, 2020 U.S. Dist. LEXIS 239936, *17-25 (N.D. Cal. Dec. 21, 2020) (finding state law claims similar to those alleged here preempted by COPPA). Finally, Plaintiffs incorrectly assert that an intrusion claim is uniquely immune from a Rule 12(b)(6) motion to dismiss. But that claim, like any claim, is subject to dismissal because it fails to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Even the case they rely upon recognizes that "the plausibility of a privacy claim may be decided on the adequacy of the offensiveness element as a matter of

law." *McDonald v. Kiloo Aps*, 385 F. Supp. 3d 1022, 1034 (N.D. Cal. 2019).

## V.   Plaintiffs Do Not State a Plausible Claim for IIED

Plaintiffs improperly attempt to amend their claim via their Opposition by asserting that Omegle "facilitate[ed] an 11-year-old child's sexual abuse" by "luring" or "attract[ing]" her to its website. (Dkt. 15, pp. 10, 21, 30.) But the Complaint contains no *facts* showing that Omegle in any way "facilitated" the criminal actions of the other user by "luring" any child to its website. *See Frederico v. Home Depot*, 507 F.3d 188, 201-02 (3d Cir. 2007) (courts will "not consider after-the-fact allegations in determining the sufficiency of [a] complaint" under Rule 12(b)(6)). Plaintiffs' unsubstantiated accusation cannot save their flawed claim for intentional infliction of emotional distress. As Omegle showed (Dkt. 10-1, pp. 39-41), they fail to plausibly allege that a failure to monitor the actions, and guarantee the safety, of website users is the type of outrageous conduct necessary to state such a claim. Thus, this claim too should be dismissed.

## VI.   There is No Duty to Guarantee the Safety of Website Users

The Complaint asserts that Omegle owed "the general public" the "highest duty of care" to guarantee the safety of the users of its website. But, as Omegle showed (Dkt. 10-1, pp. 45-48), courts have declined to impose such a broad duty on websites and platforms with respect to the conduct and communications of users. Plaintiffs do not refute that showing. They also assert that they "clearly set[]

out Omegle's duty" and then list alleged breaches. (Dkt. 15, p. 27.) But allegations of breach do not demonstrate that a duty exists in the first place.

Plaintiffs then attempt to argue that a duty arose because Omegle allegedly made C.H.'s situation worse by "collect[ing] . . . her PII" and "enabl[ing]" the other user "to know where she lived and thus . . . blackmail her and sexually exploit her." (Id., p. 28.) But they do not plead any *facts* to support that assertion. Nor is the Court required to accept the unreasonable inference that Omegle provided the "geolocation" to the other user. *See Eash v. Cty. of York*, 450 F. Supp. 3d 568, 575 (M.D. Pa. 2020) (courts are "not required to draw unreasonable inferences from the facts"). Even assuming for argument purposes there were a breach of a purported duty with respect to the collection of PII, Plaintiffs fail to bridge the causation gap between such a breach and the other user's criminal actions. The Complaint is devoid of *facts* showing that Omegle's purported collection of PII "enabled" the user to engage in his criminal actions. Plaintiffs' assertion that Omegle's website is "vulnerable to hacking" because a user can "grab screenshots of previous conversations" and use that "data" to obtain a user's geographic location (Dkt. 15, p. 9) is nonsensical; it neither demonstrates the collection or disclosure of any information *by Omegle* nor in any way supports the existence of a duty owed by Omegle with respect to the actions of website users.

Additionally, Plaintiffs misrepresent Omegle's discussion of foreseeability.

But Omegle's point was clear: foreseeability of harm is not alone sufficient to prove that a duty exists because a contrary rule would lead to "virtually unbounded liability." *Estate of Desir ex rel. Estiverne v. Vertus*, 214 N.J. 303, 319 (N.J. 2013).

Because Plaintiffs have failed to demonstrate the existence of a duty, the negligence claim should be dismissed.

## VII.   Plaintiffs Suggest No Amendments That Would Cure the Deficiencies

In a footnote, Plaintiffs contend they should be permitted to amend their Complaint. (Dkt. 15, p. 30 n.11.) But they fail to explain how they could correct the fatal deficiencies in their claims. The futility of amending the complaint alone justifies denying their request. *See Kanter v. Barella*, 489 F.3d 170, 181 (3d Cir. 2007). As to personal jurisdiction, they rely solely on the deficient allegations in the Complaint and identify no additional facts that would satisfy their burden of establishing the existence of jurisdiction. The VPPA does not apply to Omegle or the factual situation they allege. Plaintiffs again do not identify any amendments that would save that claim. Finally, CDA 230 bars their state law claims and they do not show how they can plead around that immunity. Therefore, Omegle requests that the Court deny Plaintiffs' request for leave to amend their complaint.

## CONCLUSION

Omegle therefore respectfully requests that the Court dismiss Plaintiffs' Complaint in its entirety and without leave to amend.

Respectfully submitted this 12th day of January, 2021, by:

**Trimboli & Prusinowski, LLC**          **Focal PLLC**

*s/James T. Prusinowski*                     *s/Stacia N. Lay*
James T. Prusinowski (JP0729)        Stacia N. Lay (admitted *pro hac vice*)
268 South Street                             Venkat Balasubramani (admitted *pro hac vice*)
Morristown, NJ 07960                      900 1st Avenue S., Suite 201
jprusinowski@trimprulaw.com        Seattle, WA 98134
                                                     stacia@focallaw.com
                                                     venkat@focallaw.com

*Attorneys for Defendant OMEGLE.COM, LLC*

# TAB 17

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **M.H. and J.H., on behalf of their minor child, C.H.,** | |
| **Plaintiffs,** | Civ. No. 20-11294 (KM) (JBC) |
| **v.** | **OPINION** |
| **OMEGLE.COM LLC,** | |
| **Defendant.** | |

**KEVIN MCNULTY, U.S.D.J.:**

C.H., an eleven-year-old girl, logged onto Omegle.com, a website that randomly pairs users for video and text chats. Omegle paired C.H. with an anonymous user who sexually exploited her. After this incident, C.H.'s parents, M.H. and J.H. ("the parents"), sued Omegle on her behalf, asserting tort claims and a claim under the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710. Omegle moves to dismiss for lack of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2), and failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). (DE 10.)[1] With deepest sympathy for the parents, I am constrained to **GRANT** Omegle's motion to dismiss for lack of personal jurisdiction. Because I lack the power to hear the case, Omegle's motion to dismiss for failure to state a claim is **DENIED** as moot.

---

[1]     Certain citations to the record are abbreviated as follows:

DE = docket entry

Compl. = Complaint (DE 1)

K-Brooks Decl. = Declaration of Leif K-Brooks (DE 10-2)

Mot. = Omegle's Brief in Support of its Motion to Dismiss (DE 10-1)

Opp. = The Parents' Opposition to Omegle's Motion to Dismiss (DE 15)

## I.   BACKGROUND

Omegle is an Oregon limited liability company that had its principal place of business in Washington at the time of the events here, but now is located in Florida. (K-Brooks Decl. ¶¶ 4–5.) Omegle allows users to communicate with random individuals anonymously. (Compl. ¶ 20.) Specifically, a user logs into Omegle, and Omegle matches him or her with another user for a video or text chat. (*Id.* ¶ 21.) Omegle receives millions of page views per day from across the world. (*Id.* ¶ 6.)

When a user logs on, there are terms of service printed at the bottom of the webpage. (*Id.* ¶ 32.) Those terms declare that, by using Omegle, a user is not to engage in sexual behavior or take and publicize other users' information. (*Id.*) The terms also provide that no one under 13 should use Omegle, and users under 18 should have a parent or guardian's permission. (*Id.*)

Nonetheless, the terms state that Omegle is not responsible for users' conduct. (*Id.*) Omegle does not ask for age verification or other personal authentication. (*Id.* ¶ 25.) Omegle also does not inform users that their personal information can be obtained by other users. (*Id.* ¶ 49.)

Given its offering of anonymous chat, Omegle has been used for sexual exploitation. (*Id.* ¶ 27.) Indeed, Omegle has been used by sexual criminals across the country, including in New Jersey. (*Id.* ¶ 29.) The website itself contains a warning to users that "[p]redators have been known to use Omegle." (*Id.* ¶ 22.)

C.H. was a victim of such predators. She accessed Omegle and was eventually paired with an anonymous user ("Doe") who used a black screen and communicated through text appearing on that screen. (*Id.* ¶¶ 40–41.) Doe informed C.H. that he knew where she lived and provided her geolocation to prove it. (*Id.* ¶ 41.) Doe then threatened to hack the devices of C.H. and her family if she did not disrobe and touch herself. (*Id.* ¶ 43.) C.H. complied. (*Id.*) Doe captured screenshots and recorded the encounter. (*Id.* ¶ 44.)

Immediately after this incident, C.H. informed her parents, who contacted police. (*Id.* ¶ 45.) The criminal investigation stalled, so the parents brought a civil suit against Omegle on C.H.'s behalf. (*Id.* ¶ 46.) They assert four claims: (1) a violation of the VPPA, (2) intrusion upon seclusion, (3) negligence, and (4) intentional infliction of emotional distress (*Id.* ¶¶ 55–82.) Omegle moves to dismiss, arguing that (1) this Court lacks personal jurisdiction; (2) Omegle is immune under section 230 of the Communications Decency Act ("CDA"), 47 U.S.C. § 230; and (3) the claims are not plausibly alleged. (Mot.)

## II.   STANDARD OF REVIEW

"[I]n a one-defendant case, the court must first decide the defendant's Rule 12(b)(2) motion to dismiss the complaint for lack of personal jurisdiction." *Murphy v. Eisai, Inc.*, --- F. Supp. 3d ----, ----, Civ. No. 19-17552, 2020 WL 7022747, at *3 (D.N.J. Nov. 28, 2020); *see Lightfoot v. Cendant Mortg. Corp.*, 137 S. Ct. 553, 562 (2017) ("A court must have . . . power over the parties before it (personal jurisdiction) before it can resolve a case."). "[I]f personal jurisdiction is absent," as I conclude it is here, "the court is powerless to address the merits of [a] Rule 12(b)(6) motion." *Murphy*, 2020 WL 7022747, at *3.

The plaintiff bears the burden of establishing sufficient facts to show that personal jurisdiction exists. *Marten v. Godwin*, 499 F.3d 290, 295–96 (3d Cir. 2007). Initially, a court must accept the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff. *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002). Where factual allegations are disputed, however, the court must examine any evidence presented. *See Patterson v. FBI*, 893 F.2d 595, 603–04 (3d Cir. 1990) ("A Rule 12(b)(2) motion . . . is inherently a matter which requires resolution of factual issues outside the pleadings . . . . Once the defense has been raised, then the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence." (citation omitted)). If the district court does not hold an evidentiary hearing, "the plaintiff need only establish a prima facie case of

personal jurisdiction." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007).

## III.   DISCUSSION

The first (and ultimately only) issue presented by Omegle's motion is whether the Court has personal jurisdiction over it. (Mot. at 4–8.) A federal court may exercise personal jurisdiction over a defendant to the extent authorized by state law. Fed. R. Civ. P. 4(k)(1)(A). New Jersey law provides for jurisdiction coextensive with constitutional due process. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (citing N.J. Ct. R. 4:4-4). Due process allows for general or specific jurisdiction. *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 129 (3d Cir. 2020). The parents do not argue that Omegle is subject to general jurisdiction in New Jersey (*see* Opp. at 11–15), so I focus on specific jurisdiction.[2]

A court has specific jurisdiction "when the cause of action arises from the defendant's forum related activities." *Chavez v. Dole Food Co.*, 836 F.3d 205, 223 (3d Cir. 2016) (en banc) (citation omitted). The parents must establish three elements. "First, [Omegle] must have purposefully directed its activities at the forum. Second, [the parents'] claims must arise out of or relate to [Omegle's] activities. And third, exercising personal jurisdiction must not offend traditional notions of fair play and substantial justice." *Danziger*, 948 F.3d at 129–30 (quotation marks, alterations, and citations omitted).

In applying the purposeful direction requirement to cases involving website defendants, the Third Circuit has explained that "the mere operation of a commercially interactive web site" does not suffice. *Toys "R" Us, Inc. v. Step*

---

[2]   In any event, there is no general jurisdiction over Omegle. A court may exercise general jurisdiction over a corporation when the corporation has "continuous and systematic contacts with the forum state" such that it is "essentially at home" there. *Chavez v. Dole Food Co.*, 836 F.3d 205, 223 (3d Cir. 2016) (en banc) (quotation marks and citation omitted). A corporation is "at home" at least where it is incorporated or has its principal place of business. *Id.* (citing *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)). Omegle is registered in Oregon and has its principal place of business in Florida. (K-Brooks Decl. ¶¶ 4–5.)

*Two, S.A.*, 318 F.3d 446, 454 (3d Cir. 2003). Rather, the defendant must have "directly target[ed] its web site to the state," "knowingly interacted with residents of the forum state via its web site," or had other contacts with the forum. *Id.*

There are no such indicia of purposeful direction towards New Jersey by Omegle. In fact, the parents do not allege anything about Omegle's website that is New Jersey-specific. Rather, Omegle is a generally accessible website that looks and operates the same for users across the world. That is not enough to create personal jurisdiction in New Jersey. *CoachSource, LLC v. Coachforce*, Civ. No. 17-5126, 2019 WL 1385200, at *4 (D.N.J. Mar. 27, 2019). There does not even appear to be any mechanism associated with the website that would enable Omegle to ascertain information about the geographic locations of its users. *Compare LG Electronics USA, Inc. v. Seamless Interactive, LLC*, Civ. No. 09-5178, 2010 WL 3035141, at *6 (D.N.J. Aug. 3, 2010) ("[A] Court might consider . . . whether visitors can, or are asked to, submit their personal information through the website."). True, the Complaint points to a handful of prosecutions involving New Jersey defendants using Omegle. But a basic awareness that residents of a specific forum use a website is insufficient; the facts must demonstrate that the website *targeted* those users. *See Kloth v. S. Christian Univ.*, 320 F. App'x 113, 116 (3d Cir. 2008) (foreseeability that users from a forum state would access the website is insufficient); *Toys "R" Us*, 318 F.3d 454–55 (two documented sales by website to New Jersey residents were insufficient). Accordingly, the parents fail to make the showing required by *Toys "R" Us*.

Nonetheless, the parents offer two reasons for exercising jurisdiction here: (A) Omegle is an "interactive" website, and (B) jurisdiction is warranted under the "effects test" from *Calder v. Jones*, 465 U.S. 783 (1984). (Opp. at 12–13.) Neither argument is persuasive.

## A. Interactivity

The parents first reason that, because Omegle is an interactive website, C.H.'s use of the website while in New Jersey is sufficient to confer jurisdiction in New Jersey. (Opp. at 12–13.) This argument does not fit with the manner in which personal jurisdiction applies in website cases.

The Third Circuit addressed the relationship between personal jurisdiction and websites in *Toys "R" Us*. 318 F.3d at 452–54. There, the court reviewed the case law, including *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997), a case the court noted "has become a seminal authority regarding personal jurisdiction based upon the operation of an Internet web site." *Id.* at 452. The court noted that *Zippo* used a "a sliding scale of commercial interactivity" in which a more interactive website would more likely support personal jurisdiction. *Id.* Citing *Zippo*, the parents argue that Omegle is on the high end of interactivity, and so jurisdiction is *per se* warranted. As evidence of interactivity, they point to the facts that Omegle users select chat options and that Omegle pairs, initiates, and facilitates such chats. (Opp. at 12–13.)

But *Toys "R" Us* never explicitly adopted *Zippo*'s sliding scale and certainly did not hold that interactivity alone shows purposeful direction. To the contrary, the court explained that "[a]s *Zippo* and the Courts of Appeals decisions indicate, the mere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world." 318 F.3d at 454. Applying that principle, the court held that the website at issue, "while . . . interactive, [did] not appear to have been designed or intended to reach customers in New Jersey," so the plaintiff could not show purposeful direction. *Id.* The same is true here. While Omegle is not a "passive" website (*i.e.*, a blog where users simply read content), the interactivity alone is insufficient to confer jurisdiction.

Indeed, although the Third Circuit has yet to precedentially address personal jurisdiction and websites since *Toys "R" Us*, two developments in the

case law further suggest that the parents' theory is faulty. First, courts generally have held that websites providing platforms (like Omegle) do not evince purposeful direction because they are not tailored to any forum. *Kuan Chen v. U.S. Sports Acad., Inc.*, 956 F.3d 45, 60 (1st Cir. 2020); *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1210–13 (9th Cir. 2020); *Facebook, Inc. v. K.G.S.*, 294 So.3d 122, 140 (Ala. 2019); *Doshier v. Twitter, Inc.*, 417 F. Supp. 3d 1171, 1178 (E.D. Ark. 2019); *Bowen v. YouTube, Inc.*, No. C08-5050FDB, 2008 WL 1757578, at *2 (W.D. Wash. Apr. 15, 2008).[3] In that regard, the First Circuit's opinion in *Kuan Chen* is instructive. The defendant there was an online learning platform. 956 F.3d at 52. The court held that, although the website was "highly interactive," there was no indication that the website targeted forum residents in any way, or knowingly derived substantial traffic from them. *Id.* at 60–61. The court stressed that without such targeting, interactivity was not enough. *Id.* Omegle has a level of interactivity similar to that of the platform in *Kuan Chen*, and I agree with the First Circuit that there must be something more to confer jurisdiction.

Second, courts have noted that *Zippo*'s emphasis on interactivity is now antiquated. As the Fourth Circuit explained, "[t]he internet we know today is very different from the internet of 1997, when *Zippo* was decided." *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 141 (4th Cir. 2020). "[O]n today's internet, it is an extraordinarily rare website that is not interactive at some level." *Id.* (cleaned up). For example, comment boxes and buttons to "like" or "share" a webpage are now ubiquitous on websites like recipe blogs or online newspapers, which, in *Zippo*'s day, would have deemed "passive." Accordingly, "if we attach too much significance on the mere fact of interactivity," then most websites would open a defendant up to jurisdiction anywhere in the world; by overemphasizing interactivity, "we risk losing sight of the key issue in a specific

---

[3] There are few cases involving chatroom or other social platforms, likely because such platforms often enjoy immunity under the CDA. *See Hepp v. Facebook, Inc.*, 465 F. Supp. 3d 491, 494 n.2 (E.D. Pa. 2020) (a court may address a CDA defense or a personal-jurisdiction defense).

jurisdiction case—whether the defendant has *purposefully directed* its activities at residents of the forum." *Id.* at 142 (cleaned up).

For those reasons, the parents' focus on interactivity as the *sine qua non* of jurisdiction is misplaced. While *Zippo* may have elevated interactivity's importance, the Third Circuit stressed that interactivity is not enough, and other courts have held similarly. Accordingly, absent any New Jersey-specific facts about Omegle, I cannot exercise personal jurisdiction over it.

## B. Effects Test

The parents' second argument is based on the "effects test" for jurisdiction. The Supreme Court in *Calder* articulated a "slightly refined version" of the specific jurisdiction test, which the Third Circuit holds applies to intentional-tort cases. *O'Connor*, 496 F.3d at 317 n.2. Under *Calder*, the forum has personal jurisdiction when (1) "the defendant committed an intentional tort"; (2) "the plaintiff felt the brunt of the harm in the forum"; and (3) "the defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity." *Marten*, 499 F.3d at 297 (citation omitted). "Only if the 'expressly aimed' element . . . is met need we consider the other two elements." *Id.* at 297–98 (citation omitted).

Thus, the effects test offers no escape from the essential prerequisite of personal jurisdiction, *i.e.*, whether the defendant purposefully targeted the forum. To invoke the effects test, the parents must show that Omegle "knew that [C.H.] would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that [Omegle] expressly aimed its tortious conduct at the forum." *Id.* at 298 (citation omitted).

As explained above, the parents have not shown any "specific activity" by Omegle directed at New Jersey. For their intentional-tort claims, the parents allege that Omegle "design[ed] the website" in a way that allowed C.H.'s personal information to be taken, and that Omegle knowingly failed to monitor its website. (Compl. ¶¶ 62, 76.) But those allegations attack Omegle's website *generally*—they speak of no intentional conduct regarding New Jersey

specifically. Nor do the parents allege that Omegle took any action towards C.H. specifically. *Compare Christie v. Nat'l Inst. for Newman Studies*, 258 F. Supp. 3d 494, 504 (D.N.J. 2017) (express aiming found when defendants knowingly hacked a New Jersey resident's computer). It follows that New Jersey was not "focal point of the tortious activity." *Marten*, 499 F.3d at 297 (citation omitted). The parents have failed to satisfy the effects test.

In sum, under *Toys "R" Us*, Omegle is not subject to personal jurisdiction in New Jersey for the parents' claims, and their alternative theories based on interactivity or the effects test are not persuasive.

\* \* \*

I deal with two loose ends:

First, I recognize that a court may order jurisdictional discovery when "factual allegations . . . suggest with reasonable particularity the possible existence of the requisite contacts between the party and the forum state, such that its claim is not clearly frivolous." *Murphy*, 2020 WL 7022747, at \*14 (cleaned up). The facts alleged here, however, adequately apprise the Court of the nature of Omegle's website, and I cannot infer any likelihood that discovery would reveal evidence showing that the website is directed at New Jersey. Accordingly, I will not order jurisdictional discovery.

Second, "a district court that lacks personal jurisdiction must at least consider a transfer." *Danziger*, 948 F.3d at 132. A court may transfer a case when (1) the transferee court would have personal jurisdiction, and (2) a transfer is in the interests of justice. *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 107, 110 (3d Cir. 2009) (citing 28 U.S.C. § 1631). It seems that Omegle would be subject to general jurisdiction in Oregon or Florida, but the parents have not indicated whether they would be amenable to a transfer to either of those fora. Accordingly, I will stay my dismissal order for 14 days. Within that period, the Court will entertain a letter application in which the parents may suggest a transfer.

**IV.    CONCLUSION**

For the reasons set forth above, Omegle's motion to dismiss for lack of personal jurisdiction is granted. Because I lack the power to consider the motion to dismiss the case for failure to state a claim, it will be denied as moot. The effect of this dismissal is stayed for 14 days to permit the parties to address the issue of a transfer of venue.

A separate order will issue.

Dated: March 19, 2021

/s/ Kevin McNulty

_____

**Hon. Kevin McNulty**
**United States District Judge**

# TAB 18

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **M.H. and J.H., on behalf of their minor child, C.H.,** | |
| **Plaintiffs,** | Civ. No. 20-11294 (KM) (JBC) |
| **v.** | **ORDER** |
| **OMEGLE.COM LLC,** | |
| **Defendant.** | |

**THIS MATTER** having come before the Court on the motion to dismiss the Complaint filed by Defendant Omegle.com, LLC (DE 10) for lack of personal jurisdiction, pursuant to Fed. R. Civ P. 12(b)(2), and failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6); and the Court having considered the submissions of the parties (DE 10, 15, 16) without oral argument; for the reasons stated in the accompanying Opinion, and good cause appearing therefor;

**IT IS** this 19th day of March 2021,

**ORDERED** that the motion to dismiss for lack of personal jurisdiction (DE 10) is **GRANTED**; and it is further

**ORDERED** that this order will be **STAYED** for 14 days. Within that period, the parties shall by letter state their proposals regarding whether and where to transfer this case to a district where personal jurisdiction can be asserted.

/s/ Kevin McNulty

_____

**Kevin McNulty**
**United States District Judge**

# TAB 19

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

M.H. and J.H., on behalf of their minor child
C.H.,

                          Plaintiffs,                    Civil Action No. 2:20-cv-11294-KM-JBC

            v.

OMEGLE.COM, LLC.,

                          Defendant.

## STIPULATION FOR TRANSFER OF VENUE TO THE UNITED STATES
## DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA

Plaintiffs M.H. and J.H., by and through their counsel Hach Rose Schirripa and Cheverie LLP, by Hillary Nappi, Esq., on one hand, and Defendant Omegle.com, LLC by and through its counsel Trimboli & Prusinowski, LLC, by James T. Prusinowski, Esq. on the other hand, hereby stipulate to the transfer of venue from the United States District Court for the District of New Jersey to the United States District Court for the Middle District of Florida.

This case was initiated in the District of New Jersey. On November 20, 2020 Defendant filed a motion to dismiss on the grounds that (1) the Court lacked personal jurisdiction over Defendant and (2) the Complaint failed to state a claim for relief. On March 19, 2021, the Court granted Defendant's motion on the basis that it lacked personal jurisdiction over Defendant and therefore denied as moot the Rule 12(b)(6) motion based on the Court's lack of power to consider it. The Court stayed its dismissal order for 14 days and instructed the parties to submit their positions on transferring the case in a letter. Rather than

1

expend the parties' efforts and consume the Court's resources, the parties agree that jurisdiction and venue are proper in the United States District Court for the Middle District of Florida and seek an order transferring this case to that court. The parties further stipulate that, unless otherwise ordered by the transferee court, Defendant will plead or otherwise respond to Plaintiffs' Complaint within thirty (30) days after the transfer is completed or thirty (30) days after Plaintiffs file an Amended Complaint in the transferee court.

WHEREFORE, the Parties stipulate to change of venue and hereby request that the Court approve of the request and issue an order changing venue to the United States District Court for the Middle District of Florida.

DATED:     New York, New York        **HACH ROSE SCHIRRIPA &**
           April 1, 2021             **CHEVERIE, LLP**

                                     /s/ Hillary Nappi
                                     _____
                                     Frank R. Schirripa, Esq.
                                     Hillary M. Nappi, Esq.
                                     112 Madison Avenue, 10th Floor
                                     New York, New York 10016
                                     (212) 213-8311
                                     *Attorneys for Plaintiffs*

Dated:  Morristown, New Jersey       **Trimboli & Prusinowski, LLC**
        April 1, 2021
                                     /s/ James Prusinowski
                                     _____
                                     James T. Prusinowski (JP0729)
                                     268 South Street
                                     Morristown, NJ 07960
                                     jprusinowski@trimprulaw.com

                                     **Focal PLLC**

                                     /s/ Stacia Lay
                                     _____

2

Stacia N. Lay (admitted pro hac vice)
Venkat Balasubramani (admitted pro hac vice)
900 1st Avenue S., Suite 201
Seattle, WA 98134
stacia@focallaw.com
venkat@focallaw.com

*Attorneys for Defendant Omegle.com LLC*

# TAB 20

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| M.H. and J.H., on behalf of their minor child C.H., | |
| Plaintiffs, | Civil Action No. 2:20-cv-11294-KM-JBC |
| v. | |
| OMEGLE.COM, LLC., | |
| Defendant. | |

**STIPULATION FOR TRANSFER OF VENUE TO THE UNITED STATES**
**DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA**

Plaintiffs M.H. and J.H., by and through their counsel Hach Rose Schirripa and Cheverie LLP, by Hillary Nappi, Esq., on one hand, and Defendant Omegle.com, LLC by and through its counsel Trimboli & Prusinowski, LLC, by James T. Prusinowski, Esq. on the other hand, hereby stipulate to the transfer of venue from the United States District Court for the District of New Jersey to the United States District Court for the Middle District of Florida.

This case was initiated in the District of New Jersey. On November 20, 2020 Defendant filed a motion to dismiss on the grounds that (1) the Court lacked personal jurisdiction over Defendant and (2) the Complaint failed to state a claim for relief. On March 19, 2021, the Court granted Defendant's motion on the basis that it lacked personal jurisdiction over Defendant and therefore denied as moot the Rule 12(b)(6) motion based on the Court's lack of power to consider it. The Court stayed its dismissal order for 14 days and instructed the parties to submit their positions on transferring the case in a letter. Rather than

1

expend the parties' efforts and consume the Court's resources, the parties agree that jurisdiction and venue are proper in the United States District Court for the Middle District of Florida and seek an order transferring this case to that court. The parties further stipulate that, unless otherwise ordered by the transferee court, Defendant will plead or otherwise respond to Plaintiffs' Complaint within thirty (30) days after the transfer is completed or thirty (30) days after Plaintiffs file an Amended Complaint in the transferee court.

WHEREFORE, the Parties stipulate to change of venue and hereby request that the Court approve of the request and issue an order changing venue to the United States District Court for the Middle District of Florida.

DATED:        New York, New York          **HACH ROSE SCHIRRIPA &**
              April 1, 2021                **CHEVERIE, LLP**

                                           /s/ Hillary Nappi
                                           _____
                                           Frank R. Schirripa, Esq.
                                           Hillary M. Nappi, Esq.
                                           112 Madison Avenue, 10th Floor
                                           New York, New York 10016
                                           (212) 213-8311
                                           *Attorneys for Plaintiffs*


Dated:  Morristown, New Jersey            **Trimboli & Prusinowski, LLC**
        April 1, 2021

                                           /s/ James Prusinowski
                                           _____
                                           James T. Prusinowski (JP0729)
                                           268 South Street
                                           Morristown, NJ 07960
                                           jprusinowski@trimprulaw.com

                                           **Focal PLLC**

                                           /s/ Stacia Lay
                                           _____

Stacia N. Lay (admitted pro hac vice)
Venkat Balasubramani (admitted pro hac vice)
900 1st Avenue S., Suite 201
Seattle, WA 98134
stacia@focallaw.com
venkat@focallaw.com

*Attorneys for Defendant Omegle.com LLC*

**SO ORDERED**

**s/Kevin McNulty**
**Hon. Kevin McNulty**
**U.S. District Judge**
**Date: 4/5/2021**

# TAB 22

# *M.H. et al. v. Omegle.com LLC*

**Florida Middle District Court**

Case no. 8:21-cv-00814-VMC-TGW (M.D. Fla.)
Filed date: April 09, 2021
Docket entry no.: 22

Docket text:

> TRANSFER IN from the District of New Jersey. Case assigned to District Judge Virginia M. Hernandez Covington and Magistrate Judge Thomas G. Wilson. New Case Number: 8:21-cv-814-VMC-TGW. (JNB) (Entered: 04/09/2021)

This PDF was generated on May 21, 2021 by PacerPro for a text-only docket entry synced on May 19, 2021.

https://app.pacerpro.com/cases/15018418

# TAB 25

# *M.H. et al. v. Omegle.com LLC*

**Florida Middle District Court**

Case no. 8:21-cv-00814-VMC-TGW (M.D. Fla.)
Filed date: April 09, 2021
Docket entry no.: 25

Docket text:

> ENDORSED ORDER: On April 9, 2021, this case was transferred from the District of New Jersey to the Tampa Division of the Middle District of Florida, and assigned to the undersigned. (Doc. # 22). Although following the previous court's order granting Defendant Omegle.com LLC's motion to dismiss for lack of personal jurisdiction, the parties stipulated to transfer to the Middle District of Florida, it is unclear whether the Tampa Division is the proper venue for this case. (Doc. ## 18; 19). Local Rule 1.04(b) states: "A party must begin an action in the division to which the action is most directly connected or in which the action is most conveniently advanced." Accordingly, Omegle.com is directed to provide the Court with more information by April 16, 2021, as to whether this case is most directly connected to the Tampa Division, as opposed to the four other divisions within the Middle District of Florida. Signed by Judge Virginia M. Hernandez Covington on 4/9/2021. (AR) (Entered: 04/09/2021)

This PDF was generated on May 21, 2021 by PacerPro for a text-only docket entry synced on May 19, 2021.

https://app.pacerpro.com/cases/15018418

# TAB 26

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| M.H. and J.H., on behalf of their minor child C.H., | Case No. 8:21-cv-00814-VMC-TGW |
| Plaintiffs, | |
| v. | |
| OMEGLE.COM, LLC, | |
| Defendant. | |

## DEFENDANT'S RESPONSE TO COURT'S ORDER ON ASSIGNMENT TO THE TAMPA DIVISION (DKT. 25)

Defendant Omegle.com, LLC ("Omegle") hereby submits the following response to the Court's Order, entered on April 9, 2021, Dkt. 25 ("Order") requiring Omegle to provide more information as to whether the above-captioned case "is most directly connected to the Tampa Division, as opposed to the four other divisions within the Middle District of Florida." As more fully discussed below, based on Omegle's location within Pinellas County, the Tampa Division would appear to be most directly connected to this action and/or is the division "in which the action is most conveniently advanced." *See* Local Rule 1.04(b).

Omegle is an Oregon limited liability company but is registered in, and has a principal place of business located within the area encompassed by the Middle District of Florida. (*See* Declaration of Leif K-Brooks in Support of Defendant's Response to the Court's Order ("K-Brooks Decl.") ¶¶ 3-4.) Specifically, Omegle's

principal address, mailing address, and registered agent address is located in

St. Petersburg, Florida, in Pinellas County. (K-Brooks Decl. ¶ 4, Ex. 1.)

Upon receiving an email from the Middle District of Florida on April 8,

2021, requesting that the parties indicate the appropriate division, the parties

conferred via email regarding that issue. Based on the information referenced

above—e.g., that Omegle is located in St. Petersburg, Pinellas County—the parties

agreed that the Tampa Division appeared to be the appropriate division.

Dated:  April 16, 2021

Respectfully submitted,

THOMAS & LoCICERO PL

*James J. McGuire*
James J. McGuire (FBN 187798)
601 South Boulevard
Tampa, FL  33606
Telephone: (813) 984-3060
Facsimile:  (813) 984-3070
jmcguire@tlolawfirm.com

Daniela B. Abratt (FBN 118053)
915 Middle River Drive, Ste. 309
Fort Lauderdale, FL  33304
Telephone: (954) 703-3416
Facsimile:  (954) 4005415
dabratt@tlolawfirm.com

and

2

Stacia Lay
(*pro hac vice application forthcoming*)
stacia@focallaw.com
Venkat Balasubramani
(*pro hac vice application forthcoming*)
venkat@focallaw.com
focal PLLC
900 1ˢᵗ Ave. S., Ste. 201
Seattle, WA  98134
Telephone: (206) 508-0498
Facsimile: (206) 260-3966

*Counsel for Defendant*
*Omegle.com, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing will be served by electronic service through the Clerk of the Court's CM/ECF filing system.  I further certify that the foregoing document will be mailed by first class mail, postage prepaid, to any parties that do not participate in the CM/ECF filing system.

Frank Rocco Schirripa
fschirripa@hrsclaw.com
Hillary Mara Nappi
hillary.nappi@gmail.com
Hach Rose Schirripa & Cheverie LLP
185 Madison Avenue, 14th FL
New York, NY  10016

Attorneys for Plaintiffs

Dated: April 16, 2021.

s/ James J. McGuire
Attorney for Defendant

3

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| M.H. and J.H., on behalf of their minor child C.H., | Case No. 8:21-cv-00814-VMC-TGW |
| Plaintiffs, | |
| v. | |
| OMEGLE.COM, LLC, | |
| Defendant. | |

## DECLARATION OF LEIF K-BROOKS IN SUPPORT OF DEFENDANT'S RESPONSE TO COURT'S ORDER

I, Leif K-Brooks, declare pursuant to 28 U.S.C. § 1746 as follows:

1.      I am over 18 years of age and make this Declaration based upon my personal knowledge of the facts set forth below. If called upon to testify, I could and would testify competently as to the matters set forth herein.

2.      I am the founder and sole manager of Omegle.com, LLC ("Omegle"), the Defendant herein.

3.      Omegle is a limited liability company formed under the laws of the State of Oregon.

4.      Omegle's principal place of business, mailing address, and registered agent address in Florida are all located in St. Petersburg, Pinellas County, Florida. Attached hereto as **Exhibit 1** are true and correct copies of the entity details for Omegle on file with the Florida Department of State and the most

recent annual report for Omegle filed with the Florida Department of State on

April 14, 2021, showing Omegle's location in St. Petersburg, Florida.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 15th day of April, 2021.

LEIF K-BROOKS

# EXHIBIT 1

**DIVISION of CORPORATIONS**
*Sunbiz.org*
*an official State of Florida website*

Department of State  /  Division of Corporations  /  Search Records  /  Search by Entity Name  /

Previous On List     Next On List     Return to List

Omegle

Search

**No Events     No Name History**

## Detail by Entity Name

Foreign Limited Liability Company
OMEGLE.COM LLC

### Filing Information

| | |
|---|---|
| **Document Number** | M20000011843 |
| **FEI/EIN Number** | 46-1730391 |
| **Date Filed** | 12/22/2020 |
| **State** | OR |
| **Status** | ACTIVE |

### Principal Address

7901 4TH ST. N, STE. 300
ST. PETERSBURG, FL 33702

### Mailing Address

7901 4TH ST. N, STE. 300
ST. PETERSBURG, FL 33702

### Registered Agent Name & Address

NORTHWEST REGISTERED AGENT LLC
7901 4TH ST. N, STE. 300
ST. PETERSBURG, FL 33702

### Authorized Person(s) Detail

**Name & Address**

Title MBR

K-BROOKS, LEIF
7901 4TH ST. N, STE. 300
ST. PETERSBURG, FL 33702

### Annual Reports

| **Report Year** | **Filed Date** |
|---|---|
| 2021 | 04/14/2021 |

### Document Images

| | |
|---|---|
| 04/14/2021 -- ANNUAL REPORT | View image in PDF format |
| 12/22/2020 -- Foreign Limited | View image in PDF format |

Previous On List     Next On List     Return to List

Omegle

Search

**No Events     No Name History**

**2021 FOREIGN LIMITED LIABILITY COMPANY ANNUAL REPORT**

DOCUMENT# M20000011843

**FILED**
**Apr 14, 2021**
**Secretary of State**
**3528222886CC**

**Entity Name:** OMEGLE.COM LLC

**Current Principal  Place of Business:**

7901 4TH ST. N, STE. 300
ST. PETERSBURG, FL  33702

**Current Mailing Address:**

7901 4TH ST. N, STE. 300
ST. PETERSBURG, FL  33702  US

**FEI Number: 46-1730391**                                        **Certificate of Status Desired:** No

**Name and Address of Current Registered Agent:**

NORTHWEST REGISTERED AGENT LLC
7901 4TH ST. N, STE. 300
ST. PETERSBURG, FL  33702  US

*The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.*

SIGNATURE: _____

       Electronic Signature of Registered Agent                                        Date

**Authorized Person(s) Detail :**

| | |
|---|---|
| Title | MBR |
| Name | K-BROOKS, LEIF |
| Address | 7901 4TH ST. N, STE. 300 |
| City-State-Zip: | ST. PETERSBURG FL  33702 |

*I hereby certify that the information indicated on this report or supplemental report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath; that I am a managing member or manager of the limited liability company or the receiver or trustee empowered to execute this report as required by Chapter 605, Florida Statutes; and that my name appears above, or on an attachment with all other like empowered.*

SIGNATURE: LEIF K-BROOKS                                    MBR                           04/14/2021

       Electronic Signature of Signing Authorized Person(s) Detail                                        Date

# TAB 27

# *M.H. et al. v. Omegle.com LLC*

**Florida Middle District Court**

Case no. 8:21-cv-00814-VMC-TGW (M.D. Fla.)
Filed date: April 16, 2021
Docket entry no.: 27

Docket text:

ENDORSED ORDER: On April 9, 2021, this case was transferred from the District of New Jersey to this District, and assigned to the undersigned. (Doc. # 22). Because the court granted the motion to dismiss for lack of personal jurisdiction, Plaintiffs are directed to file an amended complaint by April 30, 2021. In accordance with the Federal Rules of Civil Procedure, Defendant's response is due fourteen days after the amended complaint has been filed. Fed. R. Civ. P. 15(a)(3). Additionally, counsel are directed to meet and confer, in person or by telephone, and by May 20, 2021, file a completed Case Management Report. The Court believes that six to eight months is a sufficient period of time to conduct discovery in the vast majority of cases. If the parties believe that more than eight months will be needed to complete discovery, the parties should provide the Court with a detailed explanation as to why additional time is needed and a timeline for the discovery that is planned. After the Case Management Report is filed, the Court will determine whether a Case Management Hearing is necessary before entry of a Case Management and Scheduling Order. Signed by Judge Virginia M. Hernandez Covington on 4/16/2021. (AR) (Entered: 04/16/2021)

This PDF was generated on May 21, 2021 by PacerPro for a text-only docket entry synced on May 19, 2021.

https://app.pacerpro.com/cases/15018418

# TAB 48

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

---

M.H. and J.H. on behalf of their
minor child C.H.

                Plaintiffs,

v.

OMEGLE.COM LLC

                Defendant.

Civil Action No. 8:21cv00814

AMENDED COMPLAINT

Jury Trial Demanded

---

Plaintiffs M.H. and J.H., on behalf of their minor child C.H., by and through their attorneys, Hach Rose Schirripa & Cheverie LLP and Marsh Law Firm PLLC, bring this action for damages and other legal and equitable relief against Omegle.com LLC ("Omegle" or the "Company"). Plaintiffs allege as follows:

## **INTRODUCTION**

1.    Defendant Omegle operates a website at https://www.omegle.com/ (hereinafter, "Omegle.com") which explicitly invites users to "Talk to strangers!"

2.    C.H. is an 11-year-old girl who used Omegle's website where she met a stranger who sexually victimized and exploited her.

3.      The abuse C.H. suffered was preventable, predictable, and only occurred because Omegle created a venue which enabled, encouraged, and enticed children to be exploited by strangers online.

4.      Omegle knowingly received value when traffic from "cappers"[1] flooded its website to commit online child exploitation.

5.      Omegle knew this was occurring and therefore enabled, encouraged, and enticed online child exploitation.

6.      Omegle's unfair and deceptive business practices have seriously impacted children across the country resulting in children being stalked, sexually assaulted, abused, and exploited by strangers.

7.      Plaintiffs bring claims under federal and state law to obtain redress.

## PARTIES

8.      Plaintiffs M.H. and J.H. reside in Morris County, New Jersey.

9.      Plaintiffs M.H. and J.H. are C.H.'s parents.

10.     C.H. was born in 2009 and all times relevant to this action was eleven years old.

---

[1] A "capper" is an individual who tricks kids into committing a sexual act over live stream while screen capturing or recording a video. *See* New Sextortion Tactics Reported to Cybertip.ca. (April 1, 2020). Retrieved May 17, 2021 from https://www.cybertip.ca/app/en/ctipalerts.

2

11.     Omegle failed to request verifiable parental consent to collect, disclose, or use C.H.'s personally identifiable information including C.H.'s geolocation. Neither M.H. nor J.H. ever received direct notice concerning the collection, use, and disclosure of C.H.'s data.

12.     Defendant Omegle.com LLC is a limited liability corporation registered in the State of Florida with its principal place of business located at 7901 4th Street N, Suite 300, St. Petersburg, Florida 33702.

13.     Omegle has dramatically grown in popularity since it was founded in 2009 by Leif Brooks.

14.     The Omegle website, which typically gets millions of page views per day, experienced a drastic uptick of user activity during the COVID-19 pandemic.

**JURISDICTION AND VENUE**

15.     Federal subject matter jurisdiction arises out of diversity of citizenship pursuant to 28 U.S.C. § 1332, since this is a civil action where the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs and is between citizens of different states.

16.     28 U.S.C. § 1367 provides supplemental jurisdiction for Plaintiffs' state law claims.

17.     Federal subject matter jurisdiction is also proper pursuant to 28 U.S.C. § 1331 because this is a civil action arising under 18 U.S.C. § 2255.

18.     Declaratory relief is proper under 28 U.S.C. §§ 2201 and 2202.

19.     Further, this Court has personal jurisdiction over the Defendant because Defendant regularly conducts business in this District and/or under the stream of commerce doctrine by causing its products and services to be disseminated in this District, including its website used by C.H.

20.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and (2) because (i) this is a civil action brought in the judicial district where the above-named Defendant resides and (ii) a substantial part of the events or omissions giving rise to the Plaintiffs' claims occurred in this judicial district.

## SUBSTANTIVE ALLEGATIONS

### COPPA Prohibits the Collection of Children's Personally Identifiable Information Without Verifiable Parental Content

21.     Recognizing the vulnerability of children in the internet age, in 1999 Congress enacted the Children's Online Privacy Act ("COPPA"). *See* 16 U.S.C. §§ 6501-6505. COPPA's express goal is to protect children's online privacy. Under COPPA, developers of child-focused apps and websites cannot lawfully obtain the personally identifiable information of children under 13 years of age without first obtaining verifiable consent from their parents.

22.     COPPA applies to any operator of a commercial website or online service that is directed to children and that: (a) collects, uses, and/or discloses personally identifiable information of children, or (b) on whose behalf such

4

information is collected or maintained. Under COPPA, personally identifiable information is "collected or maintained on behalf of an operator…[t]he operator benefits by allowing another person to collect personally identifiable information directly from users of" an online service. 16 C.F.R. 312.2. Further, COPPA applies to any operator of a commercial website or online service that has actual knowledge that it collects, uses, and/or discloses personally identifiable information from children.

23.     Under COPPA, "personally identifiable information" includes information such as names, email addresses, and social security numbers. COPPA's broad definition of "personally identifiable information" is as follows: "individually identifiable information about an individual collected online," which includes (1) a first and last name; (2) a physical address including street name and name of a city or town; (3) online contact information (separately defined as "an email address or any other substantially similar identifier that permits direct contact with a person online"); (4) a screen name or user name; (5) telephone number; (6) social security number; (7) a media file containing a child's image or voice; (8) geolocation information sufficient to identify street name and name of a city or town; (9) a "persistent identifier that can be used to recognize a user over time and across different Web sites or online services" (including but not limited to a customer number held in a cookie, an Internet Protocol (IP)

address, a processor or device serial number, or unique device identifier´);

and (10) any information concerning the child or the child's parents that the

operator collects then combines with an identifier.

24.    In order to lawfully collect, use, or disclose personally identifiable

information, COPPA requires that an operator meet specific requirements,

including each of the following:

    a.    Posting a privacy policy on its website or online service

        providing clear, understandable, and complete notice of its

        information practices, including what information the

        website operator collets from children online, how it uses

        such information, its disclosure practices for such

        information, and other specific disclosures as set forth in

        the Rule;

    b.    Providing clear, understandable, and complete notice of its

        information practices, including specific disclosures,

        directly to parents; and

    c.    Obtaining verifiable parental consent prior to collecting,

        using, and/or disclosing personally identifiable information

        from children.

25.    Under COPPA, "[o]btaining verifiable consent means making any

reasonable effort (taking into consideration available technology) to ensure

that before personally identifiable information is collected from a child, a

parent of the child…[r]eceives notice of the operator's personally identifiable

information collection, use and disclosure practices; and [a]uthorizes any

collection, use, and/or disclosure of the personally identifiable information."

16 C.F.R. 312.2.

26.    The FTC recently clarified acceptable methods for obtaining

verifiable parent consent, include:

      a.    Providing a form for parents to sign and return;

      b.    Requiring the use of a credit/card online payment that
          provides notification of each transaction;

      c.    Connecting to trained personnel via video conference;

      d.    Calling a staffed toll-free number;

      e.    Asking knowledge based questions; or

      f.    Verifying a photo-ID from the parent compared to a second
          photo using facial recognition technology.

### *Omegle is An Operator Under COPPA*

27.    Omegle is an "operator" pursuant to COPPA. Specifically,

COPPA defines an "operator," in pertinent part, as: "any person who operates

a Web site located on the Internet or an online service and who collects or

maintains personally identifiable information from or about the users of or

visitors to such Web site or online service, or on whose behalf such

information is collected or maintained, or offers products or services for sale through that Web site or online service, where such Web site or online service is operated for commercial purposes involving commerce among the several States or with 1 or more foreign nations; in any territory of the United States or in the District of Columbia, or between any such territory and another such territory or any State or foreign nation; or between the District of Columbia and any State, territory, or foreign nation." 16 C.F.R. 312.2.

28.    Defendant operated its website entirely online. Indeed, without a connection to the internet, Plaintiff could never have accessed Omegle's service.

29.    In 1996, Congress passed the Communications Decency Act of 1996 ("CDA of 1996") which included Section 230 ("CDA 230").[2] Congress intended the CDA of 1996 to accomplish several things, including: (1) to promote the free exchange of information and ideas over the internet and (2) to encourage voluntary monitoring for offensive or obscene material.[3]

---

[2] 47 U.S.C. § 230.

[3] The CDA does not immunize an interactive computer service provider that creates or develops the content at issue. *See e-ventures Worldwide, LLC v. Google, Inc., No. 214CV646FTMPAMCM, 2017 WL 2210029, at *3 (M.D. Fla. Feb. 8, 2017) citing Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, at 1162 (9th Cir. 2008).

### *Omegle Violated FOSTA / SESTA*

30.     In 2018, in a direct response to online platforms knowingly

allowing human trafficking to occur and both promoting and profiting from it,

Congress passed a bill known as Fight Online Sex Trafficking Act ("FOSTA")

and Stop Enabling Sex Traffickers Act ("SESTA") (collectively,

"FOSTA/SESTA"). As part of this amendment to CDA 230, Congress stated

"It is the sense of Congress that –

> (1)   Section 230 of the Communications Act of 1934 (47 U.S.C.
>
> § 230; commonly known as the 'Communications Decency
>
> Act of 1996') was never intended to provide legal protection
>
> to websites that unlawfully promote and facilitate
>
> prostitution and websites that facilitate traffickers in
>
> advertising the sale of unlawful sex acts with sex
>
> trafficking victims;
>
> (2)   Websites that promote and facilitate prostitution have been
>
> reckless in allowing the sale of sex trafficking victims and
>
> have done nothing to prevent the trafficking of children and
>
> victims of force, fraud, and coercion; and
>
> (3)   Clarification of such section is warranted to ensure that
>
> such section does not provide such protection to such
>
> websites.

31.     Defendant has benefited financially and received something of value, including increased web traffic, from participation in one or more sex trafficking ventures by allowing Omegle.com to become a safe haven and a refuge for child predators, sex abusers, human traffickers, and child pornographers.

32.     Omegle.com is a focused topic of discussion by child predators and child pornographers who trade and disseminate child sexual abuse material, "capping how-tos,"[4] tips for how to create and produce child sex abuse videos on Omegle.com, advice on how to share and distribute child sex abuse material with impunity, and other perverse pursuits.

### *Omegle's Operations*

33.     Omegle is a website that enables individuals to communicate with random individuals across the world anonymously via text and video.

34.     Specifically, individuals access Omegle.com using a webcam and microphone and Omegle matches them with another stranger. Omegle pairs

---

[4] "Random girl comes on webcam to meet new people and is persuaded by random people (competing for points) to flash various body parts, not knowing that screen captures of video will surface on the world wide web within 30 seconds. The video will be traded on websites by hundreds of people and streamed. Videos are traded by collectors. Blackmailers get hold of the videos and information on the girls then hunt them and use the videos as leverage to get the girls under their control and command eg forced to do sex shows. Groups of heroes or 'white knights' who may also be pedophiles run around trying to save the girls from the blackmailing pedophiles. The Cappers and heroes fight to add the girls to their own collection." Urban Dictionary, Definition 10
https://www.urbandictionary.com/define.php?term=Capping&page=2 (visited May 17, 2021).

users randomly and in some cases Omegle matches users according to similarities in conversations and subjects.

35.    The Omegle website designates users as "You" or "Stranger 1" or "Stranger 2."

36.    To access Omegle.com, a user simply clicks on "text" or "video" under the words "start chatting." The user is then immediately placed in a chat with a stranger.

37.    Omegle.com does not require any age verification or authentication. There is nothing preventing a minor under the age of thirteen from accessing the website.

38.    Omegle.com is vulnerable to hacking. As a result, a user can grab screenshots of previous conversations and then utilize that data to obtain another user's geographic location.

***Omegle's Infamy and Synonymy with Online Child Sexual Exploitation***

39.    Since 2016, the use of Omegle's website by predators has become known to the public and to the Company itself.

40.    When vigilante activists became aware of Omegle's repeated use by child predators, they recorded videos of themselves attempting to catch these predators in the act.

41.    Further, Omegle has been mentioned in numerous criminal cases across the country after individuals were arrested for possessing and

promoting child pornography. For example, in April 2016, Ammar Butaleb was arrested in Pittsburgh, Pennsylvania after he received, viewed, and downloaded child pornography through Omegle.[5] In December 2018, Robert Alexander Kusma of in Scranton, Pennsylvania was charged with the sexual assault of a minor under sixteen years of age after first meeting and grooming a girl on Omegle.[6] In April 2019, in the state of New Jersey, twenty-four sexual predators were arrested in what was dubbed "Operation Home Alone" for using social media platforms, including Omegle, to lure children for sex.[7] In February 2020, Dalton Matthew Bates was arrested in Kentucky on thousands of counts of child pornography possession across multiple social media platforms and applications including Omegle.[8] In July 2020 in Morris County, New Jersey, Robert Murphy pleaded guilty to endangering the welfare of a child after he tried to set up an in-person meeting for sex with an eleven-year-old girl he met on Omegle.[9]

---

[5] *See* https://pittnews.com/article/106942/news/student-arrested-for-child-pornography/
[6] *See* https://www.ydr.com/story/news/crime/2018/12/18/scranton-man-accused-sexually-assaulting-york-county-girl-he-met-internet/2350851002/
[7] *See* https://www.foxnews.com/us/21-alleged-child-sexual-predators-arrested
[8] *See* https://www.themountaineagle.com/articles/band-teacher-held-in-porn-case-talked-about-temptation/
[9] *See* https://www.dailyrecord.com/story/news/2020/04/29/complaint-nj-shore-teen-drove-morris-plains-sex-girl/3047222001/

42.     Upon information and belief, Omegle has been contacted by individuals representing these exploited children or law enforcement investigating crimes committed in these cases.

43.     The countless allegations involving Omegle by those who target children for sexual abuse, pornography, and exploitation, the resulting media coverage, and the arrests and convictions of predators using Omegle.com to exploit victims indicates that Omegle has full knowledge of the extent to which its website is used to sexually target, groom, exploit, and abuse children like C.H.

44.     Omegle advertises itself as a place to "Talk to strangers!"

45.     Omegle designed Omegle.com to encourage users to "talk to strangers" and made this aspect of Omegle.com freely available and unrestricted to child users.

46.     Omegle manufactured a product which caters to child predators and receives value for the intended use of Omegle.com.

47.     Omegle manufactured a defective product that presents an unreasonable risk that child users will become victims of child exploitation and online child sex abuse.

48.     Omegle knowingly receives value for the ongoing online sexual exploitation of children on Omegle.com.

13

49.     Omegle knowingly receives value for the use of their product as a tool to abuse unsuspecting children on Omegle.com.

50.     The disclaimers on Omegle.com indicate that Omegle knows about the improper, illegal, and illicit use of its website, including by children.

51.     Omegle does not provide any guidance to parents who are trying to monitor their children's use of their website. The warnings on Omegle.com are nothing but boilerplate window dressing.

52.     Further, Omegle does nothing to properly verify users' ages or prevent the use of Omegle.com by minors.

53.     As a result of these failures, hundreds of thousands of minors who access Omegle.com are subject to sexual exploitation, child pornography and online abuse.

### C.H. Accesses Omegle.com and Becomes a Victim of Child Sexual Exploitation

54.     During the COVID-19 pandemic, C.H. was forced to attend school remotely and as such was provided with a Chromebook by her school.

55.     At all relevant times, Omegle knew that child predators or "cappers" used Omegle.com to exploit children to create child sex abuse material and other illicit and illegal content—including through screen-

captured videos—and that this content was later shared on Omegle and other internet platforms.

56.     At all relevant times, Omegle knowingly received value for the use of their product as a tool for child exploitation, child pornography, and child sex abuse.

57.     On or about March 31, 2020, C.H. used her Chromebook to access the Omegle.com. C.H. had never used Omegle's website before. C.H. was first paired to chat with a group of minors who appeared to be older than C.H. C.H. ended the chat with the group of minors and was placed in another chat.

58.     Upon entering the second chat, C.H. encountered a black screen. Shortly thereafter C.H. began to see text being typed on the black screen.

59.     This unknown user ("John") informed C.H. that he knew where C.H. lived and provided C.H. with her geolocation. John also told C.H. that he knew that that there were cell phones and computers in C.H.'s house which he threatened to hack.

60.     Scared and confused, C.H. pleaded with John to leave her alone.

61.     John then instructed C.H. to remove all her clothing—including her underwear—and to touch, fondle, and masturbate her naked genitals in front of the camera. C.H. pleaded with John and offered gift cards to him in lieu of complying with his demands. John became more forceful with C.H. and demanded that she remove her clothing and display her genitals.

Eventually, C.H. complied with John's demands, removed all her clothing, and touched herself sexually in accordance with the instructions she received from this stranger.

62.     John recorded C.H.'s actions, forever memorializing her child sex abuse performance.

63.     At all relevant times, Omegle knew of and collected profits, in the form of increased web traffic and advertising revenue, from fact that child predators like John—who are known to Omegle as "cappers"—took explicit screen grabs of children like C.H. and shared them online.

64.     In early 2020, "cappers" such as John flocked to Omegle to take advantage of the unprecedented increase in opportunities to engage with unsupervised children online.

65.     Immediately after this incident, C.H. notified her parents about what occurred and M.H. and J.H. reported the incident to law enforcement.

### Omegle Engaged in the Foregoing Acts Without Obtaining Verifiable Parental Consent

66.     Omegle enabled the collection, use, and disclosure of C.H.'s personally identifiable information and viewing C.H.'s data without notifying her parents.

67.     Omegle never obtained verifiable parental consent to collect, use, or disclose C.H.'s personally identifiable information or viewing data.

68.     C.H. never knew that her personally identifiable information and viewing data could be collected, disclosed, or used, because at all times Omegle failed to provide C.H's parents any of the required disclosures, never sought verifiable parental consent, and never provided any mechanism by which C.H's parents could provide verifiable consent.

69.     Omegle's unlawful collection for commercial gain of C.H.'s personally identifiable information and viewing information exposed C.H. and others like her to online child predators.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF
## VIOLATION OF 18 U.S.C. § 2255(a)

70.     Plaintiffs repeat, re–allege, and incorporate by reference all prior and subsequent paragraphs, including paragraphs ¶¶ 1 – 65, as if fully set forth herein.

71.     18 U.S.C. § 2255, entitled "Civil Remedy for Personal Injuries," provides that any person who is a victim of a violation of 18 U.S.C. § 2252A(a)(5)(B) and who suffers personal injury as a result of such violation shall recover the actual damages such person sustains or liquidated damages in the amount of $150,000 per victim, and reasonable attorney's fees.

72.     Omegle violated the federal child pornography crime found at

18 U.S.C. § 2252A(a)(5)(B) which provides that any person commits a federal

crime who:

> knowingly possesses, or knowingly accesses with intent to
> view, any […] material that contains an image of child
> pornography that has been mailed, or shipped or
> transported using any means or facility of interstate or
> foreign commerce […] or that was produced using
> materials […] affecting interstate or foreign commerce by
> any means, including by computer.

73.     C.H. suffered personal injury as a result of each of the

Defendants' violation of 18 U.S.C. § 2252A(a)(5)(B).

74.     Plaintiffs intend to prove C.H.'s actual damages as a result of

each of Omegle's conduct.

75.     At minimum, Plaintiffs intend to seek liquidated damages in the

amount of $150,000 against Omegle, as well as the cost of the action,

including reasonable attorney's fees and other litigation costs reasonably

incurred, prejudgment and post-judgment interest, and such other relief as

the Court deems appropriate.

## SECOND CLAIM FOR RELIEF
## VIOLATION OF 18 U.S.C. §§ 1591 AND 1595

76.     Plaintiffs repeat, re–allege, and incorporate by reference all prior

and subsequent paragraphs, including paragraphs ¶¶ 1 – 72, as if fully set

forth herein.

77.     Defendant knowingly used the instrumentalities and channels of interstate and foreign commerce to facilitate violations of 18 U.S.C. §§ 1591(a)(1) and 1595(a) occurring within the territorial jurisdiction of the United States.

78.     Defendant's conduct was in or affected interstate and/or foreign commerce.

79.     Defendant knowingly benefited from participation in what it knew or should have known was a sex trafficking venture in violation of 18 U.S.C. §§ 1591(a)(2) and 1595(a).

80.     Defendant knowingly benefited from, and/or received value for participation in the venture in which Defendant knew C.H. would be forced to engage in commercial sexual acts while under the age of 18 years old.

81.     In an interstate and international commercial effort, Omegle knowingly recruited, enticed, harbored, obtained, advertised, maintained, patronized, and/or solicited their users to create images of commercial sex acts that C.H. was forced to engage in while she was under the age of 18 years old.

82.     Defendant's employees and/or agents had actual knowledge that they were facilitating and participating in a scheme to profit from the commercial sex acts of minor children, including C.H.

83.    Defendant knowingly benefited financially from the sex-trafficking venture and the exploitation of C.H.

84.    Defendant's conduct has caused C.H. serious harm including, without limitation, physical, psychological, financial, and reputational harm that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity, in order to avoid incurring that harm.

85.    Each of the Omegle's conduct has caused C.H. serious harm including, without limitation, physical, psychological, financial, and reputational harm.

**THIRD CLAIM FOR RELIEF**
**VIOLATION OF THE VIDEO PRIVACY PROTECTION ACT 18 U.S.C. § 2710**

86.    Plaintiffs repeat, re–allege, and incorporate by reference all prior and subsequent paragraphs, including paragraphs ¶¶ 1 – 82, as if fully set forth herein.

87.    Omegle is a "video tape service provider" subject to 18 U.S.C. § 2710(a)(4) of the Video Privacy Protection Act ("VPPA"). Omegle is "engaged in the business, in or affecting interstate or foreign commerce, of rental, sale or delivery of prerecorded video cassette tapes or similar audio-visual materials" by delivering videos recorded on its website.

88.     As a user of the website, C.H. is a consumer within the definition of 18 U.S.C. § 2710(a)(1) of the VPPA.

89.     Omegle collected C.H.'s personally identifiable information ("PII") within 18 U.S.C. § 2710 (a)(3).

90.     Omegle disclosed PII to third-parties, including data brokers and advertisers, to generate revenue and profit.

91.     Omegle failed to solicit and/or obtain consent from C.H. to collect and disclose her PII, nor did Omegle provide clear and conspicuous notice of the disclosure of PII, as defined in 18 U.S.C. § 2710 (b)(2)(B).

92.     The knowing disclosures and transmission of PII violates the VPPA within the meaning of 18 U.S.C. § 2710 (b)(1).

93.     Accordingly, C.H. is entitled under 18 U.S.C. § 2710(c)(2) to an award of damages (actual, liquidated, or punitive), reasonable attorneys' fees, other litigation costs reasonably incurred, and such relief as the Court deems appropriate.

## FOURTH CLAIM FOR RELIEF
## INTRUSION UPON SECLUSION

94.     Plaintiffs repeat, re–allege, and incorporate by reference all prior and subsequent paragraphs, including paragraphs ¶¶ 1 – 90, as if fully set forth herein.

95.     C.H. has a reasonable expectation of privacy when she is online, especially while she is at her home in her private dwelling space. C.H.'s private affairs include observation of her whether by voyeurs lurking outside her window or voyeurs peering into her room through a webcam.

96.     C.H. zone of privacy extends to the surreptitious collection and tracking of her personally identifiable information and viewing data collected and aggregated by Omegle.com.

97.     The reasonableness of such expectation of privacy is violated by Omegle's unique ability to monitor C.H.'s behavior by accessing C.H.'s private devices. It is further violated by Omegle's surreptitious highly-refined tracking of its website's users through video.

98.     Omegle intentionally intruded onto and into C.H.'s solitude, seclusion, and private affairs by intentionally designing its website to allow for the surreptitious and improper monitoring, review, and/or retention of C.H.'s activities through the technologies and activities described herein.

99.     These intrusions are highly offensive to a reasonable person. This is evidenced by the legislation enacted by Congress, rules promulgated and enforcement actions undertaken by the FTC, and countless studies, op-eds, and articles describing and criticizing the online tracking of children. *See* 16 U.S.C. §§ 6501-6505. Further, the extent of the intrusion cannot be fully known since the nature of privacy invasion involves sharing C.H's personally

identifiable information and/or viewing data with potentially countless third-parties, known and unknown, for undisclosed and potentially unknowable purposes, in perpetuity.

100.   C.H. was harmed by the intrusion into her private affairs as detailed throughout this Complaint.

101.   Omegle's actions and conduct complained of herein were a substantial factor in causing the harm suffered by C.H.

102.   As a result of Omegle's actions, Plaintiffs seek nominal and punitive damages in an amount to be determined at trial. Plaintiffs seek punitive damages because Omegle's actions which were malicious, oppressive, and willful were calculated to injure C.H. and made in conscious disregard of her rights. Punitive damages are warranted to deter Omegle from engaging in future misconduct.

## FIFTH CLAIM FOR RELIEF
## NEGLIGENCE

103.   Plaintiffs repeat, re–allege, and incorporate by reference all prior and subsequent paragraphs, including paragraphs ¶¶ 1 – 98, as if fully set forth herein.

104.   Omegle owed C.H. and the general public a duty to use ordinary care in designing, maintaining, and distributing its products and services to children.

105.    Omegle breached that duty because, among other things, it failed to take reasonable care to address the danger of dangerous "cappers" enticed, enabled, and encouraged to sexually abuse minor children on the platforms created by Omegle to "Talk to Strangers!" Omegle's initial and continued design decisions regarding its platform are unreasonable and negligent.

106.    Omegle owed C.H. and the general public a duty of care to provide a safe online community, especially since it knew that children were and would be accessing Omegle.com.

107.    Omegle breached the duty of care by failing to implement adequate safety and security measures including monitoring its users' age and ongoing monitoring of its users' conduct while using its online service.

108.    Omegle had an ongoing, non-delegable duty to continue to monitor, supervise, inspect, and assess the use of service and application to prevent the mistreatment of its users.

109.    Omegle failed to prevent children from using its website despite its knowledge that its website was used by children; was inherently dangerous; and had been misused by sexual predators to groom and sexually abuse and exploit children.

110.    Omegle further failed to interview, assess, inspect or otherwise check on the welfare of its users to ensure that they were not being harmed,

sexually abused, or otherwise mistreated and Defendant's aforesaid failures

enabled the tortious conduct experienced by C.H. to occur and continue.

111.   As a direct and proximate result of Omegle's breaches of the duty

of care owed, C.H. was subjected to sexual exploitation by a stranger.

112.   Omegle's acts and omissions were committed wantonly, willfully,

with reckless and/or callous disregard for the safety of its users including

C.H.

113.   As a result of the above negligence on the part of the Omegle,

C.H. was caused to suffer severe and painful personal injuries, emotional

distress, sexual misconduct, pain, suffering, and mental anguish all of a

permanent nature.

114.   By reason of the foregoing, Omegle is liable for compensatory

damages and punitive damages, together with interests and costs.

## SIXTH CLAIM FOR RELIEF
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

115.   Plaintiffs repeat, re–allege, and incorporate by reference all prior

and subsequent paragraphs, including paragraphs ¶¶ 1 – 106, as if fully set

forth herein.

116.   Omegle engaged in reckless, extreme, and outrageous conduct by

failing to take reasonable precautions to prevent children from using its

website and by failing to monitor its website and use of its website to ensure

that its users were not being sexually abused, mistreated, or exploited despite knowing that children were using its website and that its website was providing a forum for sexual predators to access children.

117.   By its acts and omissions, Omegle intended to and did intentionally and recklessly cause C.H. to suffer severe emotional distress.

118.   Omegle's misconduct was so shocking and outrageous that it exceeds the reasonable bounds of decency as measured by what the average member of the community, and society as whole, would tolerate and demonstrates an utter disregard by Omegle of the consequences that followed.

119.   Omegle's misconduct was also engaged in with oppression or malice and was in conscious disregard for the rights and safety of others, including, but not limited to C.H., so as to warrant the imposition of punitive damages.

120.   As a direct and proximate result of the Omegle's conduct, a stranger gained access to C.H. and sexually exploited her. C.H. has suffered, and continues to suffer, severe emotional distress, for which she is entitled to an award of damages.

121.   Omegle knew that this reckless, extreme, and outrageous conduct would inflict severe emotional and psychological distress, including personal

physical injury as a result, including severe mental anguish, humiliation and emotional and physical distress.

122.    By reason of the foregoing, Omegle is liable for compensatory and punitive damages, together with interests and costs.

<u>SEVENTH CLAIM FOR RELIEF</u>
<u>RATIFICATION/VICARIOUS LIABILITY</u>

123.    Plaintiffs repeat, re–allege, and incorporate by reference all prior and subsequent paragraphs, including paragraphs ¶¶ 1 – 123, as if fully set forth herein.

124.    The use of the Omegle.com website for advertising, creating, posting, and sharing child sex abuse material was so pervasive and known to Omegle that it cannot be said that such conduct was so unforeseen so as to prevent the Omegle defendants from being vicariously liable for such conduct. Rather, the Omegle defendants knowingly aided and assisted the "cappers" who advertised, created, posted and shared the child sex abuse material online, and Omegle knowingly profited from that illegal activity.

125.    The Omegle defendants are vicariously liable for the conduct of the "cappers" because they ratified their conduct, knowingly received the benefits of said conduct.

126.   The Omegle defendants are further vicariously liable for the conduct of the "cappers" because they created, developed, and maintained a forum to entice, encourage and enable the sharing of such conduct.

127.   Give these circumstances, the Omegle defendants should be held vicariously liable for the actions of their "capers."

## EIGHTH CLAIM FOR RELIEF
## PUBLIC NUSIANCE

128.   Plaintiffs repeat, re–allege, and incorporate by reference all prior and subsequent paragraphs, including paragraphs ¶¶ 1 – 127, as if fully set forth herein.

129.   Omegle created and developed a public nuisance Omegle.com which violates public rights, and subverts public order, decency, and morals.

130.   Omegle's public nuisance inconveniences and damages the general public, including Plaintiff.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully requests that this Court enter a judgment in their favor against Omegle as follows:

A.   granting preliminary and permanent injunctive relief to prohibit Omegle from continuing to engage in the unlawful acts and practices described herein;

B.   awarding Plaintiffs compensatory, consequential, general, and nominal damages in an amount to be determined at trial;

C.      awarding actual damages pursuant to 18 U.S.C. § 2255(a);

D.      in the alternative to actual damages, Plaintiffs request an award of liquidated damages in the amount of $150,000 from each of Omegle's violations pursuant to 18 U.S.C. § 2255(a);

E.      awarding punitive damages in an amount sufficient to punish Omegle and to deter others from like conduct pursuant to 18 U.S.C. § 2255(a) and the common law;

F.      awarding reasonable attorney's fees pursuant to 18 U.S.C. § 2255(a);

G.      awarding pre-judgment and post-judgment interest;

H.      granting such other preliminary and equitable relief as the Court determines to be appropriate pursuant to 18 U.S.C. § 2255(a);

I.      granting any relief within the Court's jurisdiction appropriate to the proof, whether or not demanded;

J.      granting such other and further relief as the Court deems just and proper; and

K.      ordering that the Court retain jurisdiction of this matter to ensure all forms of relief it deems appropriate.

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all issues of fact and damages stated herein.

Dated: May 17, 2021
         New York, New York

**HACH ROSE SCHIRRIPA & CHEVERIE LLP**

By:    /s/ Hillary M. Nappi
Frank R. Schirripa, *pro hac vice pending*
Hillary M. Nappi, *pro hac vice*
112 Madison Avenue, 10th Floor
New York, New York 10016
Telephone: (212) 213-8311
Facsimile: (212) 779-0028
fschirripa@hrsclaw.com
hnappi@hrsclaw.com


**MARSH LAW FIRM PLLC**

By:    /s/ Jennifer Freeman
Jennifer Freeman
Florida Bar No. 1014236
31 Hudson Yards, 11th Floor
New York, New York 10001
Telephone: (212) 372-3030
Email: jenniferfreeman@marsh.law

By:    /s/ Margaret E. Mabie
Margaret E. Mabie, *pro hac vice*
31 Hudson Yards, 11th Floor
New York, New York 10001
Telephone: (212) 372-3030
Email: margaretmabie@marsh.law

*Attorneys for Plaintiffs*

# TAB 61

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| M.H. and J.H., on behalf of their minor child C.H., <br><br> Plaintiffs, <br><br> v. <br><br> OMEGLE.COM, LLC, <br><br> Defendant. | Case No. 8:21-cv-00814-VMC-TGW |

## DEFENDANT OMEGLE.COM, LLC'S MOTION TO DISMISS THE AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

# TABLE OF CONTENTS

FACTUAL ALLEGATIONS ..................................................................................1

DISCUSSION .......................................................................................................2

I.     Plaintiffs' FAC Cannot Withstand Rule 12(b)(6) Scrutiny .............................2

II.    Omegle is Entitled to Immunity Under CDA 230 ...........................................3

      A.    Each of the elements of CDA 230 immunity is established ................3

             1.    Omegle is an interactive computer service provider ...............4

             2.    The claims seek to treat Omegle as the publisher of
                  content from another information content provider ................5

      B.    Plaintiffs' claims under the federal child pornography and sex
           trafficking criminal statutes are also barred by CDA 230 ..................7

             1.    Plaintiffs' claim for alleged violation of 18 U.S.C.
                  § 2252A is not excluded by CDA 230(e)(1) ................................8

             2.    The FAC does not state a plausible claim for violation of
                  18 U.S.C. § 1591 and thus is not excluded under
                  CDA 230(e)(5)(A) .......................................................................9

                a.    FOSTA requires actual knowledge by the
                      interactive computer service to overcome
                      CDA 230 immunity ..........................................................11

                b.    Even absent CDA 230, the FAC fails to plausibly
                      allege Omegle participated in or benefitted from a
                      venture ..............................................................................14

III.   Plaintiffs' Other Claims Also Fail As a Matter of Law ..................................17

      A.    Plaintiffs' VPPA claim is fatally and irreparably deficient ...............17

             1.    Omegle is not a "video tape service provider" ........................17

              2.    C.H. is not a "consumer" as defined by the VPPA .................18

              3.    Omegle did not disclose PII as defined by the VPPA .............19

      B.    Plaintiffs' IIED claim is properly dismissed .......................................21

C.    The intrusion upon seclusion claim fails to state a plausible claim ................................................................................23

D.    Plaintiffs fail to state a claim for negligence as a matter of law.........25

E.    The public nuisance claim is implausible and should be dismissed ..............................................................................28

F.    There is no cause of action for ratification/vicarious liability..........29

IV.   Leave to Amend Should Not Be Granted .......................................................29

CONCLUSION ..............................................................................................30

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Action Sec. Serv., Inc. v. Am. Online, Inc.*, No. 6:03-cv-1170-Orl-22DAB,
  2005 U.S. Dist. LEXIS 50842 (M.D. Fla. May 27, 2005).....................................26

*Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1321 (11th Cir. 2006).............................3

*Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283 (11th Cir. 2010) ................................3

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................................3, 15, 28

*Austin-Spearman v. AMC Network Entm't LLC*, 98 F. Supp. 3d 662
  (S.D.N.Y. 2015) ..............................................................................................18, 19

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .........................................................29

*Biglen v. Fla. Power & Light Co.*, 910 So. 2d 405 (Fla. Dist. Ct. App. 2005)...............26

*Buckley v. Trenton Sav. Fund Soc'y*, 544 A.2d 857 (N.J. 1988).....................................22

*Carvalho v. Toll Bros. & Developers*, 675 A.2d 209 (N.J. 1996)....................................26

*Ceithami v. Celebrity Cruises, Inc.*, 207 F. Supp. 3d 1345 (S.D. Fla. 2016).................29

*Coventry First, LLC v. McCarty*, 605 F.3d 865 (11th Cir. 2010)...................................30

*Dart v. craigslist*, 665 F. Supp. 2d 961 (N.D. Ill. 2009)...................................................4

*DiMeo v. Max*, 248 F. App'x 280 (3d Cir. 2007) ...........................................................4

*Doe v. Bates*, No. 5:05-CV-91-DF-CMC, 2006 U.S. Dist. LEXIS 93348
  (E.D. Tex. Dec. 27, 2006)......................................................................................9

*Doe v. Kik Interactive, Inc.*, 482 F. Supp. 3d 1242 (S.D. Fla. 2020) .................... passim

*Doe v. MySpace Inc.*, 528 F.3d 413 (5th Cir. 2008).........................................................6

*Doe v. Rickey Patel, LLC*, No. 0:20-60683-WPD-CIV-DIMITROULEAS,
  2020 U.S. Dist. LEXIS 195811 (S.D. Fla. Sept. 30, 2020)...................................14

*Doe No. 14 v. Internet Brands, Inc.*, No. CV 12-3626-JFW (PJWx),
  2016 U.S. Dist. LEXIS 192144 (C.D. Cal. Nov. 14, 2016) ...........................27, 28

*Dyroff v. Ultimate Software Group, Inc.*, No. 17-cv-05359-LB,
2017 U.S. Dist. LEXIS 194524 (N.D. Cal. Nov. 26, 2017)................................27

*Dyroff v. Ultimate Software Group, Inc.*, 934 F.3d 1093 (9th Cir. 2019)..................7, 27

*Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251 (11th Cir. 2015)..............................17, 18

*Estate of Desir ex rel. Estiverne v. Vertus*, 69 A.3d 1247 (N.J. 2013) ...........................26

*Estate of Miller v. Thrifty Rent-A-Car Sys., Inc.*, 609 F. Supp. 2d 1235
(M.D. Fla. 2009) ..........................................................................................21

*Force v. Facebook, Inc.*, 934 F.3d 53 (2d Cir. 2019) ...........................................9

*Friedman v. Martinez*, 231 A.3d 719 (N.J. 2020) ...........................................23

*Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156 (S.D.N.Y. 2019)...............16

*Green v. Am. Online*, 318 F.3d 465 (3d Cir. 2003).............................................5

*Griffin v. Tops Appliance City, Inc.*, 766 A.2d 292
(N.J. Super. Ct. App. Div. 2001)........................................................................23

*Hendricks v. Rambosk*, No. 2:10-cv-526-FtM-29DNF, 2011 U.S. Dist. LEXIS
40608 (M.D. Fla. Apr. 14, 2011)........................................................................22

*Herrick v. Grindr, LLC*, 306 F. Supp. 3d 579 (S.D.N.Y. 2018) ...............................5, 6

*In re Hulu Privacy Litig.*, No. C 11-03764 LB, 2012 U.S. Dist. LEXIS 112916
(N.D. Cal. Aug. 10, 2012) ...................................................................................19

*In re Hulu Privacy Litig.*, 86 F. Supp. 3d 1090 (N.D. Cal. 2015) .................................20

*In re Lead Paint Litig.*, 924 A.2d 484 (N.J. 2007) ...........................................29

*In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262 (3d Cir. 2016) .........20, 24, 25

*Jabaal v. Lombardi*, No. 1:14CV89-HSO-RHW,
2015 U.S. Dist. LEXIS 178762 (S.D. Miss. Jan. 30, 2015)................................16

*J.B. v. G6 Hosp., LLC*, No. 19-cv-07848-HSG,
2020 U.S. Dist. LEXIS 151213 (N.D. Cal. Aug. 20, 2020)....................13, 15, 16

*Jersey Cent. Power & Light Co. v. Melcar Util. Co.*, 59 A.3d 561 (N.J. 2013)...............26

*Klayman v. Zuckerberg*, 753 F.3d 1354 (D.C. Cir. 2014) ...................................7

*La'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981 (S.D. Tex. 2017) ..........................6, 30

*Lemmon v. Snap, Inc.*, 2021 U.S. App. LEXIS 13197, 995 F.3d 1085
    (9th Cir. 2021) ..................................................................................................7

*M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959
    (S.D. Ohio 2019) ...........................................................................................15

*Manigault-Johnson v. Google, LLC*, No. 2:18-cv-1032-BHH, 2019 U.S. Dist.
    LEXIS 59892 (D.S.C. Mar. 31, 2019) ....................................................25

*Marfione v. Kai U.S.A., Ltd.*, No. 17-70, 2018 U.S. Dist. LEXIS 51066
    (W.D. Pa. Mar. 27, 2018) ..............................................................................7

*Mezey v. Twitter, Inc.*, No. 1:18-cv-21069-KMM, 2018 U.S. Dist. LEXIS
    121775 (S.D. Fla. July 19, 2018)..................................................................5

*M.L. v. craigslist Inc.*, No. C19-6153 BHS-TLF, 2020 U.S. Dist. LEXIS 166334
    (W.D. Wash. Sept. 11, 2020) ......................................................................13

*Neely v. Wells Fargo Fin., Inc.*, No. 8:12-cv-542-T-33AEP, 2012 U.S. Dist.
    LEXIS 168669 (M.D. Fla. Nov. 28, 2012) ..............................................23

*Obado v. Magedson*, No. 13-2382 (JAP), 2014 U.S. Dist. LEXIS 104575
    (D.N.J. July 31, 2014) ....................................................................................8

*Parker v. Google, Inc.*, 422 F. Supp. 2d 492 (E.D. Pa. 2006) ...........................................4

*Perry v. CNN, Inc.*, No. 1:14-CV-02926-ELR, 2016 U.S. Dist. LEXIS 179395
    (N.D. Ga. Apr. 20, 2016)..............................................................................20

*Perry v. CNN, Inc.*, 854 F.3d 1336 (11th Cir. 2017) ......................................................18

*Popa v. Harriet Carter Gifts, Inc.*, 426 F. Supp. 3d 108 (W.D. Pa. 2019) ....................25

*Roca Labs, Inc. v. Consumer Opinion Corp.*, 140 F. Supp. 3d 1311
    (M.D. Fla. 2015)..............................................................................................4

*Saponaro v. Grindr, LLC*, 93 F. Supp. 3d 319 (D.N.J. 2015)...............................5, 6, 30

*Stasiak v. Kingswood Co-op, Inc.*, No. 8:11-cv-1828-T-33MAP,
    2012 U.S. Dist. LEXIS 20609 (M.D. Fla. Feb. 17, 2012) ...................23

*State Farm Mut. Auto. Ins. Co. v. Novotny*, 657 So. 2d 1210
    (Fla. Dist. Ct. App. 1995)............................................................................22

*Stone v. Wall*, 135 F.3d 1438 (11th Cir. 1998)........................................................21

*United States v. Ballinger*, 395 F.3d 1218 (11th Cir. 2005) ...................................20

*United States ex rel. Higgins v. HealthSouth Corp.*, No. 8:14-cv-2769-T-33AEP,
  2019 U.S. Dist. LEXIS 146351 (M.D. Fla. Aug. 28, 2019)...............................30

*Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413 (1st Cir. 2007) ...................6

*Virgilio v. Ryland Group, Inc.*, 680 F.3d 1329 (11th Cir. 2012) ...................................26

*Williams v. Verizon N.J., Inc.*, No. 2:19-09350-KM-MAH, 2020 U.S. Dist.
  LEXIS 43528 (D.N.J. Mar. 12, 2020) ...................................................................29

*Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482 (1st Cir. 2016).............19

## **Statutes and Rules**

18 U.S.C. § 1591 ........................................................................................... passim

18 U.S.C. § 1591(a) ...............................................................................................10

18 U.S.C. § 1591(e)(4)...........................................................................................10

18 U.S.C. § 1595 .........................................................................................10, 13, 14

18 U.S.C. § 1595(a) ..........................................................................................10, 12

18 U.S.C. § 2251 *et seq.* ..........................................................................................8

18 U.S.C. § 2252A ...............................................................................................8, 9

18 U.S.C. § 2710 ...................................................................................................17

18 U.S.C. § 2710(a)(1)...........................................................................................18

18 U.S.C. § 2710(a)(3)...........................................................................................20

18 U.S.C. § 2710(a)(4)...........................................................................................17

47 U.S.C. § 230 ............................................................................................. passim

47 U.S.C. § 230(c)(1)...............................................................................................3

47 U.S.C. § 230(e)(1)...........................................................................................8, 9

47 U.S.C. § 230(e)(3) ..................................................................................................3

47 U.S.C. § 230(e)(5)(A) ................................................................................... passim

47 U.S.C. § 230(f)(2) ..................................................................................................4

FED. R. CIV. P. 8(a)(2) ................................................................................................2

FED. R. CIV. P. 12(b)(6) ..............................................................................................1

## **Other Authority**

H.R. 115-572 ..............................................................................................................12

RESTATEMENT (SECOND) OF TORTS § 46, cmt. g ......................................................22

RESTATEMENT (SECOND) OF TORTS § 821B ..............................................................29

RESTATEMENT (SECOND) OF TORTS § 821B, cmt. g ..................................................29

Defendant Omegle.com, LLC ("Omegle") moves pursuant to FED. R. CIV. P. 12(b)(6) to dismiss the Amended Complaint (Dkt. 48) of Plaintiffs. In support of this Motion, Omegle incorporates the following Memorandum of Law.

WHEREFORE, for the reasons stated herein, Omegle respectfully requests that the Court dismiss the Amended Complaint in its entirety, with prejudice.

## MEMORANDUM OF LAW IN SUPPORT

Despite having the opportunity to amend the complaint, Plaintiffs' Amended Complaint ("FAC") suffers from the same fatal flaw as their original complaint; namely, Plaintiffs seek to hold Omegle liable as the publisher or speaker of third-party content on its website contrary to the immunity provided by Section 230 of the Communications Decency Act ("CDA 230"). Plaintiffs' attempt to inaccurately cast this case as a sex trafficking case by adding new claims does not alter the conclusion that CDA 230 bars their claims. Therefore, for the reasons stated herein, the FAC should be dismissed with prejudice.

## FACTUAL ALLEGATIONS

The FAC alleges that Plaintiffs M.H. and J.H. are the parents of 11-year-old C.H. and reside in Morris County, New Jersey. (Dkt. 48 at ¶¶ 8-10.)

In 2009, Omegle launched its free online real-time chat service, through which users can meet and chat with new people by text or video via its website. (Id. ¶¶ 13, 33.) There is no registration or log in requirement to chat with other users. (*See* id. ¶ 36.)

As Plaintiffs acknowledged in their original complaint, the Omegle website clearly prohibits users under 13 years of age from using the real-time

chat service and prohibits users under 18 years of age from using the service without a parent's or guardian's permission. (Dkt. 1 ¶ 32; *see also* Dkt. 10-2 ¶ 3, Ex. 1.) Despite this prohibition, the FAC alleges 11-year-old C.H. visited the Omegle website in March 2020, apparently without parental permission. (Dkt. 48 ¶ 57.) C.H. had never used the Omegle website before. C.H. elected to be randomly paired with another user via the video chat option at least twice. The first random pairing was with a group of minors. C.H. elected to end that chat and start a second video chat. (Id.)

In the second chat, C.H. allegedly observed a black screen on which text began appearing. (Id. ¶ 58.) The FAC alleges that the other user in the chat said "he knew where C.H. lived" and provided her "geolocation." (Id. ¶ 59.) The FAC does not explain what is meant by "geolocation." The user also allegedly stated that there were cell phones and computers in C.H.'s house and threatened to "hack" them. (Id.) The FAC alleges that the third-party user instructed C.H. to remove her clothing and touch herself in front of the camera on her computer. She complied with the user's instructions. The user allegedly captured screenshots or videos of C.H.'s actions. (Id. ¶¶ 61-62.) C.H. allegedly reported the incident to her parents who then reported it to local law enforcement. (Id. ¶ 65.)

## DISCUSSION

## I.   Plaintiffs' FAC Cannot Withstand Rule 12(b)(6) Scrutiny

Although FED. R. CIV. P. 8(a)(2) only requires that a pleading provide a "short and plain statement of the claim showing that the pleader is entitled to relief," that standard requires "more than an unadorned, the-defendant-

unlawfully-harmed-me accusation" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks omitted). A complaint has facial plausibility only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) ("*ADA*") (plaintiffs must "nudge[] their claims across the line from conceivable to plausible" to avoid dismissal) (internal quotation marks omitted). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. But no such assumption of veracity applies to legal conclusions or "unwarranted deduction[s] of fact." *Id.* at 678; *ADA*, 605 F.3d at 1290, 1294.

## II.     Omegle is Entitled to Immunity Under CDA 230

### A.     Each of the elements of CDA 230 immunity is established

CDA 230 states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). It preempts any state law to the contrary. 47 U.S.C. § 230(e)(3). It creates "broad federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service." *Almeida v. Amazon.com, Inc.*,

456 F.3d 1316, 1321 (11th Cir. 2006) (internal quotation marks omitted).

CDA 230 provides immunity to a wide range of state and federal law claims, including the claims Plaintiffs assert. *See, e.g.*, *DiMeo v. Max*, 248 F. App'x 280, 281-83 (3d Cir. 2007) (IIED and defamation claims); *Dart v. craigslist*, 665 F. Supp. 2d 961, 963, 969 (N.D. Ill. 2009) (public nuisance claim); *Parker v. Google, Inc.*, 422 F. Supp. 2d 492, 500-01 (E.D. Pa. 2006) (defamation, invasion of privacy, and negligence claims), *aff'd*, 242 F. App'x 833 (3d Cir. 2007).

A defendant is immune under CDA 230 if: (1) the defendant is the provider or user of an "interactive computer service"; (2) the asserted claims treat it as the publisher or speaker of the information; and (3) the information is provided by another information content provider. *Roca Labs, Inc. v. Consumer Opinion Corp.*, 140 F. Supp. 3d 1311, 1319 (M.D. Fla. 2015).

### 1.    *Omegle is an interactive computer service provider*

Omegle is the provider of an "interactive computer service." The FAC alleges that Omegle is a website "that enables individuals to communicate with random individuals across the world anonymously via text and video." (Dkt. 48 ¶ 33.) This places Omegle squarely within the definition of an interactive computer service[1] because it is a website "that allow[s] third parties" to provide content to other users "regardless of whether [that content] is made anonymously or under a pseudonym." *Roca*, 140 F. Supp. 3d at 1318; *see also*

---

[1] An "interactive computer service" is "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server[.]" 47 U.S.C. § 230(f)(2).

*Mezey v. Twitter, Inc.*, No. 1:18-cv-21069-KMM, 2018 U.S. Dist. LEXIS 121775, *3 (S.D. Fla. July 19, 2018) ("a platform that transmits, receives, displays, organizes, and hosts content . . . is an interactive computer service").

> **2.** ***The claims seek to treat Omegle as the publisher of content from another information content provider***

As to the second and third elements, the claims seek to treat Omegle as the publisher or speaker of content, specifically video and/or text communications of another information content provider. Courts have held that the second element is satisfied where a plaintiff alleges that an interactive computer service published offending content that it should have filtered. *See, e.g.*, *Green v. Am. Online*, 318 F.3d 465, 471 (3d Cir. 2003) (element satisfied where plaintiff "attempt[ed] to hold [defendant] liable for decisions relating to the monitoring, screening, and deletion of content"). Courts have also found this element satisfied where a plaintiff's claims are based on an offending interaction which occurs through the site, which are ultimately based on content posted by third parties, and an alleged failure to monitor or supervise the site. *See, e.g.*, *Saponaro v. Grindr, LLC*, 93 F. Supp. 3d 319, 323 (D.N.J. 2015) (claim of failure to monitor and supervise site users was an attempt to treat defendant as a publisher of information provided by a third party); *see also Herrick v. Grindr, LLC*, 306 F. Supp. 3d 579, 590 (S.D.N.Y. 2018) (claim that defendant failed to "incorporate adequate protections against impersonating or fake accounts is just another way of asserting that [defendant] is liable because it fails to police and remove" content), *aff'd*, 765 F. App'x 586 (2d Cir. 2019), *cert. denied*, 140 S. Ct. 221 (2019).

Nor does an allegation that the interactive computer service received notice of the alleged unlawful nature of the content negate CDA 230 immunity. *See, e.g.,* *Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 420 (1st Cir. 2007); *La'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981, 994 (S.D. Tex. 2017).

Here, at its core, the FAC alleges that Omegle failed to adequately monitor and/or screen the content or interactions of its users. (*See* Dkt. 48 ¶¶ 107-08, 110, 116, 120.) The Fifth Circuit's conclusion in a factually similar case is on point. In *Doe v. MySpace Inc.*, the mother of a 13-year-old girl sued the provider of a social network for allowing her daughter to access the website and meet a 19 year old, who communicated with her via the site to arrange a meeting and assault her. 528 F.3d 413, 416 (5th Cir. 2008). Similar to the allegations in this case, the mother argued that the site was liable for failing to implement proper safeguards. But the court rejected this argument, concluding that the "allegations are merely another way of claiming that MySpace was liable for publishing the communications" between the users. *Id.* at 420.

The FAC makes vague allegations directed at Omegle's website design (*see* Dkt. 48 ¶¶ 45-47, 98, 107, 129), but courts have rejected this type of a claim where neutral tools that "are not intrinsically offensive or unlawful" are used by a third party to harass another user. *Herrick*, 306 F. Supp. 3d at 589-90; *see also Saponaro*, 93 F. Supp. 3d at 324. Here, the FAC fails to state—in a manner consistent with the plausibility standard—any claims regarding the allegedly defective design that would overcome CDA immunity. Nor could Plaintiffs make any such plausible allegations as Omegle's service—a means for users to communicate

with one another via text or video—is the type of neutral tool that courts routinely find are covered by CDA 230 immunity.[2] *See, e.g., Dyroff v. Ultimate Software Group, Inc.*, 934 F.3d 1093, 1098 (9th Cir. 2019) (rejecting attempt to equate "content" with the website's offering of "tools meant to facilitate the communication and content of others"), *cert. denied*, 140 S. Ct. 2761 (2020); *Klayman v. Zuckerberg*, 753 F.3d 1354, 1358 (D.C. Cir. 2014).

Additionally, the FAC alleges that the allegedly offending communication originated from a third-party user as did the screenshots or video allegedly captured by that user. (*See, e.g.*, Dkt. 48 ¶¶ 59, 61-62.) The FAC is bereft of any allegation that Omegle "created or authored" the allegedly offensive communications or content. A plaintiff who alleges a defendant "created or developed" allegedly offensive content must do so based on "well-pleaded facts [that] permit the court to infer more than the mere possibility" of such creation and development. *Marfione v. Kai U.S.A., Ltd.*, No. 17-70, 2018 U.S. Dist. LEXIS 51066, *18-19 (W.D. Pa. Mar. 27, 2018). Plaintiffs have not satisfied that standard.

As a result, CDA 230 bars Plaintiffs' claims against Omegle.

## B. Plaintiffs' claims under the federal child pornography and sex trafficking criminal statutes are also barred by CDA 230

CDA 230 immunity is not absolute and Section 230(e) contains two

---

[2] The Ninth Circuit decision in *Lemmon v. Snap, Inc.*, 2021 U.S. App. LEXIS 13197, 995 F.3d 1085 (9th Cir. 2021), is of no assistance to Plaintiffs. The court concluded that the plaintiffs' claim was a clear product liability claim targeted at the interplay between the Snap "speed filter" and Snap's alleged incentive system, both of which were created by Snap and which plaintiffs alleged "encouraged users to drive at dangerous speeds." *Id.* at *14-15. But the court reiterated that interactive computer services are not liable for their "neutral tools" when plaintiff's claims "blame them for the content that third parties generate with those tools." *Id.* at *16. That is precisely the case here where Plaintiffs' claims arise from C.H.'s interaction with the other user.

exclusions potentially implicated by Plaintiffs' claims alleging violations of (1) 18 U.S.C. § 2252A and (2) 18 U.S.C. § 1591. First, Section 230(e)(1) provides that CDA 230 is not intended to "impair the enforcement of [any] Federal criminal statute," including 18 U.S.C. § 2252A, the criminal statute upon which Plaintiffs' first cause of action is based. Second, Section 230(e)(5)(A) is a new exclusion added in 2018 by the Fight Online Sex Trafficking Act ("FOSTA") that is specifically targeted at (and limited to) alleged violations of the federal sex trafficking criminal statute, 18 U.S.C. § 1591. Both exclusions are narrow in scope and neither divest Omegle of CDA 230 immunity.

### 1. *Plaintiffs' claim for alleged violation of 18 U.S.C. § 2252A is not excluded by CDA 230(e)(1)*

In the FAC, Plaintiffs add a claim alleging that Omegle violated 18 U.S.C. § 2252A, which makes it a crime for any person to knowingly possess or access material that contains an image of child pornography. (Dkt. 48 ¶¶ 71-75.) But this claim—which is based on the child pornography allegedly created by the third-party user with whom C.H. interacted—is also barred by CDA 230.

Section 230(e)(1) states, in relevant part, that nothing in CDA 230 shall "impair the enforcement of . . . chapter . . . 110 (relating to sexual exploitation of children) of [18 U.S.C. § 2251 *et seq.*], or any other Federal criminal statute." 47 U.S.C. § 230(e)(1). But this exception is of no assistance to Plaintiffs. Courts have construed it to apply only to "government prosecutions, not to civil private rights of action under [statutes] with criminal aspects." *Obado v. Magedson*, No. 13-2382 (JAP), 2014 U.S. Dist. LEXIS 104575, *27 (D.N.J. July 31, 2014), *aff'd*, 612 F.

App'x 90 (3d Cir. 2015); *see also Force v. Facebook, Inc.*, 934 F.3d 53, 72 (2d Cir. 2019) ("Section 230(e)(1) is quite clearly . . . limited to criminal prosecutions") (internal quotation marks omitted), *cert. denied*, 140 S. Ct. 2761 (2020). Courts have reached that conclusion in cases involving the same criminal statute on which Plaintiffs' first claim is based—18 U.S.C. § 2252A. *See Doe v. Bates*, No. 5:05-CV-91-DF-CMC, 2006 U.S. Dist. LEXIS 93348 *7-8, 12 (E.D. Tex. Dec. 27, 2006) (holding—in case alleging that Yahoo! was civilly liable under 18 U.S.C. § 2252A for knowingly hosting child pornography—that Section 230(e)(1) did not apply to such private civil suits). Nothing in FOSTA's amendment to the CDA (discussed below) changed Section 230(e)(1). Therefore, Plaintiffs' claim based on alleged violation of 18 U.S.C. § 2252A is also barred by CDA 230.

Moreover, even if CDA 230 was not a bar, Plaintiffs fail to state a plausible claim that Omegle violated Section 2252A. They simply quote the statutory language but offer no *facts* that Omegle ever "knowingly" possessed or accessed any "image of child pornography," much less any image of C.H. allegedly created by the third-party user. (Dkt. 48 ¶ 72.) Nor can Plaintiffs plausibly allege such knowing possession or access by Omegle as there is no claim that it had any knowledge of C.H. or her interaction with the other user prior to the filing of this case. Thus, Plaintiffs' Section 2252A claim is barred by CDA 230 and fails to state any plausible claim for relief, either of which warrants dismissal.

**2.      *The FAC does not state a plausible claim for violation of 18 U.S.C. § 1591 and thus is not excluded under CDA 230(e)(5)(A)***

As noted above, in 2018, via FOSTA, Congress provided a new exception

to CDA immunity narrowly targeted at federal sex trafficking claims.

Specifically, CDA 230 was amended to state that it shall not limit "any claim in a

civil action brought under [18 U.S.C. § 1595], **if the conduct underlying the**

**claim constitutes a violation of section 1591 of that title**." 47 U.S.C.

§ 230(e)(5)(A) (emphasis added). Section 1591 criminalizes the following conduct:

> (a) Whoever **knowingly** –
>      (1) in or affecting interstate or foreign commerce . . . **recruits,**
> **entices, harbors, transports, provides, obtains, advertises, maintains,**
> **patronizes, or solicits by any means a person**; or
>      (2) **benefits, financially or by receiving anything of value, from**
> **participation in a venture which has engaged in an act described in**
> **violation of paragraph (1)**,
> knowing, or, except where the act constituting the violation of
> paragraph (1) is advertising, in reckless disregard of the fact, that means
> of force, threats of force, fraud, coercion described in subsection (e)(2), or
> any combination of such means will be used to cause the person to engage
> in a commercial sex act, or that the person has not attained the age of 18
> years and will be caused to engage in a commercial sex act, shall be
> punished as provided in subsection (b).

18 U.S.C. § 1591(a) (emphasis added). "Participation in a venture" is defined as

"knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)."

18 U.S.C. § 1591(e)(4). Section 1595 provides a civil remedy for those who are

victims of violations of Section 1591. 18 U.S.C. § 1595.[3]

    In their new second claim, Plaintiffs appear to assert that Omegle

(1) directly participated in the alleged sex trafficking venture involving C.H. and

the third-party user, and (2) secondarily participated under a "beneficiary"

---

[3] Section 1595 provides in relevant part:
> An individual who is a victim of a violation of [18 U.S.C. § 1581 *et seq.*] may bring
> a civil action against the perpetrator (or whoever knowingly benefits, financially
> or by receiving anything of value from participation in a venture which that
> person knew or should have known has engaged in an act in violation of this
> chapter) . . . and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a).

theory by "knowingly benefiting" from participating in that alleged venture. (Dkt. 48 ¶¶ 80-81.) But Plaintiffs' unsupported assertions fail as a matter of law.

### a.   FOSTA requires actual knowledge by the interactive computer service to overcome CDA 230 immunity

Plaintiffs' allegations regarding knowledge on the part of Omegle are bereft of any allegation of Omegle's knowledge of C.H., the third-party user, or the interaction between the two. Rather, Plaintiffs allege only that instances of abuse by users have occurred via Omegle's website and therefore Omegle must have had some knowledge regarding these types of acts generally. (Dkt. 48 ¶ 43.) But this type of allegation of general knowledge is insufficient to plausibly allege a claim under Section 1591 and overcome CDA immunity.

As the Southern District of Florida recently held, a claim under Section 1591 against an interactive computer service like Omegle is barred by CDA 230 unless the plaintiff can satisfy an "actual knowledge" standard. In *Doe v. Kik Interactive, Inc.*, the minor plaintiff alleged that Kik—which provides a service that allows users to message one another—knowingly participated in a venture under Section 1591 wherein other Kik users solicited and convinced her to send them sexually graphic photos of herself. 482 F. Supp. 3d 1242, 1244-45 (S.D. Fla. 2020). After concluding that Kik would be immune under CDA 230, *id.* at 1248-49, the court addressed the issue whether, in the language of FOSTA's amendment to the CDA, "the conduct underlying the claim constitute[d] a violation of section 1591." 47 U.S.C. § 230(e)(5)(A). Resolution of that issue depended on the level of *mens rea* required with respect to the meaning of

"participation in a venture." The criminal statute, Section 1591, imposes an actual knowledge standard. But the plaintiff contended that the "knew or should have known" standard of Section 1595(a) applied. *Kik,* 482 F. Supp. 3d at 1249. The court disagreed with plaintiff.

Citing to a line of cases involving sex trafficking claims under Section 1595 against hotel defendants, the court noted that the plaintiff's argument as to constructive knowledge "might prevail" if the case did not involve an interactive computer service provider (e.g., Kik). *Id.* at 1249-50. But "[s]ignificantly, because the hotel defendants were not interactive computer service providers, neither FOSTA nor CDA immunity were considered" in those cases. *Id.* at 1250. Turning to FOSTA, the court held that its language—making only a limited carveout from CDA immunity—imposed an actual knowledge standard:

> By its terms, FOSTA did not abrogate CDA immunity for all claims arising from sex trafficking; FOSTA permits civil liability for websites only "if the conduct underlying the claim constitutes a violation of section 1591." **And section 1591 requires knowing and active participation in sex trafficking by the defendants**.

*Id.* at 1251 (emphasis added). The court's conclusion is consistent with FOSTA's legislative history which expressly states that "general knowledge that sex trafficking occurs on a website will not suffice as the knowledge element must be proven as to a specific victim." H.R. 115-572 at p. 5.

Although there are out-of-circuit cases alleging Section 1595 claims against an interactive computer service (craigslist), unlike the *Kik* court, the cases devote little, if any, substantive discussion to the specific language of FOSTA or the interplay between that language and the purposes of CDA immunity.

For example, in *M.L. v. craigslist Inc.*, the court denied craigslist's motion to dismiss plaintiff's claim for "beneficiary liability" under Section 1595 because it concluded CDA immunity may not apply as it found the plaintiff plausibly alleged craigslist's development or creation of the ads that trafficked plaintiff. No. C19-6153 BHS-TLF, 2020 U.S. Dist. LEXIS 166334, *8-14 (W.D. Wash. Sept. 11, 2020). The court did not explicitly discuss the *mens rea* required for FOSTA's exception to CDA immunity as it found that, regardless of FOSTA, the immunity may not apply. Rather, it addressed only the question whether, under Section 1595, the plaintiff was required to allege that craigslist had actual or constructive knowledge of the plaintiff's specific trafficking or "general, abstract knowledge of potential trafficking." *Id.* at *17. Largely relying on the hotel cases and without discussing FOSTA or the CDA, the court concluded that a negligence, constructive knowledge standard applied to that issue. *Id.* at 17-19; *see also J.B. v. G6 Hosp., LLC*, No. 19-cv-07848-HSG, 2020 U.S. Dist. LEXIS 151213, *23-26 (N.D. Cal. Aug. 20, 2020) (stating, without analysis, that FOSTA precluded CDA immunity for Section 1595 claims and looking to the hotel cases to apply a constructive knowledge standard). In contrast to these courts, however, the *Kik* court directly addressed the question of what knowledge standard applies to claims under FOSTA and—consistent with the statutory language, the legislative history, and the unique concerns balanced in FOSTA's amendment to the CDA— concluded that actual knowledge is required.[4] *Kik*, 482 F. Supp. 3d at 1249-51.

---

[4] The *M.L.* decision was issued after *Kik* while the *J.B.* decision issued shortly before it; as a result, *Kik* does not discuss either case. Nonetheless, because those cases did not substantively

In dismissing the claim against Kik, the court then concluded that the plaintiff had not alleged facts "that would plausibly establish that [Kik] knowingly participated in the sex trafficking venture involving her[.]" *Id.* at 1251. Rather, as here, the plaintiff alleged only that Kik "knew that other sex trafficking incidents occurred on Kik," which was insufficient to "satisfy FOSTA's requirement that the conduct underlying the claim violate [Section 1591]." *Id.* As a result, the plaintiff's claim under Sections 1591 and 1595 were barred by CDA 230. Plaintiffs' allegations are similarly deficient. There are no allegations that "plausibly establish that [Omegle] knowingly participated in the sex trafficking venture involving [C.H.]." *Id.* Rather, Plaintiffs allege generally that Omegle purportedly was aware that sex trafficking incidents had occurred on its platform. (Dkt. 48 ¶¶ 39, 41-42.) But such alleged general knowledge is not sufficient to establish that Omegle "knowingly" participated in the sex trafficking venture involving C.H. and the other user. Thus, FOSTA's limited carveout from CDA 230 immunity does not apply and Plaintiffs' claim is barred.

### b. Even absent CDA 230, the FAC fails to plausibly allege Omegle participated in or benefitted from a venture

In order to plausibly plead that a defendant "participated in a venture" for purposes of Sections 1591 and 1595, a plaintiff must either allege a "direct association" or "facts from which the Court could reasonably infer [defendant] could be said to have a tacit agreement with the trafficker." *Doe v. Rickey Patel, LLC*, No. 0:20-60683-WPD-CIV-DIMITROULEAS, 2020 U.S. Dist. LEXIS 195811,

---

analyze the issue decided in *Kik*, they likely would not have impacted the court's decision.

*13-14 (S.D. Fla. Sept. 30, 2020) (internal quotation marks omitted); *see also J.B.*, 2020 U.S. Dist. LEXIS at *25-26 (same); *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 970 (S.D. Ohio 2019) (plaintiff must allege "at least a showing of a continuous business relationship between the trafficker and [defendant]").

But any allegation of either a "direct association" or a "continuous business relationship" is critically lacking here. The FAC does not allege any facts to demonstrate either a "direct association" or "continuous business relationship" between the third-party user who allegedly committed the criminal acts against C.H. and Omegle that would support the existence of a "venture." Plaintiffs simply make conclusory statements based on a recitation of the statutory language of Section 1591 (Dkt. 48 ¶¶ 77-81), which are insufficient to state a plausible claim. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Nor could they allege any such direct association or ongoing relationship between Omegle and the third-party user that would permit the reasonable inference of a tacit agreement between them because Omegle does not require users to register or log in to use the website (Dkt. 48 ¶¶ 36-37). Therefore, there can be no plausible allegation that Omegle had any knowledge of C.H., the third-party user, or that user's actions towards C.H. prior to this case.

The court in *J.B.* found generalized allegations like Plaintiffs'—such as that craigslist knew its erotic services section was well known "as a place to easily locate victims"—were not sufficient to establish that "Craigslist tacitly agreed to the sex trafficking of Plaintiff or others." *J.B.*, 2020 U.S. Dist. LEXIS 151213 at *26-

15

27. To conclude otherwise would result in the implausible suggestion "that Craigslist enters into tacit agreements with all traffickers (or even all posters) that use its website." *Id.* at 27. Thus, "[b]ecause Craigslist cannot be deemed to have participated in all ventures arising out of each post on its site, Plaintiff must [but did not] allege facts supporting the inference that craigslist made a tacit agreement with the sex traffickers who victimized Plaintiff." *Id.* at 28. Plaintiffs' allegations are even weaker here given the lack of any relationship between Omegle and its users.

Section 1591 also requires a "causal relationship between affirmative conduct furthering the sex-trafficking venture and receipt of a benefit, with . . . knowledge of that causal relationship." *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019). But Plaintiffs fail to allege a single fact to demonstrate Omegle's receipt of a benefit causally related to any affirmative conduct that furthered the alleged venture. To the contrary, Plaintiffs again simply repeat the statutory language, stating without factual support that Omegle "knowingly benefitted" from the alleged sex trafficking venture perpetrated by the third-party user. (Dkt. 48 ¶¶ 79-80, 83.) Such conclusory statements that merely parrot the statutory language are insufficient to state a claim for relief. *Jabaal v. Lombardi*, No. 1:14CV89-HSO-RHW, 2015 U.S. Dist. LEXIS 178762, *11 (S.D. Miss. Jan. 30, 2015) (finding that plaintiff's "conclusory allegation[] that 'Defendants knowingly benefitted financially' [was a] mere recitation of the elements of the cause of action" and insufficient to state a claim).

Thus, even if CDA 230 did not bar Plaintiffs' claim, it would fail on its own

merit—or lack thereof—as a matter of law.

### III.   Plaintiffs' Other Claims Also Fail As a Matter of Law

#### A.   Plaintiffs' VPPA claim is fatally and irreparably deficient

The Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"), was enacted with the narrow purpose of "preserv[ing] personal privacy with respect to the rental, purchase, or delivery of video tapes or similar audio visual materials[.]" *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1253 (11th Cir. 2015) (internal quotation marks omitted). Plaintiffs fail to state a VPPA claim for at least three independent reasons: (1) Omegle is not a "video tape service provider" ("VTSP"); (2) C.H. is not a "consumer"; and (3) Omegle did not disclose C.H.'s "personally identifiable information" ("PII") to a third party.

#### 1.   Omegle is not a "video tape service provider"

A threshold requirement for Plaintiffs' VPPA claim is that Omegle must be a VTSP, which is narrowly defined as "any person, engaged in the business . . . of rental, sale, or delivery of **prerecorded video cassette tapes or similar audio visual materials**[.]" 18 U.S.C. § 2710(a)(4) (emphasis added). The FAC is devoid of any facts showing that Omegle falls within this narrow definition. Plaintiffs simply quote the statutory definition and then assert, in conclusory fashion, that Omegle "deliver[s] videos recorded on its website." (Dkt. 48 ¶ 87.) But Plaintiffs do not and cannot allege that Omegle is a VTSP as it does not offer "prerecorded" videos of any kind. As Plaintiffs' own allegations show, the Omegle website permits users to engage in *real-time* chats with one another using text or their webcams. (Id. ¶¶ 33, 36.) Enabling users to use their webcams to

essentially engage in a video "call" in no way equates with offering video content for viewing. Thus, Plaintiffs have not alleged and cannot allege that Omegle is a VTSP and their VPPA claim fails on that ground alone.

### 2.   C.H. is not a "consumer" as defined by the VPPA

Plaintiffs' VPPA claim also fails for the independent reason that C.H. is not a "consumer," which is defined as "any renter, purchaser, or subscriber of goods or services from a [VTSP]." 18 U.S.C. § 2710(a)(1). C.H. does not claim to be a "renter" or "purchaser," therefore, only the "subscriber" option remains. The FAC alleges only that "[a]s a user of the [Omegle] website, C.H. is a consumer". (Dkt. 48 ¶ 88.) But a "user" of a website does not equal a "subscriber."

Courts have held that "something more" than merely visiting a website or downloading an app and viewing videos is required to be a "subscriber" under the VPPA. In *Ellis v. Cartoon Network, Inc.*, the Eleventh Circuit, relying in part on dictionary definitions of "subscriber," found that the "common thread" of the definitions was that "'subscription' involves some type of commitment, relationship, or association (financial or otherwise) between a person and an entity." 803 F.3d at 1256. The court found that the plaintiff—who had simply downloaded the free Cartoon Network app and viewed free content on it—did not satisfy the definition. *Id.* at 1257; *see also Perry v. CNN, Inc.*, 854 F.3d 1336, 1343-44 (11th Cir. 2017) (finding that merely downloading an app was insufficient to be a "subscriber"). Similarly, in *Austin-Spearman v. AMC Network Entm't LLC*, the plaintiff viewed video clips on AMC's website for free without any required login. 98 F. Supp. 3d 662, 664 (S.D.N.Y. 2015). Like *Ellis*, the court

required evidence of a more "durable" and "ongoing" relationship for the plaintiff to be a "subscriber." *Id.* at 669. *Compare Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 489 (1st Cir. 2016) (distinguishing the insufficient allegations in *Ellis* and finding that the plaintiff in the case before the court had alleged the required "something more"); *In re Hulu Privacy Litig.*, No. C 11-03764 LB, 2012 U.S. Dist. LEXIS 112916, *22-23 (N.D. Cal. Aug. 10, 2012) (finding that plaintiffs had adequately alleged that they were "subscribers" where they "signed up for a Hulu account, became registered users, received a Hulu ID, established Hulu profiles, and used Hulu's video streaming services").

Plaintiffs fail to plausibly allege the "something more" required for C.H. to be a "subscriber" of Omegle's real-time chat service. C.H. admits to being a one-time "user" of the website where no payment, registration or log in is required. (Dkt. 48 ¶¶ 36, 57, 88.) But "[s]uch casual consumption of web content, without any attempt to affiliate with or connect to the provider, exhibits none of the critical characteristics of 'subscription' and therefore does not suffice to render [C.H.] a 'subscriber'." *Austin-Spearman*, 98 F. Supp. 3d at 669. And finding that a one-time "user" of a website is a "subscriber" would read out any limiting force that term has in the VPPA's definition of "consumer." Thus, because C.H. is not a "consumer," the VPPA claim should be dismissed on this independent ground.

### 3.    *Omegle did not disclose PII as defined by the VPPA*

Plaintiffs' VPPA claim should be dismissed on the independent ground that they have not alleged that Omegle disclosed PII, which the VPPA defines as "information which identifies a person as having requested or obtained specific

video materials or services from a [VTSP]." 18 U.S.C. § 2710(a)(3).

Courts have recognized the narrow purpose of, and the correspondingly narrow definition of PII in, the VPPA. *See In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 284 (3d Cir. 2016) (the VPPA's purpose "was quite narrow: to prevent disclosures of information that would, with little or no extra effort, permit an ordinary recipient to identify a particular person's video-watching habits"). Additionally, courts have rejected attempts—like that which Plaintiffs make here—to import the definition of PII in the Children's Online Privacy Protection Act to expand the definition of that term in the VPPA. *Id.* at 286-88. Doing so would be contrary to basic statutory interpretation rules that statutory language cannot be simply read out of a statute. *See, e.g.*, *United States v. Ballinger*, 395 F.3d 1218, 1237 (11th Cir. 2005) (stating that words in a statute "must be read to have a purpose, and from their purpose they cannot be delinked").

Thus, consistent with the act's limited purpose, courts have held that the VPPA "protects [PII] that identifies a specific person and ties that person to particular videos that the person watched." *In re Nickelodeon*, 827 F.3d at 285 (internal quotation marks omitted); *see also Perry v. CNN*, No. 1:14-CV-02926-ELR, 2016 U.S. Dist. LEXIS 179395, *9 (N.D. Ga. Apr. 20, 2016) (concluding that PII is information "which, in its own right, without more, links an actual person to actual video materials") (internal quotation marks omitted). Thus, a VPPA plaintiff must establish the VTSP knew it was disclosing: "1) a user's identity; 2) the identity of the video material; and 3) the connection between the two—*i.e.*, that the given user had 'requested or obtained' the given video material." *In re*

*Hulu Privacy Litig.*, 86 F. Supp. 3d 1090, 1097 (N.D. Cal. 2015).

Plaintiffs' VPPA claim fails to plausibly allege any of these requirements for PII. The only information Plaintiffs appear to allege is PII is the "geolocation" disclosed by the third-party user and C.H.'s "viewing data", neither of which are described in the FAC. (*See* Dkt. 48 ¶¶ 11, 59, 66-69.) But the FAC does not, and cannot, allege that this information is capable, by itself, of (1) identifying her, (2) identifying video material, and (3) identifying the connection between the two (e.g., that she requested or obtained that specifically-identified video material). Even assuming it was alleged that the "geolocation" actually identified C.H., there are no allegations that any information identified specific videos or tied those specific videos as having been requested or obtained by C.H.

For any or all of these reasons, Plaintiffs' VPPA claim should be dismissed with prejudice as a matter of law.

## B.   Plaintiffs' IIED claim is properly dismissed

To state a claim for intentional infliction of emotion distress ("IIED") under Florida law,[5] Plaintiffs must establish that: (1) defendant's conduct was "intentional or reckless, *i.e.*, he intended his behavior when he knew or should have known that emotional distress would likely result;" (2) the conduct was "outrageous, *i.e.*, beyond all bounds of decency, atrocious and utterly intolerable

---

[5] The substantive law of the forum state, Florida, applies to Plaintiffs' state law claims absent an actual conflict of law. *See, e.g., Stone v. Wall*, 135 F.3d 1438, 1441 (11th Cir. 1998). There only appears to be a false conflict between the law of Florida and the law of New Jersey (Plaintiffs' state of residence) with respect to the state law claims alleged in the FAC, at least for purposes of the limited issues addressed in this Motion. *See Estate of Miller v. Thrifty Rent-A-Car Sys., Inc.*, 609 F. Supp. 2d 1235, 1244 (M.D. Fla. 2009) (a false conflict exists where, among other situations, the laws of the states are the same or different but would produce the same outcome).

in a civilized community;" and (3) the conduct caused severe emotional distress. *State Farm Mut. Auto. Ins. Co. v. Novotny*, 657 So. 2d 1210, 1212 (Fla. Dist. Ct. App. 1995); *see also Buckley v. Trenton Sav. Fund Soc'y*, 544 A.2d 857, 863 (N.J. 1988). But an IIED claim "will lie only where the defendant's conduct is so outrageous in character and so extreme in degree as to go beyond the bounds of decency and to be deemed utterly intolerable in a civilized society." *State Farm*, 657 So. 2d at 1212; *see also Buckley*, 544 A.2d at 863. Whether Plaintiffs have met this exceedingly high standard is for the Court to decide as a matter of law. *Hendricks v. Rambosk*, No. 2:10-cv-526-FtM-29DNF, 2011 U.S. Dist. LEXIS 40608, *11 (M.D. Fla. Apr. 14, 2011); *Buckley*, 544 A.2d at 864. Here, Plaintiffs allege that the "outrageous conduct" of Omegle was its alleged failure to prevent children from using its website and to monitor the site "to ensure that its users were not being sexually abused, mistreated, or exploited[.]" (Dkt. 48 ¶ 116.) But this general allegation fails to state a plausible IIED claim.

First, there is no IIED claim where a party "does no more than pursue his legal rights in a permissible way, even if he knows his conduct will cause emotional distress to the plaintiff." *State Farm*, 657 So. 2d at 1212; *see also* RESTATEMENT (SECOND) OF TORTS § 46 cmt. g. But, as discussed above, Omegle has no obligation to monitor or police third-party users of its site. Stated differently, Omegle has the legal right to make decisions about monitoring its site and therefore its exercise of that right cannot give rise to an IIED claim.

Second, this alleged conduct does not rise to the "extremely high" level of outrageous conduct necessary for an IIED claim. Demonstrating the extreme

conduct necessary for an IIED claim, Florida courts have found insufficiently outrageous "even offensive and harmful conduct[] such as accusing someone of committing a felony or making explicit racial slurs." *Neely v. Wells Fargo Fin., Inc.*, No. 8:12-cv-542-T-33AEP, 2012 U.S. Dist. LEXIS 168669, *8 (M.D. Fla. Nov. 28, 2012); *see also Griffin v. Tops Appliance City, Inc.*, 766 A.2d 292, 296-97 (N.J. Super. Ct. App. Div. 2001) (New Jersey courts have found the "elevated threshold" for outrageous conduct "only in extreme cases"). The alleged conduct by Omegle is no different in kind than any other social networking website or app that offers users the means to communicate with one another in real time, including Facebook, Twitter, Discord, WhatsApp, Zoom, Microsoft Teams and many others. Therefore, Omegle's alleged conduct is not out of the norm and cannot be considered so "outrageous" or "extreme" as to permit liability for IIED.

Therefore, Plaintiffs fail to state a claim for IIED as a matter of law.

## C.     The intrusion upon seclusion claim fails to state a plausible claim

An intrusion upon seclusion claim requires three elements: (1) "a private quarter"; (2) "some physical or electronic intrusion into that private quarter"; and (3) "the intrusion must be highly offensive to a reasonable person." *Stasiak v. Kingswood Co-op, Inc.*, No. 8:11-cv-1828-T-33MAP, 2012 U.S. Dist. LEXIS 20609, *5 (M.D. Fla. Feb. 17, 2012); *see also Friedman v. Martinez*, 231 A.3d 719, 722 (N.J. 2020). As to the third element, Florida courts have incorporated the outrageousness standard of IIED claims. *Stasiak*, 2012 U.S. Dist. LEXIS 20609 at *6; *compare Friedman*, 231 A.3d at 729 (New Jersey courts require the intrusion to be "highly offensive"). Here, the FAC vaguely alleges that C.H.'s "[PII] and

viewing data" were "surreptitious[ly] collect[ed] and track[ed]," and that Omegle purportedly engaged in "surreptitious highly-refined tracking of its website's users through video." (Dkt. 48 ¶¶ 96-97.) But these vague allegations, which omit any actual facts, do not state a plausible claim for intrusion.

First, Plaintiffs' intrusion claim cannot be based simply on C.H.'s use of her webcam in the real-time chat with her fellow users. Although Plaintiffs attempt to paint this as a case of Omegle being a "voyeur" surreptitiously commandeering C.H.'s webcam to observe her without her knowledge (*see* Dkt. 48 ¶ 95), that is manifestly not the case. C.H. elected to engage in video chats with other users, which necessarily required use of a webcam.

Second, the FAC's vague allegations fail to either establish an objectively reasonable expectation of privacy or demonstrate that the alleged intrusion would be highly offensive or outrageous to a reasonable person. The FAC fails to allege that Omegle collected any information that in fact identified C.H. or her "viewing data." It also fails to allege any facts to explain how Omegle "tracked" C.H. "through video." (Dkt. 48 ¶ 97.) And to the extent Plaintiffs contend the intrusion was any screenshots or video captured by the third-party user, that alleged intrusion was committed by the user, not Omegle. Finally, to the extent Plaintiffs rely on the alleged collection of C.H.'s "geolocation," such collection is not sufficiently offensive to support an intrusion claim.

Courts have rejected such intrusion claims alleging the collection of much more specific information than the unspecified "geolocation" or "viewing data" Plaintiffs allege. For example, in *In re Nickelodeon*, the plaintiffs alleged an

intrusion claim against Viacom and Google for the use of cookies placed on the computers of users who visit their websites. Plaintiffs alleged that the cookies collected information about their children and tracked their web browsing and video viewing activities. *In re Nickelodeon*, 827 F.3d at 269. As to Google, the court found that the use of tracking cookies was not "sufficiently offensive, standing alone, to survive a motion to dismiss."[6] *Id.* at 294-95. Similarly, in *Manigault-Johnson v. Google, LLC*, the court rejected an intrusion claim based on the alleged collection of children's PII. No. 2:18-cv-1032-BHH, 2019 U.S. Dist. LEXIS 59892 (D.S.C. Mar. 31, 2019). Defendants had collected PII from children under 13 who viewed videos on their apps and websites without parental notice and consent. *Id.* at *14. The court concluded that this was not "sufficiently offensive conduct" to state an intrusion claim. *Id.* at *15-18; *see also Popa v. Harriet Carter Gifts, Inc.*, 426 F. Supp. 3d 108, 112, 122-23 (W.D. Pa. 2019) (website's collection of user's name, residential and email addresses, keystrokes and mouse clicks, not sufficiently outrageous conduct to state an intrusion claim).

Similarly, here, Plaintiffs' allegation that Omegle collected C.H.'s "geolocation" or "viewing data" fails to allege the type of highly offensive conduct required for an intrusion claim. Thus, this claim should be dismissed.

### D.   Plaintiffs fail to state a claim for negligence as a matter of law

The elements of a negligence claim are familiar: "1) the existence of a duty recognized by law; 2) failure to perform that duty; and 3) injury or damage to the

---

[6] As to Viacom, the court reached a different conclusion because of the "duplicitous tactics" it used in collecting the information. *Id.* at 295.

plaintiff proximately caused by such failure." *Action Sec. Serv., Inc. v. Am. Online, Inc.*, No. 6:03-cv-1170-Orl-22DAB, 2005 U.S. Dist. LEXIS 50842, *20 (M.D. Fla. May 27, 2005); *see also Jersey Cent. Power & Light Co. v. Melcar Util. Co.*, 59 A.3d 561, 571 (N.J. 2013). The existence of a duty is a threshold legal requirement and a question of law for the court. *Virgilio v. Ryland Group, Inc.*, 680 F.3d 1329, 1339 (11th Cir. 2012); *see also Carvalho v. Toll Bros. & Developers*, 675 A.2d 209, 212 (N.J. 1996). Here, Plaintiffs allege variously that Omegle owed "C.H. and the general public" (1) "a duty to use ordinary care in designing, maintaining, and distributing its products and services to children", (2) "a duty of care to provide a safe online community," and (3) "an ongoing, non-delegable duty to continue to monitor, supervise, inspect, and assess the use of service and application [sic] to prevent the mistreatment of its users." (Dkt. 48 ¶¶ 104, 106, 108.)

Although foreseeability is an important component of the determination whether a duty exists, public policy considerations can also play a role. *See e.g., Estate of Desir ex rel. Estiverne v. Vertus*, 69 A.3d 1247, 1256 (N.J. 2013) (noting that "because imposing a duty based on foreseeability alone could result in virtually unbounded liability," New Jersey courts have "been careful to require that the analysis be tempered by broader considerations of fairness and public policy"); *Biglen v. Fla. Power & Light Co.*, 910 So. 2d 405, 409 (Fla. Dist. Ct. App. 2005) ("Finding that a legal duty exists in a negligence case involves the public policy decision that a defendant should bear a given loss, as opposed to distributing the loss among the general public.") (internal quotation marks omitted).

Here, even assuming Plaintiffs could establish the foreseeability of harm,

other considerations weigh heavily against imposing a duty of care upon Omegle to be the guarantor of the safety of the users of its website against harm perpetrated by their fellow users. For example, the relationship between Omegle and C.H. is at best fleeting—C.H. used the Omegle website only a single time, she was not required to register in order to use the site, nor was she required to make any payment to Omegle. In short, C.H.'s "relationship" with Omegle was no more substantial than her "relationship" with any other website she may visit. Fairness and public policy counsel against imposing a duty of care under these circumstances. A number of cases have declined to impose such a duty on websites that facilitate users' communications. For example, in *Dyroff v. Ultimate Software Group, Inc.*, the plaintiff alleged that a website had a duty to warn her son who died from an overdose of fentanyl-laced heroin purchased from a dealer he met on the website. No. 17-cv-05359-LB, 2017 U.S. Dist. LEXIS 194524, *1, 30 (N.D. Cal. Nov. 26, 2017). The district court found that there was no special relationship between a website and its users that would support imposing a duty to warn and no other ground to impose an ordinary duty of care. *Id.* at *36-40. The Ninth Circuit affirmed that decision, noting that "[n]o website could function if a duty of care was created when a website facilitates communication, in a content-neutral fashion, of its users' content." *Dyroff*, 934 F.3d at 1101.

Similarly, in *Doe No. 14 v. Internet Brands, Inc.*, the defendant offered a website on which aspiring models could post profiles. No. CV 12-3626-JFW (PJWx), 2016 U.S. Dist. LEXIS 192144, *1-2 (C.D. Cal. Nov. 14, 2016). Two individuals used the website to identify targets for a scheme under which they

would pose as talent scouts and lure the models to a fake audition where they were drugged and assaulted. *Id.* at *2. Defendant learned that these individuals were using the website to identify targets and the plaintiff subsequently became a victim of it. *Id.* at *2, 4. Plaintiff sued the site alleging a negligent failure to warn. But the court dismissed the claim, finding that the site had no duty to warn either the plaintiff or its users generally about the risk of the perpetrators' scheme. *Id.* at *13-14 (finding "no exceptional reason to depart from the general common law rule that one owes no duty to control the conduct of another, nor to warn those endangered by such conduct") (internal quotation marks omitted).

Imposing a duty of care on Omegle—much less the impossible duty of guaranteeing website users' safety—would be both ineffectual and unjust. No website that facilitates the communications of its users—including all social networking sites—could function if such a duty were imposed. Thus, because no duty of care exists, Plaintiffs' negligence claim fails as a matter of law.

### E.      The public nuisance claim is implausible and should be dismissed

In two paragraphs containing no factual allegations, Plaintiffs claim that "Omegle created and developed a public nuisance Omegle.com which violates public rights, and subverts public order, decency, and morals [and] inconveniences and damages the general public, including Plaintiff [sic]." (Dkt. 48 ¶¶ 129-30.) But such statements are nothing more than "naked assertion[s] devoid of further factual enhancement" that are insufficient to plausibly state any claim. *Iqbal*, 556 U.S. at 678.

"[T]he tort of public nuisance fundamentally involves the vindication of a

right common to the public." *In re Lead Paint Litig.*, 924 A.2d 484, 496 (N.J. 2007)

(citing RESTATEMENT § 821B). Critical to such a claim is "some interference with a

public right", which is a right "common to all members of the general public."

RESTATEMENT § 821B, cmt. g ("It is collective in nature and not like the individual

right that everyone has not to be assaulted or defamed or defrauded or

negligently injured."). But Plaintiffs fail to plausibly allege that Omegle's online

chat service implicates a "public right" that is "common to all members of the

general public." Their conclusory statements do not "raise a right to relief above

the speculative level" and are insufficient to state a claim for relief. *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 555 (2007).

## F.      There is no cause of action for ratification/vicarious liability

Plaintiffs add a new claim for "ratification/vicarious liability" in which

they allege that the "Omegle defendants [sic] are vicariously liable for the

conduct of the 'cappers' because they ratified their conduct, knowingly received

the benefits of said conduct [and] created, developed, and maintained a forum to

entice, encourage and enable the sharing of such conduct." (Dkt. 48 ¶¶ 125-26.)

But "ratification" and "vicarious liability" "are not independent causes of action;

instead, they are theories of liability for other claims." *Ceithami v. Celebrity*

*Cruises, Inc.*, 207 F. Supp. 3d 1345, 1349 (S.D. Fla. 2016); *see also Williams v. Verizon*

*N.J., Inc.*, No. 2:19-09350-KM-MAH, 2020 U.S. Dist. LEXIS 43528, *32 (D.N.J. Mar.

12, 2020). Thus, this "claim" should be dismissed.

## IV.   Leave to Amend Should Not Be Granted

Notwithstanding the general liberal standard for pleading amendments,

courts routinely deny leave to amend when CDA 230 bars the claims on the ground that amendment would be futile. *See, e.g.*, *Kik*, 482 F. Supp. 3d at 1251-52 (finding that amendment would be futile as CDA 230 would also bar plaintiff's proposed new claims); *La'Tiejira*, 272 F. Supp. 3d at 984, 994 (dismissing complaint with prejudice based on CDA 230); *Saponaro*, 93 F. Supp. 3d at 322 (dismissing complaint with prejudice based in part on CDA 230). This case is no different. Plaintiffs' claims are largely, if not entirely, barred by CDA 230. And even assuming that the VPPA claim is not barred by CDA 230 (a point Omegle does not concede), any attempt to amend that claim would be manifestly futile as the statute simply does not apply to Omegle. Additionally, most of the deficiencies in Plaintiffs' claims were described in Omegle's motion to dismiss Plaintiffs' original complaint. Despite having the opportunity to address those deficiencies in their FAC, Plaintiffs failed to do so, strongly suggesting that the deficiencies cannot be cured by amendment. As a result, because any proposed amendment would be futile, Plaintiffs' FAC should be dismissed with prejudice in its entirety. *Coventry First, LLC v. McCarty*, 605 F.3d 865, 870 (11th Cir. 2010) (futility of amendment is a proper ground to dismiss a complaint with prejudice); *United States ex rel. Higgins v. HealthSouth Corp.*, No. 8:14-cv-2769-T-33AEP, 2019 U.S. Dist. LEXIS 146351, *15-16 (M.D. Fla. Aug. 28, 2019).

## CONCLUSION

Therefore, for the reasons stated herein, Omegle respectfully requests that Plaintiffs' FAC be dismissed in its entirety and without leave to amend.

## <u>LOCAL RULE 3.01(g) CERTIFICATION</u>

Pursuant to Local Rule 3.01(g), counsel for Defendant Omegle.com, LLC represents that they have conferred with counsel for Plaintiffs. However, the parties were unable to reach agreement with respect to the relief requested in this Motion.

DATED:   June 8, 2021           Respectfully submitted,

FOCAL PLLC

By:   s/ *Stacia N. Lay*
 Stacia N. Lay, *Pro Hac Vice*
 Venkat Balasubramani, *Pro Hac Vice*
 900 1st Avenue S., Suite 201
 Seattle, Washington 98134
 Telephone: (206) 529-4827
 stacia@focallaw.com
 venkat@focallaw.com

THOMAS & LoCICERO PL

By:   s/ *James J. McGuire*
 James J. McGuire (FBN 187798)
 601 South Boulevard
 Tampa, Florida 33606
 Telephone: (813) 984-3060
 jmcguire@tlolawfirm.com

 Daniela B. Abratt (FBN 118053)
 915 Middle River Drive, Suite 309
 Fort Lauderdale, Florida 33304
 Telephone: (954) 703-3416
 dabratt@tlolawfirm.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on June 8, 2021, a true and correct copy of the foregoing will be served electronically through the Clerk of Court's CM/ECF filing system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail, postage prepaid, to any parties that do not participate in the CM/ECF filing system.

s/ *Stacia N. Lay*
Stacia N. Lay