# RECORD NO. 22-10338

In The

# United States Court Of Appeals
# For The Eleventh Circuit

**M.H.; J.H.,**
**On behalf of their minor child, C.H.,**

*Plaintiffs - Appellants,*

v.

## OMEGLE.COM LLC,

*Defendant - Appellee.*

### ON APPEAL FROM THE MIDDLE DISTRICT OF FLORIDA

———————————

### APPELLANTS' APPENDIX
### VOLUME II OF II

———————————

| | |
|---|---|
| James R. Marsh * | Hillary Nappi |
| Jennifer Freeman | Frank R. Schirripa |
| Margaret E. Mabie | HACH ROSE SCHIRRIPA & |
| MARSH LAW FIRM, PLLC |   CHEVERIE, LLP |
| 31 Hudson Yards Fl 11 | 112 Madison Ave Fl 10 |
| New York, NY 10001 | New York, NY 10016 |
| 212-372-3030 | 212-213-8311 |
| *Counsel for Appellants* | *Counsel for Appellants* |

*Gibson*Moore Appellate Services, LLC
206 East Cary Street ♦ P.O. Box 1406 (23218) ♦ Richmond, VA 23219
(804) 249-7770 ♦ www.gibsonmoore.net

## TABLE OF CONTENTS
### Volume I of II

TAB:

Docket Entries. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . DE

**M.H. and J.H., on Behalf of Their Minor Child, C.H.'s
Complaint**
        filed August 25, 2020 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**Defendant Omegle.com, LLC's
Motion to Dismiss Complaint**
        filed November 20, 2020.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**Plaintiffs' Memorandum in Opposition to
Motion to Dismiss Complaint,
With Attachments**
        filed January 5, 2020. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        Attachments:

    1.    **Declaration of Hillary Nappi**
                sworn January 5, 2020 [DE15-1]

    2.    **Ex. A: Stipulation Order**
                dated March 27, 2019 [DE15-21]

**Defendant Reply in Support of
Motion to Dismiss Complaint Pursuant to
Fed. R. Civ. P. 12(b) & 12(b)(6)**
        filed January 12, 2020. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**Judge Kevin McNulty's Opinion**
        filed March 19, 2021. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Order
Granting Motion to Dismiss will be Stayed for 14 Days
        filed March 19, 2020. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Plaintiffs' Stipulation for Transfer of Venue to the
U.S. District Court for the Middle District of Florida
        filed April 1, 2021. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Plaintiffs' Stipulation for Transfer of Venue to the
United States District Court for the Middle District of Florida
        filed April 5, 2021. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Case Transfer in from the District of New Jersey
        filed April 9, 2021. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Endorsed Order
Transferring Case from District of New Jersey to the
Tampa Division of Florida
        filed April 9, 2021. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Defendant's Response to Court Order
        filed April 16, 2021. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

        Attachment:

        1.    Declaration of Leif K-Brooks in Support of
              Defendant's Response to Court's Order [DE26-1]

Endorsed Order
Case Transferred Plaintiff's Directed to file an
Amended Complaint
        filed April 16, 2021. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

**Amended Complaint**

     **filed May 17, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **48**

**Defendant's Motion to Dismiss the**

**Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)**

     **filed June 8, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **61**

# TABLE OF CONTENTS
## Volume II of II

TAB:

**Order**
**That Plaintiffs may file a Second Amended Complaint**
     **filed September 15, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **74**

**Second Amended Complaint**
     **filed September 29, 2021** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **75**

**Defendant's Motion to Dismiss Second Amended Complaint**
**for Failure to State a Claim**
     **filed October 13, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **78**

**Plaintiff's Memorandum in Opposition to Motion to Dismiss**
     **filed November 3, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **81**

**Defendant's Reply Memorandum in Support of Motion to**
**Dismiss the Second Amended Complaint**
**Pursuant to Fed. R. Civ. P. 12(b)(6),**
**With Appendix A,**
     **filed November 15, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **84**

     **Appendix A: Order dated October 26, 2021 [DE84-1]**

**Endorsed Order**
**Granting Defendant's Motion to**
**Dismiss Second Amended Complaint**
     **filed January 10, 2021.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **90**

**Plaintiffs' Notice of Appeal**
     **filed January 28, 2022.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **91**

**CERTIFICATE OF FILING AND SERVICE**

# TAB 74

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

M. H. and J.H.,
on behalf of their minor child,
C.H.,

      Plaintiff,

v.                          Case No. 8:21-cv-814-VMC-TGW

OMEGLE.COM LLC,

      Defendant.
_____/

**ORDER**

This matter comes before the Court sua sponte. For the reasons set forth below, the amended complaint (Doc. # 48) is dismissed as a shotgun pleading and the Motion to Dismiss the Amended Complaint (Doc. # 61) is denied as moot.

## I.  **Background**

Plaintiffs M. H. and J.H. initiated this action on behalf of their minor child C.H. on August 25, 2020. (Doc. # 1). After the case was transferred to this Court, Plaintiffs filed an amended complaint against Defendant Omegle.com LLC, asserting claims for: violation of 18 U.S.C. § 2255(a) (Count I), violation of 18 U.S.C. §§ 1591 and 1595 (Count II), violation of the Video Privacy Protection Act (Count III), intrusion upon seclusion (Count IV), negligence (Count V), intentional infliction of emotional distress (Count VI),

1

ratification/vicarious liability (Count VII), and public nuisance (Count VIII). (Doc. # 48). The central allegation of the amended complaint is that Omegele, a "website that enables individuals to communicate with random individuals across the world anonymously via text and video," knew of and profited from its website used by child predators to exploit children, including Plaintiffs' minor child. (Id. at 2-16).

Omegele has moved to dismiss the amended complaint on the merits. (Doc. # 61). However, because the Court determines that the amended complaint is a shotgun complaint, the amended complaint must be dismissed on that basis with leave to amend.

## II.  **Discussion**

The Court has an independent obligation to dismiss a shotgun pleading. "If, in the face of a shotgun complaint, the defendant does not move the district court to require a more definite statement, the court, in the exercise of its inherent power, must intervene sua sponte and order a repleader." McWhorter v. Miller, Einhouse, Rymer & Boyd, Inc., No. 6:08-cv-1978-GAP-KRS, 2009 WL 92846, at *2 (M.D. Fla. Jan. 14, 2009) (emphasis omitted).

The Eleventh Circuit has "identified four rough types or categories of shotgun pleadings": (1) "a complaint containing multiple counts where each count adopts the allegations of

2

all preceding counts"; (2) a complaint that is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; (3) a complaint that does "not separat[e] into a different count each cause of action or claim for relief"; and (4) a complaint that "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1322-23 (11th Cir. 2015). "The unifying characteristic of all types of shotgun pleadings is that they fail to . . . give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." Id. at 1323.

Here, the amended complaint is a shotgun pleading because it falls within the first category identified in Weiland. Counts II, III, IV, V, VI, VII, and VIII roll many if not all of the preceding allegations, including allegations contained in previous counts, into each count. (Doc. # 48 at ¶¶ 76, 86, 94, 103, 115, 123, 128). For example, Count VIII incorporates all the preceding paragraphs of the amended complaint, including the prior seven counts. (Id. at ¶ 128). This is impermissible. See Weiland, 792 F.3d at 1322

3

(identifying "a complaint containing multiple counts where each count adopts the allegations of all preceding counts" as a shotgun complaint).

Accordingly, the complaint is dismissed as a shotgun pleading. See Arrington v. Green, 757 F. App'x 796, 797 (11th Cir. 2018) (per curiam) (affirming the district court's sua sponte dismissal of a shotgun pleading). However, the Court grants leave to amend. See Madak v. Nocco, No. 8:18-cv-2665-VMC-AEP, 2018 WL 6472337, at *3 (M.D. Fla. Dec. 10, 2018) ("Because the [complaint] is a shotgun complaint, repleader is necessary[.]").

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1)  The amended complaint (Doc. # 48) is sua sponte **DISMISSED** as a shotgun pleading.

(2)  Plaintiffs may file a second amended complaint that is not a shotgun pleading by **September 29, 2021.**

(3)  As the Court has dismissed the amended complaint as a shotgun pleading, Defendant Omegle.com LLC's Motion to Dismiss the Amended Complaint (Doc. # 61) is **DENIED as moot.**

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 15th day of September, 2021.

4

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

# TAB 75

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

M.H. and J.H. on behalf of their
minor child C.H.

Civil Action No. 8:21-cv-00814

**SECOND
AMENDED COMPLAINT**

Plaintiffs,

v.

OMEGLE.COM LLC

Defendant.

**Jury Trial Demanded**

Plaintiffs M.H. and J.H., on behalf of their minor child C.H., by and through their attorneys, Hach Rose Schirripa & Cheverie LLP and Marsh Law Firm PLLC, bring this action for damages and other legal and equitable relief against Omegle.com LLC ("Omegle" or the "Company"). Plaintiffs allege as follows:

### INTRODUCTION

1.      Defendant Omegle operates a website at https://www.omegle.com/ (hereinafter, "Omegle.com") which explicitly invites users to "Talk to strangers!"

2.      C.H. is an 11-year-old girl who used Omegle's website where she met a stranger who sexually victimized and exploited her.

3.      The abuse C.H. suffered was preventable, predictable, and only occurred because Omegle created a venue which enabled, encouraged, and enticed children to be exploited by strangers online.

4.      Omegle knowingly received value when traffic from "cappers"[1] flooded its website to commit online child exploitation.

5.      Omegle knew this was occurring and therefore enabled, encouraged, and enticed online child exploitation.

6.      Omegle's unfair and deceptive business practices have seriously impacted children across the country resulting in children being stalked, sexually assaulted, abused, and exploited by strangers.

7.      Plaintiffs bring claims under federal and state law to obtain redress.

## PARTIES

8.      Plaintiffs M.H. and J.H. reside in Morris County, New Jersey.

9.      Plaintiffs M.H. and J.H. are C.H.'s parents.

10.     C.H. was born in 2009 and all times relevant to this action was eleven years old.

11.     Omegle failed to request verifiable parental consent to collect, disclose, or use C.H.'s personally identifiable information including C.H.'s geolocation. Neither M.H. nor J.H. ever received direct notice concerning the collection, use, and disclosure of C.H.'s data.

12.     Defendant Omegle.com LLC is a limited liability corporation registered in the State of Florida with its principal place of business located at 7901 4th Street N, Suite 300, St. Petersburg, Florida 33702.

---

[1] A "capper" is an individual who tricks kids into committing a sexual act over live stream while screen capturing or recording a video. *See* New Sextortion Tactics Reported to Cybertip.ca. (April 1, 2020). Retrieved May 17, 2021 from https://www.cybertip.ca/app/en/ctipalerts.

13.     Omegle has dramatically grown in popularity since it was founded in 2009 by Leif Brooks.

14.     The Omegle website, which typically gets millions of page views per day, experienced a drastic uptick of user activity during the COVID-19 pandemic.

## JURISDICTION AND VENUE

15.     Federal subject matter jurisdiction arises out of diversity of citizenship pursuant to 28 U.S.C. § 1332, since this is a civil action where the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs and is between citizens of different states.

16.     28 U.S.C. § 1367 provides supplemental jurisdiction for Plaintiffs' state law claims.

17.     Federal subject matter jurisdiction is also proper pursuant to 28 U.S.C. § 1331 because this is a civil action arising under 18 U.S.C. § 2255.

18.     Declaratory relief is proper under 28 U.S.C. §§ 2201 and 2202.

19.     Further, this Court has personal jurisdiction over the Defendant because Defendant regularly conducts business in this District and/or under the stream of commerce doctrine by causing its products and services to be disseminated in this District, including its website used by C.H.

20.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and (2) because (i) this is a civil action brought in the judicial district where the above-named Defendant resides and (ii) a substantial part of the events or omissions giving rise to the Plaintiffs' claims occurred in this judicial district.

## SUBSTANTIVE ALLEGATIONS

### *COPPA Prohibits the Collection of Children's Personally Identifiable Information Without Verifiable Parental Content*

21.     Recognizing the vulnerability of children in the internet age, in 1999 Congress enacted the Children's Online Privacy Act ("COPPA"). *See* 16 U.S.C. §§ 6501-6505. COPPA's express goal is to protect children's online privacy. Under COPPA, developers of child-focused apps and websites cannot lawfully obtain the personally identifiable information of children under 13 years of age without first obtaining verifiable consent from their parents.

22.     COPPA applies to any operator of a commercial website or online service that is directed to children and that: (a) collects, uses, and/or discloses personally identifiable information of children, or (b) on whose behalf such information is collected or maintained. Under COPPA, personally identifiable information is "collected or maintained on behalf of an operator… [t]he operator benefits by allowing another person to collect personally identifiable information directly from users of" an online service. 16 C.F.R. 312.2. Further, COPPA applies to any operator of a commercial website or online service that has actual knowledge that it collects, uses, and/or discloses personally identifiable information from children.

23.     Under COPPA, "personally identifiable information" includes information such as names, email addresses, and social security numbers. COPPA's broad definition of "personally identifiable information" is as follows: "individually identifiable information about an individual collected online," which includes (1) a first and last name; (2) a physical address including street name and name of a city

4

or town; (3) online contact information (separately defined as "an email address or any other substantially similar identifier that permits direct contact with a person online"); (4) a screen name or user name; (5) telephone number; (6) social security number; (7) a media file containing a child's image or voice; (8) geolocation information sufficient to identify street name and name of a city or town; (9) a "persistent identifier that can be used to recognize a user over time and across different Web sites or online services" (including but not limited to a customer number held in a cookie, an Internet Protocol (IP) address, a processor or device serial number, or unique device identifier´); and (10) any information concerning the child or the child's parents that the operator collects then combines with an identifier.

24.     In order to lawfully collect, use, or disclose personally identifiable information, COPPA requires that an operator meet specific requirements, including each of the following:

>   a.   Posting a privacy policy on its website or online service providing clear, understandable, and complete notice of its information practices, including what information the website operator collets from children online, how it uses such information, its disclosure practices for such information, and other specific disclosures as set forth in the Rule;
>
>   b.   Providing clear, understandable, and complete notice of its information practices, including specific disclosures, directly to parents; and

   c. Obtaining verifiable parental consent prior to collecting, using, and/or disclosing personally identifiable information from children.

25. Under COPPA, "[o]btaining verifiable consent means making any reasonable effort (taking into consideration available technology) to ensure that before personally identifiable information is collected from a child, a parent of the child…[r]eceives notice of the operator's personally identifiable information collection, use and disclosure practices; and [a]uthorizes any collection, use, and/or disclosure of the personally identifiable information." 16 C.F.R. 312.2.

26. The FTC recently clarified acceptable methods for obtaining verifiable parent consent, include:

   a. Providing a form for parents to sign and return;

   b. Requiring the use of a credit/card online payment that provides notification of each transaction;

   c. Connecting to trained personnel via video conference;

   d. Calling a staffed toll-free number;

   e. Asking knowledge based questions; or

   f. Verifying a photo-ID from the parent compared to a second photo using facial recognition technology.

### *Omegle is An Operator Under COPPA*

27. Omegle is an "operator" pursuant to COPPA. Specifically, COPPA defines an "operator," in pertinent part, as: "any person who operates a Web site

located on the Internet or an online service and who collects or maintains personally identifiable information from or about the users of or visitors to such Web site or online service, or on whose behalf such information is collected or maintained, or offers products or services for sale through that Web site or online service, where such Web site or online service is operated for commercial purposes involving commerce among the several States or with 1 or more foreign nations; in any territory of the United States or in the District of Columbia, or between any such territory and another such territory or any State or foreign nation; or between the District of Columbia and any State, territory, or foreign nation." 16 C.F.R. 312.2.

28.    Defendant operated its website entirely online. Indeed, without a connection to the internet, Plaintiff could never have accessed Omegle's service.

29.    In 1996, Congress passed the Communications Decency Act of 1996 ("CDA of 1996") which included Section 230 ("CDA 230").[2] Congress intended the CDA of 1996 to accomplish several things, including: (1) to promote the free exchange of information and ideas over the internet and (2) to encourage voluntary monitoring for offensive or obscene material.[3]

### *Omegle Violated FOSTA / SESTA*

30.    In 2018, in a direct response to online platforms knowingly allowing human trafficking to occur and both promoting and profiting from it, Congress passed

---

[2] 47 U.S.C. § 230.

[3] The CDA does not immunize an interactive computer service provider that creates or develops the content at issue. *See e-ventures Worldwide, LLC v. Google, Inc., No. 214CV646FTMPAMCM, 2017 WL 2210029, at *3 (M.D. Fla. Feb. 8, 2017) citing Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, at 1162 (9th Cir. 2008).

a bill known as Fight Online Sex Trafficking Act ("FOSTA") and Stop Enabling Sex Traffickers Act ("SESTA") (collectively, "FOSTA/SESTA"). As part of this amendment to CDA 230, Congress stated "It is the sense of Congress that –

(1)     Section 230 of the Communications Act of 1934 (47 U.S.C. § 230; commonly known as the 'Communications Decency Act of 1996') was never intended to provide legal protection to websites that unlawfully promote and facilitate prostitution and websites that facilitate traffickers in advertising the sale of unlawful sex acts with sex trafficking victims;

(2)     Websites that promote and facilitate prostitution have been reckless in allowing the sale of sex trafficking victims and have done nothing to prevent the trafficking of children and victims of force, fraud, and coercion; and

(3)     Clarification of such section is warranted to ensure that such section does not provide such protection to such websites.

31.    Defendant has benefited financially and received something of value, including increased web traffic, from participation in one or more sex trafficking ventures by allowing Omegle.com to become a safe haven and a refuge for child predators, sex abusers, human traffickers, and child pornographers.

32.    Omegle.com is a focused topic of discussion by child predators and child pornographers who trade and disseminate child sexual abuse material, "capping how-

-tos,"[4] tips for how to create and produce child sex abuse videos on Omegle.com, advice on how to share and distribute child sex abuse material with impunity, and other perverse pursuits.

### Omegle's Operations

33.    Omegle is a website that enables individuals to communicate with random individuals across the world anonymously via text and video.

34.    Specifically, individuals access Omegle.com using a webcam and microphone and Omegle matches them with another stranger. Omegle pairs users randomly and in some cases Omegle matches users according to similarities in conversations and subjects.

35.    The Omegle website designates users as "You" or "Stranger 1" or "Stranger 2."

36.    To access Omegle.com, a user simply clicks on "text" or "video" under the words "start chatting." The user is then immediately placed in a chat with a stranger.

37.    Omegle.com does not require any age verification or authentication. There is nothing preventing a minor under the age of thirteen from accessing the website.

---

[4] "Random girl comes on webcam to meet new people and is persuaded by random people (competing for points) to flash various body parts, not knowing that screen captures of video will surface on the world wide web within 30 seconds. The video will be traded on websites by hundreds of people and streamed. Videos are traded by collectors. Blackmailers get hold of the videos and information on the girls then hunt them and use the videos as leverage to get the girls under their control and command (e.g. forced to do sex shows). Groups of heroes or 'white knights' who may also be pedophiles run around trying to save the girls from the blackmailing pedophiles. The Cappers and heroes fight to add the girls to their own collection." Urban Dictionary, Definition 10 https://www.urbandictionary.com/define.php?term=Capping&page=2 (visited May 17, 2021).

38.     Omegle.com is vulnerable to hacking. As a result, a user can grab screenshots of previous conversations and then utilize that data to obtain another user's geographic location.

### Omegle's Infamy and Synonymy with Online Child Sexual Exploitation

39.     Since 2016, the use of Omegle's website by predators has become known to the public and to the Company itself.

40.     When vigilante activists became aware of Omegle's repeated use by child predators, they recorded videos of themselves attempting to catch these predators in the act.

41.     Further, Omegle has been mentioned in numerous criminal cases across the country after individuals were arrested for possessing and promoting child pornography. For example, in April 2016, Ammar Butaleb was arrested in Pittsburgh, Pennsylvania after he received, viewed, and downloaded child pornography through Omegle.[5] In December 2018, Robert Alexander Kusma of in Scranton, Pennsylvania was charged with the sexual assault of a minor under sixteen years of age after first meeting and grooming a girl on Omegle.[6] In April 2019, in the state of New Jersey, twenty-four sexual predators were arrested in what was dubbed "Operation Home Alone" for using social media platforms, including Omegle, to lure children for sex.[7] In February 2020, Dalton Matthew Bates was arrested in Kentucky

---

[5] *See* https://pittnews.com/article/106942/news/student-arrested-for-child-pornography/
[6] *See* https://www.ydr.com/story/news/crime/2018/12/18/scranton-man-accused-sexually-assaulting-york-county-girl-he-met-internet/2350851002/
[7] *See* https://www.foxnews.com/us/21-alleged-child-sexual-predators-arrested

on thousands of counts of child pornography possession across multiple social media platforms and applications including Omegle.[8] In July 2020 in Morris County, New Jersey, Robert Murphy pleaded guilty to endangering the welfare of a child after he tried to set up an in-person meeting for sex with an eleven-year-old girl he met on Omegle.[9]

42.   Upon information and belief, Omegle has been contacted by individuals representing these exploited children or law enforcement investigating crimes committed in these cases.

43.   The countless allegations involving Omegle by those who target children for sexual abuse, pornography, and exploitation, the resulting media coverage, and the arrests and convictions of predators using Omegle.com to exploit victims indicates that Omegle has full knowledge of the extent to which its website is used to sexually target, groom, exploit, and abuse children like C.H.

44.   Omegle advertises itself as a place to "Talk to strangers!"

45.   Omegle designed Omegle.com to encourage users to "talk to strangers" and made this aspect of Omegle.com freely available and unrestricted to child users.

46.   Omegle manufactured a product which caters to child predators and receives value for the intended use of Omegle.com.

---

[8] *See* https://www.themountaineagle.com/articles/band-teacher-held-in-porn-case-talked-about-temptation/
[9] *See* https://www.dailyrecord.com/story/news/2020/04/29/complaint-nj-shore-teen-drove-morris-plains-sex-girl/3047222001/

47.    Omegle manufactured a defective product that presents an unreasonable risk that child users will become victims of child exploitation and online child sex abuse.

48.    Omegle knowingly receives value for the ongoing online sexual exploitation of children on Omegle.com.

49.    Omegle knowingly receives value for the use of their product as a tool to abuse unsuspecting children on Omegle.com.

50.    The disclaimers on Omegle.com indicate that Omegle knows about the improper, illegal, and illicit use of its website, including by children.

51.    Omegle does not provide any guidance to parents who are trying to monitor their children's use of their website. The warnings on Omegle.com are nothing but boilerplate window dressing.

52.    Further, Omegle does nothing to properly verify users' ages or prevent the use of Omegle.com by minors.

53.    As a result of these failures, hundreds of thousands of minors who access Omegle.com are subject to sexual exploitation, child pornography and online abuse.

### C.H. Accesses Omegle.com and Becomes a Victim of Child Sexual Exploitation

54.    During the COVID-19 pandemic, C.H. was forced to attend school remotely and as such was provided with a Chromebook by her school.

55.    At all relevant times, Omegle knew that child predators or "cappers" used Omegle.com to exploit children to create child sex abuse material and other

illicit and illegal content—including through screen-captured videos—and that this content was later shared on Omegle and other internet platforms.

56.     At all relevant times, Omegle knowingly received value for the use of their product as a tool for child exploitation, child pornography, and child sex abuse.

57.     On or about March 31, 2020, C.H. used her Chromebook to access the Omegle.com. C.H. had never used Omegle's website before. C.H. was first paired to chat with a group of minors who appeared to be older than C.H. C.H. ended the chat with the group of minors and was placed in another chat.

58.     Upon entering the second chat, C.H. encountered a black screen. Shortly thereafter C.H. began to see text being typed on the black screen.

59.     This unknown user ("John") informed C.H. that he knew where C.H. lived and provided C.H. with her geolocation. John also told C.H. that he knew that that there were cell phones and computers in C.H.'s house which he threatened to hack.

60.     Scared and confused, C.H. pleaded with John to leave her alone.

61.     John then instructed C.H. to remove all her clothing—including her underwear—and to touch, fondle, and masturbate her naked genitals in front of the camera. C.H. pleaded with John and offered gift cards to him in lieu of complying with his demands. John became more forceful with C.H. and demanded that she remove her clothing and display her genitals. Eventually, C.H. complied with John's demands, removed all her clothing, and touched herself sexually in accordance with the instructions she received from this stranger.

62.     John recorded C.H.'s actions, forever memorializing her child sex abuse performance.

63.     At all relevant times, Omegle knew of and collected profits, in the form of increased web traffic and advertising revenue, from fact that child predators like John—who are known to Omegle as "cappers"—took explicit screen grabs of children like C.H. and shared them online.

64.     In early 2020, "cappers" such as John flocked to Omegle to take advantage of the unprecedented increase in opportunities to engage with unsupervised children online.

65.     Immediately after this incident, C.H. notified her parents about what occurred and M.H. and J.H. reported the incident to law enforcement.

### *Omegle Engaged in the Foregoing Acts Without Obtaining Verifiable Parental Consent*

66.     Omegle enabled the collection, use, and disclosure of C.H.'s personally identifiable information and viewing C.H.'s data without notifying her parents.

67.     Omegle never obtained verifiable parental consent to collect, use, or disclose C.H.'s personally identifiable information or viewing data.

68.     C.H. never knew that her personally identifiable information and viewing data could be collected, disclosed, or used, because at all times Omegle failed to provide C.H's parents any of the required disclosures, never sought verifiable parental consent, and never provided any mechanism by which C.H's parents could provide verifiable consent.

69.     Omegle's unlawful collection for commercial gain of C.H.'s personally identifiable information and viewing information exposed C.H. and others like her to online child predators.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### VIOLATION OF 18 U.S.C. § 2255(a)

70.     In support of Plaintiffs' assertions that Omegle.com knowingly received value for their ongoing business practices that allow their website to become a means of online child exploitation despite the risk to children like C.H., Plaintiffs repeat, re–allege, and incorporate by reference paragraphs ¶¶ 31, 32, 33, 34, 35, 37, and 38, as if fully set forth herein.

71.     In support of Plaintiffs' assertions that Omegle.com knowingly advertises their site to children as a means to "Talk to Strangers!" despite their knowledge of multiple child pornography related crimes committed against children like C.H. using Omegle.com, Plaintiffs repeat, re–allege, and incorporate by reference paragraphs ¶¶ 41, 42, 43, 44, and 46 as if fully set forth herein.

72.     In support of Plaintiffs' assertions that Omegle.com knowingly paired C.H. with a stranger knowing that C.H. was a minor child at risk of becoming a victim of child pornography and of Omegle-based predators commonly called "cappers," and that Omegle.com knowingly possessed child pornography of C.H. that was produced on Omegle.com, Plaintiffs repeat, re–allege, and incorporate by reference paragraphs ¶¶ 50, 55, 56, 58, 59, 61, 62, 63 and 65, as if fully set forth herein.

73.     18 U.S.C. § 2255, entitled "Civil Remedy for Personal Injuries," provides that any person who is a victim of a violation of 18 U.S.C. § 2252A(a)(5)(B) and who suffers personal injury as a result of such violation shall recover the actual damages such person sustains or liquidated damages in the amount of $150,000 per victim, and reasonable attorney's fees.

74.     Omegle violated the federal child pornography crime found at 18 U.S.C. § 2252A(a)(5)(B) which provides that any person commits a federal crime who:

> knowingly possesses, or knowingly accesses with intent to view, any […] material that contains an image of child pornography that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce […] or that was produced using materials […] affecting interstate or foreign commerce by any means, including by computer.

75.     C.H. suffered personal injury as a result of each of the Defendants' violation of 18 U.S.C. § 2252A(a)(5)(B).

76.     Plaintiffs intend to prove C.H.'s actual damages as a result of each of Omegle's conduct.

77.     At minimum, Plaintiffs intend to seek liquidated damages in the amount of $150,000 against Omegle, as well as the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred, prejudgment and post-judgment interest, and such other relief as the Court deems appropriate.

## SECOND CLAIM FOR RELIEF
## VIOLATION OF 18 U.S.C. §§ 1591 AND 1595

78.     In support of Plaintiffs' assertions that Omegle.com knowingly received value for their ongoing business practices that allow their website to become a means of online child exploitation despite the risk to children like C.H., Plaintiffs repeat, re–allege, and incorporate by reference paragraphs ¶¶ 31, 32, 33, 34, 35, 37, and 38, as if fully set forth herein.

79.     In support of Plaintiffs' assertions that Omegle.com knowingly advertises their site to children as a means to "Talk to Strangers!" despite their knowledge of multiple child pornography related crimes committed against children like C.H. using Omegle.com, and that Omegle.com knowingly participates in a sex trafficking venture by allowing "cappers" to use Omegle.com to prey on unsuspecting children online, Plaintiffs repeat, re–allege, and incorporate by reference paragraphs ¶¶ 41, 42, 43, 44, 46, 47, 48 and 49 as if fully set forth herein.

80.     In support of Plaintiffs' assertions that Omegle.com knowingly paired C.H. with a stranger knowing that C.H. was a minor child at risk of becoming a victim of child exploitation and of Omegle-based predators commonly called "cappers," Plaintiffs repeat, re–allege, and incorporate by reference paragraphs ¶¶ 50, 55, 56, 58, 59, 61, 62, 63 and 65, as if fully set forth herein.

81.     Defendant knowingly used the instrumentalities and channels of interstate and foreign commerce to facilitate violations of 18 U.S.C. §§ 1591(a)(1) and 1595(a) occurring within the territorial jurisdiction of the United States.

17

82.     Defendant's conduct was in or affected interstate and/or foreign commerce.

83.     Defendant knowingly benefited from participation in what it knew or should have known was a sex trafficking venture in violation of 18 U.S.C. §§ 1591(a)(2) and 1595(a).

84.     Defendant knowingly benefited from, and/or received value for participation in the venture in which Defendant knew C.H. would be forced to engage in commercial sexual acts while under the age of 18 years old.

85.     In an interstate and international commercial effort, Omegle knowingly recruited, enticed, harbored, obtained, advertised, maintained, patronized, and/or solicited their users to create images of commercial sex acts that C.H. was forced to engage in while she was under the age of 18 years old.

86.     Defendant's employees and/or agents had actual knowledge that they were facilitating and participating in a scheme to profit from the commercial sex acts of minor children, including C.H.

87.     Defendant knowingly benefited financially from the sex-trafficking venture and the exploitation of C.H.

88.     Defendant's conduct has caused C.H. serious harm including, without limitation, physical, psychological, financial, and reputational harm that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to

continue performing commercial sexual activity, in order to avoid incurring that harm.

89.    Omegle's conduct has caused C.H. serious harm including, without limitation, physical, psychological, financial, and reputational harm.

## THIRD CLAIM FOR RELIEF
### VIOLATION OF THE VIDEO PRIVACY PROTECTION ACT 18 U.S.C. § 2710

90.    In support of Plaintiffs' assertions that COPPA forbids Omegle.com from disclosing personally identifiably information of C.H., Plaintiffs repeat, re–allege, and incorporate by reference paragraphs ¶¶ 21, 22, 23, 24, 25, and 26, as if fully set forth herein.

91.    In support of Plaintiffs' assertions that Omegle.com is an operator under COPPA, Plaintiffs repeat, re–allege, and incorporate by reference paragraphs ¶¶ 27, 28, and 29 as if fully set forth herein.

92.    In support of Plaintiffs' assertions that Omegle.com exposes children's geolocations, Plaintiffs repeat, re–allege, and incorporate by reference paragraph ¶ 38 as if fully set forth herein.

93.    In support of Plaintiffs assertions that Omegle.com does not verify the age of their users nor does it prevent children from using Omegle.com, Plaintiffs repeat, re–allege, and incorporate by reference paragraph ¶ 52 as if fully set forth herein.

94.    Omegle is a "video tape service provider" subject to 18 U.S.C. § 2710(a)(4) of the Video Privacy Protection Act ("VPPA"). Omegle is "engaged in the business, in or affecting interstate or foreign commerce, of rental, sale or delivery of

prerecorded video cassette tapes or similar audio-visual materials" by delivering videos recorded on its website.

95.     As a user of the website, C.H. is a consumer within the definition of 18 U.S.C. § 2710(a)(1) of the VPPA.

96.     Omegle collected C.H.'s personally identifiable information ("PII") within 18 U.S.C. § 2710 (a)(3).

97.     Omegle disclosed PII to third-parties, including data brokers and advertisers, to generate revenue and profit.

98.     Omegle failed to solicit and/or obtain consent from C.H. to collect and disclose her PII, nor did Omegle provide clear and conspicuous notice of the disclosure of PII, as defined in 18 U.S.C. § 2710 (b)(2)(B).

99.     The knowing disclosures and transmission of PII violates the VPPA within the meaning of 18 U.S.C. § 2710 (b)(1).

100.    Accordingly, C.H. is entitled under 18 U.S.C. § 2710(c)(2) to an award of damages (actual, liquidated, or punitive), reasonable attorneys' fees, other litigation costs reasonably incurred, and such relief as the Court deems appropriate.

## FOURTH CLAIM FOR RELIEF
## INTRUSION UPON SECLUSION

101.    In support of Plaintiffs' assertions that Omegle.com exposes children's geolocations, Plaintiffs repeat, re–allege, and incorporate by reference paragraph ¶ 38 as if fully set forth herein.

102.    In support of Plaintiffs assertions that Omegle.com does not verify the age of their users nor does it prevent children from using Omegle.com, Plaintiffs

repeat, re–allege, and incorporate by reference paragraph ¶ 52 as if fully set forth herein.

103.    In support of Plaintiffs' assertions that Omegle.com knowingly paired C.H. with a stranger knowing that C.H. was a minor child at risk of becoming a victim of child exploitation and of Omegle-based predators commonly called "cappers," Plaintiffs repeat, re–allege, and incorporate by reference paragraphs ¶¶ 50, 55, 56, 58, 59, 61, 62, 63 and 65, as if fully set forth herein.

104.    C.H. has a reasonable expectation of privacy when she is online, especially while she is at her home in her private dwelling space. C.H.'s private affairs include observation of her whether by voyeurs lurking outside her window or voyeurs peering into her room through a webcam.

105.    C.H. zone of privacy extends to the surreptitious collection and tracking of her personally identifiable information and viewing data collected and aggregated by Omegle.com.

106.    The reasonableness of such expectation of privacy is violated by Omegle's unique ability to monitor C.H.'s behavior by accessing C.H.'s private devices. It is further violated by Omegle's surreptitious highly-refined tracking of its website's users through video.

107.    Omegle intentionally intruded onto and into C.H.'s solitude, seclusion, and private affairs by intentionally designing its website to allow for the surreptitious and improper monitoring, review, and/or retention of C.H.'s activities through the technologies and activities described herein.

108.    These intrusions are highly offensive to a reasonable person. This is evidenced by the legislation enacted by Congress, rules promulgated and enforcement actions undertaken by the FTC, and countless studies, op-eds, and articles describing and criticizing the online tracking of children. *See* 16 U.S.C. §§ 6501-6505. Further, the extent of the intrusion cannot be fully known since the nature of privacy invasion involves sharing C.H's personally identifiable information and/or viewing data with potentially countless third-parties, known and unknown, for undisclosed and potentially unknowable purposes, in perpetuity.

109.    C.H. was harmed by the intrusion into her private affairs as detailed throughout this Complaint.

110.    Omegle's actions and conduct complained of herein were a substantial factor in causing the harm suffered by C.H.

111.    As a result of Omegle's actions, Plaintiffs seek nominal and punitive damages in an amount to be determined at trial. Plaintiffs seek punitive damages because Omegle's actions which were malicious, oppressive, and willful were calculated to injure C.H. and made in conscious disregard of her rights. Punitive damages are warranted to deter Omegle from engaging in future misconduct.

## FIFTH CLAIM FOR RELIEF
## NEGLIGENCE

112.    In support of Plaintiffs' assertions that Omegle.com knew or should have known that it received value for their ongoing business practices that allow their website to become a means of online child exploitation despite the risk to children

like C.H, Plaintiffs repeat, re–allege, and incorporate by reference paragraphs ¶¶ 31, 32, 33, 34, 35, 37, and 38, as if fully set forth herein.

113.   In support of Plaintiffs' assertions that Omegle.com exposes children's geolocations, Plaintiffs repeat, re–allege, and incorporate by reference paragraph ¶ 38 as if fully set forth herein.

114.   In support of Plaintiffs' assertions that Omegle.com knew or should have known that it posed a risk to children like C.H. when Omegle.com advertised their site to children as a means to "Talk to Strangers!" despite their knowledge of multiple child pornography related crimes committed against children like C.H. using Omegle.com, and that Omegle.com knew or should have known that it was participating in a sex trafficking venture involving by allowing "cappers" to use Omegle.com to prey on unsuspecting children online, Plaintiffs repeat, re–allege, and incorporate by reference paragraphs ¶¶ 41, 42, 43, 44, 46, 47, 48 and 49 as if fully set forth herein.

115.   In support of Plaintiffs assertions that Omegle.com does not verify the age of their users nor does it prevent children from using Omegle.com, Plaintiffs repeat, re–allege, and incorporate by reference paragraph ¶ 52 as if fully set forth herein.

116.   In support of Plaintiffs' assertions that Omegle.com knew or should have known that it paired C.H. with a stranger knowing that C.H. was a minor child at risk of becoming a victim of child exploitation and of Omegle-based predators

commonly called "cappers," Plaintiffs repeat, re–allege, and incorporate by reference paragraphs ¶¶ 50, 55, 56, 58, 59, 61, 62, 63 and 65, as if fully set forth herein.

117.    Omegle owed C.H. and the general public a duty to use ordinary care in designing, maintaining, and distributing its products and services to children.

118.    Omegle breached that duty because, among other things, it failed to take reasonable care to address the danger of dangerous "cappers" enticed, enabled, and encouraged to sexually abuse minor children on the platforms created by Omegle to "Talk to Strangers!" Omegle's initial and continued design decisions regarding its platform are unreasonable and negligent.

119.    Omegle owed C.H. and the general public a duty of care to provide a safe online community, especially since it knew that children were and would be accessing Omegle.com.

120.    Omegle breached the duty of care by failing to implement adequate safety and security measures including monitoring its users' age and ongoing monitoring of its users' conduct while using its online service.

121.    Omegle had an ongoing, non-delegable duty to continue to monitor, supervise, inspect, and assess the use of service and application to prevent the mistreatment of its users.

122.    Omegle failed to prevent children from using its website despite its knowledge that its website was used by children; was inherently dangerous; and had been misused by sexual predators to groom and sexually abuse and exploit children.

123.    Omegle further failed to interview, assess, inspect or otherwise check on the welfare of its users to ensure that they were not being harmed, sexually abused, or otherwise mistreated and Defendant's aforesaid failures enabled the tortious conduct experienced by C.H. to occur and continue.

124.    As a direct and proximate result of Omegle's breaches of the duty of care owed, C.H. was subjected to sexual exploitation by a stranger.

125.    Omegle's acts and omissions were committed wantonly, willfully, with reckless and/or callous disregard for the safety of its users including C.H.

126.    As a result of the above negligence on the part of the Omegle, C.H. was caused to suffer severe and painful personal injuries, emotional distress, sexual misconduct, pain, suffering, and mental anguish all of a permanent nature.

127.    By reason of the foregoing, Omegle is liable for compensatory damages and punitive damages, together with interests and costs.

### SIXTH CLAIM FOR RELIEF
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

128.    In support of Plaintiffs' assertions that Omegle.com exposes children's geolocations, Plaintiffs repeat, re–allege, and incorporate by reference paragraph ¶ 38 as if fully set forth herein.

129.    In support of Plaintiffs' allegations that Omegle.com knowingly advertises their site to children as a means to "Talk to Strangers!" despite their knowledge of multiple child pornography related crimes committed against children like C.H. using Omegle.com, and that Omegle.com knowingly participates in a sex trafficking venture by allowing "cappers" to use Omegle.com to prey on unsuspecting

children online, Plaintiffs repeat, re–allege, and incorporate by reference paragraphs ¶¶ 41, 42, 43, 44, 46, 47, 48 and 49 as if fully set forth herein.

130.    In support of Plaintiffs' assertions that Omegle.com does not verify the age of their users nor does it prevent children from using Omegle.com, Plaintiffs repeat, re–allege, and incorporate by reference paragraph ¶ 52 as if fully set forth herein.

131.    In support of Plaintiffs' assertions that Omegle.com knowingly paired C.H. with a stranger knowing that C.H. was a minor child at risk of becoming a victim of child exploitation and of Omegle-based predators commonly called "cappers," Plaintiffs repeat, re–allege, and incorporate by reference paragraphs ¶¶ 50, 55, 56, 58, 59, 61, 62, 63 and 65, as if fully set forth herein.

132.    Omegle engaged in reckless, extreme, and outrageous conduct by failing to take reasonable precautions to prevent children from using its website and by failing to monitor its website and use of its website to ensure that its users were not being sexually abused, mistreated, or exploited despite knowing that children were using its website and that its website was providing a forum for sexual predators to access children.

133.    By its acts and omissions, Omegle intended to and did intentionally and recklessly cause C.H. to suffer severe emotional distress.

134.    Omegle's misconduct was so shocking and outrageous that it exceeds the reasonable bounds of decency as measured by what the average member of the

community, and society as whole, would tolerate and demonstrates an utter disregard by Omegle of the consequences that followed.

135.   Omegle's misconduct was also engaged in with oppression or malice and was in conscious disregard for the rights and safety of others, including, but not limited to C.H., so as to warrant the imposition of punitive damages.

136.   As a direct and proximate result of the Omegle's conduct, a stranger gained access to C.H. and sexually exploited her. C.H. has suffered, and continues to suffer, severe emotional distress, for which she is entitled to an award of damages.

137.   Omegle knew that this reckless, extreme, and outrageous conduct would inflict severe emotional and psychological distress, including personal physical injury as a result, including severe mental anguish, humiliation and emotional and physical distress.

138.   By reason of the foregoing, Omegle is liable for compensatory and punitive damages, together with interests and costs.

## SEVENTH CLAIM FOR RELIEF
## RATIFICATION/VICARIOUS LIABILITY

139.   In support of Plaintiffs' assertions that Omegle.com exposes children's geolocations, Plaintiffs repeat, re–allege, and incorporate by reference paragraph ¶ 38 as if fully set forth herein.

140.   In support of Plaintiffs' assertions that Omegle.com knowingly advertises their site to children as a means to "Talk to Strangers!" despite their knowledge of multiple child pornography related crimes committed against children like C.H. using Omegle.com, and that Omegle.com knowingly participates in a sex

trafficking venture by allowing "cappers" to use Omegle.com to prey on unsuspecting children online, Plaintiffs repeat, re–allege, and incorporate by reference paragraphs ¶¶ 41, 42, 43, 44, 46, 47, 48 and 49 as if fully set forth herein.

141.   In support of Plaintiffs' assertions that Omegle.com does not verify the age of their users nor does it prevent children from using Omegle.com, Plaintiffs repeat, re–allege, and incorporate by reference paragraph ¶ 52 as if fully set forth herein.

142.   The use of the Omegle.com website for advertising, creating, posting, and sharing child sex abuse material was so pervasive and known to Omegle that it cannot be said that such conduct was so unforeseen so as to prevent the Omegle defendants from being vicariously liable for such conduct. Rather, the Omegle defendants knowingly aided and assisted the "cappers" who advertised, created, posted and shared the child sex abuse material online, and Omegle knowingly profited from that illegal activity.

143.   The Omegle defendants are vicariously liable for the conduct of the "cappers" because they ratified their conduct, knowingly received the benefits of said conduct.

144.   The Omegle defendants are further vicariously liable for the conduct of the "cappers" because they created, developed, and maintained a forum to entice, encourage and enable the sharing of such conduct.

145.   Give these circumstances, the Omegle defendants should be held vicariously liable for the actions of their "capers."

<u>EIGHTH CLAIM FOR RELIEF</u>
<u>PUBLIC NUSIANCE</u>

146.   In support of Plaintiffs' assertions that Omegle.com knowingly advertises their site to children as a means to "Talk to Strangers!" despite their knowledge of multiple child pornography related crimes committed against children like C.H. using Omegle.com, and that Omegle.com knowingly participates in a sex trafficking venture by allowing "cappers" to use Omegle.com to prey on unsuspecting children online, Plaintiffs repeat, re–allege, and incorporate by reference paragraphs ¶¶ 41, 42, 43, 44, 46, 47, 48 and 49 as if fully set forth herein.

147.   In support of Plaintiffs' assertions that Omegle.com does not verify the age of their users nor does it prevent children from using Omegle.com, Plaintiffs repeat, re–allege, and incorporate by reference paragraph ¶ 52 as if fully set forth herein.

148.   Omegle created and developed a public nuisance Omegle.com which violates public rights, and subverts public order, decency, and morals.

149.   Omegle's public nuisance inconveniences and damages the general public, including Plaintiff.

<u>PRAYER FOR RELIEF</u>

**WHEREFORE,** Plaintiffs respectfully requests that this Court enter a judgment in their favor against Omegle as follows:

A.   granting preliminary and permanent injunctive relief to prohibit Omegle from continuing to engage in the unlawful acts and practices described herein;

B. awarding Plaintiffs compensatory, consequential, general, and nominal damages in an amount to be determined at trial;

C. awarding actual damages pursuant to 18 U.S.C. § 2255(a);

D. in the alternative to actual damages, Plaintiffs request an award of liquidated damages in the amount of $150,000 from each of Omegle's violations pursuant to 18 U.S.C. § 2255(a);

E. awarding punitive damages in an amount sufficient to punish Omegle and to deter others from like conduct pursuant to 18 U.S.C. § 2255(a) and the common law;

F. awarding reasonable attorney's fees pursuant to 18 U.S.C. § 2255(a);

G. awarding pre-judgment and post-judgment interest;

H. granting such other preliminary and equitable relief as the Court determines to be appropriate pursuant to 18 U.S.C. § 2255(a);

I. granting any relief within the Court's jurisdiction appropriate to the proof, whether or not demanded;

J. granting such other and further relief as the Court deems just and proper; and

K. ordering that the Court retain jurisdiction of this matter to ensure all forms of relief it deems appropriate.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues of fact and damages stated herein.

Dated:   September 29, 2021
New York, New York

**HACH ROSE SCHIRRIPA & CHEVERIE LLP**

By:    /s/ Hillary M. Nappi
Frank R. Schirripa, *pro hac vice pending*
Hillary M. Nappi, *pro hac vice*
112 Madison Avenue, 10th Floor
New York, New York 10016
Telephone: (212) 213-8311
Facsimile: (212) 779-0028
fschirripa@hrsclaw.com
hnappi@hrsclaw.com

**MARSH LAW FIRM PLLC**

By:    /s/ Jennifer Freeman
Jennifer Freeman
Florida Bar No. 1014236
31 Hudson Yards, 11th Floor
New York, New York 10001
Telephone: (212) 372-3030
Email: jenniferfreeman@marsh.law

By:    /s/ Margaret E. Mabie
Margaret E. Mabie, *pro hac vice*
31 Hudson Yards, 11th Floor
New York, New York 10001
Telephone: (212) 372-3030
Email: margaretmabie@marsh.law

*Attorneys for Plaintiffs*

# TAB 78

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

|  |  |
|---|---|
| M.H. and J.H., on behalf of their minor child C.H., <br><br> Plaintiffs, <br><br> v. <br><br> OMEGLE.COM, LLC, <br><br> Defendant. | Case No. 8:21-cv-00814-VMC-TGW |

## DEFENDANT OMEGLE.COM, LLC'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

# TABLE OF CONTENTS

FACTUAL ALLEGATIONS.............................................................................1

DISCUSSION.................................................................................................2

I.  Plaintiffs' SAC Cannot Withstand Rule 12(b)(6) Scrutiny...............................2

II.  Omegle is Entitled to Immunity Under CDA 230 ...........................................3

   A.  Omegle is an interactive computer service provider ..........................4

   B.  The claims seek to treat Omegle as the publisher of content
       from another information content provider...........................................4

III.  No CDA 230 Exceptions Apply to Plaintiffs' Claims Under the
     Federal Child Pornography and Sex Trafficking Criminal Statutes .............7

   A.  Plaintiffs' claim for alleged violation of 18 U.S.C. § 2252A is
       not excluded by CDA 230(e)(1) ..............................................................7

   B.  The SAC does not state a plausible claim for violation of 18
       U.S.C. § 1591 and thus CDA 230(e)(5)(A)'s exception does not
       apply..........................................................................................................9

      1.  To overcome CDA immunity, the SAC must plausibly
          allege that Omegle violated Section 1591 ...................................9

      2.  The SAC is devoid of allegations that Omegle
          knowingly engaged in conduct prohibited by Section
          1591...............................................................................................13

         a.  No plausible allegation that Omegle engaged in
             the alleged sex trafficking of C.H....................................13

         b.  No plausible allegation that Omegle knowingly
             benefited from knowingly participating in a
             venture ................................................................................14

IV.  Plaintiffs' Other Claims Also Fail As a Matter of Law..................................19

   A.  Plaintiffs' VPPA claim is fatally and irreparably deficient ...............19

   B.  Plaintiffs' IIED claim is properly dismissed .........................................23

C.   The intrusion upon seclusion claim fails to state a plausible claim ................................................................................................25

D.   Plaintiffs fail to state a claim for negligence as a matter of law.........28

E.   The public nuisance claim is implausible and should be dismissed ...............................................................................................30

F.   There is no cause of action for ratification/vicarious liability...........31

V.   Leave to Amend Should Not Be Granted .......................................................32

CONCLUSION .............................................................................................................32

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Action Sec. Serv., Inc. v. Am. Online, Inc.*, No. 6:03-cv-1170-Orl-22DAB,
    2005 U.S. Dist. LEXIS 50842 (M.D. Fla. May 27, 2005)....................................28

*Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1321 (11th Cir. 2006)..............................3

*Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283 (11th Cir. 2010) ................................3

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......................................................2, 3, 17

*Austin-Spearman v. AMC Network Entm't LLC*, 98 F. Supp. 3d 662
    (S.D.N.Y. 2015) ................................................................21, 22

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...........................................31

*Biglen v. Fla. Power & Light Co.*, 910 So. 2d 405 (Fla. Dist. Ct. App. 2005)...............29

*Buckley v. Trenton Sav. Fund Soc'y*, 544 A.2d 857 (N.J. 1988)...................................24

*Carvalho v. Toll Bros. & Developers*, 675 A.2d 209 (N.J. 1996)...................................28

*Ceithami v. Celebrity Cruises, Inc.*, 207 F. Supp. 3d 1345 (S.D. Fla. 2016).................32

*Coventry First, LLC v. McCarty*, 605 F.3d 865 (11th Cir. 2010)...................................32

*Dart v. craigslist*, 665 F. Supp. 2d 961 (N.D. Ill. 2009)....................................3

*DiMeo v. Max*, 248 F. App'x 280 (3d Cir. 2007) ............................................3

*Doe v. Bates*, No. 5:05-CV-91-DF-CMC, 2006 U.S. Dist. LEXIS 93348
    (E.D. Tex. Dec. 27, 2006)........................................................8

*Doe v. Kik Interactive, Inc.*, 482 F. Supp. 3d 1242 (S.D. Fla. 2020) .................... passim

*Doe v. Mindgeek USA Inc.*, No. SACV 21-00338-CJC (ADSx),
    2021 U.S. Dist. LEXIS 176833 (C.D. Cal. Sept. 3, 2021) ..................................11

*Doe v. MySpace Inc.*, 528 F.3d 413 (5th Cir. 2008)...........................................5

*Doe v. Reddit, Inc.*, No. SACV 21-768 JVS (KESx) (C.D. Cal. Oct. 7, 2021)...... passim

*Doe v. Rickey Patel, LLC*, No. 0:20-60683-WPD-CIV-DIMITROULEAS,
  2020 U.S. Dist. LEXIS 195811 (S.D. Fla. Sept. 30, 2020)...................................16

*Doe v. Twitter, Inc.*, No. 21-cv-00485-JCS,
  2021 U.S. Dist. LEXIS 157158 (N.D. Cal. Aug. 19, 2021)....................11, 12, 18

*Doe No. 14 v. Internet Brands, Inc.*, No. CV 12-3626-JFW (PJWx),
  2016 U.S. Dist. LEXIS 192144 (C.D. Cal. Nov. 14, 2016) ................................30

*Dyroff v. Ultimate Software Group, Inc.*, No. 17-cv-05359-LB,
  2017 U.S. Dist. LEXIS 194524 (N.D. Cal. Nov. 26, 2017).........................29, 30

*Dyroff v. Ultimate Software Group, Inc.*, 934 F.3d 1093 (9th Cir. 2019)..................6, 30

*Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251 (11th Cir. 2015)...............................19, 21

*Estate of Desir ex rel. Estiverne v. Vertus*, 69 A.3d 1247 (N.J. 2013) ...........................28

*Estate of Miller v. Thrifty Rent-A-Car Sys., Inc.*, 609 F. Supp. 2d 1235
  (M.D. Fla. 2009).........................................................................................23

*Force v. Facebook, Inc.*, 934 F.3d 53 (2d Cir. 2019) ...........................................8

*Friedman v. Martinez*, 231 A.3d 719 (N.J. 2020) ....................................................25, 26

*Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156 (S.D.N.Y. 2019)..............18

*Green v. Am. Online*, 318 F.3d 465 (3d Cir. 2003)............................................................4

*Griffin v. Tops Appliance City, Inc.*, 766 A.2d 292
  (N.J. Super. Ct. App. Div. 2001)..........................................................................25

*Hendricks v. Rambosk*, No. 2:10-cv-526-FtM-29DNF, 2011 U.S. Dist. LEXIS
  40608 (M.D. Fla. Apr. 14, 2011)........................................................................24

*Herrick v. Grindr, LLC*, 306 F. Supp. 3d 579 (S.D.N.Y. 2018) ...............................5, 6

*Hubbard v. Google LLC*, No. 19-cv-07016-BLF,
  2020 U.S. Dist. LEXIS 239936 (N.D. Cal. Dec. 21, 2020).................................20

*In re Hulu Privacy Litig.*, 86 F. Supp. 3d 1090 (N.D. Cal. 2015) ..................................23

*In re Lead Paint Litig.*, 924 A.2d 484 (N.J. 2007) ...........................................................31

*In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262 (3d Cir. 2016) .........22, 23, 27

*Jabagat v. Lombardi*, No. 1:14CV89-HSO-RHW,
    2015 U.S. Dist. LEXIS 178762 (S.D. Miss. Jan. 30, 2015)...................................19

*J.B. v. G6 Hosp., LLC*, No. 19-cv-07848-HSG,
    2020 U.S. Dist. LEXIS 151213 (N.D. Cal. Aug. 20, 2020)................................17

*J.B. v. G6 Hosp., LLC*, No. 19-cv-07848-HSG,
    2021 U.S. Dist. LEXIS 170338 (N.D. Cal. Sept. 8, 2021).......................... passim

*Jersey Cent. Power & Light Co. v. Melcar Util. Co.*, 59 A.3d 561 (N.J. 2013)..............28

*Klayman v. Zuckerberg*, 753 F.3d 1354 (D.C. Cir. 2014) ...................................6

*La'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981 (S.D. Tex. 2017) ................................5

*Lemmon v. Snap, Inc.*, 995 F.3d 1085 (9th Cir. 2021) ......................................6

*M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959
    (S.D. Ohio 2019) ............................................................................16

*Manigault-Johnson v. Google, LLC*, No. 2:18-cv-1032-BHH, 2019 U.S. Dist.
    LEXIS 59892 (D.S.C. Mar. 31, 2019).......................................................27

*Marfione v. Kai U.S.A., Ltd.*, No. 17-70, 2018 U.S. Dist. LEXIS 51066
    (W.D. Pa. Mar. 27, 2018) .................................................................7

*Mezey v. Twitter, Inc.*, No. 1:18-cv-21069-KMM, 2018 U.S. Dist. LEXIS
    121775 (S.D. Fla. July 19, 2018)..........................................................4

*M.L. v. craigslist Inc.*, No. C19-6153 BHS-TLF, 2020 U.S. Dist. LEXIS 166334
    (W.D. Wash. Sept. 11, 2020) ............................................................10

*Neely v. Wells Fargo Fin., Inc.*, No. 8:12-cv-542-T-33AEP, 2012 U.S. Dist.
    LEXIS 168669 (M.D. Fla. Nov. 28, 2012) ...............................................25

*Obado v. Magedson*, No. 13-2382 (JAP), 2014 U.S. Dist. LEXIS 104575
    (D.N.J. July 31, 2014) ....................................................................8

*Parker v. Google, Inc.*, 422 F. Supp. 2d 492 (E.D. Pa. 2006) ...........................................3

*Perry v. CNN, Inc.*, No. 1:14-CV-02926-ELR, 2016 U.S. Dist. LEXIS 179395
    (N.D. Ga. Apr. 20, 2016)...................................................................23

*Perry v. CNN, Inc.*, 854 F.3d 1336 (11th Cir. 2017) ......................................................21

*Popa v. Harriet Carter Gifts, Inc.*, 426 F. Supp. 3d 108 (W.D. Pa. 2019) ....................27

*Roca Labs, Inc. v. Consumer Opinion Corp.*, 140 F. Supp. 3d 1311
　　(M.D. Fla. 2015) ........................................................................4

*Saponaro v. Grindr, LLC*, 93 F. Supp. 3d 319 (D.N.J. 2015) ................................5, 6, 32

*Stasiak v. Kingswood Co-op, Inc.*, No. 8:11-cv-1828-T-33MAP,
　　2012 U.S. Dist. LEXIS 20609 (M.D. Fla. Feb. 17, 2012) ............................25, 26

*State Farm Mut. Auto. Ins. Co. v. Novotny*, 657 So. 2d 1210
　　(Fla. Dist. Ct. App. 1995) .........................................................24

*Stone v. Wall*, 135 F.3d 1438 (11th Cir. 1998) .........................................23

*Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413 (1st Cir. 2007) ....................5

*Virgilio v. Ryland Group, Inc.*, 680 F.3d 1329 (11th Cir. 2012) ....................................28

*Williams v. Verizon N.J., Inc.*, No. 2:19-09350-KM-MAH, 2020 U.S. Dist.
　　LEXIS 43528 (D.N.J. Mar. 12, 2020) ...................................................32

*Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482 (1st Cir. 2016) .............21

## **Statutes and Rules**

18 U.S.C. § 1591 ...................................................................... passim

18 U.S.C. § 1591(a)(1) ...........................................................13, 14

18 U.S.C. § 1591(a)(2) ............................................................. passim

18 U.S.C. § 1591(e)(4) ...............................................................15

18 U.S.C. § 1591(e)(6) ...............................................................15

18 U.S.C. § 1595 ................................................................7, 9, 16

18 U.S.C. § 2251 *et seq.* ..............................................................8

18 U.S.C. § 2252A .............................................................7, 8, 9

18 U.S.C. § 2710 ......................................................................19

18 U.S.C. § 2710(a)(1) ...............................................................21

18 U.S.C. § 2710(a)(3) ...............................................................22

18 U.S.C. § 2710(a)(4) ......................................................................... 20

47 U.S.C. § 230 ........................................................................... passim

47 U.S.C. § 230(c)(1) .............................................................................. 3

47 U.S.C. § 230(e)(1) .............................................................................. 8

47 U.S.C. § 230(e)(3) .............................................................................. 3

47 U.S.C. § 230(e)(5)(A) ............................................................... passim

47 U.S.C. § 230(f)(2) .............................................................................. 4

FED. R. CIV. P. 8(a)(2) ............................................................................ 2

FED. R. CIV. P. 12(b)(6) .......................................................................... 1

## **Other Authority**

RESTATEMENT (SECOND) OF TORTS § 46, cmt. g ...................................... 24

RESTATEMENT (SECOND) OF TORTS § 821B ............................................... 31

RESTATEMENT (SECOND) OF TORTS § 821B, cmt. g .................................... 31

Defendant Omegle.com, LLC ("Omegle") moves pursuant to FED. R. CIV.
P. 12(b)(6) to dismiss Plaintiffs' Second Amended Complaint (Dkt. 75) ("SAC").
In support of this Motion, Omegle incorporates the following Memorandum of
Law. WHEREFORE, for the reasons stated herein, Omegle respectfully requests
that the Court dismiss the SAC in its entirety, with prejudice.

## MEMORANDUM OF LAW IN SUPPORT

Despite having the opportunity to twice amend the complaint, Plaintiffs'
SAC is still fatally flawed and subject to dismissal with prejudice. Specifically,
Plaintiffs seek to hold Omegle liable as the publisher or speaker of third-party
content on its website contrary to the immunity provided by Section 230 of the
Communications Decency Act ("CDA 230"). Therefore, for the reasons stated
herein, the SAC should be dismissed with prejudice.

## FACTUAL ALLEGATIONS

The SAC alleges that M.H. and J.H. are the parents of 11-year-old C.H. and
reside in Morris County, New Jersey. (Dkt. 75 at ¶¶ 8-10.) In 2009, Omegle
launched its free online real-time chat service, through which users can meet and
chat in real time with new people by text or video via its website. (Id. ¶¶ 13, 33.)
There is no registration or log in requirement to chat with other users. (Id. ¶ 36.)

As Plaintiffs acknowledged in their original complaint, the Omegle
website clearly prohibits users under 13 years of age from using the real-time
chat service and prohibits users under 18 years of age from using the service
without a parent's or guardian's permission. (Dkt. 1 ¶ 32; *see also* Dkt. 10-2 ¶ 3,
Ex. 1.) Despite this prohibition, the SAC alleges 11-year-old C.H. visited the

Omegle website in March 2020, apparently without parental permission. (Dkt. 75 ¶ 57.) C.H. had never used the Omegle website before. C.H. elected to be randomly paired with another user via the video chat option at least twice. The first random pairing was with a group of older minors. She elected to end that chat and start a second video chat. (Id.) In the second chat, C.H. allegedly observed a black screen on which text began appearing. (Id. ¶ 58.) The SAC alleges that the other user in the chat said "he knew where C.H. lived" and provided her "geolocation." The SAC does not explain what is meant by "geolocation." (Id. ¶ 59.) The SAC alleges that the third-party user instructed C.H. to remove her clothing and touch herself in front of the camera on her computer. She complied with the user's instructions. The user allegedly captured screenshots or videos of C.H.'s actions. (Id. ¶¶ 61-62.)

## DISCUSSION

### I.   Plaintiffs' SAC Cannot Withstand Rule 12(b)(6) Scrutiny

Although FED. R. CIV. P. 8(a)(2) only requires that a pleading provide a "short and plain statement of the claim showing that the pleader is entitled to relief," that standard requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks omitted). A complaint has facial plausibility only "when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) ("*ADA*"). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. But no such assumption of veracity applies to legal conclusions or "unwarranted deduction[s] of fact." *Id.* at 678; *ADA*, 605 F.3d at 1290, 1294.

## II.      Omegle is Entitled to Immunity Under CDA 230

CDA 230 states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). It preempts any contrary state law, 47 U.S.C. § 230(e)(3), and creates "broad federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service," *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1321 (11th Cir. 2006) (internal quotation marks omitted). CDA 230 provides immunity to a wide range of state and federal law claims, including the claims Plaintiffs assert. *See, e.g.*, *DiMeo v. Max*, 248 F. App'x 280, 281-83 (3d Cir. 2007) (IIED and defamation claims); *Dart v. craigslist*, 665 F. Supp. 2d 961, 963, 969 (N.D. Ill. 2009) (public nuisance claim); *Parker v. Google, Inc.*, 422 F. Supp. 2d 492, 500-01 (E.D. Pa. 2006) (defamation, invasion of privacy, and negligence claims), *aff'd*, 242 F. App'x 833 (3d Cir. 2007).

A defendant is immune under CDA 230 if: (1) it is the provider of an "interactive computer service" ("ICS"); (2) the asserted claims treat it as the

publisher or speaker of the information; and (3) the information is provided by another information content provider. *Roca Labs, Inc. v. Consumer Opinion Corp.*, 140 F. Supp. 3d 1311, 1319 (M.D. Fla. 2015).

## A. Omegle is an interactive computer service provider

The SAC alleges that Omegle is a website "that enables individuals to communicate with random individuals across the world anonymously via text and video." (Dkt. 75 ¶ 33.) Thus, Omegle fits squarely within the ICS definition[1] because it is a website "that allow[s] third parties" to provide content to other users "regardless of whether [that content] is made anonymously or under a pseudonym." *Roca*, 140 F. Supp. 3d at 1318; *see also Mezey v. Twitter, Inc.*, No. 1:18-cv-21069-KMM, 2018 U.S. Dist. LEXIS 121775, *3 (S.D. Fla. July 19, 2018).

## B. The claims seek to treat Omegle as the publisher of content from another information content provider

As to the second and third elements, the claims seek to treat Omegle as the publisher or speaker of content, specifically video and/or text communications of another information content provider. Courts have held that the second element is satisfied where a plaintiff alleges that an ICS published offending content that it should have filtered. *See, e.g., Green v. Am. Online*, 318 F.3d 465, 471 (3d Cir. 2003) (element satisfied where plaintiff "attempt[ed] to hold [defendant] liable for decisions relating to the monitoring, screening, and deletion of content"). Courts have also found this element satisfied where a plaintiff's claims

---

[1] An ICS is "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server[.]" 47 U.S.C. § 230(f)(2).

are based on an offending interaction which occurs through the site, which are ultimately based on content posted by third parties, and an alleged failure to monitor or supervise the site. *See, e.g., Saponaro v. Grindr, LLC*, 93 F. Supp. 3d 319, 323 (D.N.J. 2015) (claim of failure to monitor and supervise site users was an attempt to treat defendant as a publisher of information provided by a third party); *see also Herrick v. Grindr, LLC*, 306 F. Supp. 3d 579, 590 (S.D.N.Y. 2018) (claim that defendant failed to "incorporate adequate protections against impersonating or fake accounts is just another way of asserting that [defendant] is liable because it fails to police and remove" content), *aff'd*, 765 F. App'x 586 (2d Cir. 2019), *cert. denied*, 140 S. Ct. 221 (2019). Nor does an allegation that the ICS received notice of the alleged unlawful nature of the content negate CDA 230 immunity. *See, e.g., Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 420 (1st Cir. 2007); *La'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981, 994 (S.D. Tex. 2017).

At its core, the SAC alleges that Omegle failed to adequately monitor or screen the content or interactions of its users. (Dkt. 75 ¶¶ 120-121, 123, 132, 136, 142-145.) The Fifth Circuit's conclusion in a factually similar case is on point. In *Doe v. MySpace Inc.*, the mother of a 13-year-old girl sued MySpace for allowing her daughter to use the site and meet a 19 year old, who communicated with her via the site to arrange a meeting and assault her. 528 F.3d 413, 416 (5th Cir. 2008). Similar to the allegations here, the mother argued the site was liable for failing to implement proper safeguards. The court rejected the argument, concluding that the "allegations are merely another way of claiming that MySpace was liable for publishing the communications" between the users. *Id.* at 420.

The SAC makes vague allegations directed at Omegle's website design (*see* Dkt. 75 ¶¶ 45-47, 107, 120, 148), but courts have rejected this type of a claim where neutral tools that "are not intrinsically offensive or unlawful" are used by a third party to harass another user. *Herrick*, 306 F. Supp. 3d at 589-90; *see also Saponaro*, 93 F. Supp. 3d at 324. Here, the SAC fails to state—in a manner consistent with the plausibility standard—any claims regarding the allegedly defective design that would overcome CDA immunity. Nor could it make any such plausible allegation as Omegle's service—a means for users to communicate with one another via text or video—is the type of neutral tool that courts routinely find are covered by CDA 230 immunity.[2] *See, e.g., Dyroff v. Ultimate Software Group, Inc.*, 934 F.3d 1093, 1098 (9th Cir. 2019) (rejecting attempt to equate "content" with the website's offering of "tools meant to facilitate the communication and content of others"), *cert. denied*, 140 S. Ct. 2761 (2020); *Klayman v. Zuckerberg*, 753 F.3d 1354, 1358 (D.C. Cir. 2014).

Additionally, the SAC alleges that the allegedly offending communication originated from a third-party user as did the screenshots or video allegedly captured by that user. (*See, e.g.*, Dkt. 75 ¶¶ 59, 61-62.) The SAC is bereft of any allegation that Omegle "created or authored" the allegedly offensive communications or content. A plaintiff who claims a defendant "created or

---

[2] The decision in *Lemmon v. Snap, Inc.*, 995 F.3d 1085 (9th Cir. 2021), is of no assistance to Plaintiffs. The court concluded that plaintiffs alleged a product liability claim targeted at the interplay between the Snap "speed filter" and Snap's alleged incentive system, both of which Snap created and which plaintiffs alleged "encouraged users to drive at dangerous speeds." But the court reiterated that ICS providers are not liable for "neutral tools" when plaintiff's claims "blame them for the content that third parties generate with those tools." *Id.* at 1093-94. That is precisely the case here where Plaintiffs' claims arise from C.H.'s interaction with the other user.

developed" allegedly offensive content must do so based on "well-pleaded facts [that] permit the court to infer more than the mere possibility" of such creation and development. *Marfione v. Kai U.S.A., Ltd.*, No. 17-70, 2018 U.S. Dist. LEXIS 51066, *18-19 (W.D. Pa. Mar. 27, 2018). Plaintiffs have not satisfied that standard.

As a result, CDA 230 bars Plaintiffs' claims against Omegle.

## III.  No CDA 230 Exceptions Apply to Plaintiffs' Claims Under the Federal Child Pornography and Sex Trafficking Criminal Statutes

CDA 230 immunity is not absolute. It contains two exclusions potentially implicated by the claims alleging violations of (1) 18 U.S.C. § 2252A and (2) 18 U.S.C. §§ 1591 and 1595. First, CDA 230(e)(1) provides that CDA 230 is not intended to "impair the enforcement of [any] Federal criminal statute," including Section 2252A, the criminal statute upon which the first cause of action is based. Second, CDA 230(e)(5)(A) is a new exclusion added by the Fight Online Sex Trafficking Act ("FOSTA") that is targeted at – and limited to – alleged violations of the federal sex trafficking criminal statute, 18 U.S.C. § 1591. Both exclusions are narrow in scope and neither divest Omegle of CDA 230 immunity.

### A.   Plaintiffs' claim for alleged violation of 18 U.S.C. § 2252A is not excluded by CDA 230(e)(1)

In the first cause of action, the SAC alleges that Omegle violated 18 U.S.C. § 2252A, which makes it a crime for any person to knowingly possess or access with intent to view material that contains an image of child pornography. But this claim—which is based on the child pornography allegedly created by the other user with whom C.H. interacted—is also barred by CDA 230.

CDA 230(e)(1) states, in relevant part, that nothing in CDA 230 shall

7

"impair the enforcement of . . . chapter . . . 110 (relating to sexual exploitation of children) of [18 U.S.C. § 2251 *et seq.*], or any other Federal criminal statute." 47 U.S.C. § 230(e)(1). But courts have consistently construed this exception to apply only to "government prosecutions, not to civil private rights of action under [statutes] with criminal aspects." *Obado v. Magedson*, No. 13-2382 (JAP), 2014 U.S. Dist. LEXIS 104575, *27 (D.N.J. July 31, 2014), *aff'd*, 612 F. App'x 90 (3d Cir. 2015); *see also Force v. Facebook, Inc.*, 934 F.3d 53, 72 (2d Cir. 2019) ("[CDA] 230(e)(1) is quite clearly . . . limited to criminal prosecutions") (internal quotation marks omitted), *cert. denied*, 140 S. Ct. 2761 (2020). Courts have reached that conclusion with respect to the same criminal statute on which Plaintiffs' first claim is based – 18 U.S.C. § 2252A. *Doe v. Bates*, No. 5:05-CV-91-DF-CMC, 2006 U.S. Dist. LEXIS 93348, *7-8, 12 (E.D. Tex. Dec. 27, 2006) (holding – in case alleging that Yahoo! was civilly liable under Section 2252A for knowingly hosting child pornography – that CDA 230(e)(1) did not apply to such private civil suits); *see also Doe v. Reddit, Inc.*, No. SACV 21-768 JVS (KESx) at p. 10 (C.D. Cal. Oct. 7, 2021) (hereinafter, "*Reddit*, Appendix A")[3] (CDA 230 "provides immunity for interactive computer services in civil suits under § 2252A"). FOSTA did not change CDA 230(e)(1). Therefore, CDA 230 also bars Plaintiffs' civil claim based on alleged violation of Section 2252A.

Moreover, even if CDA 230 was not a bar, the SAC fails to state a plausible claim that Omegle violated Section 2252A. The SAC simply quotes the statutory

---

[3] The *Reddit* decision does not appear to be available on Lexis, therefore, for the Court's convenience, a copy obtained from PACER is attached hereto in Appendix A.

language but offers no *facts* that Omegle ever "knowingly" possessed or accessed any "image of child pornography" of C.H. that was allegedly created by the other user. (Dkt. 75 ¶ 74.) Although the SAC adds references to prior allegations in the complaint with respect to this claim (id. ¶¶ 70-72), those assertions have no apparent connection to a claim that Omegle knowingly possessed or accessed – with the intent to view – any child pornography of C.H. Rather they simply state – in conclusory fashion – "that Omegle.com knowingly possessed child pornography of C.H. that was produced" on the website. (Id. ¶ 72.) Nor can Plaintiffs plead such knowing possession or access by Omegle because there is no allegation that it had any knowledge of C.H. or her interaction with the other user before the filing of this case. To find that Omegle could be liable under such circumstances would improperly read the knowledge element out of the statute.

Thus, the Section 2252A claim (1) is barred by CDA 230 and (2) fails to state any plausible claim for relief, either of which ground warrants dismissal.

**B.   The SAC does not state a plausible claim for violation of 18 U.S.C. § 1591 and thus CDA 230(e)(5)(A)'s exception does not apply**

**1.   To overcome CDA immunity, the SAC must plausibly allege that Omegle violated Section 1591**

As relevant to the second cause of action, FOSTA removed CDA immunity for sex trafficking claims only where the ICS provider's conduct constitutes a violation of 18 U.S.C. § 1591, which imposes an actual knowledge standard. *See* 47 U.S.C. § 230(e)(5)(A) (exempting a claim under Section 1595 but only "if the conduct underlying the claim constitutes a violation of section 1591").

The growing weight of authority – relying on CDA 230(e)(5)(A)'s plain

9

meaning, contextual analysis, and legislative history – holds that "the most straightforward reading" is that FOSTA "provides an exemption from CDA immunity for a section 1595 claim if the civil defendant's conduct amounts to a violation of section 1591." *J.B. v. G6 Hosp., LLC*, No. 19-cv-07848-HSG, 2021 U.S. Dist. LEXIS 170338, *18 (N.D. Cal. Sept. 8, 2021). Notably, the *J.B.* court reversed its prior decision that reached a contrary conclusion. The court, "[h]aving closely reexamined the issue," concluded that the plain language of CDA 230(e)(5)(A) "withdraws immunity only for claims asserting that the defendant's own conduct amounts to a violation of section 1591." *Id.* at *14.

The *J.B.* court's conclusion is consistent with that reached by the Southern District of Florida in the earlier *Doe v. Kik Interactive, Inc.* case where it similarly held that the "plain language of the statute removes [CDA 230] immunity only for conduct that violates 18 U.S.C. § 1591." 482 F. Supp. 3d 1242, 1249 (S.D. Fla. 2020). The Central District of California also recently agreed with both the *J.B.* and *Kik* courts that the civil defendant's conduct must constitute a violation of Section 1591 to fall within CDA 230(e)(5)(A)'s narrow exception to immunity. *Reddit*, Appendix A at p. 11; *see also M.L. v. craigslist Inc.*, No. C 19-6153 BHS-TLF, 2020 U.S. Dist. LEXIS 166334, *12-14 (W.D. Wash. Sept. 11, 2020) (agreeing that "FOSTA does not create an exemption for all § 1595 claims" but concluding that CDA immunity may not apply as well-pleaded allegations indicated that craigslist may have materially contributed to the ads that trafficked plaintiff).

In reaching its conclusion, the *J.B.* court examined FOSTA's legislative history and found nothing that ran counter to the plain language reading:

> Ultimately, Congress passed a bill incorporating the provision that . . . presented a narrowed federal civil carve-out that is subject to a heightened pleading standard. Notwithstanding the well-understood challenges inherent in showing a website's knowledge, it thus appears that Congress reached a compromise by including a narrowed federal civil sex trafficking carve-out that requires plaintiffs to show the civil defendant's knowing assistance, support or facilitation[.]

2021 U.S. Dist. LEXIS 170338 at *37 (internal quotation marks and citation omitted); *see also Reddit*, Appendix A at p. 12 (stating that the "legislative history comports with the [c]ourt's reading of the plain text"). The *Kik* court likewise looked to the language of CDA 230(e)(5)(A) and FOSTA's legislative history and reached the conclusion that the *J.B.* court would later agree with:

> By its terms, FOSTA did not abrogate CDA immunity for all claims arising from sex trafficking; FOSTA permits civil liability for websites only "if the conduct underlying the claim constitutes a violation of section 1591." And section 1591 requires knowing and active participation in sex trafficking by the defendants.

*Kik*, 482 F. Supp. 3d at 1251.

The only other decision of which Omegle is aware that reached the opposite conclusion to *Kik*, *J.B.*, and *Reddit* with any significant analysis is the Northern District of California in *Doe v. Twitter, Inc.*, No. 21-cv-00485-JCS, 2021 U.S. Dist. LEXIS 157158 (N.D. Cal. Aug. 19, 2021).[4] But, although the *Twitter* court engaged in *some* analysis in concluding that the plaintiffs' claim against Twitter "based on alleged violation of Section 1591(a)(2) is not subject to the more stringent requirements that apply to criminal violations of that provision," 2021

---

[4] The Central District of California issued a decision agreeing with the *Twitter* court's conclusion but did not engage in its own analysis. *See Doe v. Mindgeek USA Inc.*, No. SACV 21-00338-CJC (ADSx), 2021 U.S. Dist. LEXIS 176833, *14 (C.D. Cal. Sept. 3, 2021). Notably, the *Mindgeek* court also relied on the earlier decision by the *J.B.* court, which that court has since reconsidered and reached the opposite conclusion. *See id.*

U.S. Dist. LEXIS 157158 at *72, little of the analysis was relevant to interpreting CDA 230(e)(5)(A) and the little that was relevant was conclusory.

For example, the court spent considerable time discussing a line of cases involving sex trafficking claims against hotel defendants. *Twitter*, 2021 U.S. Dist. LEXIS 157158 at *58-65. But, as the court itself recognized, because those cases did not involve ICS providers and therefore did not implicate CDA 230, they did not answer the question before the court. *Id.* at *65. The court then discussed the *Kik* decision but simply stated that it disagreed with that court's analysis, apparently largely relying on the principle that FOSTA is a remedial statute. *Id.* at 65-69. Purporting to rely on the "natural reading" of CDA 230(e)(5)(A), the *Twitter* court then concluded that this exception to immunity does not require proof that the ICS defendant's conduct violated Section 1591. *Id.* at *70-72. The court's alleged plain language reading was based on the premise that FOSTA intended ICS defendants to be treated no differently than other defendants to whom CDA 230 did not apply. *See id.* at *70-71. But that premise is faulty as Congress recognized the distinct circumstances and challenges presented by ICS defendants, as the *J.B.* court acknowledged in its extensive discussion of FOSTA's legislative history. 2021 U.S. Dist. LEXIS 170338 at *23-39. As a result, the *Twitter* court's alleged plain language reading is fatally undermined by its faulty premise that FOSTA – despite all evidence to the contrary – intended to treat ICS defendants no different than, for example, the hotel defendants in the cases that the court had recognized did not answer the question before it. Additionally, the remedial nature of FOSTA cannot "overcome the plain

language of the statute, especially given that section 230 as a whole is designed to provide immunity to [ICS] providers." *Reddit*, Appendix A at p. 12.

In contrast, each of the *Kik*, *J.B.*, and *Reddit* courts correctly recognized FOSTA's limited carve out to CDA immunity in concluding that the carve out applies "**if, but only if,** the defendant's conduct amounts to a violation of section 1591." *J.B.*, 2021 U.S. Dist. LEXIS 170338 at *39 (emphasis added); *see also Reddit*, Appendix A at p. 11; *Kik*, 482 F. Supp. 3d at 1250-51.

### 2. The SAC is devoid of allegations that Omegle knowingly engaged in conduct prohibited by Section 1591

Thus, to overcome CDA immunity, the SAC must, but does not, plausibly allege that Omegle's conduct constitutes a violation of Section 1591. The SAC is devoid of facts showing that Omegle either (1) directly engaged in the alleged sex trafficking of C.H., *see* 18 U.S.C. § 1591(a)(1),[5] or (2) **knowingly** "benefit[ed], financially or by receiving anything of value, from participation in a venture" which engaged in the alleged sex trafficking of C.H., *see* 18 U.S.C. § 1591(a)(2).

### a. No plausible allegation that Omegle engaged in the alleged sex trafficking of C.H.

As to any claim that Omegle itself engaged in the alleged sex trafficking of C.H., there are no allegations to support such a claim. To the contrary, the SAC

---

[5] As relevant here, Section 1591(a)(1) criminalizes the following conduct:
    (a) Whoever **knowingly** –
        (1) . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person . . .
. . .
knowing, or . . . in reckless disregard of the fact, . . . that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act[.]
18 U.S.C. § 1591(a)(1) (emphasis added).

contains no facts showing that Omegle had any knowledge whatsoever of C.H. or her interaction with the other user, much less that Omegle knowingly recruited, obtained, provided or maintained C.H. knowing that she was under 18 and would be caused to engage in a commercial sex act. Instead, the SAC asserts generally that some users have used the Omegle website to engage in unlawful activities and exploit children "like C.H." (*See, e.g.*, Dkt. 75 ¶¶ 78-79.) Even the conclusory "assertion" that Omegle "knowingly paired C.H. with a stranger knowing that C.H. was a minor child at risk of becoming a victim" only cites to general allegations about other alleged incidents or C.H.'s interaction with the other user. (Id. ¶ 80.) But neither type of allegation contains any facts showing that *Omegle* knowingly engaged in the alleged sex trafficking of C.H. *See Kik*, 482 F. Supp. 3d at 1251 (rejecting general allegation that Kik knew of other sex trafficking incidents occurring on its platform as "section 1591 requires knowing and active participation in sex trafficking by the defendants"). The SAC, therefore, fails to plausibly allege a claim against Omegle for a primary sex trafficking violation under Section 1591(a)(1).

> **b.    *No plausible allegation that Omegle knowingly benefited from knowingly participating in a venture***

Plaintiffs' claim that Omegle knowingly benefited from knowingly participating in the alleged sex trafficking venture of C.H. under Section 1591(a)(2) is similarly deficient. To state a claim under that section, the SAC must allege that Omegle "**knowingly** . . . benefit[ed], financially or by receiving anything of value, from participation in a venture" that engaged in the

alleged sex trafficking of C.H. 18 U.S.C. § 1591(a)(2) (emphasis added). "Participation in a venture" is defined as "**knowingly** assisting, supporting, or facilitating a violation of subsection (a)(1)." 18 U.S.C. § 1591(e)(4) (emphasis added). A "venture" is defined as "any group of two or more individuals associated in fact, whether or not a legal entity." 18 U.S.C. § 1591(e)(6). The SAC fails to plausibly allege that there was a venture of any kind between Omegle and the other user, much less that Omegle knowingly assisted, supported or facilitated that user's alleged sex trafficking venture involving C.H.

First, Plaintiffs' theory of beneficiary liability under Section 1591(a)(2) is defective for the same reason that their claim for a direct violation under subsection (a)(1) is fatally flawed. Specifically, the SAC does not allege any facts that Omegle *knowingly* benefited from *knowingly* participating in the alleged sex trafficking venture of C.H. with the other user. At its core, Plaintiffs' claim is that some individuals have used Omegle's real-time chat service to exploit children and that Omegle is aware such incidents have occurred based on news reports or law enforcement inquiries. (*See, e.g.*, Dkt. 75 ¶ 79 (citing, in part, ¶¶ 41-43).) But such general awareness of alleged past incidents unrelated to C.H. does not – and cannot – establish that Omegle "knowingly" participated in and "knowingly" benefited from the alleged sex trafficking venture of C.H. To conclude otherwise would improperly sever the actual knowledge standard from Section 1591. As in *Kik*, Plaintiffs' allegation that Omegle allegedly "knew that other sex trafficking incidents occurred" on its real-time chat platform fails to "plausibly establish that [Omegle] knowingly participated in the sex trafficking

15

venture involving [C.H.]." 482 F. Supp. 3d at 1251.

Second, even under courts' interpretation of "participation in a venture" under Section 1595 – which has a lower *mens rea* standard than that applicable here under Section 1591 – the SAC fails to plausibly allege a sex trafficking venture between Omegle and the other user involving C.H.[6] A plaintiff must either allege a "direct association" between the defendant and the trafficker or "facts from which the [c]ourt could reasonably infer [defendant] could be said to have a tacit agreement with the trafficker." *Doe v. Rickey Patel, LLC*, No. 0:20-60683-WPD-CIV-DIMITROULEAS, 2020 U.S. Dist. LEXIS 195811, *13-14 (S.D. Fla. Sept. 30, 2020) (internal quotation marks omitted); *see also Reddit*, Appendix A at p. 12 (same). This requires "at least a showing of a continuous business relationship between the trafficker and [defendant]". *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 970 (S.D. Ohio 2019).

But any such allegation is critically lacking here. The SAC fails to allege a single fact showing either a "direct association" or "continuous business relationship" between the user who allegedly engaged in the sex trafficking of C.H. and Omegle that would support the existence of a "venture." The SAC simply makes conclusory statements based on a recitation of the language of Section 1591 and references prior allegations that fail to establish any relationship between Omegle and the other user (Dkt. 75 ¶¶ 78-87), which are insufficient to

---

[6] Therefore, even in the absence of CDA immunity, Plaintiffs' claim for violation of Sections 1591 and 1595 would fail as the SAC fails to plausibly allege that Omegle participated in a "venture" under either section.

state a plausible claim. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Nor could Plaintiffs allege any such direct association or ongoing relationship between Omegle and the other user that would permit the reasonable inference of a tacit agreement between them because Omegle does not require users to register or log in to use the website (Dkt. 75 ¶¶ 36-37). Therefore, there can be no plausible allegation that Omegle had any knowledge of C.H., the other user, or that user's actions towards C.H. prior to this case, much less that Omegle had any prior or ongoing relationship with the other user.

The *J.B.* court found generalized allegations like Plaintiffs'—such as that craigslist knew its erotic services section was well known "as a place to easily locate victims"—were insufficient to establish that "Craigslist tacitly agreed to the sex trafficking of Plaintiff or others." *J.B. v. G6 Hosp., LLC*, No. 19-cv-07848-HSG, 2020 U.S. Dist. LEXIS 151213, *26-27 (N.D. Cal. Aug. 20, 2020). To conclude otherwise would result in the implausible suggestion "that Craigslist enters into tacit agreements with all traffickers (or even all posters) that use its website." *Id.* at 27. Thus, "[b]ecause Craigslist cannot be deemed to have participated in all ventures arising out of each post on its site, Plaintiff must [but did not] allege facts supporting the inference that Craigslist made a tacit agreement with the sex traffickers who victimized Plaintiff." *Id.* at 28. The *Reddit* court – agreeing with the *J.B.* court's analysis on the same question – similarly found that allegations that "Reddit has 'affiliations with sex traffickers by enabling the posting of child pornography on its websites'" and by "'making it easier to connect traffickers

17

with those who want to view'" such content were "not sufficient to show 'a continuous business relationship between' Reddit and traffickers." *Reddit*, Appendix A at p. 13. The SAC's allegations are even weaker than those in *J.B.* and *Reddit* given the lack of any prior or ongoing relationship between Omegle and the other user, much less any relationship involving the alleged sex trafficking of C.H. Even the *Twitter* decision is distinguishable on its facts. That court agreed with the "continuous business relationship" standard but found it was satisfied in part because of allegations that Twitter was notified on several occasions of the nature of the content at issue but either refused or failed to take action. *Twitter*, 2021 U.S. Dist. LEXIS 157158 at *73-77. No such allegation of any relationship between Omegle and the alleged perpetrator has been nor could be made here that could plausibly support a tacit agreement between Omegle and the other user with respect to the alleged sex trafficking of C.H.

Third, Section 1591 requires a "causal relationship between affirmative conduct furthering the sex-trafficking venture and receipt of a benefit, with . . . knowledge of that causal relationship." *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019). But the SAC alleges no facts demonstrating Omegle's receipt of a benefit causally related to any affirmative conduct that furthered the alleged sex trafficking venture of C.H.[7] To the contrary, it simply

---

[7] Notably, in *Geiss*, the court recognized that the "knowingly benefit" language is the same in Sections 1591 and 1595 and therefore "consider[ed] the 'benefits' element to have the same content in both provisions." 383 F. Supp. 3d at 169 n.5. Thus, even in the absence of CDA immunity, Plaintiffs' claim would fail because the SAC fails to plausibly allege that Omegle "knowingly" benefited from participating in the alleged sex trafficking venture involving C.H. as required by both Section 1591 and Section 1595.

repeats the statutory language, stating without factual support that Omegle "knowingly" benefited from the alleged sex trafficking venture perpetrated by the other user. (Dkt. 75 ¶¶ 83-84, 87.) The assertions added to this claim in the SAC do not cure this deficiency. (*See* id. ¶¶ 78-80.) Such conclusory statements that merely parrot the statutory language are insufficient to state a claim for relief. *Jabagat v. Lombardi*, No. 1:14CV89-HSO-RHW, 2015 U.S. Dist. LEXIS 178762, *11 (S.D. Miss. Jan. 30, 2015) (plaintiff's "conclusory allegation[] that 'Defendants knowingly benefitted financially' [was a] mere recitation of the elements of the cause of action" and insufficient to state a claim).

## IV.   Plaintiffs' Other Claims Also Fail As a Matter of Law

As shown above, CDA 230 bars Plaintiffs' claims. But Plaintiffs' other claims discussed below also fail on their own merits as a matter of law.

### A.   Plaintiffs' VPPA claim is fatally and irreparably deficient

The Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"), was enacted with the narrow purpose of "preserv[ing] personal privacy with respect to the rental, purchase, or delivery of video tapes or similar audio visual materials[.]" *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1253 (11th Cir. 2015) (internal quotation marks omitted). As an initial matter, this claim fails because it is abundantly clear from the SAC that Plaintiffs are attempting to bring a COPPA (Children's Online Privacy Protection Act) claim cloaked awkwardly as a VPPA claim. For example, in the "assertions" added by the SAC, Plaintiffs explicitly reference and implicitly rely on COPPA's prohibitions and definitions. (Dkt. 75 ¶¶ 90-93.) But Plaintiffs cannot use the VPPA – which does not apply to

Omegle's real-time chat service – to bring a COPPA claim when COPPA provides them no private right of action. *See Hubbard v. Google LLC*, No. 19-cv-07016-BLF, 2020 U.S. Dist. LEXIS 239936, *17 (N.D. Cal. Dec. 21, 2020).

Plaintiffs fail to state a VPPA claim for at least three other independent reasons: (1) Omegle is not a "video tape service provider" ("VTSP"); (2) C.H. is not a "consumer"; and (3) Omegle did not disclose C.H.'s "personally identifiable information" ("PII") to a third party.

**Omegle is Not a VTSP.**  The SAC must, but does not, plausibly allege that Omegle is a VTSP, which is narrowly defined as "any person, engaged in the business . . . of rental, sale, or delivery of **prerecorded video cassette tapes or similar audio visual materials**[.]" 18 U.S.C. § 2710(a)(4) (emphasis added). The SAC is devoid of any facts showing that Omegle falls within this definition. The new "assertions" in the SAC only relate to COPPA and are therefore irrelevant to whether Omegle is a VTSP. (Dkt. 75 ¶¶ 90-93.) Instead, Plaintiffs simply quote the VTSP definition and then assert, in conclusory fashion, that Omegle "deliver[s] videos recorded on its website." (Id. ¶ 94.) But that conclusion is false; Plaintiffs do not and cannot allege that Omegle is a VTSP as it does not offer "prerecorded" videos. As Plaintiffs' own allegations show, the Omegle website permits users to engage in *real-time* chats with one another using text or their webcams. (Id. ¶¶ 33, 36.) Offering users a means to essentially engage in a video call in no way equates with offering prerecorded video content for viewing. Even assuming that services that stream prerecorded content are encompassed within the VTSP definition (an issue the Court need not decide), Omegle is not such a

service as it merely provides a means for users to chat with one another in real time. Thus, the SAC does not, and cannot, allege that Omegle is a VTSP.

**C.H. is not a consumer under the VPPA.**  The VPPA claim also fails for the independent reason that C.H. is not a "consumer," defined as "any renter, purchaser, or subscriber of goods or services from a [VTSP]." 18 U.S.C. § 2710(a)(1). C.H. does not claim to be a "renter" or "purchaser," therefore, only the "subscriber" option remains. The SAC alleges only that "[a]s a user of the [Omegle] website, C.H. is a consumer". (Dkt. 75 ¶ 95.) But being a "user" of a website does not make one a "subscriber."

Courts have held that "something more" than visiting a website or downloading an app and viewing videos is required to be a "subscriber" under the VPPA. In *Ellis v. Cartoon Network, Inc.*, the Eleventh Circuit found that the "common thread" of the dictionary definitions was that "'subscription' involves some type of commitment, relationship, or association (financial or otherwise) between a person and an entity." 803 F.3d at 1256. The court found that plaintiff—who downloaded defendant's free app and viewed free content—did not satisfy the definition. *Id.* at 1257; *see also Perry v. CNN, Inc.*, 854 F.3d 1336, 1343-44 (11th Cir. 2017) (merely downloading an app was insufficient to be a "subscriber"). Similarly, in *Austin-Spearman v. AMC Network Entm't LLC*, plaintiff viewed video clips on AMC's website for free without any required login. 98 F. Supp. 3d 662, 664 (S.D.N.Y. 2015). Like *Ellis*, the court required evidence of a more "durable" and "ongoing" relationship for plaintiff to be a "subscriber." *Id.* at 669. *Compare Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 489 (1st

Cir. 2016) (distinguishing the insufficient allegations in *Ellis* and finding that the plaintiff in the case before the court had alleged the required "something more").

The SAC fails to plausibly allege the "something more" required for C.H. to be a "subscriber" of Omegle's real-time chat service. C.H. admits to being a one-time user of the website where no payment, registration or log in is required. (Dkt. 75 ¶¶ 36, 57, 95.) "Such casual consumption of web content, without any attempt to affiliate with or connect to the provider, exhibits none of the critical characteristics of 'subscription' and therefore does not suffice to render [C.H.] a 'subscriber'." *Austin-Spearman*, 98 F. Supp. 3d at 669. Thus, because C.H. is not a "consumer," the VPPA claim should be dismissed on this independent ground.

**No PII Disclosed as Defined by the VPPA.**  The VPPA claim should be dismissed on the independent ground that the SAC does not allege that Omegle disclosed PII, which the VPPA defines as "information which identifies a person as having requested or obtained specific video materials or services from a [VTSP]." 18 U.S.C. § 2710(a)(3).

Courts have recognized the narrow purpose of, and the correspondingly narrow definition of PII in, the VPPA. *See In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 284 (3d Cir. 2016) (the VPPA's purpose "was quite narrow: to prevent disclosures of information that would, with little or no extra effort, permit an ordinary recipient to identify a particular person's video-watching habits"). Courts have also rejected attempts—like that which Plaintiffs make here—to import COPPA's definition of PII to expand or replace the VPPA's narrow definition. *Id.* at 286-88. Consistent with its limited purpose, the VPPA

only "protects [PII] that identifies a specific person and ties that person to particular videos that the person watched." *In re Nickelodeon*, 827 F.3d at 285 (internal quotation marks omitted); *see also Perry v. CNN*, No. 1:14-CV-02926-ELR, 2016 U.S. Dist. LEXIS 179395, *9 (N.D. Ga. Apr. 20, 2016). Thus, a VPPA claim must plausibly allege the VTSP knew it was disclosing: "1) a user's identity; 2) the identity of the video material; and 3) the connection between the two—*i.e.*, that the given user had 'requested or obtained' the given video material." *In re Hulu Privacy Litig.*, 86 F. Supp. 3d 1090, 1097 (N.D. Cal. 2015).

The VPPA claim fails to plausibly allege any of these requirements for PII. The only information alleged to be PII under the VPPA is the unspecified "geolocation" allegedly disclosed by the other user. (Dkt. 75 ¶ 92.) But the SAC does not, and cannot, allege that this "geolocation" is capable, by itself, of (1) identifying C.H., (2) identifying video material, and (3) identifying the connection between the two (e.g., that she requested or obtained that specifically-identified video material).

Any of these reasons support dismissing the VPPA claim with prejudice.

### B.   Plaintiffs' IIED claim is properly dismissed

To state a claim for intentional infliction of emotion distress ("IIED") under Florida law,[8] Plaintiffs must establish that: (1) defendant's conduct was

---

[8] The substantive law of the forum state, Florida, applies to the state law claims absent an actual conflict of law. *Stone v. Wall*, 135 F.3d 1438, 1441 (11th Cir. 1998). There only appears to be a false conflict between the law of Florida and the law of New Jersey (Plaintiffs' state of residence) with respect to the state law claims, at least for purposes of the limited issues addressed in this Motion. *Estate of Miller v. Thrifty Rent-A-Car Sys., Inc.*, 609 F. Supp. 2d 1235, 1244 (M.D. Fla. 2009) (a false conflict exists where, among other situations, the laws of the states are the same or different but would produce the same outcome).

"intentional or reckless, *i.e.*, he intended his behavior when he knew or should have known that emotional distress would likely result;" (2) the conduct was "outrageous, *i.e.*, beyond all bounds of decency, atrocious and utterly intolerable in a civilized community;" and (3) the conduct caused severe emotional distress. *State Farm Mut. Auto. Ins. Co. v. Novotny*, 657 So. 2d 1210, 1212 (Fla. Dist. Ct. App. 1995); *see also Buckley v. Trenton Sav. Fund Soc'y*, 544 A.2d 857, 863 (N.J. 1988). But an IIED claim "will lie only where the defendant's conduct is so outrageous in character and so extreme in degree as to go beyond the bounds of decency and to be deemed utterly intolerable in a civilized society." *State Farm*, 657 So. 2d at 1212; *see also Buckley*, 544 A.2d at 863. Whether the SAC meets this exceedingly high standard is for the Court to decide as a matter of law. *Hendricks v. Rambosk*, No. 2:10-cv-526-FtM-29DNF, 2011 U.S. Dist. LEXIS 40608, *11 (M.D. Fla. Apr. 14, 2011); *Buckley*, 544 A.2d at 864. The SAC alleges that Omegle's "outrageous conduct" was its alleged failure to prevent children from using its website and to monitor the site "to ensure that its users were not being sexually abused, mistreated, or exploited[.]" (Dkt. 75 ¶ 132.) But this general allegation fails to state a plausible IIED claim.

First, there is no IIED claim where a party "does no more than pursue his legal rights in a permissible way, even if he knows his conduct will cause emotional distress to the plaintiff." *State Farm*, 657 So. 2d at 1212; *see also* RESTATEMENT (SECOND) OF TORTS § 46 cmt. g. As discussed above, Omegle has no obligation to monitor or police third-party users of its site. Stated differently, Omegle has the legal right to make decisions about monitoring its site and

therefore its exercise of that right cannot give rise to an IIED claim.

Second, this alleged conduct does not rise to the "extremely high" level of outrageous conduct necessary for an IIED claim. Demonstrating the extreme conduct necessary for an IIED claim, Florida courts have found insufficiently outrageous "even offensive and harmful conduct[] such as accusing someone of committing a felony or making explicit racial slurs." *Neely v. Wells Fargo Fin., Inc.*, No. 8:12-cv-542-T-33AEP, 2012 U.S. Dist. LEXIS 168669, *8 (M.D. Fla. Nov. 28, 2012); *see also Griffin v. Tops Appliance City, Inc.*, 766 A.2d 292, 296-97 (N.J. Super. Ct. App. Div. 2001) (New Jersey courts have found the "elevated threshold" for outrageous conduct "only in extreme cases"). The alleged conduct by Omegle is no different in kind than any other social networking website or app that offers users the means to communicate with one another in real time, including Facebook, Twitter, Discord, WhatsApp, Zoom, Microsoft Teams and many others. Therefore, Omegle's alleged conduct is not out of the norm and cannot be considered so "outrageous" or "extreme" as to permit liability for IIED.

Therefore, even setting aside the conclusion that CDA 230 bars this claim, the SAC fails to state a claim for IIED as a matter of law.

### C.    The intrusion upon seclusion claim fails to state a plausible claim

An intrusion upon seclusion claim requires three elements: (1) "a private quarter"; (2) "some physical or electronic intrusion into that private quarter"; and (3) "the intrusion must be highly offensive to a reasonable person." *Stasiak v. Kingswood Co-op, Inc.*, No. 8:11-cv-1828-T-33MAP, 2012 U.S. Dist. LEXIS 20609, *5 (M.D. Fla. Feb. 17, 2012); *see also Friedman v. Martinez*, 231 A.3d 719, 722 (N.J.

2020). As to the third element, Florida courts have incorporated the outrageousness standard of IIED claims. *Stasiak*, 2012 U.S. Dist. LEXIS 20609 at *6; *compare Friedman*, 231 A.3d at 729 (New Jersey courts require a "highly offensive" intrusion). Here, the SAC vaguely alleges that C.H.'s PII and "viewing data" were "surreptitious[ly] collect[ed] and track[ed]," and that Omegle purportedly engaged in "surreptitious highly-refined tracking of its website's users through video." (Dkt. 75 ¶¶ 105-106.) But these vague allegations, which omit any actual facts, do not state a plausible claim for intrusion. Moreover, the "assertions" added to the SAC – regarding alleged exposure of geolocation, age verification for children, and the alleged pairing of C.H. with another user of the real-time chat (id. ¶¶ 101-103) – have no bearing on an intrusion claim.

First, the intrusion claim cannot be based only on C.H.'s use of her webcam in the real-time chat with other users. Although Plaintiffs attempt to paint Omegle as a "voyeur" surreptitiously commandeering the webcam to secretly observe C.H. (*see* id. ¶ 104), that is false. C.H. elected to engage in video chats with other users, which necessarily required use of a webcam.

Second, the SAC's vague allegations fail to either establish an objectively reasonable expectation of privacy or demonstrate that the alleged intrusion would be highly offensive or outrageous to a reasonable person. The SAC fails to allege that Omegle collected any information that in fact identified C.H. or her "viewing data." It also fails to allege any facts to explain how Omegle "tracked" C.H. "through video." (Id. ¶ 106.) And to the extent Plaintiffs contend the intrusion was any screenshots or video captured by the other user, that alleged

intrusion was committed by the user, not Omegle. Finally, to the extent Plaintiffs rely on the alleged collection or exposure of C.H.'s "geolocation," such collection is not sufficiently offensive to support an intrusion claim.

Courts have rejected intrusion claims alleging the collection of much more specific information than the unspecified "geolocation" or "viewing data" alleged here. For example, in one such case, plaintiffs alleged an intrusion claim against Viacom and Google for the use of cookies placed on the computers of visitors to their websites. They alleged that the cookies collected information about their children and tracked their web browsing and video viewing activities. *In re Nickelodeon*, 827 F.3d at 269. As to Google, the court found that the use of tracking cookies was not "sufficiently offensive, standing alone, to survive a motion to dismiss."[9] *Id.* at 294-95. Similarly, in *Manigault-Johnson v. Google, LLC*, the court rejected an intrusion claim based on the alleged collection of children's PII. No. 2:18-cv-1032-BHH, 2019 U.S. Dist. LEXIS 59892 (D.S.C. Mar. 31, 2019). Defendants had collected PII from children under 13 who viewed videos on their apps and websites without parental notice and consent. The court concluded that this was not "sufficiently offensive conduct" to state an intrusion claim. *Id.* at *14-18; *see also Popa v. Harriet Carter Gifts, Inc.*, 426 F. Supp. 3d 108, 112, 122-23 (W.D. Pa. 2019) (website's collection of user's name, residential and email addresses, keystrokes and mouse clicks, not sufficiently outrageous conduct).

Similarly, here, the allegation that Omegle collected C.H.'s "geolocation"

---

[9] As to Viacom, the court reached a different conclusion because of the "duplicitous tactics" it used in collecting the information. *Id.* at 295.

or "viewing data" fails to allege the type of highly offensive conduct required for an intrusion claim. This claim should be dismissed on this independent ground.

### D.  Plaintiffs fail to state a claim for negligence as a matter of law

The elements of a negligence claim are familiar: "1) the existence of a duty recognized by law; 2) failure to perform that duty; and 3) injury or damage to the plaintiff proximately caused by such failure." *Action Sec. Serv., Inc. v. Am. Online, Inc.*, No. 6:03-cv-1170-Orl-22DAB, 2005 U.S. Dist. LEXIS 50842, *20 (M.D. Fla. May 27, 2005); *see also Jersey Cent. Power & Light Co. v. Melcar Util. Co.*, 59 A.3d 561, 571 (N.J. 2013). The existence of a duty is a threshold requirement and a question of law for the court. *Virgilio v. Ryland Group, Inc.*, 680 F.3d 1329, 1339 (11th Cir. 2012); *see also Carvalho v. Toll Bros. & Developers*, 675 A.2d 209, 212 (N.J. 1996). Plaintiffs allege variously that Omegle owed "C.H. and the general public" (1) "a duty to use ordinary care in designing, maintaining, and distributing its products and services to children", (2) "a duty of care to provide a safe online community," and (3) "an ongoing, non-delegable duty to continue to monitor, supervise, inspect, and assess the use of service and application [sic] to prevent the mistreatment of its users." (Dkt. 75 ¶¶ 117, 119, 121.)

Although foreseeability is an important component of the determination whether a duty exists, public policy considerations can also play a role. *See e.g., Estate of Desir ex rel. Estiverne v. Vertus*, 69 A.3d 1247, 1256 (N.J. 2013) (noting that "because imposing a duty based on foreseeability alone could result in virtually unbounded liability," New Jersey courts have "been careful to require that the analysis be tempered by broader considerations of fairness and public policy");

28

*Biglen v. Fla. Power & Light Co.*, 910 So. 2d 405, 409 (Fla. Dist. Ct. App. 2005)

("Finding that a legal duty exists in a negligence case involves the public policy

decision that a defendant should bear a given loss, as opposed to distributing the

loss among the general public.") (internal quotation marks omitted).

Even assuming the SAC plausibly alleges the foreseeability of harm, other

considerations weigh heavily against imposing a duty upon Omegle to be the

guarantor of the safety of the users of its website against harm perpetrated by

their fellow users. For example, the relationship between Omegle and C.H. is at

best fleeting—C.H. had never used the Omegle website before the day the

alleged incident occurred, she was not required to register with or log into the

website, and she was not required to make any payment to Omegle. In short,

C.H.'s "relationship" with Omegle was no more substantial than her

"relationship" with any other website she visited. The SAC's vague allegations

also do not demonstrate any "special relationship" that would support imposing

a duty. Fairness and public policy counsel against imposing a duty of care under

these circumstances. A number of cases have declined to impose such a duty on

websites that facilitate users' communications.

For example, in *Dyroff v. Ultimate Software Group, Inc.*, plaintiff alleged that

a website had a duty to warn her son who died from an overdose of fentanyl-

laced heroin purchased from a dealer he met on the website. No. 17-cv-05359-LB,

2017 U.S. Dist. LEXIS 194524, *1, 30 (N.D. Cal. Nov. 26, 2017). The district court

found that there was no special relationship between a website and its users that

would support imposing a duty to warn and no other ground to impose an

ordinary duty of care. *Id.* at *36-40. The Ninth Circuit affirmed, noting that "[n]o website could function if a duty of care was created when a website facilitates communication, in a content-neutral fashion, of its users' content." *Dyroff*, 934 F.3d at 1101. Similarly, in *Doe No. 14 v. Internet Brands, Inc.*, defendant offered a website on which aspiring models could post profiles. No. CV 12-3626-JFW (PJWx), 2016 U.S. Dist. LEXIS 192144, *1-2 (C.D. Cal. Nov. 14, 2016). Two individuals used the website to identify targets for a scheme under which they would pose as talent scouts and lure the models to a fake audition where they were drugged and assaulted. Defendant learned that these individuals were using the website to identify targets and plaintiff subsequently became a victim of it. *Id.* at *2, 4. Plaintiff sued the site alleging a negligent failure to warn. But the court dismissed the claim, finding that the site had no duty to warn either plaintiff or its users generally about the risk of the perpetrators' scheme. *Id.* at *13-14 (finding "no exceptional reason to depart from the general common law rule that one owes no duty to control the conduct of another, nor to warn those endangered by such conduct") (internal quotation marks omitted).

Imposing a duty of care on Omegle—much less the impossible duty of guaranteeing website users' safety—would be both ineffectual and unjust. No website that facilitates users' communications—including all social networking sites—could function if such a duty were imposed. Thus, because no duty exists, the negligence claim fails (in addition to being barred by CDA 230).

### E.    The public nuisance claim is implausible and should be dismissed

The SAC asserts that "Omegle created and developed a public nuisance

Omegle.com which violates public rights, and subverts public order, decency, and morals [and] inconveniences and damages the general public, including Plaintiff [sic]." (Dkt. 75 ¶¶ 148-149.) But "the tort of public nuisance fundamentally involves the vindication of a right common to the public." *In re Lead Paint Litig.*, 924 A.2d 484, 496 (N.J. 2007) (citing RESTATEMENT § 821B). Critical to such a claim is "some interference with a public right", which is a right "common to all members of the general public." RESTATEMENT § 821B, cmt. g ("It is collective in nature and not like the individual right that everyone has not to be assaulted or defamed or defrauded or negligently injured."). But the SAC fails to plausibly allege that Omegle's chat service implicates a "public right" that is "common to all members of the general public." Their conclusory statements do not "raise a right to relief above the speculative level" and are insufficient to state a claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, even if CDA 230 did not bar this claim, it would fail on its own merit as a matter of law.

## F.   There is no cause of action for ratification/vicarious liability

The SAC's addition of "assertions" to the cause of action for "ratification/vicarious liability" cannot rescue it because it is not a cognizable cause of action. In that "claim," the SAC alleges that Omegle is "vicariously liable for the conduct of the 'cappers' because they [sic] ratified their conduct, knowingly received the benefits of said conduct [and] created, developed, and maintained a forum to entice, encourage and enable the sharing of such conduct." (Dkt. 75 ¶¶ 143-144.) But "ratification" and "vicarious liability" "are not independent causes of action[,] they are theories of liability for other claims."

31

*Ceithami v. Celebrity Cruises, Inc.*, 207 F. Supp. 3d 1345, 1349 (S.D. Fla. 2016); *see also Williams v. Verizon N.J., Inc.*, No. 2:19-09350-KM-MAH, 2020 U.S. Dist. LEXIS 43528, *32 (D.N.J. Mar. 12, 2020). Thus, this "claim" should be dismissed.

## V.      Leave to Amend Should Not Be Granted

Notwithstanding the general liberal standard for pleading amendments, courts routinely deny leave to amend when CDA 230 bars the claims on the ground that amendment would be futile. *See, e.g.*, *Kik*, 482 F. Supp. 3d at 1251-52 (amendment futile as CDA 230 would also bar plaintiff's proposed new claims); *Saponaro*, 93 F. Supp. 3d at 322 (dismissing complaint with prejudice based in part on CDA 230). This case is no different. Plaintiffs' claims are largely, if not entirely, barred by CDA 230. Even assuming that the VPPA claim is not barred by CDA 230, any attempted amendment to that claim is futile as the statute simply does not apply. Additionally, the deficiencies in Plaintiffs' claims were described in Omegle's prior two motions to dismiss. But despite having the opportunity to twice amend their complaint, Plaintiffs failed to address those deficiencies, strongly suggesting that they cannot be cured by amendment. Thus, because further amendment would be futile, the SAC should be dismissed with prejudice. *Coventry First, LLC v. McCarty*, 605 F.3d 865, 870 (11th Cir. 2010) (futility of amendment is a proper ground to dismiss with prejudice).

## CONCLUSION

Therefore, for the reasons stated herein, Omegle respectfully requests that Plaintiffs' SAC be dismissed in its entirety and without leave to amend.

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), counsel for Defendant represents that they have conferred with counsel for Plaintiffs. However, the parties were unable to reach agreement with respect to the relief requested in this Motion.

DATED: October 13, 2021

FOCAL PLLC

By: s/ Stacia N. Lay
    Stacia N. Lay, *Pro Hac Vice*
    Venkat Balasubramani, *Pro Hac Vice*
    900 1st Avenue S., Suite 201
    Seattle, Washington 98134
    Telephone: (206) 529-4827
    stacia@focallaw.com
    venkat@focallaw.com

Respectfully submitted,

THOMAS & LoCICERO PL

By: s/ James J. McGuire
    James J. McGuire (FBN 187798)
    601 South Boulevard
    Tampa, Florida 33606
    Telephone: (813) 984-3060
    jmcguire@tlolawfirm.com

    Daniela B. Abratt (FBN 118053)
    915 Middle River Dr., Suite 309
    Fort Lauderdale, Florida 33304
    Telephone: (954) 703-3416
    dabratt@tlolawfirm.com

*Attorneys for Defendant Omegle.com, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on October 13, 2021, a true and correct copy of the foregoing will be served electronically through the Clerk of Court's CM/ECF filing system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail, postage prepaid, to any parties that do not participate in the CM/ECF filing system.

    s/ Stacia N. Lay
    Stacia N. Lay

# TAB 81

**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

M.H. and J.H., on behalf of their
minor child C.H.,

                    Plaintiffs,

          v.                                Civil Action No. 21-cv-00814

OMEGLE.COM, LLC,

                    Defendant.

**PLAINTIFFS' OPPOSITION TO DEFENDANT OMEGLE.COM, LCC'S
MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

# <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS .................................................................................. i

TABLE OF AUTHORITIES ........................................................................ iii

MEMORANDUM OF LAW IN OPPOSITION .................................................. 1

RELEVANT FACTS ....................................................................................... 1

ARGUMENT ................................................................................................... 4

   I.   THE PLAINTIFFS ALLEGE SUFFICENT FACTS UNDER THE
       MOTION TO DISMISS STANDARD ................................................. 4

  II.  OMEGLE IS NOT ENTITLED TO SECTION 230 IMMUNITY AND
      THE PLAINTIFFS ARE ENTITLED TO DISCOVERY ........................ 5

     A.  Omegle Knowingly Violated 18 U.S.C. §§ 2252A and 1591 ............... 5

     B.  Omegle is Liable Under 18 U.S.C. §§ 2255 and 1595 ........................ 6

 III.  THE PLAINTIFFS PROPERLY PLEADED CLAIMS UNDER
       18 U.S.C. § 2255 ("MASHA'S LAW") ....................................................... 7

    A.  Masha's Law Provides C.H. with a Civil Remedy Against Omegle ........ 7

     B.  Omegle Knowingly Produced and Possessed Child Pornography in
        Violation of 18 U.S.C. § 2252A ...................................................... 9

     C.  Omegle Played a Causal Role in C.H.'s Actual Losses ..................... 10

     D.  Omegle Caused C.H. to Suffer Personal Injury ............................... 12

 IV.  THE PLAINTIFFS PROPERLY PLEADED CLAIMS UNDER
       18 U.S.C. § 1595 ("FOSTA") ........................................................... 13

     A.  Omegle Knowingly Enticed and Harbored Child Pornography
        Crimes on its Platform ................................................................. 13

     B.  Omegle Knowingly Benefitted from an Online Sex Trafficking
        Venture Involving C.H. ................................................................. 14

     C.  Omegle is Liable for Knowingly Benefitting from "Cappers" on its
        Platform ..................................................................................... 15

  V.  THE PLAINTIFFS CLEARLY PLEADED VPPA VIOLATIONS ......... 16

     A.  The Plaintiffs Properly Alleged that Omegle is a "Video Service
        Provider" .................................................................................... 16

     B.  C.H. Properly Pleaded That She Was an Omegle Subscriber .......... 17

C.    The Plaintiffs Properly Pleaded that Omegle Disclosed C.H.'s
Personally Identifiable Information ................................................. 17

VI. THE PLAINTIFFS PROPERLY ALLEGED SUFFICIENT COMMON
LAW CLAIMS AGAINST OMEGLE ..................................................... 18

A.    The Plaintiffs Properly Pleaded Claims for Intentional Infliction of
Emotional Distress ............................................................................ 18

B.    The Plaintiffs Properly Pleaded Claims for Intrusion Upon Seclusion
19

C.    The Plaintiffs Properly Pleaded Claims for Negligence .................. 19

D.    The Plaintiffs Allege Omegle is a Public Nuisance........................... 20

CONCLUSION................................................................................................. 20

CERTIFICATE OF SERVICE........................................................................ 22

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*A.B. v. Hilton Worldwide Holdings Inc.,* 2020 WL 5371459
(D. Or. Sept. 8, 2020) ...................................................................... 16

*Ashcroft v. Iqbol*, 556 US 662 (2009)............................................................ 4

*Barnes v. Yahoo!, Inc.,* 570 F.3d 1096 (9th Cir. 2009), as amended
(Sept. 28, 2009) ................................................................................. 6

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)......................................... 4

*In re Boland,* 946 F.3d 335 (6th Cir. 2020)................................................. 12

*B.M. v. Wyndham*, 2020 WL 4368214 ....................................................... 15

*Brooks v. Blue Cross & Blue Shield of Fla. Inc.*, 116 F.3d 1364
(11th Cir. 1997) ................................................................................. 5

*Broberg v. Carnival Corp.*, 303 F. Supp. 3d 1313 (S.D. Fla. 2017) ........... 18

*Doe v. Bates*, No. 5:05-CV-91-DF-CMC, 2006 WL 3813758
(E.D. Tex. Dec. 27, 2006) ................................................................. 9

*Doe v. Hesketh*, 828 F.3d 159 (3rd Cir. 2016) ........................................... 10

*Doe v. Twitter, Inc.*, No. 21-CV-00485-JCS, 2021 WL 3675207
(N.D. Cal. Aug. 19, 2021).................................................................. 16

*Doe S.W. v. Lorain-Elyria Motel, Inc.,* No. 2:19-CV-1194, 2020 WL
1244192 (S.D. Ohio Mar. 16, 2020)................................................... 16

*Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251 (11th Cir., 2015) .............. 17

*Flo-Sun, Inc. v. Kirk,* 783 So. 2d 1029 (Fla. 2001) .................................... 20

*H.H. v. G6 Hosp., LLC*, 2019 WL 6682152 (S.D. Ohio Dec. 6, 2019) ........ 16

*J.C. v. Choice Hotels Int'l, Inc., No.* 20-CV-00155-WHO,
2020 WL 6318707 (N.D. Cal. Oct. 28, 2020)................................... 16

*Kirk v. U.S. Sugar Corp.*, 726 So. 2d 822 (Fla. Dist. Ct. App. 1999) ........ 20

*Lemmon v. Snap, Inc.*, 995 F.3d 1085 (9th Cir. 2021) ................................. 7

*New York v. Ferber*, 458 U.S. 747 (1982) ..................................................... 11

*Osborne v. Ohio*, 495 U.S. 103 (1990) .......................................................... 11

*In re Nickelodeon Consumer Privacy Litigation,* 827 F.3d 262
(3d Cir. 2016)................................................................................................. 17

*Paroline v. United States*, 572 U.S. 434 (2014) ..................................... 11-12

*Sacco v. Eagle Finance Corp. of North Miami Beach*, 234 So.2d 406
(Fla. 3d DCA 1970) ...................................................................................... 19

*Smith v. United States,* 508 U.S. 223 (1993) ............................................... 13

*S. Y. v. Naples Hotel Co.,* 2020 WL 4504976 (M.D. Fla. Aug. 5, 2020)..... 15

*Tilton v. Playboy Entm't Group, Inc.,* 554 F.3d 1371 (11th Cir.2009) ...... 10

*United States v. Flanders,* 752 F.3d 1317 (11th Cir. 2014) ....................... 15

*United States v. Hristov*, 466 F.3d 949 (11th Cir. 2006)............................ 10

*United States v. Jones,* 565 U.S. 400 (2012)................................................ 18

*United States v. Thomas*, 893 F.2d 1066 (9th Cir. 1990)............................. 9

*United States v. Tollefson*, 367 F. Supp. 3d 865
(E.D. Wis. 2019) ............................................................................................ 15

*Vanlandingham v. City of Abbeville, Alabama*, 483 F. Supp. 3d 1174,
(M.D. Ala. 2020) ............................................................................................. 4

*Yershov v. Gannett Satellite Information Network, Inc.,*
820 F.3d 482 (1st Cir., 2016) ................................................................. 17, 18

## Statutes and Rules

16 U.S.C. § 6501-6505................................................................................. 17

18 U.S.C § 1591(a) .................................................................................passim

18 U.S.C. § 1595...................................................................................passim

18 U.S.C. § 2252A ................................................................. 6,7

18 U.S.C. § 2255 .............................................................. passim

18 U.S.C. § 2710(a)(4) ........................................................ 18

47 U.S.C. § 230 ..................................................................... 5

Fed. R. Civ. P. 12(b)(6) ........................................................ 4

Fed. R. Civ. P. 8(a)(2) ........................................................... 9

16 C.F.R. 312.2 .................................................................... 18


## Secondary Sources

Cong. Rec. S14195 (12-20-05) ............................................ 11

Claire Finkelstein, *Is Risk a Harm?,* 151 U. PA. L. REV. 963, 964 (2003) ................................................................................... 12

JOSHUA DRESSLER, UNDERSTANDING CRIMINAL LAW 122 (4th ed. 2006) ....................................................................... 12

*United States Department of Justice Manual* (2020) .................. 8

## <u>MEMORANDUM OF LAW IN OPPOSITION</u>

In their motion to dismiss (Dkt. 78), Defendant Omegle.com, LLC ("Omegle") continues to deny responsibility for its actions and disclaims any liability to Plaintiffs despite the rapidly evolving legal landscape which increasingly holds Internet Service Provider's ("ISP") liable for the harms they facilitate and oftentimes create. Plaintiffs' Second Amended Complaint states plausible claims for relief under 18 U.S.C. §§ 2255 and 1595, and common law. Particularly at this early stage, without the benefit of discovery, and given that much of the relevant evidence is primarily if not exclusively in the hands of the Defendant, dismissal of the complaint would be wholly improper, unfair, and premature.

WHEREFORE, for the reasons stated herein, Plaintiffs respectfully request that the Court deny Defendant Omegle's Motion to Dismiss the Amended complaint.

## <u>RELEVANT FACTS</u>

Omegle promotes, markets, and advertises itself as a place to "Talk to strangers!" (Dkt. 75 ¶43). Omegle maintains itself as a "matchmaking" service to connect people who access their platform with strangers via video. (Dkt.75 ¶44). Omegle pairs users randomly and in some cases matches users according to similarities in conversations and subjects. (Dkt. 75 ¶¶33-34). Omegle does not require any age verification or

1

authentication. (Dkt. 75 ¶37). Omegle fails to prevent minors under the age of thirteen from accessing its website. (Dkt. 75 ¶¶38, 42). Since at least 2016, the use of Omegle's website by predators was known to the public and to Omegle. (Dkt. 75 ¶41). Activists have recorded videos of themselves on Omegle attempting to catch predators. (Dkt. 75 ¶40-41). Omegle has full knowledge of the extent to which its website is used to sexually target, groom, exploit, and abuse children like the Plaintiff C.H. (Dkt. 75 ¶43). Omegle manufactured a product which caters to child predators and receives value for the intended use of its website and related services. (Dkt. 75 ¶¶45-46).

During the COVID-19 pandemic, C.H. attended school remotely and as such her school provided her with a Chromebook. (Dkt. 75 ¶54). Omegle knew that child predators or "cappers"[1] use its website to exploit children by creating child sex abuse material and other illicit and illegal content—including screen-captured videos—and that this content was being shared on Omegle and other internet platforms. (Dkt. 75 ¶¶39, 40, 43, 44, 55). Omegle knowingly received value, such as through advertisements on their platform, for the use of their product as a tool for

---

[1] A "capper" is a website user who tricks children into committing a sexual act online via live stream while screen capturing or recording the video. *See* New Sextortion Tactics Reported to Cybertip.ca. (April 1, 2020). Retrieved May 17, 2021 from https://www.cybertip.ca/app/en/ctipalerts

child exploitation, child pornography, and child sex abuse. (Dkt. 75 ¶¶ 46, 48, 49, 56, 84).

On or about March 31, 2020, C.H. accessed Omegle's website Omegle.com. (Dkt. 75 ¶57). Omegle initially paired her with a group of minors who appeared to her to be older. (Dkt. 75 ¶57). Upon being paired in a second chat, C.H. encountered a black screen. Shortly thereafter, C.H. saw text being typed on the black screen. (Dkt. 75 ¶58). This unknown user ("John") provided C.H. with her geolocation. John also threatened to hack the cell phones and computers in C.H.'s house. (Dkt. 75 ¶59). C.H. pleaded with John to leave her alone. (Dkt. 75 ¶60).

John then instructed C.H. to remove all her clothing—including her underwear—and to touch, fondle, and masturbate her naked genitals in front of the camera. (Dkt. 75 ¶61). C.H. pleaded with John and offered gift cards to him in lieu of complying with his demands. *Id.* John demanded that she remove her clothing and display her genitals. *Id.* Eventually, C.H. complied with John's demands, removed all her clothing, and touched herself in a sexually explicit manner. *Id.* John recorded C.H.'s actions, forever memorializing her child sex abuse performance. (Dkt. 75 ¶62).

Omegle knew that children like C.H. were at risk of encountering predators like John on its website Omegle.com. Omegle holds itself out to be

a platform that "monitors" user content. (Dkt. 75 ¶¶50-52). Omegle actively

matches underage children with adult strangers. *Id.* Omegle also knew that

its profits, in the form of increased web traffic and advertising revenue,

were increased in part because child predators like John—who are known

to Omegle as "cappers"—took explicit recordings of children like C.H. and

shared them online. (Dkt. 75 ¶63). In early 2020, "cappers" such as John

flocked to omegle.com to take advantage of the unprecedented increase in

opportunities to engage with children online. (Dkt. 75 ¶65). Immediately

after this incident, C.H. notified her parents about what occurred and

M.H. and J.H. reported the incident to law enforcement. (Dkt. 75 ¶66).

## ARGUMENT

## I.   THE PLAINTIFFS ALLEGE SUFFICENT FACTS UNDER THE MOTION TO DISMISS STANDARD

A Fed. R. Civ. P. 12(b)(6) motion to dismiss tests whether the

complaint provides: "a short and plain statement of the claim showing

that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). *See

Vanlandingham v. City of Abbeville, Alabama*, 483 F. Supp. 3d 1174,

1179–80 (M.D. Ala. 2020). This "does not require 'detailed factual

allegations.'" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). The

reviewing court is "to draw on its judicial experience and common sense."

*See Ashcroft v. Iqbol*, 556 U.S. 662, 679 (2009). A complaint should not be

dismissed for failure to state claim unless no set of facts would entitle the plaintiff to relief. *See Twombly*, 550 U.S. at 570. In this case, the Plaintiffs amply pleaded their claims. Plaintiffs are entitled to the presumption that they alleged true facts and Plaintiffs are entitled to reasonable inferences in their favor. *Brooks v. Blue Cross & Blue Shield of Fla. Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). Even if the Court questions Plaintiffs' claims, dismissal is nonetheless improper. All evidence is in the primary—if not exclusive—control of Omegle. Plaintiffs are entitled to an opportunity to obtain that evidence. Omegle's motion fails as a matter of law.

## II.   OMEGLE IS NOT ENTITLED TO SECTION 230 IMMUNITY AND THE PLAINTIFFS ARE ENTITLED TO DISCOVERY

### A.   Omegle Knowingly Violated 18 U.S.C. §§ 2252A and 1591

Omegle's conduct falls outside the bounds of the Communications Decency Act's ("CDA") protection. 47 U.S.C. § 230. Section 230 ("CDA 230") contains an exemption which eliminates immunity for civil claims "brought under section 1595 of Title 18, if the conduct underlying the claim constitutes a violation of section 1591[.]" 47 U.S.C. § 230 (e)(5)(A). The same exemption applies to 18 U.S.C. § 2255. The liability limitation in CDA 230 is not premised exclusively upon whether the content in question originated with a third party. Rather "subsection 230(c)(1)

precludes liability when the duty the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a publisher or speaker." *Barnes v. Yahoo!, Inc.,* 570 F.3d 1096, 1107 (9th Cir. 2009), as amended (Sept. 28, 2009). The Plaintiffs do not allege that Omegle was a publisher or speaker of third-party communications. The Plaintiffs instead allege, that Omegle knowingly received value by knowingly creating a dangerous forum which connected unsuspecting children to pedophiles and child molesters. (Dkt. 75 ¶61). Omegle's motion should be denied because—especially with internet crimes involving child sex trafficking—the civil remedies in Chapter 110 are a necessary component of the federal law enforcement scheme found at 18 U.S.C. §§ 2252A and 1591.

## B.   Omegle is Liable Under 18 U.S.C. §§ 2255 and 1595

The Plaintiffs' complaint clearly alleges facts that Omegle knowingly participated in trafficking child pornography and knowingly received financial gain from the creation of C.H.'s child pornography. (Dkt. 75 ¶¶39, 40, 43, 44, 55). Omegle has a duty to comply with the law to uphold its own terms of service. The Plaintiff's product defect claims are not premised on Omegle's status as a speaker or publisher but as the designer, creator, developer, producer, and maintainer of a tool that Omegle knew or should have known posed a danger to children like C.H. Omegle's duty to design a safe product is fully independent and separate

from Omegle's role in monitoring or publishing third-party content. *See Lemmon v. Snap, Inc.*, 995 F.3d 1085 (9th Cir. 2021). Furthermore, Omegle has long known that "cappers" use its website to sexually abuse children and memorialize that abuse online for eternity. (Dkt. 75 ¶65).

## III.   THE PLAINTIFFS PROPERLY PLEADED CLAIMS UNDER 18 U.S.C. § 2255 ("MASHA'S LAW")

The Plaintiffs properly pleaded claims under 18 U.S.C. § 2255 for violations of 18 U.S.C. § 2252A and are entitled to the relief Congress intended.

### A.   Masha's Law Provides C.H. with a Civil Remedy against Omegle

C.H. suffered personal injury because Omegle knowingly facilitated the production of her child pornography in violation of Masha's Law which states: (Dkt. 75 ¶¶ 72, 74)

> Any person who, while a minor, was a victim of a violation of section 1589, 1590, 1591, 2241(c), 2242, 2243, 2251, 2251A, 2252, 2252A, 2260, 2421, 2422, or 2423 of this title and who suffers personal injury as a result of such violation, regardless of whether the injury occurred while such person was a minor, may sue in any appropriate United States District Court…

18 U.S.C. § 2255 (Pub. L. 115–126, title I, 102, Feb. 14, 2018, 132 Stat. 319).

A plain reading of Section 2255's non-limiting language indicates that it allows plaintiffs to "sue [anyone] in any appropriate United States District Court." Congress did not limit actionable defendants to convicted criminals,

individuals, or entities. As long as a plaintiff can gain jurisdiction over a party "in any appropriate United States District Court," a plaintiff can sue.

There is nothing unique or unusual about Title 110 offenses which limit criminal actions to individuals. The United States Department of Justice Manual ("JM") emphasizes that:

> Corporations should not be treated leniently because of their artificial nature nor should they be subject to harsher treatment. Vigorous enforcement of the criminal laws against corporate wrongdoers, where appropriate, results in great benefits for law enforcement and the public…. Indicting corporations for wrongdoing enables the government to be a force for positive change of corporate culture, and a force to prevent, discover, and punish serious crimes.

9-28.000 – Principles of Federal Prosecution of Business Organizations, *United States Department of Justice* (2020), https://www.justice.gov/jm/jm-9-28000-principles-federal-prosecution-business-organizations (last visited Nov. 2, 2021).

Federal prosecutors are encouraged to prosecute "large scale distributors of obscene material who realize substantial income from their multi-state operations." (JM, 9-75.000 – Child Sexual Exploitation, Sexual Abuse, and Obscenity, 2020). In addition, "prosecution of cases involving relatively small distributors can have a deterrent effect and […] may be appropriate on a case-by-case basis." *Id*.

Omegle's argument that only individuals can be liable for child pornography offenses is wrong. (Dkt. 78, p.9). Omegle's reliance on an obscure unpublished district court decision from 15 years ago is unpersuasive and irrelevant. *See Doe v. Bates*, No. 5:05-CV-91-DF-CMC, 2006 WL 3813758 (E.D. Tex. Dec. 27, 2006). The Court should disregard *Bates* in its entirety.

## B. Omegle Knowingly Produced and Possessed Child Pornography in Violation of 18 U.S.C. § 2252A

The Plaintiffs properly allege that Omegle "knowingly' violated 18 U.S.C. § 2252A. In *United States v. Thomas*, 893 F.2d 1066 (9th Cir. 1990), the "knowingly" standard for child pornography crimes was interpreted as not requiring actual knowledge that either the visual depiction portrayed sexually explicit conduct or the fact that a participant in that conduct was a minor. The Plaintiffs are not required to prove that Omegle had actual knowledge that it was specifically producing or possessing C.H.'s sexually explicit images.

The Court should not superimpose an artificial *mens rea* requirement on child pornography crimes. The scienter required for civil liability is not greater than scienter for criminal liability. The Plaintiffs sufficiently pleaded facts that Omegle received a thing of value, promised that they monitor the activity on their website, and were aware of "cappers," or predators on their platform. (Dkt. 75, ¶55). Such knowledge makes them liable. (Dkt. 78, p.9).

9

Furthermore, Omegle knowingly matched minors like C.H. with predators like "Doe." (Dkt. 75, ¶41-43). "Knowledge through deliberate indifference occurs where a party acts with an awareness of the high probability of the existence of the fact in question[.]" *See Tilton v. Playboy Entm't Group, Inc.*, 554 F.3d 1371, 1378 (11th Cir. 2009) (*quoting United States v. Hristov*, 466 F.3d 949, 952 (11th Cir. 2006)).

## C.   Omegle Played a Causal Role in C.H.'s Actual Losses

In *Doe v. Hesketh*, 828 F.3d 159, 168 (3rd Cir., 2016), a district court evaluated the propriety a civil claim under 18 U.S.C. § 2255. After examining the legislative history, the court observed that allowing such a claim "…is consistent with Congress's remedial scheme for child victims of sex crimes." *Doe v. Hesketh*, *supra* at 168. The court further noted:

> The law's general purpose is to provide […] compensation to child pornography victims[.] *See* 152 Cong. Rec. H5705-01 (daily ed. July 25, 2006) (statement of Rep. Gingrey) ("Currently, a person who illegally downloads music faces penalties in civil court that are three times as harsh as a person who downloads child pornography. This horrible inequity was the inspiration behind the introduction of Masha's Law…"); *see also* 151 Cong. Rec. S14187-03 (daily ed. Dec. 20, 2005) (statement of Sen. Kerry) ("This legislation increases the civil penalties recoverable by victims of child sexual exploitation, including internet child pornography").

*Doe v. Hekseth, supra* at 171.

Masha's Law was intended "to provide meaningful civil remedies for victims of the sexual exploitation of children…." Cong. Rec. S14195 (12-20-05). At the outset, Senator Kerry, one of two sponsors of the bill, explained that the purpose of the legislation was "to increase civil penalties for child exploitation." He noted that child pornography had become a "multi-billion-dollar internet business."

Over thirty-five years ago, in *New York v. Ferber*, 458 U.S. 747, 759 (1982), the Supreme Court held that the harm from trafficking child pornography "poses an even greater threat to the child victim than does sexual abuse or prostitution" because the victim must "go through life knowing that the recording is circulating within the mass distribution system for child pornography."

In *Osborne v. Ohio*, 495 U.S. 103, 104 (1990), the Supreme Court recognized that "such materials […] may be used by pedophiles to seduce other children." More recently, in *Paroline v. United States*, 572 U.S. 434, 440 (2014), the Supreme Court eloquently described the injury flowing to the victim from a child pornography offense:

> [C]hild pornography is "a permanent record" of the depicted child's abuse, and "the harm to the child is exacerbated by [its] circulation."

In *Paroline*, a child pornography victim sought restitution under 18 U.S.C. § 2259. The Supreme Court analyzed at length the concept of proximate cause for child pornography injuries:

> [C]ourts have departed from the but-for standard where circumstances warrant, especially where the combined conduct of multiple wrongdoers produces a bad outcome.

*Id.* at 451. The Court noted that multiple actors play "a part in sustaining and aggravating this tragedy." *Id.* at 457. It is "Congress' clear intent that victims of child pornography be compensated." *Id.*

### D.      Omegle Caused C.H. to Suffer Personal Injury

C.H. suffered personal injury as a result of Omegle's causal role in her abuse. For child pornography victims, "there is a legal presumption of injury" in cases brought under Section 2255. *In re Boland,* 946 F.3d 335, 339 (6th Cir. 2020). Placing a child in jeopardy of harm results in "victim" status. *See* JOSHUA DRESSLER, UNDERSTANDING CRIMINAL LAW 122 (4th ed. 2006). At minimum, C.H. suffered from an invasion of her personal security, thereby suffering harm. *See id.* at 122 ("'[S]ocial harm' may be defined as the negation, endangering, or destruction of an individual, group, or state interest which was deemed socially valuable.") (internal quotation omitted). "[A] risk of harm on another damages that interest, thus lowering the victim's baseline welfare." Claire Finkelstein, *Is Risk a Harm?,* 151 U. PA. L. REV. 963, 964 (2003) (answering "yes" to the question posed in the title of the

article). Thus, Omegle exposed C.H. to the distinct harm of child pornography offenses. Omegle's facilitation of child pornography production resulted in C.H. losing control over the distribution of her child sex abuse images. Omegle is therefore liable to C.H. for the damages it caused.

## IV.   THE PLAINTIFFS PROPERLY PLEADED CLAIMS UNDER 18 U.S.C. § 1595 ("FOSTA")

### A.   Omegle Knowingly Enticed and Harbored Child Pornography Crimes on its Platform

The Plaintiffs cause of action under the Fight Online Sex Trafficking Act ("FOSTA"), 18 U.S.C. § 1595, state a plausible claim for relief. Section 1591(a)(1) provides for liability against an entity who "knowingly…in or affecting interstate or foreign commerce…recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person," while "knowing, or…in reckless disregard of the fact…that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act[.]" 18 U.S.C. § 1591(a). These terms should be construed in their "ordinary or natural" meanings. *Smith v. United States,* 508 U.S. 223, 228 (1993) (internal citation omitted). The Plaintiffs allege that Omegle knowingly benefitted from and participated in the activities of "cappers" which harmed C.H. while using its platform. (Dkt. 75 ¶¶39, 40, 43, 44, 55).

## B.     Omegle Knowingly Benefitted from an Online Sex Trafficking Venture Involving C.H.

Section 1591(a)(2) provides for liability against those who "knowingly…benefits financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1)…knowing, or…in reckless disregard of the fact…that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act[.]" 18 U.S.C. § 1591(a). Commercial sex act "means any sex act, on account of which anything of value is given to or received by any person[.]" 18 U.S.C. § 1591(e)(3). "Participation in a venture" is "knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)." 18 U.S.C. § 1591(e)(4).

Similarly, Section 1595(a) allows sex trafficking victims to sue those who benefit financially from the damages caused by the sex trafficking venture: "An individual who is a victim…may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter)." 18 U.S.C. § 1595(a). C.H. is minor victim of child pornography produced using Omegle's website.

14

## C.  Omegle is Liable for Knowingly Benefitting from "Cappers" on its Platform

The Plaintiffs allege that Omegle knowingly received value for their participation in a venture which Omegle knew endangered C.H. Omegle knowingly recruited, enticed, harbored, obtained, advertised, maintained, patronized, and/or solicited that venture. Such action can be the basis for claims under 18 U.S.C. § 1591. *See e.g., United States v. Flanders,* 752 F.3d 1317, 1330 (11th Cir. 2014); *United States v. Tollefson*, 367 F. Supp. 3d 865, 878-880 (E.D. Wis. 2019) (denying dismissal even though a 13-year-old created pornography of herself over an app and was the primary actor in creating the material).

Section 1595 serves as a civil remedy for criminal action under Section 1591. Section 1591(a)(2) and 1595 nevertheless contain the same language concerning the financial benefit element of the standard. *Compare* 18 U.S.C. § 1591(a) ("Whoever knowingly…benefits, financially or by receiving anything of value[.]") with 18 U.S.C. § 1595(a)("[W]hoever knowingly benefits, financially or by receiving anything of value[.]").

In *B.M. v. Wyndham*, 2020 WL 4368214, at *4, the Court concluded that hotels knowingly received revenue from room rentals where sex trafficking occurred. Numerous other courts have taken this approach. *See S. Y. v. Naples Hotel Co.,* 2020 WL 4504976, at *3 (M.D. Fla. Aug. 5,

2020); *J.C. v. Choice Hotels Int'l, Inc., No.* 20-CV-00155-WHO, 2020 WL 6318707, at \*4 (N.D. Cal. Oct. 28, 2020) (same); *H.H. v. G6 Hosp., LLC,* 2019 WL 6682152, at \*2 (S.D. Ohio Dec. 6, 2019) (same); *Doe S.W. v. Lorain-Elyria Motel, Inc.,* No. 2:19-CV-1194, 2020 WL 1244192, at \*5 (S.D. Ohio Mar. 16, 2020) (same); *A.B. v. Hilton Worldwide Holdings Inc.,* 2020 WL 5371459, at \*7 (D. Or. Sept. 8, 2020) (same). Applying this same standard to Omegle's knowledge of the activities underlying Plaintiffs' Section 1595 claim, Omegle knowingly received a benefit and a thing of value by selling advertisements, as well as by monetizing, enabling, and participating in the activities of "cappers." (Dkt. 75 ¶¶39, 40, 43, 44, 51, 55). Section 230(e)(5)(A) "creates an exemption to Section 230 immunity for civil sex trafficking claims[.]" *Doe v. Twitter,* Inc., No. 21-CV-00485-JCS, 2021 WL 3675207, at \*24-25 (N.D. Cal. Aug. 19, 2021).

## V.   THE PLAINTIFFS CLEARLY PLEADED VPPA VIOLATIONS

### A.   The Plaintiffs Properly Alleged that Omegle is a "Video Service Provider"

Omegle denies that it is a "video tape service provider" because Omegle provides live-streaming services. Since C.H. plainly alleges what the law requires, the Court must, at this stage of the litigation, accept the competent pleading that Omegle is a "video service provider" within the meaning of the VPPA until evidence competent indicates otherwise.

## B.   C.H. Properly Pleaded That She Was an Omegle Subscriber

Omegle argues that C.H. was not Omegle's "subscriber." However, Omegle overlooks the fact Omegle matched C.H. with another subscriber "John." C.H. was not a first-time user of Omegle when her injury occurred. (Dkt. 75 ¶39-40). Upon loading the Omegle website, C.H. had to do more than simply downloading an application like the plaintiff in *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1257 (11th Cir., 2015). Courts differ on the meaning of "subscriber." *See Yershov v. Gannett Satellite Information Network, Inc.*, 820 F.3d 482 (1st Cir., 2016). The definition of "subscriber" illustrated in *Yershov* is simply "[a]n agreement to receive or be given access to electronic texts or services." *Id*. at 487. Much like the plaintiff in *Yershov* who provided his mobile location, the Plaintiff became an Omegle "subscriber." *Id*. at 489.

## C.   The Plaintiffs Properly Pleaded that Omegle Disclosed C.H.'s Personally Identifiable Information

The "broad definition" of Personally Identifiable Information ("PII") includes "geolocation" (Dkt. 75 ¶21); *See* 16 U.S.C. § 6501-6505. Although "[n]orms about…private information on the Internet are both constantly in flux and often depend on the novelty of the technology at issue" (*In re Nickelodeon Consumer Privacy Litigation,* 827 F.3d 262, 284 (3d Cir. 2016)),

the Supreme Court specifically recognized the particularly sensitive nature of

an individual's geolocation. *United States v. Jones,* 565 U.S. 400, 412 (2012)

(tracking might constitute "an unconstitutional invasion of privacy").

What is more, in *Yershov,* supra, 820 F.3d at 486, anything identifying a

party's "home and work addresses" constitutes PII. *See* 18 U.S.C.

§ 2710(a)(4). C.H. properly alleges that the geolocation collected from her

by Omegle furnished "John" with the information needed to identify where

she lived and as a consequence threaten, blackmail, and sexually exploit her.

COPPA specifically prohibits services like Omegle from collecting, let alone

disclosing, any PII from a child under the age of 13 without first obtaining a

parents' "verifiable consent." (Dkt. 75 ¶¶22-23); *See* 16 C.F.R. 312.2.

Omegle failed to prevent C.H. from using and being fully ensnared by its

"service" and did not even "require any age verification or authentication."

(Dkt. 75 ¶37). Accordingly, the Defendant's motion must be denied.

## VI.   THE PLAINTIFFS PROPERLY ALLEGED SUFFICIENT COMMON LAW CLAIMS AGAINST OMEGLE

### A.   The Plaintiffs Properly Pleaded Claims for Intentional Infliction of Emotional Distress

Plaintiff's common law claims are properly pled. *See Broberg v.*

*Carnival Corp.*, 303 F. Supp. 3d 1313, 1318 (S.D. Fla. 2017). Here, the

ongoing risk that C.H.'s child pornography will be distributed surely

compounds the trauma she endured. In *Broberg*, the court declined to

dismiss plaintiff's intentional infliction of emotional distress claim in order to allow the parties to further develop the record. *Id.* Omegle's motion should be denied because the Plaintiffs are entitled to discovery.

## B.   The Plaintiffs Properly Pleaded Claims for Intrusion Upon Seclusion

Under Florida law intrusions include "electronic" intrusions into private matters. *See Sacco v. Eagle Finance Corp. of North Miami Beach*, 234 So.2d 406, 407–08 (Fla. 3d DCA 1970). Unlike other privacy torts, publication is not required. *Id.* C.H. properly pleaded claims entitling her to "the right of a private person to be free from public gaze." *Id.*

## C.   The Plaintiffs Properly Pleaded Claims for Negligence

Omegle attempts to evade accountability for its conduct by arguing that it does not have any special relationship with or duty to C.H. Its argument fails to recognize Omegle's role in the creation of C.H.'s child sex abuse images. Omegle's contentions to the contrary show the truly hollow nature of Omegle's terms of service and age requirements.

Omegle's own monitoring policies and the strategies used by Omegle's to report child pornography and child sex abuse material give rise to its liability. This is reinforced by Omegle's own terms of service which faintly prohibit C.H.'s use of Omegle.

## D.     The Plaintiffs Allege Omegle is a Public Nuisance

Omegle's activities damage children by causing discomfort, inconvenience, annoyance, and other damage to C.H. and other vulnerable children. The Plaintiffs maintain that the "judicial branch alone has the will, the authority, the power and the independence to abate this ongoing nuisance." *See Flo-Sun, Inc. v. Kirk,* 783 So. 2d 1029 (Fla. 2001) *quoting Kirk v. U.S. Sugar Corp.*, 726 So. 2d 822, 824 (Fla. Dist. Ct. App. 1999).

## <u>CONCLUSION</u>

The Plaintiffs presented both cognizable legal theories and sufficient facts in support. Read in the light most favorable to the Plaintiffs, their complaint has properly alleged violations of 18 U.S.C. §§ 2252A and 1591. Therefore, the Plaintiffs advanced potentially viable claims under 18 U.S.C. §§ 2255 and 1595. The proximate cause determination in the *Paroline* decision supports Plaintiff's rights to civil claims under 18 U.S.C. § 2255. Congress intended to permit victims of child pornography crimes to recover against defendants who possess their childhood sexual abuse images through a civil action under 18 U.S.C. §§ 2255 and 1595. The Court should deny Omegle's motion to dismiss in its entirety.

DATED:   New York, New York
              November 3, 2021

**HACH ROSE SCHIRRIPA & CHEVERIE, LLP**

by_____/s/ Hillary Nappi_____
Frank R. Schirripa, Esq. *Pro Hac Vice*
Hillary M. Nappi, Esq. *Pro Hac Vice*
112 Madison Avenue, 10th Floor
New York, New York 10016
Phone: (212) 213-8311

**MARSH LAW FIRM PLLC**

by_____/s/ Jennifer Freeman_____
Jennifer Freeman, Esq.,
Florida Attorney Registration No. 1014236
31 Hudson Yards, 11th Floor
New York, New York 10001
Phone: (212) 372-3030
Email: JenniferFreeman@marsh.law

by_____/s/ Margaret E. Mabie_____
Margaret E. Mabie, Esq. *Pro Hac Vice*
31 Hudson Yards, 11th Floor
New York, New York 10001
Phone: (212) 372-3030
Email: MargaretMabie@marsh.law

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on November 3, 2021, I caused a copy of Plaintiffs'

Opposition to Defendant's Motion to Dismiss to be served upon counsel of

record for the Defendant *via* email and the Court's ECF system.

/s/ Margaret E. Mabie

# TAB 84

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| M.H. and J.H., on behalf of their minor child C.H., <br><br>                                 Plaintiffs, <br><br> v. <br><br> OMEGLE.COM, LLC, <br><br>                                 Defendant. | Case No. 8:21-cv-00814-VMC-TGW |

## DEFENDANT OMEGLE.COM, LLC'S REPLY
## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS THE
## <u>SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)</u>

# TABLE OF CONTENTS

DISCUSSION ............................................................................................................... 1

I.   Plaintiffs Fail to Show Any Applicable Exception to CDA 230
     Immunity ........................................................................................................ 1

     A.   The Intolerable Nature of the Content at Issue Does Not
          Negate CDA 230 Immunity or Establish a Violation of
          Section 2252A .................................................................................. 1

     B.   Plaintiffs Fail to Overcome CDA 230 Immunity With Respect
          to Their Claim Under Sections 1591 and 1595 ........................... 6

II.  Plaintiffs' Attempt to Save Their Hybrid COPPA/VPPA Claim Fails .......... 8

III. Plaintiffs Offer No Meaningful Defense of Their State Law Claims ............. 9

IV.  No Entitlement to Discovery Where No Plausible Claim for Relief ........... 11

CONCLUSION ........................................................................................................ 11

# TABLE OF AUTHORITIES

**<u>Cases</u>**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................8, 11

*Brady v. Medtronic, Inc.*, No. 13-cv-62199-RNS,
    2014 U.S. Dist. LEXIS 52151 (S.D. Fla. Apr. 8, 2014) ........................................9

*Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353 (11th Cir. 1997) ............................11

*Doe v. Bates*, No. 5:05-CV-91-DF-CMC, 2006 U.S. Dist. LEXIS 93348
    (E.D. Tex. Dec. 27, 2006)...................................................................................2, 3

*Doe v. Kik Interactive, Inc.*, 482 F. Supp. 3d 1242 (S.D. Fla. 2020) ..........................6, 7

*Doe v. Reddit, Inc.*, No. SACV 21-768 JVS (KESx) (C.D. Cal. Oct. 7, 2021).........2, 6, 7

*Doe v. Twitter, Inc.*, No. 21-cv-00485-JCS,
    2021 U.S. Dist. LEXIS 157158 (N.D. Cal. Aug. 19, 2021)...................................6

*Force v. Facebook, Inc.*, 934 F.3d 53 (2d Cir. 2019) ...........................................................3

*Gonzalez v. Google LLC*, 2 F.4th 871 (9th Cir. 2021) ......................................................2

*Grandrimo v. Parkcrest Harbour Island Condo. Ass'n, Inc.*,
    No. 8:10-CV-964-T-27MAP,
    2011 U.S. Dist. LEXIS 12947 (M.D. Fla. Feb. 9, 2011) ......................................4

*Herrick v. Grindr, LLC*, 306 F. Supp. 3d 579 (S.D.N.Y. 2018) ..................................3, 4

*Hubbard v. Google LLC*, No. 19-cv-07016-BLF,
    2020 U.S. Dist. LEXIS 239936 (N.D. Cal. Dec. 21, 2020)...................................8

*In re BitConnect Sec. Litig.*, No. 18-cv-80086,
    2019 U.S. Dist. LEXIS 231976 (S.D. Fla. Aug. 23, 2019) ...................................4

*J.B. v. G6 Hosp., LLC*, No. 19-cv-07848-HSG,
    2021 U.S. Dist. LEXIS 170338 (N.D. Cal. Sept. 8, 2021)................................6, 7

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250 (4th Cir. 2009) ......11

*Tilton v. Playboy Entm't Grp., Inc.*, 554 F.3d 1371 (11th Cir. 2009) .............................5

## **Statutes and Rules**

18 U.S.C. § 1591 ..............................................................................1, 2, 6, 7

18 U.S.C. § 1595 ..............................................................................1, 2, 6, 7

18 U.S.C. § 2252A ............................................................................. passim

18 U.S.C. § 2252A(a) .................................................................................5

18 U.S.C. § 2255 ........................................................................................2

18 U.S.C. § 2710(a)(3) ...............................................................................9

47 U.S.C. § 230 .................................................................................. passim

47 U.S.C. § 230(e)(1) .........................................................................1, 2, 3

47 U.S.C. § 230(e)(5)(A) ...................................................................1, 2, 6, 7

## **Other Authority**

Restatement (Second) of Torts § 821B, cmt. g ......................................11

At its core, Plaintiffs' Second Amended Complaint ("SAC") asserts that Omegle is liable for failing to adequately police its website and monitor its users. But as Omegle demonstrated in its Motion to Dismiss, such claims fall squarely within the scope of CDA 230 immunity and no exception to immunity applies. Alternatively, Omegle established that, even ignoring CDA 230, Plaintiffs failed to allege any plausible claim for relief. Plaintiffs fail to refute Omegle's showing on either point or otherwise demonstrate that the SAC states any viable claim for relief under the applicable pleading standard. As a result, Omegle respectfully requests that the SAC be dismissed in its entirety, with prejudice.

## DISCUSSION

### I.  Plaintiffs Fail to Show Any Applicable Exception to CDA 230 Immunity

Plaintiffs do not argue that their state law claims are outside the scope of CDA 230. Thus, they should be deemed to have conceded that CDA 230 bars those claims. As to the claims for alleged violations of the federal criminal statutes, they fail to refute Omegle's showing that the two limited exclusions to CDA immunity – (1) Section 230(e)(1), which solely excludes *prosecutions* under federal criminal statutes, and (2) Section 230(e)(5)(A) (added by FOSTA), which only excludes civil claims under 18 U.S.C. § 1595 that involve conduct that constitutes a violation of 18 U.S.C. § 1591 – do not apply to their claims.

### A.  The Intolerable Nature of the Content at Issue Does Not Negate CDA 230 Immunity or Establish a Violation of Section 2252A

Plaintiffs discuss at length the harms of child pornography and the desire to compensate victims of that crime. But they fail to refute Omegle's showing

1

that: (1) CDA 230 bars their claim seeking to treat it as the publisher or speaker of the child pornography allegedly created by the other user and that the carveout for prosecutions under federal criminal statutes does not apply; and (2) even ignoring CDA 230, Plaintiffs cannot state a claim for violation of § 2252A.

**No Exception to CDA 230 for the § 2252A Claim.** Plaintiffs make several inaccurate assertions, none of which refute the conclusion that CDA 230 bars their civil claim for alleged violation of § 2252A. For example, they assert that FOSTA's limited exception to immunity in § 230(e)(5)(A) also "applies to 18 U.S.C. § 2255." (Dkt. 81 at 11.) But the unambiguous language of § 230(e)(5)(A) references **_only_** 18 U.S.C. §§ 1591 and 1595. Nor does Plaintiffs' standing argument based on § 2255 (Dkt. 81 at 13-14) have any bearing on CDA immunity.

Plaintiffs also assert that Omegle argued that "only individuals can be liable for child pornography offenses." (Dkt. 81 at 15.) But that is incorrect and a non sequitur; Omegle demonstrated that the cases hold that **_only_** federal criminal prosecutions are excluded from CDA immunity by § 230(e)(1), while civil claims based on federal criminal statutes are barred. (Dkt. 78 at 15-16.) Plaintiffs also attempt to discount the decision in *Doe v. Bates*, No. 5:05-CV-91-DF-CMC, 2006 U.S. Dist. LEXIS 93348 (E.D. Tex. Dec. 27, 2006) as "obscure" and out-of-date. But they ignore the *Reddit* decision that was issued on October 7, 2021 and which relied on *Bates* to reach the same conclusion. (Dkt. 78 at 16.) Numerous other recent cases also hold that § 230(e)(1)'s exception to CDA immunity is limited to criminal prosecutions. *See, e.g.*, *Gonzalez v. Google LLC*, 2 F.4th 871, 890 (9th Cir. 2021) ("Courts have consistently held that § 230(e)(1)'s limitation on § 230

immunity extends only to criminal prosecutions, and not to civil actions based on criminal statutes."); *Force v. Facebook, Inc.*, 934 F.3d 53, 72 (2d Cir. 2019) (joining the First Circuit "in concluding that Section 230(e)(1) is quite clearly . . . limited to criminal prosecutions") (internal quotation marks omitted), *cert. denied*, 140 S. Ct. 2761 (2020). Despite dismissing *Bates* as "obscure," Plaintiffs fail to cite a single case supporting their reading of § 230(e)(1)'s limited exception. Their references to the DOJ manual or federal law enforcement schemes (Dkt. 81 at 12, 14) are irrelevant and in no way rebut Omegle's showing that § 230(e)(1)'s exception for criminal prosecutions does not apply to their civil claim for violation of § 2252A.

**<u>Attempts to Recast the Claim Cannot Negate CDA Immunity</u>.** Similarly without merit is Plaintiffs' assertion that they don't seek to treat Omegle as the publisher or speaker of third-party content because they claim it is liable for "knowingly receiv[ing] value by knowingly creating a dangerous forum." (Dkt. 81 at 12.) But their first claim alleges that Omegle violated § 2252A by "knowingly possess[ing] child pornography of C.H." allegedly created by the other user. (Dkt. 75 ¶¶ 72, 74.) Thus, their assertion in their Opposition is irrelevant to the § 2252A claim. In any event, their claims fall squarely within CDA immunity because they "depend on a connection between the safety features [Omegle] allegedly is missing" and the content of other users of the site. *Herrick v. Grindr, LLC*, 306 F. Supp. 3d 579, 590-91 (S.D.N.Y. 2018), *aff'd*, 765 F. App'x 586 (2d Cir. 2019).

Nor can Plaintiffs amend this claim via their Opposition to recast it as claim for "trafficking child pornography" or "knowingly facilitat[ing] the

production of [C.H.'s] child pornography". (Dkt. 81 at 12, 13.) Even assuming

that such a cause of action exists (which Omegle does not concede), claims

cannot be amended in an opposition to a motion to dismiss. *Grandrimo v.*

*Parkcrest Harbour Island Condo. Ass'n, Inc.*, No. 8:10-CV-964-T-27MAP, 2011 U.S.

Dist. LEXIS 12947, *18 (M.D. Fla. Feb. 9, 2011). Their vague reference to a

"product defect claim[]" (Dkt. 81 at 12) – which is not alleged in the SAC and is

irrelevant to their claims under the federal criminal statutes – should also be

rejected. And the attempt to avoid CDA immunity by relying on an (unpleaded)

product design claim fails as such claims have been rejected where, as here, the

website provides neutral communication tools that "are not intrinsically

offensive or unlawful." *Herrick*, 306 F. Supp. 3d at 589-90. Nor do Plaintiffs point

to ***any*** specific allegations in the SAC plausibly alleging that Omegle "materially

contributed" to the content at issue created by the user. *In re BitConnect Sec. Litig.*,

No. 18-cv-80086, 2019 U.S. Dist. LEXIS 231976, *35-38 (S.D. Fla. Aug. 23, 2019)

(finding negligence claim against YouTube "thoroughly foreclosed" by CDA 230

despite extensive use of YouTube by perpetrators of investment scheme).

**Even Absent CDA 230, the § 2252A Claim Fails.** Although the Court need

not reach the issue given CDA immunity, Plaintiffs also fail to allege facts that

plausibly establish that Omegle ***knowingly*** violated the child pornography

statute. They allege that Omegle violated that statute – which requires a person

to knowingly possess or access with intent to view material that contains an

image of child pornography – because it "received a thing of value, promised

that they [sic] monitor the activity on their [sic] website, and were aware of

'cappers,' or predators on their [sic] platform." (Dkt. 81 at 15.) But they fail to explain how such purported "knowledge makes [Omegle] liable" (id.) for knowingly possessing or accessing with intent to view child pornography. Nor does their unsupported assertion that Omegle purportedly "knowingly matched minors like C.H. with predators like 'Doe'" (id. at 16) allege any knowledge relevant to, or supportive of, their claim for violation of § 2252A.

Plaintiffs' attempt to do away with **_any_** knowledge element to establish a violation of § 2252A should be rejected. Even the cases they cite hold that "the scienter requirement found in . . . [§] 2252A(a) extends both to the sexually explicit nature of the material and to the age of the performer." *Tilton v. Playboy Entm't Grp., Inc.*, 554 F.3d 1371, 1378 (11th Cir. 2009). While "deliberate ignorance" may satisfy the knowledge element in some circumstances, *id.*, there must still be **_some_** evidence of knowledge as to the specific victim and the nature of the content alleged to be child pornography. Here, Plaintiffs do not allege that Omegle had **_any knowledge_** about C.H. or the nature of any image the other user allegedly created of her prior to the filing of this lawsuit. Plaintiffs effectively concede this point by relying on either general alleged knowledge about the misuse of its platform by some users or other alleged knowledge unrelated to their claim for knowingly possessing or accessing with intent to view child pornography. (Dkt. 81 at 9-10, 12-13.) Therefore, Plaintiffs do not allege that Omegle possessed or accessed any images of C.H. that constituted child pornography under **_any_** applicable knowledge standard. Thus, even if CDA 230 did not bar their § 2252A claim, that claim fails on its own merit.

5

**B.    Plaintiffs Fail to Overcome CDA 230 Immunity With Respect to Their Claim Under Sections 1591 and 1595**

Plaintiffs also fail to rebut Omegle's showing that § 230(e)(5)(A)'s immunity exclusion does not apply as they do not, and cannot, plausibly allege that Omegle's conduct constitutes a violation of 18 U.S.C. § 1591. In fact, they essentially offer no response to Omegle's showing that other courts have recently joined the Southern District of Florida in concluding that to overcome CDA immunity, they must show that Omegle's "conduct amounts to a violation of section 1591." *J.B. v. G6 Hosp., LLC*, No. 19-cv-07848-HSG, 2021 U.S. Dist. LEXIS 170338, *18 (N.D. Cal. Sept. 8, 2021). (*See also* Dkt. 78 at 17-21.) Rather, they continue to rely on a series of sex trafficking cases against hotels (Dkt. 81 at 21-22), which do not involve CDA 230 and are therefore inapposite (Dkt. 78 at 20).

Although Plaintiffs make a single cite to *Doe v. Twitter, Inc.*, No. 21-cv-00485-JCS, 2021 U.S. Dist. LEXIS 157158 (N.D. Cal. Aug. 19, 2021) – which reached the opposite conclusion of the decisions in *Doe v. Kik Interactive, Inc.*, 482 F. Supp. 3d 1242 (S.D. Fla. 2020), *J.B.*, 2021 U.S. Dist. LEXIS 170338, and *Doe v. Reddit, Inc.*, No. SACV 21-768 JVS (KESx) (C.D. Cal. Oct. 7, 2021) – they fail to offer any defense of that decision in response to Omegle's showing that the court's analysis does not withstand scrutiny (*see* Dkt. 78 at 19-21). Moreover, it is notable that since this Motion was filed, the court granted Twitter's motion to certify the decision for interlocutory appeal, concluding that there were "substantial ground[s] for difference of opinion" and stayed all proceedings pending appeal. (Appendix A at 1-2.) Therefore, the weight of authority (ignored

6

by Plaintiffs) holds that to prove an exception to CDA 230 immunity for a claim under § 1595, Plaintiffs must show that Omegle's conduct constitutes a violation of § 1591. *See Reddit*, Dkt. 78-1 at 11-12; *J.B.*, 2021 U.S. Dist. LEXIS 170338 at *18; *Kik*, 482 F. Supp. 3d at 1249. Plaintiffs have not done so here.

Plaintiffs fail to make any showing that Omegle either directly engaged in the alleged sex trafficking of C.H. or knowingly (based on an actual knowledge standard) benefitted from participating in the alleged sex trafficking venture of C.H. To the contrary, they offer only conclusory assertions that parrot the language of § 1591. (*See* Dkt. 81 at 19, 21, 22.) The only purported support they cite for their claim are general allegations about Omegle's alleged awareness of other incidents occurring on the website. (*See* id. at 22 (citing Dkt. 75 ¶¶ 39-40, 43-44, 51, 55).) But it is unchallenged by Plaintiffs that such generalized knowledge is insufficient to "satisfy FOSTA's requirement that the conduct underlying the claim violate [§ 1591]." *Kik*, 482 F. Supp. 3d at 1251. Further, as Omegle demonstrated (*see* Dkt. 78 at 24-26), even under the lower *mens rea* standard of § 1595 (which does not apply here), such generalized allegations do not show either the necessary "direct association" or "continuous business relationship" between the user who allegedly engaged in the sex trafficking of C.H. and Omegle that would establish the existence of a "venture."

Thus, because Plaintiffs do not show that (1) § 230(e)(5)(A)'s limited exception to immunity applies or (2) alternatively, that even absent immunity, Omegle participated in a "venture" with C.H.'s alleged trafficker, their second claim fails as a matter of law.

## II.   Plaintiffs' Attempt to Save Their Hybrid COPPA/VPPA Claim Fails

Plaintiffs' Opposition demonstrates starkly that they seek to allege a COPPA claim – which is unavailable to them – ***not*** any claim under the VPPA. *See Hubbard v. Google LLC*, No. 19-cv-07016-BLF, 2020 U.S. Dist. LEXIS 239936, *17-25 (N.D. Cal. Dec. 21, 2020). But for any or all of the following reasons, their VPPA claim should be dismissed.

First, Plaintiffs mischaracterize Omegle's explanation of why it does not meet the definition of a VTSP. (Dkt. 81 at 22.) Omegle is not a VTSP because its real-time chat service (not a "live-streaming" service) does not involve the rental, sale or delivery of "prerecorded video cassette tapes or similar audio visual materials." (Dkt. 78 at 28-29.) Nor is the Court required to accept Plaintiffs' conclusory allegation that merely repeats the statutory definition. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Second, Plaintiffs incorrectly argue that C.H. was a "subscriber" under the VPPA because during the single time she used the website she joined two chats. The paragraphs cited by Plaintiffs lend no support to this incorrect allegation. (Dkt. 81 at 23.) Nor do they offer any support for the assertion that "[u]pon loading the Omegle website, C.H. had to do more than simply download[] an application" or explain how that demonstrates C.H. is a "subscriber" under the VPPA. (Id.) Regardless, these inaccurate assertions do not show the "something more" that is necessary to be a "subscriber" under the VPPA. (Dkt. 78 at 29-30.)

Finally, Plaintiffs assert that Omegle disclosed PII ***as defined by COPPA***. (Dkt. 81 at 23-24.) They ignore the VPPA's narrow PII definition that reflects the

statute's limited purpose (e.g., preventing disclosure of individuals' video viewing activities). 18 U.S.C. § 2710(a)(3). They offer no authority for the proposition that they can import a definition from an inapplicable statute and ignore the definition of the same term in the statute upon which their claim is based. As Omegle demonstrated, the SAC is devoid of allegations that Omegle disclosed information that is by itself capable of identifying (1) C.H., (2) prerecorded video material, ***and*** (3) the connection between the two (e.g., that she requested or obtained specifically-identified video material). (Dkt. 78 at 30-31.) Plaintiffs argue that unspecified "geolocation" is PII (improperly citing COPPA). Even assuming that were true, they fail to plausibly allege facts demonstrating that the "geolocation" met (2) and (3) of the VPPA's PII definition.

## III.   Plaintiffs Offer No Meaningful Defense of Their State Law Claims

With respect to their state law claims, Plaintiffs offer nothing but conclusory statements without factual or legal support. And, as to their claim for "ratification/vicarious liability," they say nothing at all, which is a concession that the claim is properly dismissed. *See Brady v. Medtronic, Inc.*, No. 13-cv-62199-RNS, 2014 U.S. Dist. LEXIS 52151, *17-18 (S.D. Fla. Apr. 8, 2014).

**Intentional Infliction of Emotional Distress ("IIED").** Plaintiffs assert that their IIED claim is based on the "ongoing risk that C.H.'s child pornography will be distributed," which risk "compounds the trauma." (Dkt. 81 at 24.) But the SAC alleges this claim is based on a purported failure to monitor and protect users of the Omegle website. (Dkt. 75 ¶ 132.) Plaintiffs' assertion at most alleges a purported injury but fails to demonstrate that they can satisfy the core elements

9

of an IIED claim. As Omegle showed, a purported failure to monitor website users (in addition to being encompassed within CDA immunity) does not rise to the extremely high level of outrageous conduct necessary for an IIED claim. (Dkt. 78 at 32-33.) Thus, even ignoring CDA 230, this claim fails on its own merit.

**Intrusion Upon Seclusion.** In response to Omegle's showing that they failed to state a claim for intrusion upon seclusion, Plaintiffs assert only that "electronic" intrusions are actionable and that "publication is not required." (Dkt. 81 at 25.) But that is effectively no response to the showing that this claim is fatally flawed because, among other things, they cannot satisfy the high standard for outrageous conduct required for this tort. (Dkt. 78 at 33-36.) Thus, the intrusion claim fails on its own merits (in addition to being barred by CDA 230).

**Negligence.** Plaintiffs' defense of their negligence claim is replete with conclusory assertions lacking any factual support that do not demonstrate the existence of a legal duty owed by Omegle to protect or monitor users of its site. For example, Plaintiffs claim – without support – that Omegle had a "role in the creation of C.H.'s child sex abuse images." (Dkt. 81 at 25.) Not only is that false, it also does not establish that Omegle has a legal duty to "provide a safe online community." (Dkt. 75 ¶ 119.) Nor does Plaintiffs' vague and wholly unsupported assertion that Omegle's "monitoring policies" and "strategies . . . to report child pornography . . . material" support the existence of a legal duty. (Dkt. 81 at 25.) Thus, even ignoring CDA immunity, Plaintiffs fail to establish the existence of a general legal duty owed by Omegle to protect users of its website.

**Nuisance.** On their nuisance claim, Plaintiffs assert vaguely that

"Omegle's activities damage children." (Dkt. 81 at 26.) But as Omegle showed (Dkt. 78 at 38-39), fundamental to a public nuisance claim is an interference with a "public right," which is a right "common to all members of the general public." RESTATEMENT § 821B, cmt. g. But Plaintiffs do not, and cannot, identify any such "public right" with respect to Omegle's chat service. Thus, in addition to being barred by CDA 230 (Dkt. 78 at 11), the nuisance claim fails on the merits.

## IV.    No Entitlement to Discovery Where No Plausible Claim for Relief

Plaintiffs repeatedly claim that they are "entitled" to discovery. But there is no entitlement to discovery where they fail to state any plausible claim for relief, whether as a result of CDA 230 immunity or a failure on the merits. *See Iqbal*, 556 U.S. at 678-79 ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."); *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997) ("Discovery . . . is not a device to enable a plaintiff to make a case when his complaint has failed to state a claim.") (internal quotation marks omitted); *see also Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254-55 (4th Cir. 2009) (CDA 230 provides *immunity from suit* not just a defense to liability). Plaintiffs implicitly concede that they cannot plausibly allege any other facts that would rescue their claims by failing to ask the Court for leave to amend their complaint for a third time.

## CONCLUSION

Therefore, for the reasons stated herein, Omegle respectfully requests that Plaintiffs' SAC be dismissed in its entirety and with prejudice.

DATED:   November 15, 2021      Respectfully submitted,

FOCAL PLLC                              THOMAS & LoCICERO PL

By:   s/ *Stacia N. Lay*                      By:   s/ *James J. McGuire*
       Stacia N. Lay, *Pro Hac Vice*                James J. McGuire (FBN 187798)
       Venkat Balasubramani, *Pro Hac Vice*         601 South Boulevard
       900 1st Avenue S., Suite 201                 Tampa, Florida 33606
       Seattle, Washington 98134                    Telephone: (813) 984-3060
       Telephone: (206) 529-4827                    jmcguire@tlolawfirm.com
       stacia@focallaw.com
       venkat@focallaw.com                          Daniela B. Abratt (FBN 118053)
                                                    915 Middle River Dr., Suite 309
                                                    Fort Lauderdale, Florida 33304
                                                    Telephone: (954) 703-3416
                                                    dabratt@tlolawfirm.com

*Attorneys for Defendant Omegle.com LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2021, a true and correct copy of the foregoing will be served electronically through the Clerk of Court's CM/ECF filing system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail, postage prepaid, to any parties that do not participate in the CM/ECF filing system.

s/ *Stacia N. Lay*
Stacia N. Lay

# APPENDIX A

1
2
3
4
5
6          UNITED STATES DISTRICT COURT
7          NORTHERN DISTRICT OF CALIFORNIA
8
9                                          Case No.  21-cv-00485-JCS

10                                         **ORDER RE: 1)  MOTION FOR**
11  JOHN DOE, et al.,                      **LEAVE TO FILE MOTION FOR**
                                           **RECONSIDERATION OR, IN THE**
            Plaintiffs,                     **ALTERNATIVE, MOTION FOR AN**
12                                         **ORDER PERMITTING**
                                           **INTERLOCUTORY APPEAL**
13      v.                                 **PURSUANT TO 28 U.S.C. § 1292(B); 2)**
                                           **MOTION FOR STAY; AND 3)**
14  TWITTER, INC.,                         **ADMINISTRATIVE MOTION TO**
                                           **ENLARGE TIME TO RESPOND TO**
            Defendant.                      **DISCOVERY REQUESTS**
15
16                                         Re: Dkt. Nos. 80, 81, 82
17
18          Twitter has requested leave to file a motion for reconsideration of the Court's August 19,

19  2021 order denying in part Twitter's motion to dismiss (Dkt. 69) ("Order") or, in the alternative,

20  an order certifying the Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  The Court

21  GRANTS the request for certification of an interlocutory appeal.  A district court may certify an

22  order for interlocutory appeal under § 1292(b) if it: (1) involves "a controlling question of law";

23  (2) on which there is "substantial ground[s] for difference of opinion"; and (3) "an immediate

24  appeal from the order may materially advance the ultimate termination of the litigation . . . ." 28

25  U.S.C. § 1292(b); *see In re Cement Antitrust Litig*., 673 F.2d 1020, 1026 (9th Cir.  1981).  The

26  Court finds that all three requirements are met here.  Therefore, the Court certifies the Order for

27  interlocutory appeal.  The Court GRANTS Twitter's Motion for Stay and therefore STAYS ALL

28  PROCEEDINGS in this case pending resolution of any appeal that may be taken up by the Ninth

1    Circuit.  The Court DENIES the Administrative Motion to Enlarge Time on the basis that it is

2    moot.  The motion hearing set for **November 19, 2021** is VACATED.

3            The parties shall notify the Court within fourteen days of the final resolution of Twitter's

4    appeal.

5            **IT IS SO ORDERED.**

6

7    Dated: October 26, 2021

8                                            _____

9                                            JOSEPH C. SPERO
                                             Chief Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TAB 90

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

M.H. and J.H., on behalf of
their minor child C.H.,

     Plaintiffs,

v.                    Case No.: 8:21-cv-814-VMC-TGW

OMEGLE.COM, LLC,

     Defendant.
_____/

**ORDER**

This matter is before the Court on consideration of Defendant Omegle.com, LLC's Motion to Dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), filed on October 13, 2021. (Doc. # 78). Plaintiffs M.H. and J.H., on behalf of their minor child C.H., responded on November 3, 2021, (Doc. # 81), and Defendant replied on November 15, 2021 (Doc. # 85). For the reasons that follow, the Motion is granted.

**I.   Background**

The Second Amended Complaint asserts eight causes of action against Omegle for damages arising from 11-year-old C.H.'s distressing experience on the Omegle website. (Doc. # 75 at 15-29).

Omegle allows users to communicate with other users randomly and anonymously in real time by text, audio, and video. (Id. at ¶¶ 33-34). Interested users are placed in a chatroom hosted by Omegle and can begin communicating immediately. (Id.). No personal identifying information is required to begin a chatroom session, although Omegle also allows users to narrow their possible matches based on "similarities in conversations and subjects." (Id. at ¶¶ 34-37). Users are anonymously paired with other users from across the globe and can be paired with a new user in a new chatroom at will. (Id. at ¶¶ 33, 57).

The Omegle website is visited millions of times per day. (Id. at ¶ 14). As Omegle and similar websites have grown in popularity, so too have reports of child sex trafficking and victimization through those websites. (Id. at ¶¶ 13, 41 n. 8-9). Plaintiffs cite to articles reporting that numerous individuals have been charged with sex crimes against children for their use of Omegle and similar websites. (Id. at 41 n. 8-9). Omegle does not have a screening or verification process to ensure that minor children only use the site with parental guidance or consent — anonymity appears to be a primary appeal of the Omegle platform. (Id. at ¶¶ 33, 50-51). Omegle, like many websites, is susceptible to

hacking. (Id. at ¶ 38). According to Plaintiffs, sexual predators have taken advantage of the anonymity that Omegle offers to prey on other users, including children. (Id. at ¶¶ 39-41). Among these predators are "cappers," who trick children into committing sexual acts over live web feeds while simultaneously recording the encounters. (Id. at ¶ 4 n. 1).

On March 31, 2020, C.H. was randomly placed in a chatroom with a capper during her first time on Omegle. (Id. at ¶¶ 57-62). C.H. — an eleven-year-old girl at the time — accessed the Omegle platform from her laptop. (Id. at ¶ 57). She was initially placed in a chatroom with other minors for some time. (Id.). C.H. later ended the chat with the minors and was placed in another chatroom. (Id.). She was met in the next chatroom with a black screen that began displaying text from the other anonymous user, "John Doe." (Id. at ¶ 58). John Doe informed C.H. that he knew where she lived, and he provided specific details of her whereabouts to prove it. (Id. at ¶ 59). He threatened to hack C.H. and her family's electronic devices if she did not disrobe and comply with his demands. (Id. at ¶ 61). After pleading with John Doe without success, C.H. complied. (Id.). John Doe captured screenshots and recorded the encounter. (Id. at ¶¶ 61-62). Immediately

after this incident, C.H. informed her parents, who then contacted law enforcement. (Id. at ¶ 65).

C.H.'s parents then brought the instant suit against Omegle on their daughter's behalf. (Doc. # 1). This action began in the United States District Court for the District of New Jersey. (Id.). The case was then transferred to this Court, and Plaintiffs were ultimately permitted to file their Second Amended Complaint. (Id.; Doc. ## 74-75). Plaintiffs bring eight claims against Omegle: (1) possession of child pornography in violation of 18 U.S.C. § 2252A;[1] (2) violation of the Federal Trafficking Victims Protection Act, 18 U.S.C. §§ 1591 and 1595; (3) violation of the Video Privacy Protection Act, 18 U.S.C. § 2710; (4) intrusion upon seclusion; (5) negligence; (6) intentional infliction of emotional distress; (7) ratification/vicarious liability; and (8) public nuisance. (Id. at 15-29).

Omegle now moves to dismiss all claims for failure to state a claim. (Doc. # 78). Plaintiffs have responded, and

---

[1] The Second Amended Complaint lists this claim as a violation of 18 U.S.C. § 2255, which is a civil remedy statute that allows victims of enumerated crimes to sue for liquidated damages. (Doc. # 75 at 15). Plaintiffs assert entitlement to such damages for Omegle's violation of 18 U.S.C. § 2252A, an enumerated statute, for Omegle's alleged knowing possession of child pornography. (Id. at 15-16).

Omegle replied in turn. (Doc. # 81; Doc. # 84). The Motion is ripe for review.

## II.   **Legal Standard**

On a motion to dismiss pursuant to Rule 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Hum. Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The Court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters

judicially noticed. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

**III.** **Analysis**

**A.** **Immunity Under the Communications Decency Act**

Omegle claims that it is immune from each of Plaintiffs' claims pursuant to 47 U.S.C. § 230, the Communications Decency Act ("CDA"). (Doc. # 78 at 3). The CDA grants immunity to interactive computer services ("ICS") providers for damages caused by the providers' users. 47 U.S.C. § 230(c)(1). ICS providers are those who "provide[] or enable [] computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet . . . ." 47 U.S.C. § 230(f)(2).

By statute, ICS providers are distinguished from those who use their services — "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). ICS providers are further distinguished from information content providers ("ICPs"), who are responsible for the creation or development of information through the Internet or an ICS provider. 47 U.S.C. § 230(f)(3).

The CDA also preempts state or local law that would otherwise hold ICS providers liable for the independent actions of their users. 47 U.S.C. § 230(e)(3). "The majority of 'federal circuits have interpreted the CDA to establish broad federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service.'" Almeida v. Amazon.com, Inc., 456 F.3d 1316, 1321 (11th Cir. 2006) (quoting Zeran v. Am. Online, Inc., 129 F.3d 327, 330 (4th Cir. 1997)). The Florida Supreme Court has also recognized the CDA's broad preemptive effect. See Doe v. Am. Online, Inc., 783 So. 2d 1010, 1018 (Fla. 2001) ("We specifically concur that section 230 expressly bars 'any actions,' and we are compelled to give the language of this preemptive law its plain meaning.").

A defendant seeking to enjoy the immunity provided by Section 230 must establish that: (1) the defendant is a service provider or user of an interactive computer service; (2) the causes of action the treat defendant as a publisher or speaker of information; and (3) a different information content provider provided the information. Doe v. Reddit, Inc., No. SACV 21-00768 JVS (KESx), 2021 WL 5860904, at *3 (C.D. Cal. Oct. 7, 2021); Roca Labs, Inc. v. Consumer Op. Corp., 140 F. Supp. 3d 1311, 1319 (M.D. Fla. 2015). As such,

immunity applies unless an ICS provider creates, authors, or otherwise materially contributes to a publication such that the content "is properly attributable to them." <u>Gilmore v. Jones</u>, 370 F. Supp. 3d 630, 662 (W.D. Va. 2019) (internal citations omitted).

**B. <u>Exceptions to Immunity Under the CDA</u>**

Immunity under the CDA is not absolute. ICS providers are not insulated from civil liability for child sex trafficking offenses under 18 U.S.C. §§ 1591 and 1595 if the underlying conduct constitutes a violation of those statutes. 47 U.S.C. § 230(e)(5)(A-B). 18 U.S.C. § 1591, titled "Sex trafficking of children or by force, fraud, or coercion" instructs that

(a) Whoever knowingly—

(1) in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or

(2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1) . . .

18 U.S.C. § 1591(a)(1-2). The statute's civil remedy corollary, 18 U.S.C. § 1595(a-b), allows victims to pursue civil recovery against their perpetrators. However, courts

interpret 18 U.S.C. § 1591 to require actual knowledge and overt participation in a sex trafficking venture by the ICS provider — generalized knowledge without active participation is insufficient. See, e.g., Doe v. Kik Interactive, Inc., 482 F. Supp. 3d 1242, 1249-51 (S.D. Fla. 2020) (granting immunity to ICS provider where plaintiff failed to allege sufficient facts establishing actual knowledge or overt participation in under 18 U.S.C. § 1591); United States v. Afyare, 632 F. App'x 272, 286 (6th Cir. 2016) (interpreting 18 U.S.C. § 1591 to require actual participation in a sex trafficking venture). For the reasons discussed below, the Court finds that Omegle is entitled to immunity from each of Plaintiffs' claims.

### C. **Omegle is Entitled to Section 230 Immunity**

First, Omegle is an ICS provider under Section 230. That is, Omegle is a system that allows multiple users to connect to a computer server via the Internet. 47 U.S.C. § 230(f)(3). ICS providers are afforded immunity under the CDA unless they materially augment or develop the unlawful content at issue. See Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC, 521 F.3d 1157, 1167-68 (9th Cir. 2008) ("a website helps to develop unlawful content, and thus falls within the exception to section 230, if it contributes materially to the alleged illegality of the conduct.").

Indeed, Plaintiffs appear to acknowledge that Omegle is an ICS provider by arguing that "the rapidly evolving legal landscape . . . increasingly holds Internet Service Providers . . . liable for the harms they facilitate and oftentimes create." (Doc. # 81 at 1).

Nonetheless, a review of the factual allegations confirms that Omegle functions by randomly pairing users in a chatroom and enabling them to communicate in real time. (Doc. # 75 at ¶¶ 33-34). There are no factual allegations suggesting that Omegle authors, publishes, or generates its own information to warrant classifying it as an ICP rather than an ICS provider. Compare Doe v. Mindgeek USA Inc., No. SACV 21-00338-CJC(ADSx), 2021 WL 4167504, at *9 (C.D. Cal. Sept. 9, 2021) (finding that website was an ICP where it actively created programs, curated playlists, and developed private messaging systems to facilitate trafficking of child pornography) with Mezey v. Twitter, Inc., No. 1:18-cv-21069-KMM, 2018 WL 5306769, at *1 (S.D. Fla. July 17, 2018) (granting Twitter CDA immunity where it merely displayed, organized, and hosted user content). Nor are there any factual allegations that Omegle materially contributes to the unlawfulness of the content at issue by developing or augmenting it. See Roommates.com, 521 F.3d at 1167-68. Omegle

10

users are not required to provide or verify user information before being placed in a chatroom with another user. (Doc. # 75 at ¶¶ 37, 50-51). Further, some users, such as hackers and cappers, can circumvent Omegle's anonymity *using the data they themselves collect from other users* during their encounters. (Id. at ¶ 38). The Court is persuaded that Omegle's hosting capabilities for its users, coupled with its lack of material content generation, place it squarely within the definition of an ICS provider under 47 U.S.C. § 230(f)(2).

Regarding the second element of CDA immunity, Plaintiffs' claims seek to treat Omegle as a speaker or publisher of information. For CDA immunity to apply, Plaintiffs' claims must treat Omegle as the publisher or speaker of the complained of information that was provided by others. See Barnes v. Yahoo!, Inc., 570 F.3d 1096, 1102-03 (9th Cir. 2009) (explaining that Section 230 shields websites from liability against "any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online") (internal citations omitted); Whitney Info. Network, Inc. v. Verio, Inc., No. 2:04-cv-462-JES-SPC, 2006 WL 66724, at *3 (M.D. Fla. Jan. 11, 2006) (finding that tortious interference with a business relationship and defamation claims treated the website as the publisher of

11

offensive statements). Courts will find this element to be satisfied where a plaintiff's claim alleges that an ICS provider should have screened or filtered information provided by their users. See Green v. Am. Online, 318 F.3d 465, 471 (3d Cir. 2003) (finding the second element satisfied where plaintiff "attempt[ed] to hold [a defendant] liable for decisions relating to the monitoring, screening, and deletion of content," which are "quintessentially related to a publisher's role."); Ben Ezra, Weinstein, and Co. v. Am. Online, Inc., 206 F.3d 980, 986 (10th Cir. 2000) (upholding immunity for ICS provider where plaintiff sought damages caused by their reliance on third party's inaccurate stock postings).

Here, Counts I, II, III, IV, and VI seek to hold Omegle responsible for the conduct of cappers like John Doe who criminally misappropriate the site. Plaintiffs' child pornography claim asserts that Omegle knowingly possessed child pornography that was generated on its platform. (Doc. # 75 at ¶¶ 31-37, 41-42, 75). Their child sex trafficking claim alleges that Omegle created a forum that harbored, enticed, and solicited child sex trafficking. (Id. at ¶¶ 83-87). (Id. at ¶¶). The intrusion upon seclusion and intentional infliction of emotional distress claims in turn posit that

(1) Omegle designed a website that allows users' personal identifying information to become compromised, and that (2) Omegle knowingly paired C.H. with a capper, causing her extreme emotional distress. (Id. at 20-22, 25-56). Lastly, the Video Privacy Protection Act claim seeks to hold Omegle liable for John Doe's commandeering of C.H.'s personal identifying information. (Id. at 19-20). Each of these claims seek redress for damages caused by John Doe's conduct. (Id. at 15, 17, 20, 25). No well-pleaded facts suggest that Omegle had actual knowledge of the sex trafficking venture involving C.H. or that Omegle had an active participation in the venture. Cf. Mindgeek, 2021 WL 4167504, at **9-10 (finding plausible 18 U.S.C. §§ 1591 and 2252A claims where plaintiff alleged that website reviewed, approved, posted, and featured certain child pornography videos on its platform while also sharing profits with sex traffickers). Instead, Plaintiffs acknowledge that Omegle is not impervious to attack — hackers can screenshot their activity with other users and use those screenshots to obtain others' personal identifying information. (Doc. # 75 at ¶ 38). These factual allegations, compounded with the details of C.H.'s encounter with John Doe, ultimately serve to support Plaintiffs' position that Omegle should be held responsible for John Doe's conduct.

Herrick v. Grindr LLC, 765 F. App'x 586, 591 (2d Cir. 2019)
(dismissing failure to warn and emotional distress claims
against ICS provider for damages caused by another user);
Caraccioli v. Facebook, Inc., 700 F. App'x 588, 590 (9th Cir.
2017) (dismissing intrusion upon seclusion claims); Klayman
v. Zuckerberg, 753 F.3d 1354, 1357-59 (D.C. Cir. 2014)
(dismissing negligence and assault claims).

The other claims, Counts V, VII, and VII, confirm that
Plaintiffs' theories of liability against Omegle are rooted
in the creation and maintenance of the platform. These claims
recognize the distinction between Omegle as an ICS provider
and the users, but nonetheless treat Omegle as the publisher
responsible for the conduct at issue. Yahoo!, 570 F.3d at
1101-02. This is corroborated in no small part by Count VII,
the "ratification/indemnification" claim, where Plaintiffs
maintain that child sex trafficking was so pervasive on and
known to Omegle that it should be vicariously liable for the
damages caused by the cappers and similar criminals.[2] (Doc.

---

[2] As Omegle highlights in their Motion, ratification/vicarious
liability is not an independent cause of action. See Barabe
v. Apax Partners Europe Managers, Ltd., 359 F. App'x 82, 84
(11th Cir. 2009) (explaining that "[t]heories of vicarious
liability, however, are not independent causes of action;
instead, they are theories of liability for other claims.").
Count VII fails as a matter of law on this ground alone, and

# 75 at ¶¶ 142-143). Through the negligence and public nuisance claims, Plaintiffs allege that Omegle knew or should have known about the dangers that the platform posed to minor children, and that Omegle failed to ensure that minor children did not fall prey to child predators that may use the website. (Id. at ¶¶ 112, 148).

The CDA bars such claims as they seek to redirect liability onto Omegle for the ultimate actions of their users. See, e.g., Bauer v. Armslist, LLC, No. 20-cv-215-pp, 2021 WL 5416017, at **25-26 (E.D. Wis. Nov. 19, 2021) (dismissing, among others, negligence, public nuisance, aiding and abetting tortious conduct, and civil conspiracy claims, against ICS provider website that was used to facilitate unlawful firearm sales); Kik, 482 F. Supp. 3d at 1249-50 (website where users solicited plaintiff for sexual photographs was immune from sex trafficking, negligence, and strict lability claims where website only enabled user communication); Poole v. Tumblr, Inc., 404 F. Supp. 3d 637, 642-43 (D. Conn. 2019) (content hosting website entitled to immunity from invasion of privacy and negligent infliction of emotional distress claims); Saponaro v. Grindr, LLC, 93 F.

---

Plaintiffs have not offered a response in support of Count VII's viability.

Supp. 3d 319, 325 (D. N.J. 2015) (dismissing "failure to police" claim against ICS provider under Section 230). Regardless of form, each of Plaintiffs' claims ultimately seek to treat Omegle as a publisher or speaker, which are encompassed within Section 230 immunity.

As for the third element for immunity under the CDA, the Court readily gleans that the information and content at issue here was in fact generated by a separate content provider, John Doe. The Second Amended Complaint recounts that C.H.'s injuries were caused by John Doe during their chatroom encounter. (Doc. # 75 at ¶¶ 54-62). John Doe's video feed, his brandishing of C.H.'s personal identifying information, and the threats he subjected her to were not provided by Omegle in any sense. (Id.). See Kik, 482 F. Supp. 3d at 1248-49. Merely providing the forum where harmful conduct took place cannot otherwise serve to impose liability onto Omegle. Klayman, 753 F.3d at 1358.

In short, the Court finds that Omegle is entitled to immunity under CDA Section 230 because (1) it is an ICS provider under the CDA, (2) Plaintiffs' claims seek to treat Omegle as a publisher or speaker, and (3) the information at issue originated from another information provider, John Doe. Counts I through VIII are barred under the CDA and are hereby

16

dismissed. The Court writes separately to address whether Count II has been sufficiently pled to escape immunity under the CDA.

### D. **The Sex Trafficking Claim**

Count II asserts a claim for civil liability for Omegle's alleged involvement in a child sex trafficking venture under 18 U.S.C. §§ 1591 and 1595. (Doc. # 75 at 15-16). Notwithstanding Section 230 immunity, the CDA does permit suits against ICS providers for violations of 18 U.S.C. §§ 1591 and 1595 under narrow circumstances. Congress enacted the CDA to "encourage service providers to self-regulate the dissemination of offensive material over their service," and allow "computer service providers to establish standards of decency without risking liability for doing so." NetChoice, LLC v. Moody, No. 4:21cv220-RH-MAF, 2021 WL 2690876, at *6 (N.D. Fla. June 30, 2021) (internal citations omitted). Congress did not, however, alter a sex trafficking victim's ability to bring suit against an ICS provider for harm suffered *from the ICS provider's involvement* in the underlying venture. See J.B. G6 Hosp., LLC, No. 19-cv-07848-HSG, 2021 WL 4079207, at *12 (N.D. Cal. Sept. 8, 2021) (holding that 18 U.S.C. § 1591 could not surmount CDA immunity

unless plaintiff alleged an ICS provider's actual knowledge or participation in a sex trafficking venture).

As analyzed in the recent decision of Doe v. Kik Interactive, Inc., the legislative history of the CDA confirms that generalized knowledge that sex trafficking occurs on a website is insufficient to maintain a plausible 18 U.S.C. § 1591 claim that survives CDA immunity. 482 F. Supp. 3d 1242, 1250 n. 6 (S.D. Fla. 2020). The plaintiff in Kik alleged that multiple users on the Kik website solicited her for sexually explicit photographs. Id. at 1244. She then brought claims against Kik for violations of 18 U.S.C. §§ 1591, 1595, negligence, and strict liability. Id. at 1245-46, 1251. The Kik court found that Kik would not be immune from suit only if it were alleged that Kik had actual knowledge of the underlying incident and had some degree of active participation in the alleged sex trafficking venture. Id. at 1250-51. The Kik plaintiff did not assert actual knowledge or overt participation on behalf of Kik, and instead asserted that Kik had general knowledge of other sex trafficking incidents on the website. Id. at 1251. Thus, the Kik court found that Kik was entitled to Section 230 immunity because plaintiff had not plausibly alleged a claim that would surmount Section 230 immunity. Id.; see also Reddit, 2021 WL

5860904, at *8 (dismissing 18 U.S.C. § 1591 claim for failure to plead that ICS provider knowingly participated in a sex trafficking venture).

Just as in Kik, Plaintiffs here assert that Omegle had knowledge of prior instances of sex trafficking and knew that the platform had been used as a sex trafficking tool in the past. (Doc. # 75 at ¶¶ 39-43). They submit that this generalized knowledge is sufficient to place their 18 U.S.C. §§ 1591 and 1595 claims outside the bounds of CDA immunity. (Doc. # 81 at 5-6). Yet, just as in Kik, the asserted claims against Omegle are premised upon general, constructive knowledge of past sex trafficking incidents. (Doc. # 75 at ¶ 83) ("[Omegle] knowingly benefited from participation in what it knew or should have known was a sex trafficking venture . . . ."). The Second Amended Complaint fails to sufficiently allege Omegle's actual knowledge or overt participation in the underlying incident with John Doe. The generalized knowledge of past instances of sex trafficking are not enough to satisfy an exception to immunity. Reddit, 2021 WL 5860904 at *8; Kik, 482 F. Supp. 3d at 1251; see also Afyare, 632 F. App'x at 288 (interpreting 18 U.S.C. § 1591 to require actual participation in a sex trafficking venture rather than only requiring generalized knowledge of a venture).

19

Without allegations that Omegle had actual knowledge of, or overtly participated in the sex trafficking venture by John Doe, Plaintiffs fail to state a plausible sex trafficking claim that would escape CDA 230 immunity.

**E. <u>Leave to Amend</u>**

For the reasons explained above, each of Plaintiffs' claims must be dismissed. As posed in Plaintiffs' response, Plaintiffs ultimately seek to hold Omegle liable for the actions of John Doe. <u>See</u> (Doc. # 81 at 1) ("the rapidly evolving legal landscape . . . increasingly holds Internet Service Providers . . . liable for the harms they facilitate and oftentimes create."). Neither in their response to Omegle's Motion, nor at any time after have Plaintiffs moved for leave to amend the Second Amended Complaint. Despite Omegle's prior two motions to dismiss under the CDA, Plaintiffs do not provide any additional arguments or authority suggesting that their claims would otherwise survive CDA immunity. While leave to amend is typically granted, amendment in this case would be futile. <u>See</u> <u>Cockrell v. Sparks</u>, 510 F.3d 1307, 1310 (11th Cir. 2007) ("Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant."). Plaintiffs have had

multiple opportunities to assert claims that avoid the CDA's grant of immunity but have been unable to do so.

## IV.   **Conclusion**

Congress has instructed that claims for harm suffered at the hands of other users, without more, cannot justify redirecting liability to the forum where the harm took place. While the Court sympathizes with Plaintiffs over the harm C.H. suffered while using Omegle, the Court finds that they have nonetheless failed to plead claims that withstand Omegle's Section 230 Immunity.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   Defendant Omegle.com, LLC's Motion to Dismiss the Second Amended Complaint (Doc. # 75) is **GRANTED.** All Counts are **DISMISSED** without leave to amend.

(2)   The Clerk is directed to terminate any deadlines, deny any outstanding motions as moot, and thereafter, close the case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 10th day of January, 2022.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

# TAB 91

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

|  |  |
|---|---|
| M.H. and J.H.,<br>on behalf of their minor child C.H.,<br><br>　　　　　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>OMEGLE.COM, LLC,<br><br>　　　　　　　　　　　　Defendant. | Case No. 8:21–cv–814–VMC–TGW<br><br>**NOTICE OF APPEAL** |

Notice is hereby given that the Plaintiffs in the above–named case, M.H. and J.H. on behalf of their minor child C.H., by and through counsel, hereby appeal to the United States Court of Appeals for the Eleventh Circuit from the Order of this Court entered in this action on January 10, 2022 (Document 90).

Dated this 28th day of January 2022.

**HACH ROSE SCHIRRIPA & CHEVERIE, LLP**

by_____ /s/ Hillary Nappi_____
Frank R. Schirripa, Esq. *Pro Hac Vice*
Hillary M. Nappi, Esq. *Pro Hac Vice*
112 Madison Avenue, 10th Floor
New York, New York 10016
Phone: 212–213–8311
Email: hnappi@hrsclaw.com

**MARSH LAW FIRM PLLC**

by_____ /s/ Jennifer Freeman_____
Jennifer Freeman, Esq.,
Florida Attorney Registration No. 1014236
31 Hudson Yards, 11th Floor
New York, New York 10001
Phone: 212–372–3030
Email: JenniferFreeman@marsh.law

by_____ /s/ Margaret E. Mabie_____
Margaret E. Mabie, Esq. *Pro Hac Vice*
31 Hudson Yards, 11th Floor
New York, New York 10001
Phone: 212–372–3030
Email: MargaretMabie@marsh.law

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on January 28, 2022, I caused a copy of

Plaintiffs' Notice of Appeal to be served upon counsel of record for the

Defendant *via* email and the Court's ECF system.

_____ /s/ Margaret E. Mabie_____

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that, on this 21st day of March 2022, I caused the foregoing to be filed with the Clerk of the Court, via the CM/ECF System, which will send notice of such filing to all registered users.

I further certify that the required paper copies have been dispatched to the Clerk of the Court, via United Parcel Service, for delivery within three business days.

Respectfully submitted,

James R. Marsh
MARSH LAW FIRM PLLC
31 Hudson Yards, 11th Floor
New York, New York 10001
Email: jamesmarsh@marsh.law
Phone: 212–372–3030