# 22-10338

# United States Court of Appeals

*for the*

# Eleventh Circuit

M.H., J.H., On behalf of their minor child, C.H.,

*Plaintiffs/Appellants,*

– v. –

OMEGLE.COM LLC,

*Defendant/Appellee.*

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
CASE NO: 8:21-cv-00814-VMC-TGW
(Hon. Virginia M. Hernandez Covington)

## BRIEF OF *AMICI CURIAE* THE NATIONAL CENTER ON SEXUAL EXPLOITATION; INTERNATIONAL ASSOCIATION OF HUMAN TRAFFICKING INVESTIGATORS; UNITED ABOLITIONISTS; PAVING THE WAY FOUNDATION; and JUSTICE RESTORATION CENTER IN SUPPORT OF APPELLANT AND FOR REVERSAL

PETER A. GENTALA
NATIONAL CENTER ON SEXUAL
EXPLOITATION LAW CENTER
1201 F. Street, NW, Suite 200
Washington, DC 20004
(202) 393-7245

LISA D. HABA
THE HABA LAW FIRM, P.A.
1220 Commerce Park Dr. Suite 207
Longwood, Florida 32779
(844) 422-2529

*Counsel for Amici Curiae*

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1, Federal Rules of Appellate Procedure, and Eleventh Cir. R. 26.1, *amici curiae* state that, in addition to the persons listed in the Certificate of Interested Persons and Corporate Disclosure Statement filed by Appellants on March 14, 2022, the following persons and entities have an interest in the outcome of this case:

- International Association of Human Trafficking Investigators, *Amicus Curiae*

- Justice Restoration Center, *Amicus Curiae*

- Lisa D. Haba, *Counsel for Amici Curiae*

- National Center on Sexual Exploitation, *Amicus Curiae* and *Counsel for Amici Curiae*

- Paving the Way Foundation, *Amicus Curiae*

- Peter A. Gentala, *Counsel for Amici Curiae*

- United Abolitionists, *Amicus Curiae*

- The Haba Law Firm, P.A., *Counsel for Amici Curiae*

*Amici curiae* further state that they are non-profit membership and non-membership organizations with no parent company and no publicly traded stock.

///
///
///
///
///
///

C-1 of 2

Date: March 21, 2022

/s/ Lisa D. Haba_____
Lisa D. Haba
THE HABA LAW FIRM, P.A.
1220 Commerce Park Dr. Suite 207
Longwood, FL 32779
(844) 422-2529
lisahaba@habalaw.com
*Counsel for Amici Curiae*

/s/ Peter A. Gentala_____
Peter A. Gentala
NATIONAL CENTER ON SEXUAL
EXPLOITATION LAW CENTER
1201 F. St. NW, Suite 200
Washington, DC 20004
(202) 393-7245
pgentala@ncoselaw.org
*Counsel for Amici Curiae*

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENTS ...................................................................................................CP1

TABLE OF CONTENTS ....................................................................................i

TABLE OF AUTHORITIES ............................................................................. ii

STATEMENT OF IDENTIFICATION...............................................................1

STATEMENT OF COMPLIANCE WITH RULE 29(a) ....................................3

STATEMENT OF THE ISSUES........................................................................4

SUMMARY OF ARGUMENT ..........................................................................4

ARGUMENT .....................................................................................................7

   I.   OMEGLE'S COMMERCIALLY PROFITABLE PLATFORM ENDANGERS MILLIONS OF CHILDREN AND HAS BEEN DOING SO FOR MANY YEARS .....7

   II.   THE DISTRICT COURT ERRED IN DETERMINING THAT OMEGLE.COM WAS IMMUNE FROM LIABILITY PURSUANT TO A PLAIN LANGUAGE READING OF CDA 230. .............................................................10

   III.   THE DISTRICT COURT INCORRECTLY APPLIED THE 18 § U.S.C. § 1591 CRIMINAL  STANDARD, INSTEAD OF THE APPROPRIATE CIVIL STANDARD REQUIRED BY 18 U.S.C. § 1595, THE BINDING PRECEDENT OF THE *RED ROOF* DECISION, AND THE LANGUAGE AND PURPOSE OF FOSTA. .............16

CONCLUSION .................................................................................................23

CERTIFICATE OF COMPLIANCE ................................................................25

PROOF OF SERVICE .....................................................................................26

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Bennett v. Google, LLC*, 882 F.3d 1163 (D.C. Cir. 2018) ...............................................14

*CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217 (11th Cir. 2001) ...................14

*Cheneau v. Garland*, No. 15-70636, 2021 WL 1916947 (9th Cir. 2021)......................13

*Consol. Bank, N.A. v. U.S. Dep't of Treasury*, 118 F.3d 1461 (11th Cir. 1997) ............14

*Doe v. Facebook, Inc.*, 142 S. Ct. 1087 (2022) ...............................................................13

*Doe v. Kik Interactive, Inc.*, 482 F. Supp. 3d 1242 (S.D. Fla. 2020). ......................23, 24

*Doe v. Reddit*, Inc., No. SACV2100768JVSKESX, 2021 WL 5860904 (C.D. Cal. 2021)..................................................................................................................................25

*Dyer v. United States,* 832 F.2d 1062, 1066 (9th Cir. 1987)..........................................14

*Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*, 946 F.3d 1040 (9th Cir. 2019) ......................................................................................................................................13, 14

*FTC v. LeadClick Media, LLC*, 838 F.3d 158 (2d Cir. 2016) ........................................12

*J. B. v. G6 Hosp., LLC*, No. 19-CV-07848-HSG, 2020 WL 4901196 (N.D. Cal. 2020) ..............................................................................................................................................25

*Jane Doe #1 and #2 v. MG Freesites, Ltd., et. al.*, Case. No. 7:21-cv-00220-LSC (N.D. Ala. Feb. 9, 2022) ............................................................................................................25

*Jane Doe #1, et. al. v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. Dec. 22, 2021) ....passim

*Jimenez v. Quarterman*, 555 U.S. 113 (2009)................................................................13

*John Doe Nos. 1 and 2 v. Twitter, Inc.,* ---F.Supp.3d. --- (N.D. Cal. 2021) ..................22

*Pick v. Commonwealth*, 852 SE.2d 479 (Va. Ct. App. 2021) ........................................10

*Rowe v. Educ. Credit Mgmt. Corp.,* 559 F.3d 1028 (9th Cir.2009) ...............................13

*The People of the State of Illinois v. Thompson,* 2022 IL App (2d) 190950-U .............10

*United States v. Ditomasso*, 932 F.3d 58 (2d Cir. 2019)................................................10

*United States v. Gray,* 2021 WL 3519291 (E.D. Ky. 2021) ..........................................10

*United States v. Hinkley*, 803 F.3d 85 (1st Cir. 2015)....................................................10

*United States v. Powell*, 925 F.3d 1 (1st Cir. 2018) ......................................................10

*Zeran v. American Online, Inc.*, 129 F.3d 327 (4th Cir. 1997) ................................12, 13

## Statutes

18 U.S.C. § 1591..........................................................................................19, 21, 23, 24

18 U.S.C. § 1595..........................................................................................13, 20, 21, 26

47 U.S.C. § 230..................................................................................................12, 14, 15

## Other Authorities

*Authorities Seek Victims in Child Exploitation Investigation*, U.S. DEP'T JUST. (Feb. 22, 2022), https://www.justice.gov/ usao-sdtx/pr/authorities-seek-victims-child-exploitation-investigation ...............................................................................10

*Charlotte Man Sentenced To 30 Years on Child Pornography Charges*, U.S. DEP'T JUST. (May 25, 2018), https://www.justice.gov/usao-wdnc/pr/charlotte-man-sentenced-30-years-child-pornography-charges ..........................................................11

*Child Predator Is Sentenced To 35 Years In Prison For His Massive Online Sextortion Scheme*, U.S. DEP'T JUST. (M.D. AL, 2013), https://www.justice.gov/usao-mdal/pr/child-predator-sentenced-35-years-prison-his-massive-online-sextortion-scheme ...............................................................................................................10

Joe Tidy, *Omegle: Children Expose Themselves on Video Chat Site*, BBC NEWS (Feb. 18, 2021) https://www.bbc.com/news/technology-56085499 ......................................8

Kait Hanson, *What Is Omegle? What Parents Need to Know About Keeping Kids Safe Online*, TODAY (Nov. 8, 2021) https://www.today.com/parents/what-omegle-why-are-children-it-t236335...............................................................................................7

Mary Graw Leary, *The Indecency and Injustice of Section 230 of the Communication Decency Act*, 41 Harv. J.L. & Pub. Pol'y 553 (2018). .................................................12

*Ohio Man Sentenced to 10 Years for Coercing Minor to Send Him Sexually Explicit Videos, Posting Them on TikTok*, U.S. DEP'T JUST. (Dec. 14, 2021) https://www.justice.gov/usao-ct/pr/ohio-man-sentenced-10-years- coercing-minor-send-him-sexually-explicit-videos-posting-them ........................................................ 10

*Omegle's Economics: How Does Omegle Make Money?*, TECH WITH TECH (Feb. 22, 2022) https://techwithtech.com/omegles-economics-how-does-omegle-make-money/. ............................................................................................................... 9

Paul Greenamyer, *How to Get Unbanned from Omegle in 2022*, (Mar. 19, 2022) https://cybernews.com/best-vpn/how-to-get-unbanned-from-omegle ........................ 16

*Registered Sex Offender Sentenced to 25 Years in Prison for Enticement of a Minor and Possession of Prepubescent Child Pornography*, U.S. DEP'T JUST. (Sep. 5, 2018), https://www.justice.gov/usao- sdil/pr/registered-sex-offender-sentenced-25-years-prison-enticement-minor-and- possession .................................................................. 11

## STATEMENT OF IDENTIFICATION

**The National Center on Sexual Exploitation** ("NCOSE") is a nonprofit organization, founded in 1962, that combats sex trafficking by advocating in state and federal courts for survivors, engaging in corporate advocacy to encourage companies to adopt responsible and safe practices, and advocating for legislative change that protects survivors and promotes human dignity. NCOSE joins this brief on its own behalf to provide the viewpoint of addressing the legal framework for encouraging technology companies to deter and prevent the technology-enabled exploitation of children.

**The International Association of Human Trafficking Investigators** ("IAHTI") is a nonprofit organization, founded in 2009, and combats human trafficking by arming law enforcement officers, prosecutors and crime analysts around the world with the training, technical support, resources and members forum they need to identify and rescue victims and prosecute their traffickers.  To date, IAHTI has trained thousands of investigators, prosecutors and crime analysts from 66 countries on the latest human trafficking investigative techniques and technology.  IAHTI joins this brief on its own behalf to provide the viewpoint of law enforcement and the prevalence that websites like Omegle.com have in modern day sex trafficking and child exploitation investigations.

**United Abolitionists** ("UA") was founded in 2009 and has been a non-profit organization leader in the fight against human trafficking and child exploitation by

1

focusing on education, prevention, rescue, and rehabilitation while maintaining human dignity for survivors. UA runs the Central Florida branch of the National Human Trafficking hotline, which triages survivors' needs and connects them with the law enforcement and service providers necessary to assist them in rescue and rehabilitation. UA provides education and training to the hospitality industry, athletes, community groups, religious organizations, students, and others about the warning signs of human trafficking, how to identify victims, and action that can be taken.  UA joins this brief on its own behalf to provide the viewpoint of a group that triages most distress calls to the National Hotline and sees the impact that websites, like Omegle.com, have on the exploitation and harm to children.

**Paving the Way Foundation** ("PTWF") is a non-profit organization that is a "fierce disruption" in the cycle of child sex trafficking by empowering children, parents, and communities to combat this crime through education and training programs. PTWF has educated over 17,000 parents, teachers, and community leaders about child trafficking and online exploitation of youth.  PTWF focuses on the online dangers, the warning signs, the impact it has on our children, and the actions that can be taken to prevent this harm.  PTWF joins this brief on its own behalf to provide the viewpoint of educators that work with children exploited online and the lifelong harm sites like Omegle.com cause to victims when they prioritize profits over people.

**Justice Restoration Center** ("JRC") is a trauma-informed, restorative *pro bono* legal center that provides representation to victims and survivors of human trafficking worldwide on issues of Florida law.  JRC provides *pro bono* services in the areas of criminal, family, general civil law and expungements of Florida criminal records that resulted from the client's trafficking experience.  To date, JRC has helped hundreds of survivors with their various legal needs.  JRC has also been an advocate and expert to Florida legislators on legislative issues related to human trafficking.  JRC joins this brief on its own behalf for the purpose of representing the viewpoint of survivors and how their victimization and trauma has been affected, if not exacerbated by websites that profit from the exploitation of people, such as Omegle.com.

## STATEMENT OF COMPLIANCE WITH RULE 29(a)

No party or party's counsel authored this brief in whole or in part; no party or party's counsel contributed money to fund the preparation or submission of this brief; and no other person except *amici curiae*, their members, or their counsel contributed money intended to fund the preparation or submission of this brief. Both parties have consented to the filing of this brief.

///

///

///

3

## STATEMENT OF THE ISSUES

I.     Does a plain language reading of the Communication Decency Act, Section 230 ("CDA 230") require that Omegle meet certain conditions precedent before immunity is triggered?

II.    Was the District Court correct to dismiss the Plaintiff's beneficiary-liability, sex-trafficking claim under CDA 230 when the allegations in the second amended complaint meet the requirements of the Trafficking Victim Reauthorization Act as they have been recognized by this Court, and when Congress has specifically instructed that such claims should not be impaired or limited by any construction of §230?

## SUMMARY OF ARGUMENT

This Court should reverse the district court's Order of Dismissal because, under a plain-language reading of CDA 230 and the binding Eleventh Circuit precedent on TVPRA beneficiary liability, the District Court erred in dismissing the Plaintiffs' claims.

As the heartbreaking facts of this case demonstrate, Omegle is a particularly dangerous platform for children. Indeed, it's hard to imagine a more perilous combination of predators, potential victims, and profit. Sexual predators appreciate Omegle for providing ready access to millions of vulnerable children that can be spied upon, groomed, targeted, and ultimately exploited on Omegle's platform. Children are drawn to the well-

4

known platform that boasts the exhilarating experience of talking to strangers. The millions of users who use Omegle every day to talk with strangers ensure that the platform is constantly supported by a significant revenue stream from advertisements, some of which are for other sexually explicit websites. The young plaintiff who was exploited in this case is not alone. Federal and state case reports, as well as Department of Justice records, reveal a steady stream of Omegle-facilitated child exploitation that has been going on for years. And of course, that only reflects the predators who get caught.

In what can only be called farcical irony, Omegle, a facilitator of obscene and indecent material, seeks to avoid any accountability in this case under the CDA, a law designed to protect children from obscene and indecent material on the internet. A plain language reading of CDA 230 and its FOSTA amendment shows that Congress intended to both *prevent* the exploitation of children online and *deter and punish* the bad actors that participate in child exploitation and harm.  To accomplish this, CDA 230(c) created an immunity provision for websites that "[voluntarily take] action *in good faith* to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable." §230(c)(2) (emphasis added).  Instead of creating policies *in good faith* to protect children, Omegle has created a facade of "protection."  Omegle knows that its platform is used for illegal purposes, Omegle conducts no age verification, Omegle limitedly moderates some communications, Omegle pairs minors with adults in both the moderated and unmoderated

sections of Omegle, and when an IP address is banned, a user can easily get around the "ban" by using a VPN.  These actions present a mirage of affirmative acts; in reality, Omegle facilitates, enables, promotes, and profits from the exploitation of children. Omegle thus has not met the plain-language condition precedent of a *good faith affirmative action* to invoke CDA 230 immunity.

On December 22, 2021, the Eleventh Circuit issued an opinion as a matter of first impression in *Jane Doe #1, et. al. v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. Dec. 22, 2021) ("*Red Roof*"), which provided a four-element analysis of what is required to sufficiently plead a beneficiary-liability claim case under the TVPRA.  *Id.* at 724.  The Second Amended Complaint sufficiency pleads that Omegle knowingly benefited with web traffic and ad revenue, Omegle and the traffickers were engaged in a common undertaking or enterprise involving risk and potential profit, the undertaking or enterprise violated the TVPRA as to the plaintiff, and Omegle had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff.  *Id*. at 724.  The District Court, however, relied on the *Kik* case, a district-court opinion from the Southern District of Florida, used the wrong standard, omitted the applicable precedent of *Red Roof*, and consequently arrived at the wrong conclusion.  The *Kik* case is flawed and conflicts with the text and purpose of the Allow States and Victims to Fight Online Sex Trafficking Act of 2017 ("FOSTA") as well as with this Court's recent decision in *Red Roof*. The District Court should be reversed and the Motion to Dismiss should be denied as to the TVPRA claims.

## ARGUMENT

### I.    OMEGLE'S COMMERCIALLY PROFITABLE PLATFORM ENDANGERS MILLIONS OF CHILDREN AND HAS BEEN DOING SO FOR MANY YEARS

The online platform Omegle boasts that people can "Talk to strangers!"[1] Everyday, millions of people do interact with strangers[2] on Omegle in a dangerously secluded virtual environment. Many of Omegle's users are sexual predators. Many of Omegle's users—like the Plaintiff in this case—are children utterly unaware and unprepared for the peril that awaits them. Omegle is a video-chatting platform that allows users from around the globe to connect.[3] The website randomly connects users together, and claims to pair people with similar interests.[4] As the Court below found, "Omegle does not have a screening or verification process to ensure that minor children only use the site with parental guidance or consent. . . ." (Dkt. 90 p. 2.) While the site does suggest that people under 18 should only use the site with parental supervision, this is not enforced in any meaningful way. *Id.*

During the COVID pandemic, the site went from "34 million visits a month in January 2020 to 65 million in January 2021."[5] Videos on TikTok tagged with Omegle, and

---

[1] Kait Hanson, *What Is Omegle? What Parents Need to Know About Keeping Kids Safe Online*, TODAY (Nov. 8, 2021) https://www.today.com/parents/what-omegle-why-are-children-it-t236335.

[2] *Id.*

[3] *Id.*

[4] (Dkt. 90 p. 2); Kait Hanson, *What Is Omegle? What Parents Need to Know About Keeping Kids Safe Online*, TODAY (Nov. 8, 2021) https://www.today.com/parents/what-omegle-why-are-children-it-t236335.

[5] Joe Tidy, *Omegle: Children Expose Themselves on Video Chat Site*, BBC NEWS (Feb. 18, 2021) https://www.bbc.com/news/technology-56085499.

often containing sexual content, have been viewed over 9 billion times.[6] One 15-year-old girl, who uses the site because it is a trending platform, admits that it is akin to the dark web, but for "everyone."[7]

The Plaintiff in this action and her family are hardly the first people to discover that Omegle is rife with sexually exploitive content targeting minors. For example, during a two hour BBC News investigation on Omegle, reporters "were connected at random with 12 masturbating men, eight naked males and seven porn adverts… [they were] also paired at random twice with what appeared to be young prepubescent boys masturbating live on the video chat. One of them identified himself as being 14 years old."[8]

Omegle makes money through selling advertising space for viewing and interaction with its' 65 million users. Reportedly, when the website creator was approached about the explicit pornographic advertisements on the site, he claimed they were "age-restricted but would not give details about how that was possible without age verification. He described these explicit pornographic ads as "discreet" and said showing them was a "classic 'life gives you lemons' situation."[9]

---

[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.*

Omegle is not a publicly traded company, and very little is known about the details of how they generate revenue.[10] They do run advertisements on their site, and collect data, which are potential avenues of income.[11]

Omegle has a history of connecting minors with pedophiles. Indeed, there is an extensive history of criminal investigations and prosecutions of sexual crimes against children committed using the platform. Simple searches of state and federal case-law reporters[12] as well of the records of the United States Department of Justice[13] reveal more

---

[10] *Omegle's Economics: How Does Omegle Make Money?*, TECH WITH TECH (Feb. 22, 2022) https://techwithtech.com/omegles-economics-how-does-omegle-make-money/.
[11] *Id.*
[12] *See, e.g., The People of the State of Illinois v. Thompson,* 2022 IL App (2d) 190950-U  (Defendant recorded interactions on Omegle showing him interacting with children through the website and exposing himself, and asking children to expose themselves back); *United States v. Gray,* 2021 WL 3519291 (E.D. Ky. 2021) (Defendant used Omegle to watch a minor male masturbate)*; Pick v. Commonwealth*, 852 SE.2d 479 (Va. Ct. App. 2021) (Omegle used by sexual predator to engage in sexually explicit activity with minors); *United States v. Ditomasso*, 932 F.3d 58 (2d Cir. 2019) (Omegle sent three complaints to NCMEC reporting CSAM); *United States v. Powell*, 925 F.3d 1 (1st Cir. 2018) (Omegle aware of CSAM on their platform); *United States v. Hinkley*, 803 F.3d 85 (1st Cir. 2015) (Defendant used Omegle to stream images of Victim #2 masturbating).
[13] *See, e.g., Child Predator Is Sentenced To 35 Years In Prison For His Massive Online Sextortion Scheme*, U.S. DEP'T JUST. (M.D. AL, 2013), https://www.justice.gov/usao-mdal/pr/child-predator-sentenced-35-years-prison-his-massive-online-sextortion-scheme (impersonated a celebrity on Omegle in order to obtain sexually-explicit photos from children); *Authorities Seek Victims in Child Exploitation Investigation*, U.S. DEP'T JUST. (Feb. 22, 2022), https://www.justice.gov/usao-sdtx/pr/authorities-seek-victims-child-exploitation-investigation (used Omegle to obtain sexually explicit images and video of multiple child victims); *Ohio Man Sentenced to 10 Years for Coercing Minor to Send Him Sexually Explicit Videos, Posting Them on TikTok*, U.S. DEP'T JUST. (Dec. 14, 2021) https://www.justice.gov/usao-ct/pr/ohio-man-sentenced-10-years-coercing-minor-send-him-sexually-explicit-videos-posting-them (Defendant met a girl under 12-years-old on Omegle and obtained sexually explicit content from her); *Registered Sex Offender*

than 50 cases of pedophiles using Omegle to gain sexual access to children. While this case is still at the pleading stage, there can be no doubt from the information that is available in the public record that Omegle knows affirmatively that their platform is inherently dangerous and negatively impacts minors. The company has been on notice of this tragic fact for years and has failed to take any effective steps in making its platform safer for children, a population who are obviously at risk of exploitation of the worst kind on Omegle.

## II.  THE DISTRICT COURT ERRED IN DETERMINING THAT OMEGLE.COM WAS IMMUNE FROM LIABILITY PURSUANT TO A PLAIN LANGUAGE READING OF CDA 230.

In 1996, well before the dawn of social media, Congress codified the CDA 230, expressly intending to *prevent* the exploitation of children online, and *deter and punish* the bad actors that participate in child exploitation and harm.[14]  In order to accomplish this two-part goal of prevention and deterrence, Congress created a conditional immunity for

---

*Sentenced to 25 Years in Prison for Enticement of a Minor and Possession of Prepubescent Child Pornography*, U.S. DEP'T JUST. (Sep. 5, 2018), https://www.justice.gov/usao-sdil/pr/registered-sex-offender-sentenced-25-years-prison-enticement-minor-and-possession (sex offender registered for an Omegle account and connected with a 10 year old boy for the purpose of obtaining sexually explicit material from him); *Charlotte Man Sentenced To 30 Years on Child Pornography Charges*, U.S. DEP'T JUST. (May 25, 2018), https://www.justice.gov/usao-wdnc/pr/charlotte-man-sentenced-30-years-child-pornography-charges (used Omegle to connect with minors and obtain child pornography from them).
[14] *See generally*, Mary Graw Leary, *The Indecency and Injustice of Section 230 of the Communication Decency Act*, 41 Harv. J.L. & Pub. Pol'y 553 (2018).

interactive computer services that took *preventative steps* to develop and utilize blocking and filtering technologies to shield children from dangerous and harmful material online. 47 U.S.C. § 230(b)(4). Congress also expressly stated its intent that *reactive steps* be taken to enforce federal laws to "deter and punish trafficking in obscenity, stalking, and harassment" through the computer. 47 U.S.C. § 230(b)(5).

In 1997, the Fourth Circuit decided *Zeran v. American Online, Inc.*, 129 F.3d 327, 331 (4th Cir. 1997). A line of case law has been derived from *Zeran* that has interpreted CDA 230. The primary purpose of CDA 230 "was to protect children from sexually explicit internet content." *FTC v. LeadClick Media, LLC*, 838 F.3d 158, 173 (2d Cir. 2016) (*citing* 141 Cong. Rec. S1953 (daily ed. Feb. 1, 1995) (statement of Sen. Exon)). Nonetheless, cases interpreting this provision have at times, departed from CDA 230's plain language and incorrectly interpreted CDA 230 to give websites absolute immunity, in conflict with the stated Congressional intent.[15] Congress has attempted to remedy this

---

[15] While the Supreme Court has not yet decided a case of this genre interpreting §230, Justice Thomas has twice written separate statements questioning the broad-immunity construction that the *Zeran* decision and others have given the provision. *See Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*, 946 F.3d 1040 (9th Cir. 2019) ("Extending § 230 immunity beyond the natural reading of the text can have serious consequences. Before giving companies immunity from civil claims for knowingly hosting illegal child pornography or for race discrimination we should be certain that is what the law demands.") (cleaned up); and *Doe v. Facebook, Inc.*, 142 S. Ct. 1087, 1088 (2022) (questioning the application of immunity where Facebook allegedly "knows its system facilitates human traffickers in identifying and cultivating victims," but has nonetheless "failed to take any reasonable steps to mitigate the use of Facebook by human traffickers" because doing so would cost the company users—and the advertising revenue those users generate.")

with FOSTA, an amendment that clarified that the Congressional intent of CDA 230 was not to immunize websites against civil actions brought under 18 U.S.C. § 1595.

All questions of statutory construction "begin with the plain language of the statute."[16] "The plain meaning governs unless a clearly expressed legislative intent is to the contrary, or unless such plain meaning would lead to absurd results." *Dyer v. United States,* 832 F.2d 1062, 1066 (9th Cir. 1987). *See also Consol. Bank, N.A. v. U.S. Dep't of Treasury*, 118 F.3d 1461, 1464 (11th Cir. 1997) (when interpreting statutes, courts are to use the common and ordinary meaning of the words used); *CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1222 (11th Cir. 2001) (when a statutory text is unambiguous, the plain meaning of the text governs).

Reviewing the statute's plain language makes it clear that CDA 230 immunity is only triggered by good-faith removal of offending content. *See* 47 U.S.C. §230(c)(2). The liability shield provided by this subparagraph requires a triggering event of an "action taken." In other words, in order to trigger immunity, an ICS must affirmatively **take action** in good faith to restrict access to material, which is the opposite of what Omegle did in the instant case. *See id.; Malwarebytes,*, 946 F.3d; *Bennett v. Google, LLC*, 882 F.3d 1163, 1166 (D.C. Cir. 2018).

---

[16] *Cheneau v. Garland*, No. 15-70636, 2021 WL 1916947, at *4 (9th Cir. 2021) *citing Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009) (internal citations omitted); *Rowe v. Educ. Credit Mgmt. Corp.,* 559 F.3d 1028 (9th Cir.2009).

At no point does the statute's plain language immunize (1) an indifferent lack of action, (2) acts that facilitate harm to children, or (3) acts that were not done in good faith and were a façade instead of a good faith effort to restrict material. *See* 47 U.S.C. § 230(c)(2). Omegle is not being sued for any action "restricting access…or availability" to harmful content on its platform. For example, if a website had five (5) sexually explicit images on it that were posted by third parties, and the website diligently policed the site's content and removed four (4) images but mistakenly missed the fifth, the website would be immune from liability for their good faith, affirmative efforts. Contrast that with the instant case where no good-faith act occurred to prevent or remove harmful content; rather, the website facilitated matching children with adults -- acting to facilitate the harm, not prevent it. Omegle's actions have harmed Plaintiffs and nothing in the record suggests Omegle took any affirmative good-faith steps to attempt to protect children on their platform.

In fact, Omegle's platform is designed to avoid any true monitoring or censoring of harmful content and Omegle has built in workarounds so that their façade of monitoring and protecting children will not deter continued traffic and profit from ad revenue. To understand Omegle's complete lack of good-faith actions to protect children, an understanding of the Omegle platform is necessary. Omegle does not have a login process, age verification, and no accounts are needed to access the platform (Dkt. 75 ¶ 34, 37); in

fact, Omegle allows a user of any age to start speaking with strangers through the click of a button (as demonstrated by this screenshot from the Omegle website in 2020):



This lack of accountability allows users to text or video call with strangers with anonymity. (Dkt. 75 ¶¶ 34-35). If a user elects to Text, the user can do so in either "spy" mode or "text" mode.[17]  Spy mode allows a user to interlope on a conversation between two other people, and observe what they are speaking about,[18] presumably for sexual gratification. When video chatting, a user can select "Video" for the moderated video chat, or "Unmoderated Section."[19]  If a user selects the unmoderated section, the following warning pops up, but does not require any agreement or age verification to continue:

---

[17] Paul Greenamyer, *How to Get Unbanned from Omegle in 2022*, (Mar. 19, 2022) https://cybernews.com/best-vpn/how-to-get-unbanned-from-omegle.
[18] Dkt. 75 ¶ 36; *Id.*
[19] *Id.*



At the time C.H. went on Omegle.com in 2020, Omegle had no true terms of service. *Id.* In fact, Omegle had some fine print at the bottom of the login screen that did not require anyone to definitively agree to the terms; rather, the terms stated that by using Omegle, the user agreed to the terms. *Id.*

If a person is banned from using Omegle, presumably for breaking the "rules" in some form, that person receives a notification telling them that they are banned from using Omegle. But a VPN will allow a banned user to immediately resume activity on Omegle, enabling those that prey on children to operate unfettered on the platform with anonymity and no true interference with their criminal endeavors. As such, Omegle has created a facade of protection: (1) Omegle knows and even admits that predators use their platform for illegal purposes (Dkt. 75 ¶¶ 39-43), (2) there is no age verification and the stated age of use is 13 years old (*Id.* ¶ 52), (3) Omegle limitedly moderates some communications, but leaves the unmoderated section open, acknowledging that it will likely be used for sexual

purposes, (4) knowing the risks for child exploitation, minors are paired with adults in both the moderated and unmoderated sections, (5) when a user is banned, there are no user accounts to track user conduct or identity to prevent continued dangerous conduct by the same user under a different IP address, (*Id.* ¶¶ 34-37), and (6) when an IP address is banned, a user can easily get around the "ban" through using a VPN.

When a plain language interpretation is applied to CDA 230(c), Omegle fails to meet the statutory condition precedent of an "**action voluntarily taken in good faith** to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable." §230(c)(2) (emphasis added). Therefore, Omegle is not entitled to claim immunity.

### III. THE DISTRICT COURT INCORRECTLY APPLIED THE 18 U.S.C. § 1591 CRIMINAL STANDARD, INSTEAD OF THE APPROPRIATE CIVIL STANDARD REQUIRED BY 18 U.S.C. § 1595, THE BINDING PRECEDENT OF THE *RED ROOF* DECISION, AND THE LANGUAGE AND PURPOSE OF FOSTA.

On December 22, 2021, the Eleventh Circuit issued an opinion as a matter of first impression in *Red Roof*, holding that to prevail on a civil claim under § 1595, a plaintiff must show that a defendant (1) knowingly benefited (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that the undertaking or enterprise violated the TVPRA as to the plaintiff, and (4) that the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff. *Red Roof,* 21 F.4th. at 724.

On January 10, 2022, the District Court issued its Order erroneously dismissing the Second Amended Complaint, to include a claim for beneficiary liability under the TVPRA. The district court did not reference or follow the binding precedent of *Red Roof.* In the *Red Roof* decision, this Court addressed each element in detail.

**First**, the Court addressed the phrase "knowingly benefits" and determined that "a plaintiff like the Does must allege that the defendant knew it was receiving some value from participating in the alleged venture." *Id*. The knowledge at issue at this point in the analysis is the Defendant's knowledge that it was benefiting—or receiving anything of value. In the *Red Roof* decision, the fact that hotel franchisors knew they were receiving value for hotel services met this element. In the case at issue, Plaintiffs allege that Omegle knowingly benefits by receiving increased web traffic and advertising revenue (Dkt. 75 ¶ 63). Plaintiffs have sufficiently pled the first element.

**Second**, this Court turned to the words "participation in a venture." Here, this Court rejected the hotel franchisors' argument that the definition for the phrase—along with its actual-knowledge standard from the underlying criminal statute, 18 U.S.C. § 1591(e)(4)—applies to a civil claim brought under §1595. *Red Roof,* 21 F.4th at 724-25. This Court held that for a TVPRA claim to prevail, the criminal scienter requirement in §1591 is not to be transposed to the civil statute in §1595 because to do so would render the "should have known" language in §1595(a) superfluous. *Id*. Instead, this Court looked to dictionary definitions of each of the words in the phrase "participation in a venture" to give the phrase

its plain meaning and concluded that the phrase required "that the Does allege that the franchisors took part in a common undertaking or enterprise involving risk and potential profit." *Id.* at 725.

In the case at issue, Plaintiffs plausibly allege that Omegle took part in a common undertaking or enterprise involving risk or potential profit. Omegle operates a website that matches strangers to speak to each other, (Dkt. 75 ¶ 34) it knows sexual predators use the platform (*Id.* ¶¶ 39-43), it knows that graphic sexual content frequently appears on its platform (*Id.* ¶ 43), Omegle limitedly moderates some communications, but leaves the unmoderated section open with a statement of knowledge that it will likely be used for sexual purposes, no proper age verification occurs (*Id.* ¶ 52), and knowing the high risks for child exploitation, Omegle then pairs minors with adults (*Id.* ¶ 37). As such, Omegle, sex traffickers, and sex predators are taking part in a common undertaking involving potential risk and potential gain. For Omegle, risk is inevitable; in other words, the knowing operation of a website that facilitates, enables, and promotes the sex trafficking and exploitation of minors carries great risk, both criminally and civilly. Omegle has potential gain because each person that uses the website creates the value of increased use and popularity of the website, which in turn increases ad revenues. Likewise, individual traffickers and sex predators on the Omegle platform that use this platform to facilitate, enable, and promote the sex trafficking and exploitation of minors carries great risk, both criminally and civilly for themselves. Sex traffickers and sex predators have the potential

value gained of recruiting new victims, or obtaining sexual images of new victims, under the cloak of the anonymity offered and intended by Omegle.  Plaintiffs have sufficiently pled the second element.

**Third**, this Court determined that "the venture in which the defendant participated and from which it knowingly benefited must have violated the TVPRA as to the plaintiff." This meant that a plaintiff must plead sufficient facts to plausibly allege that the venture in which the defendant participated committed the crime alleged; in this case, that would be a violation of §1595(a) and §1591(a)(2). *Id.*

Here, Plaintiffs have plausibly alleged that at all relevant times, Plaintiff was an eleven-year-old child (*Id.* ¶ 10). Plaintiff used the Omegle website and was paired with an unknown user ("John") who threatened Plaintiff demanding she engage in sex acts. (*Id.* ¶¶ 59-61).  Scared and confused, this young girl complied with the demands.  (*Id.*). The sex acts were commercial because both John and Omegle received something of value from the acts: Omegle received ad revenues and additional viewers from John and Plaintiff's use of the website (*Id.* ¶ 63), and John recorded the sex acts of Plaintiff, "forever memorializing her child sex abuse performance" (*Id.* ¶ 62). Omegle participated in the venture by collecting and disclosing Plaintiff's personally identifying information, which John then obtained and used to blackmail Plaintiff into performing the sex acts (*Id.* ¶ 59, 66-69). Plaintiffs have sufficiently pled element three.

*Fourth*, this Court explained that "the defendant must have either actual or constructive knowledge that the venture—in which it voluntarily participated and from which it knowingly benefited—violated the TVPRA as to the plaintiff." *Id*. Plaintiffs do not have to allege actual knowledge, an overt act, or a conspiracy between Defendant and the trafficker. *M.A. v. Wyndham Hotels & Resorts, Inc.,* 425 F. Supp. 3d 959, 966 (S.D. Ohio 2019); *John Doe Nos. 1 and 2 v. Twitter, Inc.,* ---F.Supp.3d.---, *23 (N.D. Cal. 2021) (§1595 "does not require that a plaintiff demonstrate an overt act that furthered the sex trafficking aspect of the venture in order to satisfy the "participation in a venture" requirement.") Instead, to meet the §1595 pleading requirements of constructive knowledge, plaintiffs must allege sufficient facts to show Omegle generally knew of the prevalence of sex trafficking and child exploitation on its website, it failed to take reasonable steps to protect children on its platform, and Plaintiff was trafficked and exploited on Omegle's platform as a result. *See M.A.,* 425 F. Supp. at 969 (allegations that hotel knew generally of the prevalence of sex trafficking at its location, failure to train staff, and red flags about Plaintiffs own trafficking were sufficient to survive a 12(b)(6) motion). In a concurring opinion in *Red Roof,* Judge Jordan also noted that "the participation element of a "beneficiary" claim under §1595(a) does not require that the defendant in question have participated in the sex trafficking act itself. Instead, as the court explains, "participation in a venture" requires only that a defendant take part in a common

undertaking or enterprise involving risk and potential profit." *Id*. at 730 (cleaned up). As such, Plaintiffs have sufficiently pled element four.

The order below relies substantially on the *Kik* decision out of the Southern District of Florida, but reliance on *Kik* provides a flawed foundation. (Dkt. 90 p. 18-20.) *Kik* grapples with whether an actual or constructive knowledge standard applies for beneficiary claims under §1595 in the online exploitation context. *Doe v. Kik Interactive, Inc.*, 482 F. Supp. 3d 1242, 1249-51 (S.D. Fla. 2020). This Court has now clarified that constructive knowledge applies based on the plain language of §1595. *Red Roof,* 21 F.4th at 725. Yet the *Kik* decision departs from the constructive knowledge standard and erroneously creates a unique requirement for sex trafficking victims in the online context to meet the criminal requirements §1591(a). The *Kik* court reasoned that "FOSTA permits civil liability for websites only "if the conduct underlying the claim constitutes a violation of §1591." And §1591 requires knowing and active participation in sex trafficking by the defendants." *Kik*, 482 F. Supp. 3d at 1251. Accordingly, the *Kik* Court required the survivor plaintiff to allege that the technology-platform defendant both knew and actively participated in her sex trafficking. This is an incorrect reading of FOSTA, which amended CDA 230 to make sure that claims brought under §1595 were not "limit[ed]" or "impair[ed]" by any construction. FOSTA is the quintessence of a remedial statute—a law that Congress enacted to ensure that victims of sex trafficking were able to pursue civil claims against both their traffickers and those who benefit from their trafficking. For this reason alone, the *Kik* court should

21

have rejected an interpretation that would substantially *narrow* the ability of victims of online sex trafficking to bring their claims forward. *Cf. Twitter*, 2021 WL 3675207, at \*24 ("There is no question that FOSTA is a remedial statute in that it carves out exceptions to CDA § 230 immunity, thereby affording remedies to victims of sex trafficking that otherwise would not have been available.").

Because it was not a case involving online sex trafficking, this Court did not have occasion to address *Kik* when it decided *Red Roof*. In fact, no appellate court has yet analyzed the *Kik* decision. It has, however, been substantially addressed in the federal district courts with divergent results.[20] Importantly for this case, *Kik*'s reading of FOSTA has been rejected by two federal judges. The first of these decisions, *Twitter*, noted how FOSTA focuses on sex trafficking as opposed to the other forms of trafficking prohibited by the TVPRA.  As the *Twitter* court explained, "the more natural reading of the second phrase of Section 230(e)(5)(A) is simply that it creates an exemption to Section 230 immunity for civil sex trafficking claims under §1591 and not as to other sections of Title 18 that can give rise to civil liability under §1595." *Twitter*, ---F.Supp.3d. at \*24. The following month, a judge in the Central District of California, noted *Kik*'s reasoning and declined to follow it for the reasons set forth in the *Twitter* decision. *See also Doe v.*

---

[20] *Cf.*, *Twitter*, ---F.Supp.3d. (disagreeing with *Kik*); *Mindgeek*, ---F.Supp.3d. (declining to follow *Kik*); *J. B. v. G6 Hosp., LLC*, No. 19-CV-07848-HSG, 2020 WL 4901196, at \*8 (N.D. Cal. 2020) (following *Kik*); *Doe v. Reddit*, Inc., No. SACV2100768JVSKESX, 2021 WL 5860904 (C.D. Cal. 2021) (following *Kik*).

*Mindgeek USA Inc*., ---F.Supp.3d.---, \*9 (C.D. Cal. 2021) (the plain language of CDA 230 requires a civil claim under §1595 applies a constructive knowledge standard or it would "effectively write §1595 out of existence for websites"). For the same reasons stated in *Twitter* and *Mindgeek*, the analysis in the *Kik* decision is not compatible with this Court's own interpretation of beneficiary claims under 18 U.S.C. § 1595. *Cf. Red Roof*, 21 F.4th at724 (rejecting an interpretation of 1595 that would make the "should have known" language superfluous). The FOSTA statute was enacted to open the doors of the courthouse to victims of online sexual abuse. The logic of the *Kik* decision, which would slam those doors shut, should be rejected.

When the Court applies the standard set forth in *Red Roof*, it is clear that Plaintiffs have met the pleading requirement to survive a 12(b)(6) motion and the District Court should be reversed.

## **CONCLUSION**

For all of the foregoing reasons, this Court should reverse the District Court's Dismissal of the Second Amended Complaint as to the beneficiary-liability claims under the TVPRA.

///

///

///

///

Dated: March 21, 2022                Respectfully Submitted,

/s/ Lisa D. Haba_____
Lisa D. Haba
THE HABA LAW FIRM, P.A.
1220 Commerce Park Dr. Suite 207
Longwood, FL 32779
(844) 422-2529
lisahaba@habalaw.com
*Counsel for Amici Curiae*

/s/ Peter A. Gentala_____
Peter A. Gentala
NATIONAL CENTER ON SEXUAL
EXPLOITATION LAW CENTER
1201 F. St. NW, Suite 200
Washington, DC 20004
(202) 393-7245
pgentala@ncoselaw.org
*Counsel for Amici Curiae*

## **CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7) because the brief contains 6,434 words, excluding the parts of the brief exempt by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using MS Word in 14-point Times New Roman.

 Dated:  March 21, 2022

/s/ Lisa D. Haba_____
Lisa D. Haba
THE HABA LAW FIRM, P.A.
*Counsel for Amici Curiae*

/s/ Peter A. Gentala_____
Peter A. Gentala
NATIONAL CENTER ON SEXUAL
EXPLOITATION LAW CENTER
*Counsel for Amici Curiae*

## **PROOF OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system on March 21, 2022.

All participants in the case are registered CM/ECF users and have been served by the appellate CM/ECF system.

Dated:  March 21, 2022

/s/ Lisa D. Haba_____
Lisa D. Haba
THE HABA LAW FIRM, P.A.
*Counsel for Amici Curiae*

/s/ Peter A. Gentala_____
Peter A. Gentala
NATIONAL CENTER ON SEXUAL
EXPLOITATION LAW CENTER

*Counsel for Amici Curiae*