## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

_____

Appeal No. 22-10338-AA
D.C. Case No. 8:21-cv-00814-VMC-TGW

_____

M.H., et al.,

Appellants,

v.

OMEGLE.COM LLC,

Appellee.

_____

## BRIEF OF APPELLEE OMEGLE.COM LLC
_____

FOCAL PLLC
Attorneys for Appellee Omegle.com LLC

By:  s/ *Stacia N. Lay*_____
    Stacia N. Lay, *Pro Hac Vice*
    Venkat Balasubramani, *Pro Hac Vice*
    Kimberlee Gunning, *Pro Hac Vice*
    900 1st Avenue S., Suite 201
    Seattle, Washington 98134
    Telephone: (206) 529-4827
    stacia@focallaw.com
    venkat@focallaw.com
    kim@focallaw.com

THOMAS & LoCICERO PL
Attorneys for Appellee Omegle.com LLC

By:  s/ *James J. McGuire*_____
    James J. McGuire (FBN 187798)
    601 South Boulevard
    Tampa, Florida 33606
    Telephone: (813) 984-3060
    jmcguire@tlolawfirm.com

    Daniela B. Abratt (FBN 118053)
    915 Middle River Dr., Suite 309
    Fort Lauderdale, Florida 33304
    Telephone: (954) 703-3416
    dabratt@tlolawfirm.com

Appeal No. 22-10338-AA
*M.H., et al. v. Omegle.com LLC*

## OMEGLE.COM LLC'S CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Appellee Omegle.com LLC, by and through undersigned counsel, pursuant to Federal Rule of Appellate Procedure 26.1 and Circuit Rules 26.1-1, 26.1-2, and 26.1-3, hereby submits its Certificate of Interested Persons and Corporate Disclosure Statement.

In alphabetical order, following are all trial judges, attorneys, persons, association of persons, firms, partnerships, or corporations that have an interest in the outcome of this case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of Omegle.com LLC's stock, and other identifiable legal entities related to a party:

Abratt, Daniela, Esq. – Attorney for Appellee

Balasubramani, Venkat, Esq. – Attorney for Appellee

C.H. – Appellant (minor child)

Covington, Virginia M. Hernandez, the Honorable – U.S. District Court Judge

Focal PLLC – Attorneys for Appellee

Freeman, Jennifer, Esq. – Attorney for Appellants

Gunning, Kimberlee, Esq. – Attorney for Appellee

Hach Rose Schirripa & Cheverie, LLP – Attorneys for Appellants

Appeal No. 22-10338-AA

*M.H., et al. v. Omegle.com LLC*

J.H. – Appellant (parent of minor child C.H.)

Lay, Stacia N., Esq. – Attorney for Appellee

Mabie, Margaret E., Esq. – Attorney for Appellants

Marsh, James R., Esq. – Attorney for Appellants

Marsh Law Firm, PLLC – Attorneys for Appellants

McGuire, James J., Esq. – Attorney for Appellee

McNulty, Kevin, the Honorable – U.S. District Court Judge

M.H. – Appellant (parent of minor child C.H.)

Nappi, Hillary, Esq. – Attorney for Appellants

Omegle.com LLC – Appellee

Prusinowski, James T., Esq. – Attorney for Appellee (former)

Schirripa, Frank R., Esq. – Attorney for Appellants

Thomas & LoCicero, PL – Attorneys for Appellee

Trimboli & Prusinowski – Attorneys for Appellee (former)

Wilson, Thomas G., the Honorable – U.S. Magistrate Judge

**FRAP 26.1 Certification**:  Appellee Omegle.com LLC certifies that it has no

parent corporation and no publicly held corporation owns 10% or more of

Appellee's stock.

## STATEMENT REGARDING ORAL ARGUMENT

Appellee Omegle.com LLC submits that the legal arguments and allegations are adequately presented in the briefs and record in this appeal from a Rule 12(b)(6) motion to dismiss. However, as the appeal involves an issue of statutory interpretation of first impression in this Court, oral argument may assist the Court in deciding the limited issues presented by this appeal.

# **TABLE OF CONTENTS**

STATEMENT OF SUBJECT-MATTER AND APPELLATE
JURISDICTION..............................................................................ix

STATEMENT OF THE CASE .......................................................1

    I.    Nature Of The Case ...........................................................1

    II.   Course Of Proceedings ......................................................2

    III.  Statement Of Facts.............................................................3

    IV.  Standard Of Review...........................................................4

SUMMARY OF THE ARGUMENT ...............................................5

ARGUMENT ................................................................................8

    I.    Plaintiffs Mount No Defense Of Their VPPA And State Law
Claims ...............................................................................8

    II.   Section 230 Bars Plaintiffs' Claims..................................9

        A.   There Is No Good Faith Requirement In Section 230(c)(1) ......10

        B.   Omegle Is An ICS Provider ......................................11

        C.   The Claims Treat Omegle As The Publisher/Speaker Of
The John Doe User's Content ....................................11

    III.  Section 230 Bars The Civil Claim Alleging Violation Of
Section 2252A...................................................................15

        A.   Section 230(e)(1) Does Not Exempt Civil Claims Based
On Criminal Statutes.................................................15

        B.   Policy Arguments Cannot Supplant The Statutory
Language....................................................................19

i

C.    Even Ignoring Section 230, The Section 2252A Claim
Fails .............................................................................21

IV.    The District Court Correctly Held That The TVPRA Claim Is
Not Within FOSTA's Narrow Carveout From Immunity ................22

A.    FOSTA's Text And Statutory Context Support The District
Court's Reading Of Section 230(e)(5)(A) .................................23

B.    FOSTA's Legislative History Supports The District
Court's Reading Of Section 230(e)(5)(A) .................................27

C.    The Majority Of Authority Supports The District Court's
Reading Of FOSTA's Narrow Carveout To Section 230 ..........29

D.    Neither Plaintiffs Nor *Amici* Demonstrate That The
District Court's Reading Of Section 230(e)(5)(A) Was
Improper .....................................................................34

V.    The District Court Correctly Found That Plaintiffs Failed To
State A Claim That Omegle Violated Section 1591 .........................43

VI.    Even Ignoring The Applicability Of Section 230, The TVPRA
Claim Fails ............................................................................46

CONCLUSION ....................................................................54

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT ...............55

CERTIFICATE OF SERVICE ...............................................................56

STATUTORY ADDENDUM ....................................................................57

## <u>TABLE OF CITATIONS</u>

### <u>Cases</u>

*A.B. v. Hilton Worldwide Holdings Inc.*,
    484 F. Supp. 3d 921 (D. Or. 2020) .......................................................48, 49

*A.B. v. H.K. Grp. of Co., Inc.*, No. 1:21-cv-1344-TCB,
    2022 U.S. Dist. LEXIS 29214 (N.D. Ga. Feb. 9, 2022) .............................48

*A.B. v. Wyndham Hotels & Resorts, Inc.*,
    532 F. Supp. 3d 1018 (D. Or. 2021) ..........................................................49

*Access Now, Inc. v. Sw. Airlines Co.*,
    385 F.3d 1324 (11th Cir. 2004)....................................................................8

*Almeida v. Amazon.com, Inc.*,
    456 F.3d 1316 (11th Cir. 2006)....................................................................9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................................53

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .....................................................................................4

*Carafano v. Metrosplash.com, Inc.*,
    339 F.3d 1119 (9th Cir. 2003)....................................................................40

*CBS, Inc. v. Primetime 24 Joint Venture*,
    245 F.3d 1217 (11th Cir. 2001)........................................................ *passim*

*C.C. v. H.K. Grp. of Co., Inc.*, No. 1:21-cv-1345-TCB,
    2022 U.S. Dist. LEXIS 29213 (N.D. Ga. Feb. 9, 2022) .............................48

*Chaparro v. Carnival Corp.*,
    693 F.3d 1333 (11th Cir. 2012)....................................................................5

*Chudasama v. Mazda Motor Corp.*,
    123 F.3d 1353 (11th Cir. 1997)..................................................................53

*Connecticut Nat'l Bank v. Germain*,
    503 U.S. 249 (1992) .....................................................................................27

*Corrie v. Caterpillar, Inc.*,
    503 F.3d 974 (9th Cir. 2007).........................................................................3

*Doe v. Bates*, No. 5:05-CV-91-DF-CMC,
    2006 U.S. Dist. LEXIS 93348 (E.D. Tex. Dec. 27, 2006) .....................17, 19

*Doe v. Kik Interactive, Inc.*,
    482 F. Supp. 3d 1242 (S.D. Fla. 2020) ................................................ *passim*

*Doe v. MG Freesites, Ltd.*, No. 7:21-cv-00220-LSC,
    2022 U.S. Dist. LEXIS 23199 (N.D. Ala. Feb. 9, 2022) ................17, 18, 33

*Doe v. Mindgeek USA Inc.*,
    558 F. Supp. 3d 828 (C.D. Cal. 2021) .........................................................32

*Doe v. MySpace, Inc.*,
    528 F.3d 413 (5th Cir. 2008).......................................................................12

*Doe v. Reddit, Inc.*, No. SACV 21-00768 JVS (KESx),
    2021 U.S. Dist. LEXIS 235993 (C.D. Cal. Oct. 7, 2021) .................... *passim*

*Doe v. Red Roof Inns, Inc.*,
    21 F.4th 714 (11th Cir. 2021) ............................................................ *passim*

*Doe v. Twitter, Inc.*,
    555 F. Supp. 3d 889 (N.D. Cal. 2021) ................................................ *passim*

*Doe v. Wyndham Hotels & Resorts, Inc.*, No. 4:19-CV-5016,
    2021 U.S. Dist. LEXIS 64565 (S.D. Tex. Mar. 30, 2021) ..........................49

*Dyroff v. Ultimate Software Grp., Inc.*,
    934 F.3d 1093 (9th Cir. 2019)......................................................11, 14, 18

*Dyroff v. Ultimate Software Grp., Inc.*, No. 17-cv-05359-LB,
    2017 U.S. Dist. LEXIS 194524 (N.D. Cal. Nov. 26, 2017).........................12

*Fair Hous. Council v. Roommates.com, LLC*,
    521 F.3d 1157 (9th Cir. 2008)......................................................................14

*Force v. Facebook, Inc.*,
    934 F.3d 53 (2d Cir. 2019)..................................................................16, 17

*Fyk v. Facebook, Inc.*, No. 18-cv-05159-JSW,
    2021 U.S. Dist. LEXIS 235965 (N.D. Cal. Nov. 1, 2021)............................9

\*G.G. v. Salesforce.com, Inc.*, No. 20-cv-02335,
    2022 U.S. Dist. LEXIS 87616 (N.D. Ill. May 16, 2022) .................... *passim*

*Gonzalez v. Google LLC*,
    2 F.4th 871 (9th Cir. 2021) ...........................................................15, 16, 17

*Harris v. Garner*,
    216 F.3d 970 (11th Cir. 2000)...................................................................19, 36

*Henson v. Santander Consumer USA Inc.*,
    137 S. Ct. 1718 (2017) ................................................................................41

*Herrick v. Grindr LLC*,
    765 F. App'x 586 (2d Cir. 2019) ...............................................................12

*H.G. v. Inter-Cont'l Hotels Corp.*,
    489 F. Supp. 3d 697 (E.D. Mich. 2020).....................................................50

\*J.B. v. G6 Hosp., LLC*, No. 19-cv-07848-HSG,
    2021 U.S. Dist. LEXIS 170338 (N.D. Cal. Sept. 8, 2021) ................. *passim*

*J.C. v. Choice Hotels Int'l, Inc.*, No. 20-cv-00155-WHO,
    2020 U.S. Dist. LEXIS 201073 (N.D. Cal. Oct. 28, 2020)........................50

*J.L. v. Best Western Int'l, Inc.*,
    521 F. Supp. 3d 1048 (D. Colo. 2021).......................................................50

*Klayman v. Zuckerberg*,
    753 F.3d 1354 (D.C. Cir. 2014) .................................................................14

v

*Lewis v. Google LLC*,
    461 F. Supp. 3d 938 (N.D. Cal. 2020) ........................................................11

\*_L.H. v. Marriott Int'l, Inc._, No. 21-22894-Civ-Scola,
    2022 U.S. Dist. LEXIS 91756 (S.D. Fla. May 23, 2022) ................... *passim*

*Lomax v. Ortiz-Marquez*,
    140 S. Ct. 1721 (2020) ...............................................................................26

*Lundstrom v. Choice Hotels Int'l, Inc.*, No. 21-cv-00619-PAB-SKC,
    2021 U.S. Dist. LEXIS 228651 (D. Colo. Nov. 30, 2021) .........................50

*Mamani v. Berzaín*,
    654 F.3d 1148 (11th Cir. 2011)....................................................................5

*Maryland v. Wilson*,
    519 U.S. 408 (1997) ......................................................................................9

*Merritt v. Dillard Paper Co.*,
    120 F.3d 1181 (11th Cir. 1997)....................................................6, 20, 27, 39

*Niz-Chavez v. Garland*,
    141 S. Ct. 1474 (2021) .........................................................................24, 37

*Obado v. Magedson*, No. 13-2382 (JAP),
    2014 U.S. Dist. LEXIS 104575 (D.N.J. July 31, 2014)..............................16

*Pinter v. Dahl*,
    486 U.S. 622 (1988).....................................................................................36

*Poole v. Tumblr, Inc.*,
    404 F. Supp. 3d 637 (D. Conn. 2019) .........................................................11

*Robinson v. Liberty Mut. Ins. Co.*,
    958 F.3d 1137 (11th Cir. 2020)......................................................................3

*Roca Labs, Inc. v. Consumer Op. Corp.*,
    140 F. Supp. 3d 1311 (M.D. Fla. 2015) ......................................................10

*Sapuppo v. Allstate Floridian Ins. Co.*,
    739 F.3d 678 (11th Cir. 2014).......................................................8

*S.J. v. Choice Hotels Int'l, Inc.*,
    473 F. Supp. 3d 147 (E.D.N.Y. 2020) ........................................52

*Tilton v. Playboy Entm't Grp., Inc.*,
    554 F.3d 1371 (11th Cir. 2009)..........................................21, 53

*Wiersum v. U.S. Bank, N.A.*,
    785 F.3d 483 (11th Cir. 2015)................................................4, 5

*Zeran v. Am. Online, Inc.*,
    129 F.3d 327 (4th Cir. 1997)...............................................39, 40

## Rules and Statutes

18 U.S.C. § 1591 ............................................................ *passim*

18 U.S.C. § 1591(a)............................................................43

18 U.S.C. § 1591(a)(1) ......................................................44

18 U.S.C. § 1591(a)(2)..................................................44, 45

18 U.S.C. § 1591(e)(3) ......................................................44

18 U.S.C. § 1591(e)(4) ..........................................24, 28, 45

18 U.S.C. § 1595 ............................................................ *passim*

18 U.S.C. § 1595(d)......................................................24, 26

18 U.S.C. § 2252A ......................................................... *passim*

18 U.S.C. § 2252A(a)(5)(B) ......................................6, 15, 21

18 U.S.C. § 2255 ........................................................... *passim*

47 U.S.C. § 230 ............................................................ *passim*

47 U.S.C. § 230(a) ................................................................32

47 U.S.C. § 230(b) ................................................................32

47 U.S.C. § 230(c) ................................................................10

47 U.S.C. § 230(c)(1) .............................................9, 10, 11, 18

47 U.S.C. § 230(c)(2) .............................................................10

47 U.S.C. § 230(c)(2)(A) ...................................................10, 11

47 U.S.C. § 230(e)(1) ...................................................... *passim*

47 U.S.C. § 230(e)(5) .............................................................25

47 U.S.C. § 230(e)(5)(A) .................................................. *passim*

47 U.S.C. § 230(e)(5)(B) ...................................................25, 26

47 U.S.C. § 230(e)(5)(C) ...................................................25, 26

47 U.S.C. § 230(f)(3) .............................................................14

Fed. R. Civ. P. 12(b)(6) ........................................................2, 4

## **Other Authority**

H.R. 1865, 115th Cong. § 3 (as introduced in the House, Apr. 3, 2017) ..............28

H.R. 1865, 115th Cong. § 4 (as introduced in the House, Apr. 3, 2017) ..............28

Pub. L. No. 115-164, 132 Stat. 1253 (2018) .........................................22

## STATEMENT OF SUBJECT-MATTER
## AND APPELLATE JURISDICTION

Although not alleged in Plaintiffs/Appellants M.H.'s and J.H.'s (collectively, "Plaintiffs") original complaint, the District Court arguably had subject matter jurisdiction over the original claims under 28 U.S.C. § 1331 (based on the claim under the federal Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710) and 28 U.S.C. § 1367(a) (with respect to Plaintiffs' state law claims). (Appellants' Appendix ("Appendix") Vol. I at 20-35.)[1] The District Court also had subject matter jurisdiction over the claims alleged in the Second Amended Complaint ("SAC") – the operative pleading for purposes of this appeal – under 28 U.S.C. §§ 1331 and 1367(a) insofar as the SAC asserted claims under federal statutes – 18 U.S.C. §§ 2252A and 2255, 18 U.S.C. §§ 1591 and 1595, and 18 U.S.C. § 2710 – and related state law claims. (Appendix Vol. II at 13-43.)

Defendant/Appellee Omegle.com LLC ("Omegle") concurs with Plaintiffs' statement regarding this Court's jurisdiction over, and the timeliness of, this appeal, except to note that Plaintiffs filed their Notice of Appeal on January 28, 2022 (not February 11). (*Id.* at 159-60.)

---

[1] Page references to the appendices and briefs filed in this appeal will be to the 11th Circuit ECF page numbers unless otherwise noted.

## STATEMENT OF THE CASE

### I.    Nature Of The Case

Plaintiffs' SAC alleges that an unidentified user (the "John Doe user") of the chat service offered on Omegle's website engaged in reprehensible conduct toward their minor child, C.H. However, as the SAC makes clear – and as the District Court correctly held – all of Plaintiffs' claims are based on the content of that John Doe user. There is no allegation that Omegle had any contemporaneous knowledge of C.H. or the deplorable actions of the John Doe user alleged in the SAC. Yet, Plaintiffs seek to hold Omegle liable for that John Doe user's conduct and content. Section 230 of the Communications Decency Act, 47 U.S.C. § 230 (the "CDA" or "Section 230") therefore bars those claims. The District Court also correctly concluded that – given Omegle's lack of knowledge about C.H. or the John Doe user's alleged actions – the SAC failed to plausibly allege a civil claim for violation of the criminal sex trafficking statute that would fall within the narrow carveout from CDA immunity added by the Allow States and Victims to Fight Online Sex Trafficking Act ("FOSTA").

Therefore, the District Court's dismissal of the SAC with prejudice for failure to state a claim for relief should be affirmed.

1

## II.    Course Of Proceedings

Plaintiffs filed their original complaint in the District of New Jersey on August 25, 2020. That complaint alleged four causes of action: violation of the VPPA; intrusion upon seclusion; negligence; and intentional infliction of emotional distress. (Appendix Vol. I at 20-35.) On November 20, 2020, Omegle moved to dismiss the complaint for lack of personal jurisdiction and failure to state a claim, arguing, in part, that Section 230 barred the claims. (*Id.* at 37-38.) On March 19, 2021, the court granted the motion for lack of personal jurisdiction, denying as moot the Rule 12(b)(6) motion. (*Id.* at 115-24.) The parties stipulated to the transfer of the case to the Middle District of Florida, which transfer occurred on April 9th. (*Id.* at 132-34, 136.)

Following transfer, Plaintiffs filed an amended complaint on May 17, 2021, adding four new claims: violation of 18 U.S.C. §§ 2252A and 2255; violation of 18 U.S.C. §§ 1591 and 1595; ratification and vicarious liability; and public nuisance. (*Id.* at 151-80.) On June 8, 2021, Omegle filed a Rule 12(b)(6) motion to dismiss arguing again, in part, that Section 230 barred Plaintiffs' claims. (*Id.* at 182-221.) On September 15, 2021, the District Court *sua sponte* dismissed the amended complaint as a shotgun pleading with leave to amend, denying Omegle's motion to dismiss as moot. (Appendix Vol. II at 7-11.)

On September 29, 2021, Plaintiffs filed the SAC, which asserted the same eight claims as the first amended complaint. (*Id.* at 13-43.) On October 13, Omegle moved to dismiss the SAC, again arguing that Section 230 barred the claims. (*Id.* at 45-85.) On January 10, 2022, the District Court granted the motion based on Section 230 and dismissed the SAC with prejudice. (*Id.* at 137-57.) Plaintiffs filed their Notice of Appeal of that Order on January 28. (*Id.* at 159-60.)

## III.    Statement Of Facts

Omegle's free online chat service – through which users can meet and chat with new people by text and video – launched in 2009.[2] (Appendix Vol. II at 15, 21.) There is no registration requirement to chat with other users. (*Id.* at 21.)

The SAC alleges that M.H. and J.H. are the parents of C.H. (*Id.* at 14.) As Plaintiffs acknowledged in their original complaint, the Omegle website clearly prohibits users under 13 years of age from using the chat service and prohibits users between 13 and 18 years of age from using the service without parental

---

[2] *Amici* assert numerous alleged "facts" about Omegle that do not appear in the record below or on appeal. (Brief of *Amici Curiae* The National Center on Sexual Exploitation, *et al.* ("NCOSE Brf.") at 11-17, 20-23, 25.) This attempt to interject purported adjudicative facts about a party that do not appear in the record is improper, particularly on an appeal from a motion to dismiss, and should be disregarded. *See, e.g.*, *Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 978 n.3 (9th Cir. 2007) (noting that "an amicus may not generally introduce new facts at the appellate stage"); *see also Robinson v. Liberty Mut. Ins. Co.*, 958 F.3d 1137, 1142 (11th Cir. 2020) (distinguishing between adjudicative facts that are developed in a particular case and legislative facts which are "established truths") (internal quotation marks omitted).

permission. (Appendix Vol. I at 27.) The SAC alleges 11-year-old C.H. visited the Omegle website in March 2020, apparently without parental permission. C.H. had never used the website before. (Appendix Vol. II at 25.)

According to the SAC, C.H. twice elected to be randomly paired with another user for a video chat. The first random pairing was with a group of older minors; C.H. elected to end that chat and start a second one. (*Id.*) In the second chat, C.H. allegedly observed a black screen on which text appeared. The SAC alleges that the other user in the chat – the John Doe user – said "he knew where C.H. lived" and provided her "geolocation." (*Id.*) The SAC does not explain what is meant by "geolocation" (e.g., the generality or specificity of the geolocation). The SAC alleges that the John Doe user instructed C.H. to remove her clothing and touch herself in front of the camera on her computer and that she complied. The user allegedly captured screenshots or videos of her actions. (*Id.* at 25-26.)

## IV. Standard Of Review

This Court reviews the District Court's order granting Omegle's Rule 12(b)(6) motion to dismiss, as well as the District Court's statutory interpretation, de novo. *Wiersum v. U.S. Bank, N.A.*, 785 F.3d 483, 485 (11th Cir. 2015). To survive dismissal, the SAC "must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

4

"[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Wiersum*, 785 F.3d at 485 (internal quotation marks omitted). Similarly, "[l]egal conclusions without adequate factual support are entitled to no assumption of truth." *Mamani v. Berzaín*, 654 F.3d 1148, 1153 (11th Cir. 2011); *see also Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (per curiam) ("[I]f allegations are indeed more conclusory than factual, then the court does not have to assume their truth."). A complaint that alleges facts that are "merely consistent" with a defendant's liability falls short of stating a plausible claim for relief. *Chaparro*, 693 F.3d at 1337 (internal quotation marks omitted).

## <u>SUMMARY OF THE ARGUMENT</u>

The core fallacy in Plaintiffs' arguments is illustrated by the first sentence of Plaintiffs' "Summary of Argument": "Section 230 immunity does not apply to causes of action under 18 U.S.C. §§ 2255 and 1595." (Appellants' Brf. at 23.) But that statement is belied by the plain language of Section 230 and the decisions interpreting and applying that language. Nonetheless, ignoring the statutory language, Plaintiffs and *Amici* rely on perceived Congressional intent and invite the Court to use it to override or alter the statutory language of Section 230. Such an invitation is anathema to the well-established rule that, "[i]n construing a statute [the Court] must begin, and often should end as well, with the language of the

statute itself." *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1185 (11th Cir. 1997). Equally well-honed is the rule that the Court may not use alleged legislative intent to interpret statutory language contrary to its plain meaning. *CBS Inc. v. Primetime 24 Joint Venture*, 245 F.3d 1217, 1228 (11th Cir. 2001).

When the inquiry is properly focused on the statutory language at issue – primarily, Section 230(e)(1) and Section 230(e)(5)(A) – the analysis begins and ends with the plain meaning of the text. Plaintiffs do not meaningfully dispute that Section 230 otherwise applies to their claims. Rather, they argue that the only two claims they address on appeal – for alleged violation of the child pornography and sex trafficking criminal statutes – fall within exceptions to Section 230's bar. But that argument is incorrect.

First, the claim for alleged violation of the possession provision of the child pornography criminal statute, 18 U.S.C. § 2252A(a)(5)(B), does not fall within Section 230(e)(1)'s exception to immunity. Courts consistently hold that the exception only applies to criminal prosecutions, not civil claims based on alleged violation of criminal statutes. Second, the sex trafficking claim under the Trafficking Victims Protection Reauthorization Act ("TVPRA") does not come within Section 230(e)(5)(A)'s exception to immunity because the SAC does not, and cannot, plausibly allege that Omegle's alleged conduct "constitutes a violation of" 18 U.S.C. § 1591. 47 U.S.C. § 230(e)(5)(A). As the persuasive weight of

authority holds, Section 230(e)(5)(A) requires Plaintiffs to meet the higher knowledge standard of Section 1591 to plausibly allege a civil sex trafficking claim against an "interactive computer service" ("ICS") provider like Omegle that falls outside Section 230's bar.

Moreover, even if the Court were to ignore Section 230's applicability to the two claims Plaintiffs address on appeal, those claims still fail to state a claim for relief. As to the Section 2252A claim, the SAC is devoid of facts plausibly alleging that Omegle – as opposed to the John Doe user – knowingly possessed or accessed with intent to view child pornography of C.H. Similarly, the SAC fails to plausibly allege a civil sex trafficking beneficiary claim based on the standards set out in this Court's recent decision in *Doe v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021). Like the plaintiffs in *Red Roof*, Plaintiffs fail to plausibly allege that Omegle "participated in an alleged common undertaking or enterprise with [C.H.'s] sex trafficker[]", *i.e.*, the John Doe user. *Id.* at 727.

Finally, Plaintiffs have abandoned their VPPA and state law claims by referring to them only in passing and offering no argument in defense of them.

# ARGUMENT

## I.   Plaintiffs Mount No Defense Of Their VPPA And State Law Claims

"[T]he law is by now well settled in this Circuit that a legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed." *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004). An appellant "fails to adequately brief a claim when he does not plainly and prominently raise it, for instance by devoting a discrete section of his argument to those claims." *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681-83 (11th Cir. 2014) (internal quotation marks omitted) (raising a claim or argument for the first time in a reply brief also comes too late to avoid abandonment).

Plaintiffs identify only two issues they appeal: (1) Section 230's applicability to the claim under 18 U.S.C. §§ 2252A and 2255; and (2) the applicable knowledge standard under Section 230(e)(5)(A) with respect to the claim under 18 U.S.C. §§ 1591 and 1595. (Appellants' Brf. at 11.) As a result, their arguments focus on those two issues, which relate solely to the SAC's first two claims. The only mention of the VPPA and state law claims are passing references in the case's procedural history. (*Id.* at 15, 17, 18.) Thus, in the absence of any attempt to "plainly and prominently" address the dismissal of the VPPA and state law claims, Plaintiffs have abandoned them. *Sapuppo*, 739 F.3d at 681.

## II.    Section 230 Bars Plaintiffs' Claims

Section 230 generally immunizes ICS providers from claims that seek to hold them liable for the information shared or posted by users on the providers' platforms. 47 U.S.C. § 230(c)(1). The "majority of federal circuits have interpreted the CDA to establish broad federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service."[3] *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1321 (11th Cir. 2006) (internal quotation marks omitted). Section 230 provides immunity to a wide range of claims, including the two claims raised on appeal. *See, e.g.*, *L.H. v. Marriott Int'l, Inc.*, No. 21-22894-Civ-Scola, 2022 U.S. Dist. LEXIS 91756, *40 (S.D. Fla. May 23, 2022) (TVPRA claim); *Doe v. Reddit, Inc.*, No. SACV 21-00768 JVS (KESx), 2021 U.S. Dist. LEXIS 235993, *16-17 (C.D. Cal. Oct. 7, 2021) (Section 2252A claim), *appeal docketed*, No. 21-56293 (9th Cir. Nov. 30, 2021).

A defendant is immune under Section 230 if: (1) it is the provider of an ICS; (2) the asserted claims treat it as the publisher or speaker of the information; and

---

[3] *Amici* cite to Justice Thomas's statements on the denial of *certiorari* in two cases to support the assertion that Section 230 should not be read as broadly as courts consistently have. (NCOSE Brf. at 18 n.15; Brief of *Amicus Curiae* Child USA, *et al.* ("Child USA Brf.") at 33.) But such statements, "made 'respecting the denial of certiorari' . . . , is not the holding of the Supreme Court and it therefore does not 'constitute[] binding precedent.'" *Fyk v. Facebook, Inc.*, No. 18-cv-05159-JSW, 2021 U.S. Dist. LEXIS 235965, *2-3 (N.D. Cal. Nov. 1, 2021) (quoting *Maryland v. Wilson*, 519 U.S. 408, 412-13 (1997)).

(3) the information is provided by another information content provider. *Roca Labs, Inc. v. Consumer Op. Corp.*, 140 F. Supp. 3d 1311, 1319 (M.D. Fla. 2015). On appeal, Plaintiffs do not challenge the District Court's conclusion that, absent any applicable exception to immunity, Section 230 bars their claims. Nor could Plaintiffs mount such a challenge as (1) Omegle is indisputably an ICS provider, and (2) the claims seek to treat it as the publisher or speaker of the information of another information content provider (*i.e.*, the John Doe user).

## A.    There Is No Good Faith Requirement In Section 230(c)(1)

*Amici* incorrectly assert that "CDA 230 immunity is only triggered by good-faith removal of offending content," citing Section 230(c)(2). (Brief of *Amici Curiae* The National Center on Sexual Exploitation, *et al.* ("NCOSE Brf.") at 19, 20, 23; *see also* Brief of *Amicus Curiae* Child USA, *et al.* ("Child USA Brf.") at 23-24.) But this assertion (1) improperly collapses two separate immunity provisions and (2) relies on Section 230(c)(2), which is not at issue.

Section 230(c) contains two distinct immunity provisions. Section 230(c)(1), at issue here, protects intermediaries like Omegle from being treated as the publisher or speaker of third-party content on their platforms: "No provider or user of an [ICS] shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). In contrast, Section 230(c)(2)(A) protects intermediaries when they, in good faith, voluntarily

restrict access to content: "No provider or user of an [ICS] shall be held liable on account of . . . *any action voluntarily taken in good faith* to restrict access to or availability of material that the provider or user considers to be . . . objectionable[.]" *Id.* § 230(c)(2)(A) (emphasis added).

Consistent with the plain language of these distinct provisions, courts consistently hold that Section 230(c)(1) does not include a "good faith" element. *See, e.g.*, *Lewis v. Google LLC*, 461 F. Supp. 3d 938, 953 (N.D. Cal. 2020) ("only subdivision (c)(2), not subdivision (c)(1), requires any 'good faith'"), *aff'd*, 851 F. App'x 723 (9th Cir. 2021), *cert. denied*, 142 S. Ct. 434 (2021); *Poole v. Tumblr, Inc.*, 404 F. Supp. 3d 637, 642-43 (D. Conn. 2019) (finding that plaintiff failed to provide any authority "for the proposition that section 230(c)(1) includes a requirement of good faith").

### B.    Omegle Is An ICS Provider

There is no dispute that Omegle is an ICS provider as it "is a system that allows multiple users to connect to a computer server via the Internet." (Appendix Vol. II at 145; *see also id.* at 21.) *See also Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097 (9th Cir. 2019) ("Websites are the most common [ICS].").

### C.    The Claims Treat Omegle As The Publisher/Speaker Of The John Doe User's Content

Courts have consistently held that the other elements of CDA immunity are satisfied when the claims – whatever their label – implicate an ICS provider's

editorial decisions; its alleged failure to monitor, police, or regulate the content or conduct of its users or implement safety measures to achieve such monitoring or policing functions; or its offering of neutral tools to facilitate user communications. *See, e.g.*, *Herrick v. Grindr LLC*, 765 F. App'x 586, 590-91 (2d Cir. 2019) (Section 230 barred claims based on neutral tools that facilitated communications between users and alleged lack of safety features and warnings that sought to hold Grindr liable for failing "to combat or remove offensive third-party content"); *Doe v. MySpace, Inc.*, 528 F.3d 413, 420 (5th Cir. 2008) (allegations that MySpace failed "to implement measures that would have prevented [plaintiff] from communicating" with the user who later assaulted her was "merely another way of claiming that MySpace was liable for publishing the communications"); *Dyroff v. Ultimate Software Grp., Inc.*, No. 17-cv-05359-LB, 2017 U.S. Dist. LEXIS 194524, *28 (N.D. Cal. Nov. 26, 2017) (website's "policy about anonymity" and neutral tools that facilitated user communications "may have allowed illegal conduct" but were shielded by Section 230), *aff'd*, 934 F.3d 1093 (9th Cir. 2019).

All of the activities that Omegle allegedly failed to perform, or to perform adequately, are traditional editorial functions that are subject to CDA immunity. Specifically, the SAC focuses on the alleged communications and other content of the John Doe user, alleging that Omegle failed to adequately monitor or police the content of its users or implement safety measures that allegedly would have

prevented C.H.'s communications with that user. For instance, the SAC alleges the "improper, illegal, and illicit use of [Omegle's] website" by users; users' misuse of the website "to create child sex abuse material and other illicit and illegal content" which those users allegedly "share[] on Omegle and other internet platforms"; the alleged actions of the John Doe user, including the alleged "explicit screen grabs" he took; and users' alleged creation of "child pornography of C.H." or "images of commercial sex acts that C.H. was forced to engage in." (Appendix Vol. II at 24-27, 30.) Courts have held that similar allegations in connection with the same claims Plaintiffs assert trigger Section 230. *See, e.g.*, *L.H.*, 2022 U.S. Dist. LEXIS 91756 at *37 (craigslist's alleged failure to prevent or remove the posts of plaintiff's alleged sex traffickers "is precisely the type of conduct Congress sought to immunize"); *G.G. v. Salesforce.com, Inc.*, No. 20-cv-02335, 2022 U.S. Dist. LEXIS 87616, *22 (N.D. Ill. May 16, 2022) (claims, including TVPRA claim, alleging that Backpage used the ICS provider's software for online marketing communications with sex traffickers treated ICS as a publisher "as courts have consistently found that § 230 bars imposing liability on a provider of messaging or e-mail services for content and activities conducted via those services").

Nor does the SAC plausibly allege that Omegle materially contributed to what made the John Doe user's content unlawful, thereby rendering it an "information content provider" that is not entitled to Section 230 immunity. An

13

"information content provider" includes "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other [ICS]." 47 U.S.C. § 230(f)(3).

An ICS provider is not an information content provider unless it "contributes materially to the alleged illegality of the conduct." *Fair Hous. Council v. Roommates.com, LLC*, 521 F.3d 1157, 1167-68 (9th Cir. 2008) (en banc). Nor could Plaintiffs plausibly allege such material contribution by Omegle to the John Doe user's content. Merely providing a neutral tool to facilitate communications – like Omegle's chat service – is not sufficient to show material contribution. *See, e.g.*, *Dyroff*, 934 F.3d at 1098 (website features were not content but rather "tools meant to facilitate the communication and content of others"); *Klayman v. Zuckerberg*, 753 F.3d 1354, 1358 (D.C. Cir. 2014) ("[A] website does not create or develop content when it merely provides a neutral means by which third parties can post information of their own independent choosing online."); *L.H.*, 2022 U.S. Dist. LEXIS 91756 at *35 ("[A] website's supply of neutral tools . . . is not a material contribution because it does nothing to enhance the unlawfulness of the message.") (internal quotation marks omitted); *Reddit*, 2021 U.S. Dist. LEXIS 235993 at *10-11 (allegations regarding pseudonymous, private messaging system and failure to enforce policies did "not speak to whether Reddit 'materially contributed' to the CSEM" because they related to "neutral tools").

As the District Court recognized, "[m]erely providing the forum where harmful conduct took place cannot otherwise serve to impose liability onto Omegle." (Appendix Vol. II at 152.) *See also Gonzalez v. Google LLC*, 2 F.4th 871, 893 (9th Cir. 2021) ("Plainly, an [ICS] does not create or develop content by merely providing the public with access to its platform."). Thus, Plaintiffs' claims are barred by Section 230 absent an exception to immunity. However, as discussed next, no such exception applies.

## III.    Section 230 Bars The Civil Claim Alleging Violation Of Section 2252A

Plaintiffs and *Amici* assert that the claim under 18 U.S.C. § 2255, which is based on alleged violation of the possession provision of the child pornography criminal statute, 18 U.S.C. § 2252A(a)(5)(B), is categorically excluded from CDA immunity. However, they ignore Section 230's language, which contains no such categorical exclusion.

### A.    Section 230(e)(1) Does Not Exempt Civil Claims Based On Criminal Statutes

The SAC's first claim asserts that Omegle violated 18 U.S.C. § 2252A(a)(5)(B), which makes it a crime for any person to knowingly possess or access with intent to view material that contains an image of child pornography. The CSAM at issue is that allegedly created by the John Doe user.

Section 230(e)(1) – which includes the heading "No effect on **criminal law**" – states, in relevant part, that nothing in Section 230 shall "impair the

15

**enforcement** of . . . chapter . . . 110 (relating to sexual exploitation of children) of

[18 U.S.C. § 2251 *et seq.*], or any other Federal criminal statute."

47 U.S.C. § 230(e)(1) (emphasis added). Courts have consistently construed this

exception to apply only to "government prosecutions, not to civil private rights of

action under [statutes] with criminal aspects." *Obado v. Magedson*, No. 13-2382

(JAP), 2014 U.S. Dist. LEXIS 104575, *27 (D.N.J. July 31, 2014), *aff'd*, 612 F.

App'x 90 (3d Cir. 2015); *see also Gonzalez*, 2 F.4th at 890 (reaching same

conclusion); *Force v. Facebook, Inc.*, 934 F.3d 53, 72 (2d Cir. 2019) (joining First

Circuit "in concluding that Section 230(e)(1) is quite clearly . . . limited to criminal

prosecutions") (internal quotation marks omitted). Thus, *Amici* are incorrect in

asserting that Section 230(e)(1) "explicit[ly] exempt[s] from immunity . . .

violations of child sexual exploitation laws," including "private rights of action by

victims of child pornography and child sex trafficking." (Child USA Brf. at 16.)

*Amici* also assert that the statute permitting civil claims for violations of the CSAM

criminal statute does not "distinguish[] between individuals and entities such as

ISPs." (*Id.* at 28.) But that assertion ignores Section 230, which does address ICS

providers and claims like Plaintiffs' that seek to hold such intermediaries liable for

CSAM allegedly created by users.

Moreover, courts have reached that conclusion with respect to

Section 2252A, the criminal statute on which Plaintiffs' first claim is based, as

recently as August and October of 2021. *See, e.g.*, *Reddit*, 2021 U.S. Dist. LEXIS 235993 at *16-17 (CDA barred civil claim seeking to hold Reddit liable under Section 2252A based on CSAM posted by users, relying in part on *Doe v. Bates*, No. 5:05-CV-91-DF-CMC, 2006 U.S. Dist. LEXIS 93348 (E.D. Tex. Dec. 27, 2006)); *Doe v. Twitter, Inc.*, 555 F. Supp. 3d 889, 927-28 (N.D. Cal. 2021) (CDA barred civil claim for alleged violation of Section 2252A, also relying in part on *Bates*), *appeals docketed*, Nos. 22-15103 and 22-15104 (9th Cir. Jan. 25, 2022).

Plaintiffs argue that civil claims for alleged violation of Section 2252A have been or should be treated differently – notwithstanding the language of Section 230 – because CSAM "is not Constitutionally protected" speech, relying in part on the *Doe v. MG Freesites* decision. They also make a quasi-standing argument regarding who is entitled to sue under Section 2255. (Appellants' Brf. at 25, 27-29.) But neither argument trumps Section 230(e)(1)'s language.

First, as discussed above, "[c]ourts have consistently held that § 230(e)(1)'s limitation on § 230 immunity extends only to criminal prosecutions, and not to civil actions based on criminal statutes," regardless of the statute at issue. *Gonzalez*, 2 F.4th at 890 (Section 230 barred civil claims based on criminal counter-terrorism statutes); *Force*, 934 F.3d at 71-72 (Section 230 barred civil claims based on alleged violations of various criminal statutes relating to providing support for terrorism). Nor does the *Doe v. MG Freesites* decision assist Plaintiffs.

17

The court's discussion of Section 230's applicability to claims involving CSAM was not necessary to its decision because it concluded that the defendants materially contributed to the CSAM's creation (and thus would not be entitled to CDA immunity in the first instance). *Doe v. MG Freesites, Ltd.*, No. 7:21-cv-00220-LSC, 2022 U.S. Dist. LEXIS 23199, *71, 78, 81 (N.D. Ala. Feb. 9, 2022).

The court's statements about the alleged inapplicability of Section 230 to claims involving CSAM or other "illegal contraband" also are not supported by the statutory text. The court appeared to argue for limiting Section 230's protection to "lawful" third-party content. *Id.* at *76 (CSAM is not "lawful" information and such "illegal contraband" is "wholly outside any other protection or immunity under the law, including Section 230"). But Section 230 contains no such limitation; to the contrary, it shields ICS providers from being treated as the publisher or speaker of "***any*** information provided by another information content provider." 47 U.S.C. § 230(c)(1) (emphasis added). The statutory text neither limits the scope of immunity to "lawful" third-party content nor scales the scope of protection based on the degree of offensiveness of the third-party content.

Moreover, courts have explicitly and implicitly recognized that CDA immunity is not limited to "lawful" third-party content. *See, e.g.*, *Dyroff*, 934 F.3d at 1095, 1099 (Section 230 barred claims relating to plaintiff's son's purchase of fentanyl-laced heroin from another user in a "heroin-related group" on the

18

website); *Twitter*, 555 F. Supp. 3d at 928 ("[I]mmunity under Section 230 is not defeated by the fact that the third-party content at issue is illegal child pornography."); *Bates*, 2006 U.S. Dist. LEXIS 93348 at *10 (principles underlying CDA immunity "are equally applicable in the context of illegal pornography"). Indeed, limiting Section 230 protection only to situations involving "lawful" third-party content would eviscerate Section 230.

Second, Plaintiffs argue that Section 2255 allows CSAM victims to "'sue [anyone] in any appropriate'" district court and does not limit "actionable defendants to convicted criminals, individuals, or entities." (Appellants' Brf. at 27.) But this argument says nothing about whether Section 230 bars Plaintiffs' claim seeking to hold Omegle liable for CSAM allegedly created by a user.

## B. Policy Arguments Cannot Supplant The Statutory Language

Neither Plaintiffs nor *Amici* meaningfully engage with the language of Section 230(e)(1). They instead largely rely on policy arguments regarding the undisputed reprehensible nature of, and harm caused by, CSAM, and Congressional intent to provide remedies to victims. (*See, e.g.*, Appellants' Brf. at 25-30; Child USA Brf. at 18-22, 27-29.) But such policy arguments cannot supersede the language of Section 230(e)(1).

Statutory interpretation begins and "often should end . . . with the words of the statutory provision." *Harris v. Garner*, 216 F.3d 970, 972 (11th Cir. 2000) (en

banc). Moreover, the "'plain' in 'plain meaning' means that [the Court] look[s] to the actual language used in a statute, not to the circumstances that gave rise to that language." *CBS*, 245 F.3d at 1224. But here, Plaintiffs and *Amici* upend the analysis, starting first with perceived Congressional intent and only then turning to the statutory language (if they do so at all).

Plaintiffs do not meaningfully challenge the courts' plain meaning reading of Section 230(e)(1) discussed above; in fact, they acknowledge that the exception was "historically" inapplicable to CSAM civil cases. (Appellants' Brf. at 28.) With that acknowledgement, the inquiry begins and ends with the statutory text.

Plaintiffs and *Amici* also create a false dichotomy in arguing that the Court should permit the claim to proceed notwithstanding Section 230 because perpetrators of CSAM will evade justice if Omegle is not held liable for the CSAM allegedly created by the John Doe user. (Appellants' Brf. at 29-30; Child USA Brf. at 17.) But that assertion ignores the fact that the actual perpetrators, *i.e.*, the users who create the CSAM, remain subject to both criminal prosecution and civil liability. Similarly, those ICS providers who do violate Section 2252A (which Omegle has not done) also remain subject to criminal prosecution.

In the end, however, it is the language of Section 230(e)(1) that controls and perceived policy concerns "cannot alter [the Court's] interpretation and application of clear statutory language." *Merritt*, 120 F.3d at 1188.

20

### C.    Even Ignoring Section 230, The Section 2252A Claim Fails

Although the Court need not reach the issue given Section 230's bar, the SAC also fails to allege facts that plausibly establish that Omegle ***knowingly*** violated Section 2252A(a)(5)(B). The SAC alleges only that "Omegle.com knowingly possessed child pornography of C.H. that was produced on Omegle.com" (Appendix Vol. II at 27); but all the factual allegations pertain to the John Doe user's alleged creation of, and actions with respect to, CSAM (*see, e.g.*, *id.* at 25-26). None of the allegations plausibly allege any facts showing that Omegle knowingly possessed or accessed with intent to view child pornography of C.H., as required to allege a violation of Section 2252A *by Omegle*. Additionally, Plaintiffs attempt to recast their claim as one alleging that Omegle "knowingly facilitated the production of C.H.'s child pornography." (Appellants' Brf. at 26.) But even assuming arguendo that is a cognizable claim for violation of Section 2252A(a)(5)(B), the SAC similarly fails to support that conclusory statement with any well-pled factual allegations as to Omegle's knowing conduct with respect to the CSAM allegedly created by the John Doe user.

Even the cases Plaintiffs relied upon below hold that "the scienter requirement found in . . . [§] 2252A(a) extends both to the sexually explicit nature of the material and to the age of the performer." *Tilton v. Playboy Entm't Grp., Inc.*, 554 F.3d 1371, 1378 (11th Cir. 2009). While "deliberate ignorance" may

satisfy the knowledge element in some circumstances, *id.*, there must still be *some* evidence of knowledge as to the specific victim and the nature of the content alleged to be CSAM. Here, the SAC does not allege that Omegle had any contemporaneous knowledge about C.H. or the existence or nature of any image the John Doe user allegedly created of her, much less that Omegle *knowingly possessed or accessed with an intent to view* an image that constitutes CSAM.

Thus, even if Section 230 did not bar the Section 2252A claim, the SAC fails to plausibly allege a violation of that statute *by Omegle* and was properly dismissed on this alternative ground.

## IV.    The District Court Correctly Held That The TVPRA Claim Is Not Within FOSTA's Narrow Carveout From Immunity

In 2018, Congress enacted FOSTA, which added a narrow carveout from CDA immunity for certain civil sex trafficking claims under the TVPRA. Pub. L. No. 115-164, 132 Stat. 1253 (2018). Specifically, FOSTA amended Section 230 to state that it shall not limit a claim under Section 1595 of the TVPRA "if the conduct underlying the claim constitutes a violation of section 1591[.]" 47 U.S.C. § 230(e)(5)(A). A "conspicuous majority of courts," including the District Court, have concluded that this language requires plaintiffs to establish that the ICS provider's own conduct violates Section 1591 to avoid Section 230's bar. *L.H.*, 2022 U.S. Dist. LEXIS 91756 at *41. Neither Plaintiffs nor *Amici* have demonstrated that the District Court's reading of

Section 230(e)(5)(A) was erroneous. The statutory language, its statutory context, and FOSTA's legislative history, as well as a growing number of well-reasoned decisions, support the District Court's reading.

### A.    FOSTA's Text And Statutory Context Support The District Court's Reading Of Section 230(e)(5)(A)

Beginning with the statutory text as the Court must, *see CBS*, 245 F.3d at 1222, the plain language of Section 230(e)(5)(A) states that civil sex trafficking claims under Section 1595 against ICS providers fall outside CDA immunity only if the conduct underlying the claim – necessarily the conduct of the ICS provider – constitutes a violation of Section 1591. FOSTA's other amendments to Section 230 and Section 1591 further support that reading of the statutory text.

FOSTA[4] made several relevant changes to Section 230 and Sections 1591 and 1595 of the TVPRA.

First, FOSTA amended Section 230 to add the narrow carveout for civil actions against ICS providers under 18 U.S.C. § 1595 for violations of the criminal sex trafficking statute, Section 1591. That amendment states that the CDA shall not limit "any claim in a civil action brought under section 1595 . . . if the conduct

---

[4] FOSTA, as finally enacted, was a combination of a House bill of the same name and a Senate bill titled the Stop Enabling Sex Traffickers Act ("SESTA"), and is therefore sometimes referred to as FOSTA-SESTA. *See J.B. v. G6 Hosp., LLC*, No. 19-cv-07848-HSG, 2021 U.S. Dist. LEXIS 170338, *14-15 (N.D. Cal. Sept. 8, 2021) ("*J.B. II*"), *appeal docketed*, No. 22-15290 (9th Cir. Feb. 28, 2022).

underlying the claim constitutes a violation of section 1591[.]"

47 U.S.C. § 230(e)(5)(A). Second, FOSTA amended Section 1591 to define

"participation in a venture" as "knowingly assisting, supporting, or facilitating" a

sex trafficking violation. 18 U.S.C. § 1591(e)(4). Third, FOSTA added a provision

to Section 1595 authorizing state attorneys general to bring *parens patriae* civil

actions against any person who violates Section 1591. 18 U.S.C. § 1595(d).

    The interpretation of Section 230(e)(5)(A) both begins, and should end, with

the statutory language. The "most straightforward reading" of the language is that

it "provides an exemption from CDA immunity for a section 1595 claim if the civil

defendant's conduct amounts to a violation of section 1591." *J.B. v. G6 Hosp.,*

*LLC*, No. 19-cv-07848-HSG, 2021 U.S. Dist. LEXIS 170338, *18 (N.D. Cal.

Sept. 8, 2021) ("*J.B. II*"), *appeal docketed*, No. 22-15290 (9th Cir. Feb. 28, 2022).

The use of the singular "claim" twice in close proximity in Section 230(e)(5)(A)

logically references only "the claim" against the ICS provider. *Niz-Chavez v.*

*Garland*, 141 S. Ct. 1474, 1483 (2021) (statutory language that uses "a definite

article with a singular noun" generally refers to "a discrete thing"); *G.G.*, 2022

U.S. Dist. LEXIS 87616 at *29-30 (finding that the "'claim in a civil action' and

the 'claim' which the conduct must underlie are the same" in

Section 230(e)(5)(A)). In other words, because Section 230(e)(5)(A) speaks only to

the "claim" against the ICS provider, "the conduct underlying the claim"

necessarily refers to the conduct of the provider. The fact that Section 230 as a whole addresses the conduct, liability, and immunity of ICS providers reinforces this conclusion.

Expanding the analysis to the other exceptions in Section 230(e)(5) added by FOSTA further supports the conclusion that the "conduct underlying the claim" language refers to the ICS provider's conduct.

FOSTA added parallel provisions in Section 230(e)(5) excluding certain claims and charges from CDA immunity: (1) a civil claim under Section 1595 "***if the conduct underlying the claim*** constitutes a violation of section 1591" (Section 230(e)(5)(A)); (2) a criminal charge under state law "***if the conduct underlying the charge*** would constitute a violation of section 1591" (Section 230(e)(5)(B)); and (3) a criminal charge under state law "***if the conduct underlying the charge*** would constitute a violation of section 2421A (Section 230(e)(5)(C)) (all emphasis added). With respect to a criminal charge (Section 230(e)(5)(B) and (C)), "the underlying conduct necessarily refers to the conduct of the criminal defendant." *J.B. II*, 2021 U.S. Dist. LEXIS 170338 at *19. "[I]t thus is consistent to construe the provisions referencing 'the conduct underlying the' claim or charge 'constitut[ing] a violation of section 1591' to refer to the conduct of the named defendant." *Id.* "That Congress included nearly identical language in the same subsection, at the same time, strongly suggests that

it intended to give the 'conduct underlying' phrases the same meaning," *i.e.*, to refer to the conduct of the named defendant, the ICS provider. *Id. See also L.H.*, 2022 U.S. Dist. LEXIS 91756 at *40-41 (finding that the "consistency between the subparagraphs of Section 230(e)(5)," among other considerations, refuted plaintiff's argument that FOSTA withdrew CDA immunity for *all* TVPRA claims); *G.G.*, 2022 U.S. Dist. LEXIS 87616 at *30-31 (agreeing that the "conduct underlying" phrase should be given the same meaning in Section 230(e)(5)(A)-(C)). This reasoning is consistent with the canon of construction that a "term appearing in several places in a statutory text is generally read the same way each time it appears." *CBS*, 245 F.3d at 1226 (internal quotation marks omitted). In contrast, to adopt the interpretation of Plaintiffs and *Amici* would require the Court to give different meanings to the identical phrase in provisions "next-door to each other." *Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721, 1725 (2020).

Finally, FOSTA added a provision to Section 1595 authorizing state attorneys general to bring *parens patriae* civil actions against "any person who violates section 1591." 18 U.S.C. § 1595(d). As the *J.B. II* court recognized, "it would be unreasonable to conclude that Congress would allow state attorneys general to sue only 'direct violators' of section 1591, while allowing private plaintiffs to sue civil defendants who only violated section 1595 based on the application of a constructive knowledge standard." 2021 U.S. Dist. LEXIS 170338

at *22. Instead, this new provision, along with the language of

Section 230(e)(5)(A), demonstrate that in FOSTA, "Congress chose to focus on

providing civil recourse against defendants who violate section 1591." *Id.* at *21.

Thus, because "'the words of [the] statute are unambiguous,'" the first canon

of statutory construction that Congress meant what it said "'is also the last: judicial

inquiry is complete.'" *Merritt*, 120 F.3d at 1186 (quoting *Connecticut Nat'l Bank*

*v. Germain*, 503 U.S. 249, 254 (1992)). But even if the Court were to look beyond

the statutory language, FOSTA's legislative history and well-reasoned decisions

from other federal courts support the District Court's reading of

Section 230(e)(5)(A).

### B.    FOSTA's Legislative History Supports The District Court's Reading Of Section 230(e)(5)(A)

FOSTA's legislative history confirms that it embodied a compromise that

resulted in a narrow carveout from Section 230 immunity for violations of the

federal criminal sex trafficking statute. *See G.G.*, 2022 U.S. Dist. LEXIS 87616 at

*33-34; *J.B. II*, 2021 U.S. Dist. LEXIS 170338 at *37-38.

In reaching the same conclusion as the District Court as to the appropriate

interpretation of Section 230(e)(5)(A), the *J.B. II* court engaged in a detailed

review of FOSTA's legislative history. 2021 U.S. Dist. LEXIS 170338 at *23-39.

As noted in that review, as originally introduced, FOSTA contained expansive

language that would have amended the CDA to state that it shall not "be construed

27

to impair the enforcement or limit the application of (A) section 1595 of title 18, United States Code." H.R. 1865, 115th Cong. § 3 (as introduced in the House, Apr. 3, 2017). The original version of FOSTA also would have amended Section 1591 to broadly define "participation in a venture" as "knowing or reckless conduct by any person or entity and by any means that furthers or in anyway [sic] aids or abets the violation of subsection (a)(1)." *Id.* § 4. But over the course of Congress's consideration of FOSTA and SESTA, "witnesses raised concerns that § 1595's 'knew or should have known' language was too expansive and risked encouraging litigation against law-abiding intermediaries." *G.G.*, 2022 U.S. Dist. LEXIS 87616 at *33-34.

The end result of this legislative process was a law that eschewed the expansive language of FOSTA as originally introduced in favor of the more limited "conduct underlying the claim" language. *See id.* at *33. Similarly, the "participation in a venture" definition ultimately added to Section 1591 was significantly narrowed to focus solely on knowing conduct. *See* 18 U.S.C. § 1591(e)(4). Thus,

> [n]otwithstanding the well-understood challenges inherent in showing a website's knowledge, it thus appears that Congress reached a compromise by including a narrowed federal civil sex trafficking carveout that requires plaintiffs to show the civil defendant's knowing assistance, support or facilitation, while also enacting a criminal offense [18 U.S.C. § 2421A] that . . . targets bad actor websites and includes a civil recovery provision.

*J.B. II*, 2021 U.S. Dist. LEXIS 170338 at *37-38; *see also G.G.*, 2022 U.S. Dist. LEXIS 87616 at *33-34; *Doe v. Kik Interactive, Inc.*, 482 F. Supp. 3d 1242, 1250 n.6 (S.D. Fla. 2020).

Therefore, even if the Court were to go beyond the plain language reading of Section 230(e)(5)(A), the legislative history supports that reading.

### C.    The Majority Of Authority Supports The District Court's Reading Of FOSTA's Narrow Carveout To Section 230

A persuasive majority of well-reasoned district court decisions have joined the District Court in concluding that Section 230(e)(5)(A) requires TVPRA plaintiffs to establish that the ICS provider's own conduct violates Section 1591.

The Southern District of Florida first tackled the question in *Kik*. The minor plaintiff alleged that Kik was liable under Section 1595 for participating in a sex trafficking venture allegedly perpetrated by other Kik users. *Kik*, 482 F. Supp. 3d at 1244-45. After concluding that Section 230 would otherwise bar the TVPRA claim, the court addressed the appropriate knowledge standard under FOSTA's amendment, Section 230(e)(5)(A). *Id.* at 1248-49. Notably, the court found that the hotel cases – like those Plaintiffs and *Amici* rely on – did not answer the question "because the hotel defendants were not [ICS] providers" and therefore "neither FOSTA nor CDA immunity were considered." *Id.* at 1250. Turning to FOSTA, the court held that its language reflected only a limited carveout from immunity that imposed an actual knowledge standard:

29

> By its terms, FOSTA did not abrogate CDA immunity for all claims arising from sex trafficking; FOSTA permits civil liability for websites only "if the conduct underlying the claim constitutes a violation of section 1591." And section 1591 requires knowing and active participation in sex trafficking by the defendants.

*Id.* at 1250-51.

The Northern District of California in *J.B. II* reached the same conclusion after a thorough examination of the statutory language, the statutory context, and FOSTA-SESTA's legislative history. *J.B. II* – which involved a TVPRA claim against craigslist – concluded that "the most straightforward reading" of Section 230(e)(5)(A) is that it means what it says; specifically, it "provides an exemption from CDA immunity for a section 1595 claim if the civil defendant's conduct amounts to a violation of section 1591." 2021 U.S. Dist. LEXIS 170338 at *18. Notably, in reaching that conclusion, the court reversed its prior decision reaching a contrary conclusion. But, "[h]aving closely reexamined the issue," the court concluded that the plain language only withdraws immunity for claims where the ICS provider's own conduct violates Section 1591. *Id.* at *14.

The Central District of California reached the same conclusion in *Reddit*, 2021 U.S. Dist. LEXIS 235993 at *18. And, like the *J.B. II* court, the *Reddit* court found that the "legislative history comports with the [c]ourt's reading of the plain text." *Id.* at *19. Additionally, the Northern District of Illinois recently joined these courts concluding that to state a TVPRA claim that falls within FOSTA's limited

carveout from CDA immunity, the plaintiff must plausibly allege that the ICS provider violated Section 1591. *G.G.*, 2022 U.S. Dist. LEXIS 87616 at *34; *see also L.H.*, 2022 U.S. Dist. LEXIS 91756 at *40-41 (agreeing with the "conspicuous majority of courts" that have concluded that "FOSTA withdrew immunity from only those § 1595 claims in which the defendant's conduct violated the TVPRA's criminal provision," Section 1591).

The *Twitter* court reached the opposite conclusion of these courts. But, although the court engaged in some analysis in concluding that the plaintiffs' TVPRA claim against Twitter "is not subject to the more stringent requirements that apply to criminal violations of [Section 1591]," *Twitter*, 555 F. Supp. 3d at 922, the analysis was either irrelevant to interpreting Section 230(e)(5)(A) or conclusory. *See also L.H.*, 2022 U.S. Dist. LEXIS 91756 at *41 n.7 (noting that the two courts that reached the opposite conclusion – including the *Twitter* court – "did not fully address the contextual and legislative history arguments exhaustively considered in other cases").

For example, like Plaintiffs and *Amici* (*see* Appellants' Brf. at 35; NCOSE Brf. at 13, 23-28), the *Twitter* court spent considerable time discussing a line of cases involving sex trafficking claims against hotel defendants. *Twitter*, 555 F. Supp. 3d at 916-18. But as the court itself recognized, because those cases did not involve ICS providers and therefore did not implicate Section 230 or FOSTA, they

did not answer the question before the court. *Id.* at 918. The court then discussed the *Kik* decision but simply stated that it disagreed with that court's analysis, apparently largely relying on the principle that FOSTA is a remedial statute. *Id.* at 918-20. Relying on its "natural reading" of Section 230(e)(5)(A), the *Twitter* court then concluded that it did not require proof that the ICS defendant's conduct violated Section 1591. *Id.* at 920-22. *See also Doe v. Mindgeek USA Inc.*, 558 F. Supp. 3d 828, 836 (C.D. Cal. 2021) (agreeing with the *Twitter* court, largely without engaging in its own analysis). The court's alleged plain language reading was based on FOSTA's remedial nature and the premise that FOSTA intended ICS defendants to be treated no differently than other TVPRA defendants to whom Section 230 does not apply. *Twitter*, 555 F. Supp. 3d at 920. But neither theory justifies departing from the plain language of Section 230(e)(5)(A).

First, it is notable that FOSTA's exception is part of Section 230, which focuses on ICS providers and shields them from claims that apply to other (non-ICS) defendants. In other words, in Section 230, Congress already determined that in some circumstances, ICS providers should be treated differently than other defendants to further the CDA's purposes. *See* 47 U.S.C. § 230(a), (b). Therefore, it is hardly absurd to conclude that, given the plain language of Section 230(e)(5)(A), Congress *did* intend to treat ICS providers differently from

other TVPRA defendants, such as the hotel defendants in the inapplicable cases the *Twitter* court discussed.

Second, FOSTA's remedial nature cannot "overcome the plain language of the statute, especially given that section 230 as a whole is designed to provide immunity to [ICS] providers." *Reddit*, 2021 U.S. Dist. LEXIS 235993 at *19; *see also G.G.*, 2022 U.S. Dist. LEXIS 87616 at *31 (explaining that "even assuming that a statute is 'remedial,' the [c]ourt must first turn to the text of the statute"). Moreover, as the *J.B. II* court recognized, the plain language reading is consistent with FOSTA's remedial purpose and the compromise Congress reached in balancing that purpose and the purposes of Section 230. 2021 U.S. Dist. LEXIS 170338 at *35-40.

Finally, the *MG Freesites* decision is of no assistance to Plaintiffs. Although it discussed the issue of the appropriate knowledge standard for a TVPRA claim in light of Section 230(e)(5)(A), it explicitly did not decide the question because it concluded that the ICS provider materially contributed to the unlawful content at issue and therefore was not entitled to CDA immunity in the first instance. *See MG Freesites*, 2022 U.S. Dist. LEXIS 23199 at *31-47. Therefore, Plaintiffs' suggestion that the decision is authority on the applicable knowledge standard (Appellants' Brf. at 32, 35), is simply incorrect.

In contrast, each of the *Kik*, *J.B. II*, and *Reddit* courts – as well as most recently the *G.G.* and *L.H.* courts – correctly recognized FOSTA's limited carveout to CDA immunity that applies "**if, but only if,** the [ICS] defendant's conduct amounts to a violation of section 1591." *J.B. II*, 2021 U.S. Dist. LEXIS 170338 at *39 (emphasis added); *see also L.H.*, 2022 U.S. Dist. LEXIS 91756 at *41; *G.G.*, 2022 U.S. Dist. LEXIS 87616 at *34; *Reddit*, 2021 U.S. Dist. LEXIS 235993 at *18; *Kik*, 482 F. Supp. 3d at 1250-51. The District Court's identical conclusion is in line with these well-reasoned decisions of its sister courts.

### D.    Neither Plaintiffs Nor *Amici* Demonstrate That The District Court's Reading Of Section 230(e)(5)(A) Was Improper

As the above discussion demonstrates, the District Court's reading of Section 230(e)(5)(A) is amply supported by the statutory language, and is reinforced by the statutory context, legislative history, and the majority of well-reasoned decisions. None of the various assertions made by Plaintiffs or *Amici* demonstrate otherwise.

As to Plaintiffs, they assert that they need not show that a defendant was "criminally liable, charged, or prosecuted" to allege a civil claim for violation of Section 1591. (Appellants' Brf. at 31.) But that is a non-sequitur; Omegle has not argued, and the District Court did not hold, that a criminal charge or prosecution was required. Rather, based on Section 230(e)(5)(A)'s text – which Plaintiffs

largely ignore – a plaintiff alleging a TVPRA claim against an ICS provider must prove that the provider's own conduct violated Section 1591.

Plaintiffs also do not show why the District Court, the Southern District of Florida in *Kik*, the Central District of California in *Reddit*, or the exhaustive analysis of the Northern District of California in *J.B. II* misread Section 230(e)(5)(A). Plaintiffs simply quote at length from *Twitter* (Appellants' Brf. at 33-34) while failing to engage directly with Section 230(e)(5)(A)'s text. But Omegle has shown why *Twitter*, including its reliance on cases that did not address Section 230 and FOSTA (*i.e.*, the hotel cases), and its elevation of the remedial purpose of FOSTA over its text, is not persuasive.

Plaintiffs also argue that they have adequately alleged that Omegle "'knowingly' violated 18 U.S.C. § 2252A." (*Id.* at 34.) But even assuming that was correct – which Omegle has shown it is not (*see supra* section III.C.) – that has no relevance to (1) the knowledge required to satisfy the exception to immunity in Section 230(e)(5)(A) with respect to a TVPRA claim, or (2) the question whether the SAC contains well-pled factual allegations to plausibly allege that knowledge standard. Similarly irrelevant are Plaintiffs' vague or conclusory assertions that "'knowing[] recei[pt]" is "mainly" a question of fact and that a knowing *mens rea* standard does not apply to statutes targeted at protecting minors. (Appellants' Brf. at 34.) Nor do Plaintiffs offer any support for the conclusory assertion that the

District Court decided issues of fact – presumably as to the existence of Omegle's knowledge, though that is unclear – in deciding the motion to dismiss. (*Id.*) As discussed below, Plaintiffs did not argue in the District Court, and do not argue on appeal, that they did or can plausibly allege the necessary actual knowledge required to exempt their TVPRA claim from Section 230's bar.

The arguments of *Amici* also lend no support to Plaintiffs.

Much of *Amici*'s briefs focus on Congress's alleged intent in enacting FOSTA, often to the exclusion of the statutory language at issue. (*See, e.g.*, Child USA Brf. at 25-26, 29-32, 34-35; NCOSE Brf. at 28-29.) But (1) the alleged intent of Congress cannot override the statutory language, and (2) the alleged Congressional intent described by *Amici* is not inconsistent with requiring an actual knowledge standard as to ICS providers.

"The rule is that [the Court] must presume that Congress said what it meant and meant what it said." *CBS*, 245 F.3d at 1222 (internal quotation marks omitted). Thus, where, as here, the statutory language is clear, the Court "need not resort to legislative history, and [it] certainly should not do so to undermine the plain meaning of the statutory language." *Harris*, 216 F.3d at 976. Similarly, the perceived intent of Congress – even if it reflects a remedial purpose – is "insufficient justification for interpreting a specific provision more broadly than its language and the statutory scheme reasonably permit." *Pinter v. Dahl*, 486 U.S.

622, 653 (1988) (internal quotation marks omitted); *see also Niz-Chavez*, 141 S. Ct. at 1486 (stating that "no amount of policy-talk can overcome a plain statutory command").

*Amici* do not support their assertion that the District Court "rewrote" Section 230(e)(5)(A) or "pervert[ed] the law". (Child USA Brf. at 32-33.) Rather, *Amici* doubles down on alleged Congressional intent while largely ignoring the actual language of FOSTA's amendment to the CDA. For example, *Amici* assert that FOSTA's amendment clarified that websites are not immune "against civil actions brought under 18 U.S.C. § 1595" (NCOSE Brf. at 19, 28), which is contrary to the actual language of the exception. *Amici* also selectively edit the language of Section 230(e)(5)(A) to remove the operative language and then argue that FOSTA exempted *all* Section 1595 claims from Section 230's bar. (*See* Child USA Brf. at 25 (quoting Section 230(e)(5)(A) as stating that "'[n]othing in this section shall be construed to impair . . . any claim in a civil action brought under 18 § 1595 . . .' (relating to sex trafficking)") (all alterations in original).) Having replaced the relevant "if the conduct underlying the claim" language with an ellipsis, *Amici* then assert that the District Court's reading conflicts "with the statute's plain text" and "subverts" the purpose. (*Id.*)

But the first and often last stop in statutory interpretation is the statutory language. As the District Court (and the *Kik*, *J.B. II*, *Reddit*, *G.G.*, and *L.H.* courts)

found, the plain language of Section 230(e)(5)(A) states that TVPRA claims against ICS providers are excluded from immunity only "if the conduct underlying the claim constitutes a violation of section 1591." (Appendix Vol. II at 153-56.)

In any event, the legislative history that *Amici* rely on – allegedly reflecting a Congressional intent to allow victims of sex trafficking online to obtain relief against bad actor websites who facilitate that trafficking – does not address the knowledge standard embodied in Section 230(e)(5)(A) and certainly is not clearly contrary to the District Court's plain language reading. To the contrary, the *J.B. II* court's thorough examination of the legislative history demonstrates that in the course of the legislative process that started with a broad amendment to Section 230 but ended with a narrow carveout, the need for a "knowing" standard was repeatedly discussed. 2021 U.S. Dist. LEXIS 170338 at *25-39.

Moreover, Section 230(e)(5)(A)'s language requiring Plaintiffs to plausibly allege facts satisfying the *mens rea* standards of Section 1591 is not inconsistent with the Congressional intent that Plaintiffs and *Amici* advance. Rather, Congress was faced with at least two broad policy concerns: (1) one involved providing sex trafficking victims with a means to seek relief against bad actor websites that knowingly participated in and benefitted from their trafficking; and (2) another sought to preserve the policies intended to be furthered by Section 230, including "maintain[ing] the robust nature of Internet communication and, accordingly, to

keep government interference in the medium to a minimum." *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997). A reasonable balance of these policies is to permit civil sex trafficking claims against bad actor websites but require a higher knowledge standard given the sheer volume of user content and communications that ICS providers face on a daily basis and the limitations on current content monitoring tools. *See, e.g.*, *G.G.*, 2022 U.S. Dist. LEXIS 87616 at *33-34 (discussing the final compromise represented in FOSTA); *J.B. II*, 2021 U.S. Dist. LEXIS 170338 at *21, 39-40 (recognizing the compromise Congress reached in "providing civil recourse against defendants who violate Section 1591" while furthering the policies of the CDA). These unique factors distinguish ICS providers from offline targets of civil sex trafficking claims such as hotels. "[I]t is irrelevant that [the Court] may not have made the same policy decision had the matter been [its] to decide[.]" *CBS*, 245 F.3d at 1228 (internal quotation marks omitted).

While the theory of absurdity of results is one of the few exceptions to the rule that a statute's plain language unequivocally trumps Congressional intent, neither Plaintiffs nor *Amici* demonstrate that the exception applies here. The principle is "rarely applied" because the Court must be able to say "that it is absurd, ridiculous, or ludicrous for Congress to have decided the matter in the way the plain meaning of the statutory language indicates it did." *Merritt*, 120 F.3d at 1188. Plaintiffs and their *Amici* do not and cannot make such a showing here.

It was neither unreasonable nor illogical for Congress to treat ICS providers different than, for example, hotels with respect to the level of knowledge required to state a civil TVPRA beneficiary claim. ICS providers and hotels (or other offline entities) are in starkly different positions with respect to, for example, the amount of user activity occurring on a daily basis and their respective ability to observe "red flags" of trafficking as to any single user. *See, e.g.*, *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123-24 (9th Cir. 2003) (quoting *Zeran* with approval for the proposition that the amount of communications via ICS providers is "'staggering'" and recognizing the impossibility of "'screen[ing] each of their millions of postings'"). It is far from absurd to accept that Congress recognized these and any number of other issues and policy concerns and sought to balance them in amending Section 230 to only allow TVPRA claims that meet the standards of Section 1591. *See also G.G.*, 2022 U.S. Dist. LEXIS 87616 at *32 (in rejecting argument similar to that alleged here, explaining that "§ 230 inherently places higher burdens on plaintiffs seeking to impose liability on [ICS] providers by barring certain types of claims altogether").

> We should always remember when a party argues the absurd results
> exception that Congress often legislates at the macro level, not on a
> micro scale. General problems are given general solutions; and even
> where more specific solutions are possible, compromises are often
> struck. The language used may sweep too broadly in some respects
> affording protection and relief to some who are not truly deserving or
> aggrieved, and too narrowly in other respects failing to reach some

who are more deserving or aggrieved. ***But that is the nature of a political process . . . . Imperfection is not absurdity[.]***

*CBS*, 245 F.3d at 1229 (emphasis added). *See also Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1725 (2017) ("Legislation is, after all, the art of compromise, the limitations expressed in statutory terms often the price of passage, and no statute yet known pursues its [stated] purpose[] at all costs.") (internal quotation marks omitted).

Nor do any of the other assertions of *Amici* demonstrate that the District Court erred in its plain language reading of Section 230(e)(5)(A).

For example, *Amici* suggest that the District Court's decision means ICS providers will escape liability for their "own criminal activity" and will "completely bar[]" victims from obtaining relief. (*See, e.g.*, Child USA Brf. at 26, 32; *see also* NCOSE Brf. at 30.) But, like the similar argument made with respect to Plaintiffs' Section 2252A claim discussed above, it presents a false dichotomy. Criminal actors – whether online or offline – remain subject to criminal prosecution. And the proverbial courthouse doors remain open to civil plaintiffs going after the bad actor websites that FOSTA intended to target that knowingly benefit from knowingly participating in the sex trafficking venture as well as those websites that aren't entitled to immunity in the first instance. The *G.G.* court succinctly rejected a similar argument:

> This conclusion does not, as Plaintiffs contend, "eviscerate" the civil negligence standard in § 1595. To begin, § 230 only applies in limited circumstances – when the defendant is an [ICS] and the claims seek to treat the defendant as a publisher of third-party content. This interpretation of the exemption has no impact on claims that do not meet those criteria. . . . Moreover, Plaintiffs' position misunderstands the interaction between § 230 and the FOSTA Amendments. Before the FOSTA Amendments ***any*** claim against a defendant that met § 230's requirements, including those for sex trafficking under § 1595, would be completely barred. Under the Court's reading of the plain language of the statute, the FOSTA exemptions created a limited exemption to that otherwise broad protection for certain kinds of (but not all) § 1595 claims.

2022 U.S. Dist. LEXIS 87616 at *31-32; *see also J.B. II*, 2021 U.S. Dist. LEXIS 170338 at *21-22 (explaining that "consistent with FOSTA-SESTA's remedial purpose, plaintiffs now can pursue a subset of claims that were previously barred").

*Amici*'s attempt to distinguish and minimize the *Kik* decision also falls short. Again failing to acknowledge that *Red Roof* did not involve Section 230 and ignoring the language of Section 230(e)(5)(A), *Amici* state that *Kik* was wrongly decided because "[t]his Court has now clarified that constructive knowledge applies based on the plain language of § 1595." (NCOSE Brf. at 28.) *Amici* then criticize *Kik* for "erroneously creat[ing] a unique requirement for sex trafficking victims in the online context to meet the criminal requirements [sic] § 1591(a)." (*Id.*) But unlike *Amici*, the *Kik* court based its decision on the actual language of Section 230(e)(5)(A), which only excludes from immunity those TVPRA claims

"where the conduct underlying the claim constitutes a violation of section 1591." Therefore, *Amici*'s assertion that FOSTA's amendment to Section 230 requires that *all* claims brought under Section 1595 not be limited or impaired "by any construction" (*id.*), is contrary to the plain statutory language.

## V.    The District Court Correctly Found That Plaintiffs Failed To State A Claim That Omegle Violated Section 1591

The District Court correctly held that Section 230(e)(5)(A) required Plaintiffs to plausibly allege that the conduct underlying their claim – *i.e.*, Omegle's alleged conduct – violated Section 1591. Neither Plaintiffs nor *Amici* – who focus exclusively on the constructive knowledge standard in Section 1595 (*see, e.g.*, Appellants' Brf. at 12, 24, 31, 34-36; Child USA Brf. at 30, 32-33; NCOSE Brf. at 24-27) – contend that Plaintiffs did or can plausibly allege that Omegle knowingly violated Section 1591.

Section 1591 criminalizes knowingly (1) "recruit[ing], entic[ing], harbor[ing], transport[ing], provid[ing], obtain[ing], advertis[ing], maintain[ing], patroniz[ing], or solicit[ing] by any means a person" or (2) "benefit[ing], financially or by receiving anything of value, from participation in a venture which has engaged" in sex trafficking, "knowing, or . . . in reckless disregard of the fact," that the person is under 18 and will be caused to engage in a commercial sex act. 18 U.S.C. § 1591(a).

43

As to any claim that Omegle engaged in a primary violation under Section 1591(a)(1) (Appendix Vol. II at 30 (¶ 85)), Plaintiffs appear to have abandoned such a claim, focusing on beneficiary liability under Section 1591(a)(2) on appeal (*see* Appellants' Brf. at 30-36). In any event, the SAC contains no factual allegations to support a claim that Omegle was a perpetrator of C.H.'s alleged sex trafficking. The SAC does not and cannot allege that Omegle had any contemporaneous knowledge whatsoever of C.H. or her interaction with the John Doe user, much less that Omegle knowingly recruited, obtained, provided or maintained C.H. knowing that she was under 18 and would be caused to engage in a commercial sex act.[5] Instead, the SAC asserts generally that some users have criminally misappropriated Omegle's website to exploit children "like C.H." (*See, e.g.*, Appendix Vol. II at 29.) Even the conclusory assertion that Omegle "knowingly paired C.H. with a stranger knowing that C.H. was a minor child at risk of becoming a victim" only cites to general allegations about other unrelated alleged user malfeasance or describes C.H.'s interaction with the John Doe user. (*Id.*) *See also Kik*, 482 F. Supp. 3d at 1250 n.5 (allegations that Kik knew of the

---

[5] Although the Court need not reach the issue to affirm the District Court, the SAC arguably fails to plausibly allege a "commercial sex act," which is defined as "any sex act, on account of which anything of value is given to or received by any person." 18 U.S.C. § 1591(e)(3). The SAC references "commercial sex act" but does not appear to make any factual allegations to support that element of the claim, specifically as to the "value" component. (*See* Appendix Vol. II at 30.)

"Identified Kik User's practice of using Kik to furnish harmful, sexually explicit photographs" were conclusory and lacked factual support). But neither type of allegation contains any facts showing that *Omegle* knowingly engaged in the alleged sex trafficking of C.H. as a perpetrator.

Plaintiffs' beneficiary claim under Section 1591(a)(2) also fails to plausibly allege that Omegle "knowingly" participated in the alleged sex trafficking venture of C.H. perpetrated by the John Doe user. This conclusion is buttressed by Section 1591(e)(4)'s definition of "participation in a venture" – added by FOSTA – that requires Plaintiffs to plausibly allege that Omegle "knowingly assist[ed], support[ed], or facilitate[d] [the John Doe user's] violation of subsection (a)(1)." 18 U.S.C. § 1591(e)(4). Far from plausibly alleging that Omegle knowingly participated in the John Doe user's alleged sex trafficking venture involving C.H., the SAC relies entirely on allegations that either do not relate to *Omegle's* knowledge or that involve unrelated alleged instances where users have misused Omegle's website. For example, the SAC alleges that "Omegle.com is a focused topic of discussion by child predators and child pornographers" (Appendix Vol. II at 20-21, 29); but that allegation says nothing about any knowledge of Omegle, much less knowledge about the sex trafficking venture allegedly perpetrated by the John Doe user. Similarly, the SAC alleges that Omegle has been "mentioned" in "numerous criminal cases across the country after individuals were arrested for

45

possessing and promoting child pornography," and cites five news reports from 2016 to 2020 in purported support of that allegation. (*Id.* at 22-23; *see also id.* at 23 (alleging generally the existence of "media coverage, and . . . arrests and convictions of predators using Omegle.com").) But again, none of these allegations plausibly allege that *Omegle* knowingly participated in the John Doe user's alleged sex trafficking venture involving C.H.

Therefore, the District Court correctly concluded that the SAC failed to assert a claim under Section 1595 that would escape Section 230 immunity because the claim was "premised upon general, constructive knowledge of past sex trafficking incidents." (*Id.* at 155.) Plaintiffs and *Amici*, in exclusively arguing for a constructive knowledge standard, do not demonstrate otherwise.

## VI. Even Ignoring The Applicability Of Section 230, The TVPRA Claim Fails

*Amici* accuse the District Court of ignoring "applicable precedent" of this Court, namely, the *Red Roof* decision. (NCOSE Brf. at 13, 23-24.) But even Plaintiffs – in not citing the decision – recognize that it did not involve Section 230 and FOSTA, and therefore did not raise the question the District Court had to answer. In any event, even under the standards of *Red Roof*, the SAC fails to plausibly allege a TVPRA beneficiary claim against Omegle based on the John Doe user's alleged sex trafficking of C.H.

In *Red Roof*, which involved TVPRA claims against hotel franchisors, the Court held that to state a beneficiary claim under Section 1595,

> a plaintiff must plausibly allege that the defendant (1) knowingly benefited, (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) ***that undertaking or enterprise violated the TVPRA as to the plaintiff***, and (4) ***the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff***.

21 F.4th at 726 (emphasis added). However, even applying a constructive knowledge standard, this Court concluded that the plaintiffs' allegations failed to satisfy these elements.

Like Plaintiffs here, the *Red Roof* plaintiffs alleged that the venture the franchisors participated in were "sex trafficking ventures." *Id.* at 726. Thus, the plaintiffs must – but did not – plausibly allege that the "franchisors took part in the common undertaking of sex trafficking" with the plaintiffs' sex traffickers. *Id.* at 726. Allegations that the franchisors licensed their brands to franchisees and received a royalty in return based on room revenue and were "inextricably connected" to the renting of hotel rooms were insufficient, as they did "nothing to show that the franchisors participated in a common undertaking involving risk or profit that violated the TVPRA – *i.e.*, the alleged sex trafficking ventures." *Id.* at 726-27 (reaching same conclusion as to allegations that franchisors investigated the hotels, took remedial action when revenue was down, and "read online reviews mentioning prostitution and crime occurring generally at the hotels").

> The Does chose to frame the ventures at issue as sex trafficking
> ventures. . . . Their only allegations as to the franchisors' knowledge
> or participation in those sex trafficking ventures are that the
> franchisors sent inspectors to the hotels who would have seen signs of
> sex trafficking and that they received reviews mentioning sex work
> occurring at the hotels. ***But observing something is not the same as
> participating in it.*** Accordingly, the Does' Section 1595(a)
> beneficiary claims against the franchisors fail.

*Id.* at 727 (emphasis added).

Other courts in non-CDA cases have found similar allegations insufficient to state a beneficiary claim even under Section 1595's constructive knowledge standard. For example, the Northern District of Georgia reached the same conclusion in two cases making "substantively identical" allegations as those in *Red Roof. See A.B. v. H.K. Grp. of Co., Inc.*, No. 1:21-cv-1344-TCB, 2022 U.S. Dist. LEXIS 29214, *10-12 (N.D. Ga. Feb. 9, 2022) (key insufficiency was the failure to plausibly allege "a common undertaking—between Defendants and the alleged traffickers—involving risk and or [sic] profit"); *C.C. v. H.K. Grp. of Co., Inc.*, No. 1:21-cv-1345-TCB, 2022 U.S. Dist. LEXIS 29213, *10-12 (N.D. Ga. Feb. 9, 2022) (same).

Similarly, in *A.B. v. Hilton Worldwide Holdings Inc.*, the court concluded that the plaintiff failed to plausibly allege a TVPRA beneficiary claim against several hotel chains and a franchisor. 484 F. Supp. 3d 921, 938 (D. Or. 2020). Like the allegations in *Red Roof* and similar to those here, the plaintiff relied in part on news reports and online reviews describing "sex trafficking occurrences" at the

defendants' hotels. The plaintiff also alleged facts about her trafficking, including bottles of lubricant, boxes of condoms, and numerous used condoms visible to hotel employees entering the plaintiff's room, the plaintiff's physical appearance "showed signs of being trafficked," and a "constant and voluminous foot traffic of unregistered male guests entering and leaving" the plaintiff's room. *Id.* But the *A.B.* court concluded that these and other allegations were insufficient:

> [A]lthough Plaintiff's allegations indicate that Defendants had notice of sex trafficking generally occurring at their hotels, Plaintiff has not alleged facts which sufficiently link notice of Plaintiff A.B.'s sex trafficking to any of these Defendants[.]

*Id. See also A.B. v. Wyndham Hotels & Resorts, Inc.*, 532 F. Supp. 3d 1018, 1025-28 (D. Or. 2021) (finding that new allegations "regarding Defendants' alleged ability to monitor and track activities at their branded hotel locations" did not cure the deficiencies in the original complaint).

Notably, even these and other decisions applying the lower constructive knowledge standard recognize that "the complaint must contain facts sufficient to establish that the defendant knew or should have known ***about the trafficking of the plaintiff in particular – not about trafficking occurring on the premises in general***." *Doe v. Wyndham Hotels & Resorts, Inc.*, No. 4:19-CV-5016, 2021 U.S. Dist. LEXIS 64565, *4-6 (S.D. Tex. Mar. 30, 2021) (finding that plaintiff failed to plausibly allege any facts suggesting a "reasonable inference connecting [] Defendants specifically to Plaintiff's trafficking") (internal quotation marks

49

omitted); *see also Lundstrom v. Choice Hotels Int'l, Inc.*, No. 21-cv-00619-PAB-SKC, 2021 U.S. Dist. LEXIS 228651, *23 (D. Colo. Nov. 30, 2021) (allegations of "the prevalence of sex trafficking generally at [defendant's] hotels and in the hotel industry" was "not sufficient to show that defendant should have known about what happened to plaintiff"); *H.G. v. Inter-Cont'l Hotels Corp.*, 489 F. Supp. 3d 697, 705-06 (E.D. Mich. 2020) (finding that plaintiff failed to plausibly allege that the hotel franchisors knew or should have known "of sex trafficking *by the particular venture in which they allegedly participated*," *i.e.*, the venture involving the plaintiff); *J.L. v. Best Western Int'l, Inc.*, 521 F. Supp. 3d 1048, 1064 (D. Colo. 2021) (allegation that hotel franchisor was on "notice about the prevalence of sex trafficking generally at its hotel" was insufficient to show it "should have known about what happened to this plaintiff").

Moreover, even courts finding that plaintiffs *had* sufficiently alleged a TVPRA beneficiary claim agree that "general allegations about sex trafficking problems" are not sufficient to put defendants "on notice about the sex trafficking of this plaintiff." *J.C. v. Choice Hotels Int'l, Inc.*, No. 20-cv-00155-WHO, 2020 U.S. Dist. LEXIS 201073, *14-15 (N.D. Cal. Oct. 28, 2020) (finding that plaintiff had provided "plausible allegations to show that these defendants had actual and/or constructive knowledge about *her* sex trafficking"). Even the *Twitter* court – although it reached the incorrect conclusion about the appropriate knowledge

standard under Section 230(e)(5)(A) – held that the plaintiffs had to "allege at least that Twitter knew or should have known that Plaintiffs were the victims of sex trafficking at the hands of users who posted the content on Twitter." 555 F. Supp. 3d at 925.

Nor can Plaintiffs dismiss the import of these cases by asserting that they involved hotel franchisors, who were arguably one step removed from the alleged sex trafficking occurring at their franchisees' hotels. As stated in *Red Roof* and these other cases, the requirement that plaintiff must plausibly allege that the defendant had actual or constructive knowledge that the purported venture it participated in violated the TVPRA as to the particular plaintiff did not rest on the fact that the particular defendants at issue were hotel franchisors.

Here, like in *Red Roof*, the only venture Plaintiffs allege that Omegle participated in was a sex trafficking venture. (Appendix Vol. II at 20, 29-30.) Therefore, even assuming arguendo that *Red Roof*'s standards applied, Plaintiffs were required, but failed, to plausibly allege facts that support a reasonable inference that Omegle knew or should have known that it "took part in the common undertaking of sex trafficking" with C.H.'s alleged trafficker, the John Doe user. *Red Roof*, 21 F.4th at 726. The SAC alleges vaguely that Omegle participated "in one or more sex trafficking ventures" or "knowingly participate[d] in a sex trafficking venture" by purportedly allowing "cappers" to use its website

"to prey on unsuspecting children online." (Appendix Vol. II at 20, 29.) Although the SAC later alleges that Omegle "knew or should have known" that it participated in the alleged sex trafficking venture involving C.H. and the John Doe user, the allegations contain no facts; rather, they simply repeat the statutory language. (*See, e.g.*, *id.* at 30.)

The only allegations purporting to state facts with respect to Omegle's knowledge reference unrelated alleged incidents involving the misuse of its chat service by users (*see, e.g.*, *id.* at 22-23), which is the type of general knowledge this Court and other courts have found are insufficient to plausibly allege participation in a sex trafficking venture involving the specific plaintiff before the court. (*See also* Appellants' Brf. at 36 (asserting that the SAC plead that Omegle was "aware of 'cappers' and child sex abuse predators on their platform" and that "[s]uch knowledge makes them liable").)

*Amici* similarly assert – incorrectly – that allegations showing that "Omegle generally knew of the prevalence of sex trafficking and child exploitation on its website" and that "[C.H.] was trafficked . . . on Omegle's platform as a result" is insufficient to plead a plausible TVPRA claim. (NCOSE Brf. at 27.) But that assertion is inconsistent with the standards of *Red Roof* in that it fails to link that general (alleged) knowledge with any knowledge as to C.H.'s alleged trafficking by the John Doe user. *See also S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d

147, 154 (E.D.N.Y. 2020) (explaining that, to find franchisors liable "simply because they were generally aware that sex trafficking sometimes occurred on their franchisees' properties unjustifiably bridges the scienter gap between 'should have known' and 'might have been able to guess'"). Nor does *Tilton* – which did not involve Sections 1591 or 1595 – demonstrate that the SAC plausibly alleged the knowledge required for a TVPRA claim. (*See* Appellants' Brf. at 36.)

In short, the SAC is devoid of any factual allegations that Omegle had "either actual or constructive knowledge that the venture – in which it voluntarily participated and from which it knowingly benefited – violated the TVPRA *as to the plaintiff*." *Red Roof*, 21 F.4th at 725 (emphasis added).

Finally, although it says nothing about whether the SAC plausibly alleges a claim for relief, Plaintiffs and *Amici* suggest that the District Court improperly dismissed the SAC without allowing discovery. (*See, e.g.*, Appellants' Brf. at 22; Child USA Brf. at 33-34.) But "[d]iscovery . . . is not a device to enable a plaintiff to make a case when his complaint has failed to state a claim." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997) (internal quotation marks omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."). Therefore, Plaintiffs, like any other plaintiff, are not entitled to

discovery where, as here, they have failed to state plausible claims for relief despite several opportunities to do so.

## CONCLUSION

For at least the foregoing reasons, the Court should affirm the District Court's order dismissing the SAC with prejudice.

Dated: June 17, 2022                    Respectfully submitted,

FOCAL PLLC                              THOMAS & LoCICERO PL

By:  s/ *Stacia N. Lay*                By:  s/ *James J. McGuire*
     s/ *Venkat Balasubramani*              James J. McGuire (FBN 187798)
     s/ *Kimberlee Gunning*                 601 South Boulevard
     Stacia N. Lay, *Pro Hac Vice*          Tampa, Florida 33606
     Venkat Balasubramani, *Pro Hac Vice*   Telephone: (813) 984-3060
     Kimberlee Gunning, *Pro Hac Vice*      jmcguire@tlolawfirm.com
     900 1st Avenue S., Suite 201
     Seattle, Washington 98134        By:  s/ *Daniela B. Abratt*
     Telephone: (206) 529-4827             Daniela B. Abratt (FBN 118053)
     stacia@focallaw.com                   915 Middle River Dr., Suite 309
     venkat@focallaw.com                   Fort Lauderdale, Florida 33304
     kim@focallaw.com                      Telephone: (954) 703-3416
                                           dabratt@tlolawfirm.com

Attorneys for Appellee Omegle.com LLC

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

This brief complies with the type-volume limit of FED. R. APP.

P. 32(a)(7)(B)(i) because, excluding the parts of the brief excluded by FED. R. APP.

P. 32(f) and 11th Cir. R. 32-4, it contains 12,887 words.

This brief complies with the typeface requirements of FED. R. APP.

P. 32(a)(5) and the type-style requirements of FED. R. APP. P. 32(a)(6) because it

has been prepared in a proportionally spaced typeface using Microsoft Word in 14-

point, Times New Roman font.

Dated: June 17, 2022

Respectfully submitted,

By: s/ *Stacia N. Lay*
    Stacia N. Lay, *Pro Hac Vice*
    Venkat Balasubramani, *Pro Hac Vice*
    Kimberlee Gunning, *Pro Hac Vice*
    FOCAL PLLC
    900 1st Avenue S., Suite 201
    Seattle, Washington 98134
    Telephone: (206) 529-4827
    stacia@focallaw.com
    venkat@focallaw.com
    kim@focallaw.com

    Attorneys for Appellee Omegle.com LLC

## CERTIFICATE OF SERVICE

I hereby certify that on June 17, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: June 17, 2022                          Respectfully submitted,

By: s/ *Stacia N. Lay*
    Stacia N. Lay, *Pro Hac Vice*
    Venkat Balasubramani, *Pro Hac Vice*
    Kimberlee Gunning, *Pro Hac Vice*
    FOCAL PLLC
    900 1st Avenue S., Suite 201
    Seattle, Washington 98134
    Telephone: (206) 529-4827
    stacia@focallaw.com
    venkat@focallaw.com
    kim@focallaw.com

    Attorneys for Appellee Omegle.com LLC

**STATUTORY ADDENDUM**

## 18 U.S.C. § 1591. Sex trafficking
## of children or by force, fraud, or coercion.

**(a)** Whoever knowingly—

**(1)** in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or

**(2)** benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),

knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

**(b)** The punishment for an offense under subsection (a) is—

**(1)** if the offense was effected by means of force, threats of force, fraud, or coercion described in subsection (e)(2), or by any combination of such means, or if the person recruited, enticed, harbored, transported, provided, obtained, advertised, patronized, or solicited had not attained the age of 14 years at the time of such offense, by a fine under this title and imprisonment for any term of years not less than 15 or for life; or

**(2)** if the offense was not so effected, and the person recruited, enticed, harbored, transported, provided, obtained, advertised, patronized, or solicited had attained the age of 14 years but had not attained the age of 18 years at the time of such offense, by a fine under this title and imprisonment for not less than 10 years or for life.

**(c)** In a prosecution under subsection (a)(1) in which the defendant had a reasonable opportunity to observe the person so recruited, enticed, harbored, transported, provided, obtained, maintained, patronized, or solicited, the Government need not prove that the defendant knew, or recklessly disregarded the fact, that the person had not attained the age of 18 years.

**(d)** Whoever obstructs, attempts to obstruct, or in any way interferes with or prevents the enforcement of this section, shall be fined under this title, imprisoned for a term not to exceed 25 years, or both.

**(e)**  In this section:

**(1)**  The term "abuse or threatened abuse of law or legal process" means the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action.

**(2)**  The term "coercion" means—

    **(A)**  threats of serious harm to or physical restraint against any person;

    **(B)**  any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person; or

    **(C)**  the abuse or threatened abuse of law or the legal process.

**(3)**  The term "commercial sex act" means any sex act, on account of which anything of value is given to or received by any person.

**(4)**  The term "participation in a venture" means knowingly assisting, supporting, or facilitating a violation of subsection (a)(1).

**(5)**  The term "serious harm" means any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity in order to avoid incurring that harm.

**(6)**  The term "venture" means any group of two or more individuals associated in fact, whether or not a legal entity.

**18 U.S.C. § 1595. Civil remedy.**

**(a)**  An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

**(b)**

    **(1)**  Any civil action filed under subsection (a) shall be stayed during the pendency of any criminal action arising out of the same occurrence in which the claimant is the victim.

    **(2)**  In this subsection, a "criminal action" includes investigation and prosecution and is pending until final adjudication in the trial court.

**(c)**  No action may be maintained under subsection (a) unless it is commenced not later than the later of—

    **(1)**  10 years after the cause of action arose; or

    **(2)**  10 years after the victim reaches 18 years of age, if the victim was a minor at the time of the alleged offense.

**(d)**  In any case in which the attorney general of a State has reason to believe that an interest of the residents of that State has been or is threatened or adversely affected by any person who violates section 1591, the attorney general of the State, as parens patriae, may bring a civil action against such person on behalf of the residents of the State in an appropriate district court of the United States to obtain appropriate relief.

## 18 U.S.C. § 2252A. Certain activities relating
## to material constituting or containing child pornography.

**(a)** Any person who—

> **(1)** knowingly mails, or transports or ships using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, any child pornography;

> **(2)** knowingly receives or distributes—

>> **(A)** any child pornography using any means or facility of interstate or foreign commerce or that has been mailed, or has been shipped or transported in or affecting interstate or foreign commerce by any means, including by computer; or

>> **(B)** any material that contains child pornography using any means or facility of interstate or foreign commerce or that has been mailed, or has been shipped or transported in or affecting interstate or foreign commerce by any means, including by computer;

> **(3)** knowingly—

>> **(A)** reproduces any child pornography for distribution through the mails, or using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer; or

>> **(B)** advertises, promotes, presents, distributes, or solicits through the mails, or using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, any material or purported material in a manner that reflects the belief, or that is intended to cause another to believe, that the material or purported material is, or contains—

>>> **(i)** an obscene visual depiction of a minor engaging in sexually explicit conduct; or

>>> **(ii)** a visual depiction of an actual minor engaging in sexually explicit conduct;

> **(4)** either—

>> **(A)** in the special maritime and territorial jurisdiction of the United States, or on any land or building owned by, leased to, or otherwise used by or under the control of the United States Government, or in

61

the Indian country (as defined in section 1151), knowingly sells or possesses with the intent to sell any child pornography; or

(B)  knowingly sells or possesses with the intent to sell any child pornography that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer;

(5)  either—

(A)  in the special maritime and territorial jurisdiction of the United States, or on any land or building owned by, leased to, or otherwise used by or under the control of the United States Government, or in the Indian country (as defined in section 1151), knowingly possesses, or knowingly accesses with intent to view, any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography; or

(B)  knowingly possesses, or knowingly accesses with intent to view, any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer;

(6)  knowingly distributes, offers, sends, or provides to a minor any visual depiction, including any photograph, film, video, picture, or computer generated image or picture, whether made or produced by electronic, mechanical, or other means, where such visual depiction is, or appears to be, of a minor engaging in sexually explicit conduct—

(A)  that has been mailed, shipped, or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer;

(B)  that was produced using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer; or

**(C)** which distribution, offer, sending, or provision is accomplished using the mails or any means or facility of interstate or foreign commerce,

for purposes of inducing or persuading a minor to participate in any activity that is illegal; or

**(7)** knowingly produces with intent to distribute, or distributes, by any means, including a computer, in or affecting interstate or foreign commerce, child pornography that is an adapted or modified depiction of an identifiable minor.

shall be punished as provided in subsection (b); or

**(b)**

**(1)** Whoever violates, or attempts or conspires to violate, paragraph (1), (2), (3), (4), or (6) of subsection (a) shall be fined under this title and imprisoned not less than 5 years and not more than 20 years, but, if such person has a prior conviction under this chapter, section 1591, chapter 71, chapter 109A, or chapter 117, or under section 920 of title 10 (article 120 of the Uniform Code of Military Justice), or under the laws of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward, or the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography, or sex trafficking of children, such person shall be fined under this title and imprisoned for not less than 15 years nor more than 40 years.

**(2)** Whoever violates, or attempts or conspires to violate, subsection (a)(5) shall be fined under this title or imprisoned not more than 10 years, or both, but, if any image of child pornography involved in the offense involved a prepubescent minor or a minor who had not attained 12 years of age, such person shall be fined under this title and imprisoned for not more than 20 years, or if such person has a prior conviction under this chapter, chapter 71, chapter 109A, or chapter 117, or under section 920 of title 10 (article 120 of the Uniform Code of Military Justice), or under the laws of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward, or the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography, such person shall be fined under this title and imprisoned for not less than 10 years nor more than 20 years.

**(3)** Whoever violates, or attempts or conspires to violate, subsection (a)(7) shall be fined under this title or imprisoned not more than 15 years, or both.

**(c)** It shall be an affirmative defense to a charge of violating paragraph (1), (2), (3)(A), (4), or (5) of subsection (a) that—

> **(1)**
>
>> **(A)** the alleged child pornography was produced using an actual person or persons engaging in sexually explicit conduct; and
>>
>> **(B)** each such person was an adult at the time the material was produced; or
>
> **(2)** the alleged child pornography was not produced using any actual minor or minors.

No affirmative defense under subsection (c)(2) shall be available in any prosecution that involves child pornography as described in section 2256(8)(C). A defendant may not assert an affirmative defense to a charge of violating paragraph (1), (2), (3)(A), (4), or (5) of subsection (a) unless, within the time provided for filing pretrial motions or at such time prior to trial as the judge may direct, but in no event later than 14 days before the commencement of the trial, the defendant provides the court and the United States with notice of the intent to assert such defense and the substance of any expert or other specialized testimony or evidence upon which the defendant intends to rely. If the defendant fails to comply with this subsection, the court shall, absent a finding of extraordinary circumstances that prevented timely compliance, prohibit the defendant from asserting such defense to a charge of violating paragraph (1), (2), (3)(A), (4), or (5) of subsection (a) or presenting any evidence for which the defendant has failed to provide proper and timely notice.

**(d) Affirmative defense.** It shall be an affirmative defense to a charge of violating subsection (a)(5) that the defendant—

> **(1)** possessed less than three images of child pornography; and
>
> **(2)** promptly and in good faith, and without retaining or allowing any person, other than a law enforcement agency, to access any image or copy thereof—
>
>> **(A)** took reasonable steps to destroy each such image; or
>>
>> **(B)** reported the matter to a law enforcement agency and afforded that agency access to each such image.

**(e) Admissibility of evidence.** On motion of the government, in any prosecution under this chapter or section 1466A, except for good cause shown, the name, address, social security number, or other nonphysical identifying information, other than the age or approximate age, of any minor who is depicted in any child

pornography shall not be admissible and may be redacted from any otherwise admissible evidence, and the jury shall be instructed, upon request of the United States, that it can draw no inference from the absence of such evidence in deciding whether the child pornography depicts an actual minor.

**(f) Civil remedies.**

> **(1)**  In general. Any person aggrieved by reason of the conduct prohibited under subsection (a) or (b) or section 1466A may commence a civil action for the relief set forth in paragraph (2).

> **(2)**  Relief. In any action commenced in accordance with paragraph (1), the court may award appropriate relief, including—

>> **(A)**  temporary, preliminary, or permanent injunctive relief;

>> **(B)**  compensatory and punitive damages; and

>> **(C)**  the costs of the civil action and reasonable fees for attorneys and expert witnesses.

**(g) Child exploitation enterprises.**

> **(1)**  Whoever engages in a child exploitation enterprise shall be fined under this title and imprisoned for any term of years not less than 20 or for life.

> **(2)**  A person engages in a child exploitation enterprise for the purposes of this section if the person violates section 1591, section 1201 if the victim is a minor, or chapter 109A (involving a minor victim), 110 (except for sections 2257 and 2257A), or 117 (involving a minor victim), as a part of a series of felony violations constituting three or more separate incidents and involving more than one victim, and commits those offenses in concert with three or more other persons.

## 18 U.S.C. § 2255. Civil remedy for personal injuries.

**(a) In general.**   Any person who, while a minor, was a victim of a violation of section 1589, 1590, 1591, 2241(c), 2242, 2243, 2251, 2251A, 2252, 2252A, 2260, 2421, 2422, or 2423 of this title and who suffers personal injury as a result of such violation, regardless of whether the injury occurred while such person was a minor, may sue in any appropriate United States District Court and shall recover the actual damages such person sustains or liquidated damages in the amount of $150,000, and the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred. The court may also award punitive damages and such other preliminary and equitable relief as the court determines to be appropriate.

**(b) Statute of limitations.**   Any action commenced under this section shall be barred unless the complaint is filed—

> **(1)**  not later than 10 years after the date on which the plaintiff reasonably discovers the later of—

>> **(A)**  the violation that forms the basis for the claim; or

>> **(B)**  the injury that forms the basis for the claim; or

> **(2)**  not later than 10 years after the date on which the victim reaches 18 years of age.

**(c) Venue; service of process.**

> **(1)**  Venue. Any action brought under subsection (a) may be brought in the district court of the United States that meets applicable requirements relating to venue under section 1391 of title 28.

> **(2)**  Service of process. In an action brought under subsection (a), process may be served in any district in which the defendant—

>> **(A)**  is an inhabitant; or

>> **(B)**  may be found.

66

### 47 U.S.C. § 230. Protection for private
### blocking and screening of offensive material.

**(a) Findings.**   The Congress finds the following:

**(1)**  The rapidly developing array of Internet and other interactive computer services available to individual Americans represent an extraordinary advance in the availability of educational and informational resources to our citizens.

**(2)**  These services offer users a great degree of control over the information that they receive, as well as the potential for even greater control in the future as technology develops.

**(3)**  The Internet and other interactive computer services offer a forum for a true diversity of political discourse, unique opportunities for cultural development, and myriad avenues for intellectual activity.

**(4)**  The Internet and other interactive computer services have flourished, to the benefit of all Americans, with a minimum of government regulation.

**(5)**  Increasingly Americans are relying on interactive media for a variety of political, educational, cultural, and entertainment services.

**(b) Policy.**   It is the policy of the United States—

**(1)**  to promote the continued development of the Internet and other interactive computer services and other interactive media;

**(2)**  to preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation;

**(3)**  to encourage the development of technologies which maximize user control over what information is received by individuals, families, and schools who use the Internet and other interactive computer services;

**(4)**  to remove disincentives for the development and utilization of blocking and filtering technologies that empower parents to restrict their children's access to objectionable or inappropriate online material; and

**(5)**  to ensure vigorous enforcement of Federal criminal laws to deter and punish trafficking in obscenity, stalking, and harassment by means of computer.

**(c) Protection for "Good Samaritan" blocking and screening of offensive material.**

**(1)** Treatment of publisher or speaker. No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.

**(2)** Civil liability. No provider or user of an interactive computer service shall be held liable on account of—

**(A)** any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected; or

**(B)** any action taken to enable or make available to information content providers or others the technical means to restrict access to material described in paragraph (1) [subparagraph (A)].

**(d) Obligations of interactive computer service.**  A provider of interactive computer service shall, at the time of entering an agreement with a customer for the provision of interactive computer service and in a manner deemed appropriate by the provider, notify such customer that parental control protections (such as computer hardware, software, or filtering services) are commercially available that may assist the customer in limiting access to material that is harmful to minors. Such notice shall identify, or provide the customer with access to information identifying, current providers of such protections.

**(e) Effect on other laws.**

**(1)** No effect on criminal law. Nothing in this section shall be construed to impair the enforcement of section 223 or 231 of this Act, chapter 71 (relating to obscenity) or 110 (relating to sexual exploitation of children) of title 18, United States Code, or any other Federal criminal statute.

**(2)** No effect on intellectual property law. Nothing in this section shall be construed to limit or expand any law pertaining to intellectual property.

**(3)** State law. Nothing in this section shall be construed to prevent any State from enforcing any State law that is consistent with this section. No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section.

**(4)** No effect on communications privacy law. Nothing in this section shall be construed to limit the application of the Electronic Communications

Privacy Act of 1986 or any of the amendments made by such Act, or any similar State law.

**(5)** No effect on sex trafficking law. Nothing in this section (other than subsection (c)(2)(A)) shall be construed to impair or limit—

> **(A)** any claim in a civil action brought under section 1595 of title 18, United States Code, if the conduct underlying the claim constitutes a violation of section 1591 of that title;
>
> **(B)** any charge in a criminal prosecution brought under State law if the conduct underlying the charge would constitute a violation of section 1591 of title 18, United States Code; or
>
> **(C)** any charge in a criminal prosecution brought under State law if the conduct underlying the charge would constitute a violation of section 2421A of title 18, United States Code, and promotion or facilitation of prostitution is illegal in the jurisdiction where the defendant's promotion or facilitation of prostitution was targeted.

**(f) Definitions.**   As used in this section:

> **(1)** Internet. The term "Internet" means the international computer network of both Federal and non-Federal interoperable packet switched data networks.
>
> **(2)** Interactive computer service. The term "interactive computer service" means any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions.
>
> **(3)** Information content provider. The term "information content provider" means any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service.
>
> **(4)** Access software provider. The term "access software provider" means a provider of software (including client or server software), or enabling tools that do any one or more of the following:
>
> > **(A)** filter, screen, allow, or disallow content;
> >
> > **(B)** pick, choose, analyze, or digest content; or

(**C**)  transmit, receive, display, forward, cache, search, subset, organize, reorganize, or translate content.