No. 22-10338

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

M.H., et al.,

*Plaintiffs-Appellants*,

v.

OMEGLE.COM LLC,

*Defendant-Appellee*.

On Appeal From the United States District Court
for the Middle District of Florida
Case No. 21-cv-814 (Hon. Virginia Covington)

## BRIEF FOR *AMICUS CURIAE* CHAMBER OF PROGRESS
## IN SUPPORT OF AFFIRMANCE

Andrew J. Pincus
MAYER BROWN LLP
1999 K Street, N.W.
Washington, DC 20006
(202) 263-3000
apincus@mayerbrown.com

Avi M. Kupfer
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
akupfer@mayerbrown.com

*Counsel for* Amicus Curiae

No. 22-10338
*M.H. v. Omegle.com LLC*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to 11th Circuit Rules 26.1-1 to 26.1-3, *amicus* submits the following certificate of interested persons who are known to the undersigned and were omitted from previously filed briefs. *See* 11th Cir. R. 26.1-2(b).

- Chamber of Progress – *amicus curiae*

- Kupfer, Avi M. – attorney for *amicus curiae*

- Mayer Brown LLP – attorneys for *amicus curiae*

- Pincus, Andrew J. – attorney for *amicus curiae*

Pursuant to Federal Rule of Appellate Procedure 26.1, *amicus curiae* certifies that no parent corporation or publicly held corporation owns 10% or more of its stock.

/s/ *Andrew J. Pincus*
Andrew J. Pincus

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT ................................. i

TABLE OF CONTENTS ......................................................... i

TABLE OF AUTHORITIES ..................................................... ii

INTEREST OF *AMICUS CURIAE* ......................................... 1

STATEMENT OF THE ISSUES .............................................. 2

SUMMARY OF ARGUMENT ................................................. 2

ARGUMENT ..................................................................... 6

THE DISTRICT COURT CORRECTLY HELD THAT SECTION
230 BARS APPELLANTS' CLAIMS.

    A.    The Relevant Statutory Provisions ....................................... 8

    B.    The Sex-Trafficking Exception To Section 230
Immunity Applies Only When The Defendant's Own
Conduct Violates 18 U.S.C. § 1591. ................................... 11

        1.    Text ................................................................. 12

        2.    Statutory context ................................................. 19

            a.    *Evolution of the statutory text* ........................... 19

            b.    *Legislative purpose* .......................................... 26

    C.    The Criminal-Law Exception To Section 230 Immunity
Applies Only To Federal Government Enforcement
Actions. ................................................................. 32

CONCLUSION ................................................................ 34

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases**                                                    **Page(s)**

*Abramski v. United States,*
    573 U.S. 169 (2014) ................................................................ 19

*Almeida v. Amazon.com, Inc.,*
    456 F.3d 1316 (11th Cir. 2006) ............................................. 7

*Barnes v. Yahoo!, Inc.,*
    570 F.3d 1096 (9th Cir. 2009) ......................................... 6, 26

*Bennett v. Google, LLC,*
    882 F.3d 1163 (D.C. Cir. 2018) .................................... 26, 28

*Doe v. Kik Interactive, Inc.,*
    482 F. Supp. 3d 1242 (S.D. Fla. 2020) .................... 14, 21, 24

*Doe v. MySpace, Inc.,*
    528 F.3d 413 (5th Cir. 2008) ................................................ 7

*Doe v. Twitter, Inc.,*
    555 F. Supp. 3d 889 (N.D. Cal. 2021) .................... 18, 19, 29

*Doe #1 v. MG Freesites, LTD,*
    No. 21-cv-220, 2022 WL 407147 (N.D. Ala. Feb. 9, 2022) .................. 34

*Doe #1 v. Red Roof Inns, Inc.,*
    21 F.4th 714 (11th Cir. 2021) ............................................. 18

*Eldred v. Ashcroft,*
    537 U.S. 186 (2003) ............................................................ 26

*G.G. v. Salesforce.com, Inc.,*
    No. 20-cv-2335, 2022 WL 1541408
    (N.D. Ill. May 16, 2022) .............................................. 15, 25

*Gonzalez v. Google LLC,*
    2 F.4th 871 (9th Cir. 2021) .................................... 7, 26, 34

# TABLE OF AUTHORITIES
## (continued)

**Cases (continued)**                                                   **Page(s)**

*Gundy v. United States*,
　139 S. Ct. 2116 (2019) .......................................................................... 14

*Henson v. Santander Consumer USA Inc.*,
　137 S. Ct. 1718 (2017) .......................................................................... 15

*Hepp v. Facebook*,
　14 F.4th 204 (3d Cir. 2021) .................................................................. 31

*J.B. v. G6 Hosp., LLC*,
　No. 19-cv-7848, 2021 WL 4079207
　(N.D. Cal. Sept. 8, 2021) .................................. 13, 15, 17, 19, 22, 23, 30

*Jane Doe No. 1 v. Backpage.com, LLC*,
　817 F.3d 12 (1st Cir. 2016) ........................................................... 33, 34

*Jones v. Dirty World Ent. Recordings LLC*,
　755 F.3d 398 (6th Cir. 2014) ................................................................. 29

*King v. Burwell*,
　576 U.S. 473 (2015) .............................................................................. 14

*M.H. v. Omegle.com, LLC*,
　No. 21-cv-814, 2022 WL 93575 (M.D. Fla. Jan. 10, 2022) ................ 11

*O'Kroley v. Fastcase, Inc.*,
　831 F.3d 352 (6th Cir. 2016) ................................................................... 7

*Pinter v. Dahl*,
　486 U.S. 622 (1988) .............................................................................. 30

*Safe Food & Fertilizer v. EPA*,
　350 F.3d 1263 (D.C. Cir. 2003)) ........................................................... 33

*TransUnion LLC v. Ramirez*,
　141 S. Ct. 2190 (2021) .......................................................................... 17

**Statutes and court rules**

18 U.S.C. § 1591 ............................................................... 2, 3, 11, 14, 15

## TABLE OF AUTHORITIES
### (continued)

**States and court rules (continued)**                                     **Page(s)**

18 U.S.C. § 1591(a) ............................................................................. 27

18 U.S.C. § 1591(a)(1) ......................................................................... 9

18 U.S.C. § 1591(a)(2) ..................................................................... 9, 20

18 U.S.C. § 1595(a) ...................................................... 2, 3, 8, 14, 18, 20

18 U.S.C. § 1595(d) ................................................................. 10, 16, 17

18 U.S.C. § 2255(a) ........................................................................... 32

18 U.S.C. § 2421A ......................................................................... 10, 15

18 U.S.C. § 2511 ............................................................................... 33

18 U.S.C. § 2520 ............................................................................... 33

47 U.S.C. § 223 ................................................................................. 32

47 U.S.C. § 230 ................................................................................... 3

47 U.S.C. § 230(b) ......................................................................... 6, 31

47 U.S.C. § 230(b)(2) ........................................................................... 2

47 U.S.C. § 230(b)(5) ........................................................................... 2

47 U.S.C. § 230(c)(1) ..................................................................... 7, 28

47 U.S.C. § 230(c)(1)-(2) ................................................................... 12

47 U.S.C. § 230(c)(2) ........................................................................... 7

47 U.S.C. § 230(c)(2)(A) ..................................................................... 28

47 U.S.C. § 230(d) ............................................................................. 12

47 U.S.C. § 230(e)(1) ................................................... 2, 6, 10, 32, 33

47 U.S.C. § 230(e)(1)-(2) ................................................................... 10

# TABLE OF AUTHORITIES
## (continued)

**States and court rules (continued)**                                    **Page(s)**

47 U.S.C. § 230(e)(2) ................................................................... 13

47 U.S.C. § 230(e)(4) ............................................................. 10, 33

47 U.S.C. § 230(e)(5)(A) ................................................. 2, 3, 11, 12

47 U.S.C. § 230(e)(5)(B)-(C) ................................................. 10, 15

47 U.S.C. § 230(f)(2) ..................................................................... 1

47 U.S.C. § 231 ............................................................................ 32

Allow States and Victims to Fight Online Sex Trafficking
   Act, Pub. L. No. 115-164, 132 Stat. 1253 (2018) ................................ 10

Communications Decency Act of 1996, Pub. L. No. 104-104,
   Tit. V, 110 Stat. 133 ................................................................. 6

Fed. R. App. P. 29(a)(4)(E) ......................................................... 1

Fed. R. Civ. P. 8 ......................................................................... 15

Fed. R. Crim. P. 3 ...................................................................... 15

Fed. R. Crim. P. 7(c)(1) ............................................................. 15

**Other authorities**

164 Cong. Rec. S1849 (Mar. 21, 2018) ....................................... 24

*Black's Law Dictionary* (11th ed. 2019) ................................ 15, 32

H.R. 1865, 115th Cong. (Jan. 20, 2018) ..................................... 24

H.R. 1865, 115th Cong. (Apr. 3, 2017) ....................................... 24

H.R. Rep. No. 115-572 (2018) ..................................................... 25

H.R. Rep. No. 115-583 (2018) ..................................................... 25

# TABLE OF AUTHORITIES
## (continued)

**Other authorities (continued)**                      **Page(s)**

*Hearing on S. 1693, The Stop Enabling Sex Traffickers Act of 2017 Before the S. Comm. on Commerce, Sci., and Transp.*, 115th Cong. (2017) ................................................... 22, 23, 31

Karen Gullo & David Greene, Elec. Frontier Found., *With FOSTA Already Leading To Censorship, Plaintiffs Are Seeking Reinstatement Of Their Lawsuit Challenging The Law's Constitutionality* (Mar. 1, 2019) .............................................. 28

Note, *Section 230 as First Amendment Rule*, 131 Harv. L. Rev. 2027 (2018) ........................................... 29

S. 1693, 115th Cong. (Jan. 10, 2018) .............................................. 20, 23

S. 1693, 115th Cong. (Aug. 1, 2017) ...................................................... 22

S. Rep. No. 115-199 (2018) ................................................... 20, 21, 29-31

## INTEREST OF *AMICUS CURIAE*[1]

Chamber of Progress is a technology industry coalition that advocates in favor of public policies that will produce a fair, inclusive country in which all people benefit from technological advances. Its work is supported by corporate partners many of whom are "interactive computer services" within the meaning of 47 U.S.C. § 230(f)(2).[2] It has a substantial interest in ensuring that consumers have access to a healthy online environment where they can work, play, learn, shop, connect, and communicate without harassment, disinformation, and incendiary content.

Appellants' broad interpretations of 47 U.S.C. § 230(e)(1) and (5)(A) pose a direct threat to the safe online communities that *amicus* and its partners strive to build. The success of those communities depends on the careful balance Congress struck in Section 230 between preserving

---

[1] No counsel for a party authored this brief in whole or in part, and no entity or person, aside from *amicus curiae*, its members, and its counsel, made any monetary contribution intended to fund the preparation or submission of this brief. *See* Fed. R. App. P. 29(a)(4)(E). All parties have consented to the filing of this brief.

[2] Chamber of Progress's partner companies are listed at progresschamber.org. Partner companies do not sit on the Chamber's board of directors and have no vote on, or veto power over, its positions.

"the vibrant and competitive free market that presently exists for the Internet," and deterring and punishing those who "traffic[] in obscenity." 47 U.S.C. § 230(b)(2), (5). *Amicus* therefore has a substantial interest in the outcome of this case, which will impact the ability of its partners to offer and improve—and of consumers to access and contribute to—safe online platforms.

## STATEMENT OF THE ISSUES

1. Whether the exception to immunity under the Communications Decency Act for certain private actions arising under 18 U.S.C. § 1595(a), 47 U.S.C. § 230(e)(5)(A), applies only when an interactive computer service's own conduct violates 18 U.S.C. § 1591.

2. Whether the exception to immunity under the Communications Decency Act for "the enforcement of" certain criminal statutes and chapters of Title 18, "or any other Federal criminal statute," 47 U.S.C. § 230(e)(1), applies only to federal government enforcement actions.

## SUMMARY OF ARGUMENT

Sex trafficking and child sexual exploitation are serious societal issues. Enforcing laws against, and taking action to curtail, these offenses are critically important to protect children. This case presents extremely important questions about the circumstances in which an

2

interactive computer service may be held liable based on harmful material posted on its platform by someone else.

The Communications Decency Act of 1996 generally immunizes interactive computer services from liability for online content posted by their users. 47 U.S.C. § 230. In 2018, Congress enacted a narrow immunity exception, *id.* § 230(e)(5)(A), for certain private actions arising under 18 U.S.C. § 1595(a).

Section 1595(a) creates a civil action for sex-trafficking victims against perpetrators of that crime and anyone who knowingly benefits from participation in a venture that they should have known was engaging in sex trafficking. The 2018 law, in Section 230(e)(5)(A), establishes an immunity exception for Section 1595(a) claims against an interactive computer service "if the conduct underlying the claim constitutes a violation of" the criminal sex-trafficking provision, 18 U.S.C. § 1591.

The district court correctly held that the Section 230 immunity exception applies only when the interactive computer service's own conduct violates Section 1591—that the provision's elimination of immunity when "the conduct underlying the claim constitutes a violation

of" Section 1591 requires conduct by the interactive computer service that constitutes a crime under Section 1591.

The entire focus of Section 230 is the service's conduct. It would not make sense for a statute with that sole focus to use the word "conduct" to encompass third-party conduct. If Congress had meant to write a broader exception, it would have used different language.

In addition, other exclusions from Section 230 immunity enacted at the same time as Section 230(e)(5)(A) plainly use "conduct underlying" to mean only a service's conduct. Appellants' reading of Section 230(e)(5)(A) would give private plaintiffs authority more expansive than that of state attorneys general, which would be nonsensical given the importance of government enforcement in this area.

The legislative history and purpose of the immunity exception also support the narrower reading. The committee report that introduced the "conduct underlying" language makes clear that Congress's intent was to target interactive computer services that themselves violate Section 1591.

Further, Appellants' expansive reading of the exception would undermine a central purpose of the Communications Decency Act: to

encourage interactive computer services to moderate harmful user content posted to their platforms. Services' failures to address particular instances of misuse of their platforms could be used against them if liability could be premised on the criminal acts of third parties, rather than only on the service's criminal conduct—which would create a significant disincentive for services to engage in content moderation activities. Congress therefore balanced the relevant policy goals by enacting a narrow exception.

Appellants' approach also would prevent the Act from accomplishing its goal of promoting, and not chilling, legitimate speech. The potential for broad tort liability based on content posted to online platforms by millions of people would force interactive computer services to adopt broad restrictions on users to avoid potential liability and litigation expense. Those restrictions would sweep in content protected by the First Amendment, not just conduct violative of Section 1591, undermining the Act's success in making interactive computer services robust forums for expression.

A separate exception to Section 230 immunity, titled "No effect on criminal law," states that Section 230 does not "impair the enforcement"

of specified criminal statutes, two chapters of Title 18, "or any other Federal criminal statute."   47 U.S.C. § 230(e)(1).   That immunity exception does not apply to Appellants' civil claims.   The text of the statute makes clear that this exception applies only to the federal government's enforcement of criminal laws, not to civil actions brought by private parties.

## ARGUMENT

## THE DISTRICT COURT CORRECTLY HELD THAT SECTION 230 BARS APPELLANTS' CLAIMS.

Congress enacted the Communications Decency Act of 1996 (CDA), Pub. L. No. 104-104, Tit. V, 110 Stat. 133, to advance "two parallel goals," *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1099 (9th Cir. 2009).   First, promoting "the continued development of the Internet" and its "vibrant and competitive free market"; and, second, "encourag[ing] the development of" user-control technologies.   47 U.S.C. § 230(b).   Congress also sought to encourage interactive computer services to take steps to moderate user-posted content by removing the risk that those actions could result in liability.   *Id.*

"To avoid chilling speech, Congress made a policy choice not to deter harmful online speech through the separate route of imposing tort

liability on companies that serve as intermediaries for other parties' potentially injurious messages." *Gonzalez v. Google LLC*, 2 F.4th 871, 886 (9th Cir. 2021) (internal quotation marks and ellipsis omitted).

The operative provision of the CDA, 47 U.S.C. § 230(c)(1), states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  It establishes "broad federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service."[3] *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1321 (11th Cir. 2006) (internal quotation marks omitted); *see also, e.g.*, *O'Kroley v. Fastcase, Inc.*, 831 F.3d 352, 354-55 (6th Cir. 2016); *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008).

Congress has created several narrow exceptions to Section 230 immunity.  This case requires the Court to interpret two of those

---

[3] *Amici* supporting Appellants erroneously assert that "immunity is only triggered by good-faith removal of offending content."  Nat'l Ctr. Of Sexual Exploitation *Amicus* Br. 12-13.  That reference to 47 U.S.C. § 230(c)(2) ignores the statute's first immunity provision, discussed above, that provides immunity from causes of action that would "treat[]" a service "as the publisher or speaker of any information provided by" a third party, *id.* § 230(c)(1).

exceptions. This brief first discusses the relevant statutory background. It then explains why the first immunity exception at issue subjects interactive computer services to civil liability only if they engage in conduct that constitutes a federal sex-trafficking crime but continues to protect services against civil liability for sex-trafficking crimes committed by those who use their platforms. The brief also explains why the exception for enforcement of criminal laws applies to federal government enforcement actions, and not private civil claims.

### A.    The Relevant Statutory Provisions.

**<u>Federal Private Action for Sex Trafficking</u>**. Chapter 77 of Title 18 of the U.S. Code contains criminal offenses related to peonage, slavery, and human trafficking. Section 1595(a) creates a civil cause of action for victims of violations of Chapter 77.

Section 1595(a) specifies two different categories of defendants subject to civil liability: (1) "the perpetrator" of "a violation of" Chapter 77; and (2) "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of" Chapter 77. 18 U.S.C. § 1595(a).

Sex trafficking is one of the Chapter 77 offenses for which Section 1595(a) creates civil liability—based on the criminal offense established in Section 1591 of Title 18.  That provision criminalizes knowingly "recruit[ing], entic[ing], harbor[ing], transport[ing], provid[ing], obtain[ing], advertis[ing], maintain[ing], patroniz[ing], or solicit[ing] by any means a person" knowing, or in reckless disregard of the fact, that the person will be forced to engage in a commercial sex act.  18 U.S.C. § 1591(a)(1).  It also prohibits knowingly "benefit[ing], financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of" Section 1591(a)(1) knowing, or acting in reckless disregard of, the fact that an individual would be forced to engage in a commercial sex act.  *Id.* § 1591(a)(2).  The mens rea requirement for criminal liability on a "beneficiary" theory is significantly more demanding than the mental state required for Section 1595(a) civil liability on that theory.

**Limitation on Section 230 Immunity**.  As originally enacted, Section 230 contained several exemptions to its immunity provisions— stating that the statutory immunity should not be construed to impair the enforcement of federal criminal statutes, limit intellectual property

laws, or limit the application of certain communications-privacy laws. 47 U.S.C. § 230(e)(1)-(2), (4). One of those provisions is at issue in this case. It is titled "No effect on criminal law," and it provides that Section 230 immunity does not "impair the enforcement of section 223 or 231 of . . . title [47], chapter 71 (relating to obscenity) or 110 (relating to sexual exploitation of children) of title 18, or any other Federal criminal statute." *Id.* § 230(e)(1).

In 2018, Congress added an additional immunity exception relating to sex trafficking by enacting the Allow States and Victims to Fight Online Sex Trafficking Act (FOSTA), Pub. L. No. 115-164, 132 Stat. 1253. Two of the added provisions state that Section 230 does not limit state-law criminal charges "if the conduct underlying the charge would constitute a violation" of Section 1591 or, in certain circumstances, 18 U.S.C. § 2421A. 47 U.S.C. § 230(e)(5)(B)-(C). FOSTA also authorizes a state attorney general to "bring a civil action against" "any person who violates" Section 1591 if there is "reason to believe that an interest of the residents of that State has been or is threatened or adversely affected by" that person. 18 U.S.C. § 1595(d).

A third provision is at issue in this case. It states that Section 230 does not limit civil claims brought under Section 1595(a) "if the conduct underlying the claim constitutes a violation of Section 1591." 47 U.S.C. § 230(e)(5)(A).

## B. The Sex-Trafficking Exception To Section 230 Immunity Applies Only When The Defendant's Own Conduct Violates 18 U.S.C. § 1591.

The district court correctly concluded that the exception to Section 230 immunity for a Section 1595(a) claim applies only if the interactive computer service's conduct—rather than third-party conduct—violates Section 1591. *M.H. v. Omegle.com, LLC*, No. 21-cv-814, 2022 WL 93575, at *6-7 (M.D. Fla. Jan. 10, 2022). Section 1595(a) subjects two different categories of defendants to civil liability—someone who engages in conduct constituting a crime under Section 1591 and whoever knowingly benefits from participating in a venture that engaged in such a criminal violation. The district court effectively held that the immunity exception applies only if the interactive computer services itself engaged in a criminal violation. That construction is firmly grounded in text and context, and in the legislative history and purpose of FOSTA.

### 1.  Text

a.  Section 230(e)(5)(A) states that the exception to immunity applies only "if the conduct underlying the claim constitutes a violation of section 1591."  47 U.S.C. § 230(e)(5)(A).  The "conduct underlying the claim" means the conduct of the "interactive computer service" that otherwise is protected from liability by Section 230.  In other words, the service's own conduct must violate Section 1591.

To begin with, Section 230's entire focus is the conduct of the "interactive computer service."  The immunity provision states that actions by an interactive computer service cannot be "treated as . . . publish[ing] or speak[ing]" third-party content, and that a service is not liable for "any action voluntarily taken in good faith" to restrict access to objectionable content or "any action taken" to enable customers to control the content they see.  47 U.S.C. § 230(c)(1)-(2).  Section 230 obligates interactive computer services to "notify" customers about parental controls that limit access to material that is harmful to minors.  *Id.* § 230(d).

Thus, the only "conduct" discussed in Section 230 is the conduct of the interactive computer service—no other party's conduct is mentioned

in the subsections preceding the FOSTA exemptions. It would not make sense for a statute whose sole focus is the "conduct" of interactive computer services to use the word "conduct" to include third-party conduct.

If Congress had meant to write a broader immunity exception—and impose liability when the interactive computer service's own conduct did not violate Section 1591—it would have used different language. For example, Congress could have followed the approach of the pre-existing immunity exceptions included when Section 230 was enacted and therefore were available as potential approaches when Congress was considering FOSTA. It could have modeled Section 230(e)(5)(A) on the exception stating that "[n]othing in this section shall be construed to limit or expand any law pertaining to intellectual property," 47 U.S.C. § 230(e)(2), by providing that nothing in Section 230 "shall be construed to limit or expand any federal law pertaining to sex trafficking." It also "could have said 'if the claim arises out of a violation of section 1591,' or 'if the plaintiff is a victim of a violation of section 1591.'" *J.B. v. G6 Hosp., LLC*, No. 19-cv-7848, 2021 WL 4079207, at *6 (N.D. Cal. Sept. 8, 2021);

*see Doe v. Kik Interactive, Inc.*, 482 F. Supp. 3d 1242, 1249 (S.D. Fla. 2020).

These formulations would encompass both types of Section 1595(a) actions—not just claims against the "perpetrator" of a Section 1591 crime, but also those against an interactive computer service that "knowingly benefits . . . from participation in a venture which that [service] knew or should have known has" violated Section 1591.  18 U.S.C. § 1595(a).  Instead, Congress chose to focus the exception on the conduct of the interactive computer service.

b.  The other provisions of FOSTA creating exemptions from Section 230 immunity, enacted at the same time as Section 230(e)(5)(A), strongly support that construction based on the plain language.  Section 230(e)(5)(A) "must be read in [its] context and with a view to [its] place in the overall statutory scheme." *Gundy v. United States*, 139 S. Ct. 2116, 2126 (2019).  That is because courts "construe statutes, not isolated provisions." *King v. Burwell*, 576 U.S. 473, 486 (2015).

Two FOSTA provisions state that Section 230 does not limit state-law criminal charges "if the conduct underlying the charge would constitute a violation of" two federal criminal statutes, 18 U.S.C. §§ 1591

and 2421A.  47 U.S.C. § 230(e)(5)(B)-(C).  The phrase "conduct underlying the charge" in these provisions "necessarily refers to the conduct of the criminal defendant."  *J.B.*, 2021 WL 4079207, at *6.

The very same "conduct underlying" phrase in Section 230(e)(5)(A) therefore refers to the conduct of the civil defendant.  Generally, "identical words used in different parts of the same statute carry the same meaning."  *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1723 (2017) (internal quotation marks omitted).  The presumption of consistent usage carries even greater force here where the phrase at issue, "conduct underlying," is repeated across three neighboring provisions, two of which discuss the same criminal statute, 18 U.S.C. § 1591.  That "strongly suggests" Congress "intended to give the 'conduct underlying' phrases the same meaning."  *J.B.*, 2021 WL 4079207, at *6; *see G.G. v. Salesforce.com, Inc.*, No. 20-cv-2335, 2022 WL 1541408, at *9 (N.D. Ill. May 16, 2022).[4]

---

[4]  That Section 230(e)(5)(A) refers to the "conduct underlying the claim" and Sections 230(e)(5)(B) and (C) refer to the "conduct underlying the charge" does not undermine that conclusion.  "Claim" and "charge" have the same basic meaning:  the allegations that initiate a judicial proceeding.  *See, e.g.*, Fed. R. Civ. P. 8 (discussing "claim for relief"); Fed. R. Crim. P. 3, 7(c)(1) (discussing the "offense charged"); *Black's Law Dictionary* 291 (11th ed. 2019) ("charge" means the "formal accusation of

15

Indeed, interpreting the "conduct underlying" phrase as Appellants suggest would create a bizarre anomaly, giving states broader criminal authority than the federal government. The federal government's criminal authority is limited to persons who violate Section 1591, but Appellants' construction, by expanding "conduct underlying" beyond the defendant's own conduct, would allow states to impose criminal penalties for violating a state statute with the same elements as Section 1595 in which someone other than the defendant is the alleged trafficker. While Congress sought to ensure state enforcement was not blocked by Section 230, it did not intend FOSTA to authorize broader criminal liability for interactive computer services under state law than federal law.

A third relevant FOSTA provision provides still more support for that construction. FOSTA authorizes a state attorney general to "bring a civil action" against "any person who violates section 1591" if there is "reason to believe that an interest of the residents of that State has been or is threatened or adversely affected by [that] person." 18 U.S.C.

_____

an offense as a preliminary step to prosecution"); *id.* at 311 ("claim" means "the part of a complaint in a civil action specifying what relief the plaintiff asks for"). The meaning of the "conduct underlying" phrase therefore cannot vary based on Congress's use of different technical terms appropriate for the civil and criminal contexts.

§ 1595(d). An attorney general thus may sue an interactive computer service only if the service itself "violates section 1591."

Government officials are charged with pursuing the public interest and exercise discretion on "how to prioritize and how aggressively to pursue legal actions against defendants who violate the law." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2207 (2021). For that reason, they typically are granted broader authority than private plaintiffs. Given that reality, and the importance of these issues to the States, it "would be unreasonable to conclude that Congress would allow state attorneys general to sue only 'direct violators' of section 1591, while allowing private plaintiffs to sue civil defendants" based on violations of Section 1591 by others. *J.B.*, 2021 WL 4079207, at *7.[5]

c. Appellants' contrary arguments based on Section 230(e)(5)(A)'s text and context are wholly unpersuasive.

---

[5] Section 1595(d) uses different language than Section 230(e)(5)(A), because it creates a new cause of action and therefore has to specify the "person" against whom the action may be brought. Conversely, Section 230(e)(5)(A) is an immunity exception that authorizes a claim under an existing action so it necessarily employs a different sentence structure. What is key here is the scope of authority conferred on state attorneys general, because Congress would not have conferred greater authority on private plaintiffs than that given to state attorneys general.

Appellants rely principally on an opinion of a district court in another circuit, Br. 23-24 (quoting *Doe v. Twitter, Inc.*, 555 F. Supp. 3d 889, 918, 920 (N.D. Cal. 2021), *appeal docketed* 9th Circ. No. 22-15104)—which is at odds with the conclusion reached by the majority of district courts. *See* Omegle.com Br. 29-34. The *Twitter* court reasoned that the language of Section 230(e)(5)(A) is "broad" and authorizes Section 1595 actions against interactive computer services based on third-party violations of Section 1591. 555 F. Supp. 3d at 920-21. But that court did not consider Congress's decision not to use broader language, such as "violation of Section 1591," to describe the scope of the exception. In addition, Congress's use of "claim" in Section 230(e)(5)(A) parallels the use of "charge" in the exception for criminal liability. *See supra*, pp. 15-16 & n.4. That fatally undermines the *Twitter* court's view that "claim" in the exception refers to any claim brought under Section 1591.[6]

---

[6] *Amici* supporting Appellants erroneously assert that this Court's decision in *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021), resolved the Section 230 issue. Nat'l Ctr. Of Sexual Exploitation *Amicus* Br. 21-22. *Red Roof Inns* interpreted the meaning of "participation in a venture" under 18 U.S.C. § 1595(a). 21 F.4th at 724-25. It had no occasion to consider the scope of the exception to Section 230 immunity at issue here.

18

The *Twitter* court also dismissed Congress's use of the phrase "conduct underlying" in the provision eliminating immunity for state criminal prosecutions, stating that Congress might have intended to permit states to impose broader criminal liability than the federal government. 555 F. Supp. 3d at 921 n.4. But that seems highly unlikely, especially in light of the "conduct underlying" limitation on state attorneys' general civil authority, which that court did not address. As discussed, *supra*, pp. 15-16, where Congress uses identical words in neighboring statutory provisions, there is a strong presumption of identical meaning.

### 2.   Statutory context

Section 230(e)(5)(A) also must be interpreted with reference to the statutory context—the provision's "history and purpose." *Abramski v. United States*, 573 U.S. 169, 188 n.10 (2014). Here, the context confirms that the provision eliminates immunity only when the interactive computer service itself violates Section 1591.

### a.   *Evolution of the statutory text*

i. FOSTA resulted from House and Senate bills that were advanced on parallel tracks. *J.B.*, 2021 WL 4079207, at *8. Section 230(e)(5)(A)

first appeared in the bill reported by the Senate Commerce Committee in January 2018.  S. 1693, 115th Cong. § (3)(a)(2) (Jan. 10, 2018).

The committee report accompanying the Senate bill explained that the purpose of the exception is to ensure that an interactive computer service "cannot avoid liability" if it is "knowingly assisting, supporting, or facilitating sex trafficking."  S. Rep. No. 115-199, at 4 (2018).  That phrase—"knowingly assisting, supporting, or facilitating"—is taken directly from the text of Section 1591.  18 U.S.C. § 1591(a)(2), (e)(5).  That demonstrates Congress's intent to limit the Section 230(e)(5)(A) immunity exception to claims based on a service's own violation of Section 1591—and not to permit claims based on the negligence standard of 18 U.S.C. § 1595(a), i.e., third-party violations of Section 1591 that a service "should have known" about.  *See infra*, p. 27.

Moreover, the Senate report makes clear that the legislation was designed to overturn court decisions that had applied Section 230 to preclude actions against a website, Backpage.com, notwithstanding allegations that it had engaged in conduct constituting a crime under Section 1591.  The report stated that "[Section 230] protections have been held by courts to shield from civil liability and State criminal prosecution

20

nefarious actors, such as the website BackPage.com, that are accused of knowingly facilitating sex trafficking.  S. 1693 would eliminate section 230 as a defense for websites that knowingly facilitate sex trafficking." S. Rep. No. 115-199, at 4; *see also Kik Interactive*, 482 F. Supp. 3d at 1250 ("Congress only intended to create a narrow exception to the CDA for openly malicious actors such as Backpage where it was plausible for a plaintiff to allege actual knowledge and overt participation" in trafficking) (internal quotation marks omitted).

Congress thus intended Section 230(e)(5)(A) to reach only interactive computer services that themselves violate Section 1591. Nothing in the report suggests that Congress also intended for the provision to encompass claims based on others' violations of Section 1591.

The evolution of the text through the legislative process provides additional support for that conclusion.  The initially-introduced Senate bill broadly provided that "[n]othing" in Section 230 "shall be construed to impair the enforcement or limit the application of section 1595"; and also broadly eliminated Section 230 immunity for state criminal and civil enforcement actions "targeting conduct that violates a federal criminal law prohibiting (i) sex trafficking of children; or (ii) sex trafficking by

force, threats of force, fraud, or coercion." S. 1693, 115th Cong. § 3(a)(2)(A) (Aug. 1, 2017).

During the Commerce Committee's hearing on the bill, witnesses from the internet industry and the academy raised concerns that the bill's initial wording would permit an interactive computer service to be held liable without having engaged in any criminal wrongdoing. *See, e.g.*, *Hearing on S. 1693, The Stop Enabling Sex Traffickers Act of 2017 Before the S. Comm. on Commerce, Sci., and Transp.* (*Hearing on S. 1693*), 115th Cong. 20 (2017) (statement of Eric Goldman, professor, that the Senate bill would force a service to choose between being "fully liable for third party content" and taking "minimal steps to moderate" to "avoid any knowledge that might lead to liability"); *id.* at 31 (statement of Abigail Slater, general counsel, Internet Association, that the Senate bill, "as currently drafted," would create "overly broad concepts of . . . civil liability that create legal uncertainty and risk for legitimate actors"); *see also J.B.*, 2021 WL 4079207, at *8-9 (discussing *Hearing on S. 1693* 30-31, 35-36, 41-43).

Committee members asked questions about the adverse consequences of broad civil liability based on the language in the initial bill. *Hearing on S. 1693* 39, 42-43, 46-47, 53-54.

The bill later reported by the Commerce Committee included the language ultimately enacted, which excluded from Section 230 immunity only:  (a) state criminal actions in which the "conduct underlying the charge" violated Section 1591; (b) Section 1595 private actions in which "the conduct underlying the claim" violated Section 1591; and (c) state attorney general civil enforcement actions against "any person who violates section 1591."  S. 1693, 115th Cong. §§ (3)(a)(2), 5(a) (Jan. 10, 2018).

The adoption of those essentially identical limitations at the same time—in contrast to the much broader exclusions from immunity in the initially-introduced bill—provides further evidence that "Congress reached a compromise" to replace the initial exception with "a narrowed federal civil sex-trafficking carve-out," *J.B.*, 2021 WL 4079207, at *11, focused on "openly malicious actors" as to whom "it was plausible for a plaintiff to allege actual knowledge and overt participation" in sex

23

trafficking, *Kik Interactive*, 482 F. Supp. 3d at 1250 (internal quotation marks omitted).

Indeed, the senators most involved in the drafting process observed that, after the hearing, the Commerce Committee made "targeted changes" to provide redress for victims "without affecting the freedom of the internet" so that the bill would earn "solid support from the internet industry." 164 Cong. Rec. S1849, S1850 (Mar. 21, 2018) (statements of Sens. Rob Portman and John Thune).

The history of the House bill exhibits the same rejection of a broad exception from Section 230 immunity for private claims. The initial House bill eliminated Section 230 immunity for broad categories of state criminal laws and federal and state private actions relating to sex trafficking. H.R. 1865, 115th Cong. § 3(A)(2)(A)(ii), (C) (Apr. 3, 2017).

The bill reported by the House Judiciary Committee, by contrast, eliminated immunity only for state criminal prosecutions where the "conduct underlying the charge" violated federal criminal law; there was no reduction in immunity for civil actions. H.R. 1865, 115th Cong. § 4 (Jan. 20, 2018). An amendment approved on the House floor added the language from the Senate bill regarding private and state attorney

general actions. H.R. Rep. No. 115-583, at 3 (2018). Again, this history shows the rejection of a broad exception from Section 230 immunity—and the application of the same "conduct underlying" standard to state criminal and federal civil actions, so that liability would be limited to actors who violated Section 1591's criminal wrongdoing standard. *See G.G.*, 2022 WL 1541408, at *10 (discussing House bill).

ii. Appellants do not consider the legislative history of FOSTA. The arguments of *amici* supporting Appellants based on legislative history are meritless. *Amici* cite to a report of the House Judiciary Committee to contend that Congress intended to create liability for interactive computer services based on illicit content posted to their platforms by third parties. CHILD USA *Amicus* Br. 16-17 (quoting H.R. Rep. No. 115-572, at 1, 5 (2018)). But that committee report accompanied a version of the bill that did not include any exception from Section 230 immunity for civil actions, but rather permitted only criminal prosecutions.

The statements of individual members of Congress cited by *amici*, CHILD USA *Amicus* Br. 16-18, relate to FOSTA's general purpose, and do not discuss the scope of Section 230(e)(5)(A). Further, when surveying legislative history, the "authoritative source for finding the Legislature's

intent lies in the Committee Reports on the bill," not "scattered statements from individual Members of Congress." *Eldred v. Ashcroft*, 537 U.S. 186, 209 n.16 (2003). The Senate report here, and the consistent narrowing of the liability provisions in the House and Senate bills, is wholly inconsistent with the interpretation of the exception advanced by Appellants and their *amici*.

### b.   *Legislative purpose*

Appellants' expansive reading of the immunity exception is incorrect for the additional reason that it would undermine the CDA's goal of incentivizing interactive computer services to review, edit, and decide "whether to publish or to withdraw from publication third-party content," *Barnes*, 570 F.3d at 1102, without fear of tort liability for those parties' "potentially injurious messages," *Gonzalez*, 2 F.4th at 886. It also would thwart the CDA's central purpose "to promote rather than chill internet speech." *Bennett v. Google, LLC*, 882 F.3d 1163, 1166 (D.C. Cir. 2018). Because it is "impossible for service providers to screen each of their millions of postings for possible problems," the "specter of tort liability in an area of such prolific speech would have an obvious chilling

effect" by effectively forcing services to delete permissible speech. *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 331 (4th Cir. 1997).

The practical effect of Appellants' reading of the immunity exception would be to subject interactive computer services to liability based on a negligence standard—participation in a venture that they "should have known" engaged in a criminal violation—instead of Section 1591's higher standard, which requires that the defendant must "knowingly" facilitate sex trafficking and know (or recklessly disregard) that the victim is under 18 and would be forced to engage in prostitution. 18 U.S.C. § 1591(a), (e)(3).

To avoid the threat of negligence-based liability, interactive computer services would be forced to impose broad measures to "severely restrict the number and type of messages posted" in order to avoid potential liability and the expense of litigation. *Force v. Facebook, Inc.*, 934 F.3d 53, 63 (2d Cir. 2019). Moderating content at the scale required for today's social media platforms necessitates the use of algorithms and imperfect human decisionmaking that inevitably would sweep in content protected by the First Amendment, such as discussions focused on trafficking survivors, safety issues for sex workers, and sexual education

27

and health.[7]  That result would undermine the CDA's success in making interactive computer services "robust . . . forum[s] for public speech," *Bennett*, 882 F.3d at 1166.

The Section 230(e)(5)(A) exception does not remove immunity from liability for actions "voluntarily taken in good faith to restrict access to or availability of material that the provider" considers "objectionable."  47 U.S.C.  § 230(c)(2)(A).    But that does not mitigate the adverse consequences discussed above, which arise when interactive computer services "*publish*[]" user content, *id.* § 230(c)(1) (emphasis added)—not when they "restrict access to" content.  Certainly plaintiffs will contend that, because the exception removes immunity based on publishing user content, there is no immunity when content moderation fails to remove user content.

Companies also would be exposed to the "heckler's veto," further chilling protected speech.  Those who "perceive themselves as the objects of unwelcome speech . . . could threaten litigation against interactive

---

[7]  *See, e.g.*, Karen Gullo & David Greene, Elec. Frontier Found., *With FOSTA Already Leading To Censorship, Plaintiffs Are Seeking Reinstatement Of Their Lawsuit Challenging The Law's Constitutionality* (Mar. 1, 2019), bit.ly/382f7pV.

computer service providers, who would then face a choice:  remove the content or face litigation costs and potential liability."  *Jones v. Dirty World Ent. Recordings LLC*, 755 F.3d 398, 407 (6th Cir. 2014).  These chilling effects would make it more difficult for the public to communicate openly on the Internet, particularly for marginalized communities.[8]

ii.  Appellants argue that FOSTA's "remedial" nature supports its broader interpretation of Section 230(e)(5)(A).  Br 23 (quoting *Twitter*, 555 F. Supp. 3d at 920).  But FOSTA has two purposes—to permit "civil liability and State criminal prosecution [of] nefarious actors" that "knowingly facilitating sex trafficking" while also preserving Section 230 as an "essential underpinning of the modern internet" that has been "critical to the explosive growth of websites that facilitate user-generated content."  S. Rep. No. 115-199, at 2.

Congress reconciled those dual purposes by enacting legislation that limits the immunity exception to criminal wrongdoers.  Recognizing that the government could not prosecute everyone, and could leave victims without justice and compensation, Congress opened the door to

---

[8]  *See, e.g.*, Note, *Section 230 as First Amendment Rule*, 131 Harv. L. Rev. 2027, 2047 (2018).

civil claims as well—but only against that limited category of wrongdoers.

Furthermore, Appellants' conclusion does not follow from its premise that FOSTA is "remedial." Br. 24. That a statute has "remedial goals" is an "insufficient justification for interpreting a specific provision more broadly than its language and the statutory scheme reasonably permit." *Pinter v. Dahl*, 486 U.S. 622, 653 (1988). Moreover, the district court's interpretation of Section 230(e)(5)(A) is "consistent with [FOSTA's] remedial purpose," because it allows plaintiffs to "pursue a subset of claims that were previously barred" under Section 230. *J.B.*, 2021 WL 4079207, at *6.

FOSTA addresses a specific concern about the application of Section 230 immunity to "nefarious actors" who "knowingly facilitat[e] sex trafficking" in violation of Section 1591. S. Rep. No. 115-199, at 2. Appellants' reading would make services' mere knowledge of illegal content grounds for liability. Br. 23-24. Yet interactive computer services must obtain such knowledge to monitor their platforms for illegal content and develop countermeasures to reduce trafficking and

remove child sexual abuse material—as the CDA and FOSTA envision, 47 U.S.C. § 230(b); S. Rep. 115-199, at 14.

Congress struck a careful "balance" between fostering "a largely unregulated free market online" and incentivizing companies to "snuff[] out certain objectionable content," *Hepp v. Facebook*, 14 F.4th 204, 209 (3d Cir. 2021). That flexibility is critical to partnerships that legitimate internet companies have forged to combat trafficking with organizations like the National Center for Missing and Exploited Children. *See e.g.*, *Hearing on S. 1693* 31, 33.

At bottom, Appellants' interpretation of Section 230(e)(5)(A) would force interactive computer services to choose between actively monitoring for illegal content and risking negligence-based liability for those efforts—or deciding not to monitor at all. That is contrary to the text and context of FOSTA; the narrowing of the statutory text during the legislative process; and the balance Congress struck between holding accountable bad-faith actors and ensuring that services "cannot be held liable on account of actions taken in good faith to restrict access to objectionable material." S. Rep. No. 115-292, at 4.

31

### C. The Criminal-Law Exception To Section 230 Immunity Applies Only To Federal Government Enforcement Actions.

Appellants also contend (Br. 17-18) that the criminal-law exception to Section 230 immunity, 47 U.S.C. § 230(e)(1), applies to their civil claim under 18 U.S.C. § 2255(a). That is incorrect. The criminal-law exception applies only to the federal government's enforcement of certain federal criminal laws. It does not waive Section 230 immunity for private civil claims.

The language of the criminal-law exception is exceptionally clear. To begin with, it waives immunity only for "the enforcement of" specified criminal statutes (47 U.S.C. §§ 223, 231) and Chapters 71 and 110 of Title 18 (where many federal criminal statutes are codified), "or any other Federal criminal statute." 47 U.S.C. § 230(e)(1). The ordinary meaning of "enforcement" is the "act or process of compelling compliance with a law," *Black's Law Dictionary* 669—a term used in the criminal context, but not in describing private parties' civil damages actions.

Moreover, the catch-all—"or any other Federal criminal statute"—confirms that the critical characteristic triggering this exception to Section 230 immunity is that the law being "enforce[d]" is a "Federal

32

criminal statute." *See Safe Food & Fertilizer v. EPA*, 350 F.3d 1263, 1269 (D.C. Cir. 2003) (applying statutory construction principle that "the phrase 'A, B, or any other C' indicates that A is a subset of C"). That inference is even stronger here because Appellants' reading would render superfluous the word "other" in the phrase "any other Federal criminal statute." Finally, the exception is titled "No effect on *criminal* law," 47 U.S.C. § 230(e)(1) (emphasis added), and does not mention civil laws.

In addition, as discussed above, *supra*, p. 14, the words of a statute must be read in context. The criminal-law exception is one of several exceptions to Section 230 immunity that Congress included in the CDA. A separate exception also enacted in the CDA states that Section 230 does not "limit the *application* of the Electronic Communications Privacy Act of 1986," 47 U.S.C. § 230(e)(4) (emphasis added), and that statute covers both criminal enforcement and civil remedies, *see, e.g.*, 18 U.S.C. §§ 2511, 2520. Congress thus used "broader language"—the term "application"—when it intended "to include both civil and criminal remedies in CDA provisions." *Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 23 (1st Cir. 2016).

The courts of appeals that have considered this issue have consistently rejected the contention that the criminal-law exception to Section 230 immunity extends to actions for civil damages. *See Gonzalez*, 2 F.4th at 890; *Force*, 934 F.3d at 71-72; *Backpage.com*, 817 F.3d at 23. And as explained in Omegle.com's brief (at 16-17), the unpublished district court decision cited by Appellants, *Doe #1 v. MG Freesites, LTD*, 2022 WL 407147 (N.D. Ala. Feb. 9, 2022), is readily distinguishable.

## CONCLUSION

The judgment of the district court should be affirmed.

Respectfully submitted,

/s/ *Andrew J. Pincus*
Andrew J. Pincus
MAYER BROWN LLP
1999 K Street, N.W.
Washington, DC 20006
(202) 263-3000
apincus@mayerbrown.com

Avi M. Kupfer
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
akupfer@mayerbrown.com

June 24, 2022

*Counsel for* Amicus Curiae

34

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

*Check the appropriate box in section 1, and check the box in section 2.*

**1.    Type-Volume**

☑  This document complies with the word limit of FRAP        29(a)(5) because, excluding the parts of the document exempted by FRAP 32(f) and 11th Cir. R. 26.1-3(c)                         , this document contains 6465            words.

**or**

☐  This brief complies with the line limit of FRAP                    because, excluding the parts of the brief exempted by FRAP 32(f) and                             , this brief uses a monospaced typeface and  contains                        lines of text.

**2.    Typeface and Type-Style**

☑  This document complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6).


(s)__Andrew J. Pincus_____

Attorney for __Chamber of Progress_____

Dated: __June 24, 2022_____

Rev.: 12/16

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of June, 2022, I electronically filed the foregoing using the court's CM/ECF system, which will send notification of such filing to all counsel who are registered CM/ECF users.

/s/ *Andrew J. Pincus*

Andrew J. Pincus
MAYER BROWN LLP
1999 K Street, N.W.
Washington, DC 20006
(202) 263-3000
apincus@mayerbrown.com