# RECORD NO. 22-10338

In The

# United States Court Of Appeals
## For The Eleventh Circuit

### M.H.; J.H.,
### On behalf of their minor child, C.H.,

*Plaintiffs - Appellants,*

v.

### OMEGLE.COM LLC,

*Defendant - Appellee.*

ON APPEAL FROM THE MIDDLE DISTRICT OF FLORIDA

_____

**REPLY BRIEF OF APPELLANTS**

_____

| | |
|---|---|
| **James R. Marsh \*** | **Hillary Nappi** |
| **Jennifer Freeman** | **Frank R. Schirripa** |
| **Margaret E. Mabie** | HACH ROSE SCHIRRIPA & |
| MARSH LAW FIRM, PLLC | CHEVERIE, LLP |
| **31 Hudson Yards Fl 11** | **112 Madison Ave Fl 10** |
| **New York, NY 10001** | **New York, NY 10016** |
| **212-372-3030** | **212-213-8311** |
| *Counsel for Appellants* | *Counsel for Appellants* |

*Gibson*Moore Appellate Services, LLC
206 East Cary Street ♦ P.O. Box 1406 (23218) ♦ Richmond, VA 23219
(804) 249-7770 ♦ www.gibsonmoore.net

## <u>CERTIFICATE OF INTERESTED PERSONS AND</u>
## <u>APPELLATE RULE 26.1 CERTIFICATION</u>

Appellants M.H. and J.H. on behalf of their minor child C.H., pursuant to Federal Rule of Appellate Procedure 26.1 and Circuit Rules 26.1–1, 26.1–2, and 26.1–3, hereby submit their Certificate of Interested Persons and Corporate Disclosure Statement.

In alphabetical order, following are all trial judges, attorneys, persons, association of persons, firms, partnerships, or corporations that have an interest in the outcome of this case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations and other identifiable legal entities related to a party:

- Abratt, Daniela – Attorney for Appellee
- Austermuehle, Elizabeth – Attorney for Amici
- Balasubramani, Venkat – Attorney for Appellee
- C.H. – Appellant (minor child)
- Covington, Virginia M. Hernandez – U.S. District Court Judge
- Eidelman, Vera – Attorney for Amici
- Focal PLLC – Attorneys for Appellee
- Freeman, Jennifer – Attorney for Appellants
- Gellis, Catherine – Attorney for Amici
- Gentala, Peter A. – Attorney for Amici
- Gunning, Kimberlee – Attorney for Appellee
- Haba, Lisa D. – Attorney for Amici

- Hach Rose Schirripa & Cheverie, LLP – Attorneys for Appellants
- J.H. – Appellant (parent of minor child C.H.)
- Jayaram Law, Inc. – Attorney for Amici
- Jayaram, Vivek – Attorney for Amici
- Kupfer, Avi M. – Attorney for Amici
- Lay, Stacia N. – Attorney for Appellee
- Mabie, Margaret E. – Attorney for Appellants
- Marsh, James R. – Attorney for Appellants
- Marsh Law Firm PLLC – Attorneys for Appellants
- Mayer Brown LLP – Attorney for Amici
- McGuire, James J. – Attorney for Appellee
- McNulty, Kevin – U.S. District Court Judge
- M.H. – Appellant (parent of minor child C.H.)
- Nappi, Hillary – Attorney for Appellants
- National Center on Sexual Exploitation Law Center – Amicus Curiae and Attorney of Amici
- Omegle.com, LLC – Appellee
- Pincus, Andrew J. – Attorney for Amici
- Prusinowski, James T. – Attorney for Appellee (former)
- Schirripa, Frank R. – Attorney for Appellants
- The Haba Law Firm, P.A. – Attorney for Amici
- Thomas & LoCicero, PL – Attorneys for Appellee
- Trimboli & Prusinowski – Attorneys for Appellee (former)
- Wilson, Thomas G., the Honorable – U.S. Magistrate Judge

Appellants M.H. and J.H. on behalf of their minor child C.H., certify that no publicly traded company or corporation has an interest in the outcome of this case or appeal.

_/s/James R. Marsh_
James R. Marsh
*Counsel for Appellants*

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS AND
APPELLATE RULE 26.1 CERTIFICATION ............................................. i

TABLE OF CONTENTS ......................................................... iv

TABLE OF CITATIONS .......................................................... vi

STATEMENT OF THE CASE .................................................. 1

BACKGROUND ...................................................................... 1

ARGUMENT ............................................................................ 4

I.    APPELLANT'S STATE LAW CLAIMS WERE IMPROPERLY
      DISMISSED BY THE DISTRICT COURT ...................................... 4

II.   CDA 230 DOES NOT RENDER LEGAL THE PRODUCTION,
      ADVERTISING, DISTRIBUTION, AND POSSESSION OF
      CHILD PORNOGRAPHY IN CONTRAVENTION OF
      LONSTANDING SUPREME COURT PRECEDENT .................... 5

      A.    OMEGLE KNOWINGLY OPERATED AS A PRODUCER
           AND DISTRIBUTOR IN THE MODERN CHILD
           PORNOGRAPHY MARKETPLACE ...................................... 6

III.  OMEGLE'S ROLE IN MATCHING C.H. WITH JOHN DOE
      ESTABLISHES OMEGLE'S CLEAR LIABILITY UNDER
      18 U.S.C. § 1595 .............................................................. 12

IV.  OMEGLE IS NOT A PUBLISHER AND DOES NOT BENEFIT
      FROM CDA 230 IMMUNITY ........................................... 15

V.    OMEGLE KNEW OR SHOULD HAVE KNOWN THAT IT WAS
      AN ACTIVE PARTICIPANT IN AN ONGOING SEX
      TRAFFICKNIG VENTURE ................................................ 19

 CONCLUSION ...................................................... 22

CERTIFICATE OF COMPLIANCE ....................................................... 24

CERTIFICATE OF SERVICE ................................................................ 24

# TABLE OF CITATIONS

## Cases

*A.B. v. Hilton Worldwide Holdings Inc.*,
    484 F. Supp 3d 921 (D. Or. 2020)...................................................14

*A.B. v. H.K. Grp. of Co.*,
    No. 1:21-CV-1344-TCB, 2022 WL 467786
    (N.D. Ga. Feb. 9, 2022)...................................................14

*Backpage.com, LLC v. Lynch*,
    216 F. Supp. 3d 96 (D.D.C. 2016)...................................................19

Chicago Lawyers' Comm. for C.R. Under L., Inc. v. Craigslist, Inc.,
    519 F.3d 666 (7th Cir. 2008), as amended (May 2, 2008)..............16

*City of Chicago, Ill. v. StubHub!, Inc.*,
    624 F.3d 363 (7th Cir. 2010) .................................................16, 17

*Doe v. Facebook, Inc.*,
    142 S. Ct. 1087, 212 L. Ed. 2d 244 (2022).......................................4

*Doe v. GTE Corp.*,
    347 F.3d 655 (7th Cir. 2003) .........................................................16

*Doe v. Twitter, Inc.*,
    555 F. Supp. 3d 889 (N.D. Cal. 2021) .....................................19, 21

*Doe #1 v. MG Freesites, LTD*,
    No. 7:21-CV-00220-LSC, 2022 WL 407147
    (N.D. Ala. Feb. 9, 2022)...........................................................11, 19

*Doe #1 v. Red Roof Inns, Inc.*,
    21 F.4th 714 (11th Cir. 2021)........................................................14

*Huon v. Denton*,
    841 F.3d 733 (7th Cir. 2016) ........................................................17

*In re Facebook, Inc.,*
    625 S.W.3d 80 (Tex. 2021) ................................................................ 4

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC,*
    521 F.3d 1157 (9th Cir. 2008) ........................................... 14, 16, 21

*J.S. v. Vill. Voice Media Holdings, L.L.C.,*
    184 Wash. 2d 95 (2015) ................................................................ 13

*Malwarebytes, Inc. v. Enigma Software Grp. USA, LLC,*
    ⸻ U.S. ⸻, 141 S. Ct. 13, 208 L.Ed.2d 197, 2020 WL
    6037214(2020) ................................................................................ 18

*New York v. Ferber,*
    458 U.S. 747 (1982) ........................................ 7, 8, 9, 10, 11

*Osborne v. Ohio,*
    495 U.S. 103 (1990) ................................................................ 5. 10

*Paroline v. United States,*
    572 U.S. 434 (2014) ................................................................ 7, 8

*People v. Ferber,*
    52 N.Y.2d 674 (1981) ...................................................................... 8

*Tilton v. Playboy Entm't Group, Inc.,*
    554 F.3d 1371 (11th Cir. 2009) ....................................................... 15

*United States v. Copeland,*
    820 F.3d 809 (5th Cir. 2016) .......................................................... 13

*United States v. Hristov,*
    466 F.3d 949 (11th Cir. 2006) ....................................................... 15

*United States v. Pruitt,*
    638 F.3d 763 (11th Cir. 2011) ....................................................... 15

*United States v. Ruggiero,*
    791 F.3d 1281 (11th Cir. 2015) ............................................. 12, 22

*United States v. Smith*,
    459 F.3d 1276 (11th Cir. 2006) ......................................................... 6

*United States v. Williams*,
    553 U.S. 285 (2008) ......................................................................... 6

*Webber v. Armslist LLC*,
    No. 20-C-1526, 2021 WL 5206580 (E.D. Wis. Nov. 9, 2021) ......... 18

## **Statutes and Rules**

15 U.S.C. §§ 6501-6505 ..................................................................... 2

18 U.S.C. § 1591 ................................................................... 8, 12, 19

18 U.S.C. § 1595 ........................................................................ *passim*

18 U.S.C. § 2252 ................................................................... 12, 15

18 U.S.C. § 2255 ............................................................................ 5

47 U.S.C. § 230 .......................................................................... *passim*

## **Constitutional Provisions**

U.S. Const. amend I ............................................................. 5, 10, 11, 22

## **Other Authorities**

1 R. SMOLLA, LAW OF DEFAMATION
    § 4:86, at 4–380 (2d ed. 2019)..................................................... 18

## STATEMENT OF THE CASE

**BACKGROUND**

It is unfortunately necessary to restate the essential facts of this case which have been misapprehended by the Appellee. Omegle.com LLC ("Omegle") alleges that "Plaintiffs were required, but failed, to plausibly allege facts that support a reasonable inference that Omegle knew or should have known that it 'took part in the common undertaking of sex trafficking' with C.H.'s alleged trafficker, the John Doe user." Appellee Brf. at 51. Omegle also asserts that "the SAC alleges vaguely that Omegle participated 'in one or more sex trafficking ventures' or 'knowingly participate[d] in a sex trafficking venture' by purportedly allowing 'cappers' to use its website 'to prey on unsuspecting children online.' *Id.* at 51–52.

Since at least 2016, the use of Omegle's website by child predators in C.H.'s geographic area was known to the public and to Omegle. Doc. 75 ¶41. Omegle nonetheless fails to take responsibility for the risk their platform poses to children. In fact, Omegle unlawfully collects personal information from children under the age of thirteen who access its

1

website.[1] *Id.* at ¶¶38, 42. Omegle hides behind its own willful blindness to child predators, maintaining a conscious disregard for child safety which ultimately promotes and enables online child sex abuse. Omegle has been named in multiple public reports from law enforcement across the country concerning the spread of online child sex abuse material on its platform. *Id.* at ¶41. Contrary to Appellee's suggestions, Omegle was not an innocent third–party bystander to C.H.'s abuse but was an overt facilitator and participant. Omegle actively matched C.H. with her abuser and revealed her identifying information to the abuser which enabled him to continue and increase the severity of the abuse. *Id.* at ¶41–44. Omegle could have implemented monitoring, age verification, know your user controls, and other tools to prevent C.H.'s abuse, but failed to take reasonable actions to keep minor users like C.H. safe. While Omegle knew that predatory adults used its platform to abuse children,

---

[1] The Children's Online Privacy Protection Act of 1998 (COPPA) is a United States federal law, located at 15 U.S.C. §§ 6501–6505 (Pub.L. 105–277, 112 Stat. 2681–728), that imposes certain requirements on operators of websites or online services directed to children under 13 years of age, and on operators of other websites or online services that have actual knowledge that they are collecting personal information online from a child under 13 years of age.

it took no action to protect C.H. from this abuse. *Id.* at 75 ¶37. On the contrary, Omegle promotes, markets, and advertises itself as a virtual matchmaking service which encourages users to "Talk to strangers!" *Id.* at ¶43–44.

On or about March 31, 2020, eleven–year–old C.H.'s life changed forever when she accessed Omegle's website. Doc. 75 ¶57. Shortly thereafter, an unknown user ("John") threatened C.H. and her family by revealing C.H.'s geolocation. *Id.* at ¶59. Scared and intimidated, C.H. reluctantly complied with John's demands, removed all her clothing, and touched herself in a sexually explicit manner on camera. *Id.* at ¶61. John recorded C.H.'s actions, forever memorializing C.H.'s humiliating child sex abuse performance. *Id.* at ¶62.

Omegle is fully aware of the extent to which its website is used to sexually abuse children like C.H. Doc. 75 ¶43. Omegle actively matches underage children with adult strangers. *Id.* at ¶¶33–34, 50–52. Omegle manufactures a product which caters to child predators and receives value for its use. *Id.* at ¶¶45–46. Omegle also holds itself out to be a platform that "monitors" user content. *Id.* at ¶¶50–52. Omegle also knew that its profits, in the form of increased web traffic and advertising

revenue, were enhanced in part because child predators like John—who are known to Omegle as "cappers"—produce explicit recordings of children like C.H. and share them online. *Id.* at ¶63.

## ARGUMENT

## I.    APPELLANT'S STATE LAW CLAIMS WERE IMPROPERLY DISMISSED BY THE DISTRICT COURT

The District Court summarily held that Appellant's state law claims are barred by Section 230 of the Communications Decency Act ("CDA 230"). Doc. 90 p. 7 ("The CDA also preempts state or local law that would otherwise hold ICS providers liable for the independent actions of their users."). Appellants need not address the merits of their state law claims until they overcome the absolute bar set by the District Court's interpretation and application of CDA 230.[2] The District Court did not decide the merits of Appellants' state law claims, finding in passing that

---

[2] *See e.g. In re Facebook, Inc.*, 625 S.W.3d 80, 93 (Tex. 2021), cert. denied sub nom. *Doe v. Facebook, Inc.*, 142 S. Ct. 1087, 212 L. Ed. 2d 244 (2022) (The essence of Plaintiffs' negligence, gross–negligence, negligent–undertaking, and products–liability claims is that, because Plaintiffs were users of Facebook or Instagram, the company owed them a duty to warn them or otherwise protect them against recruitment into sex trafficking by other users…. Under the view of section 230 adopted in every published decision of which we are aware, these claims "treat[ ]" Facebook "as the publisher or speaker" of third-party communication and are therefore barred.)

4

CDA 230 operated as an absolute bar. Therefore, any added discussion of Appellants' state law claims is unnecessary for the purposes of this appeal. The same CDA 230 issues apply to Appellants' state law claims.

## II. CDA 230 DOES NOT RENDER THE PRODUCTION, ADVERTISING, DISTRIBUTION, AND POSSESSION OF CHILD PORNOGRAPHY LEGAL IN CONTRAVENTION OF LONSTANDING SUPREME COURT PRECEDENT

Longstanding legal precedent holds that child pornography is outside First Amendment protection. *Osborne v. Ohio*, 495 U.S. 103, 110–11 (1990). Congress created Section 230 against a backdrop of Supreme Court precedent; federal and state laws broadly proscribing child pornography production, advertising, distribution, and possession; and a continued overarching determination that every aspect of child pornography harms children, and that the marketplace for such material must be intensely eliminated.

The Appellee fails to distinguish Appellant's child pornography claims under Masha's Law (18 U.S.C. § 2255) and 18 U.S.C. § 1595 from claims concerning adult sex trafficking and obscenity. So too, the District Court erred in failing to recognize this critical distinction in its decision. Doc 90, p. 12–13.

### A. OMEGLE KNOWINGLY OPERATED AS A PRODUCER AND DISTRIBUTOR IN THE MODERN CHILD PORNOGRAPHY MARKETPLACE

Section 230 unambiguously proclaims that "it is the policy of the United States--to ensure vigorous enforcement of Federal criminal laws to deter and punish trafficking in obscenity, stalking, and harassment by means of computer." 47 U.S.C. § 230(5). The Appellant in this case, eleven–year–old C.H. was undeniably a victim of trafficking in obscenity, stalking, and harassment by means of a computer facilitated by Omegle which has knowingly created and maintained a virtual child trafficking marketplace.

The United States Supreme Court has repeatedly recognized that the marketplace for child sex abuse material must be broadly targeted and eliminated finding repeatedly that "[c]hild pornography harms and debases the most defenseless of our citizens. Both the State and Federal Governments have sought to suppress it for many years, only to find it proliferating through the new medium of the Internet." *United States v. Williams*, 553 U.S. 285, 307 (2008).[3] "[E]veryone who reproduces,

---

[3] *See also United States v. Smith*, 459 F.3d 1276, 1285 (11th Cir. 2006) (there is nothing irrational about Congress's conclusion, supported by its

distributes, or possesses the images of the victim's abuse…plays a part in sustaining and aggravating this tragedy." *Paroline v. United States*, 572 U.S. 434, 457 (2014).

For forty years, the Supreme Court has recognized the grave "physiological, emotional, and mental" injuries suffered by victims of child pornography. *New York v. Ferber*, 458 U.S. 747, 758 (1982). The traffic in images depicting a child's sexual abuse "poses an even greater threat to the child victim than does sexual abuse or prostitution" because the victim must "go through life knowing that the recording is circulating within the mass distribution system for child pornography." *Id.*, at 759, n. 10. Omegle not only facilitates the "traffic in images depicting a child's sexual abuse," it is part of the modern "mass distribution system for child pornography." As the Supreme Court emphasized repeatedly, the child pornography images created and distributed on platforms like

findings, that pornography begets pornography, regardless of its origin. Nor is it irrational for Congress to conclude that its inability to regulate the intrastate incidence of child pornography would undermine its broader regulatory scheme designed to eliminate the market in its entirety, or that "the enforcement difficulties that attend distinguishing between [purely intrastate and interstate child pornography]," would frustrate Congress's interest in completely eliminating the interstate market.)

Omegle.com cause "continuing harm by haunting the chil[d] in years to come." *Paroline v. United States*, 572 U.S. 434, 472 (2014).

Congress enacted, revised, and updated sections 230, 1595, and 1591 against this backdrop. It is important to note that the defendant in *Ferber* was a bookstore proprietor who was convicted under a New York statute prohibiting persons from knowingly promoting a sexual performance by a child under the age of sixteen by distributing material which depicted such a performance. Ferber, like Omegle.com, was the so–called "third party" conduit for child pornography, not the direct producer or consumer like "John" in this case. Ferber was indicted on two counts of promoting an obscene sexual performance by a child and two counts of promoting a sexual performance by a child based on the sale of two films to an undercover New York City police officer. *People v. Ferber,* 52 N.Y.2d 674, 677 (1981), rev'd sub nom. *New York v. Ferber*, 458 U.S. 747 (1982). Here, Omegle's promotion of child sexual abuse is no different.

In finding that the government is "entitled to greater leeway in the regulation of pornographic depictions of children," the Supreme Court made the following findings which are as relevant to modern Internet

distributor Omegle as they were to Madison Book Store proprietor Paul

Ferber. *Ferber*, 458 U.S. at 756.

> *First*. It is evident beyond the need for elaboration that a State's interest in "safeguarding the physical and psychological well-being of a minor" is "compelling."… The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance…. The legislative judgment, as well as the judgment found in the relevant literature, is that the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child.

*Id.* at 756–58.

> *Second*. The distribution of photographs and films depicting sexual activity by juveniles is intrinsically related to the sexual abuse of children in at least two ways. First, the materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation. Second, the distribution network for child pornography must be closed if the production of material which requires the sexual exploitation of children is to be effectively controlled…. it is difficult, if not impossible, to halt the exploitation of children by pursuing only those who produce the photographs and movies.

*Id.* at 759–60.

> *Third*. The advertising and selling of child pornography provide an economic motive for and are thus an integral part of the production of such materials, an activity illegal throughout the Nation. "It rarely has been suggested that the constitutional freedom for speech and press extends its immunity to speech or writing used as an integral part of conduct in violation of a valid criminal statute."

*Id.* at 761–62.

> *Fourth.* The value of permitting live performances and photographic reproductions of children engaged in lewd sexual conduct is exceedingly modest, if not *de minimis.*

*Id.* at 762.

> *Fifth.* Recognizing and classifying child pornography as a category of material outside the protection of the First Amendment is not incompatible with our earlier decisions…. When a definable class of material, such as that covered by § 263.15, bears so heavily and pervasively on the welfare of children engaged in its production, we think the balance of competing interests is clearly struck and that it is permissible to consider these materials as without the protection of the First Amendment.

*Id.* at 763–64.

The child pornography facilitated, created, and distributed by Omegle is "without the protection of the First Amendment" and without the protection of Section 230. "Given the importance of the State's interest in protecting the victims of child pornography," federal and state regulation is necessary to "stamp out this vice at all levels in the distribution chain." *Osborne v. Ohio*, 495 U.S. 103, 110–11 (1990). As recognized in *Osborne* over 32 years ago, "much of the child pornography market has been driven underground; as a result, it is now difficult, if not impossible, to solve the child pornography problem by only attacking production and distribution." *Id.* This challenge has grown exponentially over time due to the modern

10

methods of child pornography production and distribution on websites like Omegle.com.

Simply put, Congress, legislating against the backdrop of *Ferber* and its progeny—and as recognized in Section 230(5), Chapter 110, and elsewhere in the United States Code—never intended to immunize defendants like Omegle for their role in the modern child pornography marketplace. A holding by this Court that Omegle has a free pass to produce, advertise, distribute, and possess child pornography would be directly contrary to forty years of Supreme Court precedent.

CDA 230 includes a crucial exemption in that "[n]othing in this section shall be construed to impair…chapter…110 (relating to sexual exploitation of children) of title 18…." 47 U.S.C. § 230(e)(1). Child sexual abuse material or child pornography is unlike sexual material of adults because it is contraband. *Doe #1 v. MG Freesites, LTD*, No. 7:21-CV-00220-LSC, 2022 WL 407147, at *22 (N.D. Ala. Feb. 9, 2022) ("child pornography is not lawful 'information provided by another information content provider' as contemplated by Section 230…. Rather, it is illegal contraband, stemming from the sexual abuse of a child, beyond the covering of First Amendment protection, and outside any other protection

or immunity under the law, including Section 230" …which "has 'no effect on criminal law,' including chapter 110 of Title 18, which contains sections 2252 and 2252A.")

## III. OMEGLE'S ROLE IN MATCHING C.H. WITH JOHN DOE ESTABLISHES OMEGLE'S CLEAR LIABILITY UNDER 18 U.S.C. § 1595

Appellee seems to misunderstand the operation of 18 U.S.C. § 1595 which is the civil remedy for violations of 18 U.S.C. § 1591. The former does not provide a civil remedy and therefore Appellants did not rely on nor abandon any claims under Section 1591 (*See* Appellee Brf. p. 44). Appellants properly alleged that Omegle committed violations of Section 1591 and thus Omegle is liable under Section 1595 which contains a constructive knowledge standard.

Under recognized Eleventh Circuit precedent, Congress may not have even needed to include a knowledge requirement in the statute. In *United States v. Ruggiero,* 791 F.3d 1281, 1287 (11th Cir. 2015), this Court found that:

> Although a criminal statute originating in common law is generally construed to include 'the ancient requirement of a culpable state of mind,' the common law recognizes several exceptions to that rule of construction. The relevant one is an exception for 'sex offenses, such as rape, in which the victim's actual age was determinative despite defendant's reasonable

12

belief that the girl had reached age of consent.' Against that common law backdrop, Congress has enjoyed nearly unfettered discretion to exclude knowledge from the definition of statutory crimes in 'recognition that young children need special protection against sexual exploitation.' "Although there is a general presumption that a knowing *mens rea* applies to every element in a statute, cases concerned with the protection of minors are within a special context, where that presumption is rebutted.

(cleaned up). In *United States v. Copeland,* 820 F.3d 809, 814 (5th Cir. 2016), the Fifth Circuit echoed this determination that "Congress can—and often does—reduce or eliminate scienter requiring knowledge of a minor victim's age in sex crimes." The Fifth Circuit specifically noted that "Congress has imposed strict liability with respect to a victim's age in at least four other federal statutes criminalizing sexual acts with minors, and federal courts consistently have upheld each one." *Id.*

In this case, a criminal conviction is not required for Appellants to prevail on such claims. The Appellants are entitled to discovery of information solely in the possession of the Appellee concerning the extent of their knowledge and participation in the criminal actions against C.H.[4]

---

[4] *See e.g. J.S. v. Vill. Voice Media Holdings, L.L.C.*, 184 Wash. 2d 95, 103 (2015) ("It is important to ascertain whether in fact Backpage designed its posting rules to induce sex trafficking to determine whether Backpage is subject to suit under the CDA because 'a website helps to develop

Unlike in *Doe #1 v. Red Roof Inns, Inc.,* 21 F.4th 714 (11th Cir. 2021), Omegle's sex trafficking venture involved a minor child. Omegle had specific information concerning similar criminal activity on its platform. Moreover, it is clear in this case that Omegle captured C.H.'s IP address, personal information, and other identifying metadata which it made accessible to John Doe who used it to coerce C.H. into sexual activity. Doc. 75 ¶59. Omegle is not a mere passive conduit of neutral content, Omegle's very purpose is to actively match individuals—and as in this case it knowingly matches minors—with strangers, including strangers which Omegle actually knows use its site to sexually exploit children. Unlike the hotel chains in *A.B. v. H.K. Grp. of Co.*, No. 1:21-CV-1344-TCB, 2022 WL 467786 (N.D. Ga. Feb. 9, 2022) and *A.B. v. Hilton Worldwide Holdings Inc.,* 484 F. Supp 3d 921 (D. Or. 2020), Omegle was well aware of the sex trafficking on its platform, not just in the industry in general. Doc. 75 ¶¶41–46; Appellee Brf. at 52.

---

unlawful content, and thus falls within the exception to section 230, if it contributes materially to the alleged illegality of the conduct.' *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC,* 521 F.3d 1157, 1168 (9th Cir. 2008) Fact–finding on this issue is warranted.")

## IV. OMEGLE IS NOT A PUBLISHER AND DOES NOT BENEFIT FROM CDA 230 IMMUNITY

Omegle "knowingly" violated 18 U.S.C. § 2252A and Appellants are entitled to seek discovery regarding the scope and parameters of that knowledge. According to this Circuit's well–established precedence, the issue of whether knowing receipt of child pornography occurred is "mainly an issue of fact, not of law" *United States v. Pruitt*, 638 F.3d 763, 766–67 (11th Cir. 2011). Omegle receives value for the use of its platform and maintains that some of the activity on Omegle.com is monitored. Doc 75, ¶55. Omegle was actually aware of "cappers" and child sex abuse predators on their platform. *Id.* Omegle was also aware of multiple criminal prosecutions that occurred for the child sexual abuse on its platform for years before C.H. visited Omegle.com. *Id.* at ¶¶41–43, 58. Despite this knowledge, Omegle knowingly and actively paired C.H. with a child predator and is liable for its active role in the abuse she suffered. Omegle acted with full "awareness of the high probability of the existence of" child abuse on its platform. *Tilton v. Playboy Entm't Group, Inc.*, 554 F.3d 1371, 1378 (11th Cir. 2009) (*quoting United States v. Hristov*, 466 F.3d 949, 952 (11th Cir. 2006)). Omegle should not be allowed to benefit from its willful blindness to the harms of encouraging minor children to

talk unsupervised to strangers. Omegle should be held responsible for its role in matching C.H. with a predator. "When Congress passed Section 230 it did not intend to prevent the enforcement of all laws online." *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC,* 521 F.3d 1157, 1175 (9th Cir. 2008) (holding that CDA 230 did not apply to unlawful acts of website operators nor to websites designed to promote unlawful behavior).

While other circuits have granted blanket protection under CDA 230, this Circuit should join the Seventh Circuit which has been less willing to grant immunity. *See City of Chicago, Ill. v. StubHub!, Inc.*, 624 F.3d 363, 366 (7th Cir. 2010) ("As earlier decisions in this circuit establish, subsection (c)(1) does not create an 'immunity' of any kind." (citing *Doe v. GTE Corp.*, 347 F.3d 655, 660 (7th Cir. 2003)); *see also Chicago Lawyers' Comm. for C.R. Under L., Inc. v. Craigslist, Inc.*, 519 F.3d 666, 669 (7th Cir. 2008), as amended (May 2, 2008) ("Our opinion in *Doe* explains why § 230(c) as a whole cannot be understood as a general prohibition of civil liability for web–site operators and other online content hosts.").

Indeed, the Seventh Circuit has held that CDA 230(c)(1) plays a limited role, noting that it merely "limits who may be called the publisher [or speaker] of information that appears online," and while that "might matter to liability for defamation, obscenity, or copyright infringement," that does not necessarily mean it will have a role to play in all cases. *StubHub!*, 624 F.3d at 366; *see also Huon v. Denton*, 841 F.3d 733, 741 (7th Cir. 2016) ("This means that for purposes of defamation and other related theories of liability, a company like Gawker cannot be considered the publisher of information simply because the company hosts an online forum for third-party users to submit comments." Against this backdrop, then, it appears that the Seventh Circuit is not so inclined to employ CDA 230 as an all–encompassing shield against liability for website operators.

The Seventh Circuit is not alone in its reservations against construing CDA 230 so broadly. In a statement agreeing with the Supreme Court's decision to deny a writ of certiorari for a Ninth Circuit case denying immunity under CDA 230 to an internet service provider alleged to have engaged in anti–competitive behavior, Justice Thomas highlighted the issue of "whether the text of this increasingly important statute aligns with the current state of immunity enjoyed by Internet

17

platforms." *Malwarebytes, Inc. v. Enigma Software Grp. USA, LLC*, ——— U.S. ———, 141 S. Ct. 13, 208 L.Ed.2d 197, 2020 WL 6037214, at *14 (2020) (Statement by Thomas, J.). Justice Thomas observed that "courts have relied on policy and purpose arguments to grant sweeping protection to Internet platforms," arguably extending CDA 230 immunity "'far beyond anything that plausibly could have been intended by Congress.'" *Id*. at *15 (quoting 1 R. SMOLLA, LAW OF DEFAMATION § 4:86, at 4–380 (2d ed. 2019)) (internal citations omitted). Justice Thomas questioned various expansions of CDA 230 immunity, but most pertinent to this case, he specifically questioned the grant of immunity against claims, like this one, that rested on "alleged product design flaws—that is, the defendant's own misconduct." *Id*. at *18. Justice Thomas concluded that

> Paring back the sweeping immunity courts have read into § 230 would not necessarily render defendants liable for online misconduct. It simply would give plaintiffs a chance to raise their claims in the first place. Plaintiffs still must prove the merits of their cases, and some claims will undoubtedly fail.

*Id*. *See also Webber v. Armslist LLC*, No. 20-C-1526, 2021 WL 5206580, at *5–6 (E.D. Wis. Nov. 9, 2021).

## V.    OMEGLE KNEW OR SHOULD HAVE KNOWN THAT IT WAS AN ACTIVE PARTICIPANT IN AN ONGOING SEX TRAFFICKNIG VENTURE

As a criminal statute, Section 1591 uses the actual knowledge standard to affix criminal responsibility which also bears a higher burden of proof than civil claims. Section 1591(a)(2) makes it unlawful to "benefit[ ], financially or by receiving anything of value, from participation in a venture which has engaged in" sex trafficking. *Freesites* at *11.

The court in *Doe v. Twitter, Inc.*, 555 F. Supp. 3d 889, 922 (N.D. Cal. 2021) ruled that Section 1595 claims for violations of Section 1591 are subject to less stringent standards than criminal claims. Section 1595 claims need not require a criminal knowledge standard as Appellee suggests. So too, recent decisions have held that material advertising or promoting the illegal sex trafficking of minors is not protected speech. *Backpage.com, LLC v. Lynch,* 216 F. Supp. 3d 96, 103 (D.D.C. 2016).

Nevertheless, Omegle's role in matching C.H. with a child sex predator—when Omegle had actual knowledge of these exact abuses occurring on their platform and by revealing C.H.'s specific identifying information—satisfies the overt act necessary to find that Omegle

participated in a sex trafficking venture. Omegle should be liable for its own misconduct of matching an eleven–year–old girl with a sexual predator.

Omegle has long known that a community of adult predators utilize the distinct features of its platform to sexually exploit children and memorialize that online abuse for eternity. Doc. 75 ¶¶ 55, 63. Omegle has profited from the use of its platform for this abuse. Appellee's misrepresentations that Omegle was somehow unaware of any risk to C.H. are false. Appellee Brf. at 51. Omegle had specific knowledge of online criminal activity involving children in the very state where C.H. resided. *Id*. at ¶¶37-38, 41-43, 59. Omegle then knowingly allowed abusers to use its platform for years and continuously profited off this illicit activity occurring on Omegle.com. *Id*. at ¶¶63. Omegle failed to implement any safeguards for the children that it knew used their platform such as age verification.

Omegle knew, or should have known, when they matched a child with a stranger that they were facilitating child sex abuse given the extensive number of public reports about the risks and prevalence of exactly this kind of abuse on Omegle.com. *Id*. at ¶¶37, 41-43. Appellee's

distinction of whether Omegle had actual or constructive knowledge of C.H.'s abuse is inconsequential because of Omegle's active role in matching C.H. with John Doe, permitting him to access her personal information, and its capability of monitoring the content of its users' chats and videos. Doc. 75 ¶41. At the very minimum, C.H. is entitled to seek discovery and additional facts as to Omegle's material role in the abuse she suffered. *See Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC,* 521 F.3d 1157, 1168 (9th Cir. 2008).

In the *Twitter* case, the fact that the defendant knowingly received a benefit from a sex trafficking venture ultimately established liability that withstands CDA 230 immunity. *Twitter*, 555 F. Supp. 3d at 922. Like this case, the online activity of users utilizing search terms, hashtags, clicks, combined with other metrics concerning material generally associated with the existence of child pornography on its platform, resulted in a finding that the defendant in *Twitter* knowingly received value as part of an online sex trafficking venture. *Id.*

Finally, the federal criminal statutes which outlaw activity related to child pornography do not require a defendant to have specific knowledge about the victim since any material depicting a minor

engaging in sexually explicit conduct is contraband even if the victim is unidentifiable. *Ruggiero,* 791 F.3d at 1287. Appellee not only fails to recognize this standard in criminal child pornography cases, but it also fails to recognize that Section 1595 contains a "knew or should have known" standard. That civil standard is relevant and applicable to this case. Any stricter standard undermines not only Congress' intent in enacting Section 1595, but the entire comprehensive statutory scheme to eliminate the marketplace in child pornography. Omegle should not escape liability under CDA 230 for material which is outside First Amendment protection. By upholding Section 1595's "knew or should have known" standard, this Count can best ensure the broad mandate outlawing the production, advertisement, distribution, and possession of child pornography.

## <u>CONCLUSION</u>

For all the foregoing reasons, the Court should vacate the District Court's order dismissing this case and remand this matter for a determination on the merits.

Dated:    July 8, 2022
          New York, New York

Respectfully submitted,

James R. Marsh
MARSH LAW FIRM PLLC
31 Hudson Yards, 11th Floor
New York, New York 10001
Email: jamesmarsh@marsh.law
Phone: 212–372–3030

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(g), I certify that the foregoing document complies with the volume limitations of Fed. R. App. P. 27(d)(2)(A) because it contains 4,605 words, as counted by Microsoft Word, excluding the items that may be excluded under Fed. R. App. P. 32(f).

_____
James R. Marsh

**CERTIFICATE OF SERVICE**

The undersigned certifies that he filed this pleading through the court's electronic filing system and that all parties requesting electronic notice of pleadings have been served with the pleading.

_____
James R. Marsh