# MARSH
## law firm pllc

31 Hudson Yards, 11th Floor
New York, NY 10001
914-514-7428 • jamesmarsh@marsh.law

---

November 7. 2022

David J. Smith
Clerk of Court
U.S. Court of Appeals for the Eleventh Circuit
56 Forsyth Street., N.W.
Atlanta, Georgia 30303

      Re:    *M.H., et al v. Omegle.com LLC, 22-10338*

Dear Mr. Smith,

      I write to make the Court aware of supplemental authority pursuant to FRAP 28(j). I direct the Court to the *A.M v. Omegle.com*, 3:21-cv-01674-MO, where the District Court held that Communications Decency Act ("CDA") Section 230 does not provide immunity to some of plaintiff's claims against Omegle. Further, I direct the Court to the fact that Supreme Court of the United States granted certiorari in *Gonzalez v. Google LLC,* No. 21-1333, which will address whether the CDA 230 protects platforms from suit.

Sincerely,

*[signature]*

James R. Marsh, Esq.

# EXHIBIT 1

2022 WL 2713721
Only the Westlaw citation is currently available.
United States District Court, D. Oregon,
Portland Division.

**A.M.**, Plaintiff,
v.
**OMEGLE.COM**, LLC, Defendant.

No. 3:21-cv-01674-MO
|
Signed July 13, 2022

**Synopsis**
**Background:** User of online chat room brought action against chat room for product liability arising out of defects in design, product liability arising out of defects in warning, negligence in design, negligence in warning and instruction, facilitation of sex trafficking, sex trafficking of children by force, fraud, or coercion, human trafficking under state law, and negligent misrepresentation, alleging that when she was a minor, chat room paired her with a man in his late thirties who forced her to send pornographic images and videos of herself to him, perform for him and his friends, and recruit other minors for him to abuse. Chat room filed motion to dismiss for failure to state a claim and request for judicial notice.

**Holdings:** The District Court, Michael W. Mosman, Chief Judge, held that:

[1] user did not seek to treat chat room as a publisher of information, and thus publisher immunity did not apply;

[2] case did not turn on information provided by another information content provider, and thus publisher immunity did not apply;

[3] statute imposing liability for promotion or facilitation of prostitution and reckless disregard of sex trafficking does not apply retroactively;

[4] Allow States and Victims to Fight Online Sex Trafficking Act (FOSTA) does not provide carve out from publisher immunity for civil state law trafficking claims; and

[5] FOSTA provision that abrogates publisher immunity for civil actions brought under statute providing civil remedy for sex trafficking of children or by force, fraud, or coercion imports higher mens rea of actual knowledge from statute governing the criminal offense.

Motion to dismiss granted in part and denied in part; request for judicial notice granted.

**Procedural Posture(s):** Motion to Dismiss for Failure to State a Claim; Motion to Take Judicial Notice.

West Headnotes (10)

[1]   **Telecommunications** ⇨ Persons and entities liable; immunity

Publisher immunity under the Communications Decency Act (CDA) rests on three prongs: it precludes liability for (1) a provider or user of an interactive computer service (2) whom plaintiff seeks to treat as a publisher or speaker (3) of information provided by another information content provider. Communications Act of 1934 § 230, 47 U.S.C.A. § 230.

[2]   **Products Liability** ⇨ Defenses in general
      **Products Liability** ⇨ Computers and software
      **Telecommunications** ⇨ Persons and entities liable; immunity

User of online chat room did not seek to treat chat room as a publisher of information, and thus publisher immunity under the Communications Decency Act (CDA) did not apply to user's action against chat room for product liability, alleging that when she was a minor, chat room paired her with a man in his late thirties who forced

her to send pornographic images and videos of herself to him, perform for him and his friends, and recruit other minors for him to abuse; user alleged that chat room was defectively designed and that it failed to warn child users of adult predators on the website, and in order to meet the obligation user sought to impose on chat room, it would not have to alter the content posted by its users—it would only have to change its design and warnings. Communications Act of 1934 § 230, 47 U.S.C.A. § 230.

[3] **Telecommunications**  Persons and entities liable;  immunity

In determining whether publisher immunity under the Communications Decency Act (CDA) applies, what matters is not the name of the cause of action; what matters is whether the cause of action inherently requires the court to treat the defendant as the publisher or speaker of content provided by another. Communications Act of 1934 § 230, 47 U.S.C.A. § 230(c)(1).

[4] **Telecommunications**  Persons and entities liable;  immunity

In determining whether cause of action inherently requires court to treat defendant as publisher or speaker of content provided by another, courts must ask whether duty that plaintiff alleges defendant violated derives from defendant's status or conduct as publisher or speaker; if it does, liability is precluded by publisher immunity under the Communications Decency Act (CDA). Communications Act of 1934 § 230, 47 U.S.C.A. § 230(c)(1).

1 Cases that cite this headnote

[5] **Telecommunications**  Persons and entities liable;  immunity

For purposes of determining whether publisher immunity under the Communications Decency Act (CDA) applies, "publication" involves reviewing, editing, and deciding whether to publish or to withdraw from publication of third-party content. Communications Act of 1934 § 230, 47 U.S.C.A. § 230(c)(1).

[6] **Products Liability**  Defenses in general
**Telecommunications**  Persons and entities liable;  immunity

For purposes of determining whether publisher immunity under the Communications Decency Act (CDA) applies, the duty to design a reasonably safe product is fully independent of a defendant's role in monitoring or publishing third party content. Communications Act of 1934 § 230, 47 U.S.C.A. § 230.

[7] **Products Liability**  Defenses in general
**Products Liability**  Computers and software
**Telecommunications**  Persons and entities liable;  immunity

Case did not turn on information provided by another information content provider, and thus publisher immunity under the Communications Decency Act (CDA) did not apply to user's action against chat room for product liability, alleging that when she was a minor, chat room paired her with a man in his late thirties who forced her to send pornographic images and videos of herself to him, perform for him and his friends, and recruit other minors for him to abuse; user's contention was that the product chat room product was designed in a way that connected individuals who should not have been connected (minor children and adult men) and that it did so before any content was exchanged between them. Communications Act of 1934 § 230, 47 U.S.C.A. § 230.

[8] **Human Trafficking and Slavery**  Transporting individuals for illegal sexual activity or immoral conduct; Mann Act

Statute imposing liability for promotion or facilitation of prostitution and reckless disregard

of sex trafficking does not apply retroactively. 18 U.S.C.A. § 2421A.

[9] **Human Trafficking and Slavery** 🔑 Parties to Offenses; Persons Liable

**Telecommunications** 🔑 Persons and entities liable; immunity

Allow States and Victims to Fight Online Sex Trafficking Act (FOSTA) does not provide carve out from publisher immunity under the Communications Decency Act (CDA) for civil state law trafficking claims. 18 U.S.C.A. § 2421A; Communications Act of 1934 § 230, 47 U.S.C.A. § 230(e)(5).

[10] **Human Trafficking and Slavery** 🔑 Knowledge or Intent of Accused

**Human Trafficking and Slavery** 🔑 Parties to Offenses; Persons Liable

**Telecommunications** 🔑 Persons and entities liable; immunity

Provision of Allow States and Victims to Fight Online Sex Trafficking Act (FOSTA) that abrogates publisher immunity under the Communications Decency Act (CDA) for civil actions brought under statute providing civil remedy for sex trafficking of children or by force, fraud, or coercion imports higher mens rea of actual knowledge from statute governing the criminal offense. 18 U.S.C.A. §§ 1591, 1595; Communications Act of 1934 § 230, 47 U.S.C.A. § 230(e)(5)(A).

**Attorneys and Law Firms**

Barbara C. Long, Vogt & Long PC, Portland, OR, Carrie Goldberg, Pro Hac Vice, Naomi E. Leeds, Pro Hac Vice, C.A. Goldberg, PLLC, Brooklyn, NY, for Plaintiff.

Venkat Balasubramani, Kimberlee Gunning, Pro Hac Vice, Stacia Lay, Pro Hac Vice, Focal PLLC, Seattle, WA, Clifford S. Davidson, Snell & Wilmer LLP, Portland, OR, for Defendant.

OPINION AND ORDER

MOSMAN, Senior United States District Judge

\*1 This case is before me on Defendant Omegle.com LLC's Motion to Dismiss [ECF 17] and Request for Judicial Notice [ECF 18]. At oral argument, I granted in part and denied in part the Motion to Dismiss and granted the Request for Judicial Notice. Mins. of Proceeding [ECF 28]. I write to expound upon some of my oral rulings on the Motion to Dismiss.

LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A pleading that offers only "labels and conclusions" or " 'naked assertion[s]' devoid of 'further factual enhancement' " will not suffice. *Id.* (quoting *Twombly*, 550 U.S. at 555, 557, 127 S.Ct. 1955). While the plaintiff does not need to make detailed factual allegations at the pleading stage, the allegations must be sufficiently specific to give the defendant fair notice of the claim and the grounds on which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam) (citing *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955).

BACKGROUND

Plaintiff, A.M., brings this products liability case against Omegle.com LLC ("Omegle") for connecting (at the time) minor Plaintiff with an adult man who sexually abused her online through Omegle. Compl. [ECF 1] ¶¶ 1–12.

A.M. was eleven years old in 2014 when Omegle, a "free online chat room that randomly pairs strangers from around

the world for one-on-one chats," paired her with Ryan Fordyce, a man in his late thirties. *Id.* ¶¶ 2, 7. Over the next three years Fordyce forced A.M. to send pornographic images and videos of herself to him, perform for Fordyce and his friends, and recruit other minors for Fordyce to abuse. *Id.* ¶¶ 8–9. Fordyce threatened A.M. that if she reported him, he would release the videos and pictures and she would get arrested. *Id.* ¶ 10.

Canadian law enforcement raided Fordyce's home in January 2018 and found thousands of files of child pornography on his computer including 220 images and videos of Plaintiff. *Id.* ¶¶ 11, 50. Investigators identified A.M., who by then was fifteen years old, by the high school sweatshirt she wore in photographs she had sent to Fordyce. *Id.* ¶ 50. Fordyce has been criminally charged and is awaiting sentencing. *Id.* ¶ 11.

A.M. brings the following claims in this civil action against Omegle: (1) product liability arising out of defects in design, (2) product liability arising out of defects in warning, (3) negligence in design, (4) negligence in warning and instruction, (5) 18 U.S.C. § 2421A for facilitation of sex trafficking, (6) 18 U.S.C. § 1595 and 18 U.S.C. § 1591 for sex trafficking of children by force, fraud, or coercion, (7) ORS 30.867 for human trafficking, and (8) negligent misrepresentation. *Id.* ¶¶ 78–152.

### DISCUSSION

At oral argument I denied Omegle's motion to dismiss claims one through four, I dismissed claim five and seven with prejudice, and I dismissed claims six and eight with leave to amend. Mins. of Proceeding [ECF 28]. I lay out additional reasoning for my decision regarding claims one through seven below.[1]

### I. Section 230 Immunity Does Not Apply to Claims One Through Four

**\*2** The threshold matter to be decided is whether Omegle is immune from suit under the immunity provision of the Communications Decency Act ("CDA"), 47 U.S.C. § 230(c)(1) ("Section 230"). Ultimately, I find that Omegle is not immune under Section 230 and DENY Defendant's motion on claims one through four.

Omegle contends that it is entitled to immunity under the CDA, no exceptions to the Act apply, and therefore, Plaintiff's claims are barred. Mot. to Dismiss [ECF 17] at 3. Specifically, Omegle argues Section 230 immunity is warranted because, "[a]t its core, the Complaint alleges that Omegle failed to adequately monitor or police the content or interactions of its users, including by allegedly failing to enforce its user policies and implement safety measures that would have prevented Plaintiff's communication with Fordyce." *Id.* at 5. Omegle goes on to argue that "[n]o matter the labels applied, each of the claims are based on the core premise that Omegle allegedly failed to monitor the interactions of its users and police their content or, stated differently, failed to incorporate adequate protections against the improper content or conduct of its users." *Id.* at 8. Because, Omegle contends, these allegations underlie each of Plaintiff's claims, Omegle is entitled to immunity. *Id.* Omegle surmises Plaintiff is merely trying to "shift liability" to it for Fordyce's unlawful actions. *Id.* at 6. Ultimately, so goes the argument, because the failure to monitor that Plaintiff is really alleging is the work of a publisher under Section 230, and publishers are afforded immunity, Omegle argues it should be entitled to immunity. I disagree.

**[1]** Publisher immunity under Section 230 rests on three prongs. It precludes liability for (1) a provider or user of an interactive computer service (2) whom plaintiff seeks to treat as a publisher or speaker (3) of information provided by another information content provider. *Gonzalez v. Google LLC*, 2 F.4th 871, 891 (9th Cir. 2021) (quoting *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100–01 (9th Cir. 2009)).

### A. Whether Omegle Is a Provider or User of an Interactive Computer Service

Here, the parties do not disagree on the first prong—whether Omegle is a provider or user of an interactive computer service. The CDA defines an interactive computer service as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server[.]" 47 U.S.C. § 230(f)(2). This definition is expansively interpreted by the Ninth Circuit, with websites identified as the most common interactive computer services. *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1268 (9th Cir. 2016). Omegle is a website and comfortably fits the definition.

**B. Whether Omegle is a Publisher or Speaker of Information**

**[2]** Omegle argues that it is a publisher of information, namely of the communications between Fordyce and **A.M.**, and therefore, the second prong of the *Gonzalez* test is met.

**[3]** **[4]** **[5]** At the outset, "what matters is not the name of the cause of action ... what matters is whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another." *Barnes*, 570 F.3d at 1101–02. Stated differently, "courts must ask whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a 'publisher or speaker.' If it does, section 230(c)(1) precludes liability.' " *Id.* Publication "involves reviewing, editing, and deciding whether to publish or to withdraw from publication [of] third-party content." *Id.* at 1102.

**\*3** The most important case for resolving this issue of Section 230 liability is *Lemmon v. Snap, Inc.*, 995 F.3d 1085 (9th Cir. 2021). In *Lemmon*, the Ninth Circuit reversed a district court's dismissal of a plaintiff's amended complaint on the grounds of Section 230 immunity, allowing plaintiff's negligent design lawsuit to proceed.

The suit in *Lemmon* was brought by the surviving parents of two boys who died in a car crash. The boys in the car were driving at speeds near 123 mph and were going 113 mph when the car left the road, crashed into a tree, and burst into flames. *Id.* at 1088. Shortly before the crash, one of the boys opened the phone application SnapChat to document how fast they were going. *Id.* The parents alleged that the boys were trying to drive over 100 mph because of the "speed" filter that overlayed the speed being traveled on a photograph shared through the application. Many SnapChat users believed that going over 100 mph would earn the user a reward and speeding in excess of 100 mph is a game the users played. *Id.* at 1089.

Like the instant case, the parties did not dispute whether the defendant was a provider of an interactive computer service. *Id.* at 1091. The dispositive question was whether the cause of action treated the defendant as the publisher or speaker of third-party content. *Id.* at 1093. The Ninth Circuit concluded it did not because the claims turned on the design of SnapChat. *Id.*

In *Lemmon* the parents alleged that "Snap created: (1) Snapchat; (2) Snapchat's Speed Filter; and (3) an incentive system within Snapchat that encouraged its users to pursue certain unknown achievements and rewards." *Id.* at 1091. Because the Ninth Circuit found this to be an adequately pled products liability tort that provided a duty to exercise due care, Section 230 immunity did not apply. *Id.* at 1092–93. And because "Snap could have satisfied its alleged obligation—to take reasonable measures to design a product more useful than it was foreseeably dangerous—without altering the content that SnapChat's users generate[,] Snap's alleged duty in this case has nothing to do with its editing, monitoring, or removing of the content that its users generate through Snapchat." *Id.* at 1092 (internal quotation marks and citations omitted).

Here, Plaintiff's complaint adequately pleads a product liability lawsuit as to claims one through four. [2] Omegle could have satisfied its alleged obligation to Plaintiff by designing its product differently—for example, by designing a product so that it did not match minors and adults. Plaintiff is not claiming that Omegle needed to review, edit, or withdraw any third-party content to meet this obligation. As I will discuss in more detail below, the content sent between Plaintiff and Fordyce does not negate this finding or require that I find Omegle act as a publisher.

**\*4** **[6]** The Ninth Circuit held in *Lemmon* that a defendant "allow[ing] its users to transmit user-generated content to one another does not detract from the fact that [a plaintiff] seek[s] to hold [the defendant] liable for its role in violating its distinct duty to design a reasonably safe product." 995 F.3d at 1092. "The duty to design a reasonably safe product is fully independent of [a defendant's] role in monitoring or publishing third party content." *Id.*

In *Lemmon* it was immaterial that one of the decedents had sent a SnapChat with the speed filter on it. Instead, what mattered is that the claim treated defendant as a product manufacturer by accusing it of negligently designing

a product (SnapChat) with a defect (the interplay between the speed filter and the reward system).

In this case, it similarly does not matter that there were ultimately chats, videos, or pictures sent from A.M. to Fordyce. As I stated at oral argument, it is clear that content was created; however, claims one through four do not implicate the publication of content. Tr. [ECF 32] at 10:6–11:8. What matters for purposes of those claims is that the warnings or design of the product at issue led to the interaction between an eleven-year-old girl and a sexual predator in his late thirties.

Omegle argues that this framework would contradict *Doe v. Twitter, Inc.*, 555 F. Supp. 3d 889 (N.D. Cal. 2021). In *Doe*, plaintiffs brought suit against defendant Twitter alleging that Twitter permits and even aids in the distribution of child pornography and failed to remove pornographic content, including the plaintiffs. *Id.* at 894. There, the district court found the case before it distinguishable from *Lemmon* on Section 230 immunity because:

> [T]he nature of the alleged design flaw in this case—and the harm that is alleged to flow from that flaw—is directly related to the posting of third-party content on Twitter. In particular, Plaintiffs allege that Twitter's design, which is aimed at enabling its users to disseminate information very quickly to large numbers of people through such features as hashtags and algorithms, also enables sex traffickers to distribute CSAM on a massive scale.

*Id.* at 930 (internal quotations omitted). The court went on to find that the publication function was implicated because, "[i]n other words ... Twitter would have to alter the content posted by its users" by preventing the posting of third-party content containing child pornography. *Id.*

Omegle failed to demonstrate why, in its briefing or at oral argument, the instant case is more like *Doe* than *Lemmon*. Here, Plaintiff alleges that Omegle is defectively designed, and that Plaintiff fails to warn child users of adult predators on the website. Resp. in Opp'n [ECF 23] at 16. In order to meet the obligation A.M. seeks to impose on Omegle, Omegle would not have to alter the content posted by its users —it would only have to change its design and warnings. In that way, this case is easily distinguished from *Doe* and analogous to *Lemmon*. Therefore, I find that Plaintiff does not seek to treat Omegle as a publisher of information under Section 230 of the CDA under *Lemmon*.

### C. Whether the Case Turns on Information Provided by Another Information Content Provider

In *Lemmon*, the Ninth Circuit identified the case as a "clear example of a claim that simply does not rest on third party content." 995 F.3d at 1093. In *Lemmon*, the parents did not fault the Snap for the images it published. Instead, because the parents' claim rested on nothing more than the Snap's "own acts," Snap was not entitled to Section 230 immunity. *Id.* at 1094 (internal quotation marks omitted).

**[7]** Here, Omegle has attempted to make this a case about Fordyce's communications to the Plaintiff, but as discussed above, Plaintiff's case does not rest on third party content. Plaintiff's contention is that the product is designed a way that connects individuals who should not be connected (minor children and adult men) and that it does so before any content is exchanged between them. Resp. in Opp'n [ECF 23] at 10–11 ("The random pairing function of adults and children and the service's accessibility to both adults and children work in tandem. Plaintiff's claims thus have nothing to do with information provided by a user. It is the website's sole function of randomly matching children with adults that causes the danger. This function occurs before content occurs.")

**\*5** Because this is a products liability case that does not rest on Defendant's publication of third-party content, I find that Section 230 immunity does not apply and DENY the Motion to Dismiss as to claims one through four.

### II. Claims Five and Seven
At oral argument, I dismissed claims five and seven with prejudice. Mins. of Proceeding [ECF 28]. I write to provide greater detail on my reasoning.

**A. Claim Five: 18 U.S.C. § 2421A Promotion or Facilitation of Prostitution and Reckless Disregard of Sex Trafficking**

 **[8]**  Defendant argues that this claim is barred because 18 U.S.C. § 2421A does not apply retroactively and supports this assertion with an analysis of the text and structure of the law. Mot. to Dismiss [ECF 17] at 24–28.

Congress enacted 18 U.S.C. § 2421A in April 2018 as a part of the "Allow States and Victims to Fight Online Sex Trafficking Act of 2017" ("FOSTA") Public Law No. 115-164. As I will discuss in more detail in regard to Claim Six, FOSTA abrogated Section 230 immunity for federal sex trafficking claims. Relevant for purposes of claim five, FOSTA enacted a new federal criminal offense and a new civil cause of action allowing the recovery of attorney fees—18 U.S.C. § 2421A.

In Section 4 of FOSTA, the section that abrogates Section 230 immunity, Congress included the following: "(b) Effective Date.—The amendments made by this section shall take effect on the date of the enactment of this Act, and the amendment made by subsection (a) shall apply regardless of whether the conduct alleged occurred, or is alleged to have occurred, before, on, or after such date of enactment." Subsection (a) refers to the language added to Section 230(e) of the CDA—it does not refer to the entirely different section of the legislation that enacted 18 U.S.C. § 2421A. Further, the section enacting 18 U.S.C. § 2421A does not contain a similar provision explicitly stating that this provision of the public law was intended to be applied retroactively.

Therefore, the plain text of the statute does not apply 18 U.S.C. § 2421A retroactively.

In this case, the police raided Fordyce's home in January of 2018 and found evidence of his abuse of A.M. Compl. [ECF 1] ¶ 11, 50. FOSTA became law in April 2018. Pub. Law No. 115-164. Accordingly, I DISMISS claim five with prejudice. Tr. [ECF 32] at 14:11–12.

**B. Claim Seven: Violation of ORS 30.867 (Action for Violation of Criminal Laws Relating to Involuntary Servitude or Trafficking of Persons)**

 **[9]**  Omegle argues that although FOSTA created a carveout to Section 230 immunity for certain federal sex trafficking claims, there is no corresponding exclusion for state law civil claims. Mot. to Dismiss [ECF 17] at 23–24. The plain language of 47 U.S.C. § 230(e)(5) supports this interpretation as it does not provide a carveout for civil state trafficking claims. 47 U.S.C. § 230(e)(5) provides carveouts for Section 230 immunity only for the following:

> (A) any claim in a civil action brought under section 1595 of title 18, United States Code, if the conduct underlying the claim constitutes a violation of section 1591 of that title; (B) any charge in a criminal prosecution brought under state law if the conduct underlying the charge would constitute a violation of section 1591 of title 18, United States Code; or (C) any charge in a criminal prosecution brought under State law if the conduct underlying the charge would constitute a violation of section 2421A of title 18, United States Code...."

 ***6**  The plain text of the statute does not provide a carve out for civil state law trafficking claims. Therefore, I DISMISS claim seven with prejudice.

**III. Claim Six 18: U.S.C. § 1595 Civil Remedy for § 1591 Sex Trafficking of Children or by Force, Fraud, or Coercion**

 **[10]**  Claim six raises three areas of inquiry: (1) what is the correct mens rea, and whether (2) venture and (3) profit were adequately pled. Tr. [ECF 32] at 14:13–14, 16:10–11. At oral argument I ruled that Plaintiff's allegations in the complaint on venture and profit were inadequate and would need to be re-pled to adequately reflect the necessary mens rea. Tr. [ECF 32] 20:20–21:1. Accordingly, this section explains what mens rea is necessary for claims brought under § 1595.

Omegle argues that Plaintiff has failed to allege the correct mens rea in the complaint; specifically, that Plaintiff failed to establish Omegle had met the higher actual knowledge standard under [18 U.S.C. § 1591](). Therefore, Omegle cannot be held liable under FOSTA because FOSTA only abrogates [Section 230]() immunity for "any claim in a civil action brought under [section 1595 of Title 18](), if the conduct underlying the claim constitutes a violation of section 1591 of that title." [47 U.S.C. § 230(e)(5)(A)]().

As I explained at oral argument, "you can sue under [Section 1595]() and not run afoul of [Section 230]() immunity 'if the conduct underlying the claim constitutes a violation of [Section 1591]().' " Tr. [ECF 32] at 14:18–20 (citing [47 U.S.C. § 230(e)(5)(A)]()). A civil claim brought under [§ 1595]() is predicated on the violation of [§ 1591](). And [§ 1595]() and [§ 1591]() have different mens rea standards: [§ 1595]() has a "knew or should have known" mental state and [§ 1591]() contains an actual knowledge mental state.

This argument presents a question of statutory interpretation that is playing out in district courts throughout the Ninth Circuit: Did Congress intend to only waive [Section 230]() immunity for civil claims under [§ 1595]() that are predicated on a violation of [§ 1591]()?

Defendant argues in its motion that the complaint does not state a plausible claim for violation of [§ 1591]() because it does not use the correct mens rea and therefore, an exception to [Section 230]() immunity under [Section 230(e)(5)(A)]() does not apply. Mot. to Dismiss [ECF 17] at 14–23. Omegle relies on the court's reasoning in [*J.B. v. G6 Hospitality, LLC,* No. 19-cv-07848-HSG, 2021 WL 4079207, at \*18 (N.D. Cal. Sept. 8, 2021)](), where the Court found the [§ 1591]() mens rea applied. Plaintiff instead posits that [Section 230]() immunity "does not affect sex trafficking laws." Resp. in Opp'n [ECF 23] at 24. Plaintiff directs me to [*Doe v. Twitter*](), in which the Northern District of California found the plaintiff only had to allege the less stringent mens rea of "knew or should have known." [555 F. Supp. 3d at 918]().

Here, I agree with the approach from [*J.B.*]() and find that text of [Section 230(e)(5)(A)](), on its face, imports the higher mens rea from [§ 1591]() into [§ 1595](). Like the court in [*J.B.*](), I too find that the "most straightforward reading to be that the provision provides an exemption from CDA immunity for a [section 1595]() claim if the civil defendant's conduct amounts to a violation of [section 1591]()." [*J.B.*, 2021 WL 4079207, at \*6]() (citing [*Robinson v. Shell Oil Co.*, 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997)]()).

**\*7** As I stated at oral argument, the court in [*Doe*]() employs a different statutory analysis by first looking at the statutory text but disagreeing with the outcome because it is in some way nonsensical. Tr. [ECF 32] 15:24–16:2. Specifically, the [*Doe*]() court found that "the implication of this reading is that a sex trafficking victim who seeks to impose civil liability on an ICS provider on the basis of beneficiary liability faces a higher burden than a victim of sex trafficking who seeks to impose such liability on other types of defendants." [555 F. Supp. 3d at 920](). For that reason, the [*Doe*]() court rejects importing the higher mens rea of [Section 1591]() into [Section 1595]().

This issue is far from settled in the Ninth Circuit. Both [*Doe*]() and [*J.B.*]() have been appealed. [*Doe*, 555 F. Supp. 3d 889](), *appeal docketed*, No. 22-15104 (9th Cir. Jan. 25, 2022); [*J.B.*, No. 19-cv-07848-HSG, 2021 WL 4079207 (N.D. Cal. Sept. 8, 2021)](), *interlocutory appeal granted*, No. 21-80133 (9th Cir. Feb. 28, 2022).

Because I agree with the [*J.B.*]() court's statutory interpretation, I GRANT Defendant's motion to dismiss claim seven, but do so without prejudice.

## CONCLUSION

For the reasons discussed above and on the record at oral argument on May 9, 2022, I GRANT in part and DENY in

part Defendant's Motion to Dismiss [ECF 17] and I GRANT Defendant's Request for Judicial Notice [ECF 18].

IT IS SO ORDERED.

**All Citations**

--- F.Supp.3d ----, 2022 WL 2713721

## Footnotes

1 I do not discuss claim eight because I granted the motion to dismiss claim eight with leave to amend, but Plaintiff chose not to include this claim in her Amended Complaint [ECF 29] filed after oral argument.

2 See, for example, Paragraph 80 (which appears to be crafted with *Lemmon* in mind) which reads, "Omegle is defectively designed. Namely, the combination of the website's user anonymity and the absence of age restrictions amount to a design defect. This design defect creates the predictable consequence of attracting both unsuspecting children and predatory adults, thereby facilitating and encouraging dangerous behavior and harm to children using the product." Compl. [ECF 1] ¶80.

**End of Document** © 2022 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT 2

2022 WL 4651229
Only the Westlaw citation is currently available.
Supreme Court of the United States.

Reynaldo **GONZALEZ**, et al.,
v.
**GOOGLE LLC**

No. 21-1333
|
October 3, 2022

Case below, [2 F.4th 871](#).

**Opinion**

**\*1** The petition for writ of certiorari is granted.

**All Citations**

--- S.Ct. ----, 2022 WL 4651229 (Mem)

---